# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROCHIP TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1194-LPS-CJB |
| | ) | |
| DELPHI AUTOMOTIVE SYSTEMS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

1. In this patent infringement action filed by Plaintiff Microchip Technology Inc. ("Plaintiff"), Defendant Delphi Automotive Systems, LLC ("Defendant") has filed a motion to dismiss Count III of the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (D.I. 15) In Count III, Plaintiff alleges that Defendant directly and indirectly infringes "at least claim 7" of United States Patent No. 7,478,191 ("the '191 patent"). (D.I. 1 at ¶¶ 75-91) The instant Motion has been referred to the Court for resolution by Chief Judge Leonard P. Stark, (D.I. 8), was fully briefed as of November 1, 2017, (D.I. 28), and was argued at a Case Management Conference held on December 18, 2017.

2. The standard of review here is the familiar two-part analysis applicable to motions made pursuant to Rule 12(b)(6). *See Raindance Techs., Inc. v. 10x Genomics, Inc.*, Civil Action No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (applying the *Twombly/Iqbal* standard to claims of direct patent infringement filed subsequent to the December 2015 abrogation of Federal Rule of Civil Procedure 84 and patent pleading Form 18); *see also North Star Innovations, Inc. v. Micron Tech., Inc.*, Civil Action No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017). First, the court separates the factual and legal elements

of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing the plausibility of a claim, the court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).[1]

3. Claim 7 is a claim to a Universal Serial Bus (or "USB") hub, and it recites:

> **7.** A USB hub comprising:
>
> a first input for coupling to a first USB host device;
>
> a second input for coupling to a second USB host device;
>
> a plurality of peripheral device inputs for coupling to respective ones of a plurality of peripheral USB devices;

---

[1] In resolving a motion to dismiss, a court may consider not only the allegations in the complaint, but also, *inter alia*, exhibits attached to the complaint, documents integral to or explicitly relied upon in the complaint, and matters of public record. *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 & n.2 (3d Cir. 1994); *Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, Civ. No. 14-1482-SLR, Civ. No. 14-1483-SLR, 2015 WL 4477700, at *2 (D. Del. July 22, 2015).

> switching logic that is operable to provide connectivity between the
> first input and the plurality of peripheral device inputs when the first
> USB host device is connected to the first input and the second USB
> host device is not connected to the second input;
>
> wherein the switching logic is operable to automatically provide
> connectivity between the second input and one or more of the
> plurality of peripheral device inputs when the second USB host
> device is connected to the second input wherein the switching logic
> is configured to maintain connectivity between the first input and
> remaining ones of the plurality of peripheral device inputs that were
> not provided connectivity to the second input.

('191 patent, col. 13:15-32)

4. Plaintiff alleges that Defendant directly infringes the claim at least through its using and/or testing of its Delphi Dual Role Hub product, and that Defendant indirectly infringes by inducing or contributing to infringement by the product's end users, who include Defendant's customers (e.g., auto manufacturers) and individuals who use automobiles that include the accused hub product. (D.I. 1 at ¶¶ 82-83) Thus, in order to establish direct infringement of claim 7 (by Defendant or end users), Plaintiff needs to have pleaded facts that plausibly indicate that the accused product contains each of the limitations found in the claim. *See e.Digital Corp. v. iBaby Labs, Inc.*, Case No. 15-cv-05790-JST, 2016 WL 4427209, at *3-4 (N.D. Cal. Aug. 22, 2016); *Raindance Techs., Inc.*, 2016 WL 927143, at *2-3; *see also North Star*, 2017 WL 5501489, at *1.

5. By the time of oral argument, it became clear that Defendant's position as to why Plaintiff had not pleaded plausible claims of infringement was really focused on one particular argument, which has to do with the "wherein" limitation of claim 7. That part of claim 7 requires that when a "second USB host device" (which, in the Complaint, is alleged to be a user's cell

