**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MICROCHIP TECHNOLOGY INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.  17-1194-LPS |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| DELPHI AUTOMOTIVE SYSTEMS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**FIRST AMENDED ANSWER AND AMENDED COUNTERCLAIMS**</u>

Delphi Automotive Systems, LLC ("Delphi") hereby files its First Amended Answer and

Amended Counterclaims to the Complaint of Microchip Technology Inc. ("Microchip") for

Patent Infringement (D.I. 1). Delphi denies the allegations and characterizations of the

Complaint unless expressly admitted below, and answers as follows:

<u>**Complaint Paragraph 1:**</u>

1.      Plaintiff Microchip Technology Incorporated is a Delaware corporation with its

principal place of business located at 2355 West Chandler Blvd., Chandler, Arizona 85224-6199.

**Response:**      Delphi admits Microchip is a Delaware corporation. Except as stated, Delphi

lacks knowledge or information sufficient to form a belief about the truth of the allegation of

paragraph 1 of the Complaint, and this statement has the effect of a denial pursuant to Federal

Rule of Civil Procedure ("FRCP") 8.

<u>**Complaint Paragraph 2:**</u>

2.      Defendant Delphi Automotive Systems, LLC ("DAS") is a Delaware limited

liability company with a principal place of business at 5725 Delphi Dr., Troy, Michigan 48098.

**Response:**     Delphi admits that Delphi is a Delaware limited liability company with a principal place of business at 5725 Delphi Drive, Troy, Michigan 48098.

**Complaint Paragraph 3:**

3.     Defendant Delphi Technologies, Inc. ("DTI") is a Delaware corporation with a principal place of business at 5725 Delphi Dr., Troy, Michigan 48098.

**Response:**     Delphi admits that Delphi Technologies, Inc. is a Delaware corporation with a principal place of business at 5725 Delphi Dr., Troy, Michigan 48098. Delphi Technologies, Inc. was dismissed from the case pursuant to stipulation. D.I. 11, 17.

**Complaint Paragraph 4:**

4.     This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. § 101 et seq. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

**Response:**     Delphi admits that this is an action for patent infringement arising under the laws of the United States, 35 U.S.C. § 101 et seq., but denies that it has committed any act of infringement and denies the legal sufficiency of Microchip's Complaint. Delphi admits that this Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

**Complaint Paragraph 5:**

5.     Defendant Delphi Automotive Systems, LLC is subject to personal jurisdiction by virtue of its contacts with the State of Delaware, including the fact that it is a Delaware limited liability company.

**Response:**     Delphi admits that Defendant Delphi Automotive Systems, LLC is subject to personal jurisdiction by virtue of its contacts with the State of Delaware, including the fact that it is a Delaware limited liability company.

**Complaint Paragraph 6:**

6.      Defendant Delphi Technologies, Inc. is subject to personal jurisdiction by virtue of its contacts with the State of Delaware, including the fact that it is a Delaware corporation.

**Response:**     Delphi Technologies, Inc. was dismissed from the case pursuant to stipulation. D.I. 11, 17.

**Complaint Paragraph 7:**

7.      Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant Delphi Automotive Systems, LLC and Defendant Delphi Technologies, Inc. reside in this district by virtue of being formed and incorporated in Delaware.

**Response:**     Delphi admits that venue is technically "proper" but Delphi denies that the District of Delaware is appropriate as the venue of this action, because the Eastern District of Michigan is the appropriate venue for the convenience of the parties and witnesses, in the interest of justice, as Delphi proved in its motion to dismiss or transfer the first Microchip Complaint, *Microchip Technology Inc. v. Delphi Automotive Systems, LLC,* No. 2:16-cv-02817-DJH (D. Arizona August 22, 2016) Doc. 33.

**Complaint Paragraph 8:**

8.      U.S. Patent No. 7,523,243, entitled "Multi-Host USB Device Controller" ("the '243 Patent"), was duly and legally issued by the U.S. Patent and Trademark Office to Mark R. Bohm et al. on April 21, 2009. The '243 Patent discloses and claims systems and methods for use with multi-host capable Universal Serial Bus ("USB") device controllers. A true and correct copy of the '243 Patent is attached hereto as Exhibit A.

**Response:**     Delphi admits U.S. Patent No. 7,523,243 is entitled "Multi-Host USB Device Controller," may be referred to as the '243 patent, was issued by the U.S. Patent and Trademark

Office on April 21, 2009, and exhibit A to the Complaint is a copy. Delphi denies, however, that the patent was "duly and legally" issued, as the patent is invalid, see *Delphi Technologies, Inc. v. Microchip Technology Inc.,* IPR2017-00861 and IPR2017-00864 Papers 14 and 12, denies the patent was issued to Mark A. Bohm *et al.*, and denies that the patent "discloses and claims systems and methods for use with multi-host capable Universal Serial Bus ("USB") device controllers." Delphi denies the remaining allegations contained in paragraph 8 of the Complaint.

**Complaint Paragraph 9:**

9.       U.S. Patent No. 7,627,708, entitled "Multi-Host USB Device" ("the '708 Patent"), was duly and legally issued by the U.S. Patent and Trademark Office to Mark R. Bohm et al. on December 1, 2009. The '708 Patent discloses and claims systems and methods for use with USB devices that may be configured and accessed by more than one USB host. A true and correct copy of the '708 Patent is attached hereto as Exhibit B.

**Response:**      Delphi admits U.S. Patent No. 7,627,708 is entitled "Multi-Host USB Device Controller," may be referred to as the '708 patent, was issued by the U.S. Patent and Trademark Office on December 1, 2009, and exhibit B to the Complaint is a copy. Delphi denies, however, that the patent was "duly and legally" issued, as the patent is invalid, see *Delphi Technologies, Inc. v. Microchip Technology Inc.,* IPR2017-00861 and IPR2017-00864 Papers 14 and 12, respectively (August 29, 2017), denies the patent was issued to Mark A. Bohm *et al.*, and denies that the patent "discloses and claims systems and methods for use with USB devices that may be configured and accessed by more than one USB host." Delphi denies the remaining allegations contained in paragraph 9 of the Complaint.

**Complaint paragraph 10:**

10.    U.S. Patent No. 7,478,191, entitled "Method for Automatically Switching USB Peripherals Between USB Hosts" ("the '191 Patent"), was duly and legally issued by the U.S. Patent and Trademark Office to Henry Wurzburg et al. on January 13, 2009. The '191 Patent discloses and claims systems and methods for automatically switching peripheral connectivity between two USB host devices based on respective connectivity of the USB hosts. A true and correct copy of the '191 Patent is attached hereto as Exhibit C.

**Response:**    Delphi admits U.S. Patent No. 7,478,191 is entitled "Method for Automatically Switching USB Peripherals Between USB Hosts," may be referred to as the '191 patent, reflects on its face that it was issued to Henry Wurzburg *et al.* by the U.S. Patent and Trademark Office on January 13, 2009, that it purports to disclose and claim "systems and methods for automatically switching peripheral connectivity between two USB host devices based on respective connectivity of the USB hosts," and that exhibit C to the Complaint is a copy. Delphi denies, however, that the patent was "duly and legally" issued, as the patent is invalid. Delphi denies the remaining allegations contained in paragraph 10 of the Complaint.

**Complaint Paragraph 11:**

11.    Mark R. Bohm, Henry Wurzburg, and the other inventors assigned all right, title, and interest in the '243 Patent, the '708 Patent, and the '191 Patent (the "Asserted Patents") to Standard Microsystems Corporation.

**Response:**    Delphi admits that documents of assignment from the named individuals to the named corporation exist, but Delphi lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 11 of the Complaint, and this statement has the effect of a denial under FRCP 8.

**Complaint Paragraph 12:**

12.     On July 21, 2015, Standard Microsystems Corporation converted from a corporation to a limited liability company, changing its name to Standard Microsystems, LLC.

**Response:**     Delphi lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 12 of the Complaint, and this statement has the effect of a denial under FRCP 8.

**Complaint Paragraph 13:**

13.     On August 5, 2016, Standard Microsystems, LLC assigned all right, title, and interest in the Asserted Patents to MTI. MTI has been at all times since, and still is, the owner of the Asserted Patents.

**Response:**     Delphi lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 13 of the Complaint, and this statement has the effect of a denial under FRCP 8.

**Complaint Paragraph 14:**

14.     Delphi makes, uses, sells, offers to sell, and/or imports a Dual Role Hub product, (also described by Delphi and others as the Multi-Port Breakout Box, Media Hub, and/or Unwired Technology Media Hub) (collectively, "Delphi Dual Role Hub" or "Hub") which implements multi-host type USB devices in an automotive infotainment system environment and, specifically, provides a "host to host" device which enables multi-host functionality, e.g., so that both the infotainment system head unit and a smartphone can act as USB hosts in the system.

**Response:**      Delphi admits that it sells and offers to sell a Dual Role Hub product, but denies the Complaint's characterizations of this product and denies that it infringes any valid claim of the Asserted Patents.

**Complaint Paragraph 15:**

15.      On information and belief, the Delphi Dual Role Hub was originally designed by Unwired Technology LLC, a company that Delphi's affiliate purchased in 2014. A September 30, 2014 Delphi press release discusses this purchase of Unwired Technology, explaining that "Unwired's connectivity products provide two-way data connections between smartphones and tablets and in-car infotainment systems, allowing consumers to safely access content in the vehicle." A true and correct copy of that site (as visited on October 20, 2016) is attached as Exhibit D (available at http://investor.delphi.com/investors/press-releases/press-release-details/2014/Delphi-Signs-Definitive-Agreement-to-Acquire-Unwired-Technology-LLC/default.aspx).

**Response:**      Delphi admits the Dual Role Hub was original, was designed at Unwired Technology LLC ("Unwired"), that a Delphi affiliate purchased Unwired, that a Delphi press release of the stated 2014 date discussed the purchase of Unwired, that the press release included the quoted statement, and that Exhibit D is a paper copy of portions of the referenced website as copied on some date. Except as stated, Delphi denies the allegations of paragraph 15 of the Complaint.

**Complaint Paragraph 16:**

16.      According to Delphi's website (http://delphi.com/media/feature-stories/details/18th-PACE-Award-Dual-Role-Hub), the Delphi Dual Role Hub allows the car

radio and a user's phone "to be recognized as 'host' devices simultaneously." A true and correct copy of that site (as visited on October 18, 2016) is attached as Exhibit E.

**Response:**     Delphi admits that according to a Delphi website, the Dual Role Hub allows the car radio and a user's phone to be recognized as quoted, and that Exhibit E is a paper copy of portions of the referenced website copied at some date. Except as stated, Delphi denies the allegations of paragraph 16 of the Complaint.

**Complaint Paragraph 17:**

17.     According to the same Delphi website, the Delphi Dual Role Hub is "in every mid- and high-level infotainment system for GM globally for model year 2015. Next year, Delphi will solve that problem for more than 40 percent of all GM, Ford and Chrysler products globally, representing 10 million units annually with the potential to reach all OEMs globally." See Exhibit E.

**Response:**     Delphi admits that the referenced Delphi website has the statements quoted and that Exhibit E is a paper copy of a portion of the website. Except as stated, Delphi denies the allegations of paragraph 17 of the Complaint.

**Complaint Paragraph 18:**

18.     According to the same Delphi website, "Delphi's solution is currently the only known IC globally that has both hub functionality and host to host bridging . . . ." *See* Exhibit E.

**Response:**     Delphi admits that the referenced Delphi website has the statement quoted.

**Complaint Paragraph 19:**

19.     On information and belief, Delphi markets and promotes the Delphi Dual Role Hub in the video available at https://vimeo.com/162512071 titled "New USB Hub Helps

Automakers' Make Apple CarPlay™ Work Simultaneously with Other Devices" (hereinafter, the "Delphi Promotional Video").

**Response:**      Delphi admits that the referenced video disclosed the Delphi Dual Role Hub.

**Complaint Paragraph 20:**

20.      The Delphi Promotional Video describes the Delphi Dual Role Hub as follows: "CarPlay operates by simply connecting the Apple phone to a USB connector in the car. When the Apple phone is connected, the infotainment system allows the Apple phone to become the host of the USB communication and to stream content right onto the screen. But when an automaker integrates Apple CarPlay into their infotainment system, they must allow the Apple phone to be the host of the USB communication. This is typically done by using an On-The-Go USB port on the head unit, which would change from a host to a device to support the CarPlay session. Delphi has solved these challenges by providing a USB hub that offers a unique way to bridge two hosts together without these drawbacks. Now users can have their personal content replicated in the vehicle while also allowing other passengers to use content at the same time from a different device. This solution, called Dual Role Hub, gives automakers a unique way to implement CarPlay and provide greater functionality with optimized packaging. Delphi's USB hub with host-to-host bridge is integrated into USB media modules, like the one in this vehicle. In this highly compact module, Delphi can perform the standard USB hub function while accommodating Apple CarPlay. There are three key features of the Delphi USB hub with host-to-host bridge. First, only one USB port is required to access the hub from the head unit, which remains the host port. Second, the Delphi USB hub with the host-to-host bridge allows either USB port on the module to support CarPlay. Third, the USB port in the host-to-host system not

used for CarPlay is still active and can be used for accessing music on a USB drive, accessing

map data for the navigation system, or accessing another phone or iPhone."

**Response:**     Delphi admits that the referenced video described the Dual Role Hub as stated.

**Complaint Paragraph 21:**

21.     As driven, sold, and offered for sale, 2016 Cadillac Escalade automobiles include

Part No. 13596853, "Receptacle ASM-USB 2-port w/REM."

**Response:**     Delphi lacks knowledge or information sufficient to form a belief about the truth

of the allegation of paragraph 21 of the Complaint, and this statement has the effect of a denial

pursuant to FRCP 8.

**Complaint Paragraph 22:**

22.     Part No. 13596853 for the 2016 Cadillac Escalade is available for purchase

through Arrowhead Cadillac, located at 8310 West Bell Road, Glendale, Arizona 85083. A true

and correct photograph of Part No. 13596853, purchased at Arrowhead Cadillac, is attached as

Exhibit F.

**Response:**     Delphi lacks knowledge or information sufficient to form a belief about the truth

of the allegation of paragraph 22 of the Complaint, and this statement has the effect of a denial

pursuant to FRCP 8.

**Complaint Paragraph 23:**

23.     Part No. 13596853, purchased at Arrowhead Cadillac, is stamped with the name

"UNWIRED TECHNOLOGY." A true and correct photograph of Part No. 13596853 that shows

this stamp is attached as Exhibit G.

**Response:**     Delphi lacks knowledge or information sufficient to form a belief about the truth of the allegation of paragraph 23 of the Complaint, and this statement has the effect of a denial pursuant to FRCP 8.

**Complaint Paragraph 24:**

24.     On information and belief, Part No. 13596853 (i.e., the "Receptacle ASM-USB 2-port w/REM"), purchased at Arrowhead Cadillac, is and/or includes the Delphi Dual Role Hub as made and sold by Delphi.

**Response:**     Delphi lacks knowledge or information sufficient to form a belief about the truth of the allegation of paragraph 24 of the Complaint, and this statement has the effect of a denial pursuant to FRCP 8.

**Complaint Paragraph 25:**

25.     On information and belief, the Delphi Dual Role Hubs are sold by Delphi with knowledge they are incorporated in at least the following vehicle models: 2016 Cadillac Escalade; 2016 Chevrolet Suburban and Tahoe; and 2016 GMC Yukon and Yukon XL.

**Response:**     Delphi admits that it has sold accused products to GM or its affiliates. Delphi lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 25 of the Complaint.

**Complaint Paragraph 26:**

26.     A traditional USB hub (e.g., according to the USB specification) cannot recognize two devices simultaneously as host devices.

**Response:**     Delphi lacks knowledge or information sufficient to form a belief about the truth of this allegation of paragraph 26 of the Complaint, and this statement has the effect of a denial pursuant to FRCP 8.

**Complaint Paragraph 27:**

27.     The Delphi Dual Role Hub contains specially-designed circuitry that allows the Hub to recognize the car head unit and a user's phone simultaneously as host devices.

**Response:**     Delphi admits the Dual Rule Hub has specially designed circuitry. Except as admitted, Delphi denies the allegations of paragraph 27 of the Complaint.

**Complaint Paragraph 28:**

28.     The specially-designed circuitry in the Delphi Dual Role Hub includes a multi-host device controller that allows both the car head unit and a user's phone to simultaneously access the Hub as hosts.

**Response:**     Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations of the resulting functionality as set forth in paragraph 28 of the Complaint.

**Complaint Paragraph 29:**

29.     When a user's phone is connected to the Delphi Dual Role Hub, it initially connects as a USB device and not as a USB host.

**Response:**     The allegations of paragraph 29 of the Complaint are too vague, ambiguous, and unclear to permit Delphi to be able reasonably to respond. As alleged, Delphi lacks knowledge or information sufficient to form a belief about the truth of these allegations, and this statement has the effect of a denial pursuant to FRCP 8.

**Complaint Paragraph 30:**

30.     In order to allow the user's phone to be recognized as a host after it initially connects to the Hub as a USB device, the Delphi Dual Role Hub includes switching logic that controls the connections available to the car head unit and the user's phone. This switching logic (and other circuitry) allows the two devices to be simultaneously recognized as host devices.

**Response:**     Delphi denies the characterizations of the functionality of the Dual Role Hub as set forth in paragraph 30 of the Complaint.

**Complaint Paragraph 31:**

31.     On January 12, 2015, MTI delivered a letter to Robert Voto, Vice President of Engineering, and Joseph Damato, Managing Director, at Delphi Data Connectivity (formerly Unwired Technology LLC), providing notice of the '243 Patent and the '708 Patent. In the letter, MTI notified Delphi that "any multi-host USB device control-based solution that might be implemented within the automotive infotainment system environment," would be covered by those patents, including Delphi's "USB device controllers designed for multiple-host connectivity" developed by Unwired Technology. A true and correct copy of the January 12, 2015 letter is attached as Exhibit H.

**Response:**     Delphi admits that the referenced letter was provided, the letter has the content stated, and that exhibit H is a copy of the letter. Except as admitted, Delphi denies the allegations of paragraph 31 of the Complaint, and specifically denies that the two referenced patents have the scope stated for them or that this letter constitutes notice of infringement of any Microchip patent.

**Complaint Paragraph 32:**

32.     On January 30, 2015, Delphi responded to the January 12, 2015 letter above the signature of Craig A. Baldwin, North American Patent Counsel of Delphi. This letter acknowledged the letter of January 12, 2015, and asserted that Delphi had reviewed the '243 Patent and the '708 Patent in view of Delphi's products and/or products in development.

**Response:**     Delphi admits that Delphi responded on January 30, 2015 to the January 12, 2015 letter, that it was specifically Craig A. Baldwin, North American Patent Counsel of Delphi who

responded for Delphi, and that his letter acknowledged the letter of January 12, 2015, and asserted that Delphi had reviewed the '243 Patent and the '708 Patent in view of Delphi's products and/or products in development. Except as admitted, Delphi denies the allegations contained in paragraph 32 of the Complaint.

**Complaint Paragraph 33:**

33.     Delphi sells the Delphi Dual Role Hub to automotive manufacturers and other entities with the knowledge and intent that the Hub will be incorporated in automotive infotainment systems to be later incorporated and sold as part of an automobile and/or other final products.

**Response:**     Admitted.

**Complaint Paragraph 34:**

34.     The Hub alone infringes the Asserted Patents, is material to practicing the Asserted Patents, has no substantial non-infringing uses, and is known by Delphi to be especially made or especially adapted for use in an infringement of the Asserted Patents.

**Response:**     Delphi denies the allegations of paragraph 34 of the Complaint. Specifically, Delphi denies that the Dual Role Hub, alone or in combination with any other product, infringes any claim of the Asserted Patents. In addition to Delphi's denial of infringement, the Dual Role Hub has substantial uses that are not even alleged to infringe, including that with no iPhone playing CarPlay attached it has the substantial non-infringing use of allowing the infotainment head unit to function without regard to iPhone functionality or CarPlay functionality.

14

**Complaint Paragraph 35:**

35.     On information and belief, Delphi tests and uses the Delphi Dual Role Hub in the United States, for example, by connecting more than one host to the Hub such that the Hub simultaneously recognizes them as host devices.

**Response:**     Delphi admits that Delphi has tested and used the Dual Role Hub in the United States. Except as admitted, Delphi denies the allegations of paragraph 35 of the Complaint.

**Complaint Paragraph 36:**

36.     On information and belief, Delphi's customers test and use the Delphi Dual Role Hub in the United States, for example, by connecting more than one host to the Hub such that the Hub simultaneously recognizes them as host devices.

**Response:**     Delphi lacks knowledge or information sufficient to form a belief about the truth of the allegation of paragraph 36 of the Complaint, and this statement has the effect of a denial pursuant to FRCP 8.

**Complaint Paragraph 37:**

37.     Following a previous lawsuit by MTI against DAS, DTI filed three petitions for inter partes review ("IPR") at the U.S. Patent Office challenging the validity of the Asserted Patents. DTI identified itself as the real party in interest to the IPRs.

**Response:**     Delphi admits the allegations of paragraph 37 of the Complaint.

**Complaint Paragraph 38:**

38.     On information and belief, DTI wholly or partially directs or controls the making, using, selling, offering to sell, and/or importing of the Delphi Dual Role Hub.

**Response:**     Delphi Technologies, Inc. was dismissed from the case pursuant to stipulation. D.I. 11, 17.

**Complaint Paragraph 39:**

39.     On information and belief, DAS wholly or partially directs or controls the making, using, selling, offering to sell, and/or importing of the Delphi Dual Role Hub.

**Response:**     Admitted for purpose of this case and only this case.

### COUNT I – [ALLEGED] INFRINGEMENT OF THE '243 PATENT

**Complaint Paragraph 40:**

40.     MTI incorporates by reference and re-states paragraphs 1 through 39.

**Response:**     Delphi incorporates by reference and re-states its responses to paragraphs 1 through 39 of the Complaint.

**Complaint Paragraph 41:**

41.     At least since January 12, 2015, Delphi has had knowledge of the '243 Patent.

**Response:**     Delphi admits that it has had knowledge of the fact of existence of the '243 patent since January 12, 2015, but Delphi denies that it has had knowledge of the allegations of Microchip concerning the coverage of the patent, because Microchip withheld information concerning its allegations from Delphi.

**Complaint Paragraph 42:**

42.     Delphi has and continues to directly infringe, induce the infringement of, and/or contributorily infringe at least claim 1 of the '243 Patent.

**Response:**     Delphi denies the allegations of paragraph 42 of the Complaint.

**Complaint Paragraph 43:**

43.     The specially-designed circuitry in the Delphi Dual Role Hub includes "first and second upstream ports configured to couple to corresponding first and second hosts." The first and second upstream ports are the ports designed to be connected to the car's head unit and a

user's phone, i.e., the devices that are "recognized as 'host' devices simultaneously." See Exhibit E.

**Response:**    Delphi admits that the Dual Role Hub includes ports that can be connected to a car's head unit and a user's phone, but denies the characterizations and remaining allegations of paragraph 43 of the Complaint.

**Complaint Paragraph 44:**

44.    The specially-designed circuitry in the Delphi Dual Role Hub includes "a USB device block corresponding to at least one function." This circuitry allows the Hub to recognize the car's head unit and a user's phone simultaneously as host devices. Monitoring the USB signaling (e.g., data communications) on the connection between (1) the car's head unit and the Hub and (2) the Hub and a phone confirms the existence of at least one USB device block in the Hub.

**Response:**    Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 44 of the Complaint.

**Complaint Paragraph 45:**

45.    The specially-designed circuitry in the Delphi Dual Role Hub includes "a multi-host device controller coupling the USB device block to the first and second upstream ports, wherein the multi-host device controller is configured to establish concurrent respective dedicated USB connections between the USB device block and the first and second upstream ports." This circuitry establishes dedicated USB connections between the car's head unit and the USB device block, and a user's phone and the USB device block. Monitoring the USB signaling (e.g., data communications) on the connection between (1) the car's head unit and the Hub and (2) the Hub and a phone confirms these connections are established.

17

**Response:**     Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 45 of the Complaint.

**Complaint Paragraph 46:**

46.     The specially-designed circuitry in the Delphi Dual Role Hub allows the first and second hosts "to simultaneously request access to the USB device." Monitoring the USB signaling (e.g., data communications) on the connection between (1) the car's head unit and the Hub and (2) the Hub and a phone confirms that the two hosts can simultaneously request access to the USB device.

**Response:**     Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 46 of the Complaint.

**Complaint Paragraph 47:**

47.     The specially-designed circuitry in the Delphi Dual Role Hub allows the first and second hosts "to alternately access the USB device block to use the at least one function without either one of the first and second hosts reconfiguring the USB device block each time a different one of the first and second hosts is given access to the USB device block to use the at least one function." Monitoring the USB signaling (e.g., data communications) on the connection between (1) the car's head unit and the Hub and (2) the Hub and a phone confirms that the car's head unit and the phone can alternately access the USB device block without having to reconfigure the device block each time either one is given access to the USB device block.

**Response:**     Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 47 of the Complaint.

**Complaint Paragraph 48:**

48.     Delphi directly infringes the '243 Patent at least through using and/or testing the Delphi Dual Role Hub in the United States.

**Response:**     Delphi denies the allegations of paragraph 48 of the Complaint.

**Complaint Paragraph 49:**

49.     End users of the Delphi Dual Role Hub, including Delphi's customers (e.g., auto manufacturers) and individuals using automobiles that include the Delphi Dual Role Hub, have been and still are infringing the '243 Patent by making, using, selling, offering to sell, and/or importing the Delphi Dual Role Hub and/or products that contain the Delphi Dual Role Hub.

**Response:**     Delphi denies the allegations of paragraph 49 of the Complaint.

**Complaint Paragraph 50:**

50.     Delphi has been and still is inducing infringement and contributing to infringement of the '243 Patent by providing its Delphi Dual Role Hub to other entities with knowledge of the '243 Patent and knowledge the Delphi Dual Role Hub will be part of additional infringing products made, used, sold, offered for sale, and/or imported by Delphi's customers.

**Response:**     Delphi denies the allegations of paragraph 50 of the Complaint.

**Complaint Paragraph 51:**

51.     Delphi has contributed to the infringement of the '243 Patent. Delphi purchased Unwired Technology LLC because its "connectivity products provide two-way data connections between smartphones and tablets and in-car infotainment systems." Therefore, Delphi knows that the Delphi Dual Role Hub is especially made for use in an infringement of the '243 Patent, because as described above, it provides a USB hub that can simultaneously recognize and provide access to two hosts plugged into the Hub, as claimed in the '243 Patent. Delphi also has

knowledge that the Delphi Dual Role Hub has no substantial non-infringing use because it is specifically designed, marketed, and sold to automobile manufacturers for use in automobiles that support a multi-host system that allow end users to use a phone as a host in the system while the car head unit is also a host, as claimed in the '243 Patent. On information and belief, in the absence of reconfiguration, the Delphi Dual Role Hub cannot be used for purposes other than infringing the '243 Patent.

**Response:**      Delphi denies the allegations of paragraph 51 of the Complaint.

**Complaint Paragraph 52:**

52.      On information and belief, at least as early as the date when Delphi learned of the '243 Patent, Delphi actively induced infringement of the '243 Patent by its direct and indirect customers, including for example and without limitation, automobile manufacturers and end users such as those using the Hub in an automobile. Delphi's acts of inducing infringement include marketing, promoting (including providing instructions for use, e.g. the Delphi Promotional Video), selling, offering for sale, and/or importing the Delphi Dual Role Hub. On information and belief, at least as early as the date when Delphi learned of the '243 Patent, Delphi knew that the activities of its direct and indirect customers, including the activities taught by the aforementioned marketing and promotional materials, constituted direct infringement of the '243 Patent and specifically intended its direct and indirect customers to directly infringe the '243 Patent through their using, testing, selling, offering for sale, and/or importing the Delphi Dual Role Hub.

**Response:**      Delphi denies the allegations of paragraph 52 of the Complaint.

**Complaint Paragraph 53:**

53.     At least since the date when Delphi learned of the '243 Patent, Delphi's infringement of the '243 Patent has been willful and deliberate. Delphi's willful infringement includes, without limitation, its continued deliberate and flagrant infringement for more than two years after learning of the '243 Patent.

**Response:**     Delphi denies the allegations of paragraph 53 of the Complaint.

**Complaint Paragraph 54:**

54.     On information and belief, Delphi will continue to infringe, induce infringement of, and contribute to infringement of the '243 Patent unless enjoined by this Court.

**Response:**     Delphi denies the allegations of paragraph 54 of the Complaint.

**Complaint Paragraph 55:**

55.     As a result of Delphi's infringement of the '243 Patent, MTI has suffered and will continue to suffer damages in an amount to be proven at trial.

**Response:**     Delphi denies the allegations of paragraph 55 of the Complaint.

**Complaint Paragraph 56:**

56.     As a result of Delphi's infringement of the '243 Patent, MTI has suffered and will continue to suffer irreparable harm unless Delphi is enjoined against such acts by this Court.

**Response:**     Delphi denies the allegations of paragraph 56 of the Complaint.

**Complaint Paragraph 57:**

57.     As a result of Delphi's infringement of the '243 Patent, MTI is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

**Response:**     Delphi denies the allegations of paragraph 57 of the Complaint.

## COUNT II – [ALLEGED] INFRINGEMENT OF THE '708 PATENT

**Complaint Paragraph 58:**

58.    MTI incorporates by reference and re-states paragraphs 1 through 57.

**Response:**    Delphi incorporates by reference and re-states its responses to paragraphs 1 through 57 of the Complaint.

**Complaint Paragraph 59:**

59.    At least since January 12, 2015, Delphi has had knowledge of the '708 Patent.

**Response:**    Delphi admits it has known of the fact of existence of the '708 patent since January 12, 2015, but denies that it has had knowledge of the allegations of Microchip concerning the coverage of the patent, because Microchip withheld information concerning its allegations from Delphi.

**Complaint Paragraph 60:**

60.    Delphi has and continues to directly infringe, induce the infringement of, and/or contributorily infringe at least claim 3 of the '708 Patent.

**Response:**    Delphi denies the allegations of paragraph 60 of the Complaint.

**Complaint Paragraph 61:**

61.    The specially-designed circuitry in the Delphi Dual Role Hub includes "a USB function block." This circuitry allows the car's head unit and a user's phone "to be recognized as 'host' devices simultaneously." See Exhibit E. Monitoring the USB signaling (e.g., data communications) on the connection between (1) the car's head unit and the Hub and (2) the Hub and a phone confirms the existence of at least one USB function block in the Hub.

**Response:**    Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 61 of the Complaint.

22

**Complaint Paragraph 62:**

62.     The specially-designed circuitry in the Delphi Dual Role Hub includes "a multi-host device controller coupling the USB function block to a first host and a second host, wherein the multi-host device controller is configured to establish a first USB connection between the first host and the USB function block and a second USB connection between the second host and the USB function block, wherein the first USB connection and the second USB connection are concurrent." This circuitry establishes these concurrent USB connections between the car's head unit and the USB function block, and a user's phone and the USB function block. Monitoring the USB signaling (e.g., data communications) on the connection between (1) the car's head unit and the Hub and (2) the Hub and a phone confirms these connections are established.

**Response:**     Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 62 of the Complaint.

**Complaint Paragraph 63:**

63.     The specially-designed circuitry in the Delphi Dual Role Hub allows the first and second hosts "to simultaneously access the USB multi-host device." Monitoring the USB signaling (e.g., data communications) on the connection between (1) the car's head unit and the Hub and (2) the Hub and a phone confirms that the two hosts can simultaneously access the USB multi-host device.

**Response:**     Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 63 of the Complaint.

**Complaint Paragraph 64:**

64.     The specially-designed circuitry in the Delphi Dual Role Hub allows the first and second hosts "to alternately access the USB function block without either one of the first and

23

second hosts reconfiguring the USB multi-host device each time a different one of the first host and the second host is given access to the USB function block." Monitoring the USB signaling (e.g., data communications) on the connection between (1) the car's head unit and the Hub and (2) the Hub and a phone confirms that the car's head unit and the phone can alternately access the USB function block without having to reconfigure the USB multi-host device each time either one is given access to the USB function block.

**Response:**    Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 64 of the Complaint.

**<u>Complaint Paragraph 65:</u>**

65.    Delphi directly infringes the '708 Patent at least through using and/or testing the Delphi Dual Role Hub in the United States.

**Response:**    Delphi denies the allegations of paragraph 65 of the Complaint.

**<u>Complaint Paragraph 66:</u>**

66.    End users of the Delphi Dual Role Hub, including Delphi's customers (e.g., auto manufacturers) and individuals using automobiles that include the Delphi Dual Role Hub, have been and still are infringing the '708 Patent by making, using, selling, offering to sell, and/or importing the Delphi Dual Role Hub and/or products that contain the Delphi Dual Role Hub.

**Response:**    Delphi denies the allegations of paragraph 66 of the Complaint.

**<u>Complaint Paragraph 67:</u>**

67.    Delphi has been and still is inducing infringement and contributing to infringement of the '708 Patent by providing its Delphi Dual Role Hub to other entities with knowledge of the '708 Patent and knowledge the Delphi Dual Role Hub will be part of additional infringing products made, used, sold, offered for sale, and/or imported by Delphi's customers.

24

**Response:**      Delphi denies the allegations of paragraph 67 of the Complaint.

**Complaint Paragraph 68:**

68.      Delphi has contributed to the infringement of the '708 Patent. Delphi purchased Unwired Technology LLC because its "connectivity products provide two-way data connections between smartphones and tablets and in-car infotainment systems." Therefore, Delphi knows that the Delphi Dual Role Hub is especially made for use in an infringement of the '708 Patent, because as described above, it provides a USB hub that can simultaneously recognize and provide access to two hosts plugged into the Hub, as claimed in the '708 Patent. Delphi also has knowledge that the Delphi Dual Role Hub has no substantial non-infringing use because it is specifically designed, marketed, and sold to automobile manufacturers for use in automobiles that support a multi-host system that allow end users to use a phone as a host in the system while the car head unit is also a host, as claimed in the '708 Patent. On information and belief, in the absence of reconfiguration, the Delphi Dual Role Hub cannot be used for purposes other than infringing the '708 Patent.

**Response:**      Delphi denies the allegations of paragraph 68 of the Complaint.

**Complaint Paragraph 69:**

69.      On information and belief, at least as early as the date when Delphi learned of the '708 Patent, Delphi actively induced infringement of the '708 Patent by its direct and indirect customers, including for example and without limitation, automobile manufacturers and end users such as those using the Hub in an automobile. Delphi's acts of inducing infringement include marketing, promoting (including providing instructions for use, e.g. the Delphi Promotional Video), selling, offering for sale, and/or importing the Delphi Dual Role Hub. On information and belief, at least as early as the date when Delphi learned of the '708 Patent,

Delphi knew that the activities of its direct and indirect customers, including the activities taught by the aforementioned marketing and promotional materials, constituted direct infringement of the '708 Patent and had specifically intended the its direct and indirect customers to directly infringe the '708 Patent through their using, testing, selling, offering for sale, and/or importing the Delphi Dual Role Hub.

**Response:**      Delphi denies the allegations of paragraph 69 of the Complaint.

**Complaint Paragraph 70:**

70.      At least since the date when Delphi learned of the '708 Patent, Delphi's infringement of the '708 Patent has been willful and deliberate. Delphi's willful infringement includes, without limitation, its continued deliberate and flagrant infringement for more than two years after learning of the '708 Patent.

**Response:**      Delphi denies the allegations of paragraph 70 of the Complaint.

**Complaint Paragraph 71:**

71.      On information and belief, Delphi will continue to infringe, induce infringement of, and contribute to infringement of the '708 Patent unless enjoined by this Court.

**Response:**      Delphi denies the allegations of paragraph 71 of the Complaint.

**Complaint Paragraph 72:**

72.      As a result of Delphi's infringement of the '708 Patent, MTI has suffered and will continue to suffer damages in an amount to be proven at trial.

**Response:**      Delphi denies the allegations of paragraph 72 of the Complaint.

**Complaint Paragraph 73:**

73.      As a result of Delphi's infringement of the '708 Patent, MTI has suffered and will continue to suffer irreparable harm unless Delphi is enjoined against such acts by this Court.

**Response:**      Delphi denies the allegations of paragraph 73 of the Complaint.

**Complaint Paragraph 74:**

74.      As a result of Delphi's infringement of the '708 Patent, MTI is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

**Response:**      Delphi denies the allegations of paragraph 74 of the Complaint.

### COUNT III – [ALLEGED] INFRINGEMENT OF THE '191 PATENT

**Complaint Paragraph 75:**

75.      MTI incorporates by reference and re-states paragraphs 1 through 74.

**Response:**      Delphi incorporates by reference and re-states its responses to paragraphs 1 through 74 of the Complaint.

**Complaint Paragraph 76:**

76.      At least since August 25, 2016, Delphi has had knowledge of the '191 Patent.

**Response:**      Delphi admits it has known of the fact of existence of the '191 Patent since August 26, 2016 when Microchip filed its original lawsuit, but denies that it infringes or has infringed any valid, enforceable claim of the '191 patent.

**Complaint Paragraph 77:**

77.      Delphi has and continues to directly infringe, induce the infringement of, and/or contributorily infringe at least claim 7 of the '191 Patent.

**Response:**      Delphi denies the allegations of paragraph 77 of the Complaint.

**Complaint Paragraph 78:**

78.      The specially-designed circuitry in the Delphi Dual Role Hub includes "a first input for coupling to a first USB host device and a second input for coupling to a second USB host device."  The first input of the Hub is for coupling to a car's head unit and the second input

27

is for coupling to a user's cell phone.  Because of these couplings, the two hosts are "recognized as 'host' devices simultaneously."  *See* Exhibit E.

**Response:**     Delphi admits that the Dual Role Hub includes ports that can be connected to a car's head unit and a user's phone and has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 78 of the Complaint.

**Complaint Paragraph 79:**

79.     The specially-designed circuitry in the Delphi Dual Role Hub includes "a plurality of peripheral device inputs for coupling to respective ones of a plurality of peripheral USB devices."  On information and belief, the Hub has a plurality of peripheral device inputs for coupling to peripheral USB devices internal to the Hub module (e.g., WinUSB device, host-to-host bridge device) as well as other peripheral devices described in Delphi's promotional material: "Third, the USB port in the host-to-host system not used for CarPlay is still active and can be used for accessing music on a USB drive, accessing map data for the navigation system, or accessing another phone or iPhone."  *See* Delphi Promotional Video.

**Response:**     Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 79 of the Complaint.

**Complaint Paragraph 80:**

80.     The specially-designed circuitry in the Delphi Dual Role Hub includes "switching logic that is operable to provide connectivity between the first input and the plurality of peripheral device inputs when the first USB host device is connected to the first input and the second USB host device is not connected to the second input."  For example, the Hub includes switching logic that provides connectivity between the car's head unit and the aforementioned

peripheral USB devices when the head unit is connected to the first input and the user's phone is not connected to the second input.

**Response:**     Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 80 of the Complaint.

**<u>Complaint Paragraph 81:</u>**

81.     The specially-designed circuitry in the Delphi Dual Role Hub includes "switching logic that is operable to automatically provide connectivity between the second input and one or more of the plurality of peripheral device inputs when the second USB host device is connected to the second input, wherein the switching logic is configured to maintain connectivity between the first input and the remaining ones of the plurality of peripheral device inputs that were not provided connectivity to the second input."  For example, the Hub's switching logic automatically provides connectivity between the second input and one or more of the aforementioned peripheral device inputs when the user's phone connects to the second input as a host device.  The switching logic maintains connectivity between the first input (connected to the head unit) and the remaining ones of the plurality of peripheral device inputs that were not provided connectivity to the second input, for example, as described in Delphi's promotional material: "Third, the USB port in the host-to-host system not used for CarPlay is still active and can be used for accessing music on a USB drive, accessing map data for the navigation system, or accessing another phone or iPhone."  *See* Delphi Promotional Video.

**Response:**     Delphi admits that the Dual Role Hub has specially designed circuitry, but denies the characterizations and remaining allegations of paragraph 81 of the Complaint.

**Complaint Paragraph 82:**

82.     Delphi directly infringes the '191 Patent at least through using and/or testing the Delphi Dual Role Hub in the United States.

**Response:**     Delphi denies the allegations of paragraph 82 of the Complaint.

**Complaint Paragraph 83:**

83.     End users of the Delphi Dual Role Hub, including Delphi's customers (e.g., auto manufacturers) and individuals using automobiles that include the Delphi Dual Role Hub, have been and still are infringing the '191 Patent by making, using, selling, offering to sell, and/or importing the Delphi Dual Role Hub and/or products that contain the Delphi Dual Role Hub.

**Response:**     Delphi denies the allegations of paragraph 83 of the Complaint.

**Complaint Paragraph 84:**

84.     Delphi has been and still is inducing infringement and contributing to infringement of the '191 Patent by providing its Delphi Dual Role Hub to other entities with knowledge of the '191 Patent and knowledge the Delphi Dual Role Hub will be part of additional infringing products made, used, sold, offered for sale, and/or imported by Delphi's customers.

**Response:**     Delphi denies the allegations of paragraph 84 of the Complaint.

**Complaint Paragraph 85:**

85.     Delphi has contributed to the infringement of the '191 Patent. Delphi purchased Unwired Technology LLC because its "connectivity products provide two-way data connections between smartphones and tablets and in-car infotainment systems."  Therefore, Delphi knows that the Delphi Dual Role Hub is especially made for use in an infringement of the '191 Patent, because as described above, it provides a USB hub with switching logic for connecting a second host while maintaining connections to other non-host devices plugged into the Hub, as claimed

in the '191 Patent.  Delphi also has knowledge that the Delphi Dual Role Hub has no substantial

non-infringing use because it is specifically designed, marketed, and sold to automobile

manufacturers for use in automobiles that support a multi-host system that allow end users to use

a phone as a host in the system while the car head unit is also a host, as claimed in the '191

Patent.  On information and belief, in the absence of reconfiguration, the Delphi Dual Role Hub

cannot be used for purposes other than infringing the '191 Patent.

**Response:**     Delphi denies the allegations of paragraph 85 of the Complaint.

**Complaint Paragraph 86:**

86.     On information and belief, at least as early as the above date when Delphi learned

of the '191 Patent, Delphi actively induced infringement by its direct and indirect customers,

including for example and without limitation, automobile manufacturers and end users such as

those using the Hub in an automobile.  Delphi's acts of inducing infringement include marketing,

promoting (including providing instructions for use, e.g. the Delphi Promotional Video), selling,

offering for sale, and/or importing the Delphi Dual Role Hub.  On information and belief, at least

as early as the date when Delphi learned of the '191 Patent, Delphi knew that the activities of its

direct and indirect customers, including the activities taught by the aforementioned marketing

and promotional materials, constituted direct infringement of the '191 Patent and had specifically

intended its direct and indirect customers to directly infringe the '191 Patent through their using,

testing, selling, offering for sale, and/or importing the Delphi Dual Role Hub.

**Response:**     Delphi denies the allegations of paragraph 86 of the Complaint.

**Complaint Paragraph 87:**

87.     At least since the date when Delphi learned of the '191 Patent, Delphi's

infringement of the '191 Patent has been willful and deliberate.  Delphi's willful infringement

includes, without limitation, its continued deliberate and flagrant infringement for more than two years after learning of the '191 Patent.

**Response:**     Delphi denies the allegations of paragraph 87 of the Complaint.

**Complaint Paragraph 88:**

88.     On information and belief, Delphi will continue to infringe, induce infringement of, and contribute to infringement of the '191 Patent unless enjoined by this Court.

**Response:**     Delphi denies the allegations of paragraph 88 of the Complaint.

**Complaint Paragraph 89:**

89.     As a result of Delphi's infringement of the '191 Patent, MTI has suffered and will continue to suffer damages in an amount to be proven at trial.

**Response:**     Delphi denies the allegations of paragraph 89 of the Complaint.

**Complaint Paragraph 90:**

90.     As a result of Delphi's infringement of the '191 Patent, MTI has suffered and will continue to suffer irreparable harm unless Delphi is enjoined against such acts by this Court.

**Response:**     Delphi denies the allegations of paragraph 90 of the Complaint.

**Complaint Paragraph 91:**

91.     As a result of Delphi's infringement of the '191 Patent, MTI is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

**Response:**     Delphi denies the allegations of paragraph 91 of the Complaint.

### **Complaint Prayer for Relief:**

WHEREFORE, MTI prays for judgment and seeks relief against Delphi as follows:

(a)     for a judgment that Delphi has directly infringed, induced infringement of, or contributed to infringement of one or more claim of the Asserted Patents in connection with the Delphi Dual Role Hub;

(b)     for a judgment and award of all damages sustained by MTI as the result of Delphi's infringement, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting as needed;

(c)     for permanent injunctions enjoining Delphi and anyone in concert with Delphi from infringing, inducing infringement of, or contributing to the inducement of the Asserted Patents;

(d)     for a judgment that Delphi's infringement has been willful, and an award of enhanced damages pursuant to 35 U.S.C. § 284;

(e)     for a judgment and an award of attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

(f)     for a judgment and an award of all interest and costs incurred; and

(g)     for a judgment and an award of such other and further relief as the Court may deem just and proper.

**Response:**     Delphi denies that Microchip should be awarded any relief by the Court. To the extent any allegations of the Complaint have not been specifically admitted or denied, Delphi denies them.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense
### (Non-Infringement)

Delphi has not infringed, and does not infringe, under any theory of infringement, any valid, enforceable claim of any of the Asserted Patents, whether directly, indirectly, contributorily, through the doctrine of equivalents, or otherwise, and is not inducing and has not induced others to infringe any of the Asserted Patents. To the extent Microchip alleges indirect infringement, Delphi is not and has not knowingly caused indirect infringement by any third party of any valid and enforceable claim of the Asserted Patents, and the accused Dual Role Hub has substantial non-infringing uses.

## Third Affirmative Defense
### (Invalidity)

Each asserted claim of the Asserted Patents is invalid for failure to comply with one or more of the statutory requirements specified in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101, 102, 103, and 112, 116, 119, and/or 120.

## Fourth Affirmative Defense
### (Intervening Rights)

If Microchip amends claims of a patent-in-suit in *inter partes* review ("IPR"), then Delphi has intervening rights.

## Fifth Affirmative Defense
### (Failure to Mark)

On information and belief, Microchip's claims for recovery are barred or limited, in whole or in part, prior to the date on which Delphi received actual notice of Microchip's allegations of infringement concerning the Asserted Patents, including under 35 U.S.C. § 287.

## Sixth Affirmative Defense
### (Failure to Disclaim)

On information and belief, Microchip's claims for recovery are barred or limited, in whole or in part, by 35 U.S.C. § 288 (failure to disclaim invalid claim(s)).

## Seventh Affirmative Defense
### (Prosecution Admissions & Estoppel)

Microchip's claims are barred, in whole or in part, based upon prosecution history estoppel, prosecution history disclaimer, and/or the internally inconsistent litigation positions Microchip has explicitly or implicitly taken with respect to the Asserted Patents in proceedings before the USPTO in the prosecution of one of more of the Asserted Patents, including by accusing functionality that predates the earliest possible priority date of any asserted claim. As a result, Microchip is estopped to maintain that the claims of the Asserted Patents are of such scope or have effect against any apparatus made, used or sold by Delphi.

## Eighth Affirmative Defense
### (Equitable Doctrines)

Microchip's claims and relief sought in its Complaint are barred, in whole or in part, by equitable doctrines including laches, estoppel, and unclean hands based on its past actions and omissions, which are contrary to the claims and relief it now seeks.

## Reservation of Rights & Prayer for Relief

Delphi expressly reserves the right to assert any other legal or equitable defenses to which it is shown to be entitled, including all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses that may now exist or in the future be available based on discovery or further factual investigation in this case.

WHEREFORE, Delphi respectfully prays for the following relief:

a.  A judgment dismissing Microchip's Complaint with prejudice;

b.  A judgment that this case is exceptional under 35 U.S.C. § 285;

c.  A judgment awarding Delphi its costs and attorneys' fees; and

d.  A judgment awarding Delphi such other relief as the Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Delphi respectfully requests a trial by jury on all issues so triable.

## DELPHI'S COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Delphi Automotive Systems, LLC ("Delphi") as Counterclaim-Plaintiff asserts its counterclaims against Counterclaim-Defendant Microchip Technology Inc. ("Microchip") as follows:

### Parties

1.  Delphi is a Delaware limited liability company with a principal place of business at 5725 Delphi Drive, Troy, Michigan 48098.

2.  Microchip is a Delaware corporation.

### Jurisdiction and Venue

3.  Jurisdiction over these counterclaims arises under the Federal Declaratory Judgments Act, Title 28 U.S.C. §§ 2201 and 2202, and the laws of the United States concerning jurisdiction of actions relating to Letters Patent, Title 28 U.S.C. § 1338(a).

4.      In its Complaint and its earlier Microchip Complaint in Arizona, *i.e.,* in *Microchip Technology Inc. v. Delphi Automotive Systems, LLC,* No. 2:16-cv-02817-DJH (D. Arizona August 22, 2016, Microchip accused Delphi with infringement of "at least claim 1 of the '243 patent," which patent is U.S. Patent No. 7,523, 243; "at least claim 3 of the '708 patent," which patent is U.S. Patent No. 7,627,708; and "at least claim 7 of the '191 patent," which patent is U.S. Patent No. 7,478,191 (collectively, "the Asserted Patents") through its Dual Role Hub. In spite of the "at least" language, Microchip did not specifically accuse Delphi with infringement of any other claims or apply the limitations of any claims to the Dual Role Hub.

5.      A justiciable controversy has arisen between Delphi and Microchip with respect to the Asserted Patents.

## COUNT I: NON-INFRINGEMENT OF THE '243 PATENT

6.      Delphi realleges and incorporates by reference the allegations of paragraphs 1 through 5 of its Counterclaims above.

7.      Delphi has not infringed and does not infringe, either directly or indirectly, the one claim of the '243 patent for which the Complaint specifically accused Delphi of infringement, claim 1.

8.      Claim 1 of the '243 patent is as follows, after changes resulting from a certificate of correction:

> 1. A USB multi-host device comprising:
> first and second upstream ports configured to couple to corresponding first and second hosts;
> a USB device block corresponding to at least one function; and
> a multi-host device controller coupling the USB device block to the first and second upstream ports, wherein the multi-host device controller is configured to establish concurrent respective dedicated USB connections between the USB device block and the first and second upstream ports, to allow the corresponding first and second hosts to:
> simultaneously request access to the USB device; and

alternately access the USB device block to use the at least one function without either one of the first and second hosts reconfiguring the USB device block each time a different one-of the first and second hosts is given access to the USB device block to use the at least one function.

9.      No federal court has construed or interpreted any limitation of claim 1.

10.     Microchip has not itself construed or interpreted any limitation of claim 1 in a brief for a federal court.

11.     Microchip has not applied construed or interpreted limitations of claim 1 to the Delphi Dual Role Hub in infringement contentions for this or any other court.

12.     Delphi is without sufficient information to form a belief as to what will be the construction or interpretation of any limitation of claim 1 by this Court, and what will be the allegations of Microchip of application of the limitations of the claim to the Delphi Dual Role Hub in infringement contentions.

13.     Delphi incorporates by reference its denials set forth above in Delphi's responses to paragraphs 8 and 40 through 57 of the Complaint.

14.     The Dual Role Hub product has an upstream port for the entertainment unit of automotive vehicles. On information and belief, in comparison to the limitations of claim 1 of the '243 patent, the Dual Rule Hub has one and only one upstream port.

15.     The Dual Role Hub product has two downstream ports.

16.     The Dual Role Hub product has functionality to allow communication between a vehicle entertainment unit connected to the upstream port and USB devices connected to one or both of the two downstream ports.

17.     The Dual Role Hub product has functionality to allow communication between the entertainment unit of automotive vehicles connected to the upstream port and a USB host connected to one of the downstream ports of the Dual Role Hub.

18.     The Dual Role Hub product has a host-to-host bridge to facilitate communication between the entertainment unit connected to the upstream port and a USB host connected to a downstream port of the Dual Role Hub.

19.     The Dual Role Hub product does not allow a USB host connected to one downstream port to communicate with any USB devices connected to the other downstream port.

20.     On information and belief, based on the lack of interpretation or construction of the limitations of claim 1 by a court, the lack of interpretation or construction contentions from Microchip, the lack of infringement contentions from Microchip, and the foregoing statements of the structure and functionalities of the Dual Rule Hub, the Dual Role Hub is not the multi-host device of claim 1 of the '243 patent. It is not a such a device that comprises first and second upstream ports configured to couple to corresponding first and second hosts, a USB device block corresponding to at least one function, and a multi-host device controller coupling the USB device block to the first and second upstream ports, wherein the multi-host device controller is configured to establish concurrent respective dedicated USB connections between the USB device block and the first and second upstream ports, to allow the corresponding first and second hosts to: simultaneously request access to the USB device; and alternately access the USB device block to use the at least one function without either one of the first and second hosts reconfiguring the USB device block each time a different one of the first and second hosts is given access to the USB device block to use the at least one function.

21.     On information and belief based on the foregoing and the lack of specific assertion by Microchip of infringement by Delphi through its Dual Role Hub of any other claim of the '243 patent, Delphi does not infringe any valid, enforceable claim of the '243 patent.

22.     Absent a declaration that Delphi does not infringe the '243 patent, Microchip will continue to wrongfully assert the '243 patent against Delphi in violation of the laws and contrary to the public policy of the United States of America, and will thereby continue to cause Delphi irreparable injury and damage. A decree by this Court with respect to the issue of non-infringement of the claims of the Asserted Patents, as between Delphi and Microchip, is reasonably calculated to prevent needless additional litigation in this and other jurisdictions between Delphi and Microchip.

23.     By reason of the foregoing, there is an actual and justiciable controversy between Delphi on the one hand, and Microchip on the other, and Delphi is entitled to a decree of non-infringement of the claims of the Asserted Patents.

## COUNT II: INVALIDITY OF CLAIMS 1-25 OF THE '243 PATENT

24.     Delphi realleges and incorporates by reference the allegations of paragraphs 1 through 23 of its Counterclaims above.

25.     The claims 1-25, all claims, of the '243 patent are invalid for failure to satisfy one or more of the conditions of patentability specified in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101, 102, 103 and 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II and III of Title 35 of the United States Code.

26.     The claims of the '243 patent are invalid under 35 U.S.C. § 101 as not patent-eligible.

27.     The claims, particularly but not limited to claim 1 and method claims 18-22, are directed to abstract ideas.

28.     The elements of claims, both individually and as an ordered combination, do not transform the nature of the claims into a patent-eligible application of the abstract idea.

29.     An inventive concept is not evident in the ineligible claims.

30.     Claim 18 is representative of the ineligible claims for purposes of eligibility.

31.     Claim 18 is directed, by example explanation and not limitation, to the abstract idea of (1) establishing component connections, (2) receiving requests from some of the components, and (3) processing the requests. Processing is for (a) allowing the requesting components to alternate in access to other components, and to so alternate in access (b) without changing an accessed other components when the components are accessed.

32.     The specification of the '243 patent describes a Universal Serial Bus multi-host device with "PHYs," end point and status buffers, and a multi-host device controller with an internal arbitration mechanism. Claim 18 does not recite these elements, i.e., this "architecture."

33.     Claim 18 does not specify the rules forming the connections, requests, processing, or alternating.

34.     Claim 18 uses generic functional language.

35.     Merely reciting an abstract idea performed on a set of generic USB computer components does not contain an inventive concept.

36.     For the foregoing reasons as to eligibility, claim 18, the representative claim of the ineligible claims, is invalid under 35 U.S.C. 101.

37.     For the foregoing reasons as to eligibility and representative claim 18, all claims of the '243 patent are invalid under 35 U.S.C. 101.

38.     All claims 1-25 of the '243 patent are invalid under one or more of 35 U.S.C. §§ 102 and 103 for all reasons set forth in the petition and Garney declaration in the *inter partes*

review (IPR) in IPR2017-00864 ("the '243 patent IPR"), the petition and declaration being incorporated by reference.

39.     Claims 1-9 and 11-25 of the '243 patent are invalid under either 35 U.S.C. §§ 102 or 103 on the grounds for which IPR was instituted in the '243 patent IPR in its institution decision, which institution decision is incorporated on those grounds by reference.

40.     Claim 10 of the '243 patent is invalid under 35 U.S.C. § 103 as obvious to a person of ordinary skill in the art in relation to U.S. Patent No. 6,549,966 ("Dickens") in view of either or both together of Japanese Patent Application Publication 2003-256351 ("Furukawa") and Universal Serial Bus Specification rev. 2.0 publication 2000 ("USB 2.0"). A person of ordinary skill in the art would have been motivated to combine the NAK feature of Furukawa and USB 2.0 with Dickens.

41.     All claims of the '243 patent are invalid under 35 U.S.C. § 112 for lack of written description or enablement.

42.     The '243 patent claims are all directed to computer-based inventions.

43.     The '243 patent does not include an appendix with computer program(s), flow chart(s), or descriptions comparable to programs and/or flow charts.

44.     The disclosure of the '243 patent is not sufficient to give evidence that the inventors were in possession of the subject matter of the '243 patent claims.

45.     The disclosure of the '243 patent is not sufficient to enable a person of ordinary skill to practice those subject matters without undue experimentation.

46.     Absent a declaration that the '243 patent is invalid, Microchip will continue to wrongfully assert the '243 Patent against Delphi in violation of the laws and contrary to the public policy of the United States of America, and will thereby continue to cause Delphi

irreparable injury and damage. A decree by this Court with respect to the issues of invalidity of the claims of the Asserted Patents, as between Delphi and Microchip, is reasonably calculated to prevent needless additional litigation in this and other jurisdictions between Delphi and Microchip.

47.     By reason of the foregoing, there is an actual and justiciable controversy between Delphi on the one hand, and Microchip on the other, and Delphi is entitled to a decree of invalidity of the claims of the Asserted Patents.

## COUNT III: NON-INFRINGEMENT OF THE '708 PATENT

48.     Delphi realleges and incorporates by reference the allegations of paragraphs 1 through 47 of its Counterclaims above.

49.     Delphi has not infringed and does not infringe, either directly or indirectly, the one claim of the '708 patent for which the Complaint specifically accused Delphi of infringement, claim 3.

50.     Claim 3 of the '708 patent is as follows:

3. A USB multi-host device comprising:
        a USB function block; and
        a multi-host device controller coupling the USB function block to a first host and a second host, wherein the multi-host device controller is configured to establish a first USB connection between the first host and the USB function block and a second USB connection between the second host and the USB function block, wherein the first USB connection and the second USB connection are concurrent, to allow the first host and the second host to:
        simultaneously access the USB multi-host device; and
        alternately access the USB function block, without either one of the first and second hosts reconfiguring the USB multi-host device each time a different one of the first host and the second host is given access to the USB function block.

51.     No federal court has construed or interpreted any limitation of claim 3.

52. Microchip has not itself construed or interpreted any limitation of claim 3 in a brief for a federal court.

53. Microchip has not applied construed or interpreted limitations of claim 3 to the Delphi Dual Role Hub in infringement contentions for this or any other court.

54. Delphi is without sufficient information to form a belief as to what will be the construction or interpretation of any limitation of claim 3 by this Court, and what will be the allegations of Microchip of application of the limitations of the claim to the Delphi Dual Role Hub in infringement contentions.

55. Delphi incorporates by reference its denials set forth above in Delphi's responses to paragraphs 9 and 58 through 74 of the Complaint.

56. The Dual Role Hub product has an upstream port for the entertainment unit of automotive vehicles. On information and belief, in comparison to the limitations of claim 1 of the '243 patent, the Dual Rule Hub has one and only one upstream port.

57. The Dual Role Hub product has two downstream ports.

58. The Dual Role Hub product has functionality to allow communication between a vehicle entertainment unit connected to the upstream port and USB devices connected to one or both of the two downstream ports.

59. The Dual Role Hub product has functionality to allow communication between the entertainment unit of automotive vehicles connected to the upstream port and a USB host connected to one of the downstream ports of the Dual Role Hub.

60. The Dual Role Hub product has a host-to-host bridge to facilitate communication between the entertainment unit connected to the upstream port and a USB host connected to a downstream port of the Dual Role Hub.

61.     The Dual Role Hub product does not allow communication between a USB host connected to one downstream port and any USB device connected to the other downstream port.

62.     On information and belief, based on the lack of interpretation or construction of the limitations of claim 3 by a court, the lack of interpretation or construction contentions from Microchip, the lack of infringement contentions from Microchip, and the foregoing statements of the structure and functionalities of the Dual Rule Hub, the Dual Role Hub is not the multi-host device of claim 3 of the '708 patent. It is not such a device that comprises a USB function block, and a multi-host device controller coupling the USB function block to a first host and a second host, wherein the multi-host device controller is configured to establish a first USB connection between the first host and the USB function block and a second USB connection between the second host and the USB function block, wherein the first USB connection and the second USB connection are concurrent, to allow the first host and the second host to simultaneously access the USB multi-host device, and alternately access the USB function block, without either one of the first and second hosts reconfiguring the USB multi-host device each time a different one of the first host and the second host is given access to the USB function block.

63.     On information and belief based on the foregoing and the lack of specific assertion by Microchip of infringement by Delphi through its Dual Role Hub of any other claim of the '708 patent, Delphi does not infringe any claim of the '708 patent.

64.     Absent a declaration that that Delphi does not infringe the '708 patent, Microchip will continue to wrongfully assert the '708 Patent against Delphi in violation of the laws and contrary to the public policy of the United States of America, and will thereby continue to cause Delphi irreparable injury and damage. A decree by this Court with respect to the issue of non-infringement of the claims of the Asserted Patents, as between Delphi and Microchip, is

reasonably calculated to prevent needless additional litigation in this and other jurisdictions between Delphi and Microchip.

65.     By reason of the foregoing, there is an actual and justiciable controversy between Delphi on the one hand, and Microchip on the other, and Delphi is entitled to a decree of non-infringement of the claims of the Asserted Patents.

## COUNT IV: INVALIDITY OF CLAIMS 1-25 OF THE '708 PATENT

66.     Delphi realleges and incorporates by reference the allegations of paragraphs 1 through 65 of its Counterclaims above.

67.     The claims 1-25, all claims, of the '708 patent are invalid for failure to satisfy one or more of the conditions of patentability specified in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101, 102, 103 and 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II and III of Title 35 of the United States Code.

68.     The claims of the '708 patent are invalid under 35 U.S.C. § 101 as not patent-eligible.

69.     The claims, particularly but not limited to claim 3 and method claims 18-22, are directed to abstract ideas.

70.     The elements of claims, both individually and as an ordered combination, do not transform the nature of the claims into a patent-eligible application of the abstract idea.

71.     An inventive concept is not evident in the ineligible claims.

72.     Claim 18 is representative of the ineligible claims for purposes of eligibility.

73.     Claim 18 is directed, by example explanation and not limitation, to the abstract idea of (1) establishing component connections, (2) receiving requests from some of the

components, and (3) processing the requests. Processing is for (a) allowing the requesting components to alternate in access to other components, and to so alternate in access (b) without changing an accessed other components when the components are accessed.

74.     The specification of the '708 patent describes a Universal Serial Bus multi-host device with "PHYs," end point and status buffers, and a multi-host device controller with an internal arbitration mechanism. Claim 18 does not recite these elements, i.e., this "architecture."

75.     Claim 18 does not specify the rules forming the connections, requests, processing, or alternating.

76.     Claim 18 uses generic functional language.

77.     Merely reciting an abstract idea performed on a set of generic USB computer components does not contain an inventive concept.

78.     For the foregoing reasons as to eligibility, claim 18, the representative claim of the ineligible claims, is invalid under 35 U.S.C. 101.

79.     For the foregoing reasons as to eligibility and representative claim 18, all claims of the '708 patent are invalid under 35 U.S.C. 101.

80.     All claims 1-25 of the '708 patent are invalid under one or more of 35 U.S.C. §§ 102 and 103 for all reasons set forth in the petition and Garney declaration in the *inter partes* review (IPR) in IPR2017-00861 ("the '708 patent IPR"), the petition and declaration being incorporated by reference.

81.     Claims 1-9 and 11-25 of the '708 patent are invalid under either 35 U.S.C. §§ 102 or 103 on the grounds for which IPR was instituted in the '708 patent IPR in its institution decision, which institution decisions is incorporated on those grounds by reference.

82.     Claim 10 of the '708 patent is invalid under 35 U.S.C. § 103 as obvious to a person of ordinary skill in the art in relation to U.S. Patent No. 6,549,966 ("Dickens") in view of either or both together of Japanese Patent Application Publication 2003-256351 ("Furukawa") and Universal Serial Bus Specification rev. 2.0 publication 2000 ("USB 2.0"). A person of ordinary skill in the art would have been motivated to combine the NAK feature of Furukawa and USB 2.0 with Dickens.

83.     All claims of the '708 patent are invalid under 35 U.S.C. § 112 for lack of written description or enablement.

84.     The '708 patent claims are all directed to computer-based inventions.

85.     The '708 patent does not include an appendix with computer program(s), flow chart(s), or descriptions comparable to programs and/or flow charts.

86.     The disclosure of the '708 patent is not sufficient to give evidence that the inventors were in possession of the subject matter of the '708 patent claims.

87.     The disclosure of the '708 patent is not sufficient to enable a person of ordinary skill to practice those subject matters without undue experimentation.

88.     Absent a declaration that the '708 patent is invalid, Microchip will continue to wrongfully assert the '708 Patent against Delphi in violation of the laws and contrary to the public policy of the United States of America, and will thereby continue to cause Delphi irreparable injury and damage. A decree by this Court with respect to the issues of invalidity of the claims of the Asserted Patents, as between Delphi and Microchip, is reasonably calculated to prevent needless additional litigation in this and other jurisdictions between Delphi and Microchip.

89.    By reason of the foregoing, there is an actual and justiciable controversy between Delphi on the one hand, and Microchip on the other, and Delphi is entitled to a decree of invalidity of the claims of the Asserted Patents.

## COUNT V: NON-INFRINGEMENT OF THE '191 PATENT

90.    Delphi realleges and incorporates by reference the allegations of paragraphs 1 through 89 of its Counterclaims above.

91.    Delphi alleges and incorporates by reference the allegations of its motion to dismiss Count III of the Complaint, its opening brief in support of its motion, and its reply brief in support of its motion.

92.    Claim 7 of the '191 patent is as follows:

> 7. A USB hub comprising:
> a first input for coupling to a first USB host device;
> a second input for coupling to a second USB host device;
> a plurality of peripheral device inputs for coupling to respective ones of a plurality of peripheral USB devices;
> switching logic that is operable to provide connectivity between the first input and the plurality of peripheral device inputs when the first USB host device is connected to the first input and the second USB host device is not connected to the second input;
> wherein the switching logic is operable to automatically provide connectivity between the second input and one or more of the plurality of peripheral device inputs when the second USB host device is connected to the second input, wherein the switching logic is configured to maintain connectivity between the first input and remaining ones of the plurality of peripheral device inputs that were not provided connectivity to the second input.

93.    No federal court has construed or interpreted any limitation of claim 7, and Delphi is without sufficient information to form a belief as to what will be the construction or interpretation of any limitation of claim 7 by this Court.

94.    Microchip has not coherently applied, construed, or interpreted limitations of claim 7 to the Delphi Dual Role Hub. On or about February 16, 2018, Microchip served

confidential initial infringement contentions that fail to set forth a prima facie claim of infringement as to claim 7 or any other asserted claim of the '191 Patent. Microchip's contentions fail, for example, to identify any peripheral device input that is initially connected to a first USB host device and then provided with connectivity to a second USB host device through a second input at any time, let alone automatically at the claimed time.

95.     Microchip is bound by prosecution disclaimer from interpretations of the claims of the '191 Patent that are inconsistent with the interpretations to which it is bound by reason of its statements to the Patent Office, including in its Patent Owner Preliminary Response in IPR2017-00970.

96.     In that Response, Microchip was clear that the inventions claimed in the '191 Patent "automatically provide connectivity of USB peripherals (e.g., printers, scanners, cameras, etc.) from one USB host device to another *when the second USB host device is connected to the system*." Patent Owner Preliminary Response in IPR2017-00970 at 1 (emphasis in original). But Microchip has not identified, and cannot identify, any USB peripheral whose connectivity is ever switched by the accused Dual Role Hub from one host to another, automatically or otherwise.

97.     The accused Dual Role Hub simply does not have the switching claimed by the '191 Patent, let alone the "automatic switching" that Microchip told the Patent Office was critical to its claimed invention. *See, e.g.*, *id.* at 5 (arguing that the inventor of the '191 Patent "successfully overcame the shortcomings of . . . prior art solutions by providing 'automatic switching of peripherals from a first host device to a second host device when the second host device is connected to the system,'" and that "'[t]his provides a significant improvement over the manual selection required in the prior art.'") (quoting '191 Patent at 6:39-43).

98.     The Dual Role Hub product does not allow communication between a USB host connected to one downstream port and any USB devices connected to the other downstream port.

99.     Accordingly, the Dual Role Hub is not the USB hub of claim 7 comprising a first input for coupling to a first USB host device, a second input for coupling to a second USB host device, a plurality of peripheral device inputs for coupling to respective ones of a plurality of peripheral USB devices, and switching logic that is operable to provide connectivity between the first input and the plurality of peripheral device inputs when the first USB host device is connected to the first input and the second USB host device is not connected to the second input, wherein the switching logic is operable to automatically provide connectivity between the second input and one or more of the plurality of peripheral device inputs when the second USB host device is connected to the second input, wherein the switching logic is configured to maintain connectivity between the first input and remaining ones of the plurality of peripheral device inputs that were not provided connectivity to the second input.

100.    Based on the foregoing, Delphi does not infringe, and cannot colorably be alleged to infringe, any claim of the '191 patent under any theory of infringement.

101.    Absent a declaration that that Delphi does not infringe the '191 patent, Microchip will continue to wrongfully assert the '191 Patent against Delphi in violation of the laws and contrary to the public policy of the United States of America, and will thereby continue to cause Delphi irreparable injury and damage. A decree by this Court with respect to the issue of non-infringement of the claims of the Asserted Patents, as between Delphi and Microchip, is reasonably calculated to prevent needless additional litigation in this and other jurisdictions between Delphi and Microchip.

102.    By reason of the foregoing, there is an actual and justiciable controversy between Delphi on the one hand, and Microchip on the other, and Delphi is entitled to a decree of non-infringement of the claims of the Asserted Patents.

### COUNT VI: INVALIDITY OF CLAIMS 1-21 OF THE '191 PATENT

103.    Delphi realleges and incorporates by reference the allegations of paragraphs 1 through 102 of its Counterclaims above.

104.    The claims 1-21, all claims, of the '191 patent are invalid for failure to satisfy one or more of the conditions of patentability specified in Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101, 102, 103 and 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II and III of Title 35 of the United States Code.

105.    The claims of the '191 patent are invalid under 35 U.S.C. § 101 as not patent-eligible.

106.    The claims, particularly but not limited to claim 7 and method claims 17-21, are directed to abstract ideas.

107.    The elements of claims, both individually and as an ordered combination, do not transform the nature of the claims into a patent-eligible application of the abstract idea.

108.    An inventive concept is not evident in the ineligible claims.

109.    Claim 17 is representative of the ineligible claims for purposes of eligibility.

110.    Claim 17 is directed, by example explanation and not limitation, to the abstract idea of (1) establishing component connections, (2) switching one or more connections, and (3) not switching other connections.

111.    The specification of the '191 patent describes a Universal Serial Bus switching hub automatically switching connectivity of peripheral devices between a first host device and a second host device just at the moment of connection of the second host device, with a display device or monitor, an EEPROM, stored configurations, transaction translator circuitry, and the like. Claim 17 does not recite these elements, i.e., this "architecture."

112.    Claim 17 does not specify the rules forming the connections or switching.

113.    Claim 17 uses generic functional language.

114.    Merely reciting an abstract idea performed on a set of generic USB computer components does not contain an inventive concept.

115.    For the foregoing reasons as to eligibility, claim 17, the representative claim of the ineligible claims, is invalid under 35 U.S.C. 101.

116.    For the foregoing reasons as to eligibility and representative claim 17, all claims of the '191 patent are invalid under 35 U.S.C. 101.

117.    All claims 1-21 of the '191 patent are invalid under one or more of 35 U.S.C. §§ 102 and 103 for all reasons set forth in the petition and Garney declaration in the *inter partes* review (IPR) in IPR2017-00970 ("the '191 patent IPR") and the initial invalidity contentions served on or about March 20, 2018, the petition and declaration being incorporated by reference.

118.    All claims 1-21 of the '191 patent are invalid under one or more of 35 U.S.C. §§ 102 and 103 for all reasons set forth in ground 1 of the petition and Garney declaration in the *inter partes* review (IPR) in IPR2017-00970 ("the '191 patent IPR"), the petition and declaration being incorporated by reference, with the interpretation of the PTAB non-institution decision applied, the decision also incorporated by reference.

119.    Dickens (*see* par. 40 above) has a USB hub operable to automatically provide connectivity between the second host device and one or more of the plurality of peripheral devices "when," meaning "just at the moment that," the second host device is connected to the USB hub. Garney declaration ¶¶100-103.

120.    Dickens allows the control of the two host computers with a single keyboard and mouse. Dickens column 8 lines 44-45, Dickens hereafter cited in the form "D-8:44-45." Meanwhile, the device provides the printer to both computers. D-8:44-47. The user chooses which computer to control by the keyboard and mouse, D-8:55-56, 59-62, but not the printer, D-8:55-56, 9:20-30. The printer is automatically shared. D-9:29-30. The routing of data to the printer is independent of the keyboard and mouse routing. D-9:20-21. When print data is detected from either computer it is routed to the printer if the printer is free. D-9:21-23. If the printer is not free, print data is buffered and then sent when there is a break in transmission of the original print job that is a "timeout" indicating the first print job is over. D-9:23-27.

121.    Dickens' hosts and devices operate according to the USB specification.  Hosts operating according to the USB specification enumerate USB hubs and other devices connected to hubs on first and any subsequent connections of the hosts with the hubs and other devices. Enumeration and configuration happen within a moment.

122.    Inherent in the Dickens system is that a first host may be attached to the Dickens' hub first, as compared to a second host being attached. Express is that the Dickens system may be set that the first host is controlled by the keyboard and mouse and has access to the printer. Inherent is that a second host may subsequently connect to the Dickens' hub and have print data ready to be transmitted. Inherent is that a second host connected to the Dickens' hub, just at the moment of connection, enumerates and configures the Dickens' hub and the printer. It connects

54

automatically to the hub and printer through enumeration and configuration. Inherent is that with the printer enumerated and configured, the second host may within the first moment of connection transmit any ready print data, if the printer is not occupied. Express is that if the printer is occupied, the second host may transmit print data when the printer is later ready. Express is that the second host transmitting print data to the printer does not affect the connection of the first host with the keyboard and mouse.

123.     Thus, Dickens is operable with a first host to provide connectivity between the first host and the plurality of peripheral devices when the first host is connected to the Dickens device and the second host is not connected, as in the limitation above. Dickens is also operable with the keyboard and mouse controlling the first host and either or both of the first and second hosts sending print data to the printer. Dickens is operable, if the first host is not sending print data, to automatically provide connectivity of a second host, just at the moment of its connection, to the printer. Dickens is also operable, if the first host sends print data that times out at the moment the second host is connected, to automatically provide connectivity of the second host to the printer with the transmission of print data just at that moment. Dickens is further operable, to automatically provide connectivity of a second host, just at the moment of its connection, to the printer, with the transmission of print data just at that moment and to defer transmission of print data from the first host until a break in transmission from the second host to the printer. Because the human user controls the keyboard and mouse, Dickens is configured if the user has selected the first host for the keyboard and mouse to maintain connectivity between the first host and remaining ones of the peripherals that were not provided to the second host, namely the keyboard and mouse.

124.    To any extent the foregoing as to Dickens is considered arguable, it would have been obvious to a person of ordinary skill in the art that Dickens was operable as stated, and to operate Dickens as stated, for the reasons stated concerning the operability of Dickens and the operability of USB hosts, hubs, and other devices.

125.    All claims of the '191 patent are invalid under 35 U.S.C. § 112 for lack of written description or enablement.

126.    The '191 patent claims are all directed to computer-based inventions.

127.    The '191 patent does not include an appendix with computer program(s), flow chart(s), or descriptions comparable to programs and/or flow charts.

128.    The disclosure of the '191 patent is not sufficient to give evidence that the inventors were in possession of the subject matter of the '191 patent claims.

129.    The disclosure of the '191 patent is not sufficient to enable a person of ordinary skill to practice those subject matters without undue experimentation.

130.    Absent a declaration that the '191 patent is invalid, Microchip will continue to wrongfully assert the '191 Patent against Delphi in violation of the laws and contrary to the public policy of the United States of America, and will thereby continue to cause Delphi irreparable injury and damage. A decree by this Court with respect to the issues of invalidity of the claims of the Asserted Patents, as between Delphi and Microchip, is reasonably calculated to prevent needless additional litigation in this and other jurisdictions between Delphi and Microchip.

136.    By reason of the foregoing, there is an actual and justiciable controversy between Delphi on the one hand, and Microchip on the other, and Delphi is entitled to a decree of invalidity of the claims of the Asserted Patents.

## PRAYER FOR RELIEF

WHEREFORE, Delphi respectfully asks this Court to enter judgment in favor of Delphi and against Microchip by granting the following relief:

A.      A declaration that Delphi has not infringed and is not infringing, under any theory, any valid claim of the Asserted Patents, including that it does not and has not infringed literally or under the doctrine of equivalents, and that Delphi has not contributed to or induced and is not contributing to or inducing infringement of any valid claim of the Asserted Patents;

B.      A declaration that the claims of the Asserted Patents are invalid;

C.      A judgment against Microchip and in favor of Delphi without any recovery to Microchip;

D.      A finding that this case is exceptional and an award to Delphi of its reasonable attorney fees and costs pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and/or 35 U.S.C. § 285; and

E.      Any and all such further and other relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Delphi respectfully requests trial by jury for all issues so triable.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Elizabeth R. Brannen
Kenneth J. Halpern
STRIS & MAHER LLP
725 S. Figueroa Street
Suite 1830
Los Angeles, CA 90017
(213) 995-6800


Dated:  April 27, 2018
5758221

By:  */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Defendant*
*Delphi Automotive Systems, LLC*