# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICROCHIP TECHNOLOGY INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 17-01194-LPS |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| APTIV SERVICES US, LLC, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S BRIEF IN OPPOSITION TO MICROCHIP'S MOTION FOR RECONSIDERATION OF CLAIM CONSTRUCTION

OF COUNSEL:

Elizabeth R. Brannen
Kenneth J. Halpern
Justin M. Barnes
Hanna Chandoo
STRIS & MAHER LLP
777 S. Figueroa Street
Suite 3850
Los Angeles, CA 90017
(213) 995-6800

Dated: July 15, 2019

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant*
*Aptiv Services US, LLC*

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………...1

ARGUMENT………………………………………………………………………………...2

      I.      Microchip has not Identified Legitimate Grounds for Reconsideration…………..2

      II.     The Court Decided an Issue the Parties Addressed Extensively………………….3

      III.    The Court Correctly Concluded That the Asserted Claims do not Cover
            Simultaneous Connectivity…………………………………………………………..5

            A.      The Cited Evidence Supports the Challenged Ruling…………………….5

            B.      Additional Evidence Supports the Challenged Ruling……………………6

            C.      Microchip's Additional Arguments are Incorrect and Accepting
                   Them Would Invalidate the Patent……………………………………..8

CONCLUSION………………………………………………………………………..10

# **TABLE OF AUTHORITIES**

**CASES**

**Page(s)**

*Accentra, Inc. v. Staples, Inc.*,
    500 Fed. Appx. 922 (Fed. Cir. 2013) ........................................................................................7

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
    287 F.3d 1108 (Fed. Cir. 2002) ................................................................................................9

*Lizardtech, Inc. v. Earth Resource Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) ..............................................................................................10

*MagSil Corp. v. Hitachi Global Storage Techns., Inc.*,
    687 F.3d 1377 (Fed. Cir. 2012) ..............................................................................................10

*Shahin v. Delaware Federal Credit Union*,
    2016 WL 937167 (D. Del., March 11, 2016) ....................................................................... 2-4

*Shahin v. PNC Bank, N.A.*,
    No. 2016 WL 5403101 (D. Del., Sept. 26, 2016) ....................................................................5

*The Toro Co. v. White Consol. Indus., Inc.*,
    199 F.3d 1295 (Fed.Cir.1999) ..................................................................................................9

**STATUTES**

35 U.S.C. § 112 ...............................................................................................................................10

**RULES**

D. Del. LR 7.1.5(a) .........................................................................................................................10

# INTRODUCTION

**THE COURT: "So this whole dispute is whether or not you still have claims to embodiments in which at least one of the peripherals that was attached or connected to host 1 may still be connected to host 1 when we have some connection to host 2. Is that fair?"**

**COUNSEL FOR MICROCHIP: "I think that is a very good summary, Your Honor."**

D.I. 102, February 25, 2019 Hearing Tr., at 74.

The single most-briefed, most-argued claim construction issue was whether the claims of U.S. Patent No. 7,478,191 (the " '191 Patent") are limited to automatic switching of a USB peripheral device from one host to another or whether they cover simultaneous connectivity to multiple hosts. After the *Markman* hearing, the Court accepted supplemental briefs on this issue and concluded, in its June 17, 2019 Opinion and Order, that the claims exclude simultaneous connectivity. *See* D.I. 100 and 101 (supplemental briefs), 113 ("Opinion") at 10-12 and 114 ("Order") at 2. Microchip dislikes that conclusion, but there is no basis to reconsider it.

Given that history, Microchip unsurprisingly fails to meet the high bar for reconsideration. The Court's ruling was no surprise, and Microchip's motion is not grounded in newly discovered evidence or manifest error. Microchip merely seeks to revisit and soup up its arguments.

Substantively, Microchip's arguments lack merit. Microchip does not challenge *at all* the extensive support the Court cited for its construction. Its motion also misinterprets "plain meaning" and the words "and/or" and "may." These stray terms, however interpreted, do not trump the definitive disclosures made both in the specification and to the Patent Trial and Appeal Board ("PTAB"), which made clear that the invention was about switching, not sharing connectivity. Microchip has pointed to nothing in the intrinsic record that describes, enables, or would permit the claims to cover simultaneous connectivity between one peripheral and multiple hosts. The Court's conclusion about the scope of the claims is correct. Reconsideration is unwarranted.

**ARGUMENT**

**I.      Microchip has not Identified Legitimate Grounds for Reconsideration.**

"A motion for reconsideration is not properly grounded on a request that the court rethink a decision already made." *Shahin v. Delaware Federal Credit Union*, 2016 WL 937167, at *1 (D. Del., March 11, 2016) (quoting *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990). Reconsideration requires a court to have "patently misunderstood a party, or … made a decision outside the adversarial issues presented to the [c]ourt by the parties, or … an error not of reasoning but of apprehension." *Id*. Microchip's motion fails to meet this standard.

According to Microchip, the Court construed a limitation ("automatically provide connectivity") that the parties never briefed, and thus the Court's ruling is outside the adversarial issues presented by the parties. D.I. No. 117 at 2. Not so.

First, Microchip misreads the Opinion. The Court did not construe the term "automatically provide connectivity." D.I. 113 at 10-12. Instead, the Opinion held that the claims *exclude* simultaneous connectivity. *Id.* at 12. The Court reached that conclusion from the way the claims, specification and certain statements to the PTAB described the invention, not on a construction of "automatically provide connectivity" in isolation. *See* D.I. 113 at 12 ("…[T]he Court is persuaded, based on the specification and statements made during the IPR, that the claims do not cover simultaneous connectivity between any one peripheral device and a plurality of hosts.").[1]

Second, Microchip is wrong to suggest that the prior briefing never identified or addressed "automatically provide connectivity." While Aptiv argued that Microchip's binding representations required "automatic switching" of peripherals even without a textual basis in the claims (D.I. 96 at 37-39, 45-46), Aptiv was equally clear that the claims *contained* such a basis by

---

[1] Microchip implicitly acknowledges this reading of the Opinion but makes no attempt to show why reconsideration is warranted thereunder. D.I. 117 at 2, n. 1.

virtue of the preceding claim language and the very "automatically provide connectivity" limitation Microchip says went unaddressed:

> Although this limitation is not present *in haec verba*, it is present [FN 5]…
>
> [FN 5] Claim 1 teaches that the USB hub provides connectivity between a first host device and peripheral devices when the second host is not connected and then will "*automatically provide connectivity* between the second host device and one or more of the plurality of peripheral devices *when the second host device is connected to the USB hub*." '191 Patent, 12:45-49 (JA 20) (emphasis added)….

*Id.* at 37 & n. 5 (making same point about claim 7 and the nearly identical "automatically providing connectivity" limitation of claim 17) (emphasis in original); *see also id.* at 45 ("Microchip suggests that Aptiv should have construed the term "automatically provide connectivity" instead of 'automatic switching.' Neither Microchip's position nor the PTAB's construction was *limited to* the former phrase, however.") (emphasis added); *id.* at 46 n. 6. To the extent Microchip failed to advance specific points about "automatically provide connectivity," its motion is an impermissible attempt to introduce what it "inexcusably [did] not present[] to the court in the matter previously decided." *Shahin*, 2016 WL 937167 at *1 (quoting *Brambles*, 735 F. Supp. at 1240).

As shown next, the challenged ruling is not only appropriate given what the parties *could have* presented. It is well within the issues the parties *actually* and squarely presented.

## II. The Court Decided an Issue the Parties Addressed Extensively.

In the joint claim construction brief, Aptiv argued that Microchip's representations to the PTAB clearly and unmistakably surrendered claim scope. *See, e.g.*, D.I 96 at 3-4 and 38-39. Microchip criticized Aptiv for not seeking to construe "automatically provide connectivity," and argued that the claim language "automatically provide *connectivity*" differed from "automatic *switching*." *Id.* at 36, 40 (emphasis added).

Roughly a quarter of the *Markman* hearing addressed switching connectivity between hosts versus adding connectivity. The parties disputed whether the '191 Patent encompassed two hosts

3

sharing a single peripheral device. *See, e.g.*, D.I. 102 at 29:25-40:5, 32:7-33:24;[2] 55-69. The Court asked each party whether the patent allowed two hosts to communicate with a peripheral device at the same time. *Id.* at 34:21-25, 39:3-4. The parties further addressed whether the claims are limited to switching peripherals from one host to another or, as Microchip contended, between two "types of connectivity." *Id.* at 56:14-57:22; 58:5-21 (Microchip argued that Aptiv was trying to "sneak in . . . switching connectivity from one peripheral to another"); 59:2-4; 61:4-11, 61:16-19, 62:20-23, 63:12-24, 64:2-7, 65:13-17; 66:8-69:7 (extended exchange in which counsel for Aptiv argued "[t]hey cannot try now to cover a scenario where one peripheral remains connected to the first host and also gets connected to a second host"). After Microchip reiterated its view that the claim did not require disconnection from the first host, the Court asked, and Microchip confirmed, that the dispute came down to whether the claims cover embodiments with one peripheral connected to two hosts. *Id.* at 71:23-74:24.

The Court then permitted supplemental briefing. *Id.* at 60, 101-02. Microchip defined the issue it was addressing as "[w]hether Microchip made a clear and unmistakable disclaimer limiting all claims of the '191 Patent to disconnecting a peripheral from one host before connecting the peripheral to a second host." D.I. 100 at 1. Microchip characterized "[t]he crux" of the limitation it accused Aptiv of seeking to import as follows: "at least one peripheral is disconnected from a first host before connecting that peripheral to a second host," *id.* at 2, and argued vehemently that it had not surrendered that claim scope based upon "the *claims*, the specification, and the entire prosecution history," *id.* at 4 (emphasis added); *see also id.* at 5 (discussing specification).

Unsurprisingly, after reviewing the extensive briefing and argument devoted to this issue,

---

[2] The transcript erroneously attributes these statements to "Ms. Brannen," but the speaker in the cited portion was Microchip's counsel, Mr. Adams.

4

the Court decided it. The Court correctly concluded, contrary to Microchip's copious arguments, that the specification and Microchip's statements to the PTAB yielded claims that "do not cover simultaneous connectivity between any one peripheral device and a plurality of hosts." D.I. 113 at 12. While the Court declined to adopt Aptiv's "automatic switching" argument *per se* and did not rest its rationale solely upon disclaimer, to call the Court's decision "outside the adversarial issues presented by the parties" is simply wrong.

### III. The Court Correctly Concluded That the Asserted Claims do not Cover Simultaneous Connectivity.

Microchip has not identified any "clear error of law or fact" warranting reconsideration. *Shahin v. PNC Bank, N.A.*, No. 2016 WL 5403101, at *1 (D. Del., Sept. 26, 2016). Nor can it.

#### A. The Cited Evidence Supports the Challenged Ruling.

The Court correctly determined that the purported invention of the '191 Patent permits a given USB peripheral device to have connectivity with only one host at a time. The intrinsic record on this point is crystal clear and there is no teaching otherwise. In support of the challenged ruling, the Court cited Figures 8a, 8b, 9a and 9b, correctly noting that they show only single (and not simultaneous) connections between each peripheral and each host. D.I. 113 at 12. Microchip has not disputed this finding or cited any counterexamples. The Court also pointed to three passages in the specification that characterize every embodiment as "provid[ing] for automatic switching of *peripherals* from a first host device to a second host when the second host device is connected to the system." *Id.* (quoting '191 Patent at 6:39-42 (Court's emphasis) and citing *id.* at 9:18-48 (describing embodiment in which each peripheral device may be accessed by one host at a time but may be switched between hosts) and 11:15-35 (same)). Microchip does not dispute the Court's reading of these passages either. D.I. 117 at 7-8.

The Court also cited two statements Microchip made to the PTAB, D.I. 113 at 12 (citing

5

D.I. 76-1 at 54, 63), which Microchip acknowledges it addressed in prior briefing, D.I. 117 at 8 (citing D.I. 100 at 2-4). In the first statement, Microchip explained that in the prior art, because of the USB Specification, "for two hosts … to share peripherals connected to a USB hub, a user could unplug the hub from the first host and plug it into the second host." D.I. 76-1 at 54. Microchip then characterized the '191 Patent as having overcome "…the shortcomings of these prior art solutions by providing 'automatic switching *of peripherals from a first host device to a second host device* when the second host device is connected to the system.'" *Id.* (quoting '191 Patent, 6:39-42) (emphasis added). What Microchip seeks to dismiss as "background," was a clear, unequivocal, and binding representation about the invention's scope. *See also* D.I. 101 at 3 (citing authorities).

In the second statement, Microchip informed the PTAB that "the terms 'switch,' 'switching,' and 'switches' appear in the specification and claims over 200 times, casting doubt on any conclusion that the claims do not require switching. . . . If there is no switching, the user ... would be unable to use the device as expected." D.I. 113 at 12 (quoting D.I. 76-1 at 63). Microchip now suggests this statement referred to switching states of connectivity, not peripherals. D.I. 117 at 10. But in the excised portion of the quoted passage, Microchip argued to the PTAB that Aptiv's proposed construction was "contrary to [the '191 Patent's] objective of providing 'an easy intuitive method for the end user to actuate the *switching of peripherals between two hosts*.'" D.I. 76-1 at 63 (quoting '191 Patent, 2:16-18) (emphasis added).

### B.  Additional Evidence Supports the Challenged Ruling.

The Court easily could have cited a great deal more intrinsic evidence to support its ruling. As Microchip explained to the PTAB, the USB Standard permits "one host at a time." D.I. 76-1 at 54 (explaining that "for two hosts . . . to share peripherals" in the prior art would require

6

unplugging). The '191 Patent discloses *no way* for multiple hosts to share simultaneous connectivity with a given peripheral. There is no embodiment in which that occurs.

Rather, the entire intrinsic record starting with the patent's title demonstrates that the purported invention was about *switching* of peripherals, not *sharing* connectivity between hosts. *See* D.I. 101 at 1-3. The Abstract states: "[t]he method may be used where *peripherals* are usually attached to one host and are automatically *switched to* a second host when the second host is attached to the system." D.I. 76-1 at 1 (emphasis added). The Background describes that unlike the prior art, the '191 Patent allows "the switching of *peripherals between two hosts* … In other words, a method is desired that allows the switching of peripherals between two hosts, where *peripherals are usually attached to one host* and are switched to a second host when the second host is attached to the system." *Id.* at 15, 2:16-22 (emphasis added). The Summary of the Invention repeats this characterization verbatim in describing "one embodiment" of the invention (*Id.* at 15-16, 2:29-35, 2:43-50, 2:67-3:3, 3:6-18) and discloses "a second embodiment of the invention" that likewise permits each peripheral to be connected to only one host at a time. (*Id.*, 3:27-30.) The consistency and extent of the intrinsic evidence excludes simultaneous connectivity to multiple hosts. *See, e.g.*, *Accentra, Inc. v. Staples, Inc.*, 500 Fed. Appx. 922, 927 (Fed. Cir. 2013) (limiting claims to automatic opening feature where Abstract and Summary of Invention both characterized it as part of the invention and specification nowhere described manual opening feature).

In addition, the PTAB's understanding of the invention comports with the Court's. The PTAB determined that the invention required "automatic switching" in all claims, *and* that this entailed disconnecting the first host computer from any peripheral devices connected to the second host computer upon attachment of the latter. *See* D.I. 101 at 3-4 (discussing D.I. 76-1 at 114-125).

Finally, although the Court declined to adopt Aptiv's "automatic switching" argument as

presented, the argument (including further citations to the IPR record) provides additional support for the conclusion the Court reached. *See generally* D.I. 96 at 36-43; D.I. 101 at 1-5. Microchip represented that the invention of the '191 Patent entails switching of peripherals from one host to another, and it did so when discussing "automatic switching" and "automatically providing connectivity." *See* D.I. 96 at 40-42, D.I. 101 at 1-3 (discussing extensive citations including D.I. 76-1 at 50 ("The patented USB switching hubs and methods automatically provide connectivity of USB peripherals (e.g., printers, scanners, cameras, etc.) ***from*** one USB host device ***to*** another….) (emphasis added); D.I. 76-1 at 63 (criticizing construction contrary to patent's objective: easy way for user "to actuate the switching of peripherals between two hosts," without which user "would be unable to use the device as expected"); *id.* at 68-69 ("One of ordinary skill in the art would understand this passage as describing *switching the connectivity of peripherals* connected to the first host *to* the second host at the moment the second host is connected to the switching hub.") (emphasis added); *id.* at 80-81 (distinguishing Dickens); *id.* at 88-89 (distinguishing Adder); *id.* at 94-95; (citing, *inter alia*, D.I. 101-1 (IPR Declaration of Microchip's expert, Geert Knapen at ¶¶ 41-44, 47, 50-54, 60, 67-68 74-75))); *see also* 76-1 at 72.

### C. Microchip's Additional Arguments are Incorrect and Accepting Them Would Invalidate the Patent.

Against this mountain of intrinsic evidence, Microchip offers snippets that collapse upon scrutiny. Microchip points to (slightly modified) language in claim 17, contending that the plain meaning of "automatically provid[es] connectivity" to a second host supports reconsideration because there is no express requirement to remove connectivity from the first host. D.I. 117 at 4. Microchip's argument is no truer for claim 17 than any other claim. The final limitation connotes disconnection. D.I. 76-1 at 21, claim 17 (final limitation requires maintaining connectivity between first host input and remaining peripherals "*that were not provided connectivity to the second*")

(emphasis added). That aside, the Court correctly determined that the specification and IPR statements foreclose Microchip's now-preferred reading.

Microchip's grammatical argument is equally unavailing. Microchip contends that the use of "and/or" in claim 19 is an explicit recitation of simultaneous connectivity. Microchip again makes no effort to ground this reading in the specification, which does not support it. As Microchip admits, each of the "plurality of connectivity configurations" of claim 19 is a different way in which the various peripherals can be coupled to the first and second host inputs. Therefore, the "and" in "and/or" refers to peripherals that are connected to the first host in some configurations and the second host in others, not to simultaneous connectivity.

Claim 18 expressly recites "automatically removing connectivity." Microchip invokes claim differentiation, but that creates only a presumption and "cannot broaden claims beyond their correct scope." *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1115-16 (Fed. Cir. 2002). It certainly cannot support coverage that reaches beyond a patent's teachings: "[T]he doctrine of claim differentiation does not ... override clear statements of scope in the specification." *The Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1302 (Fed.Cir.1999).

Microchip's sole specification fragment also requires misreading an "and/or" and a "may." D.I. 117 at 5 (citing '191 Patent, 5:2-12). Microchip misleadingly quotes only part of the sentence, which reads, in full: "USB switching hub 119 *may* discontinue providing connectivity between the first host device 102 and USB hub device 106, *and/or* between first host device 102 and the plurality of peripheral devices coupled to USB hub device 106." '191 Patent, 5:2-12 (emphasis added). The word "may" simply refers to two methods of disconnecting the first host from the plurality of peripheral devices—directly and/or indirectly (i.e., by discontinuing the host's connection to the hub itself). As the PTAB determined, this sentence discloses disconnection. D.I.

9

76-1 at 117. It does not teach that the first host remains connected to peripherals. Indeed, Microchip contended *exactly the opposite* to avoid IPR. D.I. 76-1 at 72 (Microchip's Prelim. Resp., citing Knapen Decl., Ex. 101-1 at ¶ 45) (arguing that "[o]ne of ordinary skill in the art would understand this passage as describing *switching the connectivity of peripherals* connected to the first host *to* the second host at the moment the second host is coupled to the switching hub") (emphasis added).

Microchip has neither pointed to any teaching of simultaneous connectivity nor contested the Court's reading of the specification for a simple reason: the '191 Patent does not describe or enable simultaneous connectivity—at all. Indeed, to defend patentability of its *other two* asserted patents, Microchip vehemently insisted that a prior art application in which Microchip tried but failed to obtain "similar protection for a USB switching hub to switch connectivity of USB peripheral devices between multiple hosts," 76-1 at 144, U.S. App. No. 2006/0059293, *did not disclose* sharing connectivity of a peripheral between multiple hosts. *See* D.I. 96 at 4, D.I. 101 at 5 (discussing D.I. 76-1 at 236-40, 257, 310-11, and 539-40). With respect to connectivity sharing, what Microchip said about the 2006/0059293 Application is necessarily also true of the '191 Patent. Reading the '191 Patent claims to cover simultaneous connectivity would render them invalid for lack of written description and enablement. *Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005); *see also MagSil Corp. v. Hitachi Global Storage Techns., Inc.*, 687 F.3d 1377, 1381-84 (Fed. Cir. 2012). The challenged construction avoids this result; invalidity under 35 U.S.C. § 112 is the alternative.

## CONCLUSION

Motions for reconsideration should be granted "sparingly." D. Del. LR 7.1.5(a). This is not one of those rare instances. Aptiv respectfully asks the Court to deny the motion.

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| | |
| Elizabeth R. Brannen<br>Kenneth J. Halpern<br>Justin M. Barnes<br>Hanna Chandoo<br>STRIS & MAHER LLP<br>777 S. Figueroa Street<br>Suite 3850<br>Los Angeles, CA 90017<br>(213) 995-6800 | By: */s/ Philip A. Rovner*<br>Philip A. Rovner (#3215)<br>Jonathan A. Choa (#5319)<br>Hercules Plaza<br>P.O. Box 951<br>Wilmington, DE 19899<br>(302) 984-6000<br>provner@potteranderson.com<br>jchoa@potteranderson.com |
| | *Attorneys for Defendant* |
| Dated: July 15, 2019<br>6307643 | *Aptiv Services US, LLC* |