**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

MICROCHIP TECHNOLOGY INC.       )
                                )
              Plaintiff,         )
                                )        C.A. No. 17-01194-JDW
        v.                      )
                                )        **PUBLIC VERSION**
APTIV SERVICES US, LLC,         )
                                )
              Defendant.        )

**OPENING BRIEF IN SUPPORT OF DEFENDANT APTIV SERVICES US, LLC'S
MOTION FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE TESTIMONY
<u>UNDER RULE 702 FOR DAMAGES-RELATED ISSUES</u>**

OF COUNSEL:

Elizabeth R. Brannen
Kenneth J. Halpern
Justin M. Barnes
Jhaniel N. James
Hanna Chandoo
STRIS & MAHER LLP
777 S Figueroa St
Ste 3850
Los Angeles, CA 90017
(213) 995-6800

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant
Aptiv Services US, LLC*

Dated: December 17, 2019
Public Version Dated: December 26, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

LOST PROFITS

    FACTUAL BACKGROUND ............................................................................. 2

    LEGAL BACKGROUND ................................................................................. 4

    ARGUMENT ...................................................................................................... 6

        I.     There Is Insufficient Evidence To Prove That The Patentee
              Was The Corporate Entity That Lost Sales.................................. 7

        II.    There Is Insufficient Evidence Of The Reconstructed
              "But-For" Market. ....................................................................... 10

REASONABLE ROYALTY

    FACTUAL BACKGROUND ........................................................................... 13

    LEGAL BACKGROUND ............................................................................... 14

    ARGUMENT .................................................................................................... 15

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acceleration Bay LLC v. Activision Blizzard Inc.*,
    No. 1:16-cv-00453-RGA, 2019 WL 4194060 (D. Del. Sept. 4, 2019)....................................15

*Altana Pharma AG v. Teva Pharms. USA, Inc*.,
    No. 2:04-cv-02355-JLL-JAD, 2012 WL 12905807 (D.N.J. Dec. 18, 2012) ....................5, 8, 9

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
    1 F.3d 1214 (Fed. Cir. 1993).....................................................................................5, 10, 11

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
    246 F.3d 1336 (Fed. Cir. 2001)......................................................................................6, 10

*Daubert v. Merrell Dow Pharm., Inc*.,
    509 U.S. 579 (1993)........................................................................................................6, 13

*DSU Med. Corp. v. JMS Co., Ltd.*,
    296 F. Supp. 2d 1140 (N.D. Cal. 2003) .................................................................................6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014)............................................................................................15

*EZ Dock, Inc. v. Schafer Sys*.,
    No. 0:98-cv-02364-RHK-AJB, 2003 WL 1610781 (D. Minn. Mar. 8, 2003)...................6, 12

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
    No. 1:12-cv-00540-LPS, 2015 WL 1303643 (D. Del. Mar. 20, 2015)...................................15

*Fujitsu Ltd. v. Tellabs, Inc.*,
    No. 1:09-cv-04530-JFH, 2013 WL 2285794 (N.D. Ill. May 23, 2013)................................5, 8

*Garretson v. Clark*,
    111 U.S. 120 (1884).............................................................................................................14

*Good Tech. Corp. v. MobileIron, Inc.*,
    No. 5:12-cv-05826-PSG, 2015 WL 3882608 (N.D. Cal. June 23, 2015).........................6, 12

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
    185 F.3d 1341 (Fed. Cir. 1999).............................................................................5, 6, 10, 11

*Hafco Foundry & Mach. Co., Inc. v. GMS Mine Repair & Maint., Inc*.,
    No. 1:15-cv-16143, 2018 WL 3150353 (S.D. W. Va. June 26, 2018) ...............................6, 12

*Helios Software, LLC v. SpectorSoft Corp.*,
    No. 1:12-cv-00081-LPS, 2014 WL 4796111 (D. Del. Sept. 18, 2014) ..................................15

*Illinois Tool Works, Inc. v. MOC Products Co., Inc.*,
    No. 3:09-cv-01887-JLS-MDD, 2012 WL 3561984 (S.D. Cal. 2012) ....................................13

*IP Innovation L.L.C. v. Red Hat, Inc.*,
    705 F. Supp. 2d 687 (E.D. Tex. 2010) .................................................................................6, 11

*Kaufman Co. v. Lantech, Inc.*,
    926 F.2d 1136 (Fed. Cir. 1991)............................................................................................6, 10

*Kowalski v. Mommy Gina Tuna Res.*,
    574 F. Supp. 2d 1160 (D. Haw. 2008) ..................................................................................5, 8

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999).....................................................................................................................6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012).........................................................................................14, 15, 16

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008)............................................................................................5, 7

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017)...................................................................................................5

*Micro Chemical, Inc. v. Lextron, Inc.*,
    318 F.3d 1119 (Fed. Cir. 2003)..................................................................................................10

*Mitutoyo Corp. v. Cent. Purchasing, LLC*,
    499 F.3d 1284 (Fed. Cir. 2007)..................................................................................................10

*Moore U.S.A., Inc. v. Standard Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)....................................................................................................9

*Novozymes A/S, v. Genencor Int'l, Inc.*,
    474 F. Supp. 2d 592 (D. Del. 2007)....................................................................................5, 8, 9

*Philp v. Nock*,
    84 U.S. 460 (1873)........................................................................................................................4

*Podobnik v. United States Postal Serv.*,
    409 F.3d 584 (3d Cir. 2005).........................................................................................................9

*Poly–America, L.P. v. GSE Lining Tech., Inc.*,
    383 F.3d 1303 (Fed. Cir. 2005).......................................................................................4, 5, 7, 8

*Rite–Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995)...............................................................................................4, 5

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
   No. 1:17-cv-00189-LPS-CJB, 2019 WL 5310220 (D. Del. Oct. 21, 2019) .............................4

*Subh v. Wal-Mart Stores, Inc.*,
   No. 1:08-cv-00410–SLR–LPS, 2009 WL 4015649 (D. Del. Nov. 19, 2009) .........................9

*TL of Florida, Inc. v. Terex Corp.*,
   No. 1:13-cv-02009-LPS, 2016 WL 6436613 (D. Del. Oct. 25, 2016)......................................2

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)......................................................................................14, 15

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014)................................................................................14, 15, 16

*Wechsler v. Macke Int'l Trade Inc.*,
   486 F.3d 1286 (Fed. Cir. 2007)................................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 56 ............................................................................................1

Federal Rule of Evidence 702................................................................................. *passim*

Pursuant to Federal Rule of Civil Procedure 56, Defendant Aptiv Services US, LLC moves for summary judgment of no lost profits and, pursuant to Federal Rule of Evidence 702, moves to exclude Dr. Stephen Becker's opinions regarding lost profits and reasonable royalty.

## INTRODUCTION

Microchip and its expert have failed to prove two foundational prerequisites for a lost profits claim. First, Microchip must establish standing to recover lost profits: it must prove that the same corporate entity both holds title to the patents and is competing for lost sales in the marketplace. Microchip's expert never addressed this issue in his opening report. Aptiv's expert expressly criticized the opening report on these grounds, but Microchip's reply report was silent. During deposition, Microchip's expert, Dr. Becker, admitted that he had not seen any underlying documents to link a particular Microchip entity to sales of embodying products.

Second, Dr. Becker failed to establish a proper "but-for" market or provide any "sound economic proof" regarding that market. In his opening report, Dr. Becker failed to describe the participants in the market, their product offerings, or the differences in the products' functionality and price. Again, Aptiv's expert raised the issue on rebuttal. In his reply report, Dr. Becker identified ███████████████████ but still failed to describe any other relevant and necessary aspects of the reconstructed market. In deposition, he conceded that Microchip does not directly compete against Aptiv, instead selling chips to Aptiv and ████ competitors who, in turn, sell USB hubs to auto manufacturers. Dr. Becker did not even know the ***names*** of several competitors in the reconstructed market, let alone the prices and functionality of the various competing USB hubs they offer for sale. He simply assumed 100% of Aptiv's sales would have been made by some combination of these third party customers, irrespective of product pricing and features.

1

Because the record is devoid of the necessary information on these two independent issues, no reasonable jury could ever properly award lost profits. Summary judgment is warranted.[1]

Meanwhile, for its royalty figure, Microchip attempted to retrieve through the back door what it cannot properly retrieve through the front; Dr. Becker proposed a nearly *identical* per-unit amount for reasonable royalty as for lost profits. The similarity illustrates a critical flaw in the royalty analysis. The number proposed for lost profits equals the *entire* profit Microchip would have theoretically made by selling its chip. It is admittedly *un*-apportioned. The royalty amount, however, *must* be apportioned by law. By basing its royalty calculation on the full value of Aptiv's accused ████ chip, Microchip and Dr. Becker have clearly violated the entire market value rule. Courts routinely strike opinions failing to apportion value to the relevant portion of accused products. This case should be no different.

## LOST PROFITS—FACTUAL BACKGROUND

Microchip Technology, Inc. ("Microchip") markets and sells ████ chips to USB hub manufacturers who incorporate those chips into USB hubs that they then sell to automotive companies. Opening Report of Dr. Stephen Becker (attached as Exhibit A) ¶¶ 33, 96. Meanwhile, Aptiv makes and sells USB hubs itself, usually incorporating its own ████ chip along with various other components in the hubs. *Id.* ¶¶ 40, 176. Dr. Becker's opening report opined that lost profits totaled $40.9 million because, if Aptiv had not been in the market, Microchip would have

---

[1] For the same reasons, the Court may also exclude Dr. Becker's lost profits opinions under Rule 702. As a practical matter, whether the Court excludes them under Rule 702 or accepts them but grants summary judgment due to the lack of evidence makes little, if any, practical difference. Courts have decided the issue under multiple alternative theories, but the end result is the same. *See, e.g.*, *TL of Florida, Inc. v. Terex Corp.*, No. 1:13-cv-02009-LPS, 2016 WL 6436613, at *3 (D. Del. Oct. 25, 2016) (Stark, C.J.) ("Accordingly, the Court will grant summary judgment in favor of Terex of no lost profits. The Court will deny Terex's *Daubert* motion, which seeks to exclude the testimony of TL's damages expert, as moot.").

sold ████████ additional ████ chips, at ████ a chip. Ex. A ¶¶ 52-74; *see also* Reply Report of Dr. Stephen Becker (attached as Exhibit C) ¶ 33. In his analysis, Dr. Becker discussed the well-known *Panduit* factors, but never identified or described the market to which the *Panduit* analysis ostensibly applies. Aside from a fleeting reference to ████████ his opening report also failed to identify the companies with which Aptiv competes (i.e., the companies to which Microchip sells) that sell USB hubs to the automotive manufacturers. Ex. A ¶ 67.

Separately, Dr. Becker acknowledged that Standard Microsystems Corporation ("SMSC"), not Microchip, originally held title to the asserted patents. *Id.* ¶ 28. He noted an assignment in 2016, citing only to Microchip's complaint without referring to the actual assignment language or pertinent parties. *Id.* He made no mention whatsoever of which entity specifically sells chips to USB hub manufacturers—i.e., SMSC, Microchip, or some other related entity. *Id.* ¶ 32. Dr. Becker referred only to ████████████████████████. *Id.* ¶ 72.

In his rebuttal report Aptiv's expert, Michael Chase, pointed to these fundamental flaws:

- "Dr. Becker has not identified any specific documents from Microchip that establish which entity makes sales of patent practicing products to customers, nor has he addressed this issue." Rebuttal Report of Michael Chase (attached as Exhibit B) ¶ 14.

- "Dr. Becker does not explain which tier 1 supplier would team with Microchip in the reconstructed market to make sales of hubs containing ████ chips. Nor does he address any of the market complexities for Microchip and its tier 1 partner that would need to be confronted." *Id.* ¶ 67(e).

Despite being made aware of both issues, Dr. Becker's reply neglected to remedy either one. He offered nothing whatsoever about which entity held title to the asserted patents and which entity sold ████ chips. He acknowledged Mr. Chase's criticism of his failure to reconstruct the but-for market, Ex. C ¶ 14, but, once more, neglected to describe that market—who the competitors are, what features are in their products, how much their products cost, market share, etc. He

mentioned that Microchip worked with █████████ suppliers, but provided no detail about their product prices or features. *Id.* ¶ 20.

Dr. Becker's deposition only made matters worse. He conceded that he had no idea which Microchip entity sold ██████ and could not remember ever seeing any █████████████ that might have shed light on the issue. Transcript of November 22, 2019 Deposition of Dr. Stephen Becker (attached as Exhibit D), at 29:16-30:14. As to the second flaw, he identified ███████ competitors in what he termed the "Automotive Grade USB Hub" market, but was unable to name even ████ of them. *Id.* at 15:22-16:13, 18:9-19:3. He agreed that each competitor sold USB hubs with different features, including ████████████████████████████████████████████████ ████████████████████████████████████████. *Id.* at 20:18-23:19. He acknowledged that Aptiv sold USB hubs for between ████████████ and attributed that variance to differing functionality. *Id.* at 23:13-25:17. But Dr. Becker could not identify the prices for, or the features of, any of the automotive grade USB hubs sold by Aptiv's competitors. *Id.* at 25:18-26:20. He simply assumed ████████████████████████████████████████████ *Id.* at 25:23-26:12. He also had no understanding of Microchip's ██████████████████████████. *Id.* at 27:17-28:11.

## LOST PROFITS—LEGAL BACKGROUND

"The burden of proving damages falls on the patentee." *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, No. 1:17-cv-00189-LPS-CJB, 2019 WL 5310220, at *2 (D. Del. Oct. 21, 2019) (Stark, C.J.) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)). The patentee "must show his damages by evidence." *Philp v. Nock*, 84 U.S. 460, 462 (1873). Damages "must not be left to conjecture by the jury. They must be proved, and not guessed at." *Id.* Whether lost profits are available to a patent owner is a question of law. *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (en banc); *see also Poly-America, L.P. v. GSE*

*Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2005). "Only after the court has decided, as a matter of law, that lost profits are available does the jury then get to determine the amount of those lost profits." *Wechsler v. Macke Int'l Trade Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007) (internal citations omitted). Lost profits "are not easy to prove." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017) (discussing case law and secondary sources on the subject).

As a first prerequisite, the patentee must demonstrate standing by "selling some item, the profits of which have been lost due to infringing sales, in order to claim damages." *Poly–America*, 383 F.3d at 1311 (*citing Rite–Hite*, 56 F.3d at 1538). Only the patentee, not a related entity, can recover lost profits. *See, e.g.*, *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008) (affirming district court's finding that patent holder was not entitled to lost profits based on the sales of its subsidiary); *Poly–America*, 383 F.3d at 1311 (reversing award where entity attempted to recover lost profits for a related, but different, entity). Relying on this precedent, district courts routinely grant summary judgment where the patentee is not the entity that lost sales. *See, e.g.*, *Fujitsu Ltd. v. Tellabs, Inc.*, No. 1:09-cv-04530-JFH, 2013 WL 2285794 (N.D. Ill. May 23, 2013); *Kowalski v. Mommy Gina Tuna Res.*, 574 F. Supp. 2d 1160 (D. Haw. 2008); *Altana Pharma AG v. Teva Pharms. USA, Inc.*, No. 2:04-cv-02355-JLL-JAD, 2012 WL 12905807 (D.N.J. Dec. 18, 2012); *see also Novozymes A/S, v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007) (finding, after a bench trial, that lost profits were unavailable as a matter of law).

The second prerequisite is to reconstruct the market for the accused product to analyze what would have likely occurred but-for infringement. *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). The plaintiff must account for market complexities, such as third party competitors and variability in product features and prices. *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993) (reversing

lost profits award where the market contained products of varying prices and features); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed. Cir. 1991); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1357 (Fed. Cir. 2001).

Experts may provide testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue," "is based upon sufficient facts or data," and "is the product of reliable principles and methods [that are] . . . applied . . . reliably to the facts of the case." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-92 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-58 (1999). "To prevent the hypothetical from lapsing into pure speculation, [the] court ***requires*** sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing*, 185 F.3d at 1350 (emphasis added). "Where . . . such sound economic and factual predicates are absent from a [damages] analysis, Rule 702 requires this court to exclude that unreliable [expert opinion] evidence." *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689 (E.D. Tex. 2010) (Rader, J.). Courts have consistently excluded evidence and/or granted summary judgment where the record lacked such proof. *See, e.g.*, *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, 2015 WL 3882608 (N.D. Cal. June 23, 2015); *EZ Dock, Inc. v. Schafer Sys.*, No. 0:98-cv-02364-RHK-AJB, 2003 WL 1610781 (D. Minn. Mar. 8, 2003); *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140 (N.D. Cal. 2003); *Hafco Foundry & Mach. Co., Inc. v. GMS Mine Repair & Maint., Inc.*, No. 1:15-cv-16143, 2018 WL 3150353 (S.D. W. Va. June 26, 2018).

### LOST PROFITS—ARGUMENT

Two grounds compel summary judgment of no lost profits (and/or the exclusion of Dr. Becker's lost profits opinion). First, Microchip has not demonstrated that the corporate entity that sells ███ chips in the marketplace is the patentee. Second, Dr. Becker has not identified—with

*any* required rigor—the reconstructed "but-for" market, its participants, their product offerings, or the differences in product functionality and price. Courts have repeatedly granted summary judgment on both grounds, even in cases with far more evidence.

## I.   There Is Insufficient Evidence To Prove That The Patentee Was The Corporate Entity That Lost Sales.

It is well-settled that a plaintiff may recover lost profits only if it held title to the asserted patents *and* lost sales of an embodying product during the relevant time period. *Mars*, 527 F.3d at 1366; *Poly–America*, 383 F.3d at 1311. A defendant is entitled to summary judgment when either requirement is not met, precedent that begins with *Mars* and *Poly–America*.

In *Mars,* Mars licensed the asserted patents to its subsidiary, MEI. 527 F.3d at 1362-63. The patents involved coin changer technology. *Id.* Mars sued Coinco for patent infringement. *Id.* Before the damages trial, the district court granted Coinco's motion for summary judgment of no lost profits because MEI, not Mars, sold the changers. *Id.* at 1364. The court also prohibited Mars from recovering lost profits on MEI's lost sales, reasoning that "Mars itself did not lose any sales (because it did not sell coin changers itself), and that there was no evidence that profits from MEI's sales flowed inexorably to Mars." *Id.* Mars moved, in parallel, to amend its complaint to add MEI as a plaintiff. *Id.* The district court denied that motion because MEI did not own the asserted patents and, therefore, lacked standing to sue for their infringement. *Id.* The Federal Circuit affirmed. *Id.*

In *Poly–America*, the jury awarded Poly-America L.P. $7.15 million in lost profits. 383 F.3d at 1307. A key issue on appeal was whether Poly-America appropriately recovered lost profits resulting from sales lost by Poly-Flex, Inc., Poly-America's sister corporation. *Id.* at 1310. The panel held "the patentee needs to have been selling some item, the profits of which have been lost due to infringing sales, in order to claim damages." *Id.* at 1311. The Court considered that the plaintiff and its sister corporation "have a common parent corporation" and "seem to share interests

as two entities collaborating in the manufacture and sale of textured landfill liners," but held that this relationship did not permit Poly-America to recover lost profits from Poly-Flex's lost sales. *Id*. at 1305, 1311. Noting that Poly-America and Poly-Flex "are separate corporate entities," the panel concluded that one limitation of a corporate structure "separating the owner of the patent from the seller of the patented product" was "the inability of the patent holder to claim the lost profits of its non-exclusive licensee." *Id*. at 1311. Consequently, the Federal Circuit reversed the district court's denial of the defendant's motion for a new damages trial. *Id*. at 1312.

District courts have repeatedly since granted summary judgment, excluded evidence, and/or made legal conclusions precluding lost profits, under analogous facts. For example:

- In *Fujitsu*, Fujitsu Limited ("Fujitsu") owned the asserted patents and licensed them to FNC, its wholly-owned subsidiary and the only entity that sold embodying products in the United States. 2013 WL 2285794, at *1. Fujitsu sued for infringement and attempted to recover lost profits for sales made by FNC's competitor. *Id.* at *2. The Court granted summary judgment, precluding Fujitsu from presenting a lost profits theory at trial. *Id.* at *9.

- In *Kowalski*, the district court granted summary judgment of no lost profits damages to an individual plaintiff, Kowalski, the patent owner and sole owner of the company Hawaii International Seafood, Inc. ("HISI"). 574 F. Supp. 2d at 1161, 1164. The court explained: "Here, the flow of profits from HISI to Kowalski is no more inexorable than Kowalski's intent that it be so." *Id.* at 1163. In precluding the remedy, the court focused on Kowalski's "complete discretion to dispose of the profits of the company as he saw fit" and "the absence of any evidence of inexorability, either contractual, structural or historical" of the flow of profits from HISI to Kowalski. *Id.*

- In *Altana*, two key facts were undisputed: (1) Nycomed, the patentee, never sold an embodying product in the United States; and (2) Nycomed sought lost profits damages based upon sales made by Wyeth, its exclusive licensee. 2012 WL 12905807, at *3. The court noted that, while "[t]here is no dispute that Wyeth's lost sales may have caused harm to Nycomed . . . the dispute at issue is simply whether that harm is compensable under a lost profits theory." *Id.* (internal quotations and citations omitted). Using *Mars* and *Poly-America* as a guide, the court granted summary judgment of no lost profits. *Id.* at *3-4.

- In *Novozymes*, a bench trial before a different court in this District examined this very question. 474 F. Supp. 2d 592. Judge Jordan held that the patentee

Novozymes, could not recover the lost profits of its wholly-owned subsidiary, NZNA. *Id.* at 604. He explained: "Like the corporations in *Poly–America*, Novozymes has structured itself and its subsidiaries for its own goals and purposes. Novozymes must take the burdens of that structure along with the benefits. Novozymes may not blur the legal distinction between itself and NZNA to recover damages that Novozymes has not directly suffered." *Id.* at 604-05.

In this case, Microchip has presented no evidence *at all* that the patentee is the entity losing sales. Its 30(b)(6) witness ████████████████████████████████████ ████████████████████████████████. Transcript of August 9, 2019 Deposition of Mitch Obolsky (attached as Exhibit E), at 76:19-77:22. Dr. Becker flatly admitted he did not know which entity ████████████████████████████████████████ sold █████████ chips to hub manufacturers. Ex. D, at 29:16-30:14. He analyzed no ██████████ █████████████████████████ *Id.* On this record, no reasonable juror could conclude that Microchip lost sales and has standing to recover lost profits. Uncorroborated conclusory testimony from a party witness is legally insufficient. *See, e.g.*, *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) ("To survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' . . . ."); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000) ("A party may not overcome a grant of summary judgment by merely offering conclusory statements."); *Subh v. Wal-Mart Stores, Inc.*, No. 1:08-cv-00410–SLR–LPS, 2009 WL 4015649, at *4 (D. Del. Nov. 19, 2009) (Stark, Mag. J.) (a party's "own uncorroborated accounts . . . without any admissible evidence in support of those claims, are not sufficient to establish a genuine issue of material fact . . .").

As in *Altana*, there is no doubt that any alleged infringement, if found to be true, would entitle Microchip to some award of damages. But this is not the proper inquiry. Standing for lost profits requires evidence that the patentee is the same corporate entity that would have lost sales, and the record is devoid of such evidence. Aptiv's expert flagged this very issue in his rebuttal

report, and the response in Dr. Becker's reply report and at his deposition was silence. Discovery is over and Microchip cannot make the requisite showing. The Court should grant summary judgment of no lost profits.

## II. There Is Insufficient Evidence Of The Reconstructed "But-For" Market.

When there are only two suppliers in a given market, and they are each selling nearly identical products at nearly identical prices, performing a lost profits analysis is much easier, as the first two *Panduit* factors become less prone to speculation and guesswork. *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123-24 (Fed. Cir. 2003). Indeed, "[t]he first Panduit factor— demand for the patented product—presupposes that demand for the infringer's and patent owner's products is interchangeable." *BIC Leisure*, 1 F.3d at 1218. In a case like this, however, where there are ███ suppliers, each offering products with different features at varying prices, lost profits requires "sound economic proof" to establish that, but-for infringement, Microchip would have sold ██████ chips to its customers and its customers would have successfully competed with Aptiv to sell all ████████ hubs. *Grain Processing*, 185 F.3d at 1350. Microchip must provide evidence of this, as follows:

- "[T]he patent owner and the infringer [must] sell products sufficiently similar to compete against each other in the same market segment." *BIC Leisure*, 1 F.3d at 1218.

- In other words, a patentee must show that the infringing units do "not have a disparately higher price than or possess characteristics significantly different from the patented product." *Id*. at 1219 (quoting *Kaufman*, 926 F.2d at 1142).

- "Similarly, to determine a patentee's market share, the record must accurately identify the market. This requires an analysis which excludes alternatives to the patented product with disparately different prices or significantly different characteristics." *Crystal Semiconductor*, 246 F.3d at 1356; *see also Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1291 (Fed. Cir. 2007) (affirming a ruling of no lost profits where there was insufficient market overlap).

Microchip and Dr. Becker have failed to provide any such evidence or analysis. To begin with, Microchip has conceded that ***it does not compete directly with Aptiv*** because Microchip does not even sell automotive-grade USB hubs. Ex. A. ¶¶ 33, 96. Instead, Microchip sells chips to other hub manufacturers (Aptiv's competitors). Those manufacturers then incorporate Microchip's chips into USB hubs that vary by ███████████████████████████████████████ ███████████████████████ *Id*.; Ex. D, at 27:9-16. ███████████████████████ ██████████████████████████████████████████████████████████████. Ex. D at 27:17-28:11. Aptiv's own products vary widely in pricing from ████████ per hub, depending upon the hub's features. *Id*. at 23:23-25:17. Aptiv has at least █████competitors, but Dr. Becker has no understanding of how Aptiv's products compare to theirs, specifically in terms of ████████████████████████████████████████ he just assumes all products in the market cost the same amount, despite Aptiv's █████████ variation. *Id*. at 25:18-26:20. Most damning, he cannot even *name* ████ of the █████ other entities. *Id*. at 18:9-19:3.

Rather than perform any of the required rigorous analysis, Dr. Becker simply assumes Microchip would have made *all* of the sales Aptiv made—via ███████████████████ ██████████████████████████ That "laps[es] into pure speculation," which the law prohibits. *Grain Processing*, 185 F.3d at 1350; *see also IP Innovation*, 705 F. Supp. 2d at 689 ("Where . . . such sound economic and factual predicates are absent from a [damages] analysis, Rule 702 requires this court to exclude that unreliable [expert opinion] evidence.").

In *BIC Leisure*, a leading case regarding proper market reconstruction, a price disparity of 73% between the patentee's product and the infringer's product was enough for the Federal Circuit to overturn a lost profits verdict. 1 F.3d at 1219. Here, the only evidence of pricing is for Aptiv's own products, which vary by ██████ Ex. D, at 23:23-25:17. There is literally nothing in the record

11

comparing or demonstrating how ██████████████████████████████████████
██████████████████████████████████████████████ *See id.* at 25:1-27:8.

Several district courts have granted summary judgment or Rule 702 exclusions in these circumstances. For example, in *Good Technology*, the court granted summary judgment where, as here, ████████████████████████████████████████████████
██████████████████████████████████████████████ 2015 WL 3882608, at *3. The patentee's expert failed to offer "sound economic proof":

> Critically, he did no serious investigation—no empirical study, no survey, nothing—to evaluate the validity of his assumption. His only attempt was to talk to a Good vice president of product management, who offered only that Good would have the "ability" to "make sales at higher prices that were lost to MobileIron at lower prices." This falls far short of the "sound economic proof" required.

*Id.* at *6. Simply competing in the same general market was insufficient:

> But simply because Good and MobileIron compete in the same arena and often compete for some share of their customer base, does not require a conclusion that their products are substitutable and that any MobileIron customer would have purchased a Good product if MobileIron's product was not available. If Weinstein had investigated what portion of MobileIron customers may have ultimately purchased Good in such a scenario and based his lost profits analysis on those numbers, this might be a different story. But on this record there is simply no factual or logical basis for allowing lost profits calculations on MobileIron's entire market share.

*Id.* at *7. District courts across the country have found the failure to appropriately reconstruct the market fatal. *See, e.g.*, *Hafco*, 2018 WL 3150353, at *3 (denying reconsideration of ruling that vacated lost profits damages post-trial, finding there was no attempt to reconstruct the market: "Hafco simply assumed that every sale made by GMS would have been theirs in the absence of the infringement." (internal citations and quotations omitted)); *EZ Dock*, 2003 WL 1610781, at *6 (excluding expert testimony where "report points to *no* facts that underlie [the expert's] proposed

testimony regarding . . . the nature of the market as a two supplier market"); *Illinois Tool Works, Inc. v. MOC Products Co., Inc.*, No. 3:09-cv-01887-JLS-MDD, 2012 WL 3561984, at *7-8 (S.D. Cal. 2012) (granting motion *in limine* preventing opinion on market share where only source of information was the patentee's employees, which the court chided as not being "the type of reliable method based on sufficient facts that *Daubert* envisioned").

The same analysis applies here. Perhaps a hub manufacturer would have used ███ to capture **some** of Aptiv's sales, for **some** of Aptiv's products, to **some** of Aptiv's customers. But Microchip did not limit its lost profits claim to those specific instances. And there is nothing in the record that supports the leap that Microchip would have made **all** of Aptiv's sales, for **all** of Aptiv's products, to **all** of Aptiv's customers. The law requires much more, and Microchip falls "far short."

In addition, and as was true in *Good Technology*, Dr. Becker's opinions are based almost entirely on ███████████████████████████████████████████ ███████████████████████████████████████ Ex. D, at 16:17-23, 147:13-22; Ex. C ¶ 20. But Dr. Becker cannot properly rely solely on conclusory opinions of an interested party witness. *See, e.g.*, *Illinois Tool Works*, 2012 WL 3561984, at *7-8. Such "evidence" for damages is no more appropriate than a conclusory opinion of infringement by one of Microchip's engineers. Microchip has failed to meet its burden to prove entitlement to lost profits.

### REASONABLE ROYALTY—FACTUAL BACKGROUND

Dr. Becker's royalty opinions attempt to ensure that Microchip receives its alleged "lost profits" even if they are unavailable. He opines that the parties would have agreed to a royalty of ███ for every unit sold by Aptiv, which is nearly identical to the ███ profit margin he used for lost profits. Ex. A ¶¶ 179-80. At his deposition, Dr. Becker conceded that the ██████████ ████████████████████████ i.e., he did not apportion. Ex. D, at 167:14-168:13.

13



But for its ▮▮▮▮ chips, Aptiv pays roughly ▮▮▮ a unit, and, at most, ▮▮▮▮ to the accused host-to-host bridge. Ex. B ¶ 146. These chips are used in USB hubs that sell for between ▮▮▮▮ and have a profit margin of approximately ▮▮. Ex. D, at 23:23-25:17; Ex. A ¶ 109. Dr. Becker concedes that the hubs have ▮▮▮▮ ▮▮▮▮ Ex. A ¶ 176. At his deposition, Dr. Becker stated ▮▮ ▮▮▮▮ ▮▮▮▮ Ex. D, at 173:22-174:16; Ex. C ¶ 36. But the facts show that for all practical purposes he did, improperly, apply the entire market value rule.

## REASONABLE ROYALTY—LEGAL BACKGROUND

"The patentee . . . must in ***every case*** give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (emphasis added). Over 100 years later, courts strictly adhere to this pronouncement. Basing a royalty on an entire product, as opposed to the smallest salable patent-practicing unit ("SSPPU"), is a legally impermissible application of the so-called entire market value rule. *See LaserDynamics, Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 67-68 (Fed. Cir. 2012) ("We reaffirm that in any case involving multi-component products, patentees may not calculate damages based on sales of the entire product, as opposed to the smallest salable patent-practicing unit, without showing that the demand for the entire product is attributable to the patented feature."); *Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1318-20 (Fed. Cir. 2011) (rejecting damages calculation where "the entire market value of the accused products has not been shown to be derived from the patented contribution").

"[T]he requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment." *VirnetX,*

*Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014). Therefore, "[w]here the smallest salable unit is, in fact, a multi-component product containing several non-infringing features . . . , the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology." *Id*. The "essential requirement" is "that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). This Court has stricken expert opinions failing to heed these directives. *See, e.g.*, *Helios Software, LLC v. SpectorSoft Corp.*, No. 1:12-cv-00081-LPS, 2014 WL 4796111, at *6-7 (D. Del. Sept. 18, 2014) (Stark, C.J.); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, No. 1:12-cv-00540-LPS, 2015 WL 1303643, at *3-4 (D. Del. Mar. 20, 2015) (Stark, C.J.); *Acceleration Bay LLC v. Activision Blizzard Inc.*, No. 1:16-cv-00453-RGA, 2019 WL 4194060, at *4-5 (D. Del. Sept. 4, 2019).

## REASONABLE ROYALTY—ARGUMENT

There is no credible dispute that Dr. Becker determined a reasonable royalty rate by using the entire market value of each USB hub, instead of the accused host-to-host functionality within the ███ chip, or, at a minimum, the ███ chip alone. In his reply report, he candidly admitted to having used ████████ in determining the reasonable royalty. Ex. C ¶ 36. This is improper. Dr. Becker's use of the ██████ would be improper even as a "sanity check," for the reasons the Federal Circuit stated in *Uniloc*. 632 F.3d at 1320 ("The disclosure that a company has made $19 billion dollars in revenue from an infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."); *see also LaserDynamics*, 694 F.3d at 68. Any royalty should have been based on relevant financial data regarding the accused ███ *chip*, not the ████████ ████████

15

*LaserDynamics* is instructive. 694 F.3d 51 (Fed. Cir. 2012). Just as in that case, Microchip and its expert have impermissibly ignored the smallest salable patent practicing unit (the chip) and instead looked to the entire market value of ████████████████████ [2] In *LaserDynamics*, the accused functionality related to disc drives in a laptop computer. 694 F.3d at 68. The Court found that the expert violated the entire market value rule by applying a two-percent royalty to total revenues from the defendant's computer sales. *Id*. The Federal Circuit determined that plaintiff failed "to present evidence showing that the patented [component or SSPPU] . . . drove demand for the laptop computers," and accordingly the expert's reliance on total laptop computer revenues was improper. *Id*. Although the expert had apportioned based on total sales, "the fact remain[ed] that the royalty was expressly calculated as a percentage of the entire market value of a laptop computer rather than a patent-practicing [component]." *Id.* So, too, here*,* Microchip and Dr. Becker's use of the ████████████ violates the entire market value rule.

Moreover, Dr. Becker failed to apportion the value of the chip to only the accused portions, namely the host-to-host bridge. Stated differently, even if Dr. Becker had started with the SSPPU, the SSPPU *itself* must be apportioned. *VirnetX*, 767 F.3d at 1327. This did not happen here. Dr. Becker's ████ royalty is nearly identical to the ████ profit calculation for Microchip's ***entire*** ████ chip, which concededly ████████ . ████████████████████████ . As such, the Court should exclude Dr. Becker's royalty opinions under Rule 702.

---

[2]   Dr. Becker, based on conversations with Mr. Zatkovich, apparently believes that, for some claims, ████████████████████ . Ex. D, at 175:24-176:11. But Microchip has accused ████████████████████ . Any such argument is thus inconsistent with *Ericsson*'s holding that the royalty should be based on the ***incremental*** value the patented invention adds.

## CONCLUSION

For the foregoing reasons, Aptiv respectfully requests the Court to grant summary judgment of no lost profits and exclude Dr. Stephen Becker's opinions regarding lost profits and reasonable royalty.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:    */s/ Philip A. Rovner*

Elizabeth R. Brannen
Kenneth J. Halpern
Justin M. Barnes
Jhaniel N. James
Hanna Chandoo
STRIS & MAHER LLP
777 S Figueroa St
Ste 3850
Los Angeles, CA 90017
(213) 995-6800

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant*
*Aptiv Services US, LLC*

Dated:  December 17, 2019
Public Version Dated: December 26, 2019

17