**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **MICROCHIP TECHNOLOGY INCORPORATED,**<br><br>*Plaintiff*,<br><br>v.<br><br>**APTIV SERVICES US LLC.,**<br><br>*Defendant*. | **Case No. 1:17-cv-01194-JDW** |

**MEMORANDUM**

When Congress created the *inter partes* review process, it gave litigants an opportunity to challenge the validity of patents before a specialized tribunal—the Patent and Trademark Appeals Board. The price of electing that format is that 35 U.S.C. § 315 estops a party from raising in litigation any ground that it raised or could reasonably have raised in the IPR proceedings. The hope is that this process will streamline, rather than multiply, patent disputes. The question for the Court is whether IPR estoppel applies to claims that an alleged infringer claims are so far-fetched that it could not have anticipated its opponent's position. There might be such a case, but this isn't it. However, this also isn't a case where the Court should parse an invalidity contention to disregard references to physical devices that the patent owner thinks are gratuitous.

**I.   FACTS**

  **A.   The Asserted Patents**

There are two patents at issue in this case: U.S. Patent No. 7,523,243 ("'243"), entitled "Multi-Host USB Device Controller;" and U.S. Patent No. 7, 627, 708 ("'708"), entitled "Multi-Host USB Device" (the "Asserted Patents"). Both patents have claims directed to a multi-device controller using Universal Serial Bus technology. The patents permit a USB device to "be simultaneously configured and accessed by two or more USB hosts." (D.I. 1 at Exs. A & B.)

### B. The IPR Proceedings

Aptiv filed IPR petitions on February 8, 2017. The IPR petitions list six grounds:

(1) Japanese Patent Application Publication 2003-256351 ("Furakawa");

(2) US Patent No. 6,549,966 ("Dickens");

(3) Either Furakawa or Dickens and U.S. Patent No. 7,073,010 ("Chen");

(4) Either Furakawa or Dickens and the USB 2.0 standard;

(5) US Patent Publication 2006/0059293 ("Wurzburg") in view of U.S. Patent No. 6,308,239 ("Osakada"), as in prosecution, in view of either Furakawa or Dickens; and

(6) Either Furakawa or Dickens and admitted prior art, including the USB 2.0 Specification.

(D.I. 192-1 and 192-2.) The Patent and Trademark Appeals Board initiated an IPR. It initially did so only for some of the asserted grounds. However, after the Supreme Court's decision in *SAS Institute, Inc. v. Iancu*, 138 S.Ct. 1348 (2018), it revisited its institution decision and instituted proceedings on all asserted grounds. On August 28, 2018, the PTAB issued its final written decision.

### C. Procedural History

Microchip sued Aptiv in the District of Arizona in August 2016, accusing Aptiv's Media Hub products of having a host-to-host device that enables multi-host USB functionality. Microchip and Aptiv met and conferred, via counsel, about the level of detail in the complaint. During those discussions, Microchip's counsel explained Microship's infringement theory. In November 2016, Microchip amended its complaint to add additional detail, including references to host-to-host bridging as a basis for infringement. Microchip then dismissed the Arizona case and refiled in this Court to avoid a venue challenge.

The Court stayed this case to permit the IPR proceedings to proceed. After the resolution of the IPR proceedings, the case resumed. Aptiv has submitted an expert report from John Garney concerning the invalidity of some of the claims in the Asserted Patents. For each of the Asserted Patents, Mr. Garney relies on four invalidity grounds:

(1) Obviousness based on Dickens, in combination with one or more of US-98/Belkin,[1] a product data sheet for Prolific PL-2501 Hi-Speed USB 2.0 Host-to-Host Bridge/Network Controller, Ito, USB 1.0 specification, and USB 2/0 specification;

(2) Obviousness based on Furukawa in combination with US-98/Belkin and the USB 1.0 specification;

(3) Anticipation based on Ito, alone or in combination with one or more of US-98/Belkin, the USB 1.0 specification, the USB 2.0 specification; *USB Complete*,[2] and *USB Design by Example*;[3] and

(4) Anticipation and obviousness based on US-98/Belkin, alone or in combination with the USB 1.0 specification.

(D.I. 192-9 at 10.) Microchip has moved for summary judgment, arguing that 35 U.S.C. § 315 estops Aptiv from relying on any of these grounds because Aptiv raised or could have raised all of them in the IPR proceedings.

---

[1] "US-98" refers to a US-98 USB Auto Share Switch 4x4. "Belkin" refers to a Belkin 4x4 USB Peripheral Switch. Both products are switches that enable multiple USB host computers to share a single peripheral device, such as a printer.

[2] Jan Axelson, *USB Complete: Everything You Need to Develop Custom USB Peripherals* (2d ed. 2001).

[3] John Hyde, *USB Design by Example* (2d ed. 2001).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*,

477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

### III.   ANALYSIS

#### A.   "Reasonably Could Have Raised"

"The petitioner in an *inter partes review* of a claim in a patent under this chapter that results in a final written decision under section 318(a) . . . may not assert either in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). The words "reasonably could have raised" refer to "grounds that were not actually in the IPR petition, but reasonably could have been included." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 602 (D. Mass. 2018); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15-CV-1067, 2017 WL 3278915, at *8 (N.D. Ill. Aug. 2, 2017) ("If a party does not include an invalidity ground in its petition that it reasonably could have included, it necessarily has not raised a ground that it 'reasonably could have raised during ... IPR.'").

Aptiv urges the Court to adopt a different interpretation, in which estoppel applies only to claims that were raised during IPR proceedings, rather than in the petitions. Aptiv basis that argument on the Federal Circuit's decision in *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293 (Fed. Cir. 2016). *Shaw* does not apply here. In *Shaw*, the petitioner included certain arguments in its IPR petition, but the PTAB declined to initiate the IPR on those arguments. The PTAB's decision meant that the petitioner could not raise those invalidity grounds "during" the IPR proceedings. 35 U.S.C. §315(e)(2). *Shaw* reflects the Federal Circuit's reasonable

5


interpretation of the word "during" in the statute. It has no bearing on a situation like this, where the question is whether estoppel applies to grounds that were not in the IPR petitions at all.

The *Shaw* decision also predates the Supreme Court's decision in *SAS Inst.* There, the Court held that the PTAB did not have the authority to continue partial institution of IPRs. The Federal Circuit interprets that decision to "require[] institution on all challenged claims and all challenged grounds." *BioDelivery Sci. Int'l, Inc. v. Aquestive Therapeutics, Inc.*, 898 F.3d 1205, 1208 (Fed. Cir. 2018). Since then, district courts reject the argument that IPR estoppel does not apply to non-petitioned grounds. *See, e.g., Wi-LAN Inc. v. LG Elecs., Inc.*, 421 F. Supp. 3d 911, 924 (S.D. Cal. 2019); *see also Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410-EMC, 2019 WL 7589209, at *6 (N.D. Cal. Dec. 30, 2019); *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-CV-00410-EMC, 2019 WL 7589209, at *6 (N.D. Cal. Dec. 30, 2019).

Aptiv concedes that it knew about the Ito reference and could have located Prolific through a diligent search. It claims, however, that it could not reasonably have raised those references because it could not have foreseen Microchip's infringement theory. There are several problems with Aptiv's argument. *First*, Aptiv's argument assumes that its own position in this case is correct. That is, Aptiv assumes that Microchip has stretched the Asserted Patents beyond what they cover. The Court does not agree. Microchip's reading of the Asserted Patents might prove too aggressive, and a jury might reject its theory of infringement. But nothing before the Court suggests that Microchip's reading of the patents is so broad that it is wrong as a matter of law. *Second*, Aptiv has not cited any cases in which a Court adopted Aptiv's approach and excluded a reference from the scope of an IPR reference because the patent owner's reading was overbroad. Congress created the IPR mechanism to channel invalidity arguments to the PTAB. The Court will not create an exception to that process for theories that an alleged infringer deems overbroad or outlandish.

*Third*, Aptiv had notice of Microchip's infringement theory before it submitted its IPR petitions because the Arizona complaint had been filed, the lawyers had conferred, and Microchip had filed an amended complaint.

The fact that Aptiv disagrees—even strongly—with Microchip's reading does not mean that Aptiv could not have conceived of Microchip's interpretation. To be sure, there could be a case where a party's reading of its own patents is so outlandish that a court might decline to apply estoppel. But this is not that case. Microchip's interpretation might be aggressive, but it is within the scope of what may be plausible. Aptiv should have anticipated that Microchip would seek the broadest possible reading of its own patents. If Aptiv is correct that Microchip is reading the Asserted Patents too broadly, it can make that argument to a jury when the parties argue about infringement. The Court will not accept it as a matter of law.

Aptiv's argument that the PTAB would not have initiated an IPR fails for the same reason. The argument rests on the idea that the PTAB would not have construed the Asserted Patents so broadly. Again, though, the argument rests on an assumption that Microchip has interpreted the patents too broadly. The Court concludes that Section 315(e)(2) estops Aptiv's references to Ito and Prolific.

### B.     Combinations With Physical Device Prior Art

Section 311 imposes IPR estoppel only on "the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 315(b). As the plain language of this provision makes clear, petitioners for IPR can only raise invalidity grounds based on patents and printed publications. They cannot raise physical device prior art. Section 311 therefore does not estop references based on physical prior art, whether standing alone or in combination with a printed reference. On its face, this rule exempts from the IPR estoppel Aptiv's references based at least in part on US-98

7

and Belkin, which are physical device prior art. Microchip, however, argues that Aptiv's inclusion of those references is "gratuitous" and asks the Court to disregard them and apply the IPR estoppel. The Court will not do so.

Microchip has not pointed the Court to any legal basis to parse Aptiv's invalidity contentions to decide whether the physical device portion is gratuitous. Microchip does cite several cases in which courts applied IPR estoppel despite the inclusion of physical device prior art in a reference. But in each of those cases, the Court determined that there was a corresponding printed publication for the physical device. For example, in *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp.3d 990, 1032 (E.D. Wisc. 2017), the court drew a distinction between the printed materials associated with a physical specimen and the specimen itself. It allowed the latter, even if they fell within the scope of the IPR. Similarly, in *SiOnyx, LLC v. Hamamatsu Photonics, K.K.*, 330 F. Supp.3d 574, 603 (D. Mass. 2018), the court drew a distinction between the use of a physical device and its printed datasheets.

Microchip's argument here is different. It does not point to public written material that correspond to US-98 or Belkin as a basis to impose IPR estoppel. Instead, it wants the Court to dig into the substance of Aptiv's references and determine that the physical devices do not add anything beyond the written references. Yet Aptiv's expert will testify that the combination is significant. The Court has no basis to disregard such testimony and disregard those references.

## IV. CONCLUSION

If Aptiv wanted to bring up written prior art, it had to do so in the IPR proceeding that it initiated. Section 315 estops it from asserting grounds that it did not bring up in that proceeding, even if it thinks the grounds are outlandish. However, nothing estops Aptiv from raising invalidity

arguments based on a combination of written and physical references. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

July 28, 2020