IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROCHIP TECHNOLOGY INCORPORATED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-1194-JDW |
| APTIV SERVICES US, LLC, | ) ) ) | |
| Defendant. | ) ) | |

## <u>PROPOSED FINAL PRETRIAL ORDER – PATENT</u>

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.  The parties are Plaintiff Microchip Technology Incorporated ("Microchip") and Defendant Aptiv Services US, LLC ("Aptiv").  Pursuant to Local Rule 16.3, Plaintiff and Defendants hereby submit for the Court's approval this proposed Joint Final Pretrial Order governing the jury trial of Civil Action No. 17-1194.  A Pretrial Conference in this matter is scheduled for April 4, 2022, and a jury trial is scheduled to begin on April 6, 2022.

**Attorneys For Plaintiff Microchip Technology Incorporated:**

John W. Shaw (No. 3362)
jshaw@shawkeller.com
Jeffrey T. Castellano (No. 4837)
jcastellano@shawkeller.com
Nathan R. Hoeschen (No. 6232)
nhoeschen@shawkeller.com
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700

1

*Of Counsel*
Bruce W. Slayden II
bslayden@sgbfirm.com
Brian C. Banner
bbanner@sgbfirm.com
Darryl J. Adams
dadams@sgbfirm.com
Joseph D. Gray
jgray@sgbfirm.com
Truman H. Fenton
tfenton@sgbfirm.com
R. William Beard, Jr.
wbeard@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
(512) 402-3550

**Attorneys For Defendant Aptiv Services US, LLC:**

Philip A. Rovner (No. 3215)
provner@potteranderson.com
Jonathan A. Choa (No. 5319)
jchoa@potteranderson.com
POTTER ANDERSON & CORROON LLP Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000

*Of Counsel*
Daralyn J. Durie
ddurie@durietangri.com
Timothy Saulsbury
tsalsbury@durietangri.com
Eric C. Wiener
ewiener@durietangri.com
Andrew T. Jones
ajones@durietangri.com
Joyce C. Li
jli@durietangri.com
W. Henry Huttinger
hhuttinger@durietangri.com
DURIE TANGRI LLP
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

2

## I.      NATURE OF THE CASE

1.      This is a lawsuit between two companies.  Plaintiff Microchip filed this lawsuit against Defendant Aptiv[1] asserting claims of patent infringement.  Microchip is a leading supplier of integrated circuits (or chips) used in a variety of electronics, for example, the electronics found in many automotive systems.  Aptiv incorporates integrated circuits into automotive systems to provide functionality such as infotainment and safety.  Microchip alleges Aptiv infringes U.S. Patent Nos. 7,523,243 ("the '243 Patent") and 7,627,708 ("the '708 Patent") (collectively, the "Patents-in-Suit").  This lawsuit arises under the patent laws of the United States, Title 35, United States Code, § 100 et seq., and in particular under 35 U.S.C. § 271(a)–(c).  The lawsuit relates to an Aptiv product known as the "Dual Role Hub," which is an electronic component that is incorporated into automobiles and uses USB connections to, among other things, allow the driver to use an iPhone to control the vehicle's display.

2.      Defendant Aptiv filed declaratory judgment counterclaims against Microchip alleging (1) Aptiv does not infringe the Patents-in-Suit and (2) the Patents-in-Suit are invalid.

## II.      JURISDICTION

3.      Microchip seeks damages and injunctive relief in this action arising under the patent laws of the United States, Title 35, United States Code.

4.      The jurisdiction of the Court is not disputed and is based on 28 U.S.C. §§ 1331 and 1338.

---

[1]      Microchip's lawsuit originally named a company called Delphi Automotive Systems as defendant.  During the lawsuit, Delphi Automotive Systems changed its name and is now called Aptiv Services US, LLC.

### III.   FACTS

#### A.   Uncontested Facts

5.     Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury or Court, and will be charged for the time used to do so.

The following facts are not contested by the parties:

#### i.   The Parties

6.     Microchip Technology Incorporated is a Delaware corporation with its principal place of business located at 2355 West Chandler Blvd., Chandler, Arizona, 85224-6199.

7.     Microchip Technology Incorporated owns all right, title, and interest in and to the patents asserted against Aptiv in this case.

8.     Microchip was founded in 1989.

9.     Aptiv Services US, LLC is a Delaware limited liability company with a principal place of business at 5725 Delphi Drive, Troy, Michigan, 48098.

10.     Aptiv Services US, LLC was formerly known as Delphi Automotive Systems, LLC, or "Delphi."

11.     Microchip filed an initial lawsuit against Delphi on August 22, 2016 in the District of Arizona.  In that lawsuit, Microchip alleged Delphi infringed the '243 Patent, the '708 Patent, and U.S. Patent No. 7,478,191 (the "'191 Patent").  Microchip's complaint in that lawsuit was served on Aptiv on August 24, 2016. Microchip dismissed that lawsuit on August 27, 2017.

12.     Microchip filed the present lawsuit against Delphi on August 24, 2017, alleging infringement of the same three patents.

13.     Delphi changed its name to Aptiv Services US, LLC after the lawsuit was filed.

4

14.     Neither party contests that for purposes of Microchip's claims against Aptiv in this lawsuit, the Court has personal jurisdiction over Aptiv and venue is proper.

## ii.  Patents-in-Suit

### a.   The '243 Patent

15.     United States Patent No. 7,523,243 is entitled "Multi-Host USB Device Controller."

16.     Microchip asserted claims 2, 6, 10, 16–17, and 22–25 of the '243 Patent in this action.

17.     The earliest application leading to the '243 Patent, United States Provisional Patent Application No. 60/792,178, was filed on April 14, 2006.

18.     On April 21, 2009, the United States Patent and Trademark Office issued the '243 Patent.

19.     The '243 Patent was originally assigned to Standard Microsystems Corporation ("SMSC"), which assigned all rights, title and interest to the '243 Patent to Standard Microsystems LLC in August 2016, who in turn assigned all rights, title, and interest to the '243 Patent to Microchip in August 2016.

20.     Neither SMSC nor Microchip has licensed the '243 Patent to any other company.

21.     Mark Bohm and Atish Ghosh are the named inventors of the '243 Patent.

22.     Aptiv does not have a license to the '243 Patent.

23.     Aptiv has had knowledge of the existence of the '243 Patent since at least January 12, 2015.

### b.   The '708 Patent

24.     United States Patent No. 7,627,708 is entitled "Multi-Host USB Device."

25.     Microchip asserted claim 6 of the '708 Patent in this action.

26.     The earliest application leading to the '708 Patent, United States Provisional Patent Application No. 60/792,178, was filed on April 14, 2006.

27.     The application leading to the '708 Patent is a continuation of the application that issued as the '243 Patent.

28.     On December 1, 2009, the United States Patent and Trademark Office issued the '708 Patent.

29.     The '708 Patent was originally assigned to SMSC, which assigned all rights, title and interest to the '708 Patent to Standard Microsystems LLC in August 2016, who in turn assigned all rights, title, and interest to the '708 Patent to Microchip in August 2016.

30.     Neither SMSC nor Microchip has licensed the '708 Patent to any other company.

31.     Mark Bohm and Atish Ghosh are the named inventors of the '708 Patent.

32.     Aptiv does not have a license to the '708 Patent.

33.     Aptiv has had knowledge of the existence of the '708 Patent since at least January 12, 2015.

### iii. Aptiv's Dual Role Hub and Boston Chip

34.     Aptiv sells and offers to sell a Dual Role Hub product.

35.     The Dual Role Hub was original, was designed at Unwired Technology LLC ("Unwired"), an Aptiv affiliate purchased Unwired, an Aptiv press release dated September 30, 2014 discussed the purchase of Unwired, and the press release included the quoted statement "Unwired's connectivity products provide two-way data connections between smartphones and tablets and in-car infotainment systems, allowing consumers to safely access content in the vehicle."

36.     According to an Aptiv website, the Dual Role Hub allows the car radio and a user's phone "to be recognized as 'host' devices simultaneously."

37.     Aptiv markets and promotes the Dual Role Hub in the video available at https://vimeo.com/162512071 titled "New USB Hub Helps Automakers' Make Apple CarPlay™ Work Simultaneously with Other Devices" (hereinafter, the "Aptiv Promotional Video").

38.     The Aptiv Promotional Video describes the Aptiv Dual Role Hub as follows: "CarPlay operates by simply connecting the Apple phone to a USB connector in the car. When the Apple phone is connected, the infotainment system allows the Apple phone to become the host of the USB communication and to stream content right onto the screen. But when an automaker integrates Apple CarPlay into their infotainment system, they must allow the Apple phone to be the host of the USB communication. This is typically done by using an On-The-Go USB port on the head unit, which would change from a host to a device to support the CarPlay session. Delphi has solved these challenges by providing a USB hub that offers a unique way to bridge two hosts together without these drawbacks. Now users can have their personal content replicated in the vehicle while also allowing other passengers to use content at the same time from a different device. This solution, called Dual Role Hub, gives automakers a unique way to implement CarPlay and provide greater functionality with optimized packaging. Delphi's USB hub with host-to-host bridge is integrated into USB media modules, like the one in this vehicle. In this highly compact module, Delphi can perform the standard USB hub function while accommodating Apple CarPlay. There are three key features of the Delphi USB hub with host-to-host bridge. First, only one USB port is required to access the hub from the head unit, which remains the host port. Second, the Delphi

7

USB hub with the host-to-host bridge allows either USB port on the module to support CarPlay. Third, the USB port in the host-to-host system not used for CarPlay is still active and can be used for accessing music on a USB drive, accessing map data for the navigation system, or accessing another phone or iPhone."

39.     On or around January 12, 2015, Microchip sent a letter to Aptiv, providing notice of the '243 Patent and the '708 Patent.  In the letter, Microchip notified Aptiv that "any multi-host USB device control-based solution that might be implemented within the automotive infotainment system environment" would be covered by the '243 and '708 Patents, including Aptiv's "USB device controllers designed for multiple-host connectivity" developed by Unwired Technology.

40.     On January 30, 2015, Craig A. Baldwin, North American Patent Counsel for Aptiv, responded to Microchip's January 12, 2015 letter and said that Aptiv had reviewed the '243 Patent and the '708 Patent and had no intention of releasing a product that would infringe those patents or any other Microchip patent.

41.     Aptiv sells the Dual Role Hub to automotive and other entities with the knowledge and intent that the Hub will be incorporated in automotive infotainment systems to be later incorporated and sold as part of an automobile and/or other final products.

42.     Aptiv has tested and used the Dual Role Hub in the United States.

43.     Aptiv offers for sale and sells the Dual Role Hub in the United States.

**iv.  Microchip's Hub Chips**

44.     Microchip began selling Sandia chips in the second quarter of 2017.

### v.  Prior Art

45.     The following patents, patent applications, and printed publications are prior art to the '243 Patent and the '708 Patent:

      a.     U.S. Patent No. 6,549,966 ("Dickens")

      b.     Japanese Unexamined patent Application No. P2003-256351 ("Furukawa")

      c.     Japanese Patent Application JP2000-194649A ("Ito")

### B.     Contested Facts

46.     Microchip's statement of the facts in issue that it contends remain to be litigated, including brief statements of what it intends to prove in support of its claims and defenses is attached as **Exhibit 1**.

47.     Aptiv's statement of the facts in issue that it contends remain to be litigated, including brief statements of what it intends to prove in support of its claims and defenses is attached as **Exhibit 2**.

48.     If this Court determines that any issue identified in the statements of facts in issue is more properly considered an issue of law, it should be so considered.

## IV.   ISSUES OF LAW

49.     Microchip's statement of the legal issues that remain to be litigated in this case and its citation of authorities relied upon is attached at **Exhibit 3**.

50.     Aptiv's statement of the legal issues that remain to be litigated in this case and its citation of authorities relied upon is attached at **Exhibit 4**.

51.     If this Court determines that any issue identified in the statements of the issues of law is more properly considered an issue of fact, it should be so considered.

## V.   WITNESSES

52.     Any witness not listed will be precluded from testifying, absent good cause shown. Such good cause shall include, but is not limited to, testimony required to authenticate any documents subject to an authenticity objection. Subject to the notice requirements addressed herein, the listing of a witness on a party's witness list does not require that party to call that witness to testify unless listed as a "will call" witness, and does not necessarily mean that the listing party has the power to compel the live testimony of that witness. In the absence of an alternative agreement between the parties, fact witnesses will be sequestered pursuant to Rule 615 of the Federal Rules of Evidence provided, however, the parties will not be required to exclude an officer or employee designated as the party's representative. Any such agreement is not intended to abrogate or alter D. Del. LR 43.1.

53.     By 6:00 pm ET two calendar days before a witness will be called to testify live, the name of the witness will be identified by email to opposing counsel, and, if multiple witnesses are thereby identified, the expected order of presentation.

54.     Also, unless the parties reach an alternative agreement, the order of the presentation of evidence will follow the burden of proof, i.e.:

Phase I:        Plaintiff case-in-chief on infringement and damages

Phase II:       Defendant response on infringement and damages, and case-in-chief on invalidity

Phase III:      Plaintiff rebuttal on infringement and damages (limited solely to rebutting evidence presented by Defendant in its response on those issues), and response on invalidity

Phase IV:       Defendant rebuttal on invalidity (limited solely to rebutting evidence presented by Plaintiff in its response on invalidity)

10

### A.  List of Witnesses the Plaintiff Expects to Call

55.     Microchip identifies the following witnesses whom it will or may call live or by prior testimony at trial, depending on the witness's availability. Microchip reserves the right to call additional witnesses necessitated by the Court's pretrial or trial rulings or in response to Aptiv's trial witnesses.

### i.  Expert witnesses

56.     Below are the expert witnesses Microchip will call as live witnesses at trial, along with a disclosure of the precise subject matter on which it will ask the Court to recognize each witness's expertise.

57.     Mr. Ivan Zatkovich:  Mr. Zatkovich is a technical expert with expertise in computer science and electrical engineering applications including embedded systems, network device interfaces, peripheral interface drivers, wired and wireless protocols including Wi-Fi, Bluetooth, and USB.  Mr. Zatkovich will testify consistent with his expert reports, which may include testimony regarding the disclosure of the patents-in-suit, issues of infringement of the '243 Patent and the '708 Patent, non-infringing alternatives, and Microchip's practice of the Patents-in-Suit.  This testimony may also include the state of the art, persons of ordinary skill in the art, and their knowledge at the time of the invention.  Mr. Zatkovich may also rebut any opinions offered by Mr. Garney on matters within his areas of expertise, including the benefits and importance of the patents, usage, etc.

58.     Dr. John Levy:  Dr. Levy is a technical expert with expertise in computer systems, software, and storage.  Dr. Levy will testify consistent with his expert reports, which may include testimony regarding the disclosure of the patents-in-suit and issues of validity of the '243 Patent and the '708 Patent.  This testimony may also include the state of the art, persons of ordinary skill in the art, and their knowledge at the time of the inventions.  Dr.

Levy may also rebut opinions offered by Mr. Garney on matters within his areas of expertise, including the benefits and importance of the patents, usage, etc.

59.     Dr. Stephen Becker is an economics and financial expert with expertise in evaluating damages with respect to intellectual property disputes. Dr. Becker will testify consistent with his expert report, including any supplements or corrections thereto, which will include testimony, facts, factors, and matters regarding damages for Microchip's claims, damages measurements, applicable damage frameworks, lost profits and reasonable royalty analyses. Dr. Becker may also rebut any opinions offered by Mr. Chase on matters within his areas of expertise.

### ii.   Non-expert witnesses

#### a.        *Fact witnesses Microchip will call at trial*

60.     Mitch Obolsky

61.     Mark Bohm

#### b.        *Fact witnesses Microchip may call at trial*

62.     Atish Ghosh

63.     Dave Sroka

64.     Robert Voto

65.     Craig Petku

66.     Shyambaby Yeda

67.     Michael Dreon

**B.     List of Witnesses Defendant Expects to Call**

**i.   Expert witnesses**

68.     Below are the expert witnesses Aptiv will call as live witnesses at trial, along with a disclosure of the precise subject matter on which it will ask the Court to recognize each witness's expertise.

69.     Mr. John Garney:  Mr. Garney is a technical expert with expertise in computer science and electrical engineering applications including extensive experience in the field of hardware, firmware, and software related to USB.  Mr. Garney will testify consistent with his expert reports, which may include testimony regarding issues of non-infringement and invalidity of the '243 Patent and the '708 Patent.  This testimony may also include the state of the art, persons of ordinary skill in the art, and their knowledge at the time of the invention. Mr. Garney may also rebut any opinions offered by Mr. Zatkovitch and Dr. Levy, Microchip's technical experts, on matters within his areas of expertise.

70.     Mr. Michael Chase is a Certified Public Accountant and is a finance and economics expert with expertise in evaluating damages with respect to intellectual property matters, and with respect to matters relating to the automotive sector.  Mr. Chase will testify consistent with his expert report and his deposition, which cite and refer to evidence regarding the amount of damages Microchip would be entitled to if it prevails at trial on infringement and validity of the patents-in-suit, including offering his opinions regarding lost profits and reasonable royalty damages.  Mr. Chase may rebut Dr. Becker's opinions and may offer his own calculation of damages in this case.

**ii.   Non-expert witnesses**

**a.     *Fact witnesses Aptiv will call at trial***

71.     Robert Voto

72.   Michael Dreon

**b.    *Fact witnesses Aptiv may call at trial***

73.   Mark Bohm

74.   Atish Ghosh

75.   Mitch Obolsky

76.   Donald Perkins

77.   Craig Petku

78.   Rene Rozycki

79.   Dave Sroka

80.   Shyambaby Yeda

**C.    Testimony by Deposition**

81.   The deposition testimony that Microchip may offer into evidence, together with Aptiv's objections and counter-designations, and Microchip's objections to the counter-designations, and counter-counter designations, is identified in **Exhibit 5.**  Per D.I. 309, Exhibit 5 will be submitted to the Court on March 28, 2022.

82.   The deposition testimony that Aptiv may offer into evidence, together with Microchip's objections and counter-designations, and Microchip's objections to the counter-designations, and counter-counter designations, is identified in **Exhibit 6.**  Per D.I. 309, Exhibit 6 will be submitted to the Court on March 28, 2022.

83.   Exhibits 5 and 6 will contain the maximum universe of deposition designations, counter-designations, counter-counter designations and objections to admission of deposition testimony. None of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

84.    For convenience and sake of brevity, the parties have listed counter-designations in response to specific affirmative designations by the opposing parties. To the extent an opposing party withdraws any affirmatively designated testimony or seeks to limit the manner of presentation of testimony through the designation process, a party may present its counter-designation testimony in response to other specified affirmative testimony by the opposing party or re-designate its counter-designated testimony affirmatively. Similarly, a party may designate testimony identified as affirmative testimony in this order as a designation, counter-designation or counter-counter designation. To the extent a party removes or narrows its affirmative designations before identifying the testimony it intends to play at trial, as described in the paragraphs below, the other party may include those removed designations to its counter-designations, subject to the first party's objections and according to the process described below.

85.    To the extent admissible, a party may introduce the deposition excerpt by video or by reading the transcript. If a party opts to introduce deposition testimony by video, any counter-designations of that same witness's deposition testimony must also be submitted by video. When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts, whether offered by video or by transcript, will be introduced simultaneously in the sequence in which the testimony was originally given (i.e., in the sequence in which the testimony was originally given).

86.    To the extent such designations are read or played in open court, each party will be charged for the time taken to read or play the designations, counter-designations, or counter-counter designations the party has identified for presentation as measured by the time it takes to read or play the testimony that party designated. A party will not be charged with

the time for playing or reading another party's designations, counter-designations, or counter-counter designations.

87.     The parties expect that the Court will resolve any outstanding objections to deposition designations at the April 4 Final Pretrial Conference.  In the event those objections are so resolved by that date, the parties will follow the following protocol for providing advance notice of specific deposition designations to be introduced at trial:

- 9:00 a.m. ET two (2) calendar days prior to the testimony being offered into the record:  the party planning to use the deposition ("Party 1") provides affirmative designations.

- 6:00 p.m. ET the same day (i.e. two (2) calendar days prior to the testimony being offered into the record):  the opposing party ("Party 2") provides counter-designations, including identifying any counter-designations that Party 2 did not include in either Exhibit 5 or 6 but which were designations of Party 1 included in its Exhibit 5 or 6 but did not include in the designations provided at 9:00 a.m.

- 8:00 p.m. ET the same day (i.e. two (2) calendar days prior to the testimony being offered into the record):  Party 1 will provide any objections to Party 2 playing the newly-identified counter-designations at trial.

- 9:00 p.m. ET the same day (i.e. two (2) calendar days prior to the testimony being offered into the record):  the parties will meet and confer regarding any objections.

- 8:00 am ET the next day (i.e. one (1) calendar day prior to the testimony being offered into the record):  the parties will present any outstanding dispute regarding the counter-designations to the Court.

- 5:00 p.m. ET the same day (i.e. one (1) calendar day prior to the testimony being offered into the record):

  o To the extent the deposition is to be played on video, Party 1 also provides a video containing all of the designations that will be played. This video may be provided on DVD delivered to the other party or on an FTP site.

  o All admissible deposition designations from both parties that witness will be introduced in sequential order (i.e., in the sequence in which the testimony was originally given), with any objections made on the record excised. Video may omit any dead time or long pauses not necessary to understand the answers.

  o Party 1 will also provide a report showing how much time each party will be charged for its designations.

- By 9:00 p.m. ET that same day (i.e. one (1) calendar day prior to the testimony being offered into the record):  The parties will meet and confer to resolve any disputes or remaining issues regarding the deposition designation and associated video.

88. All colloquy between counsel and objections will be eliminated when the deposition is read or viewed at trial.

89.     If an exhibit is referenced in a deposition designation, the exhibit is admitted into evidence if it is included on the offering party's trial exhibit list and is not otherwise objected to, or is included on the joint trial exhibit list without any objections by the opposing party.

90.     When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations, counter-designations, and counter-counter designations that will be read or played.

91.     The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness. Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

**D.      Impeachment with Prior Inconsistent Testimony**

92.     The parties agree that any exhibit or prior testimony used only for purposes of impeachment need not be disclosed on the list of exhibits or deposition designations contained in this pretrial order.

93.     Pursuant to Fed. R. Evid. 613, deposition and other testimony or statements not specifically identified on a party's deposition designation list or exhibit list may be used at trial for the purpose of impeachment, if otherwise competent for such purpose. The parties agree that in connection with efforts to impeach a witness (whether an expert or fact witness) with prior testimony, objections based on lack of completeness and/or lack of inconsistency are not permitted.

### E.    Objections to Expert Testimony

94.    The parties request that the Court rule at trial on objections to expert testimony as beyond the scope of prior expert disclosures, taking time from the parties' trial presentation to argue and decide such objections, with that time being charged to the party losing the argument on such objections. Experts will not be permitted to offer at trial expert opinions, or bases for those opinions, that were not previously disclosed in their Rule 26(a)(2) reports.

95.    Only opinions fully disclosed pursuant to Federal Rule of Civil Procedure 26 may be presented at trial. To the extent not otherwise ruled upon pre-trial, the Court should address such issues at trial and if necessary, through post-trial motions and submissions.

96.    The parties request that the Court rule at trial on objections to expert testimony that is not proper rebuttal testimony, taking time from the parties' trial presentation to argue and decide such objections, with that time being charged to the party losing the argument on such objections.

## VI.    EXHIBITS

### A.    Exhibits

97.    The parties' joint list of trial exhibits, along with any outstanding objections, will be submitted to the Court on March 28, 2022 as **Exhibit 7**  Per D.I. 309.

98.    Except for demonstrative exhibits, and exhibits to be used solely for impeachment, and Rule 1006 exhibits,[2] Exhibit 7 will contain the maximum universe of exhibits to be used at trial, as well as all objections to the admission of such objections, neither

---

[2] The Parties agree that Rule 1006 exhibits need not be included on a party's pre-trial exhibit list and will be disclosed with sufficient and reasonable notice for review and/or objection, but at least one day in advance of its anticipated use (as provided herein), provided that any exhibits from which a particular Rule 1006 exhibit is derived have been disclosed on the parties' exhibit lists (including any supplements thereto). The parties will include any such Rule 1006 exhibits on the final exhibit list provided to the Court after trial.

of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown. Exhibits not listed will not be admitted unless good cause is shown.

99. No exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit. At some point before the completion of the witness' testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number. Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so.

100. A party will provide exhibits to be used in connection with direct examination by 7:00 p.m. the day before their intended use, and objections will be provided no later than 9:00 p.m. the night before their intended use. If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention prior to the witness being called to the witness stand. Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

101. The previous paragraph's procedures regarding disclosure of exhibits do not apply to exhibits used for impeachment or cross examination of a witness.

102. The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

103.    Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness.

104.    On or before the first day of trial, each party will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list corresponding to their respective final exhibit lists. Plaintiff shall provide a completed AO Form 187 exhibit list for all joint exhibits.

### B.    Demonstrative Exhibits

105.    The parties will exchange demonstratives to be used in opening statements (but not those used for closing statements or for cross examinations).  The parties will exchange demonstratives to be used in opening statements by 8:00 p.m. two nights before opening statements. The parties will provide any objections to such demonstratives by 12:00 p.m. (noon) on the day before opening statements.

106.    A party will provide demonstrative exhibits to be used in connection with direct examination by 6:00 p.m. the night before their intended use, and objections will be provided no later than 8:00 p.m. the night before their intended use. If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

107.    The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side on a DVD or via an FTP site. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

108.    The above procedures regarding disclosure of demonstratives do not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

109.    If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court' s attention prior to the opening statements or prior to the applicable witness being called to the witness stand.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

## VII.    DAMAGES

### A.    Microchip's Position

110.    At trial, Microchip will seek damages in the form of reasonable royalties, lost profits, enhanced damages and/or other damages specified herein.

111.    Microchip contends that pursuant to 35 U.S.C. § 284, Aptiv owes Microchip damages for Aptiv's infringement of the Patents-in-Suit.  With respect to its First Claim for Relief for infringement of the '243 Patent (COUNT I) and its Second Claim for Relief for infringement of the '708 Patent (COUNT II), Microchip will ask the jury to award damages through trial in the form of reasonable royalties and lost profits according to one or more of following three theories:

| Description | | Amount |
|---|---|---|
| Theory 1: Lost Profits and Reasonable Royalty (total $87.2 million) | Lost profits from July 1, 2017 to November 30, 2021 | $73,500,403 |
| | Reasonable Royalty from April 1, 2015 to June 30, 2017 | $13,640,729 |

| Theory 2: Reasonable Royalty Only (total $64.8 million) | Reasonable Royalty from April 1, 2015 to November 30, 2021 | $64,821,124 |
| Theory 3: Lost Profits Only | Lost profits from July 1, 2017 to November 30, 2021 | $73,500,403 |

112.   The amount of damages listed in the above table extends through November 2021, which is the last month for which Aptiv has provided sales numbers.  Microchip is entitled to reasonable royalty and/or lost profit damages up to and including the trial date.

113.   Microchip's damages expert, Dr. Becker, provided supplemental damages calculations he intends to present at trial on Thursday, February 10.  Aptiv's damages expert, Mr. Michael Chase, provided supplemental calculations and rebuttal to Dr. Becker's supplemental calculations today, Friday, February 18.  If necessary, Dr. Becker will provide any rebuttal he has to Mr. Chase's supplemental calculations by Friday, February 25.

114.   Microchip will further seek an award of pre-judgment interest. Microchip will also seek an award of supplemental damages, post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284 and/or Federal Rule of Civil Procedure, Rule 54 or other applicable law. Microchip also seeks attorneys' and costs fees pursuant to 35 U.S.C. § 285 or other applicable law. Moreover, due to the deliberate and willful infringement and exceptional case circumstances, Microchip also seeks enhanced damages to be determined by the Court. 35 U.S.C. § 284.

115.   Further, to the extent an injunction is not granted for some or all of Aptiv's infringing conduct, Microchip will seek an ongoing royalty for the life of the '243 Patent and the '708 Patent, respectively, in an amount to be determined by the Court. 35 U.S.C. § 283.

### B.      Aptiv's Position

116.    At trial, Aptiv will demonstrate that Microchip is not entitled to damages because the patents-in-suit are not infringed and are invalid.

117.    At trial, Aptiv will demonstrate that should the jury find the patents-in-suit valid and infringed that Microchip is not entitled to the damages which it seeks.  Specifically, Aptiv will demonstrate that Microchip has not met its burden to prove lost profits damages and thus is entitled only to a reasonable royalty if it prevails on liability.  Aptiv will demonstrate that Microchip is entitled to a reasonable royalty in the amount of no more than between $0.18 and $0.30 per unit, less the effect of retaliatory price increases that it imposed on Aptiv but would not have had Aptiv taken a license pursuant to hypothetical negotiation.  Aptiv will prove that the amount of damages on sales of the accused products equals a total of between $3,513,696 and $13,890,241.  .

118.    Should Microchip prevail at trial, and should the jury award Microchip damages, Aptiv, including through its expert witness, will calculate the amount of any pre- and post-judgment interest to which Microchip would be entitled.

119.    Aptiv will oppose Microchip's attempts to secure any attorneys' fees, costs, or enhanced damages under 35 U.S.C. § 285 or any other authority.

120.    Aptiv will seek attorneys' and costs fees pursuant to 35 U.S.C. § 285 or other applicable law.

121.    Should Microchip seek an ongoing royalty, Aptiv will present, including through its expert witness, a calculation of such an ongoing royalty.

### VIII.   BIFURCATED TRIAL

122.    The parties are not seeking a bifurcated trial.

123.    This pretrial order may not address all issues solely related to Microchip's request for a permanent injunction. To the extent that proceedings related to that request become necessary, the parties reserve the right to supplement this pretrial order to include evidence that may be relevant solely to such proceedings.

## IX.    MOTIONS *IN LIMINE*

124.    Per D.I. 309, the parties will file motions *in limine* on February 22, and oppositions thereto on March 15.  Per D.I. 314, each party will be limited to 5 motions *in limine*, and will be limited to a total of 20 pages in support of its motions *in limine* and will be limited to a total of 20 pages in opposing the other side's motions *in limine*.

## X.    DISCOVERY

125.    Each party has completed discovery.

126.    Both parties must still comply with their obligation to supplement discovery under FRCP 26(e).

## XI.    NUMBER OF JURORS

127.    There shall be eight jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading *voir dire* to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at sidebar and there addressing any challenges for cause, and concluding with peremptory strikes.

## XII.    NON-JURY TRIAL

128.    Microchip has requested a permanent injunction. The parties propose that the Court set a briefing schedule relating to the permanent injunction after the trial has been completed, as appropriate. Both parties reserve the right to present additional evidence post-trial as needed for the Court's permanent injunction determination.

## XIII.   LENGTH OF TRIAL

129.   The trial is expected to last five days, and the time allotted to each side is described below. Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, closing argument, its argument on any motions for judgment as a matter of law, and all sides' argument on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.

130.   The Courtroom Deputy will keep a running total of trial time used by counsel. If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

131.   Considering the Court's procedures for counting time, and considering the nature and extent of the parties' disputes, the parties request 12 hours each for their trial presentation of evidence.  Time for openings and closings will not be counted against this 12 hour time limit.  Openings will be limited to 45 minutes per side, and closings will be limited to 1.5 hours per side.

## XIV.   MOTIONS FOR JUDGMENT AS A MATTER OF LAW

132.   The parties will make short oral presentations of their motions for judgment as a matter of law (JMOL) at the earliest break following the close of a party's case-in-chief on a particular claim or defense, and outside of the presence of the jurors. The parties may supplement their oral presentation post-trial. If warranted, the parties may renew such motions at the appropriate time later in the trial or post-trial.

## XV.   AMENDMENTS OF THE PLEADINGS

133.   No amendments to the pleadings are desired by any party.

## XVI.   ADDITIONAL MATTERS

134.   The parties propose playing the Federal Judicial Center's video "The Patent Process:  An Overview for Jurors" as part of the Court's preliminary jury instructions.  The time for this video will not be charged against either party's trial presentation time.

135.   The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party specifically requests that a particularly sensitive portion be sealed. If a party makes such a request, subject to the Court's approval and for good cause shown, the courtroom shall be cleared of those individuals not qualified to hear such confidential information under the Protective Order entered in this case, except that each party's corporate representative(s) may remain in the courtroom throughout the entirety of trial subject to Rule 615 of the Federal Rules of Evidence. The parties may show particular circumstances as appropriate to exclude party representatives other than the corporate representative designated as the party's representative under Rule 615 of the Rules of Evidence.

### A.   Microchip's List of Additional Issues

136.   As noted above, Microchip seeks a permanent injunction in connection with its patent claims. Microchip understands that the Court will make a determination as to the permanent injunction, as appropriate, after the completion of the jury trial. Microchip suggests that the Court set a schedule for any post-trial briefing and/or evidentiary hearing on the permanent injunction at the conclusion of the jury trial.

137.   Microchip is not repeating here the issues it will set forth in its motions *in limine*. Those are issues that remain to be decided by the Court.

### B.   Aptiv's List of Additional Issues

138.   None at this time.

## XVII.  SETTLEMENT

139.    The parties hereby certify that they engaged in a good faith effort to explore the resolution of the controversy by settlement.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

Respectfully submitted,

SHAW KELLER LLP

OF COUNSEL:
Bruce W. Slayden II
Brian C. Banner
R. William Beard, Jr.
Truman H. Fenton
Darryl J. Adams
Joseph D. Gray
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
(512) 402-3550

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

POTTER ANDERSON & CORROON LLP

OF COUNSEL:
Daralyn J. Durie
Timothy Saulsbury
Eric C. Wiener
Andrew T. Jones
Joyce C. Li
W. Henry Huttinger
DURIE TANGRI LLP
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

*/s/ Philip A. Rovner*
Philip A. Rovner (No. 3215)
Jonathan A. Choa (No. 5319)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com
*Attorneys for Defendant*

Dated: February 18, 2022

28

SO ORDERED, this _____ day of _____, 2022.

_____

UNITED STATES DISTRICT JUDGE