# Exhibit 4

## EXHIBIT 4

## APTIV'S STATEMENT OF ISSUES OF LAW REMAINING TO BE LITIGATED

Defendant Aptiv identifies the following issues of law which remain to be litigated, with a citation to authorities relied upon.

The identification of these issues is based in part on Aptiv's current understanding of Microchip's arguments regarding infringement, invalidity, and patent damages, which are based on the pleadings and discovery to date. Aptiv reserves the right to supplement, amend, or modify this list, for example, to respond to any issues, arguments, or evidence raised by Microchip or in the event of any Court ruling that might raise new or additional issues. The authority cited herein is exemplary, and not exhaustive. Aptiv reserves the right to rely on additional authority, including authority cited by Microchip in its Statement of Issues of Law that Remain to be Litigated (Exhibit 3).

If the Court determines that Aptiv's statement of the issues of fact that remain to be litigated as set forth in Exhibit 2 contains issues of law, those issues of law are incorporated herein by reference. Should the Court determine that any issue identified in this statement as a legal issue is more appropriately considered a factual issue, Aptiv incorporates such issues by reference into Exhibit 2.

## I.     INFRINGEMENT

### A.     Issues of Law

1.      Whether Microchip can prove by a preponderance of the evidence that Aptiv directly infringed the Asserted Claims of the Asserted Patents.

2.      Whether Microchip can prove by a preponderance of the evidence that Aptiv induced any entity to directly infringe the Asserted Claims of the Asserted Patents.

1

3.      Whether Microchip can prove by a preponderance of the evidence that Aptiv contributed to any entity's direct infringement of the Asserted Claims of the Asserted Patents.

4.      Whether Microchip can prove by a preponderance of the evidence that Aptiv either directly or indirectly infringed the Asserted Claims of the Asserted Patents under the doctrine of equivalents.

5.      Whether Microchip can prove by a preponderance of the evidence that Aptiv willfully infringed the Asserted Claims of the Asserted Patents.

### B.      Relevant Authority

#### 1.   Direct Infringement

"[I]t is axiomatic that the *patentee* bears the burden of proving infringement." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.,* 204 F.3d 1360, 1364 (Fed. Cir. 2000) (emphasis in original).  Infringement must be proven by a preponderance of the evidence.  *Centricut, LLC v. Esab Grp., Inc.,* 390 F.3d 1361, 1367 (Fed. Cir. 2004); *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005).  To determine whether a patentee has met this burden, courts apply a two-part test:  "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citation omitted).

An accused device literally infringes a patent claim only if it contains each and every recited claim limitation.  *See Amhil Enters., Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1562 (Fed. Cir. 1996).  Each recited claim element or limitation is considered to be material and essential.  *See London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1538 (Fed. Cir. 1991).  The plaintiff must prove infringement of every limitation of the asserted patent claims by a preponderance of the

2

evidence. *Biovail Corp. Int'l v. Andrx Pharms., Inc.,* 239 F.3d 1297, 1302 (Fed. Cir. 2001).

To determine direct infringement, the accused product must be compared with each of the asserted claims, using where appropriate the Court's instructions as to the definition of certain of the patent claim terms. A patent claim can only be directly infringed if the accused product includes each and every step described in that patent claim. "To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

For dependent claims, if there is no infringement of the independent claim to which the dependent claim refers, there cannot be infringement of the dependent claim. *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1316, n.1 (Fed. Cir. 2006) (dependent claims not infringed when independent claim not infringed). "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

### 2.   Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). Induced infringement requires proof of actual infringement. Thus, "[i]n order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002) (citation omitted).

This requires showing that the alleged infringer had "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015) (explaining that indirect infringement "requires proof the defendant knew the [accused] acts were infringing"). The knowledge requirement must be met by a showing of either actual knowledge or willful blindness. *Global-Tech*, 563 U.S. at 2070-71 ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts.")

"[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 125 S. Ct. 2764, 2780 (2005)). "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer . . . intended to induce infringement of the patent." 35 U.S.C. § 298. And merely showing that a defendant provides instructions and training for its customers alone does not evidence inducement; rather, the patentee must show that such instructions and training evidence "intent to encourage infringement." *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).

### 3. Contributory Infringement

Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that "material or apparatus" is material to practicing

the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C §271(c).

To establish liability for contributory infringement, a patentee must prove the following four elements: (1) the accused infringer sold or offered to sell in the United States, or imported into the United States, a component of a patented device or composition, or a material or apparatus that is a component for use in practicing a patented process; (2) the component is a material part of the invention; (3) the accused party knew that the component was especially made or adapted for use in a manner that would infringe the patent when the party sold, offered or imported the component; and (4) the component is not a staple article of commerce capable of substantial non-infringing use. *See Fujitsu Ltd. v. Netgear Inc*., 620 F.3d 1321, 1326 (Fed. Cir. 2010).

A non-infringing use is "substantial" if it is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009). A fact finder may consider "the use's frequency, . . . the use's practicality, the invention's intended purpose, and the intended market." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358 (Fed. Cir. 2012) (citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010)).  "Where the product is equally capable of, and interchangeably capable of both infringing and substantial noninfringing uses, a claim for contributory infringement does not lie." *R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)*, 681 F.3d 1323, 1338 (Fed. Cir. 2012).

### 4.     Doctrine of Equivalents

An accused product or process that does not literally meet every limitation of a claim may nonetheless infringe if "the accused product or process contain[s] elements identical or

equivalent to each claimed element of the patented invention." *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40 (1997). "Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id.* To prove infringement under the doctrine of equivalents, the patentee must prove by a preponderance of evidence "the accused device contains an equivalent for each limitation not literally satisfied." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 812 (Fed. Cir. 2002). To prove equivalence, a patentee generally must "show[] that the difference between the claimed invention and the accused product [is] insubstantial." *Stumbo v. Eastman Outdoors, Inc.,* 508 F.3d 1358, 1364 (Fed. Cir. 2007). One way of showing that the difference is insubstantial is "by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each limitation of the patented product." *Id.* "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum." *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.,* 339 U.S. 605, 609 (1950).

The doctrine of equivalents cannot be used, however, to recapture subject matter surrendered during prosecution. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002); *Honeywell Intern., Inc. v. Hamilton Sundstrand Corp.,* 523 F.3d 1304, 1312 (Fed. Cir. 2008) ("The doctrine of prosecution history estoppel prevents a patent owner from recapturing with the doctrine of equivalents subject matter surrendered to acquire the patent."). "Prosecution history estoppel requires that the claims of a patent be interpreted in light of the

6

proceedings in the PTO during the application process." *Festo*, 535 U.S. at 733.  For instance, estoppel may be appropriate "[when the applicant surrenders] claim scope through argument to the patent examiner." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1325 (Fed. Cir. 2008).  *See e.g.*, *PODS, Inc. v. Porta Star, Inc.*, 484 F.3d 1359, 1367–68 (Fed. Cir. 2007) (estoppel applied to prevent patentee from asserting claim to non-rectangular-shaped frame where patentee explicitly limited its claims to a rectangular-shaped frame); *Reese v. Nortel Networks Inc.*, 60 Fed. App'x 274, 278 (Fed. Cir. 2003) (patentee estopped from asserting an equivalent "when he expressly disavowed that interpretation during prosecution").  If a patentee "clearly states during prosecution that certain subject matter is not claimed, the public and the patentee's competitors, may rely on that representation in making and using unclaimed subject matter without giving rise to an infringement action." *Pfizer Inc. v. Teva Pharms.*, 882 F.Supp.2d 643, 711 (D. Del. 2012); *Medinol Ltd. v. Guidant Corp.*, 417 F.Supp.2d 280, 310 (S.D.N.Y. 2006) (patentee estopped from asserting an equivalent because they made an "unequivocal statement" disavowing the claim at issue).

### 5.   Willful Infringement

The Supreme Court has held that "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 105 (2016).  "[P]unishment should generally be reserved for egregious cases typified by willful misconduct." *Id.* at 106.  In order to demonstrate willful infringement, a plaintiff must prove by a preponderance of the evidence that the defendant "actually knew *or should have known* that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017)

(internal quotation marks omitted). "To determine whether an accused infringer's conduct was subjectively willful, the Court must 'measure[]' the accused infringer's 'culpability . . . against the knowledge of the actor at the time of the challenged conduct.'" *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, C.A. No. 09-80-LPS, 2016 WL 6542726, at *15 (D. Del. Oct. 31, 2016) (quoting *Halo*, 579 U.S. at 105). Awareness of the patents-in-suit, without more, cannot establish willful infringement. *See SRI Int'l v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308–09 (Fed. Cir. 2019).

## II.     INVALIDITY

### B.     Issues of Law

1.     Whether Aptiv can prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are in invalid as anticipated by the prior art.

2.     Whether Aptiv can prove that references asserted by Aptiv are prior art to the Asserted Patents.

3.     Whether Aptiv can prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are in invalid as obvious in view of the prior art.

4.     Whether Aptiv can prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid for lack of written description.

5.     Whether Aptiv can prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid for lack of enablement.

6.     Whether Aptiv can prove by clear and convincing evidence that the Asserted Claims of the Asserted Patents are invalid as indefinite.

### C.    Relevant Authority

#### 1.    Anticipation

Under 35 U.S.C. § 102(a), a patent is invalid if "the invention was known or used by others in this country . . . before the invention thereof by the applicant for a patent." 35 U.S.C. § 102(a).  In such a circumstance, "the later inventor has not contributed to the store of knowledge, and has no entitlement to a patent." *Woodland Tr. v. Flowertree Nursery, Inc*., 148 F.3d 1368, 1370 (Fed. Cir. 1998).  A patent is invalid for anticipation under 35 U.S.C. §102, if a prior art reference discloses, expressly or inherently, each and every limitation of the claimed invention. *Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1379 (Fed. Cir. 2003).

A prior art reference anticipates a claim if the reference enables one of ordinary skill in the art to practice the invention, even if the author or inventor did not actually make or reduce to practice the claimed subject matter.  *Id.* at 1380–81.  "A person of ordinary skill in the art" refers to a hypothetical person who is presumed to have knowledge of all of the prior art in the field and analogous fields.  *In re Gorman*, 933 F.2d 982, 986 (Fed. Cir. 1991).  Such a person also possesses ordinary creativity, and is not an automaton.  *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 421 (2007).

The full scope of the claimed invention does not need to be enabled by the prior art reference for it to anticipate a claim, but rather disclosure of the invention by the prior art reference must be sufficient for a person having ordinary skill in the art, looking at that one reference, to be able to make and use at least one embodiment within the scope of the claimed invention.  *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1344 (Fed. Cir. 2012) (citation omitted).

### 2.     Prior Art

To invalidate, the prior use or knowledge of an invention must be public.  *Woodland Tr.*, 148 F.3d at 1370.  This publicity requirement is met by the absence of affirmative steps by the prior user to conceal the use.  *See, e.g., W.L. Gore & Assoc. v. Garlock, Inc.*, 721 F.2d 1540, 1548-49 (Fed. Cir. 1983) (citing *Elec. Storage Battery Co. v. Shimadzu*, 307 U.S. 5, 20 (1939)). It is not necessary that the anticipatory features of the prior use be evident to the public, so long as use is made of those features.  *See New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002).  Efforts to commercialize an invention constitute a public use of the invention for these purposes.  *See Am. Seating Co. v. USSC Grp., Inc.,* 514 F.3d 1262, 1267 (Fed. Cir. 2008).

### 3.     Obviousness

Section 103 of Title 35 of the United States Code provides, in relevant part, that:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

The determination of whether an invention would have been obvious under § 103 is a legal conclusion based on underlying findings of fact.  *In re Sullivan*, 498 F.3d 1345, 1350 (Fed. Cir. 2007).  That determination requires a factual inquiry into:  (1) the scope and content of the prior art; (2) the level of ordinary skill in the pertinent art; (3) the differences between the prior art and the claimed invention; and (4) the extent of any objective indicia of non-obviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406–07 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).

The obviousness determination must be made from the perspective of a person of ordinary skill.  The hypothetical person of ordinary skill is "presumed to know all the pertinent prior art, whether or not the applicant is actually aware of its existence." *In re Carlson,* 983 F.2d 1032, 1038 (Fed. Cir. 1992).  The person of ordinary skill is attributed "knowledge of all prior art in the field of the inventor's endeavor and of prior art solutions for a common problem even if outside that field." *In re Nilssen,* 851 F.2d 1401, 1403 (Fed. Cir. 1988).  Thus, "the proper way to apply the 103 obviousness test . . . is to first picture the inventor as working in his shop with the prior art references – which he is presumed to know – hanging on the walls around him." *In re Winslow,* 365 F.2d 1017, 1020 (C.C.P.A. 1966).  A person of ordinary skill is a person of ordinary creativity, not an automaton. *KSR,* 550 U.S. at 421.

"[*KSR*] directs us to construe the scope of analogous art broadly." *Wyers v. Master Lock Co.,* 616 F.3d 1231, 1238 (Fed. Cir. 2010).  Art is analogous if it is either from the same "field of endeavor" or, even if outside the field of endeavor, "is reasonably pertinent to the [particular] problem with which the inventor [is involved]." *In re Kahn,* 441 F.3d 977, 986-87 (Fed. Cir. 2006).  "[A] reference need not work to qualify as prior art; it qualifies as prior art, regardless, for whatever is disclosed therein.  Even if a reference discloses an inoperative device, it is prior art for all that it teaches." *Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC,* 618 F.3d 1294, 1302–03 (Fed. Cir. 2010).

Rather than applying "rigid preventative rules that deny fact-finders recourse to common sense," courts must take a more "expansive and flexible approach" to determining whether an invention was obvious.  *KSR,* 550 U.S. at 415, 421.  Thus, "the legal determination of obviousness may include recourse to logic, judgment, and common sense . . . ." *Wyers,* 616 F.3d at 1239.  "[O]bviousness cannot be avoided simply by a showing of some degree of

11

unpredictability in the art so long as there was a reasonable probability of success." *Pfizer, Inc. v. Apotex, Inc.,* 480 F.3d 1348, 1364 (Fed. Cir. 2007). "[E]xpectation of success need only be reasonable, not absolute." *Id.*

A patent claim is obvious when it does no more than combine familiar elements according to known methods to yield predictable results. *KSR,* 550 U.S. at 415–17 ("If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability."). Furthermore, when "there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance, the fact that a combination was obvious to try might show that it was obvious under § 103." *Id.* at 421. In making an obviousness determination, "a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions." *Id.* at 417.

Obviousness may be shown based on a combination of references or based on a single reference. *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,* 225 F.3d 1349, 1356 (Fed. Cir. 2000) ("[A] single prior art reference can render a claim obvious."); *Boston Scientific Scimed, Inc. v. Cordis Corp.,* 554 F.3d 982, 989–90 (Fed. Cir. 2009). In cases where the invalidity defense is based on a combination of elements known in the prior art, the proper inquiry is a flexible analysis. *KSR.,* 550 U.S. at 419–20. "Under the correct analysis, any need or problem known in the field of endeavor at the time of the invention and addressed by the patent [or application at issue] can provide a reason for combining the elements in the manner claimed." *KSR,* 550 U.S. at 420. A reason to combine known elements can be found, for example, in the "interrelated teachings of multiple patents; the effects of demands known to the design

12

community or present in the marketplace, and the background knowledge possessed by a person having ordinary skill in the art . . . ." *KSR,* 550 U.S. at 418.  "[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id.*

A single prior art reference can render a claim obvious.  *See Comaper Corp. v. Antec, Inc.,* 596 F.3d 1343, 1351-52 (Fed. Cir. 2010) ("Determining obviousness requires considering whether two or more pieces of prior art could be combined, or a single piece of prior art could be modified, to produce the claimed invention."); *Game and Tech. Co., Ltd. v. Activision Blizzard Inc.*, 926 F.3d 1370 (Fed. Cir. 2019) ("[A] patent can be obvious in light of a single prior reference if it would have been obvious to modify that reference to arrive at the patented invention.") (internal quotations and citations omitted).  Whether patent claims are obvious in view of a single prior art reference is analyzed in light of the general knowledge of a skilled artisan.  *See Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330 (Fed. Cir. 2020); *see also Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1349, 1353 (Fed. Cir. 2010) (affirming the district court's grant of summary judgment of invalidity on "grounds of obviousness under [a single prior art reference] in view of general knowledge in the field," in part because the obviousness "analysis requires an assessment of the background knowledge possessed by a person having ordinary skill in the art.") (internal quotations and citations omitted).

After the challenger establishes prima facie obviousness, the patentee may come forward with evidence to demonstrate that the invention would not have been obvious such as objective indicia of non-obviousness ("secondary considerations").  Such secondary considerations include commercial success, unexpected results, failure of others to solve the problem, skepticism of

13

others, copying, satisfaction of a long-felt need by the invention, and acclaim for the invention.

*See Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1358–59 (Fed. Cir. 2013); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349–54 (Fed. Cir. 2012); *Eli Lilly and Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1380 (Fed. Cir. 2006).  However, the patentee must demonstrate a sufficient nexus between the objective indicia and the claimed invention.  *See, e.g., J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) (stating that a party cannot demonstrate commercial success to show nonobviousness "unless it can show that the commercial success of the product resulted from the claimed invention"); *see also Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574 (Fed. Cir. 1996) (describing that a nexus must exist between commercial success and claimed invention to determine the probative value of secondary considerations).  "[I]f the feature that creates the commercial success was known in the prior art, the success is not pertinent," because there is no nexus.  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006); *see also Tokai Corp. v. Easton Enters., Inc.*, 632 F. 3d 1358, 1369 (Fed. Cir. 2011) (finding lack of nexus to support commercial success where basis for demand was "due to an element in the prior art").

### 4.     Lack of Enablement

To satisfy the enablement requirement, the specifications of the Asserted Patents must describe the alleged invention and "the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same."  35 U.S.C. § 112.  A claim lacks enablement, where "undue experimentation" is required to practice the claimed invention.  *See In re Wands*, 858 F.2d 731, 736-737 (Fed. Cir. 1988).  Courts apply the *Wands*-factors to determine whether "undue

14

experimentation" would be necessary, namely "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *Id.* at 737; *see, e.g.*, *Enzo Biochem, Inc. v. Calgene, Inc.,* 188 F.3d 1362, 1370-77 (Fed. Cir. 1999) (upholding the applicability of the *Wands*-factors). Although a specification need not disclose what is well known in the art, it "must supply the novel aspects of an invention in order to constitute adequate enablement." *Genentech, Inc. v. Novo Nordisk A/S,* 108 F.3d 1361, 1366 (Fed. Cir. 1997). Enablement is a question of law based on underlying factual findings. *Wands*, 858 F.2d at 1402. To prove that a claim is invalid for nonenablement requires clear and convincing evidence. *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1156 (Fed. Cir. 2004).

"To be enabling, the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation" as of the patent's effective filing date. *MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.,* 687 F.3d 1377, 1380 (Fed. Cir. 2012). The enablement requirement "serves the dual function in the patent system of ensuring adequate disclosure of the claimed invention and of preventing claims broader than the disclosed invention." *Id.* at 1381.

It is not enough to enable a subset of what is claimed, a patent specification "must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *Amgen Inc. v. Sanofi,* 872 F.3d 1367, 1375 (Fed. Cir. 2017) (*Amgen I*) (quoting *Genentech, Inc.,* 108 F.3d at 1365). A patentee may choose to claim his invention narrowly or broadly, but "[a] patentee who chooses broad claim language must make sure the

15

broad claims are fully enabled.  The scope of the claims must be less than or equal to the scope

of the enablement." *Sitrick v. Dreamworks, LLC,* 516 F.3d 993, 999 (Fed. Cir. 2008) (internal

quotation marks omitted) (holding that the patentee's claims were broad enough to cover both

movies and video games, but patent did not enable movies); *see also Trs. of Bos. Univ. v.*

*Everlight Elecs. Co.,* 896 F.3d 1357, 1364–65 (Fed. Cir. 2018) (invalidating claim to "six

permutations" because only five out of the six permutations were enabled); *Plant Genetic Sys.,*

*N.V. v. DeKalb Genetics Corp.,* 315 F.3d 1335, 1338 (Fed. Cir. 2003) (holding the claim term

"plant cell" covered both "monocots" and "dicots," but that the patent did not enable monocots);

*Monsanto Co. v. Syngenta Seeds, Inc.,* 503 F.3d 1352, 1361 (Fed. Cir. 2007) (same); *In re Vaeck,*

947 F.2d 488, 495 (Fed. Cir. 1991) ("There is no reasonable correlation between the narrow

disclosure in appellants' specification and the broad scope of protection sought in the claims

encompassing gene expression in any and all cyanobacteria.").  *Cf. Genentech,* 108 F.3d at 1366

("Patent protection is granted in return for an enabling disclosure of an invention, not for vague

intimations of general ideas that may or may not be workable.").

    "[T]he omission of minor details does not cause a specification to fail to meet the

enablement requirement.  However, when there is no disclosure of any specific starting material

or of any of the conditions under which a process can be carried out, undue experimentation is

required; there is a failure to meet the enablement requirement that cannot be rectified by

asserting that all the disclosure related to the process is within the skill of the art.  It is the

specification, not the knowledge of one skilled in the art, that must supply the novel aspects of an

invention in order to constitute adequate enablement." *Genentech,* 108 F.3d at 1366.

    Courts apply the *Wands*-factors to determine whether "undue experimentation" would be

necessary, namely "(1) the quantity of experimentation necessary, (2) the amount of direction or

guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands,* 858 F.2d at 737; *see, e.g., Enzo Biochem, Inc.*, 188 F.3d at 1370–77 (upholding the applicability of the *Wands*-factors).

### 5.     Lack of Written Description

Section 112(a) of Title 35 of the United States Code provides, in relevant part, that:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

"To fulfill the written description requirement, a patent owner must convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate that by disclosure in the specification of the patent." *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1163 (Fed. Cir. 2019) (internal citations omitted). An adequate written description requires more than "a mere wish or plan for obtaining" the claimed invention. *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 927 (Fed. Cir. 2004). The written description requirement is a question of fact. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). To invalidate a claim for lack of written description requires clear and convincing evidence. *Id.* at 1354.

Determining whether the patent satisfies the written description requirement "requires an objective inquiry into the four corners of the specification." *Centocor Ortho Biotech, Inc. v. Abbott Lab'ys*, 636 F.3d 1341, 1348 (Fed. Cir. 2011). Each claim limitation must be described in the specification. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997);

*Centocor*, 636 F.3d at 1347.

The written description requirement serves as a quid pro quo "in which the public is given 'meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time.'" *Univ. of Rochester,* 358 F.3d at 920, 922. The written description requirement also "operates as a timing mechanism to ensure fair play in the presentation of claims after the original filing date and to guard against manipulation of that process by the patent applicant." *PowerOasis, Inc. v. T-Mobile USA, Inc.,* 522 F.3d 1299, 1307 (Fed. Cir. 2008); *see Agilent Techs., Inc. v. Affymetrix, Inc.,* 567 F.3d 1366, 1379 (Fed. Cir. 2009) (§112 "prohibits new matter from entering into claim amendments, particularly during the continuation process."); *Amgen Inc. v. Hoechst Marion Roussel Inc.*, 314 F.3d 1313, 1330, (Fed. Cir. 2003) ("The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not"); *Vas-Cath Inc.* v. *Mahurkar,* 935 F.2d 1555, 1561 (Fed Cir. 1991) ("Adequate description of the invention guards against the inventor's overreaching by insisting that he recount his invention in such detail that his future claims can be determined to be encompassed within his original creation.").

To satisfy written description, the specification must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharms., Inc. v. Eli Lilly and Co.,* 598 F.3d 1336, 1351 (Fed. Cir. 2010). In other words, the specification itself must show that "the inventor actually invented the invention claimed" by "reasonably convey[ing] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* The written description does not concern what a person of ordinary skill could do, but rather what the inventors themselves *did* do. The specification must describe the invention as broadly as it is claimed to demonstrate that the inventors actually

18

invented the full scope of the claimed invention by the time they filed the application. *Id.* at 1351–52.

The question is not whether a claimed invention is an obvious variant of an embodiment described in the specification, or whether one skilled in the art might be able to construct the claimed invention. *Id.* at 1352; *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566–67 (Fed. Cir. 1997) ("an applicant complies with the written description requirement 'by describing the invention, with all its claimed limitations, not that which makes it obvious'"). *ICU Med., Inc. v. Alaris Med. Sys., Inc.,* 558 F.3d 1368, 1378–79 (Fed. Cir. 2009); *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). "It is not sufficient for purposes of the written description requirement of §112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to the modifications that the inventor might have envisioned, but failed to disclose." *Id.* at 1572. "The knowledge of ordinary artisans may be used to inform what is actually in the specification, but not to teach limitations that are not in the specification, even if those limitations would be rendered obvious by the disclosure in the specification." *Rivera v. ITC*, 857 F.3d 1315, 1322 (Fed. Cir. 2017) (internal citation omitted).

Written description support requires more than an "amalgam of disclosures plucked selectively from the [specification]." *Novozymes A/S v. Dupont Nutrition BioSciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013). In assessing written description, "each claim [must be taken] as an integrated whole rather than as a collection of independent limitations." *Id.* at 1349. "Working backward from a knowledge of the claims, that is by hindsight" is not permitted because, when doing so, "it is all very clear what route one would travel through the forest of the specification to arrive at [the claimed invention]." *Id*.

Accordingly, § 112 requires the inventor to provide "blaze marks" in the description "to

19

guide a reader through the forest of disclosed possibilities" toward the claimed invention. *Novozymes* at 1346; *see Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1326 (Fed. Cir. 2000) ("[O]ne cannot disclose a forest in the original application, and then later pick a tree out of the forest and say here is my invention."); *see also General Hosp. Corp. v. Sienna Biopharma., Inc.,* 888 F3d 1368, 1372 (Fed. Cir. 2018) ("disclosure of a broad range of values does not by itself provide written description for a particular value within that range"). The written description test is not whether "a person of skill in the art would isolate and combine aspects from various embodiments in the specifications . . . to obtain the claimed invention" *Purdue Pharma L.P. v. Recro Tech., LLC,* 694 Fed. Appx. 794, 797 (Fed. Cir. 2017); *see Bos. Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1364 (Fed. Cir. 2011) ("[T]he lack of any disclosure of examples may be considered when determining whether the claimed invention is adequately described.").

### 6.    Indefiniteness

A patent claim is invalid for indefiniteness if, when read in light of the rest of the patent and the prosecution history, it fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014). While some degree of uncertainty is allowed given the inherent limitations of language, a patent must be precise enough to afford clear notice to the public of what is claimed. *Id.* at 899. Indefiniteness is ultimately a matter of law, based on underlying factual determinations. *Cox Communs., Inc. v. Sprint Commun. Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016). Any fact critical to a holding on indefiniteness must be proven by the challenger by clear and convincing evidence. *Id.* When the district court reviews only evidence intrinsic to the patent, the judge's determination is solely a determination of law. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S.

318, 320 (2015).

## III.        DAMAGES AND INJUNCTIVE RELIEF

### A.        Issues of Law

1.        Whether Microchip can show by a preponderance of the evidence that it is entitled to lost profits damages and the amount of those damages for Aptiv's alleged infringement of the Asserted Claims of the Asserted Patents.

2.        The appropriate measure of damages in the form of a reasonable royalty as compensation to Microchip for Aptiv's alleged infringement of the Asserted Claims of the Asserted Patents.

3.        Whether Microchip is entitled to enhanced damages for Aptiv's alleged infringement of the Asserted Claims of the Asserted Patents.

4.        Whether Microchip is entitled to a permanent injunction.

5.        Whether Microchip is entitled to attorneys' fees and costs.

6.        Whether Microchip is entitled to an award of pre-judgment interest, post-judgment interest, costs, and disbursements.

7.        Whether Aptiv is entitled to attorneys' fees and costs.

### B.        Relevant Authority

#### 1.        Damages

Upon a finding of infringement, the patentee shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *Smithkline Diagnostics,*

*Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).

### a.   Lost Profits

The *Panduit* test establishes the basic, traditional framework for analyzing lost profits:

> To obtain as damages the profits on sales he would have made absent the infringement, i.e., the sales made by the infringer, a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made.

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).  When there are multiple competitors in a market, a patentee may be entitled to lost profits based on the infringing sales apportioned according to its "share of the market." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F. 2d 1573, 1578-80 (Fed. Cir. 1989).  Where the application of the *Panduit* factors does not result in the separation of profits attributable to the patented device and the profits attributable to providing non-patented features or benefits, the lost profits damages must be further apportioned to reflect that apportionment.  *WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067, 1073–75 (Fed. Cir. 2019); *Mentor Graphics v. EVE*, 851 F.3d 1275, 1287-88 (Fed. Cir. 2017); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

### b.   Reasonable Royalty

A reasonable royalty is the amount that the defendant would have paid for a license to the asserted patents if the parties had negotiated a license prior to the first alleged infringement.  *See LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 60 & n.2 (Fed. Cir. 2012).  The hypothetical negotiation approach "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).  "[P]arties in a hypothetical negotiation are presumed to have perfect knowledge of all facts and circumstances,

22

some of which were unknown during the actual patent negotiations and acquisition." *Intellectual*

*Ventures I LLC v. Check Point Software Techs. Ltd.*, 215 F. Supp. 3d 314, 324–25 (D. Del. 2014)

(citing *Mobile Oil Corp. v. Amoco Chemicals Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994)).

In applying the construct of the hypothetical negotiation, the fact-finder must assume that the

patents-in-suit are valid, enforceable, and infringed.  *See Lucent Techs. v. Gateway, Inc.*, 580

F.3d, 1301 1325 (2009).

 In performing this analysis, the patent holder should only be compensated for "the

incremental value that the patented invention adds to the end product," and no more.  *Ericsson,*

*Inc. v. D-Link Sys.*, Inc., 773 F.3d 1201, 1226 (Fed. Cir. 2014).  And the patent holder should not

be compensated for the value contributed by others, including through common modes and

conventional technologies, such as those known in the prior art.  *Exmark Mfg. Co. Inc. v. Briggs*

*& Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018); *CSIRO v. Cisco Sys.*,

809 F.3d 1295, 1301 (Fed. Cir. 2015).

 Courts consider a variety of factors in determining the reasonable royalty that the parties

would have agreed to in the "hypothetical negotiation," outlined in *Georgia-Pacific Corp. v.*

*United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).  These include:

> (1) the royalties received by the patentee for the licensing of the patent in suit,
> proving or tending to prove an established royalty;
>
> (2) the rates paid by the licensee for the use of other patents comparable to the
> patent in suit;
>
> (3) the nature and scope of the license, as exclusive or non-exclusive; or as
> restricted or non-restricted in terms of territory or with respect to whom the
> manufactured product may be sold;
>
> (4) the licensor's established policy and marketing program to maintain his patent
> monopoly by not licensing others to use the invention or by granting licenses
> under special conditions designed to preserve that monopoly;
>
> (5) the commercial relationship between the licensor and licensee, such as,

whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor;

(6) the effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;

(7) the duration of the patent and the term of the license;

(8) the established profitability of the product made under the patent; its commercial success; and its current popularity;

(9) the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

(10) the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

(11) the extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;

(12) the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

(13) the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14) the opinion testimony of qualified experts; and

(15) the amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia*-Pacific *Corp.*, 318 F. Supp. at 1120.

As part of *Georgia-Pacific* Factor 9 concerning the comparative utility of the patented technology over old modes or devices, the fact finder may consider the existence of non-infringing alternatives to the patented technology. *See, e.g.*, *Micro Chem., Inc. v. Lextron, Inc.*,

24

317 F.3d 1387, 1393-94 (Fed. Cir. 2003); *Riles v. Shell Exploration & Production*, 298 F.3d 1302, 1312 (Fed. Cir. 2002).  The existence of a non-infringing alternative can help show that the alleged infringer "would have been in a stronger position to negotiate for a lower royalty rate knowing it had a competitive noninfringing device 'in the wings.'"  *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571–72 (Fed. Cir. 1996).  As a general matter, the availability of a viable, non-infringing alternative will place a downward pressure on the reasonable royalty.  *See id.*  Further, a patentee "must apportion or separate the damages between the patented improvement and the conventional components of the multicomponent product" known in the prior art.  *Exmark*, 879 F.3d 1332, 1348 (Fed. Cir. 2018); *CSIRO v. Cisco Sys.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).

"The determination of a reasonable royalty . . . is based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed to at the time the infringement began."  *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 788 F.2d 1554, 1557 (Fed. Cir. 1986); *see also Lucent Techs.*, 580 F.3d at 1324–25.  Generally, a patentee must apportion the defendant's profits between patented and unpatented features; a patentee may calculate a royalty as a percentage of the entire market value of the accused product only if the patented feature creates the basis for customer demand, *i.e.* that it creates the demand for the product "in the first place" rather than just enabling an important, or even essential, feature or characteristic.  *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011).

In other words, "[t]he law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product."  *VirnetX,* 767 F.3d at 1329; *see also, Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-CV-1122-RGA, 2019 WL 330149, at *8 (D. Del. Jan.

25

25, 2019) (citing *Ericsson, Inc. v. D-Link Sys., Inc*., 773 F.3d 1201, 1226–27 (Fed. Cir. 2014)

(instructing that royalties must be apportioned between the infringing and non-infringing features

of the accused product); *CSIRO v. Cisco Sys., Inc*., 809 F.3d 1295, 1304–1305 (Fed. Cir. 2015).

The royalty base should not be larger than the smallest salable unit embodying the patented

invention. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*., 904 F. 3d 965, 977

(Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1265 (2019). "[T]he smallest salable unit approach was

intended to produce a royalty base much more closely tied to the claimed invention than the

entire market value of the accused products. . . . Where the smallest salable unit is, in fact, a

multi-component product containing several non-infringing features with no relation to the

patented feature . . . the patentee must do more to estimate what portion of the value of that

product is attributable to the patented technology." *VirnetX,* 767 F.3d at 1327. "When the

smallest saleable unit itself has noninfringing features, the patentee must estimate what portion

of that smallest salable unit is attributable to the patented technology." *Bayer HealthCare*, 2019

WL 330149, at *8. In particular, a patentee is not permitted to recover damages based on the

entire market value of the accused products unless it proves that the claimed patented features

are the sole driving factor for customers' demand for the product in the first instance (rather than

just enabling an important, differentiating, or even essential feature or characteristic). *Power

Integrations*, 904 F.3d at 977–980; *VirnetX*, 767 F.3d at 1326 ("[a] patentee may assess damages

based on the entire market value of the accused product only where the patented feature creates

the basis for customer demand or substantially creates the value of the component parts.").

In order to be admissible, the evidence considered in a reasonable royalty analysis "must

be tied to the relevant facts and circumstances of the particular case at issue and the hypothetical

negotiations that would have taken place in light of those facts and circumstances at the relevant

time." *Uniloc*, 632 F.3d at 1318.  Shortcuts to determining a reasonable royalty rate that have no relation to the specific facts of the case are "arbitrary, unreliable, and irrelevant." *Id.* at 1318; *Avocent Redmond Corp. v. Rose Electronics*, C06-1711RSL, 2013 WL 8844098, at *5 (W.D. Wash. Mar. 11, 2013) (concluding that an expert's application of a 33% "one-size-fits-all multiplier" to the royalty rate, which was based on data showing that patent holders are successful in infringement suits in federal courts in only 33% of cases nationwide, was inadmissible under *Daubert* because it was not tied to the specific facts of the case); *VirnetX*, 767 F.3d 1332 (rejecting application of Nash bargaining solution because without establishing premises on which the theorem is based, its application becomes nothing more than "an inappropriate 'rule of thumb'").

### 2.      Enhancement of Damages

Whether to award enhanced damages is a matter left to the discretion of the Court. 35 U.S.C. § 284; *see also Halo Elecs., Inc.*,  579 U.S. at 104 ("District courts enjoy discretion in deciding whether to award enhanced damages, and in what amount. But through nearly two centuries of discretionary awards and review by appellate tribunals, 'the channel of discretion ha[s] narrowed,' so that such damages are generally reserved for egregious cases of culpable behavior.") (citations omitted). The plaintiff must prove enhanced damages by a preponderance of the evidence. *Id.* at 94.

Enhanced damages "should generally be reserved for egregious cases typified by willful misconduct."  *Id.*  "Awards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Id.* at 103; *see also id*. at 110–11 (Breyer, J., concurring) ("[T]he Court's references to 'willful misconduct' do not

mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent and nothing more . . . . It is 'circumstanc[e]' that transforms simple knowledge into such egregious behavior, and that makes all the difference.").

Despite that there is no "rigid formula for awarding enhance damages under § 284," *id* at 94, the factors courts consider when determining whether an infringer's behavior was egregious include "(1) whether the infringer deliberately copied the invention; (2) whether the infringer, when aware of the patent, investigated and formed a good faith belief of invalidity or noninfringement; (3) the infringer's behavior as a party to litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct." *Boston Scientific Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 278 (D. Del. 2012) (citing *Read*, 970 F.2d at 826-828), *aff'd*, 497 F. App'x 69 (Fed. Cir. 2013).

### 3.   Injunctive Relief

"[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity." *eBay, Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 394 (2006).  To obtain a permanent injunction, a plaintiff that has proven infringement must show "(1) irreparable injury in the absence of an injunction, (2) inadequacy of compensatory remedies at law, (3) a balance of hardships favoring an injunction, and (4) consistency of an injunction with the public interest." *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304, 1331 (Fed. Cir. 2018) (citation omitted).  A patentee's prolonged or undue delay in commencing legal proceedings and seeking injunctive relief evinces a lack of

28

irreparable harm.  *See Apple, Inc. v. Samsung Elecs. Co*., 678 F.3d 1314, 1325–26 (Fed. Cir. 2012).

      **4.**      **Attorneys' Fees and Costs**

      Whether to award attorney fees is a matter left to the discretion of the Court.  *See* 35 U.S.C. § 285; *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 554 (2014) ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.").  A request for attorneys' fees must be brought by motion within 14 days after entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i); *IPXL Holdings, L.L.C. v. Amazon.com, Inc*., 430 F.3d 1377, 1386 (Fed. Cir. 2005) ("[W]e hold that any claim to attorney fees must be processed in compliance with Rule 54(d)(2)(B).").

      "Under the 'American rule,' the prevailing litigant is ordinarily not entitled to any attorney fees, absent statutory authority.  A rationale for this rule is that one should not be penalized for merely defending or prosecuting a lawsuit."  *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 471 (Fed. Cir. 1985) (citations omitted).  "Attorney fees are not to be routinely assessed against a losing party." *Revlon, Inc. v. Carson Products Co*., 803 F.2d 676, 679 (Fed. Cir. 1986).

      Under 35 U.S.C. § 285 attorneys' fees may be awarded to the prevailing party in "exceptional cases."  An exceptional case must be proven by a preponderance of the evidence and "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness*, 572 U.S. at 554.

5.       **Prejudgment and Postjudgment Interest**

The patent statute authorizes awards of prejudgment interest.  28 U.S.C. § 1961.  The rate

of prejudgment interest is a matter for the Court to determine.  *See Rite-Hite Corp. v. Kelley Co.*,

56 F.3d 1538, 1555 (Fed. Cir. 1995) (upholding the district courts awarding of interest at a

simple rather than a compound rate).  "Prejudgment interest serves to compensate for the loss of

use of money due as damages from the time the claim accrues until judgment is entered, thereby

achieving full compensation for the injury those damages are intended to redress."  *Transmatic,*

*Inc. v. Gulton Indus.*, 180 F.3d 1343, 1348 (Fed. Cir. 1999) (quoting *West Virginia v. United*

*States*, 479 U.S. 305, 310 n.2, (1987).

"Postjudgment interest is similar, as it serves to further compensate a winning plaintiff

from the time of a judgment until payment is made."  *Transmatic* at 1348 (citing 28 U.S.C. §

1961(a)).  Determining the correct dividing line for calculating pre- and postjudgment interest is

a matter of regional circuit law rather than federal circuit law.  *Transmatic* at 1347.  Where post-

judgment interest is awarded, it starts running when a judgment quantifying that award has been

entered.  *Eagleview Techs., Inc. v. Xactware Sols., Inc.*, No. 1:15-cv-07025, 2021 U.S. Dist.

LEXIS 28272, at *64 (D.N.J. Feb. 16, 2021) (citing *Travelers Cas. & Sur. Co. v. Ins. Co. of N.*

*Am.*, 609 F.3d 143, 174 (3d Cir. 2010)).