IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICROCHIP TECHNOLOGY INCORPORATED, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) C.A. No. 17-1194-JDW<br>) |
| APTIV SERVICES US, LLC, | )<br>) |
| Defendant. | ) |

**MICROCHIP TECHNOLOGY INCORPORATED'S OPENING BRIEF
<u>IN SUPPORT OF ITS MOTIONS *IN LIMINE*</u>**

OF COUNSEL:
Bruce W. Slayden II
Brian C. Banner
R. William Beard, Jr.
Truman H. Fenton
Darryl J. Adams
Joseph D. Gray
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
(512) 402-3550

Dated: February 23, 2022

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

Pursuant the Court's Amended Scheduling Order (D.I. 240), Plaintiff Microchip submits this brief in support of its Motions *in Limine*.

I. **MOTION *IN LIMINE* NO. 1 TO EXCLUDE REFERENCES TO *INTER PARTES* REVIEW PROCEEDINGS**

Microchip respectfully moves to exclude references to the existence, substance, and outcome of *inter partes* review (IPR) proceedings initiated by Aptiv, including findings and conclusions of the Patent Trial and Appeals Board (PTAB) reached in those proceedings. Aptiv petitioned for IPR of Microchip's originally asserted '191 Patent as well as the '243 and '708 Patents that remain at issue in this case. *See* IPR2017-00864, IPR2017-00861, IPR2017-00970. The '191 Patent is no longer asserted by Microchip, and thus IPR proceedings involving this patent have no relevance to any issue the jury will be asked to decide. The IPRs for the '243 and '708 Patents concluded with Final Written Decisions (which the Federal Circuit affirmed on appeal) and are similarly irrelevant because those proceedings applied different burdens of proof and claim construction standards, addressed invalidity grounds that Aptiv is estopped from raising at trial, and considered claims that are no longer asserted in this action. Any marginal relevance the IPR proceedings might have is substantially outweighed by the risk of unfair prejudice, wasting time, and confusing the jury. Any and all evidence and argument relating to these IPR proceedings should therefore be excluded under Fed. R. Evid. 401–403.

The PTAB applied a different burden of proof and different standards for claim construction in the IPR proceedings, rendering the analyses and conclusions of the PTAB irrelevant to the determinations that the jury will be asked to make at trial. Specifically, the PTAB applied a different burden of proof than the jury will be instructed to apply here. The PTAB assessed disclosures of the prior art and unpatentability by a preponderance of the evidence, a lower burden than the clear and convincing evidence standard Aptiv must satisfy to prove invalidity in district

court. *See* Ex. A at 3 (determining "patentability by preponderance of the evidence"). In addition, the PTAB applied the broadest reasonable claim construction standard, whereas this Court uses the *Phillips* standard. *Compare* Ex. A at 12 (applying the PTAB's "broadest reasonable construction" standard), *with* D.I. 143 (applying district court's *Phillips v. AWH Cor*p., 415 F.3d 1303 (Fed. Cir. 2005) standard). The significance of this distinction is demonstrated by the different claim constructions reached by this Court and the PTAB. *See, e.g.*, D.I. 113 at 16 (applying a different construction for "dedicated USB connection," while stating "[t]he Court will not read in the limitations introduced by Defendant and the PTAB concerning how to achieve dedicated USB connections."); *id.* at 18 (reaching a different construction for "USB device block," finding that "the PTAB inserted 'USB' without explanation."). Any marginal relevance of the IPR proceedings is thus substantially outweighed by the risks of prejudice to Microchip, juror confusion, and wasting trial time.

To avoid unfair prejudice, added complexity, and confusion that could arise from the different standards between the forums, district courts in Delaware consistently preclude parties from referencing IPR proceedings at trial. *See, e.g., Pac. Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*, C.A. No. 17-1353-LPS-CJB, 2020 WL 954938, at *2 (D. Del. Feb. 27, 2020) (precluding reference to the "nature, details, or results of the IPR or any other proceeding"); *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284-LPS, 2019 WL 77046, at *1 (D. Del. Jan. 2, 2019) ("The jury will not be told anything about the existence of the IPRs"); *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, CA. No. 15-819-LPS-CJB, 2018 WL 2186677, at *1 (D. Del. May 11, 2018) (excluding all evidence relating to the PTAB and IPR because "the prejudice and confusion inherent in presenting this evidence to the jury– particularly given the PTAB's different standards–substantially outweighs its probative value");

Case 1:17-cv-01194-JDW   Document 320   Filed 02/23/22   Page 4 of 17 PageID #: 13493

*D&M Holdings Inc. v. Sonos, Inc.*, C.A. No. 16-141-RGA, 2018 WL 1033358, at *12 (D. Del. Feb. 22, 2018) ("The parties are prohibited from disclosing to the jury the existence of the 2014 Case or the IPR proceedings"); *ART+COM Innovationpool GmbH v. Google Inc.*, C.A. No. 1:14-217-TBD, 2016 WL 11531119, at *2 (D. Del. May 16, 2016) (excluding IPR institution decision because "[t]he danger of prejudice and confusion outweighs the probative value of this evidence"); *Interdigital Communications Inc. v. Nokia Corp.*, C.A. No. 13-10-RGA, 2014 WL 8104167, at *1 (D. Del. Sept. 19, 2014) (marginal relevance of PTAB proceedings "greatly outweighed by the expenditure of time that would be required to give the jury the full context necessary to fairly evaluate the evidence [and] a significant risk of confusion of the issues.").

Despite this general exclusion of evidence concerning IPRs, district courts occasionally permit the use of evidence from IPR proceedings for the limited purpose of impeaching witnesses on cross-examination, *e.g.*, if an expert witness provided a prior inconsistent statement. Judge Stark, for example, held that an IPR petition and accompanying expert declaration could be used to impeach witnesses at trial, "provided that the parties reference them as being related to 'another matter,' without disclosing the nature, details, or results of the IPR or any other proceeding." *See Pac. Biosciences*, 2020 WL 954938, at *2; *see also Integra LifeSciences Corp.*, 2018 WL 2186677, at *1 ("The Court's decision does not preclude either side from cross-examining a witness based on her prior inconsistent statement(s)."). Microchip does not oppose use of the IPR petition or declaration for this limited purpose and with these conditions, if otherwise appropriate and competent for such a purpose. Likewise, Microchip should be entitled to inform the jury of prior art the PTAB in fact considered during the IPRs if Aptiv argues or suggests to the jury that the Patent Office has not considered or assessed prior art involved in the IPR proceedings.

Aptiv, however, has manifested intent to use the IPR proceedings to improperly and indefensibly bolster its invalidity arguments in direct contravention of this Court's precedent. Aptiv's technical expert, Mr. Garney, relies on the PTAB's findings for **non-asserted** claims—*i.e.,* claims from the '243 and '708 Patents that are no longer at issue in this case—to explain why the remaining asserted claims are allegedly invalid:

> During the IPR process, I understand that the PTAB considered—and invalidated—most of the independent claims of the '243 and '708 Patents. The differences between those claims and the claims currently at issue are minimal. They can be grouped into the following categories: . . .

D.I. 209-16 ¶ 245; *see also, e.g., id.* ¶¶ 142, 250 (referencing the PTAB's findings for unasserted claims of the '243 and '708 Patents). Against this backdrop, Mr. Garney characterizes the asserted claims in this case as "avoid[ing] cancellation [in the IPR proceedings] by limitations that are basic features of any USB system and not arguably inventive on limitations in the asserted claims." *Id.* ¶ 251. Mr. Garney also cites the PTAB's analysis for invalidity grounds Aptiv is now estopped from raising to establish the disclosure of certain references (*see, e.g., id.* ¶ 253 (stating the "PTAB recognized[] that Dickens discloses endpoint buffers") and to incorrectly infer that the jury's invalidity inquiry should be limited to particular claim elements the PTAB determined to be missing from the prior art in the IPR proceedings (*see, e.g., id.* ¶ 262 ("the PTAB found only one element of the '243 and '708 Patent claims to be absent"); *see also id.* ¶¶ 253, 265). Mr. Garney's 49 references to the PTAB in his opening report reflect the extent Aptiv intends to rely on the IPR proceedings at trial. The Court should preclude Mr. Garney from referencing the IPR proceedings at all.

Aptiv's intended references to the IPR proceedings are improper. The IPRs addressed claims that are no longer asserted in this case and **only** considered invalidity grounds that Aptiv is estopped from raising at trial. *See* D.I. 245 at 7–9 (applying IPR estoppel and limiting Aptiv at

4

trial to invalidity grounds that could not have been raised in an IPR). Indeed, the PTAB found that all remaining asserted claims in this case are patentable over Aptiv's IPR grounds. Introduction of the IPR prior proceedings imposes undue complexity explaining to the jury the IPR process, the differing legal standards, the evidence the PTAB considered, the outcomes in each proceeding, and how statutory estoppel applies. Even with additional jury instructions (*e.g.*, regarding the different burdens of proof), there is a significant risk of jury confusion and unfair prejudice as the jury may misunderstand the effect of the IPR proceedings and substitute the PTAB's findings for their own merely because of the perceived credibility and expertise of a government agency. The jury may also ***incorrectly*** conclude that the PTAB's findings for non-asserted independent claims have bearing on the validity of the remaining dependent claims. *See* 35 U.S.C. § 282 ("dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim"). Evidence of IPR proceedings would also result in a confusing trial-within-a-trial to place such evidence in context and thereby waste valuable trial time. These risks substantially outweigh any relevance Aptiv could argue the IPR proceedings may have. There is no basis for deviating from this district's normal practice of excluding reference to related IPR proceedings at trial.

For the above reasons, Microchip respectfully requests that the Court exclude Aptiv or its witnesses from referring to the IPR proceedings initiated by Aptiv and any findings made by the PTAB in these proceedings under Fed. R. Evid. 401–403.

## II. MOTION *IN LIMINE* NO. 2 TO EXCLUDE UNDISCLOSED AND IMPROPER TECHNICAL EXPERT OPINIONS

Aptiv's technical expert should be limited to the opinions set forth in his expert report that properly apply the Court's orders. As set forth below, the Court should preclude reference to undisclosed testing of physical devices and improper reliance on the reasoning in the Court's claim construction memorandum opinion.

Undisclosed testing of physical devices: The Court previously held that due to IPR estoppel Aptiv is limited at trial to presenting invalidity grounds that include physical devices. *See* D.I. 245. Aptiv identified two such physical devices it intends to rely upon: US-98 USB Auto Share Switch ("US-98") and Belkin F1U400 4x4 USB Peripheral Switch ("Belkin"). During discovery, Aptiv produced for inspection several purported versions of the US-98 and Belkin physical devices acquired for use in this litigation. However, Aptiv's expert, Mr. Garney, only disclosed and tested **one** specific US-98 device and **one** specific Belkin device for purposes of his invalidity expert reports. The Court should exclude from evidence any alleged prior art physical device(s) not disclosed during discovery as one of the two alleged prior art products underlying Mr. Garney's invalidity opinions. The Court should also preclude Aptiv and its expert from presenting any undisclosed testing of other physical devices under Fed. R. Evid. 403 and Fed. R. Civ. P. 37.

Expert reports "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). If a party fails to comply with Rule 26, it "is not allowed to use that information . . . to supply evidence . . . at a trial." Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Evid. 403 (permitting exclusion of evidence resulting in unfair prejudice); *Almirall LLC v. Taro Pharm. Indus. LTD*, C.A. No. 17-663-JFB-SRF, 2019 WL 316742, at *3 (D. Del. Jan. 24, 2019) ("only testimony and opinions properly disclosed in expert reports will be permitted [at trial]"); *Stored Value Sols., Inc. v. Card Activation Techs. , Inc.*, C.A. No. 09-495-LPS, 2010 WL 3834457, at *2 (D. Del. Sept. 27, 2010) ("the Court will, as it must, limit the expert testimony at trial to that disclosed in the expert reports"); *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, C.A. No. 04-1371-JJF, 2007 WL 7658923, at *2 (D. Del. Sept. 14, 2007) (precluding reference to tests and devices constructed after experts reports served).

In his opening report, Mr. Garney describes purchasing and testing a specific US-98 device and a specific Belkin device, both identified by the bates-labeled photos of the devices. *See* D.I. 209-16 ¶¶ 290–96, 300–04 (referencing exhibits E-4 and F-4). Mr. Garney also notes that Aptiv's counsel "purchased two additional Belkin switches" and "two additional US-98 switches." *Id.* at 86 n.394, 88, n.397. However, Mr. Garney confirmed he only tested the specific US-98 device and Belkin device that he purchased:

> Q. Okay. So with respect to the Belkin devices, Exhibit 68 is the device that you tested when preparing your opening report; is that correct?
>
> A. That's correct.
>
> Q. Did you test any of the other Belkin devices that are present today other than the one that's marked with Exhibit 68?
>
> A. Not to the extent that's described in my opening report, no.

Ex. B at 48:12–20; *see also id.* at 38:24–39:2 ("Q. Okay. As far as US-98 is concerned, . . . the testing in your [] report is limited to testing of this Exhibit 62, US-98? A. That's correct."). Neither Mr. Garney nor Aptiv produced evidence of any testing of other US-98 and Belkin physical devices, including the devices purchased by Aptiv's counsel.

Because Mr. Garney only disclosed opinions based on testing one specific US-98 device and one specific Belkin device, the Court should exclude reference to any other testing not documented in Mr. Garney's reports, including any undisclosed testing of the other US-98 and Belkin devices Aptiv produced in this case. *See Power Integrations, Inc.*, 2007 WL 7658923, at *2; Fed. R. Civ. P. 37(c)(1). The relevance of such previously undisclosed testing is substantially outweighed by the unfair prejudice of allowing evidence or argument at trial concerning undisclosed expert opinions. *See* Fed. R. Evid. 401–403.

<u>Improper reliance on the claim construction memorandum opinion</u>: This Court issued a claim construction order (D.I. 114) and memorandum opinion in support thereof (D.I. 113). Mr. Garney

cherry-picks statements from the Court's memorandum opinion to improperly bolster his non-infringement opinions. The jury will be instructed on the Court's claim constructions, which speak for themselves. Pursuant to Rules 401–403, the Court should preclude Aptiv and its expert from referencing and characterizing statements in the Court's memorandum opinion at trial.

The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed. *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. *Id.* The Court has done so here, issuing its claim construction order (D.I. 114) containing constructions of claim limitations the jury will be instructed to apply for assessing infringement and invalidity.

Mr. Garney does not merely apply the constructions in the Court's claim construction order, but instead opines on statements in the accompanying memorandum opinion to support his opinions. For example, Mr. Garney opines:

> It also does not follow that when a host sees two USB devices *because in fact two USB devices are attached*, those devices become one device. The multi-host device's interface does not, and could not, transform two separate USB devices into one shared device. I understand that the Court recognized in its claim construction decision that multiple USB devices in a shared housing (such as compound devices) do not constitute a single shared USB device.123 A POSITA would recognize that to be true.

Garney Non-Infringement Report (Oct. 18, 2019) ¶ 103 (citing D.I. 113 at 20). The Court rejected Aptiv's proposed construction in the cited portion of the memorandum opinion and adopted a construction consistent with this analysis. Yet Mr. Garney quotes the Court's reasoning to infer that multiple USB devices in a shared housing **cannot** constitute a single shared device. In fact, the Court stated "[c]ombining multiple USB devices in a single housing does not make the devices 'shared' according to the '243 Patent or the portion of the construction the parties agree upon." D.I. 113 at 20. Mr. Garney contorts the Court's analysis to incorrectly suggest shared housing

8

(such as compound devices) do not constitute a single shared USB device. The Court made no such conclusion. In essence, Mr. Garney is presenting non-infringement analysis based on an improper interpretation of the Court's constructions, not the claim constructions adopted in the claim construction order. *See Multimedia Patent Tr. v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 WL 12868264, at *5 (S.D. Cal. Nov. 20, 2012) ("Bovik is precluded from presenting an invalidity analysis that is based on MPT's interpretation of the Court's claim construction order"). Mr. Garney's opinions interpreting "the Court's claim construction order" are likely to mislead the jury into believing that the referenced statements are part of the Court's claim construction (they are not). In addition, these improper opinions are likely to waste time as the parties dispute what are and are not proper interpretations of the claim construction Order.

Accordingly, the Court should preclude Aptiv and its expert from relying on statements and analysis in the Court's memorandum opinion.

### III.  MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE OF APTIV'S PATENTS

At trial, the jury will be asked to decide various questions regarding the two asserted patents owned by Microchip. Patents owned by defendant Aptiv are irrelevant to the claims and defenses in this case, and introducing evidence or argument concerning the existence or substance of any Aptiv patents would only risk confusing the issues, misleading the jury, and wasting time. Microchip therefore moves to preclude reference to Aptiv's patents pursuant to Rules 401–403.

Evidence regarding patents owned by Aptiv is irrelevant to this case. Aptiv has not asserted any patents against Microchip, and Aptiv is not relying on its patents as alleged prior art related to invalidity, or for issues related to damages, non-infringement, or willfulness. These patents therefore are irrelevant to the questions the jury will be asked to decide. Aptiv's engineer, Robert Voto, testified during his deposition regarding several Aptiv patents that purportedly relate to the accused product:

9

> Q. Did you file any patents related to the development of the Boston chip?
>
> A. I'm not sure how to answer your question because I didn't -- I never file any patents. I do work with patent attorneys who file for patents.
>
> Q. Let me rephrase. Do you -- are you the inventor of any patents related to the Boston chip?
>
> A. Yes.

Voto Dep. 41:17–42:19. Aptiv may attempt to elicit similar fact or expert testimony regarding its patents at trial.

The only possible use of Aptiv's patents at trial would be to improperly suggest or infer to the lay jury that Aptiv does not infringe or should not incur liability because it possesses patents related to the accused products. But such patents are irrelevant to the issues in this case, because "the existence of one's own patent does not constitute a defense to infringement of someone else's patent." *Bio-Technology General Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996); *see also Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) (It "is well established that separate patentability does not avoid [infringement] as a matter of law."). Although Aptiv's technical expert, Mr. Garney, purports to acknowledge Aptiv's patents do not disprove infringement here, he nonetheless suggests the opposite:

> Aptiv was also awarded multiple patents on its new architecture, and these patents were issued over Microchip's Asserted Patents, indicating the Patent Office believed Aptiv's ideas to be patentably distinct. I am aware that, just because Aptiv obtained its own patents over the Microchip patents, that, by itself, does not disprove infringement of the Asserted Patents. ***But the fact that Aptiv was awarded multiple patents of its own—issued over the Asserted Patents or related Microchip patents or applications—further indicates to me the Aptiv solution differs from what Microchip patented***.

Garney Non-Infringement Report (Oct. 18, 2019) ¶ 252 (emphasis added and citation omitted). Mr. Garney, however, offers no opinions or analysis that the accused products are embodied by the claims of any Aptiv patent and does not compare any asserted claim to any Aptiv patent.

10

Instead, Mr. Garney intends to improperly suggest Aptiv does not infringe simply because it, too, has been awarded patents. Any unsupported suggestion or inference that Aptiv's patents disprove infringement, or have *any* bearing on the infringement issues in this case, is improper and in direct contravention of Federal Circuit precedent. Moreover, reference to patents unrelated to any claim or defense risks confusing the issues and wasting trial time.

For at least these reasons, Microchip respectfully requests the Court preclude Aptiv from introducing evidence or arguments concerning its own patents at trial under Rules 401–403.

### IV. MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF AN ALLEGED MOLEX NON-INFRINGING SUBSTITUTE

Microchip seeks damages in the form of lost profits to account for the sales it lost because of Aptiv's competing Boston product. Aptiv contends Microchip is not entitled to lost profits, in part, because other non-infringing, acceptable substitutes allegedly existed in the market. One substitute Aptiv identifies is a "solution to support CarPlay" provided by a third-party company, Molex. Aptiv's technical expert, Mr. Garney, did not disclose any opinions concerning the alleged Molex solution or its functionality. Nor has Aptiv produced any information concerning the Molex device from which Microchip, the Court, or the jury can assess whether it qualifies as an acceptable non-infringing substitute. Without threshold evidence to establish its relevance, Aptiv should be precluded under Rules 401–403 from referring to the Molex "solution" at trial.

An accused infringer may rebut a lost profits claim by presenting evidence of available non-infringing substitutes. *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 117 (D. Del. 2016) (citing *Grain Processing Corp. v. Am. Maize–Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999)). For a non-infringing substitute to be relevant to a damages analysis, the alternative must be (1) non-infringing, (2) available, and (3) acceptable to purchasers of the accused product. *See Grain Processing*, 185 F.3d at 1349–51.

11

The record is devoid of evidence or expert opinions to support Aptiv's contention that the Molex solution qualifies as a non-infringing substitute. Mr. Chase, Aptiv's damages expert, is the only expert to mention the Molex "solution," which he includes in a laundry list of allegedly non-infringing substitutes:

> e.  Molex has its own solution to support CarPlay. In fact (and as detailed in the next section) Ford awarded Molex business for model year 2019 and beyond. Dr. Becker has not shown that the Molex solution selected by Ford would not be an option for FCA or GM.

Chase Rebuttal Report (Oct. 18, 2019) ¶ 84. Mr. Chase relies on Ford's awarding of MY 2019 business to conclude that Microchip lost sales of its patent-practicing Sandia chip to Molex. *Id.* ¶ 104 ("In May 2016, Microchip was actively pursuing Ford with a demonstration of its multi-host capability. This demonstration was in connection with opportunities for MY 2019 and or MY 2020 business. This demonstration is the first documented instance I have seen where Microchip offered its Sandia chips to Ford. The timing (first competing with Sandia for MY 2019 opportunities) is consistent with targets outlined in the earlier Microchip business plans, and with Microchip's recap of RFQ responses as it entered the Multi-Host space. While Microchip lost the business with Ford, it did not lose to Aptiv. Rather, Ford awarded its MY 2019 business to Molex.").

But Mr. Chase nor Aptiv present any evidence that this Molex solution was actually "available" during the relevant time period. Moreover, Mr. Chase confirmed during his deposition that he lacks even a basic understanding of the features of the Molex device that are necessary to confirm this "solution" qualifies as an acceptable non-infringing substitute:

> Q. Does that Molex solution that you refer to provide multi host access?
>
> A. I'm not sure.
>
> Q. Does it provide single-lane connectivity to the head unit?
>
> A. I'm not sure.

12

> Q. What about persistent USB connections?
>
> A. I'm not sure.

Nov. 19, 2019 Chase Dep. Tr. at 146:18–25; *see also id.* at 151:20–24 ("Q. Okay. And then Molex -- we talked about Molex. You don't know the technical details of that solution; is that correct? A. Yeah. I just know it was accepted by Ford in direct comparison, I think, to the Microchip offering."). Aptiv's technical expert did not disclose any opinions about the Molex "solution," and Aptiv has not produced evidence regarding how the Molex solution operates. The only alleged evidence is Mr. Chase's conclusory opinion (itself based on rumors, and unsupported by technical expert testimony) that the Molex solution is a non-infringing substitute that bars Microchip from obtaining lost profits.

The lack of evidence regarding the alleged Molex non-infringing substitute renders it irrelevant to damages and likely to mislead and confuse because there is no factual basis for establishing the purported "solution" meets the requisite legal criteria to qualify as a non-infringing substitute—something Aptiv has the burden of proving. *See Grain Processing Corp.* 185 F.3d at 1349–51 (setting forth requirements for a non-infringing substitute and clarifying that "once the patent owner establishes a reasonable probability of 'but for' causation," the burden shifts to the defendant to disprove the causation claim). Permitting Aptiv to reference any Molex solution at trial, and its economic expert to simply assert (without basis) that some unknown hub chip is a substitute for the patent-practicing chip, creates substantial risk that (1) the jury will be misled to believe the solution qualifies as a non-infringing substitute that precludes Microchip from recovering lost profits and/or (2) the jury will be confused about how to treat that testimony. Because Aptiv has not disclosed any expert testimony concerning the technical operation of the alleged third-party Molex "solution," Aptiv should be precluded from introducing any such

testimony at trial. To allow otherwise would unfairly prejudice Microchip. Accordingly, the Court should preclude any evidence or argument concerning any Molex non-infringing solution.

V.      **MOTION *IN LIMINE* NO. 5 TO EXCLUDE TESTIMONY OR DOCUMENTS AT TRIAL THAT APTIV REFUSED TO PROVIDE DURING DISCOVERY BASED ON A PRIVILEGE CLAIM**

In discovery, Aptiv asserted the attorney client privilege as to opinions of counsel related to the asserted patents and discussions between Aptiv counsel and non-counsel related to the asserted patents. As such, any attempt by Aptiv to introduce evidence (documentary or testimony) by waiving the privilege or by making a general statement that "the lawyers reviewed the asserted patents" or "this is what the lawyers concluded" or "this is what the lawyers told us to do" would be improper and should not be allowed.

During the deposition of Aptiv's 30(b)(6) witnesses, Microchip's counsel asked about Aptiv's fist knowledge of the asserted patents via the notice letter Microchip sent in January 2015, and Aptiv's counsel instructed the witnesses not to divulge communications with counsel:

> Q. I've handed you a document that's labeled Exhibit 26. Do you -- is this the letter to which Interrogatory No. 1 was referring, the January 12th, 2015, letter from Microchip?
>
> A [Aptiv witness]. Yes, it is.
>
> …
>
> Q [Microchip counsel]. What was your -- what was your conclusions based on looking at the patents?
>
> …
>
> MR. HALPERN [Aptiv counsel]: *And I didn't get it in before the witness started to answer but I just want to lodge the objection to the extent the question calls for attorney-client privileged --*
>
> MR. ADAMS: Okay.
>
> MR. HALPERN: -- information. Though I don't think he --

14

>MR. ADAMS: Yeah.
>
>MR. HALPERN: -- spoke to – revealed any.
>
>MR. ADAMS: Okay. I don't think he did either. But just for the record, Aptiv is relying on attorney-client privilege as it relates to communications and actions in response to this letter?
>
>MR. HALPERN: We are preserving the attorney-client privilege as to communications with counsel. But he is answering as to his own views on --
>
>MR. ADAMS: I understand.
>
>MR. HALPERN: Yeah.
>
>MR. ADAMS: I understand. I just – you know, sometimes attorneys waive the attorney-client privilege so that they can rely on that information as a defense.
>
>MR. HALPERN: Right.
>
>MR. ADAMS: ***It's my understanding that you are not waiving the attorney-client privilege.***
>
>MR. HALPERN: ***Correct.***

Voto Dep. Tr. 14:18–20:12 (emphasis added).

>Q [Microchip counsel]. So I guess my first question to you is, do you recall providing information on Delphi's earliest knowledge of the assertive patents?
>
>MR. BARNES [Aptiv counsel]: ***Mr. Petku, for all of these I just caution you not to divulge the specifics of any conversation you had with counsel.***

Petku Dep. Tr. at 71:13–18 (emphasis added).

The Federal Circuit has made clear that an accused infringer who relies upon an opinion of counsel (as a sword) to defend against a charge of willful infringement is prevented from at the same time using the attorney-client privilege (as a shield) to withhold other communications relating to the same subject matter. *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1299, 1301 (Fed. Cir. 2006). Aptiv chose its course of action during discovery by refusing to allow its corporate representatives to discuss any conversations with counsel or opinions its counsel had

15

regarding the patents in suit or Microchip's infringement allegations. Permitting Aptiv to present its counsel's opinions or conversations at trial improperly allows Aptiv to use its previously withheld opinion of counsel as a sword against Microchip's allegations of willful infringement. For these reasons, any evidence of Aptiv's counsel's opinions or conversations should be precluded at trial under Rules 401–403.

Respectfully submitted,

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Bruce W. Slayden II
Brian C. Banner
R. William Beard, Jr.
Truman H. Fenton
Darryl J. Adams
Joseph D. Gray
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
(512) 402-3550

Dated: February 23, 2022