IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICROCHIP TECHNOLOGY INC.  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>APTIV SERVICES US, LLC,  )<br>  )<br>  Defendant.  ) | C.A. No. 17-01194-JDW |

**APTIV'S MOTION IN LIMINE NO. 1 TO PRECLUDE MICROCHIP FROM PRESENTING EVIDENCE OR ARGUMENT RELATING TO APTIV'S COMPANY-WIDE REVENUE, PROFIT, OR VALUATION OR RELATING TO THE REVENUE, PROFIT, OR PRICE FOR THE DUAL ROLE HUB**

Defendant Aptiv Services US, LLC ("Aptiv") respectfully moves *in limine* to exclude Plaintiff Microchip Technology Inc. ("Microchip") from offering at trial any evidence, testimony, or argument relating to (1) the profit, revenue, or price of Aptiv's Dual Role Hub, or (2) company-wide revenue, profit, or valuation data for Aptiv (or its predecessors-in-interest like Unwired Holdings, Inc.). There is no dispute that the smallest saleable patent-practicing unit (the "SSPPU") is the Boston 2 chip, and not the entire Dual Role Hub. The Federal Circuit has consistently held that financials related to the entire accused product should be excluded when the plaintiff has not demonstrated that the patented features drive demand for the entire accused product. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). Introducing the Dual Role Hub's revenue or profits would impermissibly skew the jury's assessment of damages and thus should be excluded as unfairly prejudicial under Fed. R. Evid. 403. *Id.* The same is true for introducing evidence of Aptiv's, or Unwired's, company-wide revenue, profit, or valuation, which are even further removed from the SSPPU than the financial

information for the Dual Role Hub, and which have the propensity to even further skew the jury's assessment of damages.

Aptiv's requested relief is a straightforward application of the Court's determinations that (1) the Boston 2 chip, not the Dual Role Hub, is the SSPPU, D.I. 254 at 10-11 & D.I. 262 at 1-2 (the chip is "the smallest saleable unit"), (2) Microchip's expert, Dr. Becker failed to show the entire market value rule ("EMVR") was met here, D.I. 311 at 6, and (3) Dr. Becker cannot rely on the per-unit profit figure for the Dual Role Hub as a whole, D.I. 254 at 11-12. The per-unit revenue, profit, or pricing of the Dual Role Hub are not inputs to Microchip's permissible damages theories. Consequently, this information has no relevance that could possibly offset the significant unfair prejudice of introducing it to the jury.

I. BACKGROUND

The Dual Role Hub is a multi-component device that includes the Boston 2 chip, which is the SSPPU. D.I. 292 at 1 (Microchip brief explaining the "parties agree the Boston and Sandia chips each represent [the] smallest saleable patent practicing units ('SSPPU')"). Although Microchip and its expert argued that the accused functionality of the Boston chip "was the sole driver of customer demand for the accused Dual Role Hubs," *id.* at 18 (citing Dr. Becker's expert report), the Court held that Dr. Becker had "not demonstrated that the entire market value of the Dual Role Hub is 'properly and legally attributable to the patented feature.'" D.I. 311 at 6 (citing *Uniloc*, 632 F.3d at 1318). As a result of the Court's September 1, 2020 order excluding Dr. Becker's reasonable royalty opinion, Microchip served an updated expert report from Dr. Becker in which he removed "all reference to, and reliance on, the profitability of the Dual Role Hub as a whole." D.I. 292 at 1.

Microchip's Preliminary Exhibit List, served February 15, 2022, includes many proposed exhibits that include information about the Dual Role Hub's revenue, profit, and prices. *See* Ex.

2

1 (excerpted collection of exemplar entries containing such information).  These documents include revenue, profit, and pricing data for the Dual Role Hub.  These documents also include company-wide financial disclosures and other reporting and transactional documents that contain company-wide profit, revenue, and valuation information for both Unwired and Aptiv, including documents related to Aptiv's 2014 purchase of Unwired for $191 million.  *See id.* (listing as proposed exhibits "Upswing – Stock Purchase Agr 092114 – Fully Executed with Schedules" & "Aptiv 2018 Annual Form 10-K").  Although some of these documents contain information that is not the subject of this motion (for example unit sales information), the number of revenue- and profit- focused documents suggests Microchip intends to introduce evidence at trial regarding the Dual Role Hub's revenues, profits, or pricing and evidence of Aptiv's company-wide revenue, profit, or valuation.  This would be improper under Fed. R. Evid. 402 and 403 and Federal Circuit law because the EMVR is not satisfied.

## II.     ARGUMENT

Microchip should not be permitted to introduce evidence of the Dual Role Hub's profit, revenue, or pricing because it cannot show that the accused technology drove demand for the Dual Role Hub as a whole.  Without such a showing, the revenue, profit, and pricing information would risk skewing the jury's analysis of damages and should be excluded on that basis.

Absent proof that the EMVR has been satisfied, a plaintiff cannot introduce evidence of the entire value of the accused product.  *Uniloc*, 632 F.3d at 1320-21.  Disclosing to the jury the accused product's revenues "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue." *Id.* at 1320 (noting that the "cat was never put back into the bag" once the overall revenues were introduced to the jury, and neither cross-examination nor a curative jury instruction could address the unfair prejudice from that introduction).  "[A]dmission of such overall revenues, which have no demonstrated

3

correlation to the value of the patented feature *alone*, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) (emphasis added). Absent a careful tie to the patented technology, admission of a defendant's company-wide revenue or profit is similarly improper for the same reasons, as is evidence of a company's overall wealth or valuation. *See Biomérieux, S.A. v. Hologic, Inc.*, No. 18-CV-0021, 2020 WL 583917, at *2 (D. Del. Feb. 6, 2020) (excluding Defendants' "overall financial state or revenues not tied to the accused products and not tied to Plaintiffs' expert opinion regarding a reasonable royalty calculation"); *HTC Corp. v. Tech. Properties Ltd.,* No. 5:08-CV-00882-PSG, 2013 WL 4782598, at *6 (N.D. Cal. Sept. 6, 2013) (excluding evidence regarding defendant's "size, wealth, or overall revenues" under Fed. R. Evid. 403).

Here, the Court has already determined that conditions of the EMVR are not met because the accused functionality did not create demand for automotive hubs "in the first place." *LaserDynamics, Inc.*, 694 F.3d at 68. The Court rejected Microchip's and Dr. Becker's suggestion that evidence of the accused feature's importance to the Dual Role Hub was sufficient to satisfy the relevant legal test. D.I. 311 at 6; *see also* D.I. 282 at 12-13 (discussing EMVR) & D.I. 297 at 9-10 (same). Thus, evidence of the Dural Role Hub's revenue, profit, or pricing should not be admitted. *Uniloc*, 632 F.3d at 1320-21. The same conclusion applies with even more force to Aptiv's and Unwired's company-wide revenue, profit, and valuation information; in addition to being based on the Dual Role Hub's revenue and profit, the company-wide information is based on other products and business lines with no connection to the patented technology. *See Biomérieux*, 2020 WL 583917, at *2.

Consistent with the Court's ruling that the EMVR does not apply, Dr. Becker's reasonable royalty theory is based on alleged cost savings enabled by the patented invention; it does not use the Dual Role Hub's revenue, profit, or price as an input, nor does it rely on Aptiv's or Unwired's company-wide revenue or the price Aptiv paid to purchase Unwired in 2014. *See generally* D.I. 282 at 3-6 (discussing Dr. Becker's cost savings analysis).

Dr. Becker also does not calculate lost profits based on the Dual Role Hub's revenue, profits, or pricing, relying instead on the unit numbers and timing of Aptiv's sales (which this motion does not seek to preclude). Dr. Becker's only reference to any financials for the Dual Role Hub is his recital of the number of Dual Role Hub units Aptiv sold and the revenue associated with those sales, purportedly to support his conclusion that there is demand for the patented product. Ex. 2 (Excerpts of Dr. Becker's Opening Report, dated Sep. 16, 2019) ¶ 58. To the extent such sales are evidence of demand, the unit sales are sufficient to make that point, and the revenue numbers add little (if anything) to the inquiry. Allowing a plaintiff to introduce non-SSPPU revenues under such a lost profits analysis would be an end-run around, and would vitiate, this Court's prior ruling and the Federal Circuit's holdings in *Uniloc* and *LaserDynamics*. *See Uniloc*, 632 F.3d at 1311 (excluding the use of the accused products' revenue where it was not used as an input to calculating damages but as a "check" of the damages calculation).

## III. CONCLUSION

Allowing Microchip to introduce the Dual Role Hub revenues, which total nearly three quarters of a billion dollars through November 2021, or evidence that Aptiv purchased Unwired for nearly $200 million, would improperly and irreversibly skew the jury's view of damages. Microchip failed to tie the demand that led to these revenues to the patented invention, and thus Microchip should not be allowed to introduce evidence of the (1) Dual Role Hub's revenues,

prices, or profits or (2) company-wide revenue, profits, or valuation information for Aptiv or Unwired at trial.

OF COUNSEL:

Daralyn J. Durie
Timothy Saulsbury
Eric C. Wiener
Joyce C. Li
DURIE TANGRI LLP
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

W. Henry Huttinger
Andrew T. Jones
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA  90013
(213) 992-4499

Dated:  February 23, 2022
10050455

POTTER ANDERSON & CORROON LLP

By: */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Defendant
Aptiv Services US, LLC*