**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MICROCHIP TECHNOLOGY INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 17-01194-JDW |
| | ) |
| APTIV SERVICES US, LLC, | ) |
| | ) |
| Defendant. | ) |

**APTIV'S MOTION IN LIMINE NO. 2 TO PRECLUDE MICROCHIP'S EXPERT
WITNESSES, MR. IVAN ZATKOVITCH AND DR. STEPHEN BECKER, AND FACT
WITNESS MR. MITCH OBOLSKY, FROM OFFERING OR RELYING ON
UNDISCLOSED OPINIONS REGARDING ALLEGED COSTS SAVINGS**

Microchip's damages expert, Dr. Becker, provides a reasonable royalty opinion based on

the alleged cost savings attributable to the asserted patents.  Dr. Becker is not a technical expert;

he cannot opine on what technology is or is not attributable to the asserted patents.  Instead, Dr.

Becker relies on opinions allegedly provided to him by Microchip's technical expert, Mr.

Zatkovich, and a fact witness (and Senior VP at Microchip), Mr. Obolsky.[1]  But those opinions

were never disclosed and therefore should not be allowed at trial.  Microchip cannot circumvent

the disclosure requirements by using an expert to smuggle in other witnesses' undisclosed

opinions.  The result is that there will not be admissible evidence upon which Dr. Becker could

rely.  Therefore, Aptiv moves *in limine* to preclude: (1) Mr. Zatkovich from testifying that chip

integration or cost savings is a feature of the asserted patents, (2) Mr. Obolsky from the same, or

---

[1] It is unclear if Dr. Becker in fact relies on Mr. Obolsky for this claim—he does not cite discussion with Mr. Obolsky in this portion of his report.  However, due to ambiguity in Dr. Becker's deposition testimony, and out of an abundance of caution, Aptiv seeks to exclude Mr. Obolsky's testimony on this issue (and Dr. Becker's reliance on that testimony), to the extent Microchip intends to offer it.

otherwise testifying about the scope of the asserted patents, and (3) Dr. Becker from offering opinions that rely on any of the above testimony from Mr. Zatkovich or Mr. Obolsky.

## I.     RELEVANT BACKGROUND

The Court initially rejected Dr. Becker's reasonable royalty analysis because it relied on the alleged cost savings from Aptiv's Dual Role Hub, as opposed to that from the chip inside the hub (D.I. 262 at 2; D.I. 254 at 10-11) but allowed Microchip to serve a supplemental report followed by a brief period of limited supplemental damages discovery.  D.I. 269.  Pursuant to that order, Dr. Becker served two additional expert reports and was deposed on those reports. Aptiv then moved to exclude Dr. Becker's supplemental reasonable royalty opinions, a motion which the Court granted in part and denied in part. D.I. 311.

The Court held that Dr. Becker would be permitted to present his reasonable royalty opinion, which is based on a cost savings analysis, to the jury.  *Id.*  Dr. Becker opined that the cost differential between certain patent-practicing chip configurations is attributable to the patented invention.  The principal basis of Aptiv's (denied) motion to exclude was that Dr. Becker did not have support for this conclusion: specifically, Dr. Becker had no basis to conclude that integration of existing components into the patent-practicing chip was attributable to the patented invention.  D.I. 282 at 8-10.  Dr. Becker's support for this point, according to his expert reports, was the patent specification and discussion with Mr. Zatkovich.  Ex. 1 ¶¶ 67-69 & nn. 86-91.  Although Dr. Becker later referenced discussions with Mr. Obolsky in his deposition (Ex. 2 at 40:23-42:9), he did not cite to those discussions in his report.  The Court held that Dr. Becker had sufficient support for his opinion based on his reliance on Mr. Zatkovich.  D.I. 311 at 4-5.

## II.     LEGAL STANDARD

Rule 26(a)(2)(A) contains the general requirement that parties disclose expert witnesses.

Rule 26(a)(2)(B)(i) requires retained experts to provide a report containing "a complete

statement of all opinions the witness will express and the basis and reasons for them."  Rule

26(a)(2)(D) adds that these disclosures must be made "at the times and in the sequence that the

court orders."  Under Rule 37(c)(1), nondisclosure means a party cannot "use that

information…to supply evidence…at a trial, unless the failure was substantially justified or is

harmless."

## III.    ARGUMENT

If Dr. Becker presents his cost-savings approach to the jury at trial (as the Court held he

can do), he should not be permitted to support his opinions with undisclosed expert opinions

from Mr. Zatkovitch or Mr. Obolsky (opinions which Mr. Zatkovitch and Mr. Oblsky should not

be permitted to offer at trial).  Specifically, Dr. Becker should not be permitted to rely on any

opinions from Mr. Zatkovitch or Mr. Obolsky regarding whether the patented invention enabled

cost savings generally, or the integration of components onto a single chip specifically, as those

opinions were not previously disclosed.

### A.     Mr. Zatkovich's Opinions Regarding Cost Savings or Chip Integration Are Not Disclosed in His Reports

Dr. Becker's supplemental reply report relies on the following opinions from Mr.

Zatkovich to argue that chip integration is attributable to the patented invention:

- "[I]t is my understanding from Mr. Zatkovich that the patents expressly contemplate cost savings by integrating what would traditionally require multiple components into a single controller.  The patents use a Gigabit Ethernet controller as an example."  Ex. 1 ¶ 67.

- "I further understand from Mr. Zatkovich that the '243 patent discusses prior 'stand alone' USB switches that, when used, required reconfiguration of the device each time a different host accessed the device.  The invention enabled a single device to be shared by multiple hosts without the need for reconfiguration.  This was achieved by putting all of the

control into a single device with multiple host interfaces, which eliminates the need for external switches and other similar external logic." *Id.* ¶ 68.

- "It is also my understanding from Mr. Zatkovich that the Patents-in-Suit themselves enable cost savings via the integration of multiple controllers/switches into a single stand-alone solution and in fact require an integrated solution. For example, asserted claim 6 of the '708 patent and asserted claim 6 of the '243 patent (among others) recite a USB multi-host device with first and second upstream ports. Prior to the invention, a USB device could communicate with only one host and, thus, contained only a single upstream port. Sharing a device among multiple hosts required external switches. By enabling a device with two upstream ports, the Patents-in-Suit eliminated the need for external switches." *Id.* ¶ 69.

These opinions are not disclosed in Mr. Zatkovich's reports (which is perhaps why Dr. Becker does not cite to the reports). Mr. Zatkovich addressed the alleged functionality of the claimed multi-host device without regard for the number of physical components used. Ex. 3 (Zatkovich Opening Report) ¶¶ 63-71. Mr. Zatkovich's reports said nothing about the integration of controllers or switches into a stand-alone solution, let alone how or why such integration falls within the scope of the asserted claims. The reports did not even mention the above ethernet example. And the only discussion of claim 6 of either patent—aside from charting the claims against the accused product—was a footnote comparing claim 6 of the '708 patent to claim 1 of the '243 patent (*id.* ¶ 112 n.16), and assertions about the "endpoint buffer" limitations (*id.*, Ex. 4 (Zatkovich Reply Report) ¶¶ 16.e, 81-82). Mr. Zatkovich never opined that the portions of these claims directed to two upstream ports means the patented invention "eliminated the need for external switches." Ex. 1 ¶ 69. Nor did he opine that "enabl[ing] a single device to be shared by multiple hosts without the need for reconfiguration" "was achieved by putting all of the control into a single device with multiple host interfaces, which eliminates the need for external switches and other similar external logic." *Id.* ¶ 68.

Mr. Zatkovich's general references to the prior art discussed in the specification are insufficient. Ex. 3 ¶ 64 (citing '243 patent at 1:59-60 and 2:1-2). Dr. Becker asserts that, based on his understanding from Mr. Zatkovich, these cited portions of the specification support cost

savings from chip integration.  Ex. 1 ¶¶ 67-69.  But that is not what Mr. Zatkovich's disclosures said.  Paragraph 64 is silent on the use of external switches or other components in the prior art.  Instead, it discussed the drawbacks of hosts having to re-configure a shared device and was followed by Mr. Zatkovich's opinion that the claimed invention solved this problem with simultaneous configuration.  Ex. 3 ¶ 65.  Mr. Zatkovich never identified cost savings from integration as a benefit of the invention.

### B.    Microchip Should Not Be Permitted to Offer Mr. Zatkovich's Undisclosed Opinions At Trial

Failure to comply with discovery obligations means a party is not allowed to use the undisclosed information at trial "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  In determining whether to exclude such information, this Circuit also considers: (1) prejudice to the party seeking exclusion, (2) ability to cure that prejudice, (3) disruption of an orderly and efficient trial, and (4) bad faith or willfulness. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

Microchip is not substantially justified in failing to disclose Mr. Zatkovich's opinions on chip integration.  There is no reason why Mr. Zatkovich could not have included in his reports the opinions about chip integration or cost savings.  Those opinions (as conveyed by Dr. Becker) are based entirely on Mr. Zatkovich's reading of the asserted patents, other aspects of which are addressed in detail in his reports.

Nor is Microchip's nondisclosure harmless.  Because Mr. Zatkovich did not disclose his opinions on chip integration or cost savings, Aptiv was unable to take related discovery.  Instead, Microchip sought to introduce Mr. Zatkovich's new opinions through Dr. Becker, well after the close of discovery and as part of limited supplemental discovery regarding damages.  This

"disclosure" does not cure the prejudice to Aptiv because it did not allow Aptiv to explore the

bases for Mr. Zatkovich's opinions.  When questioned on the topic, Dr. Becker stated:

> And I discussed that [chip integration] with Microchip's technical expert and he told me, no, there are elements of these -- of the patent that address the question of integration. So to get down and start parsing out specific circuits within this smallest salable practicing unit, ***I haven't done that and that's not within the scope of my expertise***.

Ex. 2 at 11:7-12:6 (emphasis added).

In other words, Dr. Becker's response is: "go ask Mr. Zatkovich"—and that's the

problem.  Dr. Becker's supplemental report was provided as part of a procedure meant to give

both parties adequate opportunity to test new *damages* opinions before trial, and to give the

Court time to rule on related motions.  D.I. 269.  But Dr. Becker introduced in his report new

*technical* opinions that only Mr. Zatkovich can speak to.  Aptiv has not been able to question Mr.

Zatkovich on these issues.  Exclusion of those nondisclosed opinions is the only means of curing

the prejudice to Aptiv without disrupting the parties' and Court's abilities to proceed with an

orderly and efficient trial, now mere weeks away.

### C. Microchip Should Not Be Able to Present Mr. Obolsky's Undisclosed Expert Opinions At Trial

Aptiv addresses Mr. Obolsky's potential opinions in this motion out of an abundance of

caution.  Dr. Becker's supplemental reply report relied exclusively on the patent specification

and discussion with Mr. Zatkovich for the claim that chip integration is a patented feature.  Ex. 1

¶¶ 67-69 & nn. 86-91.  Although the report contained references to discussions with Mr.

Obolsky, Dr. Becker did not cite to those discussions to support this claim.  And Dr. Becker

confirmed during deposition that he only discussed with Mr. Obolsky issues for which he

provided citations in his report.  Ex. 2 at 38:23-39:13.  However, it is unclear from other parts of

Dr. Becker's deposition testimony whether he is in fact relying on Mr. Obolsky for this claim.

To the extent Mr. Obolsky did provide opinions to Dr. Becker on whether chip integration is a patented feature, those are undisclosed expert opinions that he cannot offer at trial.

Dr. Becker suggested during deposition that he discussed chip integration with Mr. Obolsky, as follows:

> Q. But you didn't ask [Mr. Obolsky] whether or not the ability to replace certain chips with the patent practicing Sandia chip was enabled by or otherwise attributable to using the patented technology as opposed -- as opposed to some non-patented feature of that Sandia chip?
>
> A. I'm just trying to remember how I framed the discussion. ***The discussion was focused on if you take the patent practicing version of Sandia, what chips do you replace out of this design?*** And if you don't have the patent practicing chip, what are the things that you -- that -- in the -- a real world solution, you would have had to substitute for those. We didn't go any deeper than that.
>
> Q. Okay. Did you also talk to Mr. Zatkovich in connection with preparing your supplemental report?
>
> A. Yes. I think it's -- to maybe shortcut this, that the -- the discussion -- whenever it occurred, I don't recall specifically. ***It was either all three of us, Mr. Zatkovich, Mr. O'Bolsky, and myself on the phone at the same time or around the same time on separate calls, but the topic, the specific issues that were discussed were similar with respect to the two -- both Mr. Zatkovich and Mr. O'Bolsky.***

*Id*. at 41:11-42:9 (emphases added).

In his first answer, Dr. Becker asserted that he was only relying on Mr. Obolsky for the factual issue of "what chips do you replace" by using the Sandia chip (which Aptiv does not seek to prevent Mr. Obolsky from testifying about). But in his second answer, Dr. Becker suggested that he was relying on Mr. Obolsky for the same issues for which he was relying on Mr. Zatkovich—the opinion that replacing components by integration onto a single chip is a feature of the asserted patents.

Mr. Obolsky cannot testify about the scope of the asserted patents—that is an expert opinion under Rule 702. Fed. R. Civ. P 701. Mr. Obolsky has not been disclosed as an expert, let alone on this topic. In fact, he testified during deposition that he "couldn't explain to you" the

"content" of the asserted patents, and that it wasn't his "role" to do so.  Ex. 5 at 21:14-22:20.  He

cannot now offer opinions about how or why those patents cover chip integration or cost savings.

### D.    Dr. Becker Cannot Rely on Mr. Zatkovich or Mr. Obolsky's Undisclosed Opinions

An expert cannot rely on the undisclosed opinions of another expert.  The Court already

addressed this issue in response to Microchip's argument that Aptiv's damages expert—Mr.

Chase—could not rely on undisclosed expert opinions from Aptiv employees:

> MR. BANNER [Microchip's counsel]: Now, this wasn't cited in our brief, but I
> was part of the trial. This is Judge Alsup out in Northern District of California
> taking on the very exact same issue. This was Google v. Oracle a number of years
> ago. ***The same kind of facts presented themselves where there was an expert
> who relied on testimony from in-house folks who would have been considered
> experts, but there was no expert disclosure.*** Judge Alsup had some very scathing
> wording in his order that this was one of the worst types of discovery violations
> where an expert takes an undisclosed, you know, what would otherwise be expert
> testimony is now hearsay and tries to get it into the trial through his testimony. ***So
> Judge Alsup excludes that testimony from the expert who is relying on the
> undisclosed expert testimony.***
>
> THE COURT: ***Well, let me be clear. If you guys showed up at trial and just put
> Mr. Chase on, I think we'd have a problem***. But it would not be uncommon for
> me to say I'm going to deny -- this is effectively a motion in limine directed at Mr.
> Chase. ***It would not be uncommon for me to say, look, I'm going to deny a
> motion in limine subject to the party laying the appropriate foundation for
> admission of the evidence.***
>
> And so if these two Aptiv witnesses, or even maybe just one of them, show up at
> trial and offer their opinions, and ***if we have cured the disclosure issues pretrial***
> so that we're not engaged in some sort of trial by surprise, then I don't have the
> hearsay problem that Judge Alsup's worried about.

Ex. 6 (11/19/21 Hearing Tr.) at 79:13-80:15 (emphases added).

The same analysis applies here.  Just as Mr. Chase will not rely on undisclosed opinions

from Aptiv's witnesses, Dr. Becker should not be allowed to rely on undisclosed expert opinions

from Mr. Zatkovich or Mr. Obolsky (to the extent he provided such opinions to Dr. Becker).

The rationale for this rule is obvious:  a party must be able to challenge an expert's opinions and

cannot do so if that opinion comes in through another expert who disclaims it as outside their expertise. *See Sound View Innovations, LLC v. Hulu, LLC*, No. LA CV17-04146 JAK (PLAX), 2019 WL 9047211, at *14 (C.D. Cal. Nov. 18, 2019) ("[t]he reliability of the opinions of that other expert can be tested in a direct challenge to them," which can't be done "without a disclosure of those opinions and their basis") (excluding damages expert opinion based on discussion with technical expert whose opinions were not disclosed in his expert reports); *see also Advanced Med. Optics, Inc. v. Alcon, Inc.*, No. CIV.A. 03-1095-KAJ, 2005 WL 782809, at *10–11 (D. Del. Apr. 7, 2005) (opinions not disclosed in expert report excluded despite reliance on other discussions). In contrast, this Court has allowed an expert to testify based in part on discussion with other experts where the opposing party had "reasonable opportunity to prepare for effective cross examination." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 114–17 (D. Del. 2016). Notably, in addition to discussions, the expert in *EMC* relied on the other experts' reports and other witnesses' testimony. *Id.* at 115.

That is not the case here. Aside from the patents' background discussion of ethernet switches, Dr. Becker's sole bases for his assertion that cost savings from chip integration is a patented feature are discussions with Messrs. Zatkovich and Obolsky. Mr. Zatkovich's opinions on this topic and their bases were never disclosed in his reports. Mr. Obolsky was not disclosed as an expert at all, and has disavowed the expertise necessary to provide any opinions about the scope of the asserted patents. Aptiv was thus denied reasonable opportunity to prepare for cross-examination on these alleged opinions from Messrs. Zatkovich and Obolsky. Dr. Becker, therefore, cannot rely on them at trial.

## IV. CONCLUSION

The Court should preclude Microchip from offering or relying on undisclosed expert opinions at trial. Specifically, the Court should preclude:

(1) Mr. Zatkovich from testifying that chip integration or cost savings is a feature of the asserted patents;

(2) Mr. Obolsky from the same, or otherwise testifying about the scope of the asserted patents; and

(3) Dr. Becker from offering opinions that rely on any of the above testimony from Mr. Zatkovich or Mr. Obolsky.

Although Dr. Becker will be permitted to present his cost savings approach at trial, he should not be permitted to support that approach with these undisclosed opinions from Messrs. Zatkovich or Obolsky.

|  |  |
|---|---|
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | |
| Daralyn J. Durie | By:  */s/ Philip A. Rovner* |
| Timothy Saulsbury | Philip A. Rovner (#3215) |
| Eric C. Wiener | Jonathan A. Choa (#5319) |
| Joyce C. Li | Hercules Plaza |
| DURIE TANGRI LLP | P.O. Box 951 |
| 217 Leidesdorff St. | Wilmington, DE 19899 |
| San Francisco, CA 94111 | (302) 984-6000 |
| (415) 362-6666 | provner@potteranderson.com |
|  | jchoa@potteranderson.com |
| W. Henry Huttinger | |
| Andrew T. Jones | *Attorneys for Defendant* |
| DURIE TANGRI LLP | *Aptiv Services US, LLC* |
| 953 East 3rd Street | |
| Los Angeles, CA  90013 | |
| (213) 992-4499 | |

Dated:  February 23, 2022

10050434