IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICROCHIP TECHNOLOGY INCORPORATED, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 17-1194-JDW ) |
| APTIV SERVICES US, LLC, | ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF MICROCHIP TECHHNOLOGY INCORPORATED'S OPPOSITION
TO DEFENDANT APTIV'S MOTION IN LIMINE NO. 1
<u>RE: APTIV FINANCIAL INFORMATION</u>**

## I.    INTRODUCTION

Atpiv's motion *in limine* should be denied. If granted, it will unfairly preclude Microchip from mentioning *any* Aptiv financial information, including financial information relied upon by three experts—including Aptiv's own expert. Aptiv's intent is clear, it hopes to hide all Aptiv-related financial information from the jury while parading Microchip's financials in an attempt to cast Microchip as a bully. Aptiv's financial information is highly relevant, the jury will be carefully instructed on damages, and both sides will have an opportunity to present damages evidence and to cross-examine the other side's evidence. Aptiv's motion should be denied.

## II.    ARGUMENT

Aptiv's motion seeks to exclude (1) the profit, revenue, or price of Aptiv's Dual Role Hub, or (2) company-wide revenue, profit, or valuation data for Aptiv (or its predecessors-in-interest like Unwired Holdings, Inc.). D.I. 321 at 1. As best understood, Aptiv's request boils down to three categories of information: (1) the Dual Role Hub's revenues, prices, or profits; (2) Aptiv's

1

company-wide revenue, profits, or valuation information; and (3) the fact that Aptiv paid nearly $200 million to purchase Unwired Technology (the company that first developed the infringing Dual Role Hub). *See id.* at 5–6.

**A.      The Court Should Not Exclude Evidence of the Dual Role Hub Revenue**

The Court should not exclude evidence of the Dual Role Hub revenue because three experts in this case—including Aptiv's expert—rely on this information to form their opinions. More specifically:

- Microchip's validity expert, Dr. Levy, relies on total revenue for Dual Role Hubs to show the commercial success of the invention and rebut Aptiv's obviousness challenge. D.I. 209-17 ¶ 323.

- Microchip's damage expert, Dr. Becker, relies on Aptiv's total revenue for Dual Role Hubs in his Exhibit SLB-2A(S), which he cites for support for *Panduit* factor #1 (demand for the patented product) and *GP* factor #11 (extent to which the infringer has made use of the invention and any evidence probative of the value of that use). D.I. 185-1, Ex. A, ¶ 58; D.I. 292-1 ¶ 13.

- Aptiv's damage expert, Mr. Chase, relies on Aptiv's total revenue for Aptiv's infringing Dual Role Hubs in his Attachment 200, which he cites for support for *Georgia Pacific* ("*GP*") factor #8 (the established profitability of the product made under the patent and its commercial success). D.I. 292-9 ¶ 171 & Attachment 200.

Dr. Levy's reliance on the Dual Role Hub revenue to show commercial success is important to rebut Aptiv's assertion the asserted claims are obvious. In *Graham v. John Deere*, the Supreme Court held that "[s]econdary considerations [such] as commercial success . . . might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented"

and "may have relevancy" as indicia of obviousness. 383 U.S. 1, at 17–18 (1966). The Federal

Circuit has confirmed that "[w]hen a patentee can demonstrate commercial success, ***usually shown

by significant sales in a relevant market***, and that the successful product is the invention disclosed

and claimed in the patent, it is presumed that the commercial success is due to the patented

invention." *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997)

(emphasis added). It is not only proper, but necessary that Dr. Levy be able to testify as to the total

revenue Aptiv receives from the product that utilizes Microchip's invention.

Likewise, Dr. Becker's reliance on the Dual Role Hub revenue to show demand for the

patented product is important to prove that Microchip is entitled to its lost profits. Indeed, showing

"demand for the patented product" is required under the *Panduit* test—a test the en banc Federal

Circuit has endorsed as a way to prove entitlement to lost profits. *See Rite-Hite Corp. v. Kelley

Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) (*citing Panduit Corp. v. Stahlin Bros.

Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).

Aptiv argues that Microchip (and Dr. Levy and Dr. Becker) can rely solely on the number

of Dual Role Hub units that Aptiv has sold to show commercial success and demand for the

product. D.I. 321 at 5. However, the number of units—which is smaller than the total revenue—

cannot sufficiently or accurately convey the commercial success or demand for the infringing

product. Rather, the number of dollars spent on the product is the only way to properly relay that

information. Former Chief Judge Stark recently agreed with this conclusion:

> [E]vidence of Westinghouse's total revenues from sales of positive train control
> products is relevant to damages, including . . . the commercial success of the
> accused products. Evidence of Westinghouse's "size," particularly relative to the
> size of the pertinent market, may also be relevant to damages, as recognized by
> several of the *Georgia-Pacific* factors. The Court does not agree with Westinghouse
> that the risk of "inflam[ing] the jury and skew[ing] the damages" (PTO Ex. 16 at
> Mot at 1) substantially outweighs the probative value of the evidence Westinghouse
> seeks to exclude. The jury will be carefully instructed on damages and both sides

3

will have an opportunity to present damages evidence and to cross-examine the other side's evidence.

*Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, No. CV 16-284-LPS, 2019 WL 77046, at *2 (D. Del. Jan. 2, 2019) (J. Stark). Judge Stark's decision is equally applicable here. Any potential prejudice to Aptiv does not substantially outweigh the probative value of letting Dr. Levy and Dr. Becker present evidence of the total revenue Aptiv has received from its sales of the infringing Dual Role Hub.

**B.    The Court Should Not Exclude Evidence of Aptiv's Company-Wide Financial Information**

Dr. Becker's report cites to *public* evidence of both Aptiv's and Microchip's company-wide revenue. D.I. 185-1, Ex. A, ¶¶ 32, 37. Aptiv fails to show why, in this case, evidence of Aptiv's company-wide financial information would be prejudicial. This case is about a customer (Aptiv) who chose to compete with its long-time supplier (Microchip). Both companies are large companies who are well-established in their respective markets. Aptiv seeks to hide that the companies are on relatively-equal playing fields (financially) so that it can cast Microchip as a bully and garner sympathy from the jury. Indeed, while seeking to exclude evidence of Aptiv's company-wide financial information, Aptiv intends to have its damages expert offer opinions based on Microchip's company-wide financial information. *See* 292-9 ¶¶ 117–18. Such a one-sided presentation of evidence would be prejudicial to Microchip and should not be allowed. Accordingly, the court should deny Aptiv's motion to exclude evidence of Aptiv's company-wide financial information. Indeed, this is the very kind of information former Chief Judge Stark has allowed because any prejudice does not substantially outweigh the probative value. *See Siemens Mobility*, 2019 WL 77046, at *2 ("Evidence of Westinghouse's 'size,' *particularly relative to the size of the pertinent market*, may also be relevant to damages, as recognized by several of the *Georgia-Pacific* factors." (emphasis added)).

4

If the Court believes this information would be prejudicial, the Court should alternatively exclude all evidence of *either* party's company-wide financial information so that Aptiv cannot have its cake and eat it too.

C. **The Court Should Not Exclude Evidence that Aptiv Paid Nearly $200 Million to Purchase Unwired Technology**

Dr. Becker discusses the development of the infringing Dual Role Hub in his report, including (1) that Unwired Technology developed the Dual Role Hub, and (2) the Dual Role Hub was an important part of Unwired's product portfolio at the time Aptiv purchased Unwired. D.I. 292-2 ¶¶ 45–51. Thus, the price Aptiv paid to purchase Unwired is relevant to the Dual Role Hub development story. Aptiv fails to show why evidence of the Unwired purchase prices would be prejudicial. Thus, there is no reason to exclude this evidence.

Respectfully submitted,

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Bruce W. Slayden II
Brian C. Banner
R. William Beard, Jr.
Truman H. Fenton
Darryl J. Adams
Joseph D. Gray
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
(512) 402-3550

Dated: March 15, 2022