**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

MICROCHIP TECHNOLOGY INC.       )
           )
      Plaintiff,       )
           )
      v.       )      C.A. No. 17-01194-JDW
           )
APTIV SERVICES US, LLC,       )
           )
      Defendant.       )

**APTIV SERVICES US, LLC'S OPPOSITION TO**
**PLAINTIFF'S MOTIONS *IN LIMINE* NOS. 1-5**

OF COUNSEL:

Daralyn J. Durie
Timothy Saulsbury
Eric C. Wiener
Joyce C. Li
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

W. Henry Huttinger
Andrew T. Jones
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA 90013
(213) 992-4499

Dated:  March 15, 2022

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant*
*Aptiv Services US, LLC*

## TABLE OF CONTENTS

Page

I.   OPPOSITION TO MOTION *IN LIMINE* NO. 1 TO EXCLUDE REFERENCES TO *INTER PARTES* REVIEW PROCEEDINGS ....................................................................1

    A.   Microchip is collaterally estopped from arguing that Dickens does not disclose the elements of invalidated claims....................................................................2

    B.   The IPRs are probative of Aptiv's good-faith belief of invalidity...........................7

II.  OPPOSITION TO MOTION *IN LIMINE* NO. 2 TO EXCLUDE TECHNICAL EXPERT OPINIONS....................................................................9

III. OPPOSITION TO MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE OF APTIV'S PATENTS....................................................................10

IV.  OPPOSITION TO MOTION *IN LIMINE* NO. 4 REGARDING THE MOLEX NON-INFRINGING ALTERNATIVE ....................................................................15

V.   OPPOSITION TO MOTION *IN LIMINE* NO. 5 REGARDING APTIV'S PRE-SUIT INVESTIGATION....................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ART+COM Innovationpool GmbH v. Google Inc.*,
No. CV 1:14-217-TBD, 2016 WL 11531119 (D. Del. May 16, 2016) ...................................5

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
Case No. 9-CV-290, 2012 WL 5416440 (W.D. Pa. Nov. 2, 2012) .................................12, 14

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
No. 09-290, 2012 WL 5451495 (W.D. Penn. Nov. 7, 2012)...................................................10

*Cisco Sys., Inc. v. Capella Photonics, Inc.*,
No. 20-CV-01858-EMC, 2020 WL 7227153 (N.D. Cal. Dec. 8, 2020)....................................5

*D&M Holdings Inc. v. Sonos, Inc.*,
No. CV 16-141-RGA (D. Del.), D.I. 301-1 ...........................................................................5

*EMC Corp. v. Pure Storage, Inc.*,
154 F. Supp. 3d 81 (D. Del. 2016).................................................................................16, 17

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018)...............................................................................................7

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
721 F.3d 1330 (Fed. Cir. 2013)............................................................................................4, 5

*Grain Processing Corp. v. American Maize-Prods. Co.*,
185 F.3d 1341 ...................................................................................................................16, 17

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
281 F. Supp. 3d 1087 (D. Nev. 2017)...................................................................................19

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016)..............................................................................................................7, 19

*Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*,
No. CV 15-819-LPS-CJB (D. Del.), D.I. 749.....................................................................5, 9

*Interdigital Commc'ns Inc. v. Nokia Corp.*,
No. CV 13-10-RGA, 2014 WL 8104167 (D. Del. Sept. 19, 2014) .........................................5

*King Instrument Corp. v. Otari Corp*,
767 F.2d 853 (Fed. Cir. 1985), (abrogated on other grounds)...............................................12

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
  851 F.3d 1275 (Fed. Cir. 2017)......................................................................16

*In re Morsa*,
  713 F.3d 104 (Fed. Cir. 2013).........................................................................3

*Ohio Willow Wood Co. v. Alps S., LLC*,
  735 F.3d 1333 (Fed. Cir. 2013).......................................................................3

*Omega Patents v. CalAmp*,
  920 F.3d 1337 (Fed. Cir. 2019)......................................................................20

*Pac. Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*,
  No. CV 17-1353-LPS-CJB (D. Del.), D.I. 476...............................................5

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
  575 F.2d 1152 (6th Cir. 1978) ............................................................15, 16, 18

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  875 F.3d 1369 (Fed. Cir. 2017).......................................................................15

*Protegrity Corp. v. Voltage Sec., Inc.*,
  No. 3:10-CV-755 (RNC), 2013 WL 6880597 (D. Conn. Dec. 31, 2013).............18

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc)....................................................15, 16

*Schering Corp. v. Geneva Pharms.*,
  339 F.3d 1373 (Fed. Cir. 2003).......................................................................3

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
  2017 WL 4277142 (D. Minn. Sept. 25, 2017) ...........................................14, 18

*Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*,
  No. CV 16-284-LPS (D. Del.), D.I. 442 ..........................................................5

*State Industries, Inc. v. Mor-Flow Industries*,
  883 F.2d 1573 (Fed. Cir. 1989).......................................................................17

*SynQor, Inc v. Vicor Corp.*,
  988 F.3d 1341 (Fed. Cir. 2021).......................................................................3

*Team Worldwide Corp. v. Acad., Ltd.*,
  No. 219CV00092JRGRSP, 2021 WL 1897620 (E.D. Tex. May 3, 2021),
  *order clarified with respect to other issues sub nom.*, 2021 WL 1854302 (E.D.
  Tex. May 10, 2021), *adopted sub nom.* 2021 WL 1985688 (E.D. Tex. May 18,
  2021), 2021 WL 1985688 (E.D. Tex. May 18, 2021) ......................................8

*Trustid, Inc. v. Next Caller Inc.*,
   No. 18-172 (MN), 2021 WL 3015280 (D. Del. July 6, 2021) ...................................................6

*Wonderland NurseryGoods Co., Ltd. v. Thorley Indus., LLC*,
   Case No. 12-CV-196, 2014 WL 241751 (W.D. Pa. Jan. 22, 2014)...................................11, 14

*XY, LLC v. Trans Ova Genetics*,
   890 F.3d 1282 (Fed. Cir. 2018).............................................................................................4

*Zygo Corp. v. Wyko Corp.*,
   79 F.3d 1563 (Fed. Cir. 1996)..............................................................................................17

**Rules**

Rule 403 ...............................................................................................................................1, 8, 9, 15

**Other Authorities**

Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982)...................................................3, 4

## I.   OPPOSITION TO MOTION *IN LIMINE* NO. 1 TO EXCLUDE REFERENCES TO *INTER PARTES* REVIEW PROCEEDINGS

Microchip seeks to relitigate issues that have been conclusively determined by the Patent Trial and Appeal Board (PTAB) and the Federal Circuit.  The doctrine of collateral estoppel, as recognized by the Federal Circuit, dooms that effort.  During Inter Partes Review (IPR) proceedings, the PTAB found that the Dickens prior art reference discloses each and every element of most of the claims of the Asserted Patents.  The Federal Circuit affirmed that decision on appeal.  The doctrine of collateral estoppel means that whether Dickens in fact discloses those elements has been decided and that Microchip cannot relitigate those issues in this Court.  But that is exactly what Microchip seeks to do by moving to exclude all reference to the IPRs *or their outcomes* at trial.  Microchip observes that the standard of proof that applies in PTAB proceedings is different from the standard of proof that applies in district court litigation, but a patent claim once invalidated is invalid for all purposes, and the application of collateral estoppel (which Microchip fails to address) does not turn on the standard of proof that was applied in the prior proceeding so long as there was a full and fair opportunity to litigate the issue.

The IPR proceedings and outcome are also relevant to willful infringement.  Aptiv will rely on the IPR proceedings (and results) as part of its evidence that Aptiv believed in good faith that the Asserted Patents are invalid.  The PTAB concluded that the inventive aspect of the claims was present in the prior art.  The remaining limitations that it found not present are standard, widely known USB features.  The usual Rule 403 dangers are not present here because there is a final judgment of invalidity and thus no risk of juror confusion regarding different standards of proof, as is the case when the jury is tasked with making the same determination that that the PTAB previously made in a non-final and/or non-binding fashion.  Finally, the PTAB record (including statements made by Microchip, which are party admissions) is relevant

to help the jury understand what Microchip claimed its invention to be, and the purported novelty of that invention over the prior art.  Aptiv thus respectfully requests that the Court deny Microchip's motion with respect to the IPRs for the Asserted Patents.[1]

### A.    Microchip is collaterally estopped from arguing that Dickens does not disclose the elements of invalidated claims.

For most of the claims in the Asserted Patents, the PTAB determined that Dickens discloses every element of the claims and invalidated those claims on that basis.  That determination was affirmed on appeal.  The surviving claims incorporate many of those same elements.  Asserted claims 6, 10, and 22 of the '243 Patent and claim 6 of the '708 Patent each depend from claims anticipated by Dickens (and therefore incorporate all the elements of those invalid claims).  The sole asserted independent claim—claim 23 of the '243 Patent—differs from claim 1 (invalidated by Dickens) with respect to only one material limitation.[2]  The remaining asserted claims (24-25 of the '243 Patent) depend from claim 23.

Microchip moves to exclude reference to the IPRs on the basis that the jury may "*incorrectly* infer that [its] invalidity inquiry should be limited to particular claim elements the PTAB determined to be missing from the prior art in the IPR proceedings" (Mot. at 4) or "*incorrectly* conclude that the PTAB's findings for non-asserted independent claims have bearing on the validity of the remaining dependent claims" (*id.* at 5).  But those inferences are entirely correct, and Microchip is estopped from contending otherwise.  Collateral estoppel applies if "(1) the issue is identical to one decided in the first action; (2) the issue was actually

---

[1] Aptiv does not seek to reference at trial the IPR for the dismissed '191 Patent.

[2] Ex. 1, IPR2017-00864, Paper No. 59 ("'243 Patent IPR Final Written Decision") at 62 ("[T]he Petition did not present any arguments specific to the substantive differences between claim 23 and claim 1 [anticipated by Dickens]—namely that the function block need be operable to be 'simultaneously configured by two or more hosts.'").

litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action." *SynQor, Inc v. Vicor Corp.*, 988 F.3d 1341, 1353 (Fed. Cir. 2021). Each part of the test is met here. Whether each claim element is present in Dickens is the identical issue; that issue was actually litigated; the resolution of that issue was essential to conclude that the claims were invalid; and Microchip had a full and fair opportunity to litigate that issue in the PTAB (and on appeal). Microchip is thus estopped from relitigating those issues here.

Microchip observes that the asserted claims are not identical to the invalidated claims because they add additional requirements, but that is not the correct legal test for the application of collateral estoppel, which applies to issues, not claims. *SynQor*, 988 F.3d at 1353. Therefore, "[Federal Circuit] precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the ***issues*** that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). This is a straight-forward application of issue preclusion: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, ***whether on the same or a different claim***." Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982) (emphases added).

Here, the PTAB determined that each element of the invalidated claims is present in the prior art. Anticipation is a question of fact—specifically, a factual determination that all the elements of a claim are disclosed by a single prior art reference. *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013); *Schering Corp. v. Geneva Pharms*., 339 F.3d 1373, 1377 (Fed. Cir. 2003) ("A patent is invalid for anticipation if a single prior art reference discloses each and every limitation

of the claimed invention.").  In invalidating certain claims, the PTAB made a factual finding that Dickens discloses every element of them—a finding that was a necessary prerequisite to the ultimate conclusion of invalidity.  *See* Restatement (Second) of Judgments § 27 ("The appropriate question, then, [for determining the preclusive effect of a litigated issue] is whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment.").  And, in doing so, the PTAB applied claim constructions that are substantially congruent to the Court's constructions here; any minor variations in wording do not change the conclusion that the elements are disclosed by Dickens.[3]

Microchip also asserts—without support—that the "analyses and conclusions" of the PTAB are irrelevant for trial because of the difference in standards applied by the PTAB and the district court.[4]  Mot. at 1.  The law is otherwise.  "[A]n affirmance of an invalidity finding, ***whether from a district court or the Board***, has a collateral estoppel effect on all pending or co-pending actions."  *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (emphases added).  The difference in standards does not matter: "there is no basis for distinguishing between the effects of a final, affirmed court decision determining invalidity and a final, affirmed PTO decision determining invalidity on a pending litigation."  *Fresenius USA,*

---

[3] Microchip argues that the Court's constructions differ from the PTAB's with respect to two claim terms—"dedicated USB connection" and "USB device block."  Mot. at 2.  In each case, Microchip argues that the Court's construction is ***broader*** than the PTAB's construction.  *Id.* (the Court did not include in its construction certain words the PTAB used).  Even assuming *arguendo* that is true, this is not a difference that matters for collateral estoppel:  if an element is present in the prior art under the PTAB's narrower construction, it is necessarily present in the prior art under this Court's broader construction.

[4] Microchip also asserts that the IPRs are irrelevant because they addressed invalidity grounds that Aptiv is estopped from raising at trial.  Mot. at 1.  That does not follow.  Aptiv is estopped from arguing that any additional element in the surviving claims is met by written prior art (such as Dickens), and Aptiv does not intend to make any such argument.  Instead, Aptiv will show that those additional elements are present in system prior art that could not be raised in the IPRs.

*Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013) (rejecting an argument against estoppel based on different standards of proof).[5]  This rule exists for good reason: "Under [Microchip's] different standards theory, the cancellation of claims by the PTO could never affect district court litigation, contrary to [the PTO's delegated authority to do so]." *Id.*  An invalid claim is invalid, period.

Unsurprisingly, then, the case law cited by Microchip (Mot. at 3-4) does not apply to a final determination that certain claims are invalid. *Pacific Biosciences*,[6] *Siemens Mobility*,[7] *Integra*,[8] *D&M Holdings*,[9] *ART+COM*,[10] and *Interdigital Communications*[11] address IPR proceedings where there was no final judgment of invalidity that had been affirmed on appeal and gave rise to collateral estoppel.  *See Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 20-CV-

---

[5] Although *Fresenius* determined the PTO's affirmed decision was binding under the PTO's delegated authority, rather than collateral estoppel, the Federal Circuit's later opinion in *XY* makes clear that collateral estoppel also applies.

[6] *Pac. Biosciences of California, Inc. v. Oxford Nanopore Techs., Inc.*, No. CV 17-1353-LPS-CJB (D. Del.), D.I. 476 at 10 (identifying patents asserted at trial), D.I. 190 (IPRs on asserted patents all withdrawn or denied on institution).

[7] *Siemens Mobility Inc. v. Westinghouse Air Brake Techs. Corp.*, No. CV 16-284-LPS (D. Del.), D.I. 442 (identifying patents asserted at trial).  For the eight patents asserted at trial, institution of IPR was denied on four (IPR2017-01270, IPR2017-00584, IPR2017-00650, and IPR2017-00582), IPR was dismissed on one (IPR2017-02104), and the PTAB upheld the claims in two (IPR2017-01263 and IPR2017-00580).  The only IPR that resulted in a finding of invalidity had not been affirmed on appeal at the time of trial (IPR2017-01669).

[8] *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, No. CV 15-819-LPS-CJB (D. Del.), D.I. 749 (identifying patents asserted at trial).  Only one of the asserted patents was subject to an IPR (IPR2016-01836), and that resulted in a finding of invalidity that had not been affirmed on appeal at the time of trial.

[9] *D&M Holdings Inc. v. Sonos, Inc.*, No. CV 16-141-RGA (D. Del.), D.I. 301-1 at 285-86 (one IPR was denied institution and the other was pending before the PTAB at the time of trial).

[10] *ART+COM Innovationpool GmbH v. Google Inc.*, No. CV 1:14-217-TBD, 2016 WL 11531119, at *2 (D. Del. May 16, 2016) (IPRs not instituted).

[11] *Interdigital Commc'ns Inc. v. Nokia Corp.*, No. CV 13-10-RGA, 2014 WL 8104167, at *1 (D. Del. Sept. 19, 2014) (IPR not instituted); *see also id.*, D.I. 344 (letter informing Court of denial of institution).

01858-EMC, 2020 WL 7227153, at *4 (N.D. Cal. Dec. 8, 2020) (distinguishing case where parties were allowed to relitigate validity in district court while the PTAB's invalidity decision was pending on appeal; that case was not contrary to the Federal Circuit's holding in *XY* because there was no "affirmation of an invalidity finding"); *see also Trustid, Inc. v. Next Caller Inc.*, No. 18-172 (MN), 2021 WL 3015280, at *3 (D. Del. July 6, 2021) ("Federal Circuit case law suggests that an IPR decision does not have preclusive effect ***until*** that decision is either affirmed or the parties waive their appeal rights."). (Emphasis added).

Microchip seeks to evade the application of collateral estoppel by seeking to relitigate whether Dickens discloses the very elements the PTAB (and Federal Circuit) conclusively determined are present.[12]  For example, Microchip's invalidity expert asserts that Dickens fails to disclose the following claim elements:

- "concurrent respective dedicated USB connections between the USB device block and the first and second upstream ports" (Ex. 2 at 29 (heading i));

- "a multi-host device controller coupling the USB device block to a first host and a second host, wherein the multi-host device controller is configured to establish a first dedicated USB connection between the first host and the USB device block and a second dedicated USB connection between the second host and the USB device block, wherein the first dedicated USB connection and the second dedicated USB connection are concurrent" (*id.* at 32 (heading ii));

- "concurrent respective dedicated USB connections between the USB device block and the plurality of hosts" (*id.* at 34 (heading iii));

- "establishing concurrent respective dedicated USB connections between a shared USB device and a plurality of hosts, wherein the USB device corresponds to at least one function" (*id.* at 34 (heading iv));

The PTAB has already determined that those elements are disclosed by Dickens and Microchip

---

[12] This intention is further evident from Microchip's competing jury instruction on invalidity. *See* D.I. 329 at 32-34 (5.1 Invalidity Generally).

is estopped from revisiting those conclusions.[13]

### B.      The IPRs are probative of Aptiv's good-faith belief of invalidity.

Microchip asserts that Aptiv willfully infringed the Asserted Patents.  Willfulness, by definition, requires assessing the accused infringer's mental state.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016) ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct.").  And an accused infringer may show that it acted in good faith because it believed the patents to be invalid.  *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (district court erred in excluding evidence of regarding validity "without also determining whether it was relevant to [the defendant's] state of mind at the time of accused infringement").

Willfulness is an issue for the jury.  *Id.*  "[U]nder *Halo*, the district court no longer determines as a threshold matter whether the accused infringer's defenses are objectively reasonable."  *Id.*  In *Exmark*, the Federal Circuit found the district court erred by excluding prior art in a willfulness trial based on the court's own determination that the defendant's "litigation defenses were unreasonable."  *Id.*  The case was remanded to the district court to reconsider its decision to exclude by determining "whether [the defendant] had developed any views about the prior art at the time of accused infringement or whether the evidence only relates to [the defendant's] litigation-inspired defenses."  *Id.*  "A reasonable jury could find that [a defendant]

---

[13] At the same time, Microchip attempts to take advantage of the fact that certain prior art was before the Patent Office during the IPRs, and that some claims survived.  *See* D.I. 329 at 32 (seeking an instruction stating, "This burden [on Aptiv of proving invalidity] may be more difficult to meet when the accused infringer attempts to rely on prior art that has been before the Patent Office during examination of the [asserted patents].");  Microchip's Third Suppl. Resp. and Objections to Aptiv's First Set of Interrogatories (1-13), First Suppl. Resp. to Interrogatory No. 8 (Aug. 16, 2019) (asserting the fact that Aptiv "unsuccessfully challenged the validity of various claims of the Patents-in-suit through petitions for *inter partes* review" as evidence of willfulness).

did not willfully infringe [an asserted patent] because of the [defendant's] alleged good-faith belief in the [asserted patent's] invalidity. Whether the [defendant] actually h[e]ld a good-faith belief in the [asserted patent's] invalidity is a matter for the fact finders to decide." *Team Worldwide Corp. v. Acad., Ltd.*, No. 219CV00092JRGRSP, 2021 WL 1897620, at \*5 (E.D. Tex. May 3, 2021), *order clarified with respect to other issues sub nom.*, 2021 WL 1854302 (E.D. Tex. May 10, 2021), *adopted sub nom.* 2021 WL 1985688 (E.D. Tex. May 18, 2021), *and report and recommendation adopted*, 2021 WL 1985688 (E.D. Tex. May 18, 2021).

The IPRs Aptiv filed on the Asserted Patents—including their results—support Aptiv's claim that it did not believe the remaining claims to be valid.   In the IPRs, the PTAB found "a capability to arbitrate among multiple host requests" to be ***the "point of novelty"*** of the purported inventions.  Ex. 1 at 28 ("adding such a feature is at the heart of the purported invention" of the '243 Patent); *see also* Ex. 3 at 24 ("that is the very essence of the invention" of the '708 Patent).  The PTAB also found this feature disclosed by Dickens.  Ex. 1 at 56 ("Like multi-host controller 106 in the '243 patent, Dickens controller 140 switches (arbitrates or alternates) data transmissions to/from different hosts in accordance with a desired algorithm."); Ex. 3 at 48 (same for '708 Patent).  In other words, the core inventive feature of the Asserted Patents was not inventive at all.  Aptiv will show that it had a good faith (and indeed correct) view that, even if the incremental elements in the asserted claims were not present in Dickens, they are widely known in the prior art and cannot salvage the validity of those claims.

Nor do the IPRs present significant danger of unfair prejudice, confusion, or wasting time under Fed. R. Evid. 403.  Mot. at 5.  First, Microchip's theory for unfair prejudice appears to be based on its argument that Dickens does *not* disclose the elements of the invalidated claims.  *See id*. at 4-5.  As explained above, that argument is precluded by collateral estoppel.  Second, there

is no risk of confusion because the PTAB's findings have a collateral estoppel effect irrespective of any differences in burden of proof between the PTAB and district court.  This case does not present the concerns that arise when a jury could be confused by the relevance of non-final or non-dispositive proceedings.  *Cf. Integra*, 2018 WL 2186677, at *1 (finding an IPR relevant to a defense to willful infringement but excluding it under Rule 403 where the PTAB's finding was pending on appeal (*see infra* fn. [8])).

## II.   OPPOSITION TO MOTION *IN LIMINE* NO. 2 TO EXCLUDE TECHNICAL EXPERT OPINIONS

In its second Motion *in Limine*, Microchip seeks two distinct rulings related to the testimony of Aptiv's technical expert, Mr. Garney.  First, Microchip asks that the Court preclude any testimony regarding previously undisclosed testing of the prior art Belkin and US-98 devices.  Microchip's concern appears to be that Mr. Garney may have performed additional testing of other, undisclosed versions of these two prior art devices.  This fear is unfounded and Mr. Garney will not present evidence regarding the testing of any devices other than those previously disclosed and addressed in his expert reports and during his deposition.  As to the duplicate Belkin and US-98 switches purchased by Aptiv and disclosed to Microchip, Mr. Garney may testify as to his physical inspection of those devices (as he did at his deposition) but will not offer any testimony or opinions regarding the testing of those devices.

Microchip's second request is that the Court preclude Mr. Garney from referencing or relying on language from the Court's claim construction memorandum opinion.  Microchip's concerns are once again unfounded, as Mr. Garney will not testify about the Court's claim construction memorandum opinion (other than to apply the constructions the Court determined in that ruling).  While the experts for both sides should be permitted to opine on their understanding of the claims as a person of ordinary skill in the art—including opinions consistent with the

reasoning in the claim construction order—they should not reference or rely on language from the Court's opinions in doing so.[14]

## III.   OPPOSITION TO MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE OF APTIV'S PATENTS

Microchip seeks to exclude introduction of, or any reference to, patents that Aptiv obtained in connection with its development of the accused products. Aptiv's patents are relevant to damages, willfulness, and enablement. Microchip does not address any of these bases for relevance,[15] and instead attacks a strawman, arguing that Aptiv's patents are not a defense to infringement. Mot. at 9-11. Aptiv will not argue at trial that its patents are a defense to infringement, and it has already agreed to a curative instruction (which Microchip itself initially proposed) to avoid any risk of jury confusion on that point.

Aptiv has been awarded five patents in connection with its development of the accused products.[16] These patents are all titled "Flexible Mobile Device Connectivity to Automotive Systems With USB Hub" and some explicitly issued over the Asserted Patents and their applications. *See, e.g.*, Ex. 5 ('420 Patent) at References (citing the '243 and '708 Patents). In

---

[14] To the extent that Microchip also seeks to preclude Mr. Garney from offering opinions based on his understanding of the Court's claim constructions, this is improper. Technical experts are permitted to opine on how the claim language should be applied to the factual issues of infringement and invalidity so long as those opinions do not contradict the Court's constructions. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, No. 09-290, 2012 WL 5451495, at *2 (W.D. Penn. Nov. 7, 2012) ("[I]t is entirely within the limits of the Federal Rules for the experts to apply the Court's claim constructions.").

[15] Microchip claims in an unsupported sentence that "Aptiv is not relying on its patents . . . for issues related to damages . . . or willfulness." Mot. at 9. Microchip points to no support for that assertion, which is incorrect.

[16] U.S. Patent Nos. 9,460,037 ("Flexible Mobile Device Connectivity to Automotive Systems with USB Hubs") (Ex. 4); U.S. Patent No. 9,619,420 (Same) (the "'420 Patent") (Ex. 5); U.S. Patent No. 9,645,962 (Same); U.S. Patent No. 10,545,899 (Same); and U.S. Patent No. 11,176,072 (Same).

other words, the Patent Office concluded that Aptiv's hub technology represented at least an incremental advance over the patents in suit. At trial, Mr. Robert Voto, a named inventor on these patents, will provide testimony about Aptiv's development of the Boston 2 chip, the innovations that Aptiv made, and the patents it secured in recognition of those innovations.

*First*, Aptiv's patents are highly relevant to damages because they provide evidence of Aptiv's own contributions to the accused products, as opposed to any contributions provided by the Asserted Patents. Courts in this circuit have admitted evidence of a defendant's own patents for this very purpose. *See, e.g.*, *Wonderland NurseryGoods Co., Ltd. v. Thorley Indus., LLC*, Case No. 12-CV-196, 2014 WL 241751, at *2 (W.D. Pa. Jan. 22, 2014) (finding defendant's patents are "relevant to 'improvements added by the infringer'"). Aptiv's patents are also relevant to disputing a theory put forward by Microchip's damages expert: that any cost savings Aptiv achieved are attributable to the Asserted Patents. Aptiv's patents are contemporaneous evidence that the cost savings are attributable to integration onto a single integrated chip, not the Asserted Patents. '420 Patent at 7:11-17 (describing an alternative embodiment in which the USB routing logic, USB Bridge, and USB Hub are integrated into a single integrated circuit, which "has cost and size advantages over building it with discrete components connected together on a printed circuit board").

*Second*, because Aptiv patents issued over the Asserted Patents, they are evidence that Aptiv made an inventive improvement over what was disclosed in the Asserted Patents. This is relevant to enablement because it tends to show that, if Aptiv infringes, the Asserted Patents do not enable the full scope of the claims. To be sure, a patent disclosure does not need to teach how to make every potential embodiment in order to be enabling, but the lack of such a disclosure is nevertheless relevant to whether the patent has taught persons of skill in the art how

to practice the full scope of the patent claim.  *See, e.g. Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, Case No. 9-CV-290, 2012 WL 5416440, at *2 (W.D. Pa. Nov. 2, 2012) (denying motion *in limine* to exclude defendant's patents because of their relevance to, *inter alia*, "a lack of written description and enablement [of the Asserted Patents], and miscalculation of alleged damages").

**Third**, Aptiv's patents are relevant to willfulness because they provide evidence that Aptiv "reasonably believed its actions were protected as within its own patentably distinct claims."  *See King Instrument Corp. v. Otari Corp*, 767 F.2d 853, 867 (Fed. Cir. 1985), (abrogated on other grounds).  In *King*, the Federal Circuit acknowledged that a defendant's own patents can be relevant to showing whether the defendant "reasonably felt that its activities fell within its own claims which may be patentably distinct," where the defendant's patents "cited the [Asserted Patent] as prior art."  *Id.*  The same is true here:  Aptiv secured patents that issued over the Asserted Patents, and thus contributed to Aptiv's reasonable belief that it, not Microchip, had made the relevant innovations.

Microchip's only basis to exclude Aptiv's patents is that their introduction would "risk confusing the issues, misleading the jury, and wasting time."  Mot. at 9.  None of these bases has merit, and even if they did, the proper remedy is a curative instruction, which Microchip itself originally proposed.

**First,** there is no reason to believe the presentation of this evidence will take a significant amount of time at trial; that presentation will consist primarily of (1) Mr. Voto testifying that he and Aptiv applied for and received patents in connection with the development of the Dual Role Hub; and (2) Aptiv cross examining Microchip's damages and invalidity experts on discrete issues.

*Second*, Microchip's concerns that Aptiv will "suggest or infer to the lay jury that Aptiv does not infringe or should not incur liability because it possesses patents related to the asserted patents" are unfounded. Aptiv does not contend that a defendant's own patents provide a defense to infringement (the sole proposition for which Microchip cites case law in its motion). Indeed, Aptiv's expert, Mr. John Garney, made clear in his report that "just because Aptiv obtained its own patents over the Microchip patents, that, by itself does not disprove infringement of the Asserted Patents." Mot. at 10 (quoting Mr. Garney's expert report). Although Mr. Garney goes on to say (in his report) that the fact that Aptiv's patents issued over the Asserted Patents "indicates to [him] that the Aptiv solution differs from what Microchip presented," *id.*, Mr. Garney will not contend at trial that the patents mean that Aptiv does not infringe.

*Third*, Microchip's motion is irreconcilable with its apparent plans to raise other, unasserted Microchip patents at trial. Microchip recently served a reply expert report from its damages expert criticizing Aptiv's damages expert's updated calculation of damages based on recent financial data.[17] One of his new criticisms is based on his assertion that certain Microchip products are covered by Microchip's "Flexconnect" patents (not asserted in this case), and claims that Mr. Chase compared the costs of "two different patented products". Aptiv does not intend to challenge Microchip's introduction of these other patents, but that latitude should be applied in an even-handed fashion.

*Finally*, the proper method to address any lingering confusion is by properly instructing

---

[17] In an effort to avoid burdening the Court with additional motions, Aptiv agreed not to move to strike Dr. Becker's new opinions as long as Microchip agreed to make Mr. Becker available for deposition in advance of trial, which it has agreed to do.

the jury on this issue.  *See Carnegie Mellon*, 2012 WL 5416440, at *2 ("any danger of unfair

prejudice or confusion to the jury can be avoided by giving a limiting instruction to the jury");

*Wonderland NurseryGoods*, 2014 WL 241751, at *3 (same); *see also Schwendimann v.*

*Arkwright Advanced Coating, Inc.*, case no. 11-CV-820 (JRT/HB), 2017 WL 4277142, at *2 (D.

Minn. Sept. 25, 2017) (allowing defendant's patents to be admitted for issues other than non-

infringement, and finding "any prejudice that may result from the introduction" of those patents

can be addressed by a limiting instruction that the existence of those patents "does not constitute

a defense to infringement" of the asserted patents).  Indeed, Microchip itself proposed such an

instruction, and the parties have agreed to the following instruction (in the event Aptiv's Patents

are raised to the jury at trial):

> You have heard evidence that both sides own other patents relating
> to the USB technology at issue. As I stated earlier, there are only
> two patents at issue in this case: the '243 and '708 Patents.
> Ownership of a patent is not a defense to patent infringement, nor
> is ownership of other patents evidence of infringement. Aptiv does
> not contend that any of its patents have any bearing on whether it
> infringes the patents at issue in this case. Instead, for purposes of
> infringement, you must only consider the claims of the '243 and
> '708 Patents.

D.I. 329 at Instruction 4.1 ("Infringement Generally").  This proposed instruction goes far

beyond the one contemplated by *Schwendimann* or the case law Microchip cites (standing for the

proposition that a defendant's own patents do not constitute a defense to infringement) by

making clear that Aptiv does not assert its own patents "***have any bearing on whether it***

***infringes the patents at issue in this case***."

*          *          *

Aptiv's patents are relevant to several issues in the case, and the proposed jury instruction

does more than enough to alleviate any concerns about confusion.  Forcing Aptiv to defend

against claims for damages and willfulness without being able to point to the highly relevant fact

14

that it received patents in connection with its development of the accused product would turn

Rule 403 on its head by excluding evidence with probative value that substantially outweighs

any danger of confusion.

## IV. OPPOSITION TO MOTION *IN LIMINE* NO. 4 REGARDING THE MOLEX NON-INFRINGING ALTERNATIVE

Microchip claims that but for Aptiv's alleged infringement, 100 percent of Aptiv's sales

would have gone to Microchip once Microchip's Sandia chip was available.  Microchip's Motion

*in Limine* No. 4 seeks to exclude evidence that third-party Molex also had a solution on the

market for CarPlay that is not accused of infringement and that would have been an alternative

for customers ("the Molex alternative").  In other words, if the Aptiv solution were not available,

Aptiv's customers could have done what one of its customers, Ford, actually did:  use the Molex

alternative instead of Microchip Sandia chips.  And there is no evidence that the Molex

alternative infringes the '243 or '708 Patents—an issue for which *Microchip*, not Aptiv, bears the

burden of proof.  Microchip's damages expert, Dr. Stephen Becker, opines that Microchip would

have converted 100 percent of Aptiv's sales, but fails to account for the Molex alternative.  Aptiv

should be able to cross-examine him on that point, and present evidence through documents, fact

witnesses, and its expert, Michael Chase, to explain how this solution affects the lost-profits

analysis.

To recover lost profits, the patentee "must show a reasonable probability that, 'but for'

the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp.*

*v. Kelley Co*., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).  "The four-factor *Panduit* test

requires the patentee to show: (1) demand for the patented product; (2) ***an absence of***

***acceptable, noninfringing substitutes***; (3) manufacturing and marketing capability to exploit the

demand; and (4) the amount of profit that would have been made." *Presidio Components, Inc. v.*

*Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)) (emphasis added).  "A showing under *Panduit* permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales." *Rite-Hite*, 56 F.3d at 1545 (citation omitted).  Lost profits "under *Panduit* are not easy to prove" and showing an absence of non-infringing alternatives "often proves the most difficult obstacle for patent holders."  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285-86 (Fed. Cir. 2017).  A patentee can, in certain circumstances, satisfy its initial burden by "inference" when there is a two-supplier market (i.e. the patentee and the infringer).  *See Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, at 1349.  In such cases, the defendant "bears the burden to overcome the inference of non-availability" for its proposed non-infringing alternatives.  *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 118 (D. Del. 2016).

Microchip thus bears the burden of proving that there were no non-infringing alternatives for those sales for which it is claiming lost profits (which is 100 percent of Aptiv's sales).  Here, the availability of the Molex alternative means that there was not a two-supplier market, and thus Microchip cannot rely on an inference that it would have made all of Aptiv's sales.  At least one of the major U.S. car makers, Ford, awarded its 2019 model year business to Molex (rather than opting for an Aptiv Dual Role Hub or a Microchip-enabled USB hub).  Mot. at 12, citing Chase Rebuttal Report ¶ 104 (citing record documents and conversations with Aptiv employees).  As Mr. Chase notes "[t]he actual selection of Molex by Ford shows the Molex solution was an acceptable and available alternative for Ford."  Chase Rebuttal Report ¶ 105.

Rather than pursue a lost profits calculation that accounts for the Molex alternative's

availability,[18] Microchip tries to flip the burden by claiming that Aptiv must "rebut a lost profits claim by presenting evidence of available non-infringing substitutes." Mot. at 11. But that is only true where the patentee has satisfied its initial burden "to show a reasonable probability that he would have made the asserted sales 'but for' the infringement." *Grain Processing*, 185 F.3d at 1349 (citation omitted). This includes showing that there are no non-infringing alternatives. *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996) (noting that patentee "bore the burden of proof" to show that a device was not an acceptable non-infringing alternative). Because Microchip has not accounted for the Molex alternative, Microchip has not met its "initial burden" of proving that it is entitled to lost profits damages.

Both cases Microchip relies on, *Grain Processing* and *EMC*, arose in the context of a two-supplier market (i.e. the patentee and the defendant). In those cases, the defendant argued the existence of a hypothetical (but not actually on the market) non-infringing alternative was a defense to lost profits. As the court in *EMC* explained, because the defendant "does not dispute that its posited non-infringing alternatives were not on the market during the time period of alleged infringement," the defendant "bears the burden to overcome the inference of non-availability." 154 F. Supp. 3d at 118 (citation omitted). Here, however, the Molex alternative **was** on the market, and its availability and acceptability is shown by the fact that Ford awarded its 2019 model year sales to Molex. Aptiv has no "inference of non-availability" to overcome because Microchip has failed to meet its initial burden to demonstrate the absence of non-infringing alternatives. *See Zygo*, 79 F.3d at 1571.

Microchip complains that Aptiv's technical expert, John Garney, did not provide an

---

[18] For example by conducting a market-share analysis like the one condoned by the Federal Circuit in *State Industries, Inc. v. Mor-Flow Industries*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).

opinion about how the Molex solution works, Mot. at 11, and that Mr. Chase did not know details about how the Molex solution worked, *id.* at 12-13.  But neither Aptiv nor its experts had the burden to do so.  It is sufficient, for Aptiv's purposes, to present evidence that the Molex solution was actually on the market and was selected by Ford during the damages period (i.e. in 2016 for model year 2019 vehicles).  Because the Molex alternative was empirically available (on the market) and acceptable (selected by Ford), the only way for Microchip to meet its initial burden (to show an absence of acceptable non-infringing alternatives) is to show the Molex alternative infringed the Asserted Patents.  *See Schwendimann*, 2018 WL 3621206, at *5, *aff'd*, 959 F.3d 1065 (Fed. Cir. 2020) (finding that the patentee failed to show the absence of acceptable non-infringing alternatives where a third party offered at least two products that competed with the patented product and the patentee had failed to introduce evidence that this competing product also infringed); *Protegrity Corp. v. Voltage Sec., Inc.*, No. 3:10-CV-755 (RNC), 2013 WL 6880597, at *4 (D. Conn. Dec. 31, 2013) (finding that patentee was not entitled to lost profits where its expert conceded that acceptable alternatives existed and patentee failed to present any evidence that the alternatives were infringing; noting that "[t]o satisfy its burden under the *Panduit* test, [patentee] must present evidence that . . . acceptable substitutes infringe the [patent-in-suit].").  Microchip failed to do so here, citing no evidence that the Molex alternative infringes the Asserted Patents.

Evidence about the Molex solution is highly probative of whether Microchip is entitled to lost profits damages.  The argument that this evidence is misleading or confusing is merely an effort to excuse Microchip's failure of proof with respect to the absence of available, acceptable, non-infringing substitutes.  The motion should be denied.

## V.     OPPOSITION TO MOTION *IN LIMINE* NO. 5 REGARDING APTIV'S PRE-SUIT INVESTIGATION

Microchip's Motion *in Limine* No. 5 seeks to preclude Aptiv from introducing any opinions of counsel or conversations between Aptiv and its attorneys. This is a non-issue. As Microchip correctly notes, Aptiv asserted the attorney-client privilege as to communications with its attorneys about the patents in suit and Microchip's infringement allegations. Aptiv will not present at trial an opinion-of-counsel defense and has not waived privilege as to any such communications. Accordingly, Aptiv will not rely at trial on conversations with or the opinions of its attorneys. That does not mean, however, that Aptiv cannot introduce fact witness testimony from a non-attorney as part of its defense to Microchip's allegations of willful infringement.

Following *Halo Elecs.*, 579 U.S. 93 (2016), an accused infringer's subjective beliefs are central to the willfulness inquiry. One way to defend against an allegation of willful infringement is for the accused infringer to show that it reasonably relied on a competent opinion of counsel. But that is not the only way to defend against an allegation of willful infringement. As Justice Breyer recognized in his concurrence in *Halo*, the analysis and beliefs of non-attorneys may also be probative evidence of an accused infringer's good-faith beliefs. *See id.* at 111–12 (explaining that, "without being 'wanton' or 'reckless,' " a scientist, engineer, or technician working for an accused infringer may reasonably decide an accused product does not infringe a patent or that the patent is invalid) (Breyer, J., concurring); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 281 F. Supp. 3d 1087, 1093-95 (D. Nev. 2017) (district court, on remand, declined to enhance damages where accused infringer relied on the opinion of its engineer who "had 30 years of experience in and knowledge of the relevant field").

Rob Voto, Aptiv's Vice President of Engineering, working with another non-attorney

19

Craig Petku, conducted an analysis of '243 and '708 Patents after receiving Microchip's notice letter.  *See* Ex. 6 (Voto Dep. Tr.) at 14:13-15:7, 16:6-15.  At his deposition, Mr. Voto was properly instructed not to divulge the contents of his communications with counsel but was permitted to testify (at length) about his own investigation (without counsel) and bases for his conclusion that Aptiv's Dual Role Hub did not infringe Microchip's patents.  *See id.* at 22:24-29:7.

Mr. Voto's testimony is highly relevant to Aptiv's willfulness defense to show that Aptiv had a good faith belief that the Dual Role Hub does not infringe either the '243 of the '708 Patents, and has held that belief since Microchip identified those patents to Aptiv.  This testimony is thus admissible.  *See Omega Patents v. CalAmp*, 920 F.3d 1337, 1352 (Fed. Cir. 2019) (holding that district court abused its discretion in excluding "clearly relevant" testimony of accused infringer's senior director of business development who would have testified as to whether accused infringer reasonably believed its accused product did not infringe before it launched its product).  Microchip is free to cross-examine Mr. Voto about his relevant expertise and the foundation for his opinions without getting into matters protected by the attorney-client privilege.

OF COUNSEL:

Daralyn J. Durie
Timothy Saulsbury
Eric C. Wiener
Joyce C. Li
DURIE TANGRI LLP
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

W. Henry Huttinger
Andrew T. Jones
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA  90013
(213) 992-4499

Dated: March 15, 2022
10074242

POTTER ANDERSON & CORROON LLP

By: */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Defendant*
*Aptiv Services US, LLC*