# EXHIBIT B

# Opening Expert Report of John Garney

*Microchip Technology, Inc. v. Aptiv Services US, LLC*

**Contains Material Designated Attorneys' Eyes Only**

September 16, 2019

**Table of Contents**

Qualifications and Experience ................................................................................................ 1
Assignment .............................................................................................................................. 5
Summary of Opinions and Conclusions .................................................................................. 6
Relevant Legal Standards ...................................................................................................... 12
Technological Background ................................................................................................... 15
Admitted Prior Art ................................................................................................................ 23
Description of Patents ........................................................................................................... 25
   '191 Patent ......................................................................................................................... 25
   '243 Patent ......................................................................................................................... 31
   '708 Patent ......................................................................................................................... 37
Summary of Prior Art ........................................................................................................... 40
Ineligible Subject Matter – Section 101 ............................................................................... 49
Anticipation and Obviousness – Sections 102 and 103 ....................................................... 50
   '191 Patent ......................................................................................................................... 50
   '243 and '708 Patents ........................................................................................................ 74
Written Description, Enablement, and Indefiniteness – Section 112 ................................... 98
   '191 Patent ......................................................................................................................... 98
   '243 and '708 Patents ........................................................................................................ 99
List of Attachments and Exhibits ........................................................................................ 107
Reservation of Rights .......................................................................................................... 108



The only difference between this diagram and Figure 3-1 in the Prolific Revision 1.1 document is the arrangement of ROM and RAM in the block at the bottom right. This has no relevance to Prolific's teachings with regard to bridging/connecting multiple USB hosts. The version 1.0 document even describes the functionality provided by the Prolific device in identical terms to version 1.1 (the descriptions are the same, verbatim).[441] For these reasons, I conclude that the Datasheet was published roughly contemporaneously with the version 1.0 document cited in the Lin Patent, no later than the February 2003 date it recites. I also conclude based on the nearly identical diagram and entirely identical textual description in the version 1.0 document, published in September 2002, that the latter document describes a device with the same features and capabilities I attribute to Prolific in my analysis above.

**Written Description, Enablement, and Indefiniteness – Section 112**

*'191 Patent*

352. I have not been asked to provide an opinion on the ultimate question of whether the claims of the '191 Patent are invalid under 35 U.S. C. § 112 for failure to provide an adequate written description or for lack of enablement. I have been asked to provide opinions about the patent's disclosures that are relevant to these determinations.

353. I understand that the Court has determined that the claims of the '191 Patent do not cover simultaneous connectivity between any one peripheral device and a plurality of hosts (and that Microchip has requested reconsideration of that determination). Standard USB 1.0 and 2.0

---

[441] *Compare* Prolific Datasheet, at APTIV_00005246 ("1.0 Introduction") *with* Prolific Datasheet, at APTIV_00355501 ("Overview").

Contains Material Designated Attorneys' Eyes Only

communications do not support such simultaneous connectivity of one peripheral device to multiple hosts. Under the standard, there is only one host in any given USB communication session. In my opinion, the specification of the '191 Patent does not identify or show that the inventors possessed any way to accomplish such simultaneous connectivity. There is no teaching in the '191 Patent specification that would allow a POSITA to accomplish simultaneous connectivity between any one peripheral device and a plurality of hosts without undue experimentation.

354. The '191 Patent also expressly teaches only one way to accomplish automatic switching of the connectivity of at least one peripheral device in the system from a first host to a second host when the second host is attached to the system that was not also disclosed in the prior art: detecting voltage supplied by the second host on the VBUS line. If the claims of the patent encompass other means of effecting such switching, the disclosure is indistinguishable from the Wurzburg '293 application. In other words, a POSITA reading the Wurzburg '293 application would have understood that the switching of connectivity between peripherals and the two or more hosts could be accomplished, including automatically, to the same extent taught by the '191 Patent except for the sole addition in the '191 Patent of detection of VBUS. To the extent the claims are interpreted more broadly than automatic switching based on VBUS detection, in my opinion one of two things is true: (a) the Wurzburg '293 application inherently or combined with the knowledge of those of ordinary skill in the art anticipate or render obvious the invention claimed in the '191 Patent (as explained in greater detail above); or (b) the full scope of the switching encompassed by the '191 Patent claims could not be accomplished without undue experimentation.

### '243 and '708 Patents

355. I have not been asked to provide an opinion on the ultimate question of whether the claims of the '243 and '708 Patents are invalid under 35 U.S.C. § 112 for failure to provide an adequate written description or for lack of enablement. I have been asked to provide opinions about the patent's disclosures that are relevant to these determinations.

356. Based on my understanding of how Microchip is interpreting and asserting its claims for purposes of infringement, it is my opinion that if the claims of the '243 and '708 Patents are given that scope, they will be stretched to cover functionality and features that the specification does not identify or show that the inventors possessed, or describe any way to accomplish.

357. Specifically, Microchip's infringement contentions take the position that the claims of the '243 and '708 Patents cover a host-to-host bridge that facilitates communications between two USB hosts (an Apple iPhone and an automobile head unit). The specification of the '243 and '708 Patents describes something different. The specification describes a way for multiple USB hosts to share a single USB device. The specification makes no mention of a host-to-host bridge or any means to facilitate host-to-host, as opposed to host-to-device, communication. Mr. Ghosh was asked to indicate where, if at all, such disclosure existed, and was unable to, either in the specification or the cited references.[442] He also admitted that using host-to-host bridges as a means

---

[442] Ghosh Tr., at 80:21-81:14.

Contains Material Designated Attorneys' Eyes Only

of sharing USB devices was something "that we had not foreseen"[443] and that a host-to-host bridge "is not that part" for sharing a common device between two USB hosts.[444] According to Mr. Ghosh, a system where two hosts can communicate but they cannot share a common USB device is different from what Mr. Ghosh believes was patented.[445] Along the same lines, Mr. Ghosh admitted that the host-to-host bridging that is used in Microchip's identified embodying products is not described in the '243 or '708 patents.[446]

358. All of the devices that are described in the patents as being shared are items such as a printer that would be shared by two PCs.[447] The patents describe that the two hosts can effectively share a single device by maintaining state information in registers, arbitrating between the two hosts, and doing so without having to re-enumerate each time the shared device is switched between one host and the other.[448] Nothing describes or discusses hosts communicating with each other.

359. None of the art disclosed by the inventors, and none of the art cited by the PTO Examiner, relates to host-to-host bridges. If such art had been relevant, I would have expected the inventors or Patent Office to cite it.[449] The fact that the inventors did not disclose any such prior art indicates to me that they (and the patent office) did not believe the claims to be this broad.[450]

360. If the claims are interpreted to reach so broadly, I am aware of other prior art relating to host-to-host bridges in different contexts that, in contrast to the '243 and '708 Patents, does describe and teach how to accomplish such communications. For example:

- U.S. Patent No. 7,162,566 to Lin was filed on June 14, 2004, published on February 10, 2005, and issued on January 9, 2007.[451] It is titled "USB-Based Host-to-host Networking Method," and cites the Prolific "PL-2501 Hi-Speed USB Host to Host Bridge Controller V1.0" product brochure from September 11, 2002 as an OTHER PUBLICATION reference cited by examiner.

- U.S. Patent Application Publication 2006/0206650, published on September 14, 2006 based on a foreign priority application filed on March 10, 2005 is titled "Hub

---

[443] *Id.* at 107:7-24.

[444] *Id.* at 112:12-113:13.

[445] *Id.* at 114:10-22.

[446] *Id.* at 241:6-9.

[447] *Id.* at 80:25-81:14.

[448] *Id.* at 186:3-25:19

[449] Bohm Tr., at 114:7-20, 115:18-25, 117:7-15; Ghosh Tr., at 58:13-59:19, 65:18-23, 83:1-19, 84:5-11, 100:25-101:7, 105:10-106:3.

[450] Bohm Tr., at 114:7-20, 115:18-25, 117:7-15; Ghosh Tr., at 58:13-59:19, 65:18-23, 83:1-19, 84:5-11, 100:25-101:7, 105:10-106:3; *see also* Ghosh Tr., at 241:21-242:13

[451] APTIV_00355507-APTIV_00355527.

Contains Material Designated Attorneys' Eyes Only

With A Host-to-host Transmission Function."[452] The Abstract describes: "For implementing a host-to-host transmission function, a hub comprises an uplink port and a host port for being linked a host respectively, a hub control unit connected to the uplink port, and a bridge connected between the host port and hub control unit for the hosts communicate with each other." In paragraph [005] it identifies as a "drawback of conventional art" allowing "a computer to easily establish a connection with another computer," and describes a solution that includes "a hub with a host-to-host transmission function" that comprises a control unit, uplink port, and "a bridge connected between the host port and hub control unit for the first and second hosts to communicate with each other."[453] The term "bridge" appears repeatedly, including in paragraphs [0016], [0020], [0022], [0024], [0026], and both independent claims (claim 1 and claim 9).[454] This patent was abandoned after the applicant failed to respond to an office action rejecting the claims as anticipated by another patent that the examiner found to teach a "hub with a host-to-host transmission function, comprising," among other things, "a bridge (e.g. component 312) connected between the host port and hub control unit for the first and second hosts to communicate with each other (col. 3 line 20 et seq.)."[455]

361. Craig Petku and Sam Yeda of Aptiv testified at length regarding all of the hardware and firmware that is required in the accused products to allow the iPhone and the head unit to indirectly communicate with one another.[456] The patent office granted Aptiv three patents on its approach: 9,460,037; 9,619,420; and 9,645,962.[457] These patents have 8 columns of disclosure, as well as 8 separate figures showing the architecture. The term "bridge" appears in the drawings and written description over 80 times.

362. No equivalent disclosure of any host-to-host bridging or other communication process is described or taught in the '243 and '708 Patent disclosures. There is no reference to a host-to-host bridge, or that it might be an alternative embodiment to what is actually described in the specification. There is no reference to specialized firmware or hardware that would allow two hosts to communicate with each other via a bridge (or any other mechanism).

363. By contrast, Aptiv's '037 Patent was allowed over the '191 Patent. Aptiv '420 and '962 Patents were allowed over all three Asserted Patents.[458] In my opinion what Aptiv described in its patents and developed in its products differs fundamentally, and the issuance of the patents

---

[452] APTIV_00355528.

[453] APTIV_00355533.

[454] APTIV_00355533-APTIV_00355534.

[455] APTIV_00355535-39; *see also* APTIV_00355503-06 (translation of Taiwan TW591509 2003 application for "USB control circuit and operation method applied in computer-to-computer transmission"); APTIV_00355473-82 (translation of China CN1581141A, applied for in 2003 for "Host-to-host general serial bus bridging method").

[456] Petku Tr., at 144:6-23; Yeda Tr., at 100:13-101:23.

[457] APTIV_00002226; APTIV_00002241; APTIV_00002257.

[458] APTIV_00002226; APTIV_00002242; APTIV_00002258.

101    Contains Material Designated
Attorneys' Eyes Only

Contains Material Designated Attorneys' Eyes Only

owned by Aptiv and the comparative robustness of the corresponding disclosures bolsters my opinion that there is no description or teaching of host-to-host bridging in the '243 and '708 Patents.

364.  Other indications support my opinion that the '243 and '708 Patents do not identify or show that the inventors possessed what Microchip is accusing of infringement, and do not describe or teach those of ordinary skill in the art any way to accomplish the full scope of the claims if the claims are interpreted so broadly as to read on Aptiv's accused products.

365.  **First**, the timing of certain technology supports my opinion. When Microchip filed its patents, the Apple iPhone had not yet been released, and Apple CarPlay would not be developed until many years later.[459] The '243 and '708 Patents make no mention of an iPhone, or having an iPhone and another USB host share a common device, let alone having an iPhone communicate with another USB host. There is no mention of other smartphones, mobile phones, or portable phones either, despite other references—such as Oguma—referring to portable phones in a USB context. This supports my belief that the '243 and '708 Patents are generally directed to PC-based solutions.

366.  **Second**, the '243 and '708 Patents make no mention of functioning in an automotive environment. This is not surprising, because when the applications for these patents were filed, the automotive "infotainment" industry was different. iPhones were not yet announced, and Apple Car Play had not yet been introduced.

367.  **Third**, many of Microchip's emails indicate that Microchip's employees could not conceive of how Aptiv (then Unwired)'s products could work. Such difficulty reinforces my opinion that the disclosure of the '243 and '708 Patents does not describe or teach how to use a host-to-host bridge as a "shared device" in the manner suggested by Microchip's infringement contentions.

368.  In October 2013, there was a summary of sales meetings Microchip had had with several of the automotive companies and Tier 1 companies where the concept "FlexConnect" was introduced to the companies.[460] I understand that FlexConnect was a Microchip solution employing an OTG-type connection between a peripheral device (such as a smartphone), a hub, and a head unit. At those meetings, Microchip surmised that by 2015 the smart phone would be acting "as a USB host device, taking over the car head unit," but Microchip was not sure how this would work:

> Apple is planning a launch in CY2015 of their "Automotive Experience" "Mirror Link" technology. We have no real idea of how this will work, Apple won't say, but it does require that the iPhone become the USB Host and the USB lane presented to the breakout box be "reversed" from Host to a device lane and the

---

[459] Honan, Mathew, *Apple Unveils iPhone* (MacWorld), Jan. 9, 2007, https://www.macworld.com/article/1054769/iphone.html (last visited September 10, 2019).

[460] Microchip_259471.

Contains Material Designated Attorneys' Eyes Only

iPhone will enumerate the Head Unit. Our USB84604 with port reversal capability ("Flex Connect") is a natural solution to this.[461]

At these meetings, both Harman and GM noted a request for functionality that the FlexConnect solution did not provide: "Harman sees the requirement for Flex connect but needs to overcome the restrictions which brings an Apple device to the application =>no additional USB port available."[462] GM immediately followed with the same concern: "Problem: Apple does not allow any USB port on the USB84604 to be functional other than charging if in host mode."[463]

369. Shortly thereafter, a competitor demonstrated a working solution.[464] Microchip decided to "circle the wagons" to figure out next steps.[465] As of January 2014, there were still issues with its initial product: "We are asking firmware to offer the 2nd port in DCP [Dedicated Charging Port] mode, this has not been accomplished—yet—and is not a promised feature. The firmware is not final yet. I know this is a difficult message for customers. We will keep you posted! March is our committed date."[466]

370. In the spring of 2014, Apple released its Car Play specification, and a Microchip employee wondered whether it would "require us to change the firmware or the part [86404] completely."[467] As of April 2014, testing was still ongoing, and firmware was not ready.[468]

371. Microchip learned (via Harman) that Unwired was offering a product with 2 port reversal capability.[469] A Microchip employee speculated: "if it is true that they claim to have AND the head unit sees the other ports, then it may not be a real solution in the long run."[470]

372. Other emails indicate that Microchip, at the time, did not understand the Unwired solution:

> Harman received RFQ from Subaru and GM for head units, however they have a limitation on their processor where it can only support one USB port for the breakout box, thus they cannot support two lanes to the breakout box. However they want to find ways to support Carplay with 1 USB host lane to the breakout box with 2 USB downstream ports (iPhone to be the host on the 1st port of the breakout

---

[461] *Id.* (emphasis added).

[464] Microchip_261616.
[465] Microchip_261615.
[466] Microchip_262287.
[467] Microchip_263909.
[468] Microchip_265482.
[469] Microchip_265670.
[470] Microchip_265672.

Contains Material Designated Attorneys' Eyes Only

box) while the 2nd USB port in the breakout box to still remain access from the head unit. They indicated that Unwired spent 1 hour to present a working solution to them that can enable this function.[471]

\*\*\*

The director of program management of Delphi called and shared some important information to us. He indicated that Delphi has been promoting our Flexconnect solution to some key OEMs like, GM and Chrysler. However, the OEMs have responded back to him that their Carplay with port reversal solution using our FlexConnect cost much higher than their competitor. He specifically mentioned Unwired. From what he was told that the Unwired Carplay silicon solution is around $1.60 range, and Unwired is implementing custom firmware to their version of breakout box. He requested us to find out more information on this and want to work with us to fight against this solution ASAP as they need to respond back to the OEM quickly.[472]

Brigham Steele, who I understand was Microchip's lead engineer for the FlexConnect project, provided the following input on USB capabilities:

Just to be clear, we need to make sure that the message is consistent to Dave from his vendors. Dave likes to look at the big picture, so I love his ideas, but some items may be physically outside the capabilities of ANY USB system, and I think he needs to understand the capabilities of USB and some of the low level details. This is how I would break it down, let me know if you disagree with my analysis or if you have other questions.

1. With USB, you are only allowed 1 Host and multiple devices on a bus. This message is critical, so we need to make sure Dave understands this fact.
2. CarPlay passes the Host role from the HU to the Phone itself.
3. Once the HU has given up the Host role, it will not see any of the other ports. If the iPhone doesn't want to see the other ports, it will ignore them.
   a. In our initial development we would plug in USB speakers and thumb drives into the other Hub ports. The iPhone would display a message that the speakers and thumb drive were not authenticated devices, so it would not support them.
   b. To avoid these annoying messages displayed on the phone, the HU can disable those ports when entering Carplay.
4. If Dave wants to have data capability, he will have to require 2 USB lanes to the Head Unit. We can still do the switching matrix, but it will be to two different Hubs. That way the HU can have data capabilities on all the non CarPlay ports. This is a trade off, more cables with data, or one cable with

---

[471] Microchip_265675.

[472] Microchip_265773.

Contains Material Designated Attorneys' Eyes Only

> dedicated charging ports. He needs to make the decision based on those options.
>
> **We need to emphasize that you cannot do Carplay AND own the other ports with one USB data lane**. Anybody who states this is doing things with the USB Bus that grossly violates the USB protocol and could introduce many errors that would likely impact Carplay execution, and the normal data exchange on the other ports. No bus can serve two masters.[473]
>
> \*\*\*

One Microchip employee asked of Unwired's rumored solution: "How can this be done over one cable along with CarPlay?"[474]

Microchip also stated that the Unwired Solution was of "considerable complexity."[475]

Chrysler selected Delphi/Unwired (now Aptiv's) solution, identifying a main decision point as "need[ing] USB data on all ports even during CarPlay with one USB lane from the Head Unit to the Media Hub."[476] Microchip indicated to Chrysler that it would endeavor "to determine if we can develop a solution that meets your requirements. The keys to moving forward are commitment from upper management to work on this and a capable technical solution."[477]

373. In connection with attempting and assessing how to compete technically with Unwired, Microchip "review[ed] a lot of technical possibilities."[478] One employee observed:

- We looked at developing a solution for 1 upstream lane, persistent USB data and we don't have a solution. We wish we could provide a solution but we don't have it.
- We still believe that our USB84604 solution is the best solution. We think the performance of the system, speed of data through the hub, integrity of data through the hub, compliance to USB, and providing what Apple is really looking for in CarPlay, outweigh the risks associated with a system providing the additional functionality of USB connectivity to the Head Unit during CarPlay.

> We will consider a solution for 1 upstream lane with persistent USB data but do not have a commitment for that now. (We can ask Dave Diovardi here – Is the Unwired solution certified with Apple?) Certification of this system would help make the

---

[473] Microchip_267121-Microchip_267122 (emphasis added).
[474] Microchip_268888.
[475] Microchip_269211.
[476] Microchip_273805.
[477] Microchip_273806.
[478] Microchip_273822.

Contains Material Designated Attorneys' Eyes Only

case to Upper Management to put this solution in the pipeline. Note the time for silicon from authorization to proceed would be about 2 years.[479]

At a meeting several months later, between Microchip and Aptiv, Microchip again admitted that it had been in the dark regarding how to make a similar product.

The emails also reflect that in October 2015 meeting between Aptiv and Microchip, Rob Voto indicated that "Microchip did not have a solution for the single upstream lane that the Big 3 OEMs wanted" and "Mitch acknowledged the at the USB84604 was not adopted by the Big 3. Microchip did not comprehend the need to have data connectivity to the head unit on the non-Carplay ports."[480]

After the meeting, Mitch Obolsky emailed Ganesh Moorthy, providing feedback about the meeting:

Unwired sees themselves as a module maker that was forced to do a chip because no one else would. They showed a willingness to use our chip, especially if it is required by each of the big 3. As I hammered on the costs and risk they were taking, the new General Manager recently moved in from Delphi kept taking a lot of notes and nodding her head. They also mentioned they had been pushing for a while, prior to the Microchip acquisition for lower prices, and later for a chip to support single upstream head unit.

Bottom line we missed it. First Christian, then the Crossover Marketer (Jason Wells), then Don then Jesse. We are on a path to recovery, but will see a significant revenue drop for the next 1-2 years, then should recover if we win Chrysler for MY18, and either Ford or GM for MY19.[481]

Dave Carpenter wrote, in a separate email. "They [Unwired] still do not understand why we view them as a competitor when we did not have a viable solution to single lane carplay. They met with us on numerous occasions before kicking off their ASIC development to be sure they exhausted all alternatives with us. The USB40604 would not meet the requirements for single USB lane carplay and they (and the OEMs) were very clear with us on that."[482]

374. It is my opinion that Unwired came up with a solution fundamentally different and substantially divergent from anything described or taught in the '243 and '708 Patents. To the extent the '243 and '708 Patents are determined to have claims broad enough to cover this type of functionality, in my opinion a person of ordinary skill in the art could not have developed or achieved it without experimentation and technical development significantly beyond anything disclosed in the patents.

---

[479] *Id.* (emphasis added).

[480] Microchip_275146.

Contains Material Designated Attorneys' Eyes Only

375. **Fourth**, the length of time it took Microchip to develop a host-to-host bridge-based solution further supports my opinion that such functionality is sufficiently complex and detailed that experimentation beyond anything taught in the '243 and '708 Patents would have been (and was) needed. Documentation and testimony suggests that Microchip's product development began in approximately mid-December 2014 when a sales employee (Dave Sroka) met with one of the '243/'708 inventors (Mark Bohm), and they started to come up with the idea of a "dual host" concept for a new product.[483] A PowerPoint shows a product schedule, and the initial target for an engineering sample was almost two years later, in the fourth quarter of 2016.[484] Microchip's interrogatory responses indicate that it first had engineering samples in September 2016 and first sold the products in volume in April 2017. Mr. Ghosh testified he believed the development took between one to two years.[485]

376. At an October 2015 meeting between Aptiv and Microchip, Mitch Obolsky of Microchip stated that between January and October 2015, Microchip had made a $3M investment in developing these products, Microchip's USB491x products.

377. The length and cost of this product development also supports my conclusion that use of a host-to-host bridge was not a trivial matter, and that it was not and could not be accomplished based upon any description (from nearly a decade earlier) in the '243 and '708 Patents.

**List of Attachments and Exhibits**

| Exhibit A | Curriculum Vitae |
| --- | --- |
| Exhibit B | List of Prior Testimony |
| Exhibit C | List of Information Considered |

| Exhibit D-1 | '191 Claim Chart based on U.S. Patent No. 6,549,966 to Dickens |
| --- | --- |
| Exhibit D-2 | '191 Claim Chart based on U.K. Patent Application Publication No. GB 2,353,540 filed by Adder |
| Exhibit D-3 | '191 Claim Chart based on U.S. Patent Application No. 20060059293 filed by Wurzburg |
| Exhibit D-4 | '191 Claim Chart based on U.S. Patent No. 6,516,205 to Oguma |
| Exhibit D-5 | '191 Claim Chart based on U.S. Patent No. 5,784,581 to Hannah |
| Exhibit D-6 | '191 Claim Chart based on U.S. Patent No. 7,093,057 to Choi |
| Exhibit D-7 | '191 Claim Chart based on US-98 Auto Share Switch 4x4/Belkin 4x4 USB Peripheral Switch |

| Exhibit E-1 | '243 Claim Chart based on U.S. Patent No. 6,549,966 to Dickens |
| --- | --- |

---

[483] Microchip_274044. The first product brief drafted is at Microchip_274279.

[484] Microchip_276213.

[485] Ghosh Tr., at 131:19-25.

Contains Material Designated Attorneys' Eyes Only

| Exhibit E-2 | '243 Claim Chart based on Japanese Unexamined Patent Application No. P2003-256351 filed by Furukawa |
| Exhibit E-3 | '243 Claim Chart based on Japanese Patent Application Publication No. 2000-194649 filed by Ito |
| Exhibit E-4 | '243 Claim Chart based on US-98 Auto Share Switch 4x4/Belkin 4x4 USB Peripheral Switch |

| Exhibit F-1 | '708 Claim Chart based on U.S. Patent No. 6,549,966 to Dickens |
| Exhibit F-2 | '708 Claim Chart based on Japanese Unexamined Patent Application No. P2003-256351 filed by Furukawa |
| Exhibit F-3 | '708 Claim Chart based on Japanese Patent Application Publication No. 2000-194649 filed by Ito |
| Exhibit F-4 | '708 Claim Chart based on US-98 Auto Share Switch 4x4/Belkin 4x4 USB Peripheral Switch |

**Reservation of Rights**

I may address other issues in later expert reports, if needed, to address additional discovery or additional reports offered by Microchip and/or if directed by the Court. Portions of the above-identified documents may be enlarged, animated, colored or otherwise adapted to illustrate the above-identified opinions.

Executed on September 16, 2019.

/s/ John Garney

John Garney

Contains Material Designated Attorneys' Eyes Only