## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **MICROCHIP TECHNOLOGY INCORPORATED,** | **Case No. 1:17-cv-01194-JDW** |
| *Plaintiff,* | |
| **v.** | |
| **APTIV SERVICES US LLC,** | |
| *Defendant.* | |

# <u>POST-TRIAL JURY INSTRUCTIONS</u>

## TABLE OF CONTENTS

I.    SUMMARY OF THE CASE ................................................................1

II.   PRELIMINARY MATTERS ...........................................................3

    A.  Burden Of Proof ....................................................................3

    B.  Types Of Evidence ................................................................5

    C.  Direct And Circumstantial Evidence ....................................7

    D.  Credibility Of Witnesses ......................................................8

    E.  Number Of Witnesses ..........................................................9

    F.  Opinion Testimony..............................................................10

    G.  Deposition Testimony .........................................................11

    H.  Demonstrative Exhibits ......................................................12

    I.  Use Of Notes ......................................................................13

III.  SUBSTANTIVE CLAIM.................................................................14

    A.  Patent Claims Generally......................................................14

    B.  Construction Of The Claims ...............................................15

    C.  Independent And Dependent Claims ...................................16

IV.  INFRINGEMENT..........................................................................17

    A.  Direct Infringement ...........................................................19~~18~~

    B.  Willful Infringement ..........................................................21~~20~~

V.   INVALIDITY.................................................................................22~~21~~

    A.  Invalidity Generally ...........................................................22~~21~~

    B.  Level Of Ordinary Skill .....................................................24~~23~~

    C.  Obviousness .......................................................................25~~24~~

1. Obviousness—scope and content of the prior art.........................282827

2. Obviousness—differences between the claimed invention and prior art.................................................................................................292928

3. Obviousness—level of ordinary skill .........................................313130

4. Obviousness—objective evidence of nonobviousness .............323231

   D.  Written Description.................................................................343433

   E.  Enablement..............................................................................363635

VI.  DAMAGES ........................................................................................383837

   A.  Date Damages Begin ...............................................................404039

   B.  Lost Profits ..............................................................................414140

1. Lost profits—demand ...............................................................434342

2. Lost profits—acceptable non-infringing substitutes ..................464643

3. Lost profits—capacity ..............................................................484845

4. Lost profits—amount of profit .................................................494946

   C.  Reasonable Royalty.................................................................505047

1. Reasonable royalty—factors......................................................525248

2. Reasonably royalty—timing......................................................555551

3. Reasonable royalty—apportionment .........................................565652

VII. DUTIES AS A JUROR ........................................................................575753

## I.    SUMMARY OF THE CASE

As I have previously told you, the plaintiff in this case is Microchip Technology Incorporated. The defendant in this case is Aptiv Services US, LLC and was formerly known as Delphi Automotive Systems, LLC. In 2014, Delphi purchased Unwired Technology, LLC which initially developed the USB hub product accused of infringement in this case.

There is one patent at issue in this case: United States Patent No. 7,523,243. You have heard the lawyers and witnesses in this case refer to that patent as the '243 Patent. You have a copy of the '243 Patent in your juror notebook.

Microchip contends that Aptiv directly infringes the '243 Patent and  that it is entitled to damages related to the '243 as a result. Aptiv denies that it infringes the '243 Patent and contends that the Patent is invalid. Aptiv also denies that Microchip is entitled to recover any damages.

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations:

1.    Whether Microchip has proven by a preponderance of the evidence that Aptiv infringed one or more asserted claims of the '243 Patent;

2.    If you decide that Microchip has proven that Aptiv infringed one or more claims of the '243 Patent, whether Microchip has proven by a preponderance of the evidence that infringement was willful;

3.      Whether Aptiv has proven by clear and convincing evidence that one or more of the asserted claims of the '243 Patent is invalid;

4.      If you decide that Microchip has proven that Aptiv infringed a valid claim, you will decide the money damages to be awarded to compensate Microchip for that infringement. Microchip has the burden to establish the amount of its damages by a preponderance of the evidence.

I will provide more detailed instructions on these issues shortly.

## II.   PRELIMINARY MATTERS

### A.   Burden Of Proof

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof."  In a patent case such as this, there are two different burdens of proof that are used.  The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

As you have heard, Microchip contends that Aptiv infringes the '243 Patent. Microchip also contends that it is entitled to damages as a result of that infringement. A party asserting patent infringement has the burden of proving infringement by a preponderance of the evidence.  A preponderance of the evidence is evidence that, when considered in light of all of the facts, leads you to believe that what that party claims is more likely true than not.  To put it differently, if you were to put the parties' evidence on opposite sides of a scale, the evidence supporting Microchip's infringement claims must make the scales tip somewhat toward its side.  If the scale should remain equal or tip in favor of Aptiv, you must find for Aptiv.

If you decide Aptiv infringed, you will then address the additional issue of whether or not Aptiv's infringement was willful.  Microchip has the burden of proving that Aptiv's infringement was willful by a preponderance of the evidence, meaning it is more likely true than not.

Microchip also has the burden to establish the kind of money damages—lost profits or reasonable royalties—and the amount of its money damages by a preponderance of the evidence.  If Microchip persuades you that Aptiv has infringed a valid patent, Microchip is entitled to damages in an amount to compensate Microchip for that infringement.

In addition to denying that it has infringed, Aptiv contends that the '243 Patent is invalid.  A party challenging the validity of a patent has the burden of proving that the patent is invalid by clear and convincing evidence.   Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one.  You should therefore not consider it in this case.

## B.    Types Of Evidence

The evidence from which you are to find the facts consists of the following:

1.    The testimony of the witnesses;

2.    Documents, charts, graphics, and other things received as exhibits; and

3.    Any facts that are stipulated—that is, formally agreed to by the parties.

The following things are **not** evidence:

1.    Statements, arguments, and questions of the lawyers for the parties in this case;

2.    Charts and graphics not received as exhibits;

2.    Objections by lawyers.

3.    Any testimony I tell you to disregard; and

4.    Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever

5

weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer requested that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection was made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that the evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by my ruling on it. If I sustained an objection, ignore the question. If I overruled it, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, I may have excluded some evidence or ordered certain testimony or other evidence stricken from the record. Do not consider any testimony or other evidence that I struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

### C.    Direct And Circumstantial Evidence

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched, heard or did.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact.

I will give you an example of the difference between direct and circumstantial evidence.

If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. However, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining, even though you didn't see it for yourself.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

### D.    Credibility Of Witnesses

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

1.    The opportunity and ability of the witness to see or hear or know the things the witness testifies to;

2.    The quality of the witness's understanding and memory;

3.    The witness's manner while testifying;

4.    Whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

5.    Whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

6.    How reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

7.    Any other factors that bear on believability.

### E.      Number Of Witnesses

Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

### F.      Opinion Testimony

You have heard testimony containing opinions from Mr. Ivan Zatkovich, Dr. John Levy, Dr. Stephen Becker, Mr. John Garney, and Mr. Michael Chase. In weighing this opinion testimony, you may consider the witnesses' qualifications, the reasons for their opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinions of these individuals should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinions of Mr. Zatkovich, Dr. Levy, Dr. Becker, Mr. Garney, and Mr. Chase, you may consider any bias that any witness may have, ~~including any bias that may arise from evidence that they have been or will be paid for reviewing the case and testifying~~.[1]

---

[1] All expert witnesses in this case have been paid for their time. Microchip believes this phrase is unnecessary and likely to lead to confusion.

10

### G.    Deposition Testimony

Before this trial began, the lawyers for the parties questioned witnesses under oath, and a court reporter and videographer recorded everything the witnesses and the lawyers said. This is called a deposition.

For some witnesses, you have heard that sworn testimony. Each witness's testimony is entitled to the same consideration as if he testified in court. You should use the same factors to evaluate the believability of this testimony as if he testified in person in the courtroom.

The parties may have edited or cut the video to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

11

### H.    Demonstrative Exhibits

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations.

The remainder of the exhibits (including charts, PowerPoint presentations, and animations) were offered to help illustrate the testimony of the various witnesses. These illustrative exhibits, called "demonstrative exhibits," have not been admitted, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.

In some instances, certain charts and summaries may have been received into evidence to illustrate information brought out in the trial. You may use these charts and summaries as evidence, even though the underlying documents and records are not here. You should give them such weight as you think they deserve.

## I.     Use Of Notes

You may use notes taken during trial to assist your memory. However, as I instructed you at the beginning of the case, you should use caution in consulting your notes. Jurors often have a tendency to attach undue importance to matters which one has written down. But some testimony that you thought was unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

## III.   SUBSTANTIVE CLAIM

### A.   Patent Claims Generally

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered paragraphs at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The claims are intended to define, in words, the bounds of the invention. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. You must consider each of the asserted claims individually.

Each claim of a patent effectively acts as if it were a separate patent, and each claim may cover either more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers. You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.

14

### B.     Construction Of The Claims

It is the Court's duty under the law to define what the patent claims mean. I have made my determinations, and I will now instruct you on the meaning of the claim terms. You must apply the meaning that I give in each patent claim to decide if the claim is infringed or invalid. You must accept my definitions of these words in the claims as being correct, and you must ignore any different definitions used by the witnesses or the attorneys. The definitions for asserted Claims 23-25 are as follows:

| Claim Term | Court's Construction |
|---|---|
| **USB multi-host device** | Preamble is not limiting |
| **respective dedicated USB connection / dedicated USB connection** | A USB connection that is not shared (except that multiple USB connections may alternate, in some manner, communicating across the same shared physical connection) |
| **USB device block** | a USB device or segment of a USB device that performs a function to provide a capability to a host over USB |

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning to a person of ordinary skill in the art.  Shortly, I will explain the concept of a person of ordinary skill in the art.

## C.    Independent And Dependent Claims

There are two different types of claims at issue in this case. The first type is called an "independent claim." An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope. In this case, the only independent claim for which Microchip asserts infringement is claim 23 of the '243 Patent.  You know that claim is independent because it does not mention any other claims in the patent. Accordingly, you should read the words of that independent claim by themselves, in light of the construction that I have given them, to determine what that claim covers.

Claims 24 and 25 of the '243 Patent are dependent claims. A "dependent claim" refers to and depends upon at least one other claim in the patent and thus incorporates all of the requirements of the claims to which it refers. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim to which it refers. Claims 24 and 25 are dependent because they refer to claim 23, so you must read the words of claim 23 with the words of claim 24 and then read the words of claim 23 with the words of claim 25 to determine what each claim covers.

## IV.   INFRINGEMENT

I will now instruct you how to decide whether Microchip has proven by a preponderance of the evidence that Aptiv infringed the asserted claims of the '243 Patent. Recall that Microchip must prove infringement by a preponderance of the evidence, meaning that it is more likely than not that infringement has occurred.

Whether Aptiv knew or believed the accused chip infringes the '243 patent is irrelevant to the question of infringement. Aptiv's knowledge and belief regarding infringement is only relevant to the separate question of willful infringement, which I will explain shortly.[2]

Additionally, the presence of additional features or improvements in an accused product does not mean that the product is not infringing. In other words, whether Aptiv's accused chip includes features or improvements in addition to the elements of claims 23–25 of the '243 patent is not relevant to whether Aptiv infringes those claims. As long as Aptiv's accused chip includes all of the elements of an asserted patent claim, then that patent claim is infringed even if the accused chip also has additional elements, features, or improvements.[3]

---

[2] AIPLA Model Patent Jury Instruction 3.1.
[3] *Purewick Corporation v. Sage Products, LLC*, C.A. No. 19-1508-MN (D. Del.), D.I. 314 at 17 (Final Jury Instructions dated April 1, 2022).

You have ~~also~~ heard evidence that both sides own other patents relating to ~~the~~ USB technology ~~at issue~~. As I stated earlier, there is only one patent at issue in this case: the '243 Patent. Ownership of a patent is not a defense to patent infringement, nor is ownership of other patents evidence of infringement. ~~Aptiv does not contend that any of its patents has any bearing on whether it infringes the patent at issue in this case. Instead, f~~For purposes of infringement, you must only consider the claims of the '243 Patent.

### A.      Direct Infringement

Microchip alleges that Aptiv directly infringes the '243 Patent. In order to prove direct infringement, Microchip must prove by a preponderance of the evidence, meaning that it is more likely than not, that Aptiv made, used, sold, offered to sell, or imported products covered by at least one asserted claim.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of some terms of the asserted patent claims.

The second step is to decide whether an asserted claim covers the Boston chip in Aptiv's dual-role hub. To decide whether the Boston chip directly infringes an asserted claim, you must compare that product with an asserted patent claim and determine whether every requirement of the claim is met. If so, ~~the~~ Aptiv's chip directly infringes that claim. If not, then the product does not directly infringe that claim.

In general, you must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule. If you find that an independent claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers to that independent claim. So, if you find that Aptiv has not infringed Claim 23 of the '243 Patent, then Aptiv cannot have

infringed claim 24 or claim 25. On the other hand, if you find that Aptiv has infringed claim 23, you must still, decide, separately, whether the accused product meets additional requirements of each of the dependent claims, claim 24 and claim 25, and thus, whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

### B.     Willful Infringement

If you have decided that Aptiv directly infringed any asserted claim of the '243 Patent, you must then address the additional issue of whether Aptiv's infringement was willful. To prove willful infringement, Microchip must prove by a preponderance of the evidence that Aptiv had knowledge of the infringed patent (that is, the '243 Patent) before Microchip filed this lawsuit, and that Aptiv's conduct was reckless, willful, wanton, malicious, committed in bad faith, deliberate, consciously wrongful, or flagrant. To determine whether Aptiv acted willfully, consider all of the facts. These may include, but are not limited to:

1.     Whether Aptiv intentionally copied the claimed inventions of the '243 Patent;

2.     Whether Aptiv reasonably believed it did not infringe or that the patent was invalid at or around the time it first learned of the '243 Patent;

3.     Whether Aptiv made a good-faith effort to avoid infringing the '243 Patent, for example, whether Aptiv attempted to design around either patent; and

4.     Whether Aptiv tried to cover up its infringement.

If you do decide that there was willful infringement, that decision should not affect any damage award you give in this case.

21

## V.    INVALIDITY

### A.    Invalidity Generally

Patent invalidity is a defense to patent infringement.  The granting of a patent by the United States Patent and Trademark office carries with it the presumption that the patent is valid. The law presumes that the Patent and Trademark Office acted correctly in issuing the patent. Each of the asserted claims is presumed valid independently of the validity of each other claim. This presumption puts the burden on Aptiv of proving invalidity by clear and convincing evidence on a claim-by-claim basis; that is, you must be left with an abiding conviction that each asserted claim of the '243 Patent is invalid. This burden may be more difficult to meet when the accused infringer attempts to rely on prior art that has been before the Patent Office during examination of the '243 Patent.

Even though the Patent Office allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are proven to be invalid. For a patent to be valid, the specification of the patent must contain a sufficient written description of the claimed invention and enable a person of ordinary skill in the art to make and use the claimed invention. A patent cannot take away from the right of anyone who wants to use what was already known or used by others, or what would have been obvious to those of skill in the art at the time the invention was made. But the specification does not have to describe or enable the

accused product, nor must it describe every conceivable or possible future embodiment.

Aptiv alleges that claims 23-25 of the '243 Patent are invalid because:

1.      U.S. patent No. 6,549,966 ("Dickens") combined with the US-98 USB Auto Share Switch 4x4 system ("US-98") renders the claims obvious;

2.      Dickens combined with the Belkin 4x4 USB Peripheral Switch system ("Belkin") renders the claims obvious;

3.      The specification of the '243 patent does not contain an adequate written description of the full scope of the asserted claims;

4.      The specification of the '243 patent does not enable a person of ordinary skill in the art to make and use the full scope of the invention, which is called "enablement."

I will now instruct you in more detail regarding Aptiv's invalidity defense.

**B.    Level Of Ordinary Skill**

Patent invalidity defenses are evaluated from the perspective of a hypothetical "person of ordinary skill in the art." The hypothetical person of ordinary skill in the art is presumed to be aware of all the prior art at the time of the invention, which is April 2006 in this case. You are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. In deciding what the level of ordinary skill in the relevant field is, you should consider all the evidence introduced at trial, including but not limited to: the levels of education and experience of other persons actively working in the field as of April 14, 2006.

### C.    Obviousness

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.

Aptiv contends that the asserted claims of the '243 Patent is invalid for obviousness. Aptiv bears the burden of proving obviousness by clear and convincing evidence. To establish that a patent claim is invalid for obviousness, Aptiv must show, by clear and convincing evidence, that the claimed invention would have been obvious to a person having ordinary skill in the art at the time the invention was made. In determining whether the claimed invention was obvious, you must consider each claim separately. You should not use hindsight, such as by using the '243 Patent as a roadmap to select from the prior art and retrace the path of the inventors. In other words, you should only consider what was known prior to April 14, 2006, without the benefit of the later '243 Patent and what that patents teaches.

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious today to you, as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made. The existence of each and every

element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

You must put yourself in the place of a person of ordinary skill in the art at the time of invention. In addition, you may consider whether there was a reason to combine or modify the prior art references in the fashion claimed by the patent at issue. To find that the prior art rendered a claimed invention obvious, you must find that a person having ordinary skill in the art would have had a reasonable expectation of successfully combining or modifying a prior art product with one or more patents or publications. You must base your decision on a specified combination of prior art that includes a physical device. The prior art is Dickens, and the physical devices are US-98 and Belkin. In the context of obviousness, only a reasonable expectation of success is required, not conclusive proof or absolute predictability.

In determining obviousness or non-obviousness of the subject matter of each of the asserted claims, you should take the following steps:

1.    Determine the scope and content of the prior art;

2.    Identify the differences, if any, between each asserted claim and the prior art;

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of the patent was made; and

4.    Consider objective factors of non-obviousness.

26

Against this background, you will then decide whether Aptiv has proven by clear and convincing evidence that the subject matter of each asserted claim would have been obvious or nonobvious to a person of ordinary skill in the pertinent art.

### 1.      Obviousness—scope and content of the prior art

As I just instructed you, in deciding whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem with which the inventor was faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve.

### 2.      Obviousness—differences between the claimed invention and prior art

You should analyze whether there are any relevant differences between the prior art taken as a whole and the asserted claims of the '243 Patent from the view of a person of ordinary skill in the art as of April 14, 2006. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it. You should consider the prior art as a whole and determine whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does.

The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense. You may also consider whether the problem or need was known, the possible approaches to solving the problem or addressing the need were known and finite, and whether the solution was predictable through use of a known option. Accordingly, you may evaluate whether there was some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the claimed invention although proof of this is not a requirement to prove obviousness. Teachings, suggestions, and motivations may be found in written references including the prior art itself. However, teachings, suggestions, and

motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. Additionally, teachings, suggestions, and motivations may be found in the nature of the problem solved by the claimed invention, or any need or problem known in the field of the invention at the time of and addressed by the invention.

In analyzing the relevance of the differences between a claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

### 3.    Obviousness—level of ordinary skill

I have already given you instructions about how to determine the level of ordinary skill at Instruction V.B.

### 4. Obviousness—objective evidence of nonobviousness

You must also take into account any objective evidence (sometimes called "objective indicia" or "secondary considerations") that may shed light on whether the claims were obvious. "Objective indicia" or "secondary considerations" must be considered before a conclusion on obviousness is reached. "Objective indicia" or "secondary considerations" can include:

(A)   Whether the invention was commercially successful at least in part as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure, advertising, or similar activities);

(B)   Whether the invention satisfied a long-felt need;

(C)   Whether others copied the invention;

(D)   Whether the invention achieved unexpected results compared to the closest prior art; evidence of unexpected results may be used to rebut a case of obviousness even if that evidence was obtained after the patent's filing or issue date; there is no requirement that an invention's properties and advantages were fully known before the patent application was filed or that the patent application contains all of the work done in studying the invention;

(E)   Whether others tried and failed to make the invention;

(F)   Whether others in the field praised the invention;

32

(G)     Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(H)     Whether the inventor proceeded contrary to accepted wisdom in the field; and

(I)     Whether others invented the invention at roughly the same time.

Microchip has the burden to show evidence of "objective indicia" or "secondary considerations" and to show that there is a connection, sometimes called a "nexus," between the evidence showing any of these factors and the claimed invention, if you are to give weight to this evidence in arriving at your conclusion on the obviousness issue. However, Aptiv always maintains the ultimate burden to show obviousness by clear and convincing evidence, taking into account any objective indicia that you may find.

### D.    Written Description

Aptiv contends that the asserted claims of the '243 Patent are invalid for failure to satisfy the written description requirement. Aptiv bears the burden of establishing lack of written description by clear and convincing evidence.

A patent must contain a written description of the product and method claimed in the patent. This requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, although the exact words found in the claim need not be used. When determining whether the specification discloses the invention, the claim must be viewed as a whole.  If a patent claim lacks adequate written description, it is invalid.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent. The written description requirement is satisfied if the specification shows that the inventor or inventors possessed the invention as of the effective filing date of the claimed invention, even though the claims themselves may have been changed or new claims added since that time.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the

34

specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention. The specification does not have to describe the accused product, nor must it describe every conceivable or possible future embodiment.[4] In evaluating whether the specification has provided an adequate written description, you must determine whether a person of ordinary skill in the art would have understood that Mr. Bohm and Mr. Ghosh—the inventors of the '243 Patent—possessed the full scope of the invention as of April 14, 2006, which is the date that they filed the application that resulted in the '243 Patent. To make that determination, you may consider such factors as:

1.      the nature and scope of the patent claims;

2.      the complexity, predictability, and maturity of the technology at issue;

3.      the existing knowledge in the relevant field; and

4.      the scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

_____

[4] This sentence is copied, in relevant part, from the sentence currently appearing in Section V.A (Invalidity Generally).

### E.    Enablement

Aptiv contends that the asserted claims of the'243 Patent are invalid for lack of enablement. Aptiv bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the enablement requirement.

A patent must disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention as of the effective filing date of the claimed invention to make and use the full scope of the claimed invention without undue experimentation. This requirement is known as the enablement requirement. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill in the field of the invention to practice the claimed invention does not mean that a patent does not meet the enablement requirement. The specification does not have to describe or enable the accused product.[5]

------------------------------

[5] This sentence is copied, in relevant part, from the sentence currently appearing in Section V.A (Invalidity Generally).

Factors that you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

1.     The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques;

2.     The amount of direction or guidance disclosed in the patent;

3.     The presence or absence of working examples in the patent;

4.     The nature of the invention;

5.     The state of the prior art;

6.     The relative skill of those in the art;

7.     The predictability of the art; and

8.     The breadth of the claims.

## VI.   DAMAGES

I am now going to instruct you on damages. By instructing you on damages, I am not suggesting which party should win this case on any issue, and you should not read into my instruction a suggestion that damages are appropriate or inappropriate in this case.  If you find that each of the asserted claims is either invalid or not infringed, then you need not address damages in your deliberations. But if you find that Aptiv infringed of any valid claim of the '243 Patent, you must then consider what amount of damages to award to Microchip.

The damages you award must be adequate to compensate Microchip for the infringement. Damages are not meant to punish an infringer. Your damages award, if you reach this issue, should put Microchip in approximately the same financial position that it would have been in had the infringement not occurred.

Microchip has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Microchip establishes that it more likely than not suffered. Microchip need not prove the amount of damages with mathematical precision. You may not award damages that are speculative, damages that are possible but not probable, or damages that are based on guesswork. There are two different types of damages that Microchip may be entitled to recover. The first is lost profits. The second is a reasonable royalty.

Lost profits consist of any actual reduction in business profits Microchip suffered as a result of Aptiv's infringement, while a reasonable royalty is defined as the money amount Microchip and Aptiv would have hypothetically agreed upon as a fee for Aptiv's use of the invention in March 2014. You may only award one type of damages for each infringing unit that Aptiv sold, but you may award different types of damages for different units. In this case, Microchip seeks lost profits for Aptiv sales from the third quarter of 2017 to the present. Microchip seeks a reasonable royalty for all infringing units that you find do not qualify for lost profits damages, including Aptiv's sales prior to the third quarter of 2017. Aptiv contends it does not infringe any valid claim of the '243 Patent and therefore does not owe any damages. However, if you find that Aptiv has infringed any valid asserted claim of the '243 Patent, it contends a reasonable royalty is the proper measure of damages.

I will now give you more detailed instructions regarding damages, including lost profits and reasonable royalties.

### A.  Date Damages Begin

Microchip may recover damages starting in the second quarter of 2015, when Aptiv began selling the dual role hub with the Boston chip that Microchip claims infringes on the '243 Patent.

### B.    Lost Profits

To prove lost profits, Microchip must show a causal relationship between Aptiv's infringement and Microchip's loss of profit. Microchip must show that, but for Aptiv' s infringement, Microchip would have made additional profits through the sale of all or a portion of the microchips included in the dual-role hubs that Aptiv sold. Microchip is only seeking lost profits for sales beginning in July 2017, shortly after Microchip began selling the Sandia chip. Microchip must prove its entitlement to and the amount of lost profits by a preponderance of the evidence. Part of your job is to determine which chips the customers who purchased dual role hubs from Aptiv would have selected if the alleged infringement had not occurred. It is important to remember that the profits I am referencing are the profits that Microchip allegedly lost, not the profits, if any, that Aptiv made on the allegedly infringing sales.

Microchip has proven its entitlement to, and the amount of, lost profits if you find that, with respect to sales of Aptiv's dual role hub, Microchip has proven each of the following factors by the more likely than not standard (that is, by the preponderance of the evidence):

1.    There was a demand for the patented invention;

2.    The absence of acceptable non-infringing substitutes;

3.      That Microchip had the manufacturing and marketing ability to make the sales for which Microchip seeks an award of lost profits, in other words, that Microchip was capable of satisfying the demand; and

4.      The amount of profit that Microchip itself would have made if Aptiv had not infringed the '243 Patent.

I will now explain each of these factors.

### 1.    Lost Profits – two-supplier market

Microchip contends that there were only two suppliers in the relevant market, those suppliers being Microchip and Aptiv. Aptiv disagrees. If you find that there were only two suppliers in the market, Microchip does not need to prove the first two factors from the preceding section. The first step in the two-supplier market test is to define the relevant market. To prove lost profits in a "two-supplier market," Microchip need only show:

(1) that the relevant market contains only two suppliers (Microchip and Aptiv);

(2) that Microchip had the manufacturing and marketing capability to make the sales that were diverted to Aptiv; and

(3) the amount of profit Microchip would have made if Aptiv had not infringed.

Therefore, if Microchip shows there were only two suppliers in the relevant market, that Microchip was capable of satisfying the demand, and the amount of profit Microchip would have made if Aptiv had not infringed, you may presume that Microchip satisfied the "but for" test and is entitled to lost profits. Aptiv may, however, rebut this presumption by showing that Microchip reasonably would not have made some or all of the diverted sales "but for" the infringement. For example, Aptiv may rebut the presumption by showing that it sold another available,

noninfringing substitute in the relevant market. The burden of persuasion remains

with Microchip.[6]

---

[6] *Purewick Corporation v. Sage Products, LLC*, C.A. No. 19-1508-MN (D. Del.), D.I. 314 at 36 (Final Jury Instructions dated April 1, 2022).

### 1.2.   Lost profits—demand

The first factor asks whether there was demand for the patented product in the relevant market. Microchip can prove demand for the patented invention by showing significant sales of Microchip's Sandia product or significant sales of Aptiv's infringing products.

### 2.3.   Lost profits—acceptable non-infringing substitutes

The second factor asks whether there were non-infringing, acceptable substitutes for the patented products in the marketplace and the impact of such substitute products on the marketplace absent the presence of Aptiv's Boston chip. If the realities of the marketplace are that competitors other than Microchip would likely have captured some or all of the volume of chips that Aptiv included in its dual role hub, even despite a difference in the products, then Microchip is only entitled to lost profits on those sales that it would have captured, not those sales that would have been captured by others.

To be an acceptable substitute, the products must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. If purchasers of an alleged infringer's product were motivated to buy the infringing product because of the features available only from that product and a patent holder's patented product, however, then some other, alternative product is not an acceptable substitute.[7] The use of the acceptable substitutes also must not infringe the patent. The acceptable substitutes, in addition, must have been available for Aptiv to purchase during the damages period.

_____

[7] ABA Model Jury Instruction 5.2 at 58 ("Lost Profits–Noninfringing Substitutes–Acceptability").

The acceptable substitute need not have actually been sold at that time. But, if the acceptable substitute was not sold during the damages period, then Aptiv must show by a preponderance of the evidence that, during the damages period a competitor or Aptiv had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable non-infringing substitute. If you determine that some of Aptiv's customers would just as likely have purchased a non-infringing acceptable product, then Microchip has not shown it lost those sales but for Aptiv's infringement.

47

### ~~3.~~4.   Lost profits—capacity

The third factor asks whether Microchip, by itself (or through entities with which it partners) had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Aptiv's infringement. Microchip must prove that it could have supplied the ~~Sandia~~ chips needed to make the sales Microchip said it lost. Microchip must also prove that it is more likely than not it had the ability to market and sell the additional ~~Sandia~~ chips.

### 4.5.   Lost profits—amount of profit

Microchip may calculate the amount of its lost profits by calculating its lost sales starting in July 2017 and subtracting from that amount any additional costs or expenses that Microchip would have had to pay to make the lost sales. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

## C.    Reasonable Royalty

A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the patent owner and the alleged infringer just before the infringement began. The parties in this case agree the hypothetical negotiation date is March 2014. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been if they had entered into an agreement at that time, and if they had acted reasonably in the negotiations. You should assume that both parties to the hypothetical negotiation believed the patent to be valid and infringed and that both parties are willing to enter into a license. You should also assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the opinion testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

A reasonable royalty is typically made up of (1) a base and (2) a rate that is applied to that base. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.

Post-negotiation information may be considered to ensure that the patentee will be adequately compensated for infringement. Post-negotiation information may not be relevant when it is being presented by a defendant to emphasize the lack of damages caused by its own infringement.[8]

---

[8] Plaintiff's support: **6/22/21 Deposition of Michael Chase at 202–206**; *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 699 (1933); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *On Track Innovations Ltd. V. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 410 (S.D.N.Y. 2015); *Honeywell Intern., Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 465 (D. Del. 2005); *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F.Supp.2d 182, 190 (S.D.N.Y. 2002).

### 1. Reasonable royalty—factors

In determining the reasonable royalty, you should consider all the facts known or available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

1.      The royalties received by Microchip for the licensing of the '243 Patent, proving or tending to prove an established royalty;

2.      The rates that Aptiv paid for the use of other patents comparable to the'243 Patent;

3.      The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.      Microchip's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.      The commercial relationship between Microchip and Aptiv at the time of the hypothetical negotiation, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

6.      The effect of selling the patented product in promoting sales of other products of Aptiv, the existing value of the invention to Microchip as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

7.      The remaining life of the '243 Patent and the term of the license;

8.      The commercial success, current popularity, and established profitability of the product made under the '243 Patent;

9.      The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10.     The nature of the patented invention and the benefits to those who have used the invention;

11.     The extent to which Aptiv has made use of the invention; and any evidence probative of the value of that use;

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks or significant features or improvements that Aptiv added;

14.     The opinion testimony of qualified experts; and

15.    The amount that a licensor (such as Microchip) and a licensee (such as Aptiv) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee who desired as a business proposition to obtain a license to manufacture and sell a particular product embodying the patented invention would have been willing pay as a royalty and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty Aptiv would have been willing to pay and Microchip would have been willing to accept, acting as normally prudent business people.

## 2.     Reasonably royalty—timing

The relevant date for the hypothetical reasonable royalty negotiation is at the time infringement began.

### 3.    Reasonable royalty—apportionment

The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Aptiv's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the patented invention from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value patented invention contributed to the accused product and no more.

## VII.  DUTIES AS A JUROR

When you retire to the jury room to deliberate, you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence. Note that some exhibits may appear missing in the binders; however, this is intentional, and you should not draw any inferences from it. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based on the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to Mr. Koehler, to me, another jury officer, or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, tablet, or computer of any kind; the internet, any internet service, or any text or messaging service like Twitter; or any internet chat room, blog, website, or social networking service, such as Facebook, LinkedIn, Instagram, TikTok, Snapchat, GroupMe, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social

58

media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to Mr. Koehler or another jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number has voted one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson

will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. I have not indicated any opinion on my part concerning the weight you should give to the evidence or to any part of it. I do not want you to think that I have. It is up to you and you alone to decide the believability of each witness.