## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICROCHIP TECHNOLOGY INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  C.A. No. 17-01194-JDW |
| | ) |
| APTIV SERVICES US, LLC, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT APTIV SERVICES US, LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL

OF COUNSEL:

Daralyn J. Durie
Timothy Saulsbury
Eric C. Wiener
Joyce C. Li
DURIE TANGRI LLP
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

W. Henry Huttinger
Andrew T. Jones
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA 90013
(213) 992-4499

Dated: May 20, 2022

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant*
*Aptiv Services US, LLC*

## **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ...............................................................................................................1

II. LEGAL STANDARDS ......................................................................................................2

    A. Judgment as a Matter of Law................................................................................2

    B. Written Description and Enablement.....................................................................3

III. IF THE ASSERTED CLAIMS COVER HOST-TO-HOST COMMUNICATION THEY ARE INVALID FOR LACK OF WRITTEN DESCRIPTION AND ENABLEMENT .....5

    A. The Specification Neither Describes Nor Enables a Means of Host-to-Host Communication.......................................................................................................6

    B. The Specification Neither Describes Nor Enables a Multi-Host Device Controller Without an Arbitration Mechanism ........................................................................8

IV. CONCLUSION.................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*,
  759 F.3d 1285 (Fed. Cir. 2014)..........................................................................................5

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003)..........................................................................................5

*Amgen Inc. v. Hospira, Inc.*,
  944 F.3d 1327 (Fed. Cir. 2019)......................................................................................2, 3

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009)....................................................................................4, 10

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  481 F.3d 1371 (Fed. Cir. 2007)......................................................................................3, 4

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005)......................................................................................3, 7

*Rivera v. ITC*,
  857 F.3d 1315 (Fed. Cir. 2017)......................................................................................4, 5

*Sitrick v. Dreamworks, LLC*,
  516 F.3d 993 (Fed. Cir. 2008)..................................................................................3, 4, 6

**Statutes**

35 U.S.C. § 112..................................................................................................................2, 3, 4

35 U.S.C. § 112(a) ....................................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 50(a)-(b) ...........................................................................................................1

Fed. R. Civ. P. 59......................................................................................................................1

I.      INTRODUCTION

Over the course of a six-day trial, the jury heard over 20 hours of testimony from more than a dozen witnesses (live and by deposition) and were shown dozens of exhibits. The jury then confirmed what was clear from the presentation of evidence: that Defendant Aptiv Services US, LLC ("Aptiv") did not infringe any of the Asserted Claims. Having rendered a sound verdict on the dispositive issue of infringement, the jury then found that Aptiv had not met its burden to show that the Asserted Claims were not enabled or that they lacked sufficient written description.[1] Aptiv moved for judgment as a matter of law on these issues at the close of evidence (Trial Tr. Vol. 6 at 6:15-11:11) and renews that motion here. Fed. R. Civ. P. 50(a)-(b). And, should the Court grant a new trial on infringement, Aptiv requests that the Court also grant a new trial on enablement and written description. Fed. R. Civ. P. 59.

Plaintiff Microchip Technology, Inc. ("Microchip") accused Aptiv's Boston 2 chip and the Dual Role Hub media module containing that chip of infringing claims 23-25 of the '243 patent (the "Asserted Claims"). The Asserted Claims are directed to a "USB multi-host device" that allows two or more USB hosts to share a single USB device (or segment of a USB device). Microchip accused the host-to-host bridge within the Boston 2 chip of providing this functionality. Specifically, Microchip characterized the host-to-host bridge as comprising a USB device (or segment of a USB device) that was shared by two USB hosts—the vehicle head unit and iPhone connected to the Dual Role Hub. Aptiv's host-to-host bridge allows the head unit and iPhone hosts to communicate with each other. Even if the host-to-host bridge were to contain some shared USB device or segment of a USB device (which it does not), the Boston 2

---

[1] The jury also found that Aptiv did not meet its burden to show that the accused claims were obvious, but that finding is not the subject of this motion.

chip does not have (or need) any mechanism to arbitrate between the hosts' access to that shared device or segment.

Nowhere does the specification of the '243 patent describe (or contemplate) how the invention can be implemented to facilitate host-to-host communication, nor does the specification enable a person of ordinary skill in the art to practice the invention to enable host-to-host communication without undue experimentation. Additionally, nowhere does the specification describe (or contemplate) how a USB device (or segment of a USB device) can be shared by two USB hosts other than by arbitrating or alternating access to the device, nor does the specification enable a person of ordinary skill to develop such an approach without undue experimentation. As a result, if the Asserted Claims encompass devices that allow two hosts to communicate with each other, rather than two hosts that can each only communicate with a single device, the claims are invalid under 35 U.S.C. § 112. No reasonable jury could have escaped the conclusion that the evidence at trial established, clearly and convincingly, that the Asserted Claims were not adequately described or enabled if the full scope of the claims extended to host-to-host communication or sharing a USB device (or segment of a USB device) without arbitration. Aptiv is thus entitled to judgment as a matter of law that the Asserted Claims are invalid for lack of enablement and written description, or, alternatively, a new trial on those issues, should a new trial be granted on infringement.

## II.  LEGAL STANDARDS

### A.  Judgment as a Matter of Law

Judgement as a matter of law should be granted if, "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find for the nonmovant." *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019) (citation and

2

quotation marks omitted) (applying Third Circuit law). Where the movant bears the burden of proof, judgement as a matter of law should be granted if "there is insufficient evidence for permitting any different finding." *Id.*

### B. Written Description and Enablement

35 U.S.C. § 112(a) requires that a patent contain "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . ." These requirements—written description and enablement—pertain to the full scope of the claimed invention. Where a claim is drawn broadly to encompass multiple embodiments, the specification must convince a person of ordinary skill in the art that the inventor had possession of the full scope of the invention across the range of those embodiments and enable such a person to make and use that full scope of the invention as claimed without undue experimentation. *See LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

The Federal Circuit has repeatedly held invalid claims that cover a broad range of embodiments but describe and enable only a fraction of the territory they cover. *Id.* (claims "directed to creating a seamless array of [digital wavelet transform] coefficients generically" invalid where specification teaches only one method of doing so and one of skill in the art "would not understand how to make a seamless DWT generically and would not understand LizardTech to have invented a method for" doing so except as described); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) (where "the asserted claims read on, and the full scope of the claimed invention includes, an injector system with and without a pressure jacket," claims lack § 112 support if they fail to enable both); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) (where claims to integrating a user's audio signal or visual image

3

into pre-existing media was construed to encompass application to both video games and movies, they lack § 112 support if specification fails to enable both embodiments); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1378 (Fed. Cir. 2009) ("ICU's asserted spikeless claims . . . refer to medical valves generically—covering those valves that operate with a spike and those that operate without a spike. But the specification describes only medical valves with spikes. . . . Based on this disclosure, a person of skill in the art would not understand the inventor . . . to have invented a spikeless medical valve.").

It is true that the patent need not describe or enable *the accused device* in all of its particulars—in other words, the accused device may incorporate the claimed invention and add other elements" and those additional elements extrinsic to the claimed invention need not be enabled or described. But that does not relieve the patentee of the obligation to provide § 112 support across the scope of *the claimed invention*. In other words, characteristics of the accused product are relevant to the § 112 analysis insofar as the claims are construed broadly enough to read on those characteristics (as opposed to the accused product's additional features not alleged to be part of the invention). At that point, written description and enablement support in the specification must be sufficient to support the breadth of the invention asserted by the patentee. *Liebel-Flarsheim Co.*, 481 F.3d at 1380 ("The irony of this situation is that Liebel successfully pressed to have its claims include a jacketless system, but, having won that battle, it then had to show that such a claim was fully enabled, a challenge it could not meet."); *Sitrick*, 516 F.3d at 1000 (where plaintiff accused product allowing users to add their own voice to existing movies and successfully pressed claim construction broad enough to cover both movies and video games, § 112 inquiry properly focused on whether both were enabled); *Rivera v. ITC*, 857 F.3d 1315, 1319 (Fed. Cir. 2017) (noting that "[b]oth parties analyze[d] the written description issue

4

under the assumption that the asserted claims read on Solofill's [accused] containers," and concluding that "written description support for broad claims covering a receptable with integrated filter such as Solofill's accused products and Rivera's Eco-Fill products is lacking.") *Id*. at 1321; *AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1301 (Fed. Cir. 2014) (finding that, while the patents "need not describe the allegedly infringing [product] in exact terms," it must nevertheless "at least describe some species representative of antibodies that are structurally similar to [the accused product].") (citation omitted); *cf. Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("[C]laims are construed the same way for both invalidity and infringement.") (citation omitted).

### III. IF THE ASSERTED CLAIMS COVER HOST-TO-HOST COMMUNICATION THEY ARE INVALID FOR LACK OF WRITTEN DESCRIPTION AND ENABLEMENT

The Asserted Claims each require a "shared USB device block" that is accessible by two or more USB hosts. TX1, Claims 23-24. The Court construed "USB device block" as "a USB device or segment of a USB device that performs a function to provide a capability to a host over USB." D.I. 114 at 3. Microchip argued at trial that Aptiv's Dual Role Hub infringed these claims because the host-to-host bridge within the hub allowed two USB hosts—a vehicle head unit and an iPhone—to pass messages back and forth. *See, e.g.*, Tr. Vol. 3 123:9-11. Microchip conceded that there was no need for the Dual Role Hub to arbitrate among access requests from the two hosts. *See, e.g.*, Tr. Vol. 5 367:23-368:11.

Microchip's infringement theory was predicated on the assumption that the full scope of the Asserted Claims includes a multi-host device that allows for host-to-host communication and allows two hosts to access a shared USB device or segment without arbitration. As explained in further detail below, the '243 patent is devoid of any disclosures that describe or enable such an

5

invention. Rather, the overwhelming evidence (or lack of evidence) at trial conclusively established that such claims would be invalid as not sufficiently enabled or described.

### A. The Specification Neither Describes Nor Enables a Means of Host-to-Host Communication

At trial, Microchip took the position that the '243 patent encompasses a multi-host device controller in which the required "function" is the ability for the hosts to communicate with one another. *See e.g.,* Tr. Vol. 3 123:9-11 ("[T]he function of the shared device block is transferring data from one host to another") (Zatkovich). In fact, the very first thing the jury heard from Microchip during its opening statement was that the patented device was "for connecting between two computers." Tr. Vol. 1 189:10-13; *See also* Declaration of Andrew T. Jones in support of Motion for Judgment as a Matter of Law ("Jones Decl."), Ex. 1, Ghosh Tr. 80:21-24 (Inventor testifying that the patent related to a method of host-to-host communication).[2] This appears to have been one of the primary bases for Microchip's infringement theory as it had claimed that its patents "cover key aspects of any multi-host USB device controller-based solution." TX9; Tr. Vol. 2 241:2-3 ("[I]f it's a multi-host, they are likely infringing on the patent.") (Obolsky).

A patent must describe and enable the full scope of what it claims. *Sitrick v. Dreamworks, LLC*, 516 F.3d at 999. Thus, to the extent the claims encompass a means for host-to-host communication, the specification must teach that. Here, there is nothing whatsoever in the specification to suggest that the inventors conceived of host-to-host communication. On this there was no disagreement. Neither of the co-inventors of the '243 patent were able to identify

---

[2] Although this testimony was played to the jury by video, the trial transcript did not reflect that so Aptiv includes the relevant portions of the testimony played at trial as Exhibit 1 to the Jones Declaration. Tr. Vol. 4 234:16-235:1.

6

where in the specification or application the concept of permitting communication between two hosts is described.  Jones Decl., Ex. 1, Ghosh Tr. 80:21-81:10 ("Q: Are you able to point me to where in the patents host-to-host communication is described?  A: No.  Q: . . . Can you please point me to any of the other publications that mention host-to-host communication?  A: I see no reference to that in the applications."); Tr. Vol. 2 163:11-13 (Bohm) ("Q: No, you didn't mention host-to-host communication in your patent; right?  A. Not that I recall").  Nor were the inventors able to identify the concept of host-to-host communication in the original innovation disclosure that documented the invention.  TX24; Tr. Vol. 2 163:22-164:5 (Bohm).  And Microchip's invalidity expert, Dr. Levy, admitted that host-to-host communication is not mentioned in the body of the patent or in the claims and that he did not even consider whether the patent disclosed a means for allowing two computers to be able to communicate with one another.  Tr. Vol. 5 336:10-13; 363:8-19 (Levy).

In order to sufficiently enable a claim, a POSITA must be able to make and use the invention without undue experimentation.  *LizardTech,* 424 F.3d at 1345 (Fed. Cir. 2005).  However, the evidence showed that substantial experimentation was required to develop a device capable of what Microchip now claims to have invented.  Tr. Vol. 5 91:23-93:9 ("I think it would require significant experimentation to figure out how to do that.") (Garney).  Microchip's difficulties in developing its own solution to the CarPlay problem demonstrated that the '243 patent did not enable a POSITA to implement a host-to-host communication device.  Contemporaneous documents and testimony from Microchip's corporate witness, Mitch Obolsky, showed that Microchip struggled to understand how anyone could design a device that would allow two USB hosts to communicate with one another, at one point concluding that this "may be physically outside the capabilities of ANY USB system."  TX58 at 1-2; TX262 ("We

looked at developing a solution for 1 upstream lane, persistent USB data and we didn't have a solution. We wish we could provide a solution but we don't have it."); Tr. Vol. 2, 312:5-9 (Obolsky). If the same team of inventors behind the '243 patent could not conceive of a workable host-to-host solution, no reasonable jury could conclude that a POSITA would be able to do so without undue experimentation.

Instead, the undisputed evidence shows that the patent claims a means for allowing two USB hosts to simultaneously connect to, and alternately communicate with, a single USB device. To the extent Microchip were permitted to expand the scope of its claims to capture the concept of host-to-host communication, those claims would be invalid because no reasonable jury could conclude that the specification describes or enables it.

### B. The Specification Neither Describes Nor Enables a Multi-Host Device Controller Without an Arbitration Mechanism

Separately, Microchip took the position at trial that the Asserted Claims were not limited to a multi-host device utilizing an arbitration mechanism to allow two hosts to share a single USB device. Tr. Vol. 5 367:23-368:11 ("Q: Is there anything in claim 23 about arbitration? A: No. Q: So all of those questions had nothing to do with the elements of claim 23; correct? A: Correct.") (Levy); Tr. Vol. 5 223:1-9 (Garney). The patent, however, discloses no way of allowing two hosts to share a single device absent such a mechanism and the evidence presented at trial demonstrated why such a mechanism would be necessary.

The asserted claims require that each host must be able to access and share the same segment of the USB device block. '243 patent, claim 23; Tr. Vol. 3 239:4-18 (Zatkovich). However, USB is a serial protocol in which data travels over a single path. Tr. Vol. 4 271:15-273:11 (Garney); Tr. Vol. 5 334:21-335:9 (Levy). In order to merge these two serial data paths into a single serial data path, there must be a way to prevent collisions between data packets. Tr.

8

Vol. 4 271:15-273:11; 275:2-276:5) (Garney); Tr. Vol. 3 97:22-98:3 ("[W]e're creating a multi-host device controller where the controller must speak to two hosts at the same time, and they must coordinate together because they're both trying to access that same device or that portion of that same device at the same time.") (Zatkovich); Tr. Vol. 5 337:19-338:12 (Levy). In the inventors' original innovation disclosure form, they stated as much, declaring that "[a] 4th block will need to be added which is the arbitration block." TX24 at 6. The evidence at trial established that the ability to arbitrate is critical to the claimed invention. Tr. Vol. 4 at 283:8-284:1 (Garney); TX313 at 28 (the PTAB referred to arbitration as "the heart of the purported invention of the '243 patent (i.e., the 'point of novelty').").

As the uncontroverted evidence shows, the specification fails to describe or teach any other way of addressing the fundamental data collision problem posed by two hosts sharing a single device. Tr. Vol. 4 274:22-275:1 ("Q: Does the patent provide any examples of how one can share a single device between two hosts without arbitration? A: No.") (Garney); Tr. Vol. 5 347:6-15 ("Q: You don't, in your opinion, say that there is some other arbitration mechanism to figure out which host is going to be able to access a device that is described in the patent; right? A: I do not offer an opinion on that.") (Levy). Instead, the specification describes only two ways of avoiding collisions, both using an arbitration block: "by either interleaving host accesses, or by using a common request/grant structure, which may hold-off one host while another host completes a data transfer to/from the shared device." TX1 at 2:62-65; TX24 at 6; Tr Vol. 4 273:12-274:9 (Garney); Tr. Vol. 3 218:8-23 (Zatkovich). The specification explains that which of these approaches should be used is dependent on the type of device being shared by the two hosts. TX1 at 2:65-67. But the jury heard no evidence or testimony explaining how a person of ordinary skill in the art would know from reading the patent how, without significant

9

experimentation, to construct or use a device in which two hosts were capable of sharing a single USB device without some mechanism for arbitrating between host requests. *See ICU Med.*, 558 F.3d at 1378

For this reason, no reasonable jury could conclude that a person of ordinary skill in the art, reviewing the specification, would understand the inventors to have possessed a way of sharing a single device without arbitration. Accordingly, claims 23-25 of the '243 patent are invalid for lack of adequate written description. Likewise, to the extent that the claims asserted in this case cover a shared USB device that does not have an arbitration mechanism, the patent is not enabled because no reasonable jury could find that a person of ordinary skill in the art would be able to make or use such an invention using the disclosure of the '243 patent without undue experimentation.

## IV.  CONCLUSION

The '243 patent specification contains no description or enablement of either host-to-host communication or a means for two USB hosts to share a single USB device without arbitration. No evidence was supplied at trial suggesting such description or enablement existed. Accordingly, if host-to-host communication or arbitration-less sharing of a USB device are within the scope of the asserted claims (necessary but not sufficient conditions for finding infringement), Aptiv is entitled to judgment as a matter of law that the Asserted Claims are invalid for both lack of written description and lack of enablement. Alternatively, in the event that Microchip is permitted to re-try its claims of infringement (which it should not be permitted to do), Aptiv should be entitled to present its written description- and enablement-based invalidity defenses.

OF COUNSEL:

Daralyn J. Durie
Timothy Saulsbury
Eric C. Wiener
Joyce C. Li
DURIE TANGRI LLP
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

W. Henry Huttinger
Andrew T. Jones
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA 90013
(213) 992-4499

Dated: May 20, 2022
10151019

POTTER ANDERSON & CORROON LLP

By: */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Defendant*
*Aptiv Services US, LLC*

11