IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICROCHIP TECHNOLOGY INCORPORATED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-1194-JDW |
| APTIV SERVICES US, LLC, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF MICROCHIP TECHNOLOGY INCORPORATED'S BRIEF IN SUPPORT OF ITS MOTION FOR NEW TRIAL PURSUANT TO RULE 59**

OF COUNSEL:
Bruce W. Slayden II
Brian C. Banner
Joseph D. Gray
Darryl J. Adams
Tecuan Flores
Truman H. Fenton
R. William Beard, Jr.
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
(512) 402-3550

Dated: May 20, 2022

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   LEGAL STANDARD ................................................................................................ 3

III.  ARGUMENT................................................................................................................ 3

    A.  A New Trial Should Be Granted Because Aptiv Argued New Claim
       Construction and Non-Infringement Arguments to the Jury ............................... 3

      1.  It Was Prejudicial Error to Allow Aptiv to Argue Previously-
          Undisclosed Non-Infringement Theories In Closing Arguments ................................... 4

      2.  It Was Prejudicial Error to Allow the Jury to Resolve a Claim
          Construction Dispute ................................................................. 6

    B.  Aptiv Caused Jury Confusion by Arguing the Accused Product Could Not
       Infringe If the Patent Did Not Enable or Describe the Accused Product ........................... 9

    C.  Aptiv's Presentation of Its Own Patents as Evidence of Non-Infringement
       Caused Jury Confusion That Warrants a New Trial ......................................... 13

    D.  A New Trial Should Be Granted Because Aptiv Unfairly Elicited Improper
       Expert Testimony From Microchip's Inventor, Mr. Bohm ............................... 16

IV.   CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases  Page(s)**

*Amgen Inc. et al v. Sanofi*,
   C.A. No. 14-1317-RGA, D.I. 749 (D. Del. Feb. 6, 2019) ...................................................... 16

*ATEN Int'l Co. v. Uniclass Tech. Co.*,
   932 F.3d 1364 (Fed. Cir. 2019) ....................................................................................... 4, 8

*Bio-Technology General Corp. v. Genetech, Inc.*,
   80 F.3d 1553 (Fed. Cir. 1996) ........................................................................................ 2, 15

*Blanche Road Corp. v. Bensalem Township*,
   57 F.3d 253 (3d Cir. 1995),
   *overruled on other grounds by UA Theatre Circuit v. Twp. Of Warrington*,
   316 F.3d 392, 400–01 (3d Cir. 2003) ............................................................................... 3, 4

*Brown v. Nutrition Mgmt. Servs. Co.*,
   C.A. Nos. 08-3840, 09-1779,
   2010 U.S. App. LEXIS 5535 (3d Cir. Mar. 17, 2010)..................................................... 15, 16

*Bullen v. Chaffinch*,
   336 F. Supp. 2d 342 (D. Del. 2004)..................................................................................... 3

*Draper v. Airco, Inc.*,
   580 F.2d 91 (3d Cir. 1978) .................................................................................... 1, 2, 6, 20

*Epistar Corp. v. Int'l Trade Comm'n*,
   566 F.3d 1321 (Fed. Cir. 2009.................................................................................... 10, 13

*Evolved Wireless, LLC v. Apple Inc.*,
   C.A. No. 15-542-JFB-SRF,
   2019 U.S. Dist. LEXIS 37224 (D. Del. Mar. 7, 2019) .......................................................... 16

*Fineman v. Armstrong World Indus.*,
   980 F.2d 171 (3d Cir. 1992) ..................................................................................... 1, 3, 15

*Fiskars, Inc. v. Hunt Mfg. Co.*,
   221 F.3d 1318 (Fed. Cir. 2000) ......................................................................................... 15

*Genentech, Inc. v. Chiron Corp.*,
   112 F.3d 495 (Fed. Cir. 1997) ....................................................................................... 9, 13

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
   540 F.3d 1337 (Fed. Cir. 2008) ......................................................................................... 19

*Lucent Techs., Inc. v. Newbridge Networks Corp.*,
   168 F. Supp. 2d 181 (D. Del. 2001)...................................................................................... 3

*Montgomery Ward & Co. v. Duncan*,
   311 U.S. 243 (1940)............................................................................................................ 3

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ............................................................................. 8, 9

*Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*,
   C.A. No. 1:15-CV-451-RGA, 2017 WL 2221178 (D. Del. May 19, 2017) ............................. 6

*Sonos, Inc. v. D&M Holdings, Inc.*,
   C.A. No. 14-1330-WCB,
   2017 U.S. Dist. LEXIS 193078 (D. Del. Nov. 21, 2017) ......................................................... 15

Plaintiff Microchip Technology Incorporated ("Microchip") respectfully moves the Court for a new trial pursuant to Federal Rule of Civil Procedure 59.

## I.  INTRODUCTION

Aptiv's trial presentation was littered with improper and prejudicial arguments calculated to distract the jury from the relevant issues. Whether considered individually or as a whole, Aptiv's presentation of these improper arguments warrants a new trial under Third Circuit law. *See Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (combination of improprieties by plaintiff's counsel constituted grounds for a new trial). The choice by Aptiv's counsel to highlight all of these prejudicial arguments in Aptiv's closing argument makes it more than "reasonably probable" that they improperly influenced the jury's non-infringement verdict. *Id.* at 97; *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 206–07 (3d Cir. 1992) ("Our test is whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements.").

The prejudicial arguments presented to the jury during trial and in Aptiv's closing include:

1. Aptiv included new claim construction and non-infringement arguments in its closing argument. Aptiv argued that "a shared USB device block operable to be simultaneously configured by two or more USB hosts" in claim 23 of the '243 Patent means that two hosts must configure the shared USB device block at the same time. Ex. A, Tr. Vol. 6 at 120:18–20 ("The dual role hub, two hosts cannot configure their devices at the same time. It has to be different times."). Microchip objected because (1) Aptiv did not disclose this non-infringement theory during discovery and (2) arguing claim construction to the jury is prejudicial. The Court denied Microchip's request to keep this argument from the jury.

2. Aptiv's testimony and argument regarding written description and enablement confused the jury on the infringement issue. Aptiv argued the asserted patents fail to

1

describe or enable the accused product, which Aptiv characterized as "host-to-host communication." This argument was unduly prejudicial and confused the jury by suggesting Aptiv's Dual Role Hub cannot infringe because Microchip's patent does not describe or enable "host-to-host communication." The Court denied Microchip's request to keep this argument from the jury.

3. Evidence and argument regarding Aptiv's five patents was unduly prejudicial, confused the jury, and likely contributed to the non-infringement verdict. It is black letter law that "the existence of one's own patent does not constitute a defense to infringement of someone else's patent." *Bio-Technology General Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996). Yet Aptiv introduced evidence of its own patents in order to improperly suggest Aptiv's design did not infringe Microchip's patent (e.g., the existence of Aptiv's patents shows that the accused technology is different from the asserted patents). The Court denied Microchip's request to keep this argument from the jury.

4. Over Microchip's objection, Aptiv elicited improper expert testimony from Microchip's inventor, Mr. Bohm. This testimony was highly prejudicial and likely tainted the jury's view of Mr. Bohm and of Microchip. It is reasonably probable this contributed to the non-infringement verdict.

Taken individually or together, these arguments improperly influenced the jury's non-infringement verdict and resulted in an unfair trial. Thus, a new trial should be granted. *Draper*, 580 F.2d at 97 (new trial granted where it is reasonably probable the verdict was influenced by prejudicial statements).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 59(a), a new trial may be granted "in an action in which there has been a trial by jury for any of the reasons for which new trial have heretofore been granted in actions at law in the courts of the United States . . . ." Fed. R. Civ. P. 59(a).

A motion for new trial may be "bottomed on the claim that . . . the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence . . . ." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). One basis for granting a new trial is counsel misconduct involving improper attorney argument that unfairly influences the verdict. *See, e.g., Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 264 (3d Cir. 1995), *overruled on other grounds by UA Theatre Circuit v. Twp. Of Warrington*, 316 F.3d 392, 400–01 (3d Cir. 2003); *Fineman*, 980 F.2d at 206–07; *Lucent Techs., Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 181, 251 (D. Del. 2001); *Draper v. Airco, Inc.*, 580 F.2d 91, 94 (3d Cir. 1978). In determining whether to grant a motion for a new trial, the Court need not view the evidence in the light most favorable to the verdict winner. *Bullen v. Chaffinch*, 336 F. Supp. 2d 342, 347 (D. Del. 2004).

## III. ARGUMENT

### A. A New Trial Should Be Granted Because Aptiv Argued New Claim Construction and Non-Infringement Arguments to the Jury

At trial, Aptiv disputed whether the accused Dual Role Hub includes "a shared USB device block operable to be simultaneously configured by two or more USB hosts," as required by claim 23 of the '243 Patent. Although Aptiv never raised the issue in its expert reports or in response to Microchip's interrogatory seeking "the entire factual basis" for Aptiv's non-infringement defense, Aptiv's counsel hinted for the first time during the cross-examination of Microchip's infringement expert that the accused Dual Role Hub does not infringe because two hosts do not configure the

3

dual role hub at the same time. *E.g.*, Ex. B, Tr. Vol. 3 at 175:5–9, 201:23–202:2, 251:23–252:9. In its closing arguments, Aptiv's counsel argued for the first time that in order to infringe claim 23, two hosts must configure the device controllers in the dual role hub simultaneously. Ex. A, Tr. Vol. 6 at 115:24–116:3 ("The second reason we do not infringe, we do not have the possibility for two hosts to configure a device simultaneously."), 116:4–122:17; Ex. C at 152–170 (Aptiv's closing slides arguing non-infringement "Reason #2: Two Hosts Do Not Configure Both Devices Simultaneously").

Prior to the closing arguments, Microchip's counsel objected to Aptiv's raising this new argument during closing because (1) it was not disclosed during discovery, and (2) it asks the jury to determine claim scope. Ex. A, Tr. Vol. 6 at 12:14–14:17, 18:19–20:12. It is improper to argue claim construction to the jury. *See ATEN Int'l Co. v. Uniclass Tech. Co.*, 932 F.3d 1364, 1370 (Fed. Cir. 2019) ("It is beyond dispute that claim construction issues are to be decided by the court."). The Court nevertheless allowed Aptiv to make the untimely argument. *Id.* 17:23–18:6, 23:4–17.

### 1. It Was Prejudicial Error to Allow Aptiv to Argue Previously-Undisclosed Non-Infringement Theories In Closing Arguments

Aptiv's counsel improperly argued new non-infringement theories during closing argument and these improper arguments unfairly influenced the verdict. *See Blanche Road*, 57 F.3d at 264 (improper attorney argument that unfairly influences the verdict is basis for granting a new trial). More specifically, Aptiv's "second reason" for not infringing—"we do not have the possibility for two hosts to configure a device simultaneously" (Ex. A, Tr. Vol. 6 at 115:24–116:3)—was never disclosed during discovery. During the morning arguments on the last day of trial, Aptiv argued this theory was disclosed in "page 11, paragraph 5" of Aptiv's interrogatory response. *Id.* at 17:3–5, 15:13–24. That paragraph does not disclose the new theory. *See* Ex. D at

11–12 (2019-05-17 Aptiv's Corrected Supplemental Responses to Microchip's Interrogatories (1–5)) ("5/17 ROGs").

Aptiv's new non-infringement argument ("we do not have the possibility for two hosts to configure a device simultaneously" (Ex. A, Tr. Vol. 6 at 115:24–116:3)) is not disclosed in this interrogatory response. Rather, this interrogatory response is directed to a different patent (the '191 Patent) that was no longer at issue at trial. Ex. E ('191 Patent). Claim 1 of the '191 Patent was asserted when Aptiv served its interrogatory response. In pertinent part, Claim 1 of the '191 Patent recites:

> wherein the USB hub is operable to ***automatically provide connectivity*** between the second host device and one or more of the plurality of peripheral devices ***when the second host device is connected to the USB hub***,

Ex. E at 12:46–49 ('191 Patent claim 1) (emphasis added). Paragraph 5 of Aptiv's interrogatory response shows what does not happen when an iPhone is first attached or connected to the Dual Role Hub: the iPhone does not automatically connect as a host to USB devices when attached to the Dual Role Hub. Ex. D at 12. This confirms the response is directed at the "automatically provid[ing] connectivity" limitation of claim 1 of the '191 Patent. It has nothing to do with the '243 Patent.

Because Aptiv's new non-infringement theory was not disclosed during discovery, it was highly prejudicial to allow Aptiv to present it to the jury during closing arguments. *See Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*, C.A. No. 1:15-CV-451-RGA, 2017 WL 2221178, at *2 (D. Del. May 19, 2017) (precluding new non-infringement arguments raised for the first time trial). Thus, it is "reasonably probable" the jury's non-infringement verdict was improperly influenced. *Draper*, 580 F.2d at 97.

### 2.  It Was Prejudicial Error to Allow the Jury to Resolve a Claim Construction Dispute

During the morning argument, Microchip's counsel identified a claim construction dispute to the Court. At that time, Microchip had not yet seen Aptiv's new non-infringement theory, yet it was clear one was coming out during closing and that it included an improper claim construction argument:

> Claims 23 through 25 are device claims; they are not method claims that have to be performed. They are components or functionality within the chip as sold. And what I think we are hearing, ***and it hasn't been fully explained yet***, is that because -- what we did hear just now is that software from the head unit must be installed on the chip before the second device can be connected.
>
> * * *
>
> We believe that if Aptiv had disclosed this theory, there would have been a clear dispute of claim scope that we could have become aware of before two days ago, and that issue would have been raised to the Court and it would have needed to have been resolved under *O2 Micro*.
>
> The jury is not supposed to hear arguments over claim scope.

Ex. A, Tr. Vol. 6 at 13:3–12, 13:21–14:5 (emphasis added).

Aptiv's counsel responded: "Let me be clear about what the argument is. The argument is that the device, as sold, does not meet each of the claim limitations. It is not about a method claim, it is a device claim, but the argument is about the characteristics of the device." *Id.* 20:13–18. The Court ruled it would not "preclude Aptiv from making the argument. . . . I'll let the argument go

and, you know, [Aptiv] can argue it is a plain and ordinary meaning of . . . the claim. And the jury will decide if they agree with that or not." *Id.* at 23:5–14.

Rather than argue plain and ordinary meaning, Aptiv's counsel argued claim construction to the jury (just as Microchip predicted). Indeed, Aptiv's counsel argued:

> The claim requires, claim 23, a shared USB device block operable to be simultaneously configured by two or more hosts. Simultaneously means at the same time. . . . So what's configuration? Configuration is a request from a host to a device to figure out what it is and what it can do. That's in the USB specification. . . .

*Id.* at 116:9–12, 116:17–20. Aptiv's counsel then launched into a full verbal *Phillips* claim construction analysis, citing to the following categories of extrinsic and intrinsic evidence to support Aptiv's new claim construction argument:

- extrinsic expert testimony (*id.* at 116:13–16, 117:8–15, 119:10–120:16) (discussing Mr. Zatkovich, Dr. Levy, and Mr. Garney testimony)

- extrinsic references (*id.* at 116:20–22) (discussing the USB Specification)

- extrinsic inventor evidence (*id.* at 117:16–118:8) (discussing Mr. Bohm's invention disclosure)

- intrinsic specification (*id.* at 118:8–19) (discussing Figure 3)

- intrinsic file history (*id.* at 118:20–119:4) (discussing Microchip's expert's statements in the *inter partes* review)

Aptiv's counsel then improperly argued—based on this improper claim construction—that the Dual Role Hub does not infringe because "two hosts cannot configure their devices at the same time. It has to be different times. That's not a factor in dispute. Both sides agree about that." *Id.* at 120:18–22. In other words, Aptiv's new argument—based on its improper claim construction argument to the jury—was that configuration by both hosts does not happen at the same time

because software from the head unit must be installed on the chip before the second device can be connected and configured.

Contrary to what Aptiv told the jury (*see id.* ("That's not a factor in dispute.")), Microchip never agreed with Aptiv's interpretation of the claim. That is precisely why Microchip raised the issue prior to the closing arguments, pointing out Microchip's suspicion about an improper, eleventh-hour claim construction argument Aptiv was presenting to the jury. Because the Court denied Microchip's requested relief, the jury was left to decide the legal claim construction issue.

In *O2 Micro* the Federal Circuit held "[w]hen the parties raise an actual dispute regarding the proper scope of [] claims, the court, *not the jury*, must resolve that dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (emphasis added); *ATEN*, 932 F.3d at 1370. The *O2 Micro* Court further held that:

> [The] dispute over the scope of the asserted claims is a question of law. In deciding that [the disputed term] needs no construction because the term has a 'well understood definition,' the district court failed to resolve the parties' dispute because the parties disputed not the meaning of the words themselves, but the scope that should be encompassed by this claim language. A determination that a claim term "needs no construction" or has the "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute.

*Id.* at 1361. The Court further elaborated:

> When the district court failed to adjudicate the parties' dispute regarding the proper scope of [the disputed term] the parties presented their arguments to the jury. By failing to construe this term, the district court left the jury free to consider these arguments. …
>
> When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.

I*d.* at 1362.

Because the parties clearly disputed the meaning of terms the Court gave their plain and ordinary meaning, it was prejudicial error not to have construed those terms, thereby leaving the

legal question of claim construction to be answered by the jury. Such error warrants a new trial. *O2 Micro*, 521 F.3d at 1362–63 (Federal Circuit remanding for further proceedings where district court failed to resolve claim term dispute and instead construed claim term to have a plain and ordinary meaning thereby leaving a legal issue for the jury).

### B. Aptiv Caused Jury Confusion by Arguing the Accused Product Could Not Infringe If the Patent Did Not Enable or Describe the Accused Product

Microchip moved *in limine* to preclude Aptiv under Federal Rules of Evidence 402 and 403 from offering testimony "that the asserted patents must enable the accused devices . . ." D.I. 340 at 1. As Microchip set forth in its motion, "testimony about the description and enablement of an accused device is unduly prejudicial as confusing to the jury" because it conflates the different legal standards related to the "scope" (or "full scope") of the invention/claims. *Id.* at 4–5. "For infringement, . . . the 'scope of the invention' may—as here—include the accused products." *Id.* at 5 (citing *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997)). In contrast, the "full scope" for purposes of written description and enablement refers to the claims as construed, not the accused product. *Id.* at 4–5. In other words, allowing Aptiv to testify the patent must enable/describe the accused product results in the following legally erroneous non-infringement conclusion: *If the patent does not describe and enable host-to-host communication, then host-to-host communication must be outside "the full scope of the claims"—i.e., there cannot be infringement.*

The Court denied Microchip's motion *in limine* and allowed Aptiv to present testimony that the '243 Patent does not describe or enable a USB device block that is "a bridge that connects two hosts and allows them to communicate with one another" (i.e., host-to-host communication). D.I. 351 at 2. The Court allowed this testimony even though (1) none of the asserted claims recites host-to-host communication Ex. F at 6:65–8:11 ('243 Patent claims 23–25); and (2) the Court

9

previously (and correctly) held that the '243 Patent "need not describe and enable the accused device" D.I. 247 at 13 (citing *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1336 (Fed. Cir. 2009).

As anticipated, Aptiv had its expert, Mr. Garney, testify that the '243 Patent does not describe host-to-host communication (i.e., the accused product):

> Do you have an opinion on whether the inventors possess [sic], as part of their invention, host-to-host communication using a shared device?
>
> A. No, there is no hint in the patent that talks about host-to-host communication. I would expect if they possess [sic] that, they would have had something to say about it.

Ex. G, Tr. Vol. 5, 89:23–90:6. Aptiv also elicited trial testimony from Mr. Garney that the '243 Patent does not enable host-to-host communication (i.e., the accused product):

> And specifically my question is, do the disclosures in the patent enable one skilled in the field to make and implement a host-to-host communicating shared USB device without undue experimentation?
>
> A. No, I think it would require significant experimentation to figure out how to do that. There is a substantial difference between two devices that are communicating and one device that you are not sharing . . . .

*Id.*, 91:23–13. This testimony focused on the accused product, not the asserted claims as required by controlling authority. *See Epistar*, 566 F.3d at 1336; *see also* 35 U.S.C. § 112.

Aptiv then used this testimony during closing arguments to confuse the jury as to the "scope" issues—just as Microchip warned in its motion *in limine*. Aptiv's counsel argued if the patent does not describe and enable host-to-host communication, then host-to-host communication must be outside "the full scope of the claims"—i.e., there cannot be infringement:

> So going back to our little deed on the piece of land, right, this is what you stake out as your invention. You say, here is what I invented. And in this case, we think what Mr. Bohm and Mr. Ghosh said they invented was this idea of two hosts sharing one USB device. Then that's what you get. That's how you've got to describe that.

But if you come along and somebody else does something a little bit different, maybe like some form of host-to-host communication, and you look at that and you say that's nifty, I would like to have that, too, and you say now I think my patent is actually big enough to cover all of that so I own what you came up with, too, you better have said that really clearly in your patent or your patent is invalid.

Ex. A, Tr. Vol. 6, 123:11–124:4.

Aptiv's closing argument demonstrative slides shown to the jury highlighted the same legally erroneous and confusing concept. Aptiv first illustrated patent claims ("what you stake out as your invention") as a deed to a plot of land:



Ex. C, Aptiv Closing Demonstrative Slides, at 174 (dotted red outline showing plot). Aptiv then illustrated the accused host-to-host communication device as outside the full scope of the claims (i.e., on top of the house outside the deeded plot of land).



*Id.*, 176. Next, Aptiv illustrated an expanded plot large enough to encompass the accused product and stamped the illustration "INVALID."



*Id.*, 178.  These demonstratives illustrate Aptiv's prejudicial and legally erroneous argument that if the accused product is not mentioned in the patent, the patent is either invalid or not infringed. This argument becomes even more prejudicial when the jury is instructed that patents are presumed

valid, as this likely further confuses the jury to believe that the only option is a finding of non-infringement.

Aptiv's presentation of evidence and argument to the jury focusing on the accused product (host-to-host communication) rather than the claim language likely confused the jury into believing there could be no infringement simply because the patent does not mention "host-to-host communication." That is not the law. As this Court previously ruled, a patent "need not describe and enable the accused device" D.I. 247 at 13 (citing *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1336 (Fed. Cir. 2009)). One reason for this rule is that "'[c]omprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim." *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997). In this case, the asserted patent claims a USB multi-host device. Aptiv incorporates the patented USB multi-host device into a bridge that Aptiv calls a host-to-host bridge, and the host-to-host bridge is incorporated into a USB hub chip called Boston. For the purposes of enablement and written description, the patent need only describe and enable the full scope of the claims (i.e., a USB multi-host device). The patent does not need to describe or enable the accused product (including host-to-host communication or the Boston chip).

Aptiv's improper argument on enablement and written description was unduly prejudicial and confused the jury by suggesting Aptiv's Dual Role Hub cannot infringe because Microchip's patent does not describe or enable "host-to-host communication." A new trial should be granted.

## C. Aptiv's Presentation of Its Own Patents as Evidence of Non-Infringement Caused Jury Confusion That Warrants a New Trial

Microchip moved *in limine* to exclude all reference to Aptiv's own patents, because they are irrelevant and unduly prejudicial under Federal Rules of Evidence 401, 402, and 403. D.I. 319 at 1; D.I. 320 at 9–11. As Microchip set forth in its motion, "[t]he only possible use of Aptiv's

patents at trial would be to improperly suggest or infer to the lay jury that Aptiv does not infringe or should not incur liability because it possesses patents related to the accused products." D.I. 320 at 10. In response, Aptiv called that argument a "strawman," and stated that "Aptiv will not argue at trial that its patents are a defense to infringement . . . ." D.I. 336 at 10. Instead, it said it would raise the patents only in the context of damages, enablement and willfulness. *Id.* The Court then denied Microchip's motion *in limine*, holding that the patents "bear on Microchip's damages claim, at a minimum." D.I. 351 at 1–2. No trial witness referenced Aptiv's patents in connection with damages. Indeed, Aptiv did not present a damages expert at all.

Aptiv then proceeded to argue, in closing, that the patents were relevant to non-infringement, presenting a slide contrasting Microchip's purportedly non-USB-compliant solution, covered by one patent, to Aptiv's purportedly USB-compliant solution, covered by five patents:



Ex. C, Aptiv's Closing Demonstrative Slides, at 247; *see also id.* at 72–74, 78 (describing Aptiv's patents). Counsel for Aptiv used this slide, showing Aptiv's five patents, to argue that Aptiv's product was different from Microchip's single asserted patent:

> Now, I want to close with this. Mr. Bohm came up with an idea to have a way for two computers to share one peripheral device, printer, whatever. He said off-the-shelf standard USB device, go get one, this will be a way to share it.

14

> And he was super clear, not USB compliant, because there are two hosts and one device. That's the patent.
>
> **Unwired came up with a completely different solution.** That solution was having each host get its own device. That is why it is USB compliant. You heard nothing about that in Microchip's closing, but that is the core fundamental difference between these products.

Ex. A, Tr. Vol. 6 at 148:10–149:1 (emphasis added). Thus, contrary to its pretrial representations and the black letter law, Aptiv used its own patents to argue non-infringement.

Under Third Circuit law, the Court may grant a new trial when it is "'reasonably probable' that the verdict was influenced by prejudicial statements" made during a closing, *Fineman*, 980 F.2d at 206–07, or "when the court believes the verdict results from jury confusion," *Brown v. Nutrition Mgmt. Servs. Co.*, C.A. Nos. 08-3840, 09-1779, 2010 U.S. App. LEXIS 5535, at *4 (3d Cir. Mar. 17, 2010). By presenting slides showing Aptiv's five patents while arguing that Aptiv "came up with a completely different solution," Aptiv's counsel used the patents in exactly the way that it said it would not, and in exactly the way that is prohibited by the caselaw: to argue non-infringement. Ex. A, Tr. Vol. 6 at 148:10–149:1; *see Bio-Technology General Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("the existence of one's own patent does not constitute a defense to infringement of someone else's patent.").

This argument was improper, prejudicial, and likely confused the jury by implying that Aptiv's own patents are a basis for non-infringement. *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) (It "is well established that separate patentability does not avoid [infringement] as a matter of law[.]"); *Sonos, Inc. v. D&M Holdings, Inc.*, C.A. No. 14-1330-WCB, 2017 U.S. Dist. LEXIS 193078, at *4 (D. Del. Nov. 21, 2017) ("The fact that D&M has patents in the same technological field is not a defense to infringement, but could mislead the jury into believing that D&M's patents give it the right to practice technology that is covered by those patents even though it is also covered by Sonos's patents."). Aptiv's own patents are not relevant

to the question of whether Aptiv's device infringes Microchip's patent, and using them to argue non-infringement served only to confuse the jury and prejudice Microchip. *See Evolved Wireless, LLC v. Apple Inc.*, C.A. No. 15-542-JFB-SRF, 2019 U.S. Dist. LEXIS 37224, at *25-26 (D. Del. Mar. 7, 2019) ("The existence of one's own patent is not a defense to infringement. It is irrelevant to the issue of infringement."); *Amgen Inc. et al v. Sanofi*, C.A. No. 14-1317-RGA, D.I. 749 (D. Del. Feb. 6, 2019) (precluding reference to prosecution of defendant's patents "to avoid potential confusion [and] misleading the jury").

Aptiv may argue that the Court's instructions were sufficient to cure any prejudice or confusion. They were not. The Court instructed the jury that "[o]wnership of a patent is not a defense to patent infringement," that "the fact that Aptiv had patents has no bearing on whether it has infringed Microchip's patent," and that "you must only consider the claims of the '243 Patent." Ex. G, Tr. Vol. 5 at 392:9–20. But those instructions do not encompass how Aptiv *used* its patents at trial: they used them to argue Aptiv invented "a completely different solution," with the weight of the Patent Office's authority behind their defense. Ex. A, Tr. Vol. 6 at 148:19–149:1. Thus, the Court's instruction merely informed the jury that Aptiv's patents themselves do not indicate non-infringement, but it did little to counteract Aptiv's fundamental and misleading argument that the Patent Office had determined Aptiv invented its own, patentably separate, standards-compliant system different than Microchip's purportedly non-compliant system. That argument remained and caused prejudice and likely jury confusion sufficient to warrant a new trial. *See Brown*, 2010 U.S. App. LEXIS 5535, at *4.

### D. A New Trial Should Be Granted Because Aptiv Unfairly Elicited Improper Expert Testimony From Microchip's Inventor, Mr. Bohm

Aptiv unfairly elicited improper expert testimony from Microchip's inventor and fact witness, Mark Bohm, by asking him to compare two patent claims on the fly from the witness

16

stand. After the Court overruled Microchip's objection, Aptiv relied on this improper questioning to discredit Mr. Bohm as a witness and to unfairly suggest that asserted claim 23 is the same as unasserted and previously invalidated claim 1, thus undermining Microchip's case in general.

Aptiv filed a petition for *inter partes* review for the '243 Patent and argued *unsuccessfully* to the Patent Office that asserted claim 23 has the same scope as claim 1. The Patent Office rejected this argument and refused to invalidate claim 23 because Aptiv failed to address the substantive differences between the claims:

> We are persuaded by Patent Owner's arguments. Even if Petitioner's arguments in its Reply are persuasive, Patent Owner correctly observes that the Petition did not present any arguments specific to the substantive differences between claim 23 and claim 1—namely that the function block need be operable to be "simultaneously configured by two or more hosts." PO Resp. 43.

Ex. H, Trial Exhibit 370, at 3415(FWD at 62). This decision was affirmed by the Federal Circuit on appeal.

Despite confirmation that claim 23 contains ***substantive*** differences as compared to claim 1, Aptiv improperly again sought to equate the two claims at trial through improper questioning of Mr. Bohm—a fact witness who was not offered to provide expert opinions regarding the scope of the claims. Aptiv's counsel asked Mr. Bohm to identify differences between invalidated claim 1 and claim 23 asserted at trial:

> Q. And while that's happening, let me just ask you, what's the difference between claim 1, which is invalid, and claim 23?
>
> A. Well, I -- I'll need to be honest with you, I have not sat studying the difference between claim 1 and claim 23, so it's not something I have done prior to coming here today.
>
> Q. Do you want to take a look at claim now and let me know what the difference is?
>
> A. I certainly can, if you don't mind my taking some time.
>
> Q. That's no problem. Thank you.

(Whereupon, the witness reviews the exhibit.)

Ex. I, Tr. Vol. 2 at 146. But Mr. Bohm lacked personal knowledge to answer these questions because he did not write the claims or understand the legal meaning of the words in the claims. *Id.* at 190–191; *see* Fed. R. Evid. 602.

Microchip's counsel timely objected to Aptiv's question as seeking an expert opinion from a fact witness:

> MR. BANNER: Your Honor, I'm going to object that the exercise that's being asked to be performed here is asking for an expert opinion.
>
> THE COURT: It's overruled.

Ex. I, Tr. Vol. 2 at 147; *see* Fed. R. Evid. 702.

After the Court overruled the objection, Mr. Bohm endeavored to analyze and compare the two claims for the first time from the witness stand. Due to the impropriety of the question, Mr. Bohm was silent for nearly five minutes as he attempted to compare the two claims. Ex. I, Tr. Vol. 2 at 147–48. After that long silence, Mr. Bohm was ultimately unable to identify substantive differences:

> Q. Are there any other differences you identified -- or rather, I should say, is there anything else that you identified that you think is different?
>
> A. No, nothing else. It seemed to me that what I was seeing in claim 23 appeared to be pretty well included in claim 1.

*Id.* at 148–49.

Aptiv's counsel's improper solicitation of expert testimony from Mr. Bohm likely undermined Mr. Bohm's credibility in the eyes of the jury. Up until that point, Mr. Bohm had provided confident and helpful explanations about his patent and the subject matter therein. Being pressed to perform an expert analysis on the fly (and with no previous expert or testifying experience) caused Mr. Bohm to take up a large amount of time, which likely gave the jury the

18

false impression Mr. Bohm does not understand what he invented. Allowing this question was improper because:

> [Inventor] testimony is . . . limited by the fact that an inventor understands the invention but may not understand the claims, which are typically drafted by the attorney prosecuting the patent application. As we have explained, 'it is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO.' *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346–47 (Fed. Cir. 2008).

It's likely this improper questioning negatively affected Mr. Bohm's credibility because Aptiv reminded the jury of this questioning during closing:

> But the result of that is that the patent office said claim 1 is invalid in view of Dickens. …. And you may remember, you know, I asked him -- or actually I didn't ask him, my colleague, Mr. Saulsbury, asked him, "But what's the difference between claim 1 and claim 23?" You are the inventor. What did you understand the difference here to be? ***Remember, he thought about it for a really long time***, he studied it really carefully, and at the end of that he said, "Seems to me that it's about the same."

Ex. A, Tr. Vol. 6 at 129 (emphasis added). Counsel's characterization that Mr. Bohm took "a really long time" to study the claims also unfairly undermined Mr. Bohm's credibility before the jury and may have even suggested Microchip and its inventor purposefully wasted trial time. Additionally, Aptiv used this improper questioning to unfairly suggest that asserted claim 23 is the same as unasserted and previously invalidated claim 1, thus undermining Microchip's case in general.

Microchip is entitled to a new trial based on Aptiv's counsel improper solicitation of expert testimony from Mr. Bohm that was used to unfairly undermine the credibility of Microchip's main witness and to undermine Microchip's case in general.

# IV. CONCLUSION

As established above, Aptiv's trial presentation contained many prejudicial arguments that likely confused the jury. These improprieties warrant a new trial. *See Draper*, 580 F.2d at 95 (combination of improprieties by plaintiff's counsel constituted grounds for a new trial).

Respectfully submitted,

SHAW KELLER LLP

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Bruce W. Slayden II
Brian C. Banner
Joseph D. Gray
Darryl J. Adams
Tecuan Flores
Truman H. Fenton
R. William Beard, Jr.
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
(512) 402-3550

Dated: May 20, 2022

20