**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

MICROCHIP TECHNOLOGY INC.        )
                                 )
            Plaintiff,           )
                                 )
    v.                           )        C.A. No. 17-01194-JDW
                                 )
APTIV SERVICES US, LLC,          )
                                 )
            Defendant.           )

**DEFENDANT APTIV SERVICES US, LLC'S OPPOSITION TO
PLAINTIFF MICROCHIP TECHNOLOGY INCORPORATED'S
<u>MOTION FOR A NEW TRIAL PURSUANT TO RULE 59</u>**

OF COUNSEL:

Daralyn J. Durie
Timothy Saulsbury
Eric C. Wiener
Joyce C. Li
DURIE TANGRI LLP
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

W. Henry Huttinger
Andrew T. Jones
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA  90013
(213) 992-4499

Dated:  June 10, 2022

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant
Aptiv Services US, LLC*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ...................................................................................................1

II.    LEGAL STANDARD............................................................................................1

III.   ARGUMENT .........................................................................................................2

      A.     The "Simultaneously Configured" Non-Infringement Argument Was Disclosed, Required No Claim Construction By The Jury, And Microchip Never Objected To It At Trial. .................................................................................................2

             1.     Aptiv Disclosed the "Simultaneously Configured" Argument During Discovery. ........................................................................................3

             2.     Microchip Waived Any Argument for Claim Construction of the "Simultaneously Configured" Term. ..........................................7

      B.     Aptiv's Section 112 Arguments to the Jury Were Proper. .....................................8

      C.     Aptiv's Arguments Relating To Its Own Patents Were Proper. ............................12

      D.     Aptiv's Cross Examination Of Mr. Bohm Was Proper. ........................................15

      E.     None Of Aptiv's Allegedly Improper Arguments Warrant A New Trial. .............16

             1.     Microchip's Asserted Grounds Do Not Warrant A New Trial. .................16

             2.     There Was No Prejudice. ..........................................................................18

IV.   CONCLUSION....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*,
  759 F.3d 1285 (Fed. Cir. 2014).................................................................................9

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  314 F.3d 1313 (Fed. Cir. 2003).................................................................................10

*Bullen v. Chaffinch*,
  336 F. Supp. 2d 342 (D. Del. 2004)....................................................................2, 16

*Dorsett v. Am. Isuzu Motors, Inc.*,
  805 F. Supp. 1212 (E.D. Pa. 1992), aff'd, 977 F.2d 567 (3d Cir. 1992) ...............18

*Draper v. Airco, Inc.*,
  580 F.2d 91 (3d Cir. 1978)........................................................................16, 17, 18

*Dunn v. HOVIC*,
  1 F.3d 1371 (3d Cir.1993) (en banc).......................................................................2

*Enovsys LLC v. Nextel Comm'ns, Inc.*,
  614 F.3d 1333 (Fed. Cir. 2010).................................................................................7

*GPNE Corp. v. Apple Inc.*,
  830 F.3d 1365 (Fed. Cir. 2016).................................................................................8

*Leonard v. Stemtech Int'l Inc.*,
  834 F.3d 376 (3d Cir. 2016)...............................................................................2, 16

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
  798 F. Supp. 2d 541 (D. Del. 2011)..........................................................................8

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  481 F.3d 1371 (Fed. Cir. 2007).................................................................................9

*Murray v. Fairbanks Morse*,
  610 F.2d 149 (3d Cir. 1979)...............................................................................2, 12

*Rivera v. ITC*,
  857 F.3d 1315 (Fed. Cir. 2017).................................................................................9

*Sitrick v. Dreamworks*,
  516 F.3d 993 (Fed. Cir. 2008).................................................................................9

*Smith v. Rosebud Farm, Inc.*,
  898 F.3d 747 (7th Cir. 2018) ................................................................................................2

*Voice Techs. Grp., Inc. v. VMC Sys., Inc.*,
  164 F.3d 605 (Fed. Cir. 1999)................................................................................................15

## I.      INTRODUCTION

After the Court and the parties invested significant resources preparing for and conducting a six-day jury trial, Microchip seeks a "do over."  None of Microchip's articulated grounds for a new trial comes even close to clearing the high bar for such a request.

Microchip primarily focuses on arguments made during Aptiv's closing.  Nothing Aptiv's counsel said was objectionable, and certainly not objectionable enough to warrant a new trial, as evidenced by the fact that Microchip never objected to anything Aptiv's counsel said.  Microchip attempts to remedy this deficiency by pointing to motions and objections it did raise (and lost), but those objections raised different issues.  Nor does Microchip provide any reason to think that any such arguments were so powerful or pervasive that the jury's verdict was tainted by them.  In fact, Microchip can point to no prejudice from the complained-about arguments because there was overwhelming evidence, distinct from those arguments, that there was no infringement because the Accused Product (Aptiv's Dual Role Hub) did not allow two USB hosts to share a single USB device or function.   And, even if the jury had returned a verdict of infringement, Aptiv would have been entitled to a judgment as a matter of law on both infringement and invalidity.

The jury considered over a week's worth of evidence and arguments, was instructed by the Court on the issues raised in Microchip's motion (in some cases using instructions which Microchip itself proposed), and delivered a verdict of non-infringement.  Microchip has pointed to nothing in the record that would counsel overriding the jury's verdict.

## II.     LEGAL STANDARD

Microchip faces an extremely high bar in arguing for a new trial based on allegedly improper conduct by Aptiv's counsel.  In the Third Circuit, a new trial is only warranted where the "improper statements . . .  so pervade[d] the trial as to render the verdict a product of

prejudice." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 399 (3d Cir. 2016) (quotation omitted). "A new trial should only be granted where 'a miscarriage of justice would result if the verdict were to stand,' the verdict 'cries out to be overturned,' or where the verdict 'shocks our conscience.'" *Bullen v. Chaffinch*, 336 F. Supp. 2d 342, 347 (D. Del. 2004) (quoting *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991)).  In view of this onerous standard, "[i]mproper statements made during closing arguments seldom warrant a new trial." *Smith v. Rosebud Farm, Inc.*, 898 F.3d 747, 753 (7th Cir. 2018); *see also Dunn v. HOVIC*, 1 F.3d 1371, 1377 (3d Cir.1993) (en banc).  It is also well established that the failure to object to statements made during closing arguments "precludes [a party] from seeking a new trial on the ground of the impropriety of opposing counsel's closing remarks." *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979) (*citing Gilmore v. Strescon Indus., Inc.,* 66 F.R.D. 146, 152 (E.D. Pa.), *aff'd,* 521 F.2d 1398 (3d Cir.1975)).

## III.   ARGUMENT

### A.   The "Simultaneously Configured" Non-Infringement Argument Was Disclosed, Required No Claim Construction By The Jury, And Microchip Never Objected To It At Trial.

Aptiv argued at trial that the Dual Role Hub does not have "a shared USB device block[1] operable to be ***simultaneously configured*** by two or more USB hosts"—a limitation in each of the Asserted Claims (the "simultaneously configured" argument).  *See* Trial Tr. Vol. 6 at 8:3-16. Instead, the head unit completes its configuration process before the iPhone begins configuration. *Id.* at 120:23-122:13.  Microchip moves for a new trial on the ground that this argument was not disclosed during discovery and improperly required the jury to engage in claim construction—

---

[1] The Court construed "USB device block" as "a USB device or segment of a USB device that performs a function to provide a capability to a host over USB."  D.I. 114 at 3.

arguments it claims to have raised the morning before closings.  Br. at 3-9.  Not so.

1. **Aptiv Disclosed the "Simultaneously Configured" Argument During Discovery.**

In making this request, Microchip has conflated two distinct non-infringement arguments.

In its closing, Aptiv argued that the Asserted Claims are not infringed (even when combined with an appropriate head unit) because the Dual Role Hub never allows a USB device block to be configured by two hosts at the same time (the "simultaneously configured" argument).  Aptiv disclosed this "simultaneously configured" argument during discovery.  *See* Ex. 1 (First Suppl. Obj. & Resp. to Pl.'s First Set of Interrogatories) at 11 (¶ 3) ("No USB device in the Dual Role Hub is ever enumerated by multiple USB hosts, ***let alone enumerated by two hosts at the same time***, or accessed by two or more hosts alternately.") (emphasis added).

The morning of closing arguments, the parties addressed a different argument:  that Aptiv does not ***directly*** infringe by selling the Dual Role Hub because the Dual Role Hub as sold (which is to say, without the head unit) is not capable of ***connecting*** to more than one host ***at all***, as required by the claims (the "as sold" argument).  The parties discussed where there was support in the record for that different argument.  This "as sold" argument is distinct from the "simultaneously configured" argument that is the subject of the present motion.  This is clear from Microchip's email to the Court the evening before closings:

> Aptiv should be precluded from presenting a new non-infringement argument that the accused Boston chip [within the Dual Role Hub] does not contain a "***controller configured to*** establish concurrent respective dedicated USB connections" and/or "wherein ***the controller is operable to*** receive and respond to simultaneous respective USB access request" ***until the chip is used for CarPlay***. Aptiv did not disclose such a non-infringement theory during discovery, and the asserted claims are directed to a "USB multi-host device," not a method. Such an argument is both legally erroneous and trial by surprise.

Ex. 3 (Email from A. Russell to Court, dated Apr. 12, 2022) (emphases added).  The email calls

out two limitations relating to the controller of the claimed USB multi-host device, which state in full:

> a ***controller configured to*** establish concurrent respective dedicated USB connections between the shared USB device block and the ***two or more USB hosts***;
>
> wherein the ***controller is operable to*** receive and respond to simultaneous respective USB access requests sent by the ***two or more USB hosts*** for accessing a function of the shared USB device block.

TX 1, Claim 23.  Both limitations require the controller to be able to connect with more than one USB host—the "configured to" limitation expressly requires it and the "operable to" limitation implicitly requires it by stating that the controller be able to "receive and respond to . . . requests sent by" the two hosts.  As explained in the email, the issue was whether it was improper for Aptiv to argue that these limitations are not met "***until*** the chip is used for CarPlay"—i.e., after the Dual Role Hub is connected to an appropriate head unit, which only happens after the Dual Role Hub is sold and installed.  This is the "as sold" argument.

Aptiv raised this "as sold" argument in its oral motion for judgment as a matter of law that Aptiv does not ***directly*** infringe through sales of the Dual Role Hub because "[t]here is no evidence that the dual role hub, as sold by Aptiv to its customers, ***and before it is connected to a head unit with the appropriate software***, by its customers, can meet certain limitations of claims 23 to 25.  ***The evidence shows that the dual role hub, as sold to Aptiv's customers, is only capable of connecting to one hos***t."  Trial Tr. Vol. 6 at 7:18-8:5 (emphases added) (other arguments omitted).

In response, Microchip made the following argument:

> During discovery, ***Microchip served interrogatories asking for the complete factual basis for Aptiv's contention of non-infringement***, and nothing about this issue was ever disclosed. This first came to our attention, we sort of smelled it on Monday,

and we discussed that in the charge conference, that there was an
issue about use.

> ***Claims 23 through 25 are device claims; they are not method
> claims that have to be performed.*** They are components or
> functionality within the chip as sold. And what I think we are
> hearing, and it hasn't been fully explained yet, is that because --
> ***what we did hear just now is that software from the head unit
> must be installed on the chip before the second device can be
> connected.***
>
> Now, this goes back to the fact that claim 23 is a comprising claim,
> so additional elements can be used to, you know -- in addition to
> what's claimed, but ***that doesn't mean that the configured to or
> operable to language means on its own, it has to be in that state,
> and so -- or capable of becoming in that state on its own.***

*Id.* at 12:14-13:20 (emphases added).

The interrogatory Microchip referenced in the quoted portion above is Interrogatory No.

3, which asked for "the entire factual basis, including all facts and documents, for [Aptiv's]

contention that [Aptiv has] not infringed any claim in the Asserted Patents."  D.I. 376 at 7.  To

show that Aptiv had in fact disclosed the factual basis for the "as sold" argument, Aptiv's

counsel pointed the Court to paragraph 5 of its interrogatory response:

> ***When an iPhone that has CarPlay enabled is attached to the
> Dual Role Hub, it does not and cannot serve as a USB host
> automatically, just at that moment.*** First, it must go through the
> process of being enumerated as a peripheral device. ***The head unit
> initially enumerates the iPhone as a USB device.*** Such
> enumeration is independent of and does not involve the host-to-
> host bridge.

D.I. 376 at 11-12 (emphases added); *see also* Trial Tr. Vol. 6 at 15:14-24, 16:17-17:5.  The Court

determined that this response provided sufficient disclosure for the "as sold" argument.  *Id.* at

17:23-18:6.

Microchip observes that paragraph 5 fails to disclose Aptiv's argument that the Dual Role

Hub does not allow two hosts to simultaneously configure a device.  Br. at 4-5.[2]  That is because the "simultaneously configured" argument was disclosed in a different paragraph of the same interrogatory response (paragraph 3).  Paragraph 3 states:  "No USB device in the Dual Role Hub is ever enumerated by multiple USB hosts, *let alone enumerated by two hosts at the same time*, or accessed by two or more hosts alternately."  Ex. 1 at 11 (¶ 3). [3]  Configuration is part of the process of enumeration.  *See* TX 186 (USB Specification 2.0) at 271-72 (including as a step in the enumeration process:  "Based on the configuration information and how the USB device will be used, the host assigns a configuration value to the device.  The device is now in the Configured state . . . ."); *see also* Trial Tr. Vol. 3 (Zatkovich) at 127:9-15 ("[T]he first host is going to *configure* the printer/scanner and the second host is going to *configure* the printer/scanner.  If you remember the term that we used was *enumeration*.  We're going to *enumerate* the device.") (emphases added); *id.* at 175:1-4 (Zatkovich) ("Q. Now, configuration is a standard part of USB; right? A. Yes. Enumeration [is the] process to determine configuration, yes.").

    That no device in the Dual Role Hub is "enumerated by two hosts at the same time," means that no device in the Dual Role Hub is configured by two hosts at the same time.  Thus, paragraph 3, not paragraph 5, identifies the basis for Aptiv's "simultaneously configured"

---

[2] Microchip also argues that this interrogatory response is irrelevant because it was directed to the '191 Patent not asserted at trial.  Br. at 5.  Not so.  The interrogatory requested information related to Aptiv's contention that it did not infringe "any claim of the *Asserted Patents*."  Ex.1 at 7 (emphasis added).  And Aptiv expressly stated that the facts set forth in the numbered paragraphs show "that the '191, '243, *and* '708 Patents are inapplicable."  *Id.* at 10 (emphasis added).

[3] Microchip chose to file a redacted version of Aptiv's interrogatory response that obscured this critical paragraph despite Aptiv's counsel urging Microchip to file the entire excerpt without redaction.  Ex. 2 (Email from E. Wiener to A. Russell, dated May 23, 2022) at 1.

argument.  Aptiv did not point to paragraph 3 in the colloquy with the Court because it was not relevant to the "as sold" argument then under discussion.

### 2.    Microchip Waived Any Argument for Claim Construction of the "Simultaneously Configured" Term.

Microchip argues that the Court erred by not construing what it means for configuration to happen "simultaneously" and instead improperly handing the question of claim construction to the jury.  Br. at 6-8.  This argument fails for two reasons.

*First*, Microchip waived any such argument by failing to raise it.  As discussed above, Microchip has been aware of Aptiv's "simultaneously configured" argument for years because Aptiv disclosed that argument in its interrogatory responses.  And, at trial, Aptiv elicited testimony from Mr. Zatkovich (Microchip's infringement expert) that "[s]imultaneous means at the same time."  Trial Tr. Vol. 3 at 250:9-11.

If Microchip believed the plain and ordinary meaning of "a shared USB device block[4] operable to be *simultaneously configured* by two or more USB hosts" meant something other than that both hosts had to perform the steps required to configure the device block at the same time, it should have raised that concern with the Court during trial.  Having failed to do so, Microchip waived the argument.  *Enovsys LLC v. Nextel Comm'ns, Inc.*, 614 F.3d 1333, 1344 n.6 (Fed. Cir. 2010) ("[W]e apply the doctrine of waiver when the party failed to raise the claim construction argument until after trial.").

Microchip attempts to evade waiver by again conflating the "as sold" and "simultaneously configured" arguments, citing a different claim construction dispute that it

---

[4] The Court construed "USB device block" as "a USB device or segment of a USB device that performs a function to provide a capability to a host over USB."  D.I. 114 at 3.

raised in the context of the "as sold" argument. Trial Tr. Vol. 6 at 19:21-24 ("[T]his appears to be [] a concealed claim construction argument over the term 'configured to' or 'operable to.'"). Aptiv's counsel clarified that the dispute under discussion (the "as sold" argument) presented a factual question about the capabilities of the device as sold:  "The argument is that the device, *as sold*, does not meet each of the claim limitations."  Br. at 6 (emphasis added) (quoting Ex. A at 20:13-18).  That dispute had nothing to do with whether configuration occurred simultaneously, and the Court correctly determined that no claim construction was necessary to resolve it.  Trial Tr. Vol. 6 at 23:5-14; *see also GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372–73 (Fed. Cir. 2016) ("Where a district court has resolved the questions about claim scope that were raised by the parties, it is under no obligation to address other potential ambiguities that have no bearing on the operative scope of the claim.").

    ***Second***, with respect to the term now at issue—"simultaneously configured—Aptiv did not argue claim construction to the jury, but instead applied the plain and ordinary meaning of the term.  The Court correctly instructed the jury (in an instruction Microchip has not challenged) that for the "claims and the elements" the Court had not construed (like "simultaneously configured") the jury should apply the "plain, ordinary meaning."  Trial Tr. Vol. 6  at 53:17-21; *see also LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 554 (D. Del. 2011) (jury free to determine the application of the plain and ordinary meaning of term not specifically construed).  That is what Aptiv asked the jury to do.

### B.    Aptiv's Section 112 Arguments to the Jury Were Proper.

    Microchip, having won its validity case, now seeks to reframe its (unsuccessful) *in limine* motion regarding Aptiv's § 112 arguments as having presented a non-infringement issue.  In the leadup to trial, Microchip sought to preclude Aptiv from presenting any § 112 argument whatsoever, arguing that Aptiv would "confus[e] the jury as to . . . the correct legal standard for

enablement and written description." D.I. 340 at 5. Microchip's motion *in limine* was premised

on the unfounded fear that Aptiv would argue that the patents are invalid because they do not

describe the Accused Product. *Id.* at 2. Now, Microchip repeats these arguments, this time

claiming that discussion of written description and enablement "confused the jury on the

infringement issue." Br. at 1. But written description and enablement are invalidity issues and

were presented to the jury as such. *See e.g.,* Trial Tr. Vol. 6 at 122:22-23 ("[T]he first invalidity

issue is written description and enablement.").

      Aptiv did not argue that the patent must describe the Accused Product. Aptiv's counsel

made this clear during closing, noting explicitly that the patent "do[esn't] have to describe every

feature of the product." *Id.* at 124:8-10. But this does not relieve the patentee of the obligation

to provide written description and enablement support for the full scope of the claimed invention.

*See e.g., Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) ("The

irony of this situation is that Liebel successfully pressed to have its claims include a jacketless

system, but, having won that battle, it then had to show that such a claim was fully enabled, a

challenge it could not meet."); *Sitrick v. Dreamworks*, 516 F.3d 993, 1000 (Fed. Cir. 2008)

(where plaintiff accused a product allowing users to add their own voice to existing movies and

successfully pressed claim construction broad enough to cover both movies and video games, §

112 inquiry properly focused on whether both were enabled); *Rivera v. ITC*, 857 F.3d 1315,

1319, 1321 (Fed. Cir. 2017) (noting that "[b]oth parties analyze[d] the written description issue

under the assumption that the asserted claims read on Solofill's [accused] containers," and

concluding that "written description support for broad claims covering a receptable with

integrated filter such as Solofill's accused products and Rivera's Eco-Fill products is lacking.");

*AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1301 (Fed. Cir.

2014) (finding that, while the patents "need not describe the allegedly infringing [product] in exact terms," it must nevertheless "at least describe some species representative of antibodies that are structurally similar to [the accused product]."); *cf. Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("[C]laims are construed the same way for both invalidity and infringement."). Aptiv correctly argued that, to the extent the jury agreed with Microchip that the patent claims a way "for connecting between two computers," the specification failed to describe or enable this concept and the claims were therefore invalid. *See* Trial Tr. Vol. 6 at 124:19-125:3.

[Left Intentionally Blank]

The jury was instructed on the correct legal standard for written description and enablement. Trial Tr. Vol. 5 at 408:7-413:3. The demonstrative used by Aptiv in closing to explain this concept was proper. In it, the patent was depicted as a deed to a piece of land with defined boundaries. The host-to-host communication functionality was depicted as an adjacent lot outside of those boundaries. Aptiv then made the point that, to the extent Microchip attempted to expand the boundaries of its claims and argued that it had invented systems for host-to-host communication, the claims were invalid because the specification neither described nor enabled any such invention. Contrary to Microchip's contention, the demonstrative did not depict the Accused Product: the icon on top of the adjacent lot house was of two computers being connected (i.e. host-to-host communication), *not* an image of the accused Dual Role Hub (or Boston 2 chip within the hub):



Ex. 4 (Excerpts of Aptiv's Closing Presentation Demonstrative Slides) at 176 (red oval added for emphasis).

### C.    Aptiv's Arguments Relating To Its Own Patents Were Proper.

Microchip is not entitled to a new trial based on Aptiv's counsel's references to Aptiv's own patents during closing remarks because Microchip waived this argument, because all of Aptiv's references to its own patents were entirely proper, and because any prejudice was cured by a robust jury instruction on the issue.

*First*, Microchip failed to object during closing to the statements about which it now complains.  Trial Tr. Vol. 4 at 128:10-12 (failing to object to admission of Aptiv's patents); Trial Tr. Vol. 6 at 148:10-149:1 (failing to object to closing argument statements cited in motion). This failure constituted waiver.  *See Murray*, 610 F.2d at 152 (failure to object at the time "precludes [a party] from seeking a new trial on the ground of the impropriety of opposing counsel's closing remarks.").  Microchip's failure to object deprived the Court of the opportunity to evaluate the supposed prejudice at the time of the comments, in the context of whatever slide or visual was in front of the jury at the time.

Microchip attempts to elide this failure by pointing to its motion *in limine* seeking to "exclude all reference to Aptiv's own patents."  Br. at 13.  However, that is not the ground raised in Microchip's motion:  its motion is based on an (incorrect) allegation that Aptiv "argue[d], in closing, that the patents were relevant to non-infringement."  Br. at 14-16 (citing statements made during closing argument, a demonstrative slide from closing argument, and focusing on "this argument" rather than the admission of Aptiv's patents on issues other than infringement). Because Microchip's current objection is different than the one it raised in its motion *in limine*, and because it failed to make this objection at trial when the statements in question were made, it waived this argument, and its motion should be denied on this basis alone.

*Second*, Aptiv's fleeting references to its own patents during closing were entirely proper, and it never argued, or even implied, that its own patents constituted a defense to

infringement or bore on the issue of infringement in any way.  Microchip complains that Aptiv argued in closing that it cannot infringe Microchip's patents because it received its own patents. Not so.  Aptiv barely mentioned its own patents at all.  And Aptiv certainly never said (or even suggested) that it did not infringe Microchip's patents because it got its own patents.

The Court correctly held, in denying Microchip's motion *in limine* on this issue, that a defendant's own patents can be relevant to issues other than infringement.  D.I. 351 at 1-2. Microchip then opened the case by suggesting Mr. Bohm had solved the problem of providing CarPlay capability years ahead of anyone else:

> What's this case about?  It's about Microchip's patent on a device for connecting between two computers which today is used for Apple CarPlay.  The inventor, Mr. Bohm, was way ahead of his time, so no one used his invention for eight years. Microchip, however, was ready and waiting for the day when the market would catch up.

Trial Tr. Vol. 1 at 189:10-18.  Consistent with the Court's ruling on Microchip's motion *in limine*, D.I. 351 at 1-2, Aptiv laid the foundation (initially outside the presence of the jury, Trial Tr. Vol. 4 at 11:24-23:1, and then in the presence of the jury, *id.* at 126:5-128:6) through Mr. Voto to support the admission of the five Aptiv patents (TX 187 – TX 191).

Consistent with the uses articulated in its opposition to Microchip's motion *in limine*, D.I. 336 at 10 ("Aptiv's patents are relevant to damages" and "Aptiv will not argue at trial that its patents are a defense to infringement"), Aptiv referenced its patents during closing arguments in connection with refuting Microchip's claim for damages.  Trial Tr. Vol. 6 at 146:5-7 (in context of hypothetical negotiation, Aptiv would claim "We've got all of our own IP that we've developed in the course of this, that ought to be worth a lot, right?"); Ex. 4 at 241 (showing Aptiv's patents at the hypothetical negotiation).  Aptiv also referenced its patents to refute Microchip's framing (from opening) of the Asserted Patent as being "way ahead of [its] time" and that Microchip was "waiting for the day when the market would catch up," by showing that

Aptiv had to do a lot of work that was nowhere described in the Microchip patent in order to solve the CarPlay problem.  *Id.* at 78.

Never once in closing did Aptiv argue that its own patents meant that it did not infringe. Aptiv's counsel made no mention of Aptiv's patents when presenting Aptiv's non-infringement arguments in closing, Trial Tr. Vol. 6 104:19-122:17 & Ex. 4 at 105-170.  In its brief, Microchip points only to a single slide, from the end of Aptiv's closing presentation, and a portion of the end of Aptiv's closing argument.  Br. at 14-15.  Nowhere on the slide or in the cited transcript did Aptiv "argue . . . that the patents were relevant to non-infringement."  *Id.* at 14.  Nor did Aptiv argue, as Microchip claims, that "the Patent Office had determined Aptiv invented its own, patentably separate, standards-compliant system different than Microchip's purportedly non-compliant system."  *Id.* at 16.  Just the opposite:  Aptiv highlighted to the jury in its closing argument that "<u>You</u> are the first to consider infringement," Ex. 4 at 106, and at no point suggested the Patent Office had weighed in on the infringement issue in any way.  And the final portion of Aptiv's closing, which noted the difference between Mr. Bohm's invention and Aptiv's solution, was a fair response to how Microchip began the trial:  by claiming its patent covers connecting two computers "which today is used for Apple CarPlay," and that it had come up with this solution many years ago and was just waiting for the market "to catch up."  Aptiv was entitled to show that Microchip did not solve that problem years ahead of the market, and that it was Aptiv who discovered the solution to the CarPlay problem.

***Finally***, any possible prejudice was cured by a robust jury instruction on the issue, to which both parties consented.  The Court instructed the jury that the fact that Aptiv received its own patents "has no bearing on whether it has infringed Microchip's patent."  Trial Tr. Vol. 5 at 392:9-20.  This instruction goes even farther than the law Microchip cites, which stand for the

proposition that the fact that a defendant has patents "does not avoid [infringement] as a matter of law."  Br. at 15 (quoting *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000). The instruction was unambiguous and there is no reason to think that the jury disregarded it.

**D.      Aptiv's Cross Examination Of Mr. Bohm Was Proper.**

Microchip also argues that a new trial should be granted because the inventor of the '243 Patent, Mr. Bohm, was unable to describe on the stand what he claimed to have invented. Microchip's argument is puzzling given that the jury found for Microchip on the issue of validity (the issue about which the cited testimony primarily relates).  In any event, Microchip contends that Aptiv's questions on cross examination were intended to elicit expert testimony.  It is well established, however, that "[a]n inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims." *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999).  "The testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems." *Id.*  Here, that is precisely what Mr. Bohm was asked to testify about:  his solution to the problems identified in the patent and what the claims of his patent were intended to cover.

This is the same type of testimony that Microchip itself attempted to obtain from Mr. Bohm.  In an attempt to establish Mr. Bohm's knowledge and familiarity with the technology at hand, Microchip asked him on direct about his involvement in the development of the USB specification and his experience designing other USB devices.  Trial Tr. Vol. 2 at 22:7-25:23, 31:9-35:12.  Mr. Bohm was also asked about the problem he and his co-inventor identified and the solution they came up with to address that problem.  *Id.* at 38:9-22.  Most notably, Microchip spent more than 30 minutes on direct walking Mr. Bohm through each portion of the patent and asking him to explain what those portions are and what he understood the patent to describe and

claim. *Id.* at 46:1-75:7. And then, on redirect, Microchip chose to again elicit the exact same type of testimony from Mr. Bohm, asking him about his understanding of the invention and the scope of the asserted claims. *Id.* at 191: 17-193:5. Given this extensive line of questioning, Microchip should not be heard to argue that the very type of testimony it elicited forms a sufficient basis for a new trial.

Further, Microchip suffered no prejudice because the difference between Asserted Claim 23 and invalidated claim 1 is not relevant to Microchip's infringement allegations, but rather to Aptiv's invalidity case (and the jury found in favor of Microchip on invalidity). It would therefore have no bearing on Microchip's request for a new trial on the issue of infringement.

### E.   None Of Aptiv's Allegedly Improper Arguments Warrant A New Trial.

As explained above, all of the arguments or examinations about which Microchip complains in its motion were proper and did not unfairly prejudice Microchip in any way. However, even assuming any of the four grounds articulated above has merit, none constitutes misconduct that "so pervade[d] the trial as to render the verdict a product of prejudice." *Leonard*, 834 F.3d at 399 (quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 96 (3d Cir. 1978)). There is no "miscarriage of justice"—nor does the verdict cry "out to be overturned" or "shock[] [the] conscious." *Bullen*, 336 F. Supp. 2d at 347. Also, Microchip was not prejudiced because the evidence of non-infringement unrelated to this motion was so overwhelming that it provided a separate grounds on which to affirm the jury's verdict.

#### 1.   Microchip's Asserted Grounds Do Not Warrant A New Trial.

The conduct of Aptiv's counsel in this case in no way compares to the extreme misconduct of the attorneys in the cases relied upon by Microchip. In *Draper*, a wrongful death action, the plaintiff's counsel repeatedly breached the rules of closing argument by (1) "attempt[ing] to prejudice the jurors through repeated inappropriate references to the defendants'

16

wealth;" (2) expressing his personal opinion as to the justness of his client's cause in violation of the local disciplinary rules, (3) prejudicially referring to facts not in evidence, and (4) making baseless, "vituperative and insulting references to the defendants and defendants' counsel," including accusing defense counsel of conspiring with defendants and implying that he had participated in tampering with evidence. *Draper,* 580 F.2d at 95–96. The court, examining the argument as a whole and the combined effect of counsel's numerous and serious violations, concluded that the closing argument appealed solely to the prejudices of the jury and therefore a new trial was warranted. *Id.* at 96–97.

Similarly, in *Fineman v. Armstrong World Industries*, "plaintiffs' trial counsel had improperly testified to his own truthfulness and trustworthiness, supplied 'facts' not in evidence about the credibility of [the defendant's] witnesses, accused [the defendant's] witnesses of being 'liars' and 'perjurers,' and levied 'an unadorned, disparaging attack' upon defense counsel throughout his summation." 980 F.2d 171, 206–07 (3d Cir. 1992). He began his closing arguments with a list of 24 "misrepresentations" made by defense counsel. He suggested to the jury that defense counsel repeatedly lied in order to collect over a million dollars in legal fees. *Id.* at 209. He continually referred to himself as truthful and accused defense witnesses of perjury— referring to the "nerve" of witnesses who "lie on the stand . . . 'with a straight face' . . . 'in front of a federal judge and a federal jury.'" *Id.* at 210 (internal citations omitted). Plaintiff's counsel also suggested that he had more evidence that he had not even introduced. *Id.* Based on these numerous improprieties, the court of appeals upheld the district court's grant of a new trial. *Id.* at 211–12.

Microchip's reliance on *Draper* and *Fineman* is entirely misplaced. Nothing about the conduct of Aptiv's attorneys at trial comes close to the unrelenting litany of improprieties that

17

warranted new trials in *Draper* and *Fineman*.  Rather, as explained above, the conduct of Aptiv's counsel was within the bounds of zealous advocacy and in no way appealed to the prejudices of the jury.  *See Dorsett v. Am. Isuzu Motors, Inc.*, 805 F. Supp. 1212, 1219 (E.D. Pa. 1992), aff'd, 977 F.2d 567 (3d Cir. 1992) ("A trial court has discretion to determine where the line between zealous advocacy and an appeal to prejudice lies.").

### 2.    There Was No Prejudice.

Microchip was not prejudiced by any of the evidence or arguments about which it complains in this motion because the evidence supporting Aptiv's non-infringement arguments was overwhelming.  Additionally, if the jury had found that Aptiv's Dual Role Hub infringed the Asserted Patents, then Aptiv would have been entitled to a judgment of non-infringement as well as a judgment of invalidity for a lack or written description and enablement.

***First**,* there was overwhelming evidence presented to the jury that Aptiv does not infringe because Aptiv's Dual Role Hub does not allow the iPhone and the head unit (the two USB hosts) to share a USB device (or device block) because each host controls its own USB device.  The patented invention is not a system for allowing two hosts to control their own device. Trial Tr. Vol. 2 (Bohm) at 130:7-131:10, 133:12-19 (inventor of the Asserted Patent did not invent two hosts each controlling their own device, even if the devices are connected).  Rather, the Asserted Claims require both hosts to share a single "USB device block," TX 1, Claims 23-25, which Microchip's expert testified means "[e]ach host must be able to access and share the same segment of the USB device . . . and perform the same function in that," Trial Tr. Vol. 3 (Zatkovich) at 241:8-13.  In contrast, the Dual Role Hub provides each host with its own separate device that performs a different function for its respective host.  TX 12 at 4 (diagram of Dual Role Hub showing a separate device for each host); TX 14 at 4, 5 (same); TX 17 at 12 (same); TX 18 at 27 (same); Trial Tr. Vol. 4 (Voto) at 80:3-10 (iPhone and head unit are on different

18

USB networks); 120:21-121:3 (Dual Role Hub "do[esn't] have two different hosts trying to share some sort of device"); Trial Tr. Vol. 3 (Zatkovich) at 174:15-23 (each device controller in the Dual Role Hub responds to requests from one host), 178:22-24, 179-4-6 (each device controller presents different functions), 233:2-5 (each host can access its device whenever it wants).

This is confirmed by the fact that Aptiv's Dual Role Hub (and the Boston 2 chip inside) independently received USB certification. The undisputed evidence showed that the patented invention is to a non-USB compliant solution. Trial Tr. Vol. 2 (Bohm) (the patented invention "allows a device to talk to more than one host," which is "why it is outside the USB specification"); *see also* Trial Tr. Vol. 1 (Microchip Opening) (patented invention "was bucking industry standard" for USB). It also showed that the Dual Role Hub and Boston 2 chip were USB certified. Trial Tr. Vol. 4 (Voto) at 104:17-105:4; TX 16 at 1 (Boston 2 specification stating "Main Features: USB 2.0 – Compliant HUB operation"). Indeed, Microchip's corporate representative testified that a product that passes USB certification receives a USB logo, Trial Tr. Vol. 2 (Obolsky) at 297:7-13, and that logo is present on Aptiv's Dual Role Hub, TX 366.[5]

*Second*, even if the jury had returned a verdict of infringement, Aptiv would have been entitled to a judgment of non-infringement as a matter of law because there was no evidence at trial that the Dual Role Hub, as sold, is capable of connecting to more than one host, as required by the Asserted Claims. *See, e.g.*, TX 1, Claim 23 ("a controller configured to establish concurrent respective dedicated USB connections between the shared USB device block *and two or more USB hosts*") (emphasis added). The uncontested evidence showed:

---

[5] Microchip now claims the USB certification argument was part of Aptiv's improper use of its own patents to argue non-infringement, Br. at 14-15, but Microchip is wrong. That the Dual Role Hub received USB certification is independent confirmation of what all of the documents and fact testimony confirmed: each host controls its own device within the Dual Role Hub; there is no shared device or device block.

- Aptiv does not sell the Dual Role Hub connected to a head unit.  Trial Tr. Vol. 4, (Dreon) at 198:1-199:12 (the vehicle manufacturer is responsible for putting together the Dual Role Hub, head unit, and connection).

- The only two hosts that Microchip asserted connect to the Dual Role Hub are the head unit and iPhone.  *E.g.*, Trial Tr. Vol. 3, (Zatkovich) at 112:4-11.

- By default, the iPhone connects to the Dual Role Hub as a device.  *Id.* at 263:9-16.

- The iPhone cannot connect to the Dual Role Hub as a host until the host-to-host bridge in the Dual Role Hub is set up, which requires software on the head unit. *Id.* at 263:9-264:6.

Thus, the Dual Role Hub, as sold and without being connected to a head unit with appropriate software, is only capable of connecting to one host (the head unit); it cannot connect to the iPhone while it is acting as a second host.  Therefore, there was no evidence to support Microchip's allegation that Aptiv directly infringed the Asserted Claims by selling the Dual Role Hub, and Microchip dropped its allegations of indirect infringement.  Trial Tr. Vol. 4 at 373:8-13.

**Finally**, for the reasons stated in Aptiv's Motion for Judgement as a Matter of Law or Alternatively for a New Trial (D.I. 371, 372), if the jury had returned a verdict of infringement, Aptiv would have been entitled to a judgment as a matter of law that the Asserted Claims were invalid, or at least a new trial on that issue.

## IV.    CONCLUSION

Microchip had its day in court and it lost.  It should not get a do-over based on any of the grounds it raises in its motion, none of which identifies any evidence or argument that was

improperly presented to the jury. Microchip certainly falls well short of identifying any conduct or improper statements that so pervaded the trial as to render the verdict a "product of prejudice." Finally, the evidence at trial that Aptiv's Dual Role Hub does not infringe because it does not allow two USB hosts to share a single USB device or device block was unrelated to the issues raised in this motion and so overwhelming as to provide an independent basis on which to affirm the jury's verdict.

OF COUNSEL:

Daralyn J. Durie
Timothy Saulsbury
Eric C. Wiener
Joyce C. Li
DURIE TANGRI LLP
217 Leidesdorff St.
San Francisco, CA 94111
(415) 362-6666

W. Henry Huttinger
Andrew T. Jones
DURIE TANGRI LLP
953 East 3rd Street
Los Angeles, CA 90013
(213) 992-4499

Dated: June 10, 2022
10184612

POTTER ANDERSON & CORROON LLP

By: */s/ Philip A. Rovner*
Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Defendant*
*Aptiv Services US, LLC*