IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **MICROCHIP TECHNOLOGY INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**APTIV SERVICES US, LLC,**<br><br>*Defendant.* | Case No. 1:17-cv-01194-JDW |

### MEMORANDUM

Aptiv Services US, LLC and Microchip Technology Incorporated presented conflicting testimony to a jury about whether Aptiv's Dual Role Hub infringes Microchip's U.S. Patent No. 7,523,243. The jury decided that the Dual Role Hub does not infringe. Microchip now wants to do it all over again. But none of the issues it raises warrants a new trial, so the jury verdict will stand, and the Court will deny its motion.

### I.    BACKGROUND

Microchip filed this action in 2017. Microchip accused Aptiv's Dual Role Hub of infringing U.S. Patent Nos. 7,478,191; 7,523,243; and 7,627,708. After claim construction, the Parties stipulated that only the '708 and '243 Patents remained at-issue in the case. At trial, Microchip dropped its claims under the '708 Patent and only argued that the Dual Role Hub infringed claims 23-25 of the' 243 Patent. Aptiv, in turn, asserted that the '243 Patent was invalid due to obviousness, lack of written description, and failure to enable.

After a six-day jury trial, the jury returned a verdict in favor of Aptiv on infringement and a verdict in favor of Microchip on validity. The Court entered judgment on May 6, 2022.

Pending before the Court are post-trial motions. Microchip moves for a new trial pursuant to Federal Rule of Civil Procedure 59. Aptiv moves for a new trial on validity if the Court grants Microchip's motion for a new trial. Aptiv also moved for judgment as a matter of law but is no longer seeking it. Both Parties' Motions are ripe for review.

## II.     STANDARD

A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Federal Rule of Civil Procedure 59(a)(1)(A). A motion for new trial may be "bottomed on the claim that . . . the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). The decision to grant a new trial is not unique to patent law, so the Court applies Third Circuit law. *See Union Carbide Chemicals & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1182 (Fed. Cir. 2002). One basis for granting a new trial is counsel misconduct involving improper attorney argument that unfairly influences the verdict. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 363 (3d Cir. 1999); *Blanche Road Corp. v. Bensalem Township*, 57 F.3d 253, 264 (3d Cir. 1995), overruled on other grounds by *UA Theatre Circuit v. Twp. Of Warrington*, 316 F.3d 392, 400–01 (3d Cir. 2003).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Olefins Trading, Inc., v. Han Yang Chem. Corp.*, 9 F.3d 282, 289–90 (3d Cir. 1993). Where the ground for a new trial is improper conduct by an attorney, the attorney's conduct constitutes reversible error only where "she engaged in argument injecting prejudicial extraneous evidence, such that the improper statements so pervaded the trial as to render the verdict a product of prejudice." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 399 (3d Cir. 2016) (cleaned up). In determining whether to grant a new trial, the Court need not view the evidence in the light most favorable to the verdict winner. *Bullen v. Chaffinch*, 336 F. Supp. 2d 342, 347 (D. Del. 2004). However, the Court will only grant a new trial where the "jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991); *Bullen*, 336 F. Supp. 2d at 347.

### III. DISCUSSION

Microchip moves for a new trial arguing Aptiv's counsel unfairly influenced the verdict by (1) including a new non-infringement and claim construction argument in its closing argument; (2) confusing the jury about the infringement standard with testimony on written description and enablement; (3) confusing the jury about the infringement standard with its patents; and (4) eliciting improper expert testimony from the patent inventor. None of these bases, considered individually or as a whole, merits a new trial.

### A.   New Claim Construction & Non-Infringement Argument

Claim 23 requires "a shared USB device block operable to be simultaneously configured by two or more USB hosts." (D.I. 1-1 at 6:65-68.) The Court did not construe "simultaneously configured" at claim construction, so it instructed the jury to apply "plain, ordinary meaning" to the term. (D.I. 391 at 53:17-21.) During closing arguments, Aptiv argued the Dual Role Hub cannot be "simultaneously configured"—and therefore cannot infringe—because "two hosts cannot configure their devices at the same time. It has to be different times." (*Id.*) Microchip argues that the Court erred by permitting Aptiv to present this argument because (1) Aptiv never disclosed this infringement theory during discovery and (2) Aptiv argued claim construction of "simultaneously configured" to the jury. (*See* D.I. 375 at 3–9.) Neither argument warrants a new trial.

#### 1.   Discovery disclosures

Aptiv disclosed the factual predicate for its theory—that the Dual Role Hub is not configured at the same time so it cannot infringe—during discovery. It could, therefore, present it to the jury. During discovery, Microchip asked for "the entire factual basis" for Aptiv's contention that it has "not infringed any claim in the Asserted Patents." (D.I. 379-1 at Ex. A (Interrogatory No. 3).) Aptiv responded, in relevant part, "[n]o USB device in the Dual Role Hub is ever enumerated by multiple USB hosts, *let alone enumerated by two hosts at the same time*." (*Id.* at 11, ¶ 3.) (emphasis added).) Though Aptiv used the term "enumerated" rather than "configured," Microchip's expert agrees that "configuration" is

4

part of the "enumeration" process. (Trial Tr. Vol. 3 at 127:9-15, 175:1-4.) Therefore, Aptiv's disclosure provides a factual predicate for its theory. Aptiv could have been more precise in its responses, but its disclosure stands in contrast to the types of limited (or absent) disclosures that warrant exclusion at trial. *See, e.g., Orexigen Therapeutics, Inc. v. Actavis Labs. FL, Inc.*, C.A. No. 1:15-CV-451-RGA, 2017 WL 2221178, at *2 (D. Del. May 19, 2017).

Microchip argues that Aptiv's interrogatory response relates only to the '708 Patent. While Aptiv used terms that appear in the '708 Patent in the '243 Patent—"enumeration" and "alternate access"—Aptiv did not limit its response to the '708 Patent. Instead, Aptiv stated that each factual disclosure, including this one, applied to "the '191, '243, and '708 Patents." (D.I. 379-1 at Ex. A, p. 10) With hindsight, maybe Aptiv's disclosure could have been clearer. But its disclosure was enough to put Microchip on notice of Aptiv's position going into trial.

### 2.  Claim construction

Microchip waived its argument regarding claim construction of "simultaneously configured." "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed.Cir.2008). "There is not necessarily an *O2 Micro* issue, however, whenever further claim construction could resolve the parties' dispute"—rather, a party must "sufficiently request further construction of the relevant limitation" to "raise an actual dispute." *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1322 (Fed. Cir. 2016). If

5

"[t]here is no indication" that the court was "aware of the supposed dispute," a party is considered to have forfeited the *O2 Micro* issue and cannot "resurrect" its argument on appeal by "pointing to ambiguous statements in the record." *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1369 (Fed. Cir. 2022) (quotation omitted).

Microchip forfeited its claim construction argument because it did not request construction of the term "simultaneously configured" before or during trial. *See Enovsys LLC v. Nextel Comm'ns, Inc.*, 614 F.3d 1333, 1344 (Fed. Cir. 2010). Microchip did not ask the Court to define "simultaneously configured" at the *Markman* hearing. It did not include a definition of the phrase in proposed jury instructions. It did not object to the jury instructions at the charge conference. In fact, it did not offer the definition it now provides at any point.

Microchip argues that it preserved this argument the morning of closing arguments. But the objection Microchip raised differed from its current argument. The morning of closing arguments, Aptiv argued two theories in its motion for judgment as a matter of law, the "as sold" and the "simultaneously configured" theory. (D.I. 391 at 7:13–8:16.) The "as sold" theory is that Aptiv could not directly infringe the '243 Patent by selling the Dual Role Hub because when Aptiv sells the Dual Role Hub—and someone connects it to a head unit with the appropriate software—it is only capable of connecting to one host. (*Id.* at 7:18–8:16.) The "simultaneously configured" theory is that the Dual Role Hub could not infringe because the host devices cannot be configured "at the same time."

Microchip did not raise issues with the term "simultaneously configured" when it opposed Aptiv's motion for JMOL. It did not suggest "simultaneously configured" in claim 23 had a disputed meaning; ask the Court to exclude Aptiv's "simultaneously configured" theory; or otherwise suggest the "as sold" and "simultaneously configured" theories were identical. Instead, Microchip argued the Court should bar Aptiv's "as sold" theory, a theory that deals with the capabilities of the Dual Role Hub when Aptiv sells it. In an email the previous evening, Microchip asked the Court to bar the "as sold" theory alone, stating "Aptiv should be precluded from presenting a new non-infringement argument that the accused Boston chip does not contain a 'controller configured to establish concurrent respective dedicated USB connections' and/or 'wherein the controller is operable to receive and respond to simultaneous respective USB access request' *until the chip is used for CarPlay.*" (D.I. 378 at 3 (emphasis added).) At argument, Microchip again focused on the state of the Dual Role Hub when Aptiv sells it. (D.I. 391 at 12:14-15 ("Now, to address the selling and offering to sell doesn't infringe claim 23."); *id.* at 19:3-11 ("one thing . . . that I don't quite understand still is the basis for the 50A motion we just heard is that selling and offering for sale doesn't infringe").) Even when Aptiv stated "[l]et me be clear about what the argument is. The argument is that the device, *as sold*, does not meet each of the claim limitations," Microchip did not suggest the Court needed to address issues outside this framing. (*Id.* at 20:13-22 (emphasis added).)

The only claim construction issue that Microchip put before the Court was whether Aptiv premised its "as sold" theory on a too-narrow definition of "configured to" and "operable to." In Microchip's words, "that software from the head unit must be installed on the chip before the second device can be connected . . . that doesn't mean that the configured to or operable to language means on its own, it has to be in that state . . . or capable of becoming in that state on its own." (*Id.* at 13:9–14:3.) Microchip also stated, "Aptiv is trying to say is that configured to has a very narrow meaning . . . that's a . . . narrower construction than plain ordinary meaning." (*Id.* at 20:1-6.)

In short, Microchip asked the Court to bar Aptiv from arguing that Aptiv could not directly infringe by selling the Dual Role Hub. Microchip thought this argument improper because "configured to" and "operable to" could mean something other than "in that state" or "capable of becoming in that state on its own." And that is the issue the Court decided. (D.I. 391 at 22:16–23:14.) Microchip had an opportunity to raise other issues and chose not to do so. In our adversarial system of adjudication, the Court relies "on the parties to frame the issues for decision," and the Court plays "the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020). Microchip did not suggest other definitions of "simultaneously configured," ask the Court to preclude Aptiv from arguing its "simultaneously configured" theory, or otherwise suggest the "simultaneously configured" theory related to the Aptiv's "as sold" theory. And once the Court decided that Aptiv could argue, under plain meaning, that it

did not directly infringe by selling the Dual Role Hub, the Court had no further "obligation to address other potential ambiguities that have no bearing on the operative scope of the claim." See GPNE Corp. v. Apple Inc., 830 F.3d 1365, 1372 (Fed. Cir. 2016).

The "as sold" and "simultaneously configured" theories might overlap, as Microchip argues. But they are distinct. An argument that Aptiv does not directly infringe by selling the Dual Role Hub—because it is not capable of connecting to more than one host before it is combined with a head unit—is distinct from an argument that the Dual Role Hub, even combined with a head unit, does not infringe because it never allows a USB device block to be configured by two hosts at the same time. Microchip bore the burden of raising claim construction disputes or at least asking the Court to bar Aptiv from making the "simultaneously configured" argument to the jury. See LifeNet Health, 837 F.3d at 1323; Kaufman, 34 F.4th at 1369. It didn't, so it waived the argument.

### B. Enablement And Description

During trial, Aptiv had its expert, Mr. Garney, testify that the '243 Patent does not describe or enable "host-to-host" communication. Microchip argues that Aptiv improperly used this testimony at closing to suggest that "if the patent does not describe and enable host-to-host communication . . . there cannot be infringement. (D.I. 375 at 10.)

A patent does not have to describe and enable the full scope of the accused device. But where a patentee argues, as Microchip did here, that a claim encompasses several embodiments, the patent must describe and enable the full scope of the claimed

9

invention. *See Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1000 (Fed. Cir. 2008); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007). Microchip pressed a claim construction broad enough to encompass a multi-host device with host-to-host communication. Because it did so, Aptiv's arguments as to whether the patent enabled such host-to-host communication were fair game. *See Sitrick*, 516 F.3d at 1000. The fact that Aptiv made these arguments did not suggest the Dual Role Hub could not infringe the '243 Patent. This Court instructed the jurors on the correct standard for infringement and validity, and Microchip offers no basis to think jurors disregarded those instructions.

### C. Aptiv's Patents

Microchip argues that one slide during Aptiv's closing arguments implied that because Aptiv has patents, it cannot infringe Microchip's patents. The slide displays Microchip's solution, with an image of one patent, and Aptiv's solution, with an image of five patents. With this slide behind her, Aptiv's counsel told the jury "Mr. Bohm came up with an idea to have a way for two computers to share one peripheral device, printer, whatever. . . . And he was super clear, not USB compliant, because there are two hosts and one device. That's the patent. Unwired came up with a completely different solution. That solution was having each host get its own device. That is why it is USB compliant. You heard nothing about that in Microchip's closing, but that is the core fundamental difference between these products." (D.I. 391 at 148:11-149:1.) Aptiv's slide and corresponding argument do not require a new trial, for three reasons.

*First,* Aptiv could present evidence of "significant features and improvements" in the Dual Role Hub to bear on damages. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1120). Aptiv's development of USB-compliance in its solution was a technological advancement. That development resulted in patents, which Aptiv could and did highlight in its closing. The fact that Aptiv highlighted USB-compliance as a fundamental difference between the two products does not make the slide improper, nor would it lead a reasonable juror to conclude that just because Aptiv has patents, Aptiv couldn't infringe Microchip's patents. And the Court instructed the jury that the fact that Aptiv has patents "has no bearing on whether it has infringed Microchip's patent." (D.I. 390 at 392:9-20.).

*Second,* this slide did not "so pervade[] the trial as to render the verdict a product of prejudice." *Leonard*, 834 F.3d at 399. The slide was one of many during closing arguments. Microchip points to no instance where Aptiv argued that the fact that it had patents meant the Dual Role Hub did not infringe, referenced infringement in connection with the patents, or otherwise misstated the infringement standard. Coupled with the Court's instruction to the jury about the significance (or lack thereof) of Aptiv's patents to the infringement determination, the record offers no reason to think that the jury disregarded the Court's instruction and leapt to the conclusion that Aptiv did not infringe just because it had patents of its own.

*Third,* if the Court accepts Microchip's characterization of the closing (and assumes that Aptiv used its patents to rebut infringement), Microchip waived its argument. Federal Rule of Evidence 103(b) provides that "[o]nce the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." This Court definitively ruled that Aptiv could introduce its patents to bear on damages. Otherwise, the Court told the Parties that it would address objections with the benefit of context at trial. So, assuming Microchip is correct and Aptiv introduced the patents to bear on an issue other than damages, such as infringement, the Court made no definitive ruling. Therefore, Microchip needed to renew its objection at trial to preserve its claim. *See* Fed. R. Evid. 103(b); *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979). It did not do so.

### D. Mr. Bohm's Cross-Examination

Before trial, the PTAB invalidated claim 1 of the '243 Patent. At trial, Aptiv's counsel asked Mr. Bohm, one of the '243 Patent's named inventors, "what's the difference between claim 1, which is invalid, and claim 23"? (D.I. 387 at 146:20-22.) Mr. Bohm studied the patent for several minutes. Aptiv's counsel asked again, "[a]re there any other differences you identified . . . is there anything else that you identified that you think is different?" (*Id.* at 148:25-149:3.) Mr. Bohm responded "[n]o, nothing else. It seemed to me that what I was seeing in claim 23 appeared to be pretty well included in claim 1." (*Id.* at 149:4-6.) This was not improper expert testimony, nor did it undermine Microchip's entire case.

"An inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims." *Voice Techs. Grp., Inc. v. VMC Sys., Inc.*, 164 F.3d 605, 615 (Fed. Cir. 1999). Mr. Bohm did just that. He explained what claims 1 and 23 were intended to cover. He just happened to think they were largely co-extensive. Though Microchip now argues this was improper, Microchip itself spent a large portion of time on a similar line of questioning, walking Mr. Bohm through the '243 Patent's figures and specification and asking him to identify what the '243 Patent intended to cover. (D.I. 387 at 46:1-75:7.)

It is also clear that Mr. Bohm's testimony did not pervade the trial given that the jury *disregarded* Mr. Bohm's statement and found claim 23 valid even though he testified that it was coextensive with a claim that the PTAB invalidated. At a minimum, that suggests that the jury could make up its own mind, independent of Mr. Bohm's testimony. And nothing about the challenged aspects of Mr. Bohm's testimony speaks to infringement. It speaks to invalidity. Yet even if the testimony had some bearing on infringement, there was substantial other evidence to support the jury's verdict of no infringement, and Microchip has not shown that Mr. Bohm's testimony impacted that other evidence.

### E. Overall Fairness

Even considered as a whole, Microchip's bases for a new trial do not warrant a new trial. Microchip objects to disparate parts of the trial. There is no reason to think each issue, taken together, is more than the sum of its parts. This was a six-day jury trial

13

involving a number of witnesses and technical documents with aggressive, effective counsel. There were no improper statements that "so pervade[d] the trial as to render the verdict a product of prejudice." *Leonard*, 834 F.3d at 399. And the verdict does not "cr[y] out to be overturned" to prevent a miscarriage of justice. *Williamson*, 926 F.2d at 1353. The Parties' experts offered conflicting testimony, and the jury arrived at a verdict supported by the evidence. Therefore, a new trial in not warranted.

## IV.   CONCLUSION

Microchip had a chance to try its infringement case and lost. It cannot now get a do over. Because the Court will not grant a new trial, it need not address Aptiv's remaining motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Date:  September 9, 2022