phone—more particularly, an iPhone) is connected to a "second input" (which the Complaint alleges to be a port through which the iPhone connects to a USB connector in the user's car), then certain "switching logic" in the accused hub product operates to "automatically provide connectivity" between the second input and "one or more of the plurality of peripheral device inputs" (which, in the Complaint, are alleged to include a host-to-host bridge device that is found inside the accused hub product). (D.I. 1 at ¶¶ 20, 78-79; Transcript of Dec. 18, 2017 Oral Argument (hereafter, "Tr.") at 75) Defendant understands the term "switching logic" to require that when the peripheral device input(s) connect to the second input, those peripheral device input(s) *necessarily lose connectivity* with the first input set out in the claim (which the Complaint alleges to be a first input in the accused hub product that couples to a car's head unit). (D.I. 16 at 2, 5-6; D.I. 28 at 2-3; Tr. at 64 (Defendant's counsel noting that "we don't think there is any plausible reading where you can have mutual connectivity or at one point [the peripheral device input is] connected to one host and then you flip a switch and then all of a sudden it's connected to two hosts"); Tr. at 78-79; *see also* D.I. 1 at ¶ 78) And it claims that Plaintiff has not plausibly alleged that the first input loses connectivity with a peripheral device input (e.g., the host-to-host bridge device) when the second input is connected to that peripheral device input. (Tr. at 61, 67)

6. Plaintiff counters that it has a different view of what the claim requires. Its position is that Defendant is "reading in [a] disconnecting or handing off requirement" into the "switching logic" term, when it fact the claim does not require that. (*Id.* at 68; *see also* D.I. 24 at 5) In other words, according to Plaintiff, the claim allows that when the second input is connected with a peripheral device input, the first input does not need to lose connectivity with

4

that same peripheral device input.

7. Defendant may well turn out to be right, and the District Court may ultimately construe "switching logic" (or related terms) in a way that supports Defendant's non-infringement position. It could be, for example, that evidence presented at a *Markman* hearing will show, as Defendant argues it will, that it is "the underlying principle of a USB connection" that the connection is a "one-to-one type of connection." (Tr. at 79) And Defendant smartly points to other portions of the "wherein" limitation in claim 7 that seem to support its view—like how the claim states that after connectivity between the second input and at least one of the peripheral device inputs is established, the switching logic is configured to "maintain connectivity" between the first input and the remaining ones of the peripheral device inputs. (*Id.* at 65, 79) In Defendant's (understandable) view, this reference to the first input "maintain[ing]" connectivity with the other peripheral device inputs suggests that the first input *necessarily loses* connectivity with the peripheral device input that is now connected to the second input. (*Id.*)

8. But in the Court's view—and taking into account the limited information available to the Court on the subject at this early stage—it is at least plausible that Plaintiff's contrary position could prevail. Plaintiff notes that other claims in the '191 patent (claim 2 and claim 18) specifically make reference to "remov[ing] connectivity" between a first host/input and a peripheral device/device input. (*Id.* at 76; *see* '191 patent, cols. 12:55-58, 14:48-51) And Plaintiff then (understandably) argues that this shows that when the patentees wanted to require that connectivity be removed, they knew how to do so (and, conversely, when they did not wish

to do so, as in claim 7, they did not include such a requirement). (Tr. at 76)[2] Plaintiff also disagrees that the term "switching logic" necessarily requires "the loss of connectivity as to one device in order to provide [connectivity] to a second[,]" (*id.*), and the Court does not have enough information at this stage to definitively say that Plaintiff is wrong on that score. Thus, this is one of those cases where the claim construction process is needed to help resolve the ultimate dispute, and where it would be inappropriately hasty to try to force a decision on the question at the pleading stage. *See, e.g., Confluent Surgical, Inc. v. Hyperbranch Med. Tech., Inc.*, Civil Action No. 17-688-LPS-CJB, 2017 WL 4804264, at *2 (D. Del. Oct. 25, 2017); *Anglefix Tech, LLC v. NuVasive, Inc.*, No. 13-CV-983-BEN(RBB), 2014 WL 197736, at *2 (S.D. Cal. Jan. 14, 2014); *Novartis Pharm. Corp. v. Actavis, Inc.*, Civil Action No. 12-366-RGA-CJB, 2012 WL 6212619, at *7 (D. Del. Dec. 5, 2012); *cf. In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012).

9. For the foregoing reasons, the Court recommends that the Motion be DENIED.

10. This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925

---

[2] When asked about this argument, Defendant's counsel simply stated its position that the "removing connectivity" requirement is already in the independent claims from which claims 2 and 18 depend, such that claims 2 and 18's limitations in that regard were, essentially, redundant. (Tr. at 79-80)

n.1 (3d Cir. 2006). The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: January 29, 2018

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE