# Exhibit 2

TRIAL - VOLUME 5

Page 1

```
 1
              IN THE UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF DELAWARE
 3
                              - - -
 4
    MICROCHIP TECHNOLOGY        :  C.A. No. 17-1194
 5   INCORPORATED,              :
                                :
 6              Plaintiff,      :
                                :
 7           vs.                :
                                :
 8   APTIV SERVICES US, LLC,    :
                                :
 9              Defendant.      :
10                            - - -
11               TRANSCRIPT OF PROCEEDINGS
12                  TESTIMONY/JURY CHARGE
13                        VOLUME 5
14                            - - -
15         Date:  Tuesday, April 12, 2022
16         Time:  8:50 a.m.
17        Place:  J. Caleb Boggs Federal Building
                  844 N. King Street
18                Courtroom 6B
                  Wilmington, Delaware  19801
19
20      Before:  HONORABLE JOSHUA D. WOLSON, JUDGE
21
    Reporter:  Rose A. Tamburri, RPR, CM, CRR
22             Notary Public of Delaware
                            - - -
23               VERITEXT LEGAL SOLUTIONS
                  MID-ATLANTIC REGION
24            1801 Market Street, Suite 1800
              Philadelphia, Pennsylvania  19103
```

TRIAL - VOLUME 5

Page 2

1

A P P E A R A N C E S:

2

3      SHAW KELLER LLP
       BY:   JOHN W. SHAW, ESQUIRE
4      ANDREW E. RUSSELL, ESQUIRE
       I.M. Pei Building
5      1105 N. Market Street
       12th Floor
6      Wilmington, Delaware  19801
       (302) 298-0700
7      jshaw@shawkeller.com
       arussell@shawkeller.com

8
                    and

9
       SLAYDEN, GRUBERT & BEARD
10     BY:   BRUCE SLAYDEN, ESQUIRE
             BRIAN BANNER, ESQUIRE
11           JOSEPH D. GRAY, ESQUIRE
             TRUMAN FENTON, ESQUIRE
12           DARRYL ADAMS, ESQUIRE
       Frost Bank Tower
13     401 Congress Avenue
       #1650
14     Austin, Texas  78701
       (512) 402-3550
15     bslayden@sgbfirm.com
       bbanner@sgbfirm.com
16     jgray@sgbfirm.com
       tfenton@sgbfirm.com
17     dadams@sgbfirm.com
18     Representing the Plaintiff
19
20
21
22
23
24

TRIAL - VOLUME 5

Page 3

1

A P P E A R A N C E S (Cont'd)

2

3        POTTER, ANDERSON & CORROON
         BY:  PHILIP A. ROVNER, ESQUIRE
4        1313 N. Market Street
         Hercules Plaza, 6th Floor
5        P.O. Box 951
         Wilmington, Delaware  19899
6        (302) 984-6114
         provner@potteranderson.com
7
                         and
8
         DURIE TANGRI
9        BY:  DARALYN J. DURIE, ESQUIRE
              ERIC C. WIENER, ESQUIRE
10            TIMOTHY C. SAULSBURY, ESQUIRE
              JOYCE LI, ESQUIRE
11       217 Leidesdorff Street
         San Francisco, california  94111
12       (415) 362-6666
         ddurie@durietangri.com
13       eweiner@durietangri.com
         tsaulsbury@durietangri.com
14       jli@durietangri.com
15
         Representing the Defendant
16
17
18
19
20
21
22
23
24

Page 4

1                           I N D E X
2

WITNESS                                              PAGE
3

4

JOHN I. GARNEY

5

    DIRECT EXAMINATION BY:
6     MR. SAULSBURY                                    34
7     CROSS-EXAMINATION BY:
      MR. SLAYDEN                                      94
8
9  DR. JOHN LEVY
10    DIRECT EXAMINATION BY:
      MR. ADAMS                                       267
11
      CROSS-EXAMINATION BY:
12    MS. DURIE                                       295
13    REDIRECT EXAMINATION BY:
      MR. ADAMS                                       364
14
15 JURY CHARGE                                        373
16
17
18
19
20
21
22
23
24

Page 5

1
2                          E X H I B I T S
3
4     NO.                MARKED                    ADMITTED
5
      184                  42                         42
6
      367                  53                         88
7
      217                  58                         58
8
      378                  60                         --
9
       19                  68                         69
10
      209                  74                         74
11
      368                  88                         88
12
      381                 152                         --
13
      388                 153                         --
14
      379                 251                         --
15
      103                 182                        182
16
      201                 182                        183
17
      116                 196                        197
18
      139                 199                        199
19
      143                 201                        202
20
       20                 280                        280
21
      102                 296                        296
22
      380                 297                         --
23
      381                 302                        303
24

```
                                                    Page 6

 1                  E  X  H  I  B  I  T  S, (Cont'd)

 2

 3    382                  321                            --

 4    209                  354                           355

 5    381A                 302                           372

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

TRIAL - VOLUME 5

Page 7

```
 1            (Whereupon, the Court commenced

 2    proceedings at 8:50 a.m.)

 3                    - - -

 4            THE COURT CLERK:  All rise.              08:34:20

 5    Honorable Joshua D. Wolson presiding.           08:34:20

 6            THE COURT:  Good morning,               08:34:38

 7    everyone.                                       08:49:18

 8            MR. SLAYDEN:  Good morning, Your        08:49:19

 9    Honor.                                          08:49:21

10            MS. DURIE:  Good morning, Your          08:49:21

11    Honor.                                          08:49:24

12            THE COURT:  Have a seat, please.        08:49:24

13        So a few things to take up this             08:49:32

14    morning before we bring the jury in.            08:49:33

15        I got the email last night that             08:49:35

16    raised a couple of issues for us to tackle      08:49:41

17    this morning.  So we can take those up, I       08:49:43

18    guess, first and then I have a few other        08:49:49

19    housekeeping things.                            08:49:52

20        So unless you guys resolved                 08:49:53

21    things, then we'll go in the order of the       08:49:57

22    email.                                          08:49:59

23            MS. DURIE:  We have resolved the        08:49:59

24    Dr. Becker issue.  I understand he will not be  08:50:01
```

TRIAL - VOLUME 5

Page 8

| | | |
|---|---|---|
| 1 | called. | 08:50:03 |
| 2 | THE COURT:  Okay. | 08:50:03 |
| 3 | MS. DURIE:  So if I could hand up | 08:50:04 |
| 4 | the paper that goes with the issues with | 08:50:05 |
| 5 | respect to Dr. Levy, the slides. | 08:50:09 |
| 6 | THE COURT:  Yes. | 08:50:10 |
| 7 | MS. DURIE:  And it's a paragraph | 08:50:11 |
| 8 | of his that's actually from the report. | 08:50:13 |
| 9 | THE COURT:  Okay. | 08:50:15 |
| 10 | MS. DURIE:  So the first issue, | 08:50:30 |
| 11 | Your Honor, has to do with the slides that | 08:50:32 |
| 12 | were exchanged.  The vast majority of the | 08:50:37 |
| 13 | slides were fine, but as you'll see on slides | 08:50:41 |
| 14 | 13 and 14, and then on 15, it says -- and if | 08:50:44 |
| 15 | we start at slide 14, both references, and | 08:50:53 |
| 16 | it's talking about Belkin US-98, considered by | 08:50:56 |
| 17 | patent office and rejected. | 08:51:00 |
| 18 | That's wrong.  The patent office | 08:51:03 |
| 19 | has never considered the Belkin and US-98 | 08:51:04 |
| 20 | product that we are presenting. | 08:51:07 |
| 21 | Now, I think their ultimate | 08:51:10 |
| 22 | argument is that there was a data sheet that | 08:51:14 |
| 23 | pertained to Belkin that's really -- it's not | 08:51:17 |
| 24 | even a data sheet, it is like a Yelp review in | 08:51:20 |

Page 9

| | | |
|---|---|---|
| 1 | the days before Yelp that relates to Belkin. | 08:51:24 |
| 2 | They want to say that was disclosed; that's | 08:51:26 |
| 3 | perfectly fine. | 08:51:28 |
| 4 | But to say the reference that we | 08:51:29 |
| 5 | were pronouncing was considered by the patent | 08:51:31 |
| 6 | office and adjusted is simply misleading. | 08:51:33 |
| 7 | THE COURT:  Okay.  Mr. Banner? | 08:51:36 |
| 8 | MR. BANNER:  Yes, Your Honor.  Mr. | 08:51:38 |
| 9 | Levy is not planning on saying the actual | 08:51:40 |
| 10 | physical device was in front of the patent | 08:51:42 |
| 11 | office.  This is a slide to make it clear that | 08:51:44 |
| 12 | he is talking about the written paper that was | 08:51:46 |
| 13 | disclosed to that office, slide 14. | 08:51:48 |
| 14 | THE COURT:  When you say the | 08:51:53 |
| 15 | slides make it clear, the slides have a | 08:51:53 |
| 16 | picture of the device? | 08:51:55 |
| 17 | MR. BANNER:  Correct, Your Honor, | 08:51:56 |
| 18 | slide 14.  That's the testimony that he is | 08:51:58 |
| 19 | getting at, is the Belkin 4X4 switch, as the | 08:52:00 |
| 20 | article related to, it was disclosed to the | 08:52:03 |
| 21 | patent office.  That's the testimony he is | 08:52:06 |
| 22 | going to offer, and it seems like the point | 08:52:09 |
| 23 | that opposing counsel wants to make could be | 08:52:10 |
| 24 | handled on cross. | 08:52:13 |

TRIAL - VOLUME 5

Page 10

| | | |
|---|---|---|
| 1 | THE COURT:  Well, no, I can't tell | 08:52:14 |
| 2 | what exactly is being called out here on Slide | 08:52:25 |
| 3 | 14. | 08:52:33 |
| 4 | MR. BANNER:  It is the text from | 08:52:33 |
| 5 | the base of the patent, Your Honor, that's | 08:52:35 |
| 6 | highlighted there in the middle that says, | 08:52:36 |
| 7 | "Belkin 4X4 USB Peripheral Switch Review." | 08:52:38 |
| 8 | That was submitted to the patent office as | 08:52:42 |
| 9 | part of Exhibit 3 that's already in evidence, | 08:52:43 |
| 10 | part of the prosecution history, so that's the | 08:52:46 |
| 11 | point that Mr. Levy is making. | 08:52:48 |
| 12 | MS. DURIE:  And he's free to make | 08:52:50 |
| 13 | that point, but Slide 13 should not say both | 08:52:51 |
| 14 | references considered by patent office and | 08:52:54 |
| 15 | rejected, because that is -- nor should that | 08:52:56 |
| 16 | text appear on Slide 14 and on Slide 15, where | 08:53:02 |
| 17 | it says, "every neutral factfinder has found | 08:53:05 |
| 18 | claims 23 to 25 valid." | 08:53:08 |
| 19 | There should not be a picture of | 08:53:09 |
| 20 | the product since the clear suggestion is that | 08:53:11 |
| 21 | each of those bodies has considered those. | 08:53:14 |
| 22 | There should be the pull from the patent that | 08:53:17 |
| 23 | references the Belkin. | 08:53:20 |
| 24 | THE COURT:  So I just want to be | 08:53:26 |

TRIAL - VOLUME 5

Page 11

| | | |
|---|---|---|
| 1 | clear.  The callout on page 14, because I | 08:53:28 |
| 2 | can't see it, is a reference from a patent | 08:53:33 |
| 3 | other than the '243 Patent, it discloses the | 08:53:35 |
| 4 | Belkin? | 08:53:39 |
| 5 | MS. DURIE:  No. | 08:53:40 |
| 6 | THE COURT:  That's the '243 | 08:53:41 |
| 7 | Patent? | 08:53:43 |
| 8 | MS. DURIE:  But it did not | 08:53:43 |
| 9 | disclose the Belkin product, it disclosed a | 08:53:44 |
| 10 | review with a limited set of information, | 08:53:47 |
| 11 | perfectly fair point for them to make. | 08:53:49 |
| 12 | THE COURT:  Okay. | 08:53:52 |
| 13 | MS. DURIE:  But it's not the same | 08:53:52 |
| 14 | thing that is represented. | 08:53:54 |
| 15 | THE COURT:  I totally agree.  I | 08:53:56 |
| 16 | think that having the picture of the device | 08:53:57 |
| 17 | here, I mean, we are going to describe to the | 08:53:59 |
| 18 | jury our reference and the reference is a | 08:54:01 |
| 19 | combination of Dickens and this physical | 08:54:03 |
| 20 | device, and that is juxtaposed, Dickens and a | 08:54:07 |
| 21 | picture of the physical device, it references | 08:54:11 |
| 22 | that was considered by the office, is | 08:54:13 |
| 23 | rejected, I think that's misleading. | 08:54:15 |
| 24 | So I think that the slides ought | 08:54:17 |

TRIAL - VOLUME 5

Page 12

| | | |
|---|---|---|
| 1 | to be revised to remove all three slides, 13, | 08:54:20 |
| 2 | 14 and 15 ought to be removed to a -- revised | 08:54:23 |
| 3 | to remove the actual picture of the device | 08:54:27 |
| 4 | because that's just -- we all know the patent | 08:54:31 |
| 5 | office didn't actually consider the device. | 08:54:33 |
| 6 | MR. BANNER:  Okay. | 08:54:35 |
| 7 | THE COURT:  If you want to call | 08:54:36 |
| 8 | out the data sheet as a further review, if you | 08:54:37 |
| 9 | have it, or something else, that's fine.  But | 08:54:39 |
| 10 | I don't think you should have the pictures of | 08:54:41 |
| 11 | the device.  Okay? | 08:54:43 |
| 12 | MR. BANNER:  I understand. | 08:54:44 |
| 13 | MS. DURIE:  Thank you, Your Honor. | 08:54:45 |
| 14 | The second issue has to do with | 08:54:46 |
| 15 | Dr. Levy providing an opinion regarding | 08:54:48 |
| 16 | written description.  I have handed up to the | 08:54:50 |
| 17 | Court his expert report. | 08:54:52 |
| 18 | On page 75, there appears, which I | 08:54:53 |
| 19 | supplied, there appears a section of the | 08:54:58 |
| 20 | written description, enablement and | 08:55:00 |
| 21 | indefiniteness.  The only place where a | 08:55:02 |
| 22 | written description appears is in the title. | 08:55:04 |
| 23 | His entire opinion on the subject | 08:55:07 |
| 24 | is one page, it runs over to the very top of | 08:55:09 |

Page 13

| | | |
|---|---|---|
| 1 | page 76.  There is no analysis of the written | 08:55:11 |
| 2 | description in it.  There is analysis of | 08:55:15 |
| 3 | enablement, and he is free to present that, | 08:55:17 |
| 4 | but he should not be permitted to offer an | 08:55:20 |
| 5 | opinion on written description because none of | 08:55:22 |
| 6 | this was disclosed. | 08:55:25 |
| 7 | THE COURT:  Is he going to opine | 08:55:26 |
| 8 | on the written description? | 08:55:28 |
| 9 | MR. BANNER:  Well, Your Honor, we | 08:55:29 |
| 10 | have offered that he is going to limit his | 08:55:31 |
| 11 | testimony to what is in his report.  What is | 08:55:33 |
| 12 | in his report at 327 is that he disagrees with | 08:55:37 |
| 13 | Mr. Garney's opinion with respect to written | 08:55:40 |
| 14 | description and enablement, and also | 08:55:42 |
| 15 | throughout his report, he describes what the | 08:55:44 |
| 16 | patent is about. | 08:55:46 |
| 17 | So he should be able to opine | 08:55:49 |
| 18 | about what the patent is talking about when he | 08:55:51 |
| 19 | read it, when he did his analysis. | 08:55:53 |
| 20 | THE COURT:  Okay. | 08:55:59 |
| 21 | So he said he disagrees with Mr. | 08:56:00 |
| 22 | Garney on written description, right?  We can | 08:56:03 |
| 23 | all agree on that; it's there. | 08:56:06 |
| 24 | MS. DURIE:  Sure. | 08:56:08 |

Page 14

| | | |
|---|---|---|
| 1 | THE COURT:  And then the question | 08:56:09 |
| 2 | is, is what's, I guess, disclosed in the rest | 08:56:10 |
| 3 | of his report, I'm obviously not going to take | 08:56:14 |
| 4 | the time to read now, sufficient -- you're | 08:56:17 |
| 5 | saying it is implicit in. It, I guess, is the | 08:56:20 |
| 6 | written description opinion?  Is that what | 08:56:24 |
| 7 | you're saying, Mr. Banner? | 08:56:26 |
| 8 | MR. BANNER:  Well, I'm saying he | 08:56:28 |
| 9 | has various opinions throughout his report | 08:56:30 |
| 10 | about what the patent teaches and what he is | 08:56:31 |
| 11 | looking at when he is comparing the patent to | 08:56:33 |
| 12 | the prior art.  So, you know, we just want to | 08:56:36 |
| 13 | make sure that he is not precluded from saying | 08:56:38 |
| 14 | what he understands the patent teaches in that | 08:56:40 |
| 15 | respect. | 08:56:42 |
| 16 | For example, on page 19 of his | 08:56:43 |
| 17 | report, he talks about what he understands the | 08:56:45 |
| 18 | patent is describing, of course, and it goes | 08:56:49 |
| 19 | on to page 20, of the '243 Patent.  I mean, he | 08:56:53 |
| 20 | shouldn't not be able to talk about what the | 08:56:56 |
| 21 | patent teaches. | 08:56:58 |
| 22 | MS. DURIE:  So I don't have a | 08:56:59 |
| 23 | problem with him providing background | 08:57:00 |
| 24 | consistent with his report, if he says as a | 08:57:02 |

Page 15

| | | |
|---|---|---|
| 1 | matter of background.  I don't want him coming | 08:57:05 |
| 2 | in and offering an undisclosed opinion on | 08:57:08 |
| 3 | written description. | 08:57:10 |
| 4 | He can get on the stand and say | 08:57:11 |
| 5 | exactly what he says here, which is I disagree | 08:57:12 |
| 6 | with Mr. Garney's opinion, but he should not | 08:57:15 |
| 7 | be permitted to say more than that because | 08:57:18 |
| 8 | there is nothing in the section of written | 08:57:20 |
| 9 | description that would explain what his basis | 08:57:22 |
| 10 | is for contending that there is an adequate | 08:57:24 |
| 11 | written description in the patent, whatever, | 08:57:27 |
| 12 | why. | 08:57:29 |
| 13 | THE COURT:  Yeah, I think where I | 08:57:29 |
| 14 | am on this, and, you know, I mean, again, | 08:57:30 |
| 15 | there are always some legitimate questions to | 08:57:35 |
| 16 | the answers, he can certainly testify to what | 08:57:37 |
| 17 | he disclosed in the report, what he thinks the | 08:57:41 |
| 18 | patent means, he can talk about that. | 08:57:43 |
| 19 | To the extent that he wants to | 08:57:45 |
| 20 | say -- you can say that you want to elicit | 08:57:49 |
| 21 | from him the fact that he disagrees with Mr. | 08:57:50 |
| 22 | Garney on the description, he can say that. | 08:57:52 |
| 23 | I think the sort of follow on to | 08:57:56 |
| 24 | that is, you know, do you think it satisfies | 08:57:59 |

Page 16

1     the written description requirement and how?        08:58:01

2     That doesn't look like it's here specifically       08:58:04

3     laid out and, you know --                           08:58:06

4            MR. BANNER:  I agree, Your Honor,             08:58:08

5     and I think that that's what we offered last        08:58:09

6     night when we said he would stick to his            08:58:12

7     report.                                             08:58:14

8            THE COURT:  Okay.  All right.                 08:58:14

9            So we'll do it that way.  I think             08:58:16

10    that will cover it.                                  08:58:17

11           MS. DURIE:  Thank you, Your Honor.            08:58:18

12           MR. BANNER:  Thank you.                        08:58:19

13           THE COURT:  All right.                         08:58:20

14           I guess the two quick other                   08:58:21

15    housekeeping matters I had, when we talked           08:58:22

16    about jury instructions yesterday, we did not        08:58:26

17    discuss the verdict sheet.  I didn't know if         08:58:31

18    anyone has views on it.                              08:58:34

19           MS. DURIE:  I think it's fine.               08:58:35

20           THE COURT:  Okay.                             08:58:37

21           MR. GRAY:  We're okay with it as              08:58:38

22    well.                                                08:58:39

23           THE COURT:  Great.                            08:58:39

24           And then just, I don't know where            08:58:41

| | | |
|---|---|---|
| 1 | you are on the Sandia issue in the | 08:58:42 |
| 2 | instructions. | 08:58:45 |
| 3 | MR. GRAY:  Thank you, Your Honor. | 08:58:46 |
| 4 | So taking a step back to the | 08:58:51 |
| 5 | pretrial order, on page 22, it lays out three | 08:58:52 |
| 6 | potential damages theories that Microchip was | 08:58:59 |
| 7 | going to and has presented at trial, and the | 08:59:01 |
| 8 | first theory says it lost profits from | 08:59:04 |
| 9 | July 1st, 2017, to November 30th, 2021, and | 08:59:08 |
| 10 | then a reasonable royalty thereafter.  This is | 08:59:12 |
| 11 | the time period issue we discussed a little | 08:59:14 |
| 12 | bit yesterday. | 08:59:16 |
| 13 | And the jury has already heard | 08:59:17 |
| 14 | evidence that Microchip had the Athens chip on | 08:59:19 |
| 15 | the market, and we haven't heard evidence of | 08:59:21 |
| 16 | any other chip on the market during the | 08:59:23 |
| 17 | damages period that enabled CarPlay.  So Dr. | 08:59:25 |
| 18 | Becker's calculation was based on the Sandia | 08:59:31 |
| 19 | profits, not the Athens profits. | 08:59:34 |
| 20 | But Dr. Becker's opinion doesn't | 08:59:36 |
| 21 | change Microchip's contention for purposes of | 08:59:39 |
| 22 | the jury instructions because there is | 08:59:41 |
| 23 | evidence in the record already to support the | 08:59:43 |
| 24 | time period theory that Microchip presented. | 08:59:46 |

TRIAL - VOLUME 5

Page 18

| | | |
|---|---|---|
| 1 | THE COURT:  Well, how would the | 08:59:49 |
| 2 | jury do any kind of lost profits calculation | 08:59:51 |
| 3 | on lost sales of Athens? | 08:59:58 |
| 4 | MR. GRAY:  If, for example, after | 09:00:01 |
| 5 | it raises the issue of when Sandia was ready | 09:00:04 |
| 6 | to be tested and therefore accepted or awarded | 09:00:07 |
| 7 | programs, if they say that the Sandia chip | 09:00:10 |
| 8 | couldn't have been ready three months earlier | 09:00:13 |
| 9 | or so, I think is what their contention is, to | 09:00:16 |
| 10 | satisfy the existing deadlines for the OEMs, | 09:00:19 |
| 11 | then the jury could take Dr. Becker's profit | 09:00:24 |
| 12 | calculation for Athens, which is REDACTED per | 09:00:26 |
| 13 | chip, and find that Microchip -- or that the | 09:00:31 |
| 14 | OEMs would have selected the Athens chip a | 09:00:35 |
| 15 | couple months before the Sandia chip was ready | 09:00:38 |
| 16 | for testing. | 09:00:41 |
| 17 | Does that make sense?  I'm happy | 09:00:43 |
| 18 | to explain. | 09:00:45 |
| 19 | THE COURT:  Yeah.  So, I am just | 09:00:46 |
| 20 | thinking of that in the context of the | 09:00:48 |
| 21 | instruction.  Okay. | 09:00:49 |
| 22 | MR. GRAY:  But we do believe that | 09:00:55 |
| 23 | including to limit Microchip's capacity for | 09:00:57 |
| 24 | lost damages to the Sandia chip only would be | 09:01:00 |

TRIAL - VOLUME 5

Page 19

| | | |
|---|---|---|
| 1 | error based on our contentions here. | 09:01:02 |
| 2 | THE COURT:  Okay.  All right. | 09:01:05 |
| 3 | I'll take the word "Sandia" out of the | 09:01:07 |
| 4 | instruction and just leave it as chips and | 09:01:11 |
| 5 | we'll go from there. | 09:01:15 |
| 6 | MR. GRAY:  Thank you. | 09:01:16 |
| 7 | THE COURT:  At least that will | 09:01:17 |
| 8 | clarify.  All right.  That was all I had. | 09:01:19 |
| 9 | Anything else that I need to -- | 09:01:21 |
| 10 | MS. DURIE:  I have a procedural | 09:01:23 |
| 11 | question.  We will have a Rule 50 motion at | 09:01:24 |
| 12 | the close of the evidence. | 09:01:27 |
| 13 | THE COURT:  I mean -- | 09:01:28 |
| 14 | MS. DURIE:  Do you -- just as a | 09:01:29 |
| 15 | purely procedural matter, I can make an oral | 09:01:31 |
| 16 | motion.  I understand that would be consistent | 09:01:34 |
| 17 | with the Court's preference.  My question | 09:01:36 |
| 18 | really just had to do with how to do it in | 09:01:38 |
| 19 | front of the jury, whether you want me to say | 09:01:40 |
| 20 | we have a Rule 50 motion and we'll raise the | 09:01:42 |
| 21 | substance of it at a break, whether you want | 09:01:44 |
| 22 | me to approach. | 09:01:46 |
| 23 | THE COURT:  Yeah, I mean, I | 09:01:47 |
| 24 | noticed that there was something specific | 09:01:48 |

TRIAL - VOLUME 5

| | | |
|---|---|---|
| 1 | about this in the pretrial order that says you | 09:01:51 |
| 2 | can make a motion and then we'll hear it at | 09:01:53 |
| 3 | the next sort of logical break. | 09:01:56 |
| 4 | MS. DURIE:  Correct.  And I just | 09:01:57 |
| 5 | wanted everyone to be clear that I can simply | 09:01:59 |
| 6 | stand up and say, we have an oral motion under | 09:02:02 |
| 7 | Rule 50, that that would be sufficient at that | 09:02:04 |
| 8 | point in time, and that we would then put the | 09:02:05 |
| 9 | bases for the motion on the record. | 09:02:08 |
| 10 | THE COURT:  Yeah, I think that's | 09:02:10 |
| 11 | fine, unless you have a problem with that. | 09:02:12 |
| 12 | MR. RUSSELL:  That was actually | 09:02:14 |
| 13 | the one issue I was going to raise, too.  We | 09:02:15 |
| 14 | wanted to know when Your Honor would like to | 09:02:17 |
| 15 | entertain Rule 50, given the language about | 09:02:20 |
| 16 | giving it at a break. | 09:02:22 |
| 17 | THE COURT:  I think you need to | 09:02:22 |
| 18 | make the motion on the evidence when the issue | 09:02:24 |
| 19 | is in, and then given our planned schedule for | 09:02:26 |
| 20 | the day, I don't know when I am going to wind | 09:02:30 |
| 21 | up charging the jury.  I mean, it doesn't | 09:02:32 |
| 22 | matter, I mean, I'll charge the jury and the | 09:02:35 |
| 23 | case isn't submitted to them until after I | 09:02:38 |
| 24 | give them their final set of instructions | 09:02:40 |

Page 21

| | | |
|---|---|---|
| 1 | tomorrow.  In fact -- so let's see what the | 09:02:45 |
| 2 | schedule for the day is. | 09:02:46 |
| 3 | My suggestion is whenever the | 09:02:47 |
| 4 | evidence is closed, anybody wants to make a | 09:02:49 |
| 5 | Rule 50 motion, make it.  If we're at a | 09:02:52 |
| 6 | logical point where I send the jury out, I | 09:02:55 |
| 7 | don't think we're going to get there by lunch, | 09:02:58 |
| 8 | but if we do and I send them out, then we can | 09:03:00 |
| 9 | hear the bases over lunch. | 09:03:02 |
| 10 | If not, then I can either hear | 09:03:04 |
| 11 | them, you know, before or I can hear the | 09:03:07 |
| 12 | arguments after I instruct the jury and send | 09:03:09 |
| 13 | them home, because we'll have some time this | 09:03:11 |
| 14 | afternoon, I think.  I don't think it will | 09:03:15 |
| 15 | take us until the end of the day, so that may | 09:03:16 |
| 16 | be an efficient use of the day as well, get | 09:03:19 |
| 17 | the instructions out, get the jury out the | 09:03:21 |
| 18 | door and then actually hear the arguments | 09:03:23 |
| 19 | then. | 09:03:25 |
| 20 | MR. RUSSELL:  Great.  Just one | 09:03:25 |
| 21 | point of clarification which is, you're saying | 09:03:27 |
| 22 | we need to make an oral Rule 50 in front of | 09:03:29 |
| 23 | the jury and then make -- | 09:03:31 |
| 24 | THE COURT:  I don't care if you | 09:03:32 |

| | | |
|---|---|---|
| 1 | make it in front of the jury.  I don't know | 09:03:33 |
| 2 | that the jury needs to actually hear you say | 09:03:35 |
| 3 | the words "Rule 50" to preserve the motion. | 09:03:38 |
| 4 | It's not going to mean anything to them and | 09:03:42 |
| 5 | they are not going to be instructed. | 09:03:44 |
| 6 | Again, the rule says you make the | 09:03:45 |
| 7 | motion any time before the case is submitted | 09:03:47 |
| 8 | to the jury.  The case won't be submitted to | 09:03:49 |
| 9 | the jury until you guys close and I give them | 09:03:51 |
| 10 | that last instruction tomorrow and then they | 09:03:54 |
| 11 | go out to deliberate. | 09:03:56 |
| 12 | So if you want to wait until | 09:03:57 |
| 13 | they're out the door tonight and just say, | 09:03:59 |
| 14 | Your Honor, we have a Rule 50 motion.  That's | 09:04:00 |
| 15 | fine, too. | 09:04:03 |
| 16 | MR. RUSSELL:  Thank you, Your | 09:04:04 |
| 17 | Honor. | 09:04:05 |
| 18 | THE COURT:  All right.  So let's | 09:04:05 |
| 19 | bring them in.  Just so everyone knows, I'll | 09:04:08 |
| 20 | probably give them a 30-second overview or | 09:04:11 |
| 21 | maybe a minute overview of where we stand | 09:04:13 |
| 22 | procedurally, just so they know what to | 09:04:16 |
| 23 | expect. | 09:04:18 |
| 24 | MS. DURIE:  Great. | 09:04:19 |

Page 23

| | | |
|---|---|---|
| 1 | MR. RUSSELL:  And just so Your | 09:04:21 |
| 2 | Honor knows, the only witness we are going to | 09:04:22 |
| 3 | have after Garney, I believe, is Mr. Levy. | 09:04:25 |
| 4 | THE COURT:  Great. | 09:04:27 |
| 5 | So you are not calling Mr. | 09:04:27 |
| 6 | Obolsky? | 09:04:30 |
| 7 | MR. RUSSELL:  That's right. | 09:04:31 |
| 8 | THE COURT:  Okay. | 09:04:32 |
| 9 | MR. SAULSBURY:  Your Honor, it | 09:05:05 |
| 10 | appears we have a dispute.  They are telling | 09:05:06 |
| 11 | me that the boxes for the slides are excluded. | 09:05:10 |
| 12 | I understood Your Honor's ruling to be that we | 09:05:12 |
| 13 | could lay a foundation for the physical boxes | 09:05:14 |
| 14 | based on the case law that the indicia on the | 09:05:16 |
| 15 | box can be -- well, the jury is coming. | 09:05:21 |
| 16 | THE COURT:  Well, let's approach. | 09:05:23 |
| 17 | Hold on a second.  Let me -- give me a moment. | 09:05:25 |
| 18 | (Whereupon, the jury entered the | 09:05:36 |
| 19 | courtroom.) | 09:05:37 |
| 20 | THE COURT:  All right.  Good | 09:05:40 |
| 21 | morning, everybody.  We were -- I wanted to | 09:05:40 |
| 22 | give you a quick overview -- I'm sorry, you | 09:05:45 |
| 23 | all can be seated -- a quick overview on kind | 09:05:48 |
| 24 | of where we stand as we are kind of wrapping | 09:05:51 |

TRIAL - VOLUME 5

Page 24

| | | |
|---|---|---|
| 1 | up the first week here. | 09:05:53 |
| 2 | I expect, based on what I have | 09:05:54 |
| 3 | heard from the lawyers, that today will be the | 09:05:58 |
| 4 | last day with the presentation of evidence; in | 09:06:00 |
| 5 | other words, the witnesses.  And then at some | 09:06:03 |
| 6 | point this afternoon, depending -- I don't | 09:06:06 |
| 7 | know exactly time-wise where it will happen, | 09:06:09 |
| 8 | but at some point this afternoon, what you | 09:06:11 |
| 9 | should expect to happen is I'm going to give | 09:06:14 |
| 10 | you instructions on the law. | 09:06:16 |
| 11 | So I'll tell you basically, you | 09:06:19 |
| 12 | know, a fair amount of detail how the law | 09:06:20 |
| 13 | works in this area and what law you have to | 09:06:23 |
| 14 | apply.  We'll wrap that up today. | 09:06:25 |
| 15 | I just want to warn you now, it is | 09:06:29 |
| 16 | a long slog that I have to read to you, so | 09:06:34 |
| 17 | we'll probably pick it up and put our heads up | 09:06:37 |
| 18 | for a minute, but we'll do that.  I will then | 09:06:40 |
| 19 | send you all home, I don't know, it might run | 09:06:42 |
| 20 | until 5 o'clock, but it might be earlier. | 09:06:45 |
| 21 | When we come back tomorrow, the | 09:06:47 |
| 22 | parties will do their closing arguments to | 09:06:49 |
| 23 | you.  I'll give you one last instruction which | 09:06:51 |
| 24 | will be about how you actually go back and | 09:06:55 |

Page 25

| | | |
|---|---|---|
| 1 | deliberate as the jury, and then you will have | 09:06:56 |
| 2 | the case. | 09:06:58 |
| 3 | So my expectation is that sometime | 09:06:58 |
| 4 | around lunchtime tomorrow, you will be in a | 09:07:01 |
| 5 | position to begin your deliberations. | 09:07:03 |
| 6 | Obviously you've heard a lot, there's going to | 09:07:05 |
| 7 | be a lot of evidence.  All the various | 09:07:08 |
| 8 | exhibits you've heard us reference and have | 09:07:10 |
| 9 | seen on the screens that have been admitted | 09:07:12 |
| 10 | into evidence will be sent in the back with | 09:07:14 |
| 11 | you. | 09:07:17 |
| 12 | We'll also be sending back to you | 09:07:18 |
| 13 | a copy of my written jury charge, so you'll | 09:07:19 |
| 14 | have to sort through all that however you see | 09:07:22 |
| 15 | fit.  And so we'll be here, you know -- and it | 09:07:24 |
| 16 | continues as you go through it, just for your | 09:07:27 |
| 17 | planning purposes, this -- the Court here is | 09:07:30 |
| 18 | closed on Friday for Good Friday.  So we won't | 09:07:33 |
| 19 | be here.  So if you finish before that, fine. | 09:07:37 |
| 20 | If not, we'll come back Monday and continue, | 09:07:40 |
| 21 | but we will be on break Friday. | 09:07:43 |
| 22 | So I just wanted to give you that | 09:07:49 |
| 23 | overview.  And now I have apologize to you.  I | 09:07:50 |
| 24 | may have jumped the gun by bringing you in | 09:07:52 |

TRIAL - VOLUME 5

Page 26

| | | |
|---|---|---|
| 1 | about two minutes, so I have one issue to take | 09:07:55 |
| 2 | up with the lawyers.  So I am going to bring | 09:07:57 |
| 3 | them up here and put on that white noise | 09:08:00 |
| 4 | machine, so hang with us for a minute, okay. | 09:08:02 |
| 5 | (Whereupon, a discussion was held | 09:16:10 |
| 6 | at sidebar as follows: | 09:16:10 |
| 7 | THE COURT:  I know you don't want | 09:16:10 |
| 8 | the jury to hear you, but with the white | 09:16:10 |
| 9 | noise, I can tell you, they can't.  But both | 09:16:10 |
| 10 | Rose and I need to hear you. | 09:16:10 |
| 11 | MR. SLAYDEN:  At the pretrial | 09:16:10 |
| 12 | conference, we understand Your Honor had | 09:16:10 |
| 13 | sustained our objection to the boxes coming | 09:16:10 |
| 14 | into evidence.  There was certain indicia of | 09:16:10 |
| 15 | dates on them.  They weren't offered for that, | 09:16:10 |
| 16 | they were hearsay in there, and you were | 09:16:10 |
| 17 | saying the boxes were out of the physical -- | 09:16:10 |
| 18 | only the physical descriptions within them | 09:16:10 |
| 19 | could come in.  That was what was told at the | 09:16:10 |
| 20 | preliminary conference, the switches are in, | 09:16:10 |
| 21 | but the boxes are not. | 09:16:10 |
| 22 | THE COURT:  So why do you need the | 09:16:10 |
| 23 | boxes? | 09:16:10 |
| 24 | MR. SAULSBURY:  Because Mr. Garney | 09:16:10 |

Page 27

| | | |
|---|---|---|
| 1 | relied on information on the boxes for him to | 09:16:10 |
| 2 | form his opinion on the prior case.  The case | 09:16:10 |
| 3 | law is clearly -- the Delaware case on point, | 09:16:10 |
| 4 | it is the MobileMedia v.  Apple case, it says | 09:16:10 |
| 5 | an expert may reasonably rely on documentation | 09:16:10 |
| 6 | to determine -- | 09:16:10 |
| 7 | THE COURT REPORTER:  I'm sorry, I | 09:16:10 |
| 8 | can't hear you. | 09:16:10 |
| 9 | MR. SAULSBURY:  MobileMedia Ideas | 09:16:10 |
| 10 | vs. Apple, 907 App.Sup. 2D, 570, the cite is | 09:16:10 |
| 11 | 605 Delaware case from 2012. | 09:16:10 |
| 12 | It says, "An expert may reasonably | 09:16:10 |
| 13 | rely on a copyright date on the documentation | 09:16:10 |
| 14 | to determine an approximate date of public | 09:16:10 |
| 15 | availability and absent any evidence to the | 09:16:10 |
| 16 | contrary, the Court may rely on that prior art | 09:16:10 |
| 17 | date." | 09:16:10 |
| 18 | So it is a fact issue to | 09:16:10 |
| 19 | ultimately be determined by the jury.  The | 09:16:10 |
| 20 | copyright date is informative. | 09:16:10 |
| 21 | THE COURT:  I think that the | 09:16:10 |
| 22 | problem I have was -- there's a difference. | 09:16:10 |
| 23 | He can rely on it under Rule 703, no question | 09:16:10 |
| 24 | about it.  What he can't do is just convey | 09:16:10 |

TRIAL - VOLUME 5

Page 28

| | | |
|---|---|---|
| 1 | hearsay to the jury. | 09:16:10 |
| 2 | MR. SAULSBURY:  Absolutely. | 09:16:10 |
| 3 | THE COURT:  And so I think there | 09:16:10 |
| 4 | is a difference between him saying well, yeah, | 09:16:10 |
| 5 | I determined that it was on sale.  I looked at | 09:16:10 |
| 6 | various things, including the boxes.  That | 09:16:10 |
| 7 | doesn't mean the boxes come in.  The boxes, | 09:16:10 |
| 8 | themselves, are still hearsay, right?  I think | 09:16:10 |
| 9 | that's the distinction that I am seeing.  So | 09:16:10 |
| 10 | he can say that's what he looked at. | 09:16:10 |
| 11 | MR. SAULSBURY:  Sorry, I didn't | 09:16:10 |
| 12 | mean to interrupt you. | 09:16:10 |
| 13 | THE COURT:  That's okay. | 09:16:10 |
| 14 | MR. SAULSBURY:  What I was going | 09:16:10 |
| 15 | to say is the copyright date, itself, is | 09:16:10 |
| 16 | hearsay, but a limiting instruction would be | 09:16:10 |
| 17 | appropriate here because Mr. Garney is going | 09:16:10 |
| 18 | to be testifying about this information, the | 09:16:10 |
| 19 | jury is not going to have the transcript, | 09:16:10 |
| 20 | obviously, so the box is a point of reference. | 09:16:10 |
| 21 | They'll have a limiting instruction that says | 09:16:10 |
| 22 | you can't rely on it for the truth of the | 09:16:10 |
| 23 | matter. | 09:16:11 |
| 24 | THE COURT:  So then what are they | 09:16:11 |

TRIAL - VOLUME 5

Page 29

| | | |
|---|---|---|
| 1 | relying on the boxes for? | 09:16:11 |
| 2 | MR. SAULSBURY:  It will -- there's | 09:16:11 |
| 3 | a couple things.  First of all, there's the | 09:16:11 |
| 4 | suggestion -- there has been suggestion that | 09:16:11 |
| 5 | what Mr. Garney already looked at isn't | 09:16:11 |
| 6 | actually the device that he rendered the | 09:16:11 |
| 7 | opinion on and the boxes establish why, and | 09:16:11 |
| 8 | you will understand why because the boxes | 09:16:11 |
| 9 | indicate what the product is and that maps | 09:16:11 |
| 10 | physically the devices, themselves. | 09:16:11 |
| 11 | THE COURT:  Well, doesn't the | 09:16:11 |
| 12 | product itself indicate what it is?  I'm | 09:16:11 |
| 13 | assuming it has a label on it. | 09:16:11 |
| 14 | MR. SAULSBURY:  The product, | 09:16:11 |
| 15 | itself, does not have -- so there's this | 09:16:11 |
| 16 | suggestion that US-98 and the device that Mr. | 09:16:11 |
| 17 | Garney looked at are different devices. | 09:16:11 |
| 18 | THE COURT:  Right.  I know that. | 09:16:11 |
| 19 | MR. SAULSBURY:  I didn't mean to | 09:16:11 |
| 20 | suggest you didn't. | 09:16:11 |
| 21 | THE COURT:  No, I understand.  You | 09:16:11 |
| 22 | don't have to tread on egg shells, it's okay. | 09:16:11 |
| 23 | MR. SAULSBURY:  The device itself | 09:16:11 |
| 24 | doesn't say US-98. | 09:16:11 |

Page 30

| | | |
|---|---|---|
| 1 | THE COURT:  Right. | 09:16:11 |
| 2 | MR. SAULSBURY:  But there's other | 09:16:11 |
| 3 | markings on the packaging. | 09:16:11 |
| 4 | MR. SLAYDEN:  The box -- | 09:16:11 |
| 5 | THE COURT:  So wait, the box | 09:16:11 |
| 6 | doesn't say US-98, it says other things like | 09:16:11 |
| 7 | Linksys, you're saying. | 09:16:11 |
| 8 | All right.  I don't think the | 09:16:11 |
| 9 | boxes should come in, at least for now. | 09:16:11 |
| 10 | MR. SAULSBURY:  Understood. | 09:16:11 |
| 11 | THE COURT:  He can -- again, he | 09:16:11 |
| 12 | can talk about what he relied on, which I | 09:16:11 |
| 13 | think it's 100 percent within the range of | 09:16:11 |
| 14 | what a reasonable expert would rely on in his | 09:16:11 |
| 15 | field, so I understand that.  That doesn't | 09:16:11 |
| 16 | obviate the hearsay problem with the boxes. | 09:16:11 |
| 17 | Now, having said that, depending | 09:16:11 |
| 18 | on the cross-examination, you may have some | 09:16:11 |
| 19 | room on redirect, okay, because depending what | 09:16:11 |
| 20 | you do, Mr. Slayden, you may be opening the | 09:16:11 |
| 21 | door.  So just walk that line carefully and | 09:16:11 |
| 22 | we'll see where we are, but I think that's | 09:16:11 |
| 23 | where I am on it.  Okay. | 09:16:11 |
| 24 | MR. SAULSBURY:  Understood.  What | 09:16:11 |

TRIAL - VOLUME 5

Page 31

| | | |
|---|---|---|
| 1 | I will do then is I'll take the materials out | 09:16:11 |
| 2 | of the box and I guess I'll put new exhibit | 09:16:11 |
| 3 | stickers on the contents of the box and then | 09:16:11 |
| 4 | hand it up to Mr. Garney. | 09:16:11 |
| 5 | THE COURT:  Yeah, I thought that's | 09:16:11 |
| 6 | what we decided at pretrial, was that you were | 09:16:11 |
| 7 | going to hand him the actual devices. | 09:16:11 |
| 8 | MR. SAULSBURY:  The actual devices | 09:16:11 |
| 9 | and the rest of the contents of the box. | 09:16:11 |
| 10 | THE COURT:  I don't know what else | 09:16:11 |
| 11 | is in the box, but that's fine.  If it's | 09:16:11 |
| 12 | something he looked at and it's a physical | 09:16:11 |
| 13 | device that's part of his analysis. | 09:16:11 |
| 14 | MR. SAULSBURY:  One of the things | 09:16:11 |
| 15 | is a CD that is very much a part of this | 09:16:11 |
| 16 | analysis.  We are not relying on the copyright | 09:16:11 |
| 17 | date on the CD; we are relying on the last | 09:16:11 |
| 18 | modified date of the software that is on the | 09:16:11 |
| 19 | CD. | 09:16:11 |
| 20 | THE COURT:  Yeah, we talked about | 09:16:11 |
| 21 | this at the final pretrial.  Don't you have | 09:16:11 |
| 22 | the actual document screenshot from the | 09:16:11 |
| 23 | results of the CD? | 09:16:11 |
| 24 | MR. SLAYDEN:  Yes. | 09:16:11 |

TRIAL - VOLUME 5

Page 32

| | | |
|---|---|---|
| 1 | MR. SAULSBURY:  There is a | 09:16:12 |
| 2 | suggestion that the screenshot doesn't | 09:16:12 |
| 3 | demonstrate because this is in the weeds, but | 09:16:12 |
| 4 | the screenshot was taken on a Linksys machine. | 09:16:12 |
| 5 | There is a Y that dates it in 2036.  Obviously | 09:16:12 |
| 6 | Linksys isn't a time machine and so we want to | 09:16:12 |
| 7 | use the CD to clear up any doubt about the | 09:16:12 |
| 8 | last modified dates because we don't want them | 09:16:12 |
| 9 | calling into question whether the last dates | 09:16:12 |
| 10 | are reliable. | 09:16:12 |
| 11 | THE COURT:  Other than the fact | 09:16:12 |
| 12 | that the CD has the copyright notice on it, | 09:16:12 |
| 13 | other than the fact it's a shiny disk, what | 09:16:12 |
| 14 | does it tell them? | 09:16:12 |
| 15 | MR. SAULSBURY:  What we were going | 09:16:12 |
| 16 | to do is put the CD in an optical drive and | 09:16:12 |
| 17 | just show its contents and its contents aren't | 09:16:12 |
| 18 | hearsay because -- | 09:16:12 |
| 19 | THE COURT:  No, I'm not saying | 09:16:12 |
| 20 | they are hearsay.  Why don't we -- we're sort | 09:16:12 |
| 21 | of in the same place, and this is all -- I | 09:16:12 |
| 22 | know it's sort of anticipatory, but let's save | 09:16:12 |
| 23 | it for redirect if it's necessary, okay?  I | 09:16:12 |
| 24 | don't think you need to -- well, wait.  Let me | 09:16:12 |

TRIAL - VOLUME 5

Page 33

| | | |
|---|---|---|
| 1 | back up. | 09:16:12 |
| 2 | Are you going to introduce the CD, | 09:16:12 |
| 3 | itself, as evidence?  Because if so, I guess | 09:16:12 |
| 4 | my question is, let's say you introduce it as | 09:16:12 |
| 5 | evidence, just hear me out for a second, and | 09:16:12 |
| 6 | then I'm going to send the disk back with the | 09:16:12 |
| 7 | jury, are they getting the optical drive to | 09:16:12 |
| 8 | try to recreate that? | 09:16:12 |
| 9 | MR. SAULSBURY:  They are getting | 09:16:12 |
| 10 | an optical drive.  They also have a computer | 09:16:12 |
| 11 | for the spreadsheets.  However, Your Honor, if | 09:16:12 |
| 12 | you would prefer to see what comes out in | 09:16:12 |
| 13 | cross or what contention is caused, our | 09:16:12 |
| 14 | suggestion is made that the 2036 date suggests | 09:16:12 |
| 15 | that dates aren't reliable, we can deal with | 09:16:12 |
| 16 | it in redirect. | 09:16:12 |
| 17 | THE COURT:  If you want to just | 09:16:12 |
| 18 | say -- if you want to pull the teeth on that, | 09:16:12 |
| 19 | you know, on direct on the 2036 issue on | 09:16:12 |
| 20 | there, that's fine, right?  I just don't know | 09:16:12 |
| 21 | that you necessarily need to actually | 09:16:12 |
| 22 | introduce the CD.  It seems like an unduly | 09:16:12 |
| 23 | complicated part of this. | 09:16:12 |
| 24 | MR. SAULSBURY:  That's fair, Your | 09:16:12 |

TRIAL - VOLUME 5

Page 34

| | | |
|---|---|---|
| 1 | Honor.  I can pull it up, introduce the CD on | 09:16:12 |
| 2 | redirect.  If there's some sort of suggestion, | 09:16:12 |
| 3 | then we reserve the right to do it on | 09:16:12 |
| 4 | redirect. | 09:16:12 |
| 5 | THE COURT:  That's fine.  All | 09:16:12 |
| 6 | right.  Good. | 09:16:12 |
| 7 | (Whereupon, the discussion | 09:16:16 |
| 8 | concluded at sidebar.) | 09:16:16 |
| 9 | THE COURT:  Ladies and gentlemen, | 09:16:16 |
| 10 | we are going to resume with Mr. Garney's | 09:16:18 |
| 11 | testimony this morning. | 09:16:20 |
| 12 | Mr. Garney, you understand you're | 09:16:21 |
| 13 | still under oath? | 09:16:22 |
| 14 | THE WITNESS:  Yes. | 09:16:23 |
| 15 | THE COURT:  Mr. Saulsbury, take a | 09:16:24 |
| 16 | moment to get situated and then we'll start. | 09:16:26 |
| 17 | - - - | 09:16:37 |
| 18 | DIRECT EXAMINATION, CONTINUED | 09:16:37 |
| 19 | - - - | 09:16:40 |
| 20 | BY MR. SAULSBURY: | 09:16:40 |
| 21 | Q.   Good morning, Mr. Garney. | 09:16:41 |
| 22 | A.   Good morning. | 09:16:42 |
| 23 | Q.   I just have one bit of follow-up | 09:16:43 |
| 24 | relating to your non-infringement opinion. | 09:16:46 |

TRIAL - VOLUME 5

Page 35

| | | |
|---|---|---|
| 1 | MR. SAULSBURY:  Mr. Glass, can we | 09:16:48 |
| 2 | please see Trial Exhibit 12 in evidence on | 09:16:50 |
| 3 | page 4.  This is the diagram of the dual role | 09:16:52 |
| 4 | hub we were looking at earlier, Mr. Garney. | 09:16:55 |
| 5 | BY MR. SAULSBURY: | 09:16:58 |
| 6 | Q.   My question is, if you take a look at | 09:16:58 |
| 7 | the head unit here on the left, it's Device A, | 09:17:00 |
| 8 | when did the head unit access that device? | 09:17:03 |
| 9 | A.   Well, the power has to be powered in | 09:17:05 |
| 10 | order for it to do that. | 09:17:09 |
| 11 | Q.   Okay. | 09:17:10 |
| 12 | And let's assume that the dual | 09:17:10 |
| 13 | role hub is operating in CarPlay mode for the | 09:17:13 |
| 14 | next few questions.  In that case, when can | 09:17:15 |
| 15 | the head unit access its device? | 09:17:19 |
| 16 | A.   Head unit can access Device A any | 09:17:21 |
| 17 | time it wants. | 09:17:25 |
| 18 | Q.   And when can the iPhone access its | 09:17:26 |
| 19 | device, Device B? | 09:17:28 |
| 20 | A.   Since it's a host, it can access it's | 09:17:29 |
| 21 | device.  IPhone can access Device B any time | 09:17:32 |
| 22 | it wants. | 09:17:35 |
| 23 | Q.   What if the head unit and iPhone are | 09:17:35 |
| 24 | sending requests to their devices at the same | 09:17:37 |

Page 36

| | | |
|---|---|---|
| 1 | time, does that create any problem? | 09:17:39 |
| 2 | A.   No, there is sort of no interference | 09:17:40 |
| 3 | of the two devices with each other, so each | 09:17:42 |
| 4 | host can access its device without any | 09:17:45 |
| 5 | constraints. | 09:17:47 |
| 6 | Q.   Is there a need to arbitrate as | 09:17:48 |
| 7 | between access requests from the host and the | 09:17:50 |
| 8 | iPhone? | 09:17:53 |
| 9 | A.   No, there is no arbitration present. | 09:17:54 |
| 10 | Q.   Now, do the head unit and iPhone | 09:17:58 |
| 11 | necessarily access their devices at the same | 09:18:01 |
| 12 | time? | 09:18:04 |
| 13 | A.   No.  It might coincidentally, but not | 09:18:04 |
| 14 | necessarily. | 09:18:08 |
| 15 | Q.   So there are cases when they're not | 09:18:08 |
| 16 | both accessing their device at the same time? | 09:18:11 |
| 17 | A.   That's correct. | 09:18:13 |
| 18 | Q.   Is the head unit ever prevented from | 09:18:14 |
| 19 | accessing Device A because iPhone is using | 09:18:16 |
| 20 | Device B? | 09:18:18 |
| 21 | A.   No. | 09:18:19 |
| 22 | Q.   And is the iPhone ever prevented from | 09:18:19 |
| 23 | accessing Device B because the head unit is | 09:18:21 |
| 24 | accessing Device A? | 09:18:24 |

TRIAL - VOLUME 5

Page 37

```
 1      A.    No.                                    09:18:25

 2      Q.    Okay.                                  09:18:26

 3            Let's pivot to validity.  Did you      09:18:27

 4   also consider the validity of claim 23 through  09:18:31

 5   25 of the asserted patent?                      09:18:33

 6      A.    I did.                                 09:18:36

 7      Q.    Okay.                                  09:18:36

 8            And I think, I promise that this        09:18:37

 9   is the last binder I am going to hand you.      09:18:38

10            And did you come to a conclusion        09:18:55

11   as to the validity of claim 23 through 25?      09:18:57

12      A.    Yes, I did.                            09:19:00

13      Q.    Did you rely on prior art?             09:19:00

14      A.    I did.                                 09:19:02

15      Q.    Okay.                                  09:19:02

16            And what was your conclusion?          09:19:03

17      A.    My conclusion was that those claims    09:19:03

18   are invalid.                                    09:19:05

19      Q.    Okay.                                  09:19:06

20            Now, I think we heard about this       09:19:07

21   in the patent video, but what's prior art?     09:19:09

22      A.    Prior art is, for at least patent      09:19:13

23   office actions, written documents, and for     09:19:16

24   settings like this, written documents and      09:19:17
```

TRIAL - VOLUME 5

Page 38

```
 1   actual products.                              09:19:20

 2       Q.   The things that were available in the   09:19:20

 3   world before the patent was filed for?        09:19:22

 4       A.   Yes, before the patent was filed.     09:19:24

 5       Q.   And what's the relevant date of prior  09:19:26

 6   art here?                                      09:19:27

 7       A.   April 2006.                           09:19:28

 8       Q.   Are all of the references you are      09:19:31

 9   relying on for your opinion from before        09:19:32

10   April 2006?                                    09:19:35

11       A.   Yes, they were.                        09:19:36

12       Q.   Okay.                                  09:19:37

13            What are those references?             09:19:37

14       A.   The -- there's a patent by --         09:19:39

15   actually two men both named Dickens, it is     09:19:42

16   called the Dickens' patents, and then there's  09:19:45

17   also two physical products I examined, one     09:19:48

18   called Belkin and one called US-98.            09:19:51

19       Q.   And you concluded that claims 23      09:19:53

20   through 25 are obvious in light of those       09:19:55

21   references?                                    09:19:57

22       A.   Yes.  Obvious in combination of       09:19:57

23   Dickens plus either Belkin or Dickens plus     09:20:00

24   US-98.                                         09:20:03
```

TRIAL - VOLUME 5

Page 39

| | | |
|---|---|---|
| 1 | Q.   Is this the first time you are | 09:20:04 |
| 2 | offering opinions that the '243 Patent is | 09:20:05 |
| 3 | invalid? | 09:20:07 |
| 4 | A.   No. | 09:20:08 |
| 5 | Q.   When did you do this before? | 09:20:09 |
| 6 | A.   I did this before the patent board | 09:20:10 |
| 7 | during this proceeding called inter parte | 09:20:13 |
| 8 | review. | 09:20:15 |
| 9 | Q.   That's a patent office proceeding we | 09:20:16 |
| 10 | heard about earlier where they considered | 09:20:18 |
| 11 | Dickens? | 09:20:20 |
| 12 | A.   That's correct. | 09:20:21 |
| 13 | Q.   Okay. | 09:20:21 |
| 14 | Now, are you -- that's the | 09:20:23 |
| 15 | proceeding in which Dickens was found to | 09:20:31 |
| 16 | invalidate claim 1; is that right? | 09:20:35 |
| 17 | A.   That's correct. | 09:20:37 |
| 18 | Q.   Okay. | 09:20:38 |
| 19 | And do you know if the patent | 09:20:38 |
| 20 | office found claim 23 to be invalid based on | 09:20:41 |
| 21 | Dickens? | 09:20:43 |
| 22 | A.   They did not. | 09:20:44 |
| 23 | Q.   How come? | 09:20:45 |
| 24 | A.   There was an element that was | 09:20:45 |

| | | |
|---|---|---|
| 1 | missing, as taught by Dickens. | 09:20:47 |
| 2 | Q. The element being operable for | 09:20:49 |
| 3 | simultaneous configuration? | 09:20:52 |
| 4 | A. That's correct. | 09:20:55 |
| 5 | Q. Okay. | 09:20:56 |
| 6 | Now, are you -- are you here to | 09:20:57 |
| 7 | disagree with the patent office's conclusion? | 09:20:59 |
| 8 | A. No, they formed their own conclusion. | 09:21:02 |
| 9 | Q. So you are not going to tell the jury | 09:21:04 |
| 10 | that Dickens satisfies the requirement of | 09:21:05 |
| 11 | being operable for simultaneous configuration? | 09:21:09 |
| 12 | A. No, that's against the law. | 09:21:11 |
| 13 | Q. Okay. | 09:21:13 |
| 14 | Now, if Dickens doesn't contain | 09:21:15 |
| 15 | that element, why do you think the claims are | 09:21:18 |
| 16 | invalid? | 09:21:20 |
| 17 | A. Well, because I get the -- I mean, | 09:21:20 |
| 18 | the patent board can only look at the | 09:21:22 |
| 19 | documentation, they can only see explicit | 09:21:24 |
| 20 | written things to convince them one way or the | 09:21:26 |
| 21 | other. | 09:21:28 |
| 22 | And I have the luxury, in this | 09:21:28 |
| 23 | kind of a proceeding, to look at actual | 09:21:30 |
| 24 | physical products and can do that in | 09:21:31 |

Page 41

1    combination with the documents.  And if it's          09:21:34

2    obvious to combine the two, then I can use            09:21:36

3    that as a basis for my opinion.                       09:21:39

4        Q.   So you mentioned Belkin and US-98            09:21:41

5    earlier.  Are those the physical products             09:21:44

6    you're referencing?                                   09:21:46

7        A.   They are.                                    09:21:47

8        Q.   Now, has the patent office ever              09:21:47

9    considered whether, in the context of IPR or          09:21:50

10   otherwise, whether the claims are invalid as          09:21:52

11   obvious in light of Dickens and Belkin?               09:21:54

12       A.   No, they couldn't do that because            09:21:57

13   they would have had to look at physical               09:21:59

14   products that are -- and I don't know the             09:22:00

15   legal word, but they are barred from doing            09:22:02

16   that.  They are not allowed to do that.               09:22:04

17       Q.   Same question with respect to Dickens        09:22:05

18   and US-98.                                            09:22:08

19       A.   Same answer.  No, they couldn't look         09:22:09

20   at that.                                              09:22:11

21       Q.   And to your knowledge, has the               09:22:11

22   question of whether claims 23 through 25 are          09:22:14

23   invalid in view of Dickens and Belkin ever            09:22:19

24   been considered in another proceeding?                09:22:23

TRIAL - VOLUME 5

Page 42

```
 1        A.    I don't believe it has.              09:22:24

 2        Q.    Okay.                                09:22:25

 3              Let's take a look at Trial           09:22:26

 4   Exhibit 184, please.  Or actually, sorry, if   09:22:29

 5   you could turn to 184 in your binder, Mr.      09:22:33

 6   Garney.                                         09:22:37

 7              (Whereupon, Trial Exhibit 184 was   09:22:37

 8   introduced.)                                    09:22:37

 9   BY MR. SAULSBURY:                               09:22:37

10        Q.    Do you see that?                     09:22:37

11        A.    Okay.                                09:22:37

12        Q.    Okay.                                09:22:38

13              Do you recognize this as the        09:22:39

14   patent we were just talking about?             09:22:41

15        A.    I do.                                09:22:43

16              MR. SAULSBURY:  I move 184.          09:22:44

17              MR. SLAYDEN:  No objection.          09:22:46

18              THE COURT:  All right.  Received.    09:22:47

19              MR. SAULSBURY:  Mr. Glass, if we    09:22:49

20   could see it up on the slide.  Thank you.      09:22:50

21   BY MR. SAULSBURY:                               09:22:52

22        Q.    Could you give us a brief overview of  09:22:53

23   what Dickens is about, just at a high level at  09:22:56

24   this point?                                     09:22:57
```

Page 43

| | | |
|---|---|---|
| 1 | A.    Sure.  So this is an invention | 09:22:57 |
| 2 | dealing with having multiple hosts that can | 09:23:00 |
| 3 | access multiple -- they have shared access | 09:23:01 |
| 4 | with multiple devices. | 09:23:02 |
| 5 | Q.    And how did Dickens accomplish that, | 09:23:04 |
| 6 | again at a high level? | 09:23:07 |
| 7 | A.    It just -- it has -- it has -- it | 09:23:09 |
| 8 | provides for separate hosts.  It has some | 09:23:17 |
| 9 | features called emulated computers and | 09:23:20 |
| 10 | features called emulated devices, and their | 09:23:23 |
| 11 | invention encompasses those which are used to | 09:23:27 |
| 12 | allow a host to have its access to a device. | 09:23:29 |
| 13 | If there are two hosts that try to | 09:23:34 |
| 14 | access the shared device, it has a concept | 09:23:36 |
| 15 | called hold-off, which is a form of | 09:23:39 |
| 16 | arbitration, so only one host would be able to | 09:23:40 |
| 17 | access the device and then the second host | 09:23:43 |
| 18 | trying would wait for that device to finish. | 09:23:45 |
| 19 | And when the hold-off is clear, then that | 09:23:47 |
| 20 | second device can act as a shared -- | 09:23:51 |
| 21 | Q.    And what -- | 09:23:51 |
| 22 | A.    Second host could act. | 09:23:54 |
| 23 | Q.    Thank you. | 09:23:58 |
| 24 | And what does Dickens say about | 09:23:59 |

Page 44

| | | |
|---|---|---|
| 1 | how its system knows when the shared device is | 09:24:00 |
| 2 | available for the second host? | 09:24:02 |
| 3 | A.   At least at one point, it talks about | 09:24:03 |
| 4 | something like a time-out.  So, for example, | 09:24:05 |
| 5 | when the printer is finished doing a document, | 09:24:07 |
| 6 | printing a document, and that's all done, they | 09:24:09 |
| 7 | could have a timer when it times out.  Then | 09:24:11 |
| 8 | they could release the hold-off and let the | 09:24:14 |
| 9 | second host print to the same printer. | 09:24:18 |
| 10 | Q.   Now, I believe you prepared some | 09:24:20 |
| 11 | slides regarding Dickens. | 09:24:23 |
| 12 | MR. SAULSBURY:  Mr. Glass, can we | 09:24:25 |
| 13 | please take a look at Slide 3. | 09:24:26 |
| 14 | THE WITNESS:  Yes. | 09:24:28 |
| 15 | BY MR. SAULSBURY: | 09:24:29 |
| 16 | Q.   And, Mr. Garney, you should have a | 09:24:30 |
| 17 | clicker in front of you.  Could you please | 09:24:31 |
| 18 | take us through how Dickens maps to claim 23? | 09:24:34 |
| 19 | A.   Sure. | 09:24:40 |
| 20 | So this is a figure straight out | 09:24:40 |
| 21 | of the Dickens patent, Figure 2, and it's | 09:24:42 |
| 22 | illustrative of the various pieces of Dickens. | 09:24:45 |
| 23 | And we have the claims of -- excuse me, the | 09:24:49 |
| 24 | claim elements of claim 23. | 09:24:51 |

TRIAL - VOLUME 5

Page 45

| | | |
|---|---|---|
| 1 | And so, for example, the first | 09:24:53 |
| 2 | thing that's talked about in Dickens is the | 09:24:54 |
| 3 | first host computer, that's the blue connected | 09:24:57 |
| 4 | to the device, that's done via this block 150. | 09:25:00 |
| 5 | The second host computer in green, also | 09:25:04 |
| 6 | connected to the invention is block 150, and | 09:25:07 |
| 7 | that accomplishes the two or more hosts, two | 09:25:11 |
| 8 | or more USB hosts that are explicit.  This is | 09:25:14 |
| 9 | done over USBs, so these are two USB hosts | 09:25:17 |
| 10 | connected -- well, two or more USB hosts is | 09:25:20 |
| 11 | what the claim language talks about. | 09:25:24 |
| 12 | The second thing is Dickens | 09:25:27 |
| 13 | presents a block that can be considered the | 09:25:29 |
| 14 | controller of the patent language and within | 09:25:32 |
| 15 | this controller is the logic that deals with | 09:25:35 |
| 16 | the arbitration, that makes the decision to | 09:25:37 |
| 17 | hold off or not and allow one of the devices | 09:25:39 |
| 18 | to print, one of the shared devices. | 09:25:41 |
| 19 | The next thing is the shared | 09:25:47 |
| 20 | device; we keep talking about the printer. | 09:25:49 |
| 21 | Dickens has a number of devices, but they | 09:25:51 |
| 22 | both -- I mean, they all are sort of quoted in | 09:25:54 |
| 23 | some sense, but we focus for this analysis on | 09:25:56 |
| 24 | the printer just for simplicity, and so they | 09:25:58 |

Page 46

| | | |
|---|---|---|
| 1 | have the USB shared device block. | 09:26:02 |
| 2 | Excuse me.  Pardon.  If we | 09:26:09 |
| 3 | advance, there are some other elements that | 09:26:14 |
| 4 | Dickens talks about that facilitates some of | 09:26:17 |
| 5 | these connections that we'll talk about. | 09:26:21 |
| 6 | And then the -- I think if you | 09:26:24 |
| 7 | notice here, the part that got highlighted is | 09:26:27 |
| 8 | this longer text in the claim, it says, | 09:26:29 |
| 9 | "configured to establish concurrent respective | 09:26:32 |
| 10 | dedicated USB connections." | 09:26:35 |
| 11 | So Dickens talks about that | 09:26:37 |
| 12 | wherein each of the hosts can generate a USB | 09:26:39 |
| 13 | request.  That goes to the controller, it has | 09:26:45 |
| 14 | the arbitration logic in it.  Based on what | 09:26:49 |
| 15 | the arbitration controller sees, it determines | 09:26:53 |
| 16 | if it needs to decide which computer gets | 09:26:56 |
| 17 | access to the shared device. | 09:26:59 |
| 18 | And the arbiter then would | 09:27:02 |
| 19 | basically allow that transaction to move on to | 09:27:04 |
| 20 | the printer, the shared device, so that | 09:27:08 |
| 21 | accomplishes this configured to establish | 09:27:10 |
| 22 | concurrent respective dedicated USB | 09:27:14 |
| 23 | connections.  So that middle claim element is | 09:27:16 |
| 24 | satisfied. | 09:27:20 |

TRIAL - VOLUME 5

Page 47

| | | |
|---|---|---|
| 1 | So now, again, if you notice here | 09:27:24 |
| 2 | in the lower claim, the part that's | 09:27:27 |
| 3 | highlighted is this longer phrase, "operable | 09:27:30 |
| 4 | to receive and respond to simultaneous | 09:27:32 |
| 5 | respective USB access requests." And what | 09:27:35 |
| 6 | that means is that if the two hosts, since | 09:27:38 |
| 7 | they are independent and they have independent | 09:27:41 |
| 8 | paths into this controller, so this is a | 09:27:43 |
| 9 | fairly complex invention, the specific | 09:27:51 |
| 10 | connection of the mechanics that the invention | 09:27:55 |
| 11 | talks about is using something called PCI. | 09:27:57 |
| 12 | PCI natively supports multiple | 09:28:01 |
| 13 | hosts and multiple devices. That's just what | 09:28:03 |
| 14 | it does. So it has no problem supporting each | 09:28:06 |
| 15 | of these hosts independently making a request. | 09:28:08 |
| 16 | And it's these little blocks that are shown | 09:28:10 |
| 17 | here that I can move. | 09:28:12 |
| 18 | So those two requests can go into | 09:28:15 |
| 19 | the endpoint buffers of the controller, and | 09:28:17 |
| 20 | then one of the hosts, if my memory serves me | 09:28:19 |
| 21 | -- let me replay this so you can see more | 09:28:24 |
| 22 | readily. When the host is going to give | 09:28:26 |
| 23 | access to the printer, you'll see the request | 09:28:28 |
| 24 | goes through the arbiter and the control down | 09:28:30 |

TRIAL - VOLUME 5

Page 48

|  |  |  |
|---|---|---|
| 1 | through the device and the response goes back | 09:28:32 |
| 2 | up to the controller and to the device and the | 09:28:34 |
| 3 | other one is going to get essentially held off | 09:28:36 |
| 4 | and told, sorry, you can't do this now. | 09:28:39 |
| 5 | So if you watch this carefully, | 09:28:41 |
| 6 | you'll see the controllers simultaneously, and | 09:28:44 |
| 7 | then one of them goes down to the printer and | 09:28:46 |
| 8 | then the other response goes back to the host | 09:28:49 |
| 9 | that was held off where the one that actually | 09:28:51 |
| 10 | got to use the device actually sees the | 09:28:54 |
| 11 | response from the shared device. | 09:28:56 |
| 12 | So that accomplishes this operable | 09:28:57 |
| 13 | to receive and respond to simultaneous | 09:28:59 |
| 14 | respective USB access requests.  A lot of | 09:29:02 |
| 15 | words. | 09:29:06 |
| 16 | And that's kind of where we stand. | 09:29:06 |
| 17 | So there's one piece that is missing in claim | 09:29:09 |
| 18 | 1, and this is what the patent board filed, | 09:29:12 |
| 19 | and this is this simultaneously configured | 09:29:14 |
| 20 | piece that we're sort of here to talk about. | 09:29:16 |
| 21 | Q.   That text is still black that says, | 09:29:18 |
| 22 | "operable to be simultaneously configured"? | 09:29:20 |
| 23 | A.   That's right. | 09:29:22 |
| 24 | Q.   And it's your testimony that Dickens, | 09:29:23 |

| | | |
|---|---|---|
| 1 | in combination with Belkin, teaches that? | 09:29:25 |
| 2 | A.   Yeah, I think it's obvious if you | 09:29:27 |
| 3 | combine Dickens with Belkin, it sort of | 09:29:30 |
| 4 | accomplishes that claim element. | 09:29:34 |
| 5 | Q.   Let's talk about Belkin and US-98. | 09:29:36 |
| 6 | What are these devices? | 09:29:39 |
| 7 | A.   These are two print sharing devices. | 09:29:40 |
| 8 | Q.   And -- | 09:29:44 |
| 9 | A.   They allow multiple hosts to be able | 09:29:44 |
| 10 | to connect and use a single shared printer. | 09:29:47 |
| 11 | Q.   A shared USB printer? | 09:29:50 |
| 12 | A.   Correct, it's all USB. | 09:29:52 |
| 13 | Q.   Okay. | 09:29:54 |
| 14 | Now, in Microchip's opening, we | 09:29:54 |
| 15 | were told that your invalidity opinion was | 09:29:56 |
| 16 | based on sort of "stand-alone USB devices" | 09:29:58 |
| 17 | that Mr. Bohm had identified as prior art. | 09:30:02 |
| 18 | Are the Belkin and US-98 devices | 09:30:04 |
| 19 | simply USB switches like the SMSC switch that | 09:30:06 |
| 20 | we heard Mr. Bohm talk about? | 09:30:10 |
| 21 | A.   No.  In fact, I mean, in my | 09:30:11 |
| 22 | experience, actually I worked with a company | 09:30:12 |
| 23 | at one point that had a mechanical switch that | 09:30:14 |
| 24 | would allow two computers to switch the switch | 09:30:17 |

TRIAL - VOLUME 5

Page 50

| | | |
|---|---|---|
| 1 | one way and one computer to do the printer and | 09:30:19 |
| 2 | switch it the other way and the computer could | 09:30:21 |
| 3 | use that printer. | 09:30:23 |
| 4 | This is way beyond this.  These | 09:30:24 |
| 5 | two devices, as we'll see hopefully, that the | 09:30:26 |
| 6 | two computers can just automatically share any | 09:30:30 |
| 7 | access to a single printer. | 09:30:33 |
| 8 | Q.   And did you, in fact, test the Belkin | 09:30:36 |
| 9 | and US-98 devices and confirm that they | 09:30:38 |
| 10 | automatically allow you to share a printer? | 09:30:40 |
| 11 | A.   I did extensively, yes. | 09:30:42 |
| 12 | Q.   So you don't have to toggle a switch? | 09:30:44 |
| 13 | A.   No, there is no switch. | 09:30:45 |
| 14 | Q.   Now, are the use of the devices | 09:30:48 |
| 15 | sometimes referred to as auto switches? | 09:30:50 |
| 16 | A.   Yes. | 09:30:52 |
| 17 | Q.   Are auto switches something that a | 09:30:53 |
| 18 | person skilled in the art would look to when | 09:30:55 |
| 19 | seeking to improve on Dickens? | 09:30:57 |
| 20 | A.   Yes. | 09:30:59 |
| 21 | Q.   Why is that? | 09:30:59 |
| 22 | A.   They would be looking -- well, they | 09:31:00 |
| 23 | both solve the same problem.  Dickens talks | 09:31:02 |
| 24 | about multiple hosts sharing devices, one of | 09:31:05 |

Page 51

| | | |
|---|---|---|
| 1 | which is a printer.  If I've seen that I would | 09:31:07 |
| 2 | be interested in what can I do to make things | 09:31:09 |
| 3 | simpler.  Take advantage of current | 09:31:11 |
| 4 | technology.  This was done back in 2003, so, | 09:31:14 |
| 5 | you know, what could I do. | 09:31:17 |
| 6 | And I could easily see that there | 09:31:18 |
| 7 | are other devices out there that accomplish | 09:31:20 |
| 8 | the same kind of a thing, which can allow two | 09:31:22 |
| 9 | computers to share a printer. | 09:31:25 |
| 10 | Q.   Now, is the Belkin device, itself, | 09:31:26 |
| 11 | the device that you analyzed, was that already | 09:31:29 |
| 12 | considered by the patent office? | 09:31:31 |
| 13 | A.   No, they weren't allowed to do that. | 09:31:32 |
| 14 | Q.   Okay. | 09:31:34 |
| 15 | You understand, however, that on | 09:31:34 |
| 16 | the face of the patent is listed review of the | 09:31:37 |
| 17 | Belkin device? | 09:31:41 |
| 18 | A.   Yeah, the '243 Patent that's in suit | 09:31:42 |
| 19 | here, one of the references cited is a product | 09:31:44 |
| 20 | review, it is like a Yelp review of the Belkin | 09:31:47 |
| 21 | device specifically. | 09:31:50 |
| 22 | Q.   Let's take a look at that.  This is | 09:31:52 |
| 23 | Trial Exhibit 3 at 1293, point 1. | 09:31:56 |
| 24 | This is the review you're talking | 09:32:02 |

TRIAL - VOLUME 5

Page 52

| | | |
|---|---|---|
| 1 | about? | 09:32:04 |
| 2 | A.   Yeah.  You see right in the title, | 09:32:04 |
| 3 | "Belkin 4X4 USB Peripheral Switch Review." | 09:32:06 |
| 4 | Q.   And the date of this review is | 09:32:11 |
| 5 | February 2004? | 09:32:14 |
| 6 | A.   Yeah, February 25th, 2004. | 09:32:15 |
| 7 | Q.   Okay. | 09:32:17 |
| 8 | Did that inform your opinions as | 09:32:18 |
| 9 | to whether the Belkin device was publicly | 09:32:21 |
| 10 | available before -- | 09:32:25 |
| 11 | A.   Yes. | 09:32:25 |
| 12 | Q.   -- 2006? | 09:32:25 |
| 13 | A.   Yes.  I mean, 2004 is well before | 09:32:26 |
| 14 | 2006. | 09:32:29 |
| 15 | Q.   And if we go halfway down the page -- | 09:32:30 |
| 16 | oh, it's already highlighted actually.  That's | 09:32:32 |
| 17 | great.  At the bottom it says, "The Belkin 4X4 | 09:32:35 |
| 18 | USB Peripheral Switch (F1U400) is a remarkable | 09:32:39 |
| 19 | product supporting 4 PCs and 4 devices." | 09:32:46 |
| 20 | What's the F1U400 in reference to | 09:32:46 |
| 21 | here? | 09:32:46 |
| 22 | A.   That's the model number for the | 09:32:50 |
| 23 | Belkin product. | 09:32:52 |
| 24 | Q.   Same model number as the Belkin | 09:32:53 |

TRIAL - VOLUME 5

Page 53

| | | |
|---|---|---|
| 1 | device you analyzed? | 09:32:56 |
| 2 | A.   Yes. | 09:32:57 |
| 3 | Q.   Okay. | 09:32:57 |
| 4 |      I'm handing you what has been | 09:32:57 |
| 5 | marked as Trial Exhibit 367.  Do you recognize | 09:33:11 |
| 6 | this as the Belkin device that you analyzed? | 09:33:19 |
| 7 | A.   Yes, I do. | 09:33:22 |
| 8 | Q.   Okay. | 09:33:22 |
| 9 |      Did you do anything to -- strike | 09:33:24 |
| 10 | that. | 09:33:30 |
| 11 |      I guess -- I suppose my first | 09:33:30 |
| 12 | question is, is the copyright date for a | 09:33:42 |
| 13 | product the kind of fact that experts in your | 09:33:45 |
| 14 | field rely on in forming an opinion on when | 09:33:47 |
| 15 | products are sold? | 09:33:50 |
| 16 | A.   It is.  It can be one of the | 09:33:51 |
| 17 | indications, yes. | 09:33:52 |
| 18 | Q.   And why is that? | 09:33:53 |
| 19 | A.   The copyright on a product gives an | 09:33:54 |
| 20 | indication of when the manufacturer produced | 09:33:58 |
| 21 | the material. | 09:34:00 |
| 22 |      MR. SLAYDEN:  Sidebar, Your Honor. | 09:34:01 |
| 23 |      (Whereupon, a discussion was held | 09:34:01 |
| 24 | at sidebar as follows: | 09:35:25 |

Page 54

| | | |
|---|---|---|
| 1 | MR. SLAYDEN:  This is exactly what | 09:35:25 |
| 2 | we talked about. | 09:35:25 |
| 3 | THE COURT:  Hold on.  He can rely | 09:35:25 |
| 4 | on copyright of written materials.  I know | 09:35:25 |
| 5 | it's hearsay.  He can say that he looked at | 09:35:25 |
| 6 | it, he can say that based on the copyright, he | 09:35:25 |
| 7 | drew a conclusion. | 09:35:25 |
| 8 | The one thing he can't do is just | 09:35:25 |
| 9 | say and this is the copyright, okay, because I | 09:35:25 |
| 10 | think if he does that, he is just conveying | 09:35:25 |
| 11 | hearsay. | 09:35:25 |
| 12 | MR. SAULSBURY:  Yeah.  I | 09:35:25 |
| 13 | understood -- I asked him a foundational | 09:35:25 |
| 14 | question. | 09:35:25 |
| 15 | THE COURT:  Right.  So I don't | 09:35:25 |
| 16 | have a problem with him saying he relied on | 09:35:25 |
| 17 | it.  I don't have a problem with him saying, | 09:35:25 |
| 18 | and based on that, I concluded that it was | 09:35:25 |
| 19 | available. | 09:35:25 |
| 20 | MR. SAULSBURY:  Yep. | 09:35:25 |
| 21 | THE COURT:  I just don't know that | 09:35:25 |
| 22 | he should flat out just say and this is the | 09:35:25 |
| 23 | copyright.  This is the date. | 09:35:25 |
| 24 | MR. SAULSBURY:  Okay.  All right. | 09:35:25 |

Page 55

1           (Whereupon, the discussion                09:35:29

2    concluded at sidebar.)                           09:35:31

3    BY MR. SAULSBURY:                                09:35:34

4       Q.   And without reference to the specific    09:35:35

5    date that you saw when you were looking at the   09:35:36

6    Belkin device and its included materials,        09:35:38

7    could you tell us how the copyright dates of     09:35:44

8    the materials informed your conclusion that      09:35:50

9    the Belkin device was available before 2006?     09:35:52

10      A.   Sure.  So as I was starting to           09:35:54

11   explain, copyrights are typically placed on      09:35:56

12   materials by manufacturers because they want     09:35:59

13   to know -- again, I am not a legal person --      09:36:01

14   but they want to be able to indicate that        09:36:05

15   that's their product as of that date for some    09:36:07

16   protection purposes, as I understand.            09:36:09

17           And they typically produce these         09:36:11

18   materials in close proximity to when they        09:36:14

19   actually make and sell the actual product.       09:36:17

20   There could be some months difference, but       09:36:19

21   they typically would want to update these        09:36:21

22   materials, especially like the package of the    09:36:23

23   product, to showcase features.  If they made     09:36:26

24   changes to the features, they would want to      09:36:31

Page 56

| | | |
|---|---|---|
| 1 | show those features of interest to the | 09:36:32 |
| 2 | consumers to get them to buy the product. | 09:36:34 |
| 3 | So it's a good indicator of the | 09:36:37 |
| 4 | timeliness of a product and its supporting | 09:36:40 |
| 5 | materials because of this desire to have an | 09:36:44 |
| 6 | accurate representation of what the features | 09:36:46 |
| 7 | are in the mind of a consumer. | 09:36:48 |
| 8 | Q.   And again, without reference to the | 09:36:50 |
| 9 | specific date, in this case, are we talking | 09:36:53 |
| 10 | about a copyright date that's mere months away | 09:36:57 |
| 11 | from 2006? | 09:36:59 |
| 12 | A.   Yeah, some months difference between | 09:37:00 |
| 13 | the copyright dates I saw, and what I | 09:37:02 |
| 14 | concluded was the availability of this product | 09:37:04 |
| 15 | for sale. | 09:37:06 |
| 16 | Q.   And are we talking about just months | 09:37:07 |
| 17 | or are we talking about years here? | 09:37:09 |
| 18 | A.   I believe it's less than a year. | 09:37:11 |
| 19 | Q.   Okay. | 09:37:13 |
| 20 | MR. SAULSBURY:  I am going to mark | 09:37:18 |
| 21 | for identification... | 09:37:36 |
| 22 | BY MR. SAULSBURY: | 09:37:37 |
| 23 | Q.   Now, did you look at any other | 09:37:38 |
| 24 | materials that came with the Belkin device | 09:37:39 |

TRIAL - VOLUME 5

Page 57

|     |                                                      |          |
|-----|------------------------------------------------------|----------|
| 1   | that had a copyright date on them?                   | 09:37:41 |
| 2   | A.   I think there was a user manual and              | 09:37:43 |
| 3   | an installation guide or user installation           | 09:37:45 |
| 4   | guide, I'm not sure -- I don't remember               | 09:37:48 |
| 5   | precisely what the name is, but basically two         | 09:37:49 |
| 6   | pieces of documentation, one quick                    | 09:37:52 |
| 7   | installation guide and one user manual.  And          | 09:37:54 |
| 8   | there was also a CD that came with the product        | 09:37:57 |
| 9   | for software application and drivers that             | 09:38:00 |
| 10  | control this device.                                  | 09:38:03 |
| 11  | Q.   And how did the copyright date on the            | 09:38:04 |
| 12  | manual inform your conclusion that the Belkin         | 09:38:06 |
| 13  | device was publicly available before 2006?            | 09:38:11 |
| 14  | A.   So the copyright date on each of                 | 09:38:13 |
| 15  | those manuals and copyright date on -- well, I        | 09:38:16 |
| 16  | guess we'll talk about that later.  The               | 09:38:20 |
| 17  | copyright date on each of the manuals and             | 09:38:21 |
| 18  | those dates were consistent with the                  | 09:38:23 |
| 19  | information I saw here in the review, so I now        | 09:38:25 |
| 20  | had sort of three indicators of what the              | 09:38:28 |
| 21  | timeframe was for the availability of this            | 09:38:30 |
| 22  | product.                                              | 09:38:32 |
| 23  | Q.   Thank you.                                        | 09:38:34 |
| 24  | And let's talk about the software                     | 09:38:35 |

TRIAL - VOLUME 5

Page 58

| | | |
|---|---|---|
| 1 | that you found on the CD.  What software was | 09:38:36 |
| 2 | that? | 09:38:38 |
| 3 | A.   This was an application that the end | 09:38:39 |
| 4 | user would interact with, and that application | 09:38:41 |
| 5 | was described extensively in the user manual | 09:38:43 |
| 6 | with pictures of the screenshots, and there | 09:38:46 |
| 7 | were also some drivers on the CD that would be | 09:38:48 |
| 8 | used to control the device. | 09:38:51 |
| 9 | Q.   And if you could take a look at Trial | 09:38:57 |
| 10 | Exhibit 217 in your binder, please. | 09:39:00 |
| 11 | A.   Make sure it doesn't fall here. | 09:39:05 |
| 12 | Okay. | 09:39:07 |
| 13 | (Whereupon, Trial Exhibit 217 was | 09:39:07 |
| 14 | introduced.) | 09:39:07 |
| 15 | BY MR. SAULSBURY: | 09:39:07 |
| 16 | Q.   Okay.  What's this document? | 09:39:07 |
| 17 | A.   Well, this is a screen caption I took | 09:39:09 |
| 18 | on my home system when I first examined the | 09:39:12 |
| 19 | CD. | 09:39:14 |
| 20 | Q.   Okay. | 09:39:15 |
| 21 | MR. SAULSBURY:  Offer Trial | 09:39:16 |
| 22 | Exhibit 217. | 09:39:22 |
| 23 | MR. SLAYDEN:  No objection. | 09:39:22 |
| 24 | THE COURT:  Okay.  It can come in. | 09:39:23 |

TRIAL - VOLUME 5

Page 59

| | | |
|---|---|---|
| 1 | BY MR. SAULSBURY: | 09:39:26 |
| 2 | Q.   Now, Mr. Garney, is this the software | 09:39:27 |
| 3 | that you analyzed -- is this the software that | 09:39:30 |
| 4 | you took a look at to determine whether the | 09:39:38 |
| 5 | Belkin device was on sale before 2006? | 09:39:41 |
| 6 | A.   Yes. | 09:39:43 |
| 7 | Q.   And what did you conclude, based on | 09:39:44 |
| 8 | this? | 09:39:46 |
| 9 | A.   There are two dates here of 2002, | 09:39:46 |
| 10 | which predated the final date of the | 09:39:49 |
| 11 | invention, and there is a strange date up | 09:39:52 |
| 12 | here, this 2036.  This is a known problem | 09:39:54 |
| 13 | with -- I mean, I don't have a time machine, | 09:39:57 |
| 14 | so this is a known problem with Linksys | 09:39:58 |
| 15 | systems related to Y2K problems for files.  I | 09:40:01 |
| 16 | also examined this, I don't know why that was | 09:40:06 |
| 17 | there. | 09:40:10 |
| 18 | Q.   Yeah, I was just going to ask, I | 09:40:10 |
| 19 | don't know if you need to look at it at this | 09:40:11 |
| 20 | point, but did you also look at the software | 09:40:13 |
| 21 | on a Windows machine? | 09:40:15 |
| 22 | A.   I did. | 09:40:16 |
| 23 | Q.   Okay. | 09:40:16 |
| 24 | And did the Windows machine show | 09:40:17 |

TRIAL - VOLUME 5

Page 60

| | | |
|---|---|---|
| 1 | the 2036 date for this first folder up here, | 09:40:19 |
| 2 | F1U400 Windows? | 09:40:24 |
| 3 | A.   It did not.  It showed the consistent | 09:40:26 |
| 4 | date with the rest of it. | 09:40:28 |
| 5 | Q.   Okay. | 09:40:29 |
| 6 | And again, F1U400 is the model | 09:40:29 |
| 7 | number of the Belkin device you looked at? | 09:40:32 |
| 8 | A.   That's correct. | 09:40:34 |
| 9 | MR. SAULSBURY:  Okay.  I am | 09:40:35 |
| 10 | marking for identification only Exhibit 378. | 09:40:36 |
| 11 | (Whereupon, Trial Exhibit 378 was | 09:40:40 |
| 12 | marked for identification.) | 09:40:43 |
| 13 | BY MR. SAULSBURY: | 09:40:52 |
| 14 | Q.   Mr. Garney, what's Exhibit 378? | 09:40:52 |
| 15 | A.   This is the user manual for the | 09:40:55 |
| 16 | Belkin product. | 09:40:58 |
| 17 | Q.   We are doing it for identification | 09:41:00 |
| 18 | only, so yeah. | 09:41:02 |
| 19 | A.   All right. | 09:41:03 |
| 20 | Q.   It's for you.  If you take a look at | 09:41:03 |
| 21 | the back of it, can you take a look at the | 09:41:05 |
| 22 | copyright date again, without speaking it into | 09:41:07 |
| 23 | the record? | 09:41:13 |
| 24 | A.   Sure.  So I can see the copyright. | 09:41:13 |

TRIAL - VOLUME 5

Page 61

```
 1      Q.   Okay.                                    09:41:15

 2           And does this copyright date             09:41:16

 3   refresh your recollection as to how much time    09:41:18

 4   there was between the copyright date of the      09:41:20

 5   materials you looked at and the 2006 priority    09:41:24

 6   date we're talking about here?                   09:41:29

 7      A.   It's in the same time.                   09:41:30

 8           MR. SLAYDEN:  Sidebar, Your Honor.       09:41:32

 9           (Whereupon, a discussion was held        09:41:32

10   at sidebar as follows:                           09:46:41

11           MR. SLAYDEN:  We just went down          09:46:41

12   the path that he was instructed not to do.  He   09:46:41

13   is about to say it was two years before, one     09:46:41

14   year before the priority date, so 2006 minus     09:46:41

15   one or two is going to be 2004, 2005, which is    09:46:41

16   exactly what we agreed upon he wasn't going to    09:46:41

17   do.                                              09:46:41

18           THE COURT:  Well, why don't we           09:46:41

19   just -- why don't you just ask him if he draws   09:46:41

20   a conclusion based on it, right?  I mean, we     09:46:41

21   shouldn't be conveying to the jury, either       09:46:41

22   directly -- either directly or, you know, sort   09:46:41

23   of in a roundabout way, to say this is what      09:46:41

24   the copyright date is.  The question should be   09:46:41
```

Page 62

| | | |
|---|---|---|
| 1 | what conclusions did he draw based on it. | 09:46:41 |
| 2 | MR. SAULSBURY:  That's right.  I | 09:46:41 |
| 3 | asked that initial question earlier.  Mr. | 09:46:41 |
| 4 | Garney, I think, misunderstood the question | 09:46:41 |
| 5 | and said it was only a matter of months. | 09:46:41 |
| 6 | THE COURT:  Right. | 09:46:41 |
| 7 | MR. SAULSBURY:  I am trying to | 09:46:41 |
| 8 | refresh him here with the document.  I am just | 09:46:41 |
| 9 | going to ask if it refreshes his memory with | 09:46:41 |
| 10 | the amount of years. | 09:46:41 |
| 11 | Now the record is contrary to what | 09:46:41 |
| 12 | he actually found.  I am not going to have him | 09:46:41 |
| 13 | mention the date, whether it was two years or | 09:46:41 |
| 14 | four years or anything like that.  I just | 09:46:41 |
| 15 | don't want them to be able to suggest that it | 09:46:41 |
| 16 | was merely months.  And therefore, it is | 09:46:41 |
| 17 | conclusive. | 09:46:41 |
| 18 | MR. SLAYDEN:  The testimony -- how | 09:46:41 |
| 19 | he testified is on the record, so what you are | 09:46:41 |
| 20 | about to do is go down this path.  And I was | 09:46:41 |
| 21 | told earlier what was going to be how far back | 09:46:41 |
| 22 | was it and he was going to say two or | 09:46:41 |
| 23 | one year, whatever it was, some months, I | 09:46:41 |
| 24 | don't even know what the date is so... | 09:46:41 |

TRIAL - VOLUME 5

Page 63

| | | |
|---|---|---|
| 1 | (Brief pause.) | 09:46:41 |
| 2 | THE COURT:  The question is, does | 09:46:41 |
| 3 | the copyright date refresh your recollection | 09:46:41 |
| 4 | as to how much time there was between the | 09:46:41 |
| 5 | copyright date of the materials you looked at | 09:46:41 |
| 6 | and the 2006 priority date we're talking about | 09:46:41 |
| 7 | here. | 09:46:41 |
| 8 | So, I mean, yeah, my concern | 09:46:41 |
| 9 | here -- I understand what you are saying.  He | 09:46:41 |
| 10 | kind of went down that path on his own and he | 09:46:41 |
| 11 | probably shouldn't have. | 09:46:41 |
| 12 | The problem I have is you can't | 09:46:41 |
| 13 | ask that question without asking -- without | 09:46:41 |
| 14 | eliciting hearsay, right, because the answer, | 09:46:41 |
| 15 | if you say -- if you had said to him, what's | 09:46:41 |
| 16 | the priority date -- what's the copyright | 09:46:41 |
| 17 | date, that's hearsay. | 09:46:41 |
| 18 | MR. SAULSBURY:  Right. | 09:46:41 |
| 19 | THE COURT:  If you say to him how | 09:46:41 |
| 20 | does the date on there compare to the 2006 | 09:46:41 |
| 21 | priority date -- | 09:46:41 |
| 22 | MR. SAULSBURY:  I am not doing | 09:46:41 |
| 23 | that. | 09:46:41 |
| 24 | THE COURT:  That's the question. | 09:46:41 |

|    |    |    |
|----|----|----|
| 1  | MR. SAULSBURY:  I am asking | 09:46:41 |
| 2  | whether it refreshed his recollection.  That's | 09:46:41 |
| 3  | just a yes or no because this is foundational | 09:46:41 |
| 4  | and then -- | 09:46:41 |
| 5  | MR. SLAYDEN:  How much -- | 09:46:42 |
| 6  | MR. SAULSBURY:  I didn't say that. | 09:46:42 |
| 7  | I just want to clarify, is it a matter of | 09:46:42 |
| 8  | years or a matter of months.  That's all I | 09:46:42 |
| 9  | want to do. | 09:46:42 |
| 10 | THE COURT:  Okay. | 09:46:42 |
| 11 | MR. SLAYDEN:  A matter of years or | 09:46:42 |
| 12 | months is -- | 09:46:42 |
| 13 | THE COURT:  Well, he did say it is | 09:46:42 |
| 14 | a matter of months, and I understand the | 09:46:42 |
| 15 | concern, right, which is that there is now his | 09:46:42 |
| 16 | statement on the record that's misleading. | 09:46:42 |
| 17 | You know, I just -- he has a tendency to talk | 09:46:42 |
| 18 | beyond your question, and I don't want this to | 09:46:42 |
| 19 | be a vehicle to introduce something that the | 09:46:42 |
| 20 | jury shouldn't hear. | 09:46:42 |
| 21 | And I understand even if that's | 09:46:42 |
| 22 | not what you are trying to do, particularly | 09:46:42 |
| 23 | with this witness, I am concerned that it is | 09:46:42 |
| 24 | the logical conclusion of where we're headed. | 09:46:42 |

Page 65

|    |                                                     |          |
|----|-----------------------------------------------------|----------|
| 1  | So I'll give you an opportunity to                  | 09:46:42 |
| 2  | ask the question, but I want you to do it in a      | 09:46:42 |
| 3  | real narrow way, because it's not uncommon for      | 09:46:42 |
| 4  | someone, when they hear to refresh your             | 09:46:42 |
| 5  | recollection, to say yes, here's my answer.         | 09:46:42 |
| 6  | MR. SAULSBURY:  How about this.                     | 09:46:42 |
| 7  | Put it in pure, simple terms.  I can say --         | 09:46:42 |
| 8  | without reference to what the year is -- did        | 09:46:42 |
| 9  | this copyright date inform your opinion as to       | 09:46:42 |
| 10 | how long -- as to whether the device was            | 09:46:42 |
| 11 | publicly available, again, not the copyright        | 09:46:42 |
| 12 | date, was publicly available years before.          | 09:46:42 |
| 13 | MR. SLAYDEN:  Not years.                            | 09:46:42 |
| 14 | MR. SAULSBURY:  Merely months.                      | 09:46:42 |
| 15 | MR. SLAYDEN:  Just prior.                           | 09:46:42 |
| 16 | MR. SAULSBURY:  It informs his                      | 09:46:42 |
| 17 | opinion.                                            | 09:46:42 |
| 18 | MR. SLAYDEN:  Just prior.                           | 09:46:42 |
| 19 | THE COURT:  He said months, so I                    | 09:46:42 |
| 20 | want to give him a chance to clarify that.  I       | 09:46:42 |
| 21 | think that's fair.  And I think that phrasing       | 09:46:42 |
| 22 | makes sense because it doesn't elicit the           | 09:46:42 |
| 23 | date, it elicits how it informed his opinion.       | 09:46:42 |
| 24 | It is a fine line, but that's the line to           | 09:46:42 |

Page 66

| | | |
|---|---|---|
| 1 | walk.  I think that's fine. | 09:46:42 |
| 2 | (Whereupon, the discussion at | 09:46:42 |
| 3 | sidebar concluded.) | 09:46:46 |
| 4 | BY MR. SAULSBURY: | 09:46:46 |
| 5 | Q.   Mr. Garney, again, without reference | 09:46:48 |
| 6 | to the specific date, did the copyright date | 09:46:49 |
| 7 | on this manual inform your conclusion that | 09:46:51 |
| 8 | the -- or inform your opinions as to whether | 09:46:56 |
| 9 | the Belkin device was available before the | 09:47:01 |
| 10 | 2006 date? | 09:47:04 |
| 11 | A.   It did. | 09:47:04 |
| 12 | Q.   Okay. | 09:47:05 |
| 13 | And did it inform -- without | 09:47:06 |
| 14 | referencing the date again, or with the amount | 09:47:08 |
| 15 | of time, did it inform your conclusions as to | 09:47:10 |
| 16 | how long before the priority date the 2006 | 09:47:13 |
| 17 | date of the Belkin device was publicly | 09:47:17 |
| 18 | available? | 09:47:21 |
| 19 | MR. SLAYDEN:  Sidebar, Your Honor. | 09:47:21 |
| 20 | THE COURT:  No, we don't need a | 09:47:22 |
| 21 | sidebar. | 09:47:24 |
| 22 | THE WITNESS:  Restate your | 09:47:24 |
| 23 | question.  I want to make sure with the | 09:47:26 |
| 24 | interruption. | 09:47:28 |

TRIAL - VOLUME 5

| | | |
|---|---|---|
| 1 | BY MR. SAULSBURY: | 09:47:29 |
| 2 | Q.   The question was, without reference | 09:47:29 |
| 3 | to the date, did the copyright date inform | 09:47:30 |
| 4 | your conclusions as to how long before 2006 | 09:47:35 |
| 5 | the Belkin device was publicly available? | 09:47:38 |
| 6 | A.   Yes. | 09:47:41 |
| 7 | Q.   Okay. | 09:47:43 |
| 8 | And again, without reference to | 09:47:43 |
| 9 | the date, was your conclusion that the Belkin | 09:47:44 |
| 10 | device was publicly available a matter of | 09:47:50 |
| 11 | months or a matter of years before the 2006 | 09:47:56 |
| 12 | date? | 09:47:59 |
| 13 | A.   For Belkin, a matter of years. | 09:47:59 |
| 14 | Q.   Okay. | 09:48:03 |
| 15 | Now, did you also look at the | 09:48:04 |
| 16 | product packaging for Belkin, again, without | 09:48:08 |
| 17 | reference to any particular dates? | 09:48:12 |
| 18 | A.   I did. | 09:48:13 |
| 19 | Q.   Okay. | 09:48:13 |
| 20 | Did that product packaging | 09:48:14 |
| 21 | reference anything about compatibility with | 09:48:16 |
| 22 | particular operating systems? | 09:48:18 |
| 23 | A.   It did. | 09:48:20 |
| 24 | Q.   Okay. | 09:48:20 |

| | | |
|---|---|---|
| 1 | And what did that -- or how did | 09:48:21 |
| 2 | that inform your conclusion that the Belkin | 09:48:25 |
| 3 | device was publicly available before 2006? | 09:48:28 |
| 4 | A.   The specific operating systems that | 09:48:31 |
| 5 | it referred to on the box were operating | 09:48:35 |
| 6 | systems that were available and really well | 09:48:36 |
| 7 | before the priority date of the patent. | 09:48:40 |
| 8 | Q.   Okay. | 09:48:42 |
| 9 | And -- | 09:48:43 |
| 10 | A.   Years before. | 09:48:44 |
| 11 | Q.   Did the packaging you looked at | 09:48:46 |
| 12 | reference any particular model number? | 09:48:49 |
| 13 | A.   The F1U400. | 09:48:51 |
| 14 | Q.   Okay. | 09:48:53 |
| 15 | And did that -- strike that. | 09:48:54 |
| 16 | And if you could please take a | 09:48:59 |
| 17 | look at Trial Exhibit 19 in your binder. | 09:49:04 |
| 18 | (Whereupon, Trial Exhibit 19 was | 09:49:04 |
| 19 | offered.) | 09:49:04 |
| 20 | THE WITNESS:  Okay. | 09:49:07 |
| 21 | BY MR. SAULSBURY: | 09:49:10 |
| 22 | Q.   What's Trial Exhibit 19? | 09:49:10 |
| 23 | A.   It is a picture of the insides of the | 09:49:12 |
| 24 | Belkin product. | 09:49:14 |

Page 69

1        Q.   And this is a picture of the product          09:49:15

2    you actually tested yourself?                          09:49:17

3        A.   Oh, yeah, absolutely.  It is a                09:49:18

4    picture I took.  This is the product.                  09:49:21

5             MR. SAULSBURY:  We offer Trial                 09:49:26

6    Exhibit 19.                                            09:49:28

7             MR. SLAYDEN:  No objection, Your              09:49:28

8    Honor.                                                 09:49:28

9             THE COURT:  It's in.                           09:49:29

10             MR. SAULSBURY:  And, Mr. Glass, if            09:49:29

11    you could please rotate this 180 degrees.             09:49:31

12    Okay.                                                  09:49:34

13             And then if we take a look at the            09:49:35

14    board on the bottom, Mr. Glass, could you             09:49:38

15    please just blow up the lower left-hand corner        09:49:39

16    of the board where it has the model number.           09:49:42

17    Okay.                                                  09:49:44

18    BY MR. SAULSBURY:                                      09:49:45

19        Q.   Mr. Garney, do you see here how the          09:49:45

20    board has the model number imprinted on it,           09:49:47

21    F1U400?                                                09:49:51

22        A.   Yeah, the circuit board for the              09:49:52

23    product is F1U400.                                     09:49:53

24        Q.   Did that tell you anything about             09:49:55

TRIAL - VOLUME 5

Page 70

| | | |
|---|---|---|
| 1 | whether the hardware that was the basis of | 09:49:57 |
| 2 | your opinions was something that was publicly | 09:49:59 |
| 3 | available before 2006? | 09:50:01 |
| 4 | A.    Yes.  Since this was consistent with | 09:50:02 |
| 5 | the other material, again, I had the same | 09:50:05 |
| 6 | model number and I knew that the software had | 09:50:09 |
| 7 | to work with this hardware, and that was | 09:50:11 |
| 8 | another indicator to me that this was | 09:50:12 |
| 9 | available for sale well before the priority | 09:50:14 |
| 10 | date. | 09:50:16 |
| 11 | Q.    To be clear, are you just guessing or | 09:50:17 |
| 12 | speculating as to whether the Belkin device | 09:50:20 |
| 13 | was available publicly before 2006? | 09:50:22 |
| 14 | A.    No, I am looking at all these | 09:50:24 |
| 15 | indicators that we talked about.  I think we | 09:50:26 |
| 16 | talked about at least three or four. | 09:50:28 |
| 17 | Q.    Okay. | 09:50:29 |
| 18 | Do you have any doubt as to | 09:50:30 |
| 19 | whether the Belkin device was available before | 09:50:32 |
| 20 | 2006 publicly? | 09:50:34 |
| 21 | A.    The best evidence I have would be the | 09:50:35 |
| 22 | most reasonable conclusion that it's the same | 09:50:38 |
| 23 | date. | 09:50:40 |
| 24 | Q.    Okay. | 09:50:40 |

TRIAL - VOLUME 5

Page 71

| | | |
|---|---|---|
| 1 | Now, when you inspected the Belkin | 09:50:41 |
| 2 | device, did your inspection show how it | 09:50:46 |
| 3 | worked? | 09:50:49 |
| 4 | A.   It did. | 09:50:49 |
| 5 | Q.   Okay. | 09:50:50 |
| 6 | Now, we have -- | 09:50:50 |
| 7 | MR. SAULSBURY:  Mr. Glass, could | 09:50:56 |
| 8 | you zoom out, please, and then just blow up | 09:50:58 |
| 9 | the circuit board, itself. | 09:51:01 |
| 10 | BY MR. SAULSBURY: | 09:51:05 |
| 11 | Q.   Mr. Garney, do you see those | 09:51:06 |
| 12 | rectangular chips that have the white marking | 09:51:08 |
| 13 | on them?  Maybe you can just point them out | 09:51:11 |
| 14 | with your laser pointer. | 09:51:13 |
| 15 | A.   Sure, I think there is five. | 09:51:14 |
| 16 | Q.   They are labeled U1, U2, U3, U4? | 09:51:16 |
| 17 | A.   This one, this one, this one, that | 09:51:19 |
| 18 | one, those are all the same chip and this is a | 09:51:21 |
| 19 | different chip. | 09:51:23 |
| 20 | Q.   Okay. | 09:51:24 |
| 21 | The first four chips you | 09:51:24 |
| 22 | identified, what are those chips? | 09:51:25 |
| 23 | A.   Those are Philips hub-embedded | 09:51:27 |
| 24 | function device controller chips. | 09:51:33 |

TRIAL - VOLUME 5

Page 72

| | | |
|---|---|---|
| 1 | Q.   Are they chips that support USB? | 09:51:34 |
| 2 | A.   Absolutely. | 09:51:36 |
| 3 | Q.   Okay. | 09:51:37 |
| 4 |      Do those Philips chips have USB | 09:51:38 |
| 5 | endpoint buffers? | 09:51:42 |
| 6 | A.   Yes. | 09:51:43 |
| 7 | Q.   Okay. | 09:51:43 |
| 8 |      And do those Philips chips support | 09:51:44 |
| 9 | standard USB functionality such as NAKs? | 09:51:50 |
| 10 | A.   Yes. | 09:51:53 |
| 11 | Q.   What are NAKs? | 09:51:54 |
| 12 | A.   NAKs are a way for an endpoint in a | 09:51:54 |
| 13 | USB system to say I don't have data or I don't | 09:51:57 |
| 14 | have space, basically I am not ready.  It is a | 09:52:00 |
| 15 | form of hold-off. | 09:52:02 |
| 16 | Q.   Okay. | 09:52:03 |
| 17 |      And do those Philips -- or let me | 09:52:04 |
| 18 | take a step back. | 09:52:08 |
| 19 |      The Belkin device is called a 4X4 | 09:52:09 |
| 20 | auto device; is that right? | 09:52:13 |
| 21 | A.   Yes. | 09:52:15 |
| 22 | Q.   What does 4X4 reference in this | 09:52:15 |
| 23 | context? | 09:52:19 |
| 24 | A.   If you see here, they are -- | 09:52:19 |

Page 73

| | | |
|---|---|---|
| 1 | actually, let me bring the pointer.  So | 09:52:21 |
| 2 | there's four connectors over here.  These are | 09:52:23 |
| 3 | the USB standard A receptacles, the place you | 09:52:25 |
| 4 | plug in devices.  These are what are called | 09:52:28 |
| 5 | standard B receptacles.  This is where you | 09:52:32 |
| 6 | plug in the cable that attaches to a host.  So | 09:52:34 |
| 7 | this product allows you to attach four hosts | 09:52:36 |
| 8 | to four USB devices in different ways. | 09:52:39 |
| 9 |     Q.   And does each host have its own | 09:52:42 |
| 10 | interface circuit? | 09:52:46 |
| 11 |     A.   Yeah, that's why there's four of | 09:52:47 |
| 12 | these Philips parts here.  There's one of | 09:52:49 |
| 13 | these Philips parts for each of the | 09:52:52 |
| 14 | connections to the host, I actually traced the | 09:52:54 |
| 15 | wiring and circuitry -- I am familiar with | 09:52:58 |
| 16 | PCBs and do that as part of my electronics | 09:53:00 |
| 17 | work, so I traced the circuits to make sure I | 09:53:02 |
| 18 | can understand that each Philips should be | 09:53:05 |
| 19 | connected to each host. | 09:53:07 |
| 20 |     Q.   And does each Philips chip -- strike | 09:53:08 |
| 21 | that. | 09:53:11 |
| 22 |          Does each host have its own USB | 09:53:12 |
| 23 | endpoint buffer? | 09:53:18 |
| 24 |     A.   Yeah, Philips chips, as I said | 09:53:19 |

Page 74

```
 1    earlier, have endpoint buffers and each host        09:53:22

 2    has its own chip, so each host has access to        09:53:25

 3    its own endpoint buffer.                            09:53:28

 4        Q.    Mr. Garney, could you please turn to      09:53:29

 5    Trial Exhibit 209 in your binder.                   09:53:31

 6        A.    Okay.                                      09:53:37

 7              (Whereupon, Trial Exhibit 209 was         09:53:37

 8    introduced.)                                         09:53:37

 9    BY MR. SAULSBURY:                                    09:53:38

10        Q.    Do you recognize this document?           09:53:38

11        A.    I do.                                      09:53:40

12        Q.    What is it?                                09:53:41

13        A.    This is actually what's called a data     09:53:42

14    sheet for the USB Philips chip that we have         09:53:44

15    been talking about.                                  09:53:47

16        Q.    Are data sheets something that people     09:53:49

17    in the field rely on to understand how --           09:53:52

18              MR. SLAYDEN:  Sidebar, Your Honor.        09:53:54

19              (Whereupon, a discussion was held         09:53:54

20    at sidebar as follows:                               09:53:55

21              MR. SAULSBURY:  Your Honor,               09:53:55

22    sidebars are just getting out of line.  I           09:54:58

23    mean, I will just move on.  I don't want to         09:54:58

24    encourage it, but it's just blowing through my      09:54:58
```

TRIAL - VOLUME 5

Page 75

1    time.                                            09:54:58

2         THE COURT:  You are not being               09:54:58

3    allocated to your time.                          09:54:58

4         MR. SAULSBURY:  I understand, but            09:54:58

5    it's still about 50 percent of my time.  That    09:54:58

6    was clearly unobjectionable.  I was asking       09:54:58

7    about --                                         09:54:58

8         MR. SLAYDEN:  It's hearsay under             09:54:58

9    703, Your Honor.                                 09:54:58

10        MR. SAULSBURY:  What experts rely            09:54:58

11   on is not hearsay.  I'm going to move on.         09:54:58

12        THE COURT:  There are a lot of               09:54:58

13   sidebars here, so let's keep moving.              09:54:58

14        (Whereupon, the discussion at                09:54:58

15   sidebar concluded.)                              09:55:05

16   BY MR. SAULSBURY:                                 09:55:05

17        Q.   Mr. Garney, did you rely on this data   09:55:05

18   sheet to inform your opinion?                     09:55:07

19        A.   I did.                                  09:55:08

20        Q.   And did it inform your opinion as to    09:55:08

21   how -- did the Philips devices within the        09:55:11

22   Belkin hub work?                                  09:55:14

23        A.   Yes.                                    09:55:15

24        Q.   Okay.                                   09:55:15

Page 76

| | | |
|---|---|---|
| 1 | And did the data sheet support | 09:55:16 |
| 2 | your conclusion that the Belkin device provide | 09:55:23 |
| 3 | interface circuits, USB interface circuits and | 09:55:27 |
| 4 | endpoint buffers for each -- one for each | 09:55:31 |
| 5 | host? | 09:55:36 |
| 6 | A.   Yes. | 09:55:36 |
| 7 | Q.   Okay. | 09:55:36 |
| 8 | Now, did you reach any conclusions | 09:55:37 |
| 9 | as to whether a person of skill in the art | 09:55:44 |
| 10 | looking to improve upon the system of Dickens | 09:55:47 |
| 11 | would look to the Belkin? | 09:55:50 |
| 12 | A.   Start over the question.  I -- | 09:55:52 |
| 13 | Q.   Certainly. | 09:55:53 |
| 14 | Did you form conclusions on | 09:55:54 |
| 15 | whether a person skilled in the art looking at | 09:55:55 |
| 16 | Dickens would be motivated to combine Dickens | 09:55:57 |
| 17 | with Belkin? | 09:56:01 |
| 18 | A.    Sure.  I mean, partly they are trying | 09:56:02 |
| 19 | to solve the same problem.  The Dickens patent | 09:56:05 |
| 20 | is about USB.  A person of ordinary skill | 09:56:09 |
| 21 | would know that USB has endpoint buffers. | 09:56:13 |
| 22 | Belkin essentially has -- it's involving USB | 09:56:16 |
| 23 | for hosts and Philips parts have endpoint | 09:56:19 |
| 24 | buffers.  This is a simpler product than the | 09:56:23 |

TRIAL - VOLUME 5

Page 77

| | | |
|---|---|---|
| 1 | Dickens invention and I believe -- my | 09:56:27 |
| 2 | conclusion was there are pieces of this that | 09:56:29 |
| 3 | could be applied to Dickens to make it | 09:56:31 |
| 4 | simpler. | 09:56:34 |
| 5 | Q.   Okay. | 09:56:35 |
| 6 | And, Mr. Garney, do you recognize | 09:56:36 |
| 7 | this as a demonstrative showing the Dickens? | 09:56:38 |
| 8 | A.   Yes, the same figures of the Philips. | 09:56:42 |
| 9 | Q.   Could you please illustrate for us | 09:56:45 |
| 10 | your opinions on how a person skilled in the | 09:56:47 |
| 11 | art would rely on the teaching of Belkin to | 09:56:49 |
| 12 | improve Dickens? | 09:56:53 |
| 13 | A.   Sure. | 09:56:54 |
| 14 | THE WITNESS:  Can I go down, Your | 09:56:55 |
| 15 | Honor? | 09:56:56 |
| 16 | THE COURT:  Yeah, go ahead. | 09:56:57 |
| 17 | MR. SLAYDEN:  I am sorry, sidebar. | 09:56:58 |
| 18 | (Whereupon, a discussion was held | 09:56:58 |
| 19 | at sidebar as follows: | 09:58:50 |
| 20 | MR. SLAYDEN:  We are now beyond | 09:58:50 |
| 21 | the scope of his report.  We are about to go | 09:58:50 |
| 22 | beyond the scope of his report.  It is not in | 09:58:50 |
| 23 | his report. | 09:58:50 |
| 24 | THE COURT:  I don't even know what | 09:58:50 |

Page 78

| | | |
|---|---|---|
| 1 | we are doing.  What is this? | 09:58:50 |
| 2 | MR. SAULSBURY:  He is rendering | 09:58:50 |
| 3 | his opinion on how you can apply the teachings | 09:58:50 |
| 4 | of Belkin and Dickens that's expressly | 09:58:50 |
| 5 | disclosed in his report.  That's one of the | 09:58:51 |
| 6 | combinations. | 09:58:51 |
| 7 | MR. SLAYDEN:  Your Honor, there is | 09:58:51 |
| 8 | one sentence that says combine them.  There is | 09:58:51 |
| 9 | no other discussion of this.  There's no | 09:58:51 |
| 10 | reason other than combining them. | 09:58:51 |
| 11 | THE COURT:  Wait.  Just let me ask | 09:58:51 |
| 12 | a question.  You guys have changed | 09:58:51 |
| 13 | demonstratives.  Did you send these | 09:58:51 |
| 14 | demonstratives to me? | 09:58:51 |
| 15 | MR. SAULSBURY:  Absolutely.  It | 09:58:51 |
| 16 | wasn't objected to. | 09:58:51 |
| 17 | MR. SLAYDEN:  He is up there about | 09:58:51 |
| 18 | to draw on something else. | 09:58:51 |
| 19 | THE COURT:  Whether he draws or | 09:58:51 |
| 20 | uses the laser pointer, he is just using | 09:58:51 |
| 21 | something in a demonstrative to the jury. | 09:58:51 |
| 22 | This is something that I need -- I can't | 09:58:51 |
| 23 | decide now based on his report, but I've | 09:58:51 |
| 24 | always understood that his testimony was to be | 09:58:51 |

TRIAL - VOLUME 5

Page 79

| | | |
|---|---|---|
| 1 | about the combinations, and that's what I | 09:58:51 |
| 2 | understand he is about to do, so he can go | 09:58:51 |
| 3 | forward. | 09:58:51 |
| 4 | MR. SAULSBURY:  And, Your Honor, | 09:58:51 |
| 5 | if we have more sidebars, I just want to get | 09:58:51 |
| 6 | some time back. | 09:58:51 |
| 7 | THE COURT:  Here is what we are | 09:58:51 |
| 8 | going to do, okay, because there have been a | 09:58:51 |
| 9 | lot of sidebars.  Any more sidebars for Mr. | 09:58:51 |
| 10 | Garney's testimony is going to be loser pays | 09:58:51 |
| 11 | for time. | 09:58:51 |
| 12 | (Whereupon, the discussion at | 09:59:00 |
| 13 | sidebar concluded.) | 09:59:05 |
| 14 | MR. SAULSBURY:  I can move that | 09:59:05 |
| 15 | chair for you if you want to go ahead -- yeah, | 09:59:06 |
| 16 | go ahead. | 09:59:10 |
| 17 | THE WITNESS:  So as we talked | 09:59:11 |
| 18 | before, Dickens has these complicated computer | 09:59:12 |
| 19 | emulators here up at the top, and a person of | 09:59:17 |
| 20 | ordinary skill in the art would know to | 09:59:21 |
| 21 | replace these emulators, computers, with a | 09:59:24 |
| 22 | simpler endpoint buffer, the interface circuit | 09:59:27 |
| 23 | and the endpoint buffers that Belkin teaches, | 09:59:33 |
| 24 | which it has for each of these devices, and | 09:59:37 |

TRIAL - VOLUME 5

Page 80

| | | |
|---|---|---|
| 1 | that still provides for independent access | 09:59:44 |
| 2 | from a computer to the Belkin invention. | 09:59:48 |
| 3 | It still uses the microcontroller | 09:59:51 |
| 4 | as Belkin has for controlling these devices | 09:59:57 |
| 5 | directly, similar to how the computer | 10:00:01 |
| 6 | emulators work, but there is no need to have | 10:00:05 |
| 7 | an emulation function.  This can actually be | 10:00:07 |
| 8 | just a device, just like Belkin has. | 10:00:12 |
| 9 | And then the arbitration function | 10:00:15 |
| 10 | stays the same within here and the connection | 10:00:18 |
| 11 | of this controller to the shared device block | 10:00:20 |
| 12 | can stay the same and -- let me do it this | 10:00:23 |
| 13 | way -- its ability to have independent | 10:00:28 |
| 14 | connection. | 10:00:30 |
| 15 | So this host can go through these | 10:00:30 |
| 16 | endpoint buffers just like Belkin has, go to | 10:00:32 |
| 17 | the arbitrator and then go to the shared | 10:00:36 |
| 18 | device.  And just as I showed in the other | 10:00:38 |
| 19 | illustration for Dickens, the same kind of a | 10:00:41 |
| 20 | thing could happen to the second condition, | 10:00:43 |
| 21 | the device; the arbiter can still determine | 10:00:46 |
| 22 | which computer gets access to the printer, and | 10:00:50 |
| 23 | instead of having to use the complicated | 10:00:52 |
| 24 | arbitration mechanism here, we didn't talk | 10:00:54 |

Page 81

| | | |
|---|---|---|
| 1 | about this, but the interconnection uses this | 10:00:58 |
| 2 | PCI, and that's a full board computer | 10:01:01 |
| 3 | interconnect that allows for multiple hosts | 10:01:03 |
| 4 | and multiple devices. | 10:01:05 |
| 5 | So it's not the more general | 10:01:07 |
| 6 | arbitration problem; this can be simpler, | 10:01:11 |
| 7 | because up here at least, the only arbitration | 10:01:13 |
| 8 | that can be done is the NAK back to each of | 10:01:16 |
| 9 | the respective hosts when the endpoint buffer | 10:01:20 |
| 10 | is busy, and that can be the indication that | 10:01:22 |
| 11 | the arbiter uses to know that the device is | 10:01:28 |
| 12 | busy.  One request comes in, if the other | 10:01:29 |
| 13 | request is attempted, the hold-off or the NAK | 10:01:32 |
| 14 | happens using native USB things. | 10:01:35 |
| 15 | A practitioner of the art at the | 10:01:37 |
| 16 | time would be very well familiar, because both | 10:01:38 |
| 17 | have different device controllers, and that's | 10:01:41 |
| 18 | one of the expectations for a person of | 10:01:42 |
| 19 | ordinary skill and doing a substitution would | 10:01:45 |
| 20 | be straightforward and they can simplify some | 10:01:48 |
| 21 | of the aspects of Dickens to accomplish these | 10:01:51 |
| 22 | combinations that would have been obvious. | 10:01:54 |
| 23 | BY MR. SAULSBURY: | 10:01:55 |
| 24 | Q.  And I think you may have covered this | 10:01:55 |

Page 82

1    implicitly, but just to be clear, could you          10:01:57

2    implement the arbitration mechanism of Dickens       10:01:59

3    in the context of the endpoint buffers and           10:02:02

4    NAK, so standard endpoint buffers and NAK?           10:02:06

5       A.   Sure, the standard USB does this             10:02:09

6    hold-off as part of it and it's kind of a flow       10:02:12

7    control thing.  So the endpoint buffer is in         10:02:14

8    use by one, shared device, then that would           10:02:16

9    hold off, it uses a standard USB hold-off            10:02:19

10   mechanism, the NAK mechanism, which would            10:02:22

11   solve the arbitration problem in a simpler           10:02:24

12   construction.                                        10:02:26

13      Q.   Okay.                                        10:02:27

14           And is it your opinion that the              10:02:27

15   combination of Belkin and Dickens meets the          10:02:29

16   requirement in claim 23 that we were looking         10:02:34

17   at earlier that the device be operable to            10:02:35

18   support simultaneous configuration?                  10:02:39

19      A.   Right, because each host could use,          10:02:42

20   as we saw in the normal part of endpoints, is        10:02:43

21   that they have to have their address set and         10:02:48

22   they have to be configured.  And since there         10:02:50

23   are separate endpoint buffers using the              10:02:54

24   Dickens application -- excuse me, using the          10:02:57

Page 83

| | | |
|---|---|---|
| 1 | Belkin application, just as there is in | 10:03:00 |
| 2 | Dickens, each host has an independent path, a | 10:03:02 |
| 3 | single end path that is corresponding to | 10:03:05 |
| 4 | endpoints, so it would be no problem allowing | 10:03:07 |
| 5 | simultaneous configuration. | 10:03:09 |
| 6 |    Q.   Okay. | 10:03:10 |
| 7 |        MR. SAULSBURY:  Now, Mr. Glass, if | 10:03:11 |
| 8 | we could please take a look at claim -- | 10:03:14 |
| 9 |        THE COURT:  Obviously -- is he | 10:03:17 |
| 10 | done with the demonstrative? | 10:03:18 |
| 11 |        MR. SAULSBURY:  No, he is not, | 10:03:20 |
| 12 | just because of claims 24 and 25 and then we | 10:03:22 |
| 13 | will be done with it.  It will be very brief. | 10:03:24 |
| 14 |        THE COURT:  Okay. | 10:03:26 |
| 15 |        MR. SAULSBURY:  Mr. Glass, can we | 10:03:27 |
| 16 | see claim 25 up on the screen, please.  Yep, | 10:03:28 |
| 17 | there we go. | 10:03:31 |
| 18 | BY MR. SAULSBURY: | 10:03:32 |
| 19 |    Q.   So, Mr. Garney, you understand that | 10:03:32 |
| 20 | claim 25 depends on claim 23? | 10:03:34 |
| 21 |    A.   I do.  That's what it says right up | 10:03:36 |
| 22 | there. | 10:03:38 |
| 23 |    Q.   Okay. | 10:03:38 |
| 24 |       Do you see how it has an | 10:03:38 |

Page 84

```
 1    additional requirement that the controller         10:03:39

 2    comprises respective USB interface circuit for      10:03:42

 3    each of the two or more USB hosts wherein each       10:03:45

 4    respective USB interface circuit enables the         10:03:49

 5    USB multi-host device to transmit and/or             10:03:51

 6    receive data over a USB bus?                         10:03:54

 7           Do you see that?                              10:03:55

 8      A.   I do.                                         10:03:56

 9      Q.   Okay.                                         10:03:56

10           Is that something that is met by              10:03:57

11    the combination of Dickens and Belkin?               10:03:59

12      A.   Sure, because the Philips chips have          10:04:01

13    this interface by standard USB, and there's          10:04:05

14    one for each of the hosts, so respective USB         10:04:08

15    interface circuit for each of the two hosts in       10:04:10

16    this case.                                           10:04:13

17      Q.   And can you just illustrate for us,           10:04:13

18    perhaps in a red marker, what the controller         10:04:15

19    is in that case?                                     10:04:17

20      A.   What the controller is?                       10:04:18

21      Q.   Yeah.  You see how it says, "the              10:04:20

22    controller comprises USB interface circuit and       10:04:21

23    the respective endpoint buffers"?                    10:04:24

24      A.   The red marker, in this case the              10:04:26
```

TRIAL - VOLUME 5

Page 85

```
 1    controller actually gets a little bit bigger.      10:04:28

 2    A person of ordinary skill would know in this       10:04:30

 3    case that this would identify the controller        10:04:32

 4    as the previous part of Dickens and now the         10:04:34

 5    two USB endpoint buffers that are found --          10:04:36

 6    that were taught to them by the Belkin device.      10:04:39

 7            Controller is a broader term, as            10:04:42

 8    seen in some of the other -- talking about the      10:04:43

 9    more specific terms, but just the device            10:04:46

10    controller, a controller can be used for all        10:04:49

11    kinds of things in intellectual engineering.        10:04:51

12    It is not a new thing.  It's been around            10:04:53

13    forever.                                            10:04:56

14       Q.   Okay.                                        10:04:56

15            And we'll just look at this last            10:04:57

16    element of claim 25, with respect to endpoint       10:04:58

17    buffer for each of those two or more USB hosts      10:05:02

18    for storing respective dedicated address,           10:05:04

19    configuration and response information for          10:05:08

20    each of those two or more USB hosts.                 10:05:08

21            Is that met by the combination?            10:05:11

22       A.   Yes, as I described here, there is an       10:05:13

23    endpoint buffer for each of the hosts, and an       10:05:15

24    endpoint buffer would be understood by a            10:05:17
```

Page 86

| | | |
|---|---|---|
| 1 | person of ordinary skill, and it's even talked | 10:05:19 |
| 2 | about in the Philips data sheet, that's the | 10:05:23 |
| 3 | place where the device address would be stored | 10:05:25 |
| 4 | and configuration of the device would be | 10:05:28 |
| 5 | stored. | 10:05:30 |
| 6 | Q.   Okay. | 10:05:30 |
| 7 | MR. SAULSBURY:  Now, Mr. Glass, | 10:05:31 |
| 8 | can we take a look at claim 24, please. | 10:05:34 |
| 9 | THE WITNESS:  Should I sit down? | 10:05:38 |
| 10 | MR. SAULSBURY:  No, but this is | 10:05:39 |
| 11 | the last thing. | 10:05:40 |
| 12 | BY MR. SAULSBURY: | 10:05:40 |
| 13 | Q.   So, Mr. Garney, do you see how claim | 10:05:42 |
| 14 | 24 also has claim 23 and it adds the | 10:05:44 |
| 15 | requirement that "wherein establishing the | 10:05:49 |
| 16 | concurrent respective dedicated USB | 10:05:50 |
| 17 | connections between the shared USB device | 10:05:54 |
| 18 | block and two or more USB hosts, the | 10:05:56 |
| 19 | controller is operable to maintain respective | 10:05:58 |
| 20 | dedicated address configuration and response | 10:06:00 |
| 21 | information for each of the two or more USB | 10:06:03 |
| 22 | hosts"? | 10:06:05 |
| 23 | Do you see that? | 10:06:06 |
| 24 | A.   I do. | 10:06:06 |

Page 87

| | | |
|---|---|---|
| 1 | Q.   Is that satisfied by the combination | 10:06:07 |
| 2 | of Dickens and Belkin? | 10:06:08 |
| 3 | A.   I have included it in. | 10:06:09 |
| 4 | Q.   And is that because you have standard | 10:06:10 |
| 5 | USB endpoints in the annotated diagram that | 10:06:12 |
| 6 | you have drawn? | 10:06:17 |
| 7 | A.   Yeah, we can make use of the normal | 10:06:18 |
| 8 | Dickens stuff for convection, but Dickens | 10:06:20 |
| 9 | already talked about that.  We are just | 10:06:23 |
| 10 | substituting one device controller for the | 10:06:25 |
| 11 | endpoint controllers.  The Belkin teaches we | 10:06:26 |
| 12 | don't disturb the normal USB and then the | 10:06:30 |
| 13 | connection between the shared USB block and | 10:06:33 |
| 14 | each host just like Dickens teaches, so that's | 10:06:35 |
| 15 | no problem. | 10:06:38 |
| 16 | Q.   Okay.  Thank you, Mr. Garney.  You | 10:06:38 |
| 17 | can sit down. | 10:06:40 |
| 18 | A.   Okay.  It felt nice to stand up. | 10:06:41 |
| 19 | Q.   Mr. Garney, did you perform a similar | 10:06:52 |
| 20 | analysis with respect to US-98? | 10:06:54 |
| 21 | A.   Yeah, I did. | 10:06:56 |
| 22 | Q.   And what were your conclusions? | 10:06:57 |
| 23 | A.   Basically the same conclusions; it | 10:06:59 |
| 24 | operates very similarly to Belkin.  In fact, I | 10:07:01 |

Page 88

| | | |
|---|---|---|
| 1 | exchanged the software from each product with | 10:07:04 |
| 2 | the other device and they're still similar, | 10:07:06 |
| 3 | how the software works. | 10:07:10 |
| 4 | Q.   I'm handing you what's been marked as | 10:07:12 |
| 5 | Exhibit 368. | 10:07:14 |
| 6 | (Whereupon, Trial Exhibit 368 was | 10:07:14 |
| 7 | introduced.) | 10:07:14 |
| 8 | BY MR. SAULSBURY: | 10:07:14 |
| 9 | Q.   Do you recognize this as the US-98 | 10:07:15 |
| 10 | device you analyzed? | 10:07:17 |
| 11 | A.   Yeah, I do.  I had to break it open | 10:07:18 |
| 12 | to test it, so yes, this is whole. | 10:07:20 |
| 13 | MR. SAULSBURY:  And I move | 10:07:22 |
| 14 | Exhibits 367 and 368 into evidence. | 10:07:24 |
| 15 | MR. SLAYDEN:  No objection, Your | 10:07:25 |
| 16 | Honor. | 10:07:26 |
| 17 | THE COURT:  All right.  They'll be | 10:07:26 |
| 18 | received. | 10:07:28 |
| 19 | BY MR. SAULSBURY: | 10:07:28 |
| 20 | Q.   And I just want to sum up your | 10:07:29 |
| 21 | opinions on -- strike that actually.  Let's -- | 10:07:31 |
| 22 | in the interest of time, let's move on and | 10:07:34 |
| 23 | talk about enablement and written description. | 10:07:37 |
| 24 | Were you here for Mr. -- were you | 10:07:42 |

TRIAL - VOLUME 5

Page 89

| | | |
|---|---|---|
| 1 | here for Microchip's opening statement? | 10:07:45 |
| 2 | A.   I was. | 10:07:48 |
| 3 | Q.   Okay. | 10:07:48 |
| 4 | And do you recall that there was a | 10:07:49 |
| 5 | statement from Microchip saying the '243 | 10:07:51 |
| 6 | Patent is "a device for connecting between two | 10:07:53 |
| 7 | computers"? | 10:07:57 |
| 8 | A.   I do. | 10:07:57 |
| 9 | Q.   Okay. | 10:07:58 |
| 10 | Is that what you understand the | 10:07:59 |
| 11 | invention to be? | 10:08:02 |
| 12 | A.   Not at all. | 10:08:02 |
| 13 | Q.   Okay. | 10:08:03 |
| 14 | And so you don't understand the | 10:08:05 |
| 15 | claims 23 through 25 to cover a device for | 10:08:08 |
| 16 | connecting between two computers? | 10:08:12 |
| 17 | A.   That's correct. | 10:08:13 |
| 18 | Q.   Okay. | 10:08:14 |
| 19 | For the next few questions, I want | 10:08:14 |
| 20 | you to assume for the moment that the claims | 10:08:17 |
| 21 | are that broad, that they encompass | 10:08:19 |
| 22 | host-to-host communication. | 10:08:22 |
| 23 | Do you have an opinion on whether | 10:08:27 |
| 24 | the inventors possess, as part of their | 10:08:30 |

Page 90

| | | |
|---|---|---|
| 1 | invention, host-to-host communication using a | 10:08:33 |
| 2 | shared device? | 10:08:36 |
| 3 | A.   No, there is no hint in the patent | 10:08:37 |
| 4 | that talks about host-to-host communication. | 10:08:39 |
| 5 | I would expect if they possess that, they | 10:08:42 |
| 6 | would have had something to say about it. | 10:08:45 |
| 7 | Q.   Well, are you saying that they would | 10:08:46 |
| 8 | have to disclose every single USB device that | 10:08:48 |
| 9 | you could use within the patent? | 10:08:51 |
| 10 | A.   No, no, but I would hope -- as we | 10:08:53 |
| 11 | heard, host-to-host communication has been | 10:08:55 |
| 12 | known for a long time way before this patent. | 10:08:57 |
| 13 | As at least practitioners of the art, they | 10:09:00 |
| 14 | would have been aware of this, and if they had | 10:09:03 |
| 15 | intended that, I would expect that they would, | 10:09:04 |
| 16 | you know, say something about it. | 10:09:07 |
| 17 | Q.   And is there something unique about | 10:09:08 |
| 18 | host-to-host communication as compared to the | 10:09:10 |
| 19 | types of devices disclosed in the '243 Patent, | 10:09:12 |
| 20 | such that you'd expect there to be more | 10:09:16 |
| 21 | discussion of it? | 10:09:17 |
| 22 | A.   Well, yeah, I mean, in almost every | 10:09:18 |
| 23 | case that I am aware of, each host that wants | 10:09:20 |
| 24 | to communicate talks to its device and, you | 10:09:22 |

Page 91

| | | |
|---|---|---|
| 1 | know, the second host would talk to its device | 10:09:26 |
| 2 | and then those two devices have some way of | 10:09:27 |
| 3 | communicating.  If one device or if one | 10:09:31 |
| 4 | computer is only there, if there's only one of | 10:09:34 |
| 5 | them, the device is not functioning, it | 10:09:37 |
| 6 | doesn't do anything useful. | 10:09:39 |
| 7 | It is not a single device that can | 10:09:40 |
| 8 | be shared; it is only -- it's this connection | 10:09:42 |
| 9 | of the two hosts of the two devices that make | 10:09:44 |
| 10 | sense.  And this patent is all about a single | 10:09:46 |
| 11 | device that a single computer could use that | 10:09:49 |
| 12 | would make sense, and now we are going to | 10:09:51 |
| 13 | expand it and use this purported invention to | 10:09:54 |
| 14 | allow multiple hosts to share that same | 10:09:56 |
| 15 | device. | 10:09:59 |
| 16 | Q.   And I have a slightly different but | 10:09:59 |
| 17 | related question, and now I am not asking | 10:10:00 |
| 18 | about what the inventors possessed; instead, | 10:10:03 |
| 19 | I'm more interested in whether someone who is | 10:10:08 |
| 20 | skilled in the field could actually make the | 10:10:10 |
| 21 | invention based on the disclosures in the | 10:10:12 |
| 22 | patent. | 10:10:15 |
| 23 | And specifically my question is, | 10:10:15 |
| 24 | do the disclosures in the patent enable one | 10:10:18 |

TRIAL - VOLUME 5

Page 92

| | | |
|---|---|---|
| 1 | skilled in the field to make and implement a | 10:10:22 |
| 2 | host-to-host communicating shared USB device | 10:10:27 |
| 3 | without undue experimentation? | 10:10:30 |
| 4 | A.   No, I think it would require | 10:10:32 |
| 5 | significant experimentation to figure out how | 10:10:34 |
| 6 | to do that.  There is a substantial difference | 10:10:37 |
| 7 | between two devices that are communicating and | 10:10:39 |
| 8 | one device that you are not sharing, so... | 10:10:40 |
| 9 | Q.   Could you use the same sorts of | 10:10:45 |
| 10 | software for doing host-to-host communication | 10:10:47 |
| 11 | using a device for each host in the context of | 10:10:49 |
| 12 | the shared USB device of the '243 Patent? | 10:10:54 |
| 13 | A.   I don't think so. | 10:10:57 |
| 14 | Q.   And why is that? | 10:10:58 |
| 15 | A.   Well, because, again, you have to | 10:10:59 |
| 16 | work out these details.  The software that is | 10:11:01 |
| 17 | involved with having one host talk to one | 10:11:04 |
| 18 | device, that's sort of normal USB.  That's | 10:11:07 |
| 19 | what all my classes were about and everything | 10:11:10 |
| 20 | else. | 10:11:12 |
| 21 | If you are now trying to have a | 10:11:12 |
| 22 | software in a device that's going to try to | 10:11:14 |
| 23 | sort out this sharing concept, that's -- you | 10:11:16 |
| 24 | know, that's not something that USB knows | 10:11:19 |

TRIAL - VOLUME 5

Page 93

| | | |
|---|---|---|
| 1 | about, that's not something that's part of | 10:11:21 |
| 2 | standard device controllers.  That's not part | 10:11:24 |
| 3 | of normal host-to-host communication.  So that | 10:11:27 |
| 4 | work would require experimentation. | 10:11:29 |
| 5 | And also, the software up in the | 10:11:31 |
| 6 | host that would be used to control that device | 10:11:32 |
| 7 | is -- again, because it doesn't make a lot of | 10:11:34 |
| 8 | sense to use that device by itself, that could | 10:11:37 |
| 9 | require some changes, too. | 10:11:39 |
| 10 | Q.   Now, one final set of questions. | 10:11:41 |
| 11 | Do you recall how we talked about | 10:11:44 |
| 12 | the types of evidence that you looked at in | 10:11:45 |
| 13 | concluding that the Belkin device was publicly | 10:11:49 |
| 14 | available before 2006? | 10:11:52 |
| 15 | A.   I do. | 10:11:53 |
| 16 | Q.   Okay. | 10:11:53 |
| 17 | Did you conduct a similar analysis | 10:11:54 |
| 18 | for US-98? | 10:11:56 |
| 19 | A.   I did. | 10:11:57 |
| 20 | Q.   Okay. | 10:11:57 |
| 21 | And did you come to a conclusion | 10:11:58 |
| 22 | as to whether that was publicly available | 10:11:59 |
| 23 | before 2006? | 10:12:01 |
| 24 | A.   Yeah.  All of the similar indicators | 10:12:02 |

TRIAL - VOLUME 5

Page 94

| | | |
|---|---|---|
| 1 | that I used for Belkin, I applied for US-98, | 10:12:03 |
| 2 | and the same conclusion of the dates that I | 10:12:07 |
| 3 | saw were well in advance of the '243. | 10:12:10 |
| 4 | MR. SAULSBURY:  I pass the | 10:12:16 |
| 5 | witness. | 10:12:17 |
| 6 | THE COURT:  Okay. | 10:12:18 |
| 7 | MR. SLAYDEN:  Can I approach, Your | 10:12:40 |
| 8 | Honor? | 10:12:42 |
| 9 | THE COURT:  Yes. | 10:12:42 |
| 10 | MR. SAULSBURY:  Yeah, no problem. | 10:13:26 |
| 11 | Certainly.  I'd be happy to take that.  Thank | 10:13:28 |
| 12 | you. | 10:13:31 |
| 13 | THE COURT:  Go ahead. | 10:13:32 |
| 14 | MR. SLAYDEN:  Thank you. | 10:13:33 |
| 15 | MR. SAULSBURY:  You bet. | 10:13:35 |
| 16 | - - - | 10:13:35 |
| 17 | CROSS-EXAMINATION | 10:13:35 |
| 18 | - - - | 10:13:36 |
| 19 | BY MR. SLAYDEN: | 10:13:36 |
| 20 | Q.  Good morning, Mr. Garney. | 10:13:50 |
| 21 | A.  Good morning. | 10:13:51 |
| 22 | Q.  Now, you have been designated as | 10:13:53 |
| 23 | Aptiv's invalidity expert; is that correct? | 10:13:55 |
| 24 | A.  Aptiv's infringement expert. | 10:13:59 |

TRIAL - VOLUME 5

Page 95

| | | |
|---|---|---|
| 1 | Q.   And their infringement expert? | 10:14:01 |
| 2 | A.   Yes. | 10:14:02 |
| 3 | Q.   So both? | 10:14:03 |
| 4 | A.   Yes. | 10:14:03 |
| 5 | Q.   You're not a lawyer; right? | 10:14:04 |
| 6 | A.   I am not a lawyer. | 10:14:05 |
| 7 | Q.   And you are not a judge certainly? | 10:14:06 |
| 8 | A.   I am certainly not a judge.  I am not | 10:14:08 |
| 9 | a juror this time either. | 10:14:10 |
| 10 | Q.   You're getting paid to be here today; | 10:14:11 |
| 11 | correct? | 10:14:18 |
| 12 | A.   I am. | 10:14:18 |
| 13 | Q.   How long have you been working on | 10:14:18 |
| 14 | invalidating the '243 Patent? | 10:14:19 |
| 15 | A.   About five-and-a-half years. | 10:14:22 |
| 16 | Q.   How much do you charge an hour? | 10:14:24 |
| 17 | A.   The company that I work through, | 10:14:26 |
| 18 | which is this expert company I think that's | 10:14:29 |
| 19 | mentioned on my resume, they bill Aptiv $525 | 10:14:31 |
| 20 | an hour for most work, and I have a discounted | 10:14:35 |
| 21 | rate if I get to work from home. | 10:14:38 |
| 22 | Q.   How many hours have you worked on | 10:14:41 |
| 23 | trying to invalidate the '243 Patent? | 10:14:42 |
| 24 | A.   I can't separate the invalidity | 10:14:45 |

Page 96

```
 1    specifically, but overall, I've worked over      10:14:47

 2    400 hours.                                        10:14:50

 3        Q.   400 hours.                               10:14:51

 4             So how much have you been paid by        10:14:52

 5    Aptiv?                                            10:14:54

 6        A.   I think it adds up to $200,000 or        10:14:54

 7    something.                                        10:14:57

 8        Q.   Now, over the past five years, have      10:14:59

 9    you always worked with this law firm with        10:15:01

10    Aptiv?                                            10:15:03

11        A.   I have not.                              10:15:03

12             MR. SAULSBURY:  Objection, Your          10:15:05

13    Honor.                                            10:15:07

14             THE COURT:  Well, let me hear            10:15:07

15    where it goes, but, I mean, you are on pretty     10:15:09

16    thin ice here.                                    10:15:12

17             Go ahead.                                10:15:13

18    BY MR. SLAYDEN:                                   10:15:15

19        Q.   So you have been working with them       10:15:17

20    for five years?                                   10:15:20

21        A.   Correct.                                 10:15:20

22        Q.   So that's around 2017?                   10:15:21

23        A.   Sounds right.                            10:15:22

24        Q.   And that started off with, in 2017,      10:15:25
```

Page 97

| | | |
|---|---|---|
| 1 | you were going -- you were challenging the | 10:15:30 |
| 2 | '243 Patent at the patent office; correct? | 10:15:33 |
| 3 | A.   That and other patents, yes. | 10:15:35 |
| 4 | Q.   And I am going to use the acronym | 10:15:37 |
| 5 | IPR. | 10:15:39 |
| 6 | Do you understand what IPR is? | 10:15:40 |
| 7 | A.   I do. | 10:15:41 |
| 8 | Q.   That's Inter Partes Review, IPR. | 10:15:41 |
| 9 | Okay. | 10:15:45 |
| 10 | And you were hired as an expert in | 10:15:45 |
| 11 | those proceedings, just to be clear? | 10:15:49 |
| 12 | A.   Yes. | 10:15:51 |
| 13 | Q.   And that was challenging multiple | 10:15:52 |
| 14 | Microchip patents; correct? | 10:15:55 |
| 15 | A.   That's correct.  Very similar. | 10:15:57 |
| 16 | Q.   And again, just to be clear, if the | 10:16:05 |
| 17 | patent office infringement wasn't an issue, | 10:16:07 |
| 18 | you were just challenging the validity of the | 10:16:09 |
| 19 | patents; correct? | 10:16:12 |
| 20 | A.   That's correct. | 10:16:13 |
| 21 | Q.   And you have been paid to provide | 10:16:14 |
| 22 | testimony here today; correct? | 10:16:17 |
| 23 | A.   Yes. | 10:16:18 |
| 24 | Q.   Now, as an expert offering opinions | 10:16:21 |

Page 98

| | | |
|---|---|---|
| 1 | and testimony, you need information regarding | 10:16:25 |
| 2 | the subject matter at issue, don't you? | 10:16:27 |
| 3 | A.   Yes. | 10:16:30 |
| 4 | Q.   Okay. | 10:16:30 |
| 5 | And as an expert, it's important | 10:16:31 |
| 6 | to have accurate and complete information, | 10:16:35 |
| 7 | isn't it? | 10:16:38 |
| 8 | A.   Yes. | 10:16:38 |
| 9 | Q.   Because if you don't have accurate | 10:16:41 |
| 10 | and complete information, it might affect your | 10:16:43 |
| 11 | opinions or conclusions; correct? | 10:16:46 |
| 12 | A.   Correct. | 10:16:47 |
| 13 | Q.   So during your work for Aptiv | 10:16:50 |
| 14 | attacking Microchip's patents, who provided | 10:16:54 |
| 15 | you with the information you needed? | 10:16:56 |
| 16 | A.   Some of the information I gathered | 10:17:00 |
| 17 | myself, some of the information was provided | 10:17:02 |
| 18 | to me by counsel, various counsel. | 10:17:05 |
| 19 | Q.   So if counsel didn't provide you with | 10:17:08 |
| 20 | complete and accurate information from the | 10:17:10 |
| 21 | company, Aptiv, that might affect your | 10:17:13 |
| 22 | conclusions; correct? | 10:17:15 |
| 23 | A.   It's possible. | 10:17:17 |
| 24 | Q.   Do you think you have been provided | 10:17:19 |

TRIAL - VOLUME 5

Page 99

| | | |
|---|---|---|
| 1 | with complete and accurate information in this | 10:17:21 |
| 2 | case by Aptiv? | 10:17:23 |
| 3 | A.   It was voluminous information I've | 10:17:24 |
| 4 | gotten.  As far as I can tell, it seems | 10:17:26 |
| 5 | complete and accurate. | 10:17:28 |
| 6 | Q.   You didn't ask for anything that you | 10:17:29 |
| 7 | didn't receive back? | 10:17:31 |
| 8 | A.   I asked for several things from Aptiv | 10:17:32 |
| 9 | during the proceedings, in contact with Mr. | 10:17:35 |
| 10 | Petku, to provide me with some specific | 10:17:39 |
| 11 | information that I wanted to know. | 10:17:41 |
| 12 | Q.   And they provided it? | 10:17:42 |
| 13 | A.   Absolutely. | 10:17:43 |
| 14 | Q.   Okay. | 10:17:43 |
| 15 | Now, in this case, you remember | 10:17:44 |
| 16 | you offered opinions in a written report and | 10:17:50 |
| 17 | those reports have been provided to Microchip; | 10:17:52 |
| 18 | correct? | 10:17:54 |
| 19 | A.   Correct. | 10:17:54 |
| 20 | Q.   Now, I want to read a little bit from | 10:17:57 |
| 21 | your report here and I want you to tell me if | 10:18:00 |
| 22 | you agree or disagree. | 10:18:02 |
| 23 | A.   Okay. | 10:18:04 |
| 24 | Q.   Okay? | 10:18:05 |

TRIAL - VOLUME 5

Page 100

| | | |
|---|---|---|
| 1 | A.   Not too much so I can follow. | 10:18:06 |
| 2 | Q.   You agree that Microchip's '243 | 10:18:08 |
| 3 | Patent described an invention to allow a | 10:18:11 |
| 4 | single USB device to be shared across multiple | 10:18:13 |
| 5 | USB hosts without needing to be reconfigured | 10:18:16 |
| 6 | or re-enumerated each and every time the hub | 10:18:19 |
| 7 | string host alternated accessing the USB | 10:18:24 |
| 8 | device; correct? | 10:18:27 |
| 9 | A.   I believe that's correct. | 10:18:28 |
| 10 | Q.   Okay. | 10:18:29 |
| 11 | A.   It would be nice to see it written, | 10:18:31 |
| 12 | but... | 10:18:33 |
| 13 | Q.   You agree with me that's what it | 10:18:34 |
| 14 | describes? | 10:18:37 |
| 15 | A.   I believe, yes. | 10:18:37 |
| 16 | Q.   And it describes an invention? | 10:18:38 |
| 17 | A.   It's a summary of the invention. | 10:18:40 |
| 18 | Q.   What's that? | 10:18:41 |
| 19 | A.   It's a summary of the invention. | 10:18:42 |
| 20 | It's my -- I don't know if it's quoted | 10:18:44 |
| 21 | directly from the patent, since I can't see | 10:18:46 |
| 22 | it. | 10:18:48 |
| 23 | Q.   Okay. | 10:18:48 |
| 24 | A.   But it sounds consistent with my | 10:18:48 |

Page 101

| | | |
|---|---|---|
| 1 | understanding of the patent. | 10:18:50 |
| 2 | Q.   Okay. | 10:18:51 |
| 3 | A.   And again, I don't know if that | 10:18:51 |
| 4 | was -- if you use '243 in it, then I'll accept | 10:18:53 |
| 5 | it was '243. | 10:18:58 |
| 6 | Q.   I'm reading directly from it. | 10:19:00 |
| 7 | And you would agree that the '243 | 10:19:02 |
| 8 | Patent provides a multi-host capable device | 10:19:04 |
| 9 | controller; correct? | 10:19:07 |
| 10 | A.   That's the title.  The multi-host -- | 10:19:07 |
| 11 | again, I'd have to look at the cover of the | 10:19:12 |
| 12 | patent, but I think that's the name of the | 10:19:14 |
| 13 | patent. | 10:19:15 |
| 14 | Q.   And, in fact, I'll just quote it. | 10:19:16 |
| 15 | A.   Actually within the claim of the | 10:19:18 |
| 16 | patent, it specifically talks about multi-host | 10:19:19 |
| 17 | device controller, yes. | 10:19:22 |
| 18 | Q.   This is what your words say at | 10:19:23 |
| 19 | paragraph 124? | 10:19:26 |
| 20 | MR. SAULSBURY:  Objection, Your | 10:19:26 |
| 21 | Honor.  Can he give it to the witness.  He | 10:19:28 |
| 22 | doesn't have the report. | 10:19:30 |
| 23 | THE COURT:  It is overruled, and | 10:19:31 |
| 24 | if he is not sure, he can say that.  I mean, | 10:19:32 |

TRIAL - VOLUME 5

Page 102

| | | |
|---|---|---|
| 1 | you can ask him and he can say it. | 10:19:37 |
| 2 | Go ahead. | 10:19:39 |
| 3 | BY MR. SLAYDEN: | 10:19:39 |
| 4 | Q.   It says specifically, "The '243 | 10:19:39 |
| 5 | Patent relates to USB controllers and provides | 10:19:42 |
| 6 | that a shared USB device may be simultaneously | 10:19:44 |
| 7 | configured and accessed by two or more USB | 10:19:48 |
| 8 | hosts by using a multi-host capable device | 10:19:52 |
| 9 | controller." | 10:19:55 |
| 10 | Does that sound about right? | 10:19:56 |
| 11 | A.   That sounds familiar. | 10:19:57 |
| 12 | Q.   Now, let's continue on with your | 10:20:00 |
| 13 | report. | 10:20:05 |
| 14 | A.   I'd actually, now, would like to see | 10:20:05 |
| 15 | the context of it, because I said a lot of | 10:20:08 |
| 16 | things, I'm sure, in lots of reports; there's | 10:20:10 |
| 17 | maybe hundreds.  I think you mentioned an | 10:20:12 |
| 18 | 89-page report. | 10:20:15 |
| 19 | So, again, the statements are | 10:20:15 |
| 20 | sometimes in context and I don't know what the | 10:20:16 |
| 21 | context is for that. | 10:20:18 |
| 22 | Q.   You think your report is 89 pages? | 10:20:19 |
| 23 | A.   That's what you claimed it was. | 10:20:21 |
| 24 | Q.   Oh, can you tell me how many pages it | 10:20:23 |

TRIAL - VOLUME 5

Page 103

```
 1    is?                                        10:20:26

 2        A.   I'm just -- I don't remember exactly    10:20:26

 3    how many pages, but that's what you claimed it   10:20:28

 4    was.                                       10:20:40

 5        Q.   No, it's a little bigger than     10:20:40

 6    89 pages.  89 pages is what you submitted?  10:20:47

 7        A.   But that's not all the material I  10:20:49

 8    actually wrote.                            10:20:51

 9        Q.   Excuse me?                        10:20:52

10        A.   That's not all the material I     10:20:53

11    actually wrote.  There were three reports and   10:20:55

12    some replies.                              10:20:57

13        Q.   Well, this was just the opening   10:20:58

14    report?                                    10:20:59

15        A.   Well, maybe that's the legal input.    10:20:59

16    The report I wrote is the first part right  10:21:01

17    here, and it refers to other exhibits, but I   10:21:03

18    didn't write all those.                    10:21:05

19        Q.   You are correct.                  10:21:06

20        A.   So it looks like, it's ironic, it is   10:21:07

21    108 pages, not 89.                         10:21:11

22        Q.   Okay.                             10:21:15

23             So that's, I guess, 89 pages at   10:21:16

24    the patent office and 108 pages here?      10:21:18
```

TRIAL - VOLUME 5

Page 104

```
 1        A.   Well, yeah.  So I guess you're        10:21:21

 2   referring to the IPR report they got.           10:21:23

 3        Q.   Right.                                 10:21:25

 4             That's another declaration that        10:21:26

 5   was under oath.                                  10:21:28

 6        A.   Sure.                                  10:21:28

 7        Q.   We'll get to that.                     10:21:29

 8        A.   Sure.                                  10:21:30

 9        Q.   So if you want to follow along, you    10:21:31

10   can check me.  Let's go to paragraph 125,        10:21:34

11   which is on --                                   10:21:37

12        A.   Just a minute.  I have to make room.   10:21:37

13        Q.   -- page 32.  Do you want me to get     10:21:39

14   that for you?                                    10:21:41

15        A.   Sorry, which?                          10:21:46

16        Q.   Paragraph 125.                         10:21:48

17        A.   Okay.                                  10:21:53

18        Q.   And I am reading down at kind of the   10:21:54

19   last sentence.                                   10:21:58

20             It says, "The '243 Patent," and        10:21:59

21   then it says, "solves the problem by             10:22:03

22   disclosing a multi-host capable device           10:22:05

23   controller that includes," now, this is          10:22:09

24   important, "separate buffers for each of the     10:22:14
```

TRIAL - VOLUME 5

Page 105

| | | |
|---|---|---|
| 1 | multi-host connections and maintains a | 10:22:17 |
| 2 | dedicated address and configuration for each | 10:22:20 |
| 3 | host." | 10:22:24 |
| 4 | Do you see that? | 10:22:24 |
| 5 | A.    I do.  That's what I just described | 10:22:25 |
| 6 | for the combination of Dickens and Belkin. | 10:22:26 |
| 7 | Q.    Okay.  We'll get to that later. | 10:22:30 |
| 8 | A.    Sure. | 10:22:31 |
| 9 | Q.    Okay. | 10:22:33 |
| 10 | Let's go to paragraph 357. | 10:22:34 |
| 11 | A.    Which page are you on? | 10:22:46 |
| 12 | Q.    Page 99. | 10:22:48 |
| 13 | A.    Okay. | 10:22:48 |
| 14 | Q.    We're getting close to the end. | 10:22:50 |
| 15 | A.    Thank you. | 10:22:50 |
| 16 | Q.    The second sentence there says, "The | 10:22:52 |
| 17 | specification describes a way for multiple USB | 10:22:57 |
| 18 | hosts to share a single USB device." | 10:23:00 |
| 19 | Do you see that? | 10:23:02 |
| 20 | A.    I do. | 10:23:02 |
| 21 | Q.    That's in your report; right? | 10:23:03 |
| 22 | A.    Yes. | 10:23:05 |
| 23 | Q.    Okay. | 10:23:05 |
| 24 | Now let's go to -- | 10:23:06 |

|   |   |   |
|---|---|---|
| 1 | MR. SLAYDEN:  Can you pull up | 10:23:13 |
| 2 | Exhibit 1, Mr. Ferrer.  Figure 3, page 4. | 10:23:14 |
| 3 | BY MR. SLAYDEN: | 10:23:25 |
| 4 | Q.   Now, Mr. Garney, you recognize that | 10:23:25 |
| 5 | diagram? | 10:23:28 |
| 6 | A.   Oh, yeah. | 10:23:28 |
| 7 | Q.   After five years? | 10:23:29 |
| 8 | A.   I don't think I dream about it yet, | 10:23:32 |
| 9 | but I could. | 10:23:34 |
| 10 | Q.   Maybe it's more nightmares. | 10:23:35 |
| 11 | A.   Some days, like today. | 10:23:37 |
| 12 | Q.   Now, you would agree with me that it | 10:23:40 |
| 13 | seems obvious that Figure 3 of the patent is a | 10:23:43 |
| 14 | block diagram, isn't it? | 10:23:47 |
| 15 | A.   It is a block diagram, yes. | 10:23:48 |
| 16 | Q.   Okay.  A bunch of blocks there. | 10:23:50 |
| 17 | MR. SLAYDEN:  So, Mr. Ferrer, can | 10:23:52 |
| 18 | we go to Exhibit 370 at 1149.  And just give | 10:23:57 |
| 19 | me the first page, actually first page first, | 10:24:04 |
| 20 | so it's not 1149. | 10:24:11 |
| 21 | BY MR. SLAYDEN: | 10:24:14 |
| 22 | Q.   And you recognize that?  I think we | 10:24:14 |
| 23 | talked about that. | 10:24:16 |
| 24 | A.   I am guessing this is the file | 10:24:18 |

| | | |
|---|---|---|
| 1 | history, file wrapper. | 10:24:19 |
| 2 | Q.   I actually wanted the -- | 10:24:23 |
| 3 | MR. SLAYDEN:  Go to 1149 of that | 10:24:25 |
| 4 | document.  I'm sorry. | 10:24:27 |
| 5 | Okay.  Now I got to where I | 10:24:38 |
| 6 | wanted. | 10:24:46 |
| 7 | BY MR. SLAYDEN: | 10:24:46 |
| 8 | Q.   Now, do you recognize that as your | 10:24:47 |
| 9 | declaration that you filed in relation to the | 10:24:49 |
| 10 | '243 Patent at the IPR proceedings? | 10:24:52 |
| 11 | A.   It seems to be that, yes. | 10:24:55 |
| 12 | Q.   And that's -- and in that | 10:24:56 |
| 13 | declaration, you attacked the claims 23 | 10:24:59 |
| 14 | through 25 of the '243 Patent; right? | 10:25:03 |
| 15 | A.   Well, I provided -- I don't know if I | 10:25:05 |
| 16 | would use "attacked."  I mean, I provided | 10:25:08 |
| 17 | information to the patent board for them to | 10:25:09 |
| 18 | re-examine the 23 to 25, amongst other | 10:25:11 |
| 19 | claims -- amongst other patents. | 10:25:15 |
| 20 | Q.   But you asserted that they were | 10:25:16 |
| 21 | invalid; correct? | 10:25:18 |
| 22 | A.   I did. | 10:25:19 |
| 23 | Q.   Okay. | 10:25:19 |
| 24 | A.   With regard to Dickens | 10:25:21 |

TRIAL - VOLUME 5

Page 108

| | | |
|---|---|---|
| 1 | specifically -- well, as we talked, not about | 10:25:24 |
| 2 | any products, but just the written documents | 10:25:26 |
| 3 | they described. | 10:25:29 |
| 4 | Q.   Right. | 10:25:29 |
| 5 | And you make a distinction there. | 10:25:29 |
| 6 | Do patents exist on USB switches? | 10:25:33 |
| 7 | A.   Well, this is a patent on it.  I'm | 10:25:37 |
| 8 | not sure exactly what your question is asking. | 10:25:41 |
| 9 | That's pretty broad. | 10:25:43 |
| 10 | Q.   You keep saying the patent office | 10:25:44 |
| 11 | didn't look at these physical devices, and I'm | 10:25:46 |
| 12 | asking you if these physical devices were so | 10:25:49 |
| 13 | special, wouldn't somebody have patented them? | 10:25:56 |
| 14 | A.   Probably. | 10:25:58 |
| 15 | Q.   Correct. | 10:25:59 |
| 16 | And so if they had a patent, | 10:25:59 |
| 17 | wouldn't you have found those and asserted | 10:26:03 |
| 18 | them at the patent office during the IPR? | 10:26:05 |
| 19 | A.   I think, as I understand it legally, | 10:26:07 |
| 20 | the patent applicants have an obligation, if | 10:26:10 |
| 21 | they are aware of any such thing, they have to | 10:26:13 |
| 22 | notify the patent board, patent office of | 10:26:14 |
| 23 | them. | 10:26:16 |
| 24 | Q.   We're going to get to that later. | 10:26:17 |

TRIAL - VOLUME 5

Page 109

| | | |
|---|---|---|
| 1 | Mr. Bohm, he actually disclosed it went | 10:26:19 |
| 2 | through a Belkin switch to the patent office. | 10:26:22 |
| 3 | A.  No, my question was for you, sir. | 10:26:25 |
| 4 | Q.  But my question is a little | 10:26:27 |
| 5 | different. | 10:26:28 |
| 6 | My question was, would you agree | 10:26:29 |
| 7 | with me that there's probably patents on -- | 10:26:32 |
| 8 | let's go here.  Are there patents on USB | 10:26:35 |
| 9 | switches? | 10:26:38 |
| 10 | A.  I don't know. | 10:26:38 |
| 11 | Q.  You don't know. | 10:26:39 |
| 12 | You've never seen a patent on a | 10:26:41 |
| 13 | USB switch? | 10:26:43 |
| 14 | A.  Not to my knowledge. | 10:26:44 |
| 15 | Q.  Okay. | 10:26:45 |
| 16 | There are -- | 10:26:46 |
| 17 | A.  Well -- yeah, that's true.  Go ahead. | 10:26:48 |
| 18 | Q.  You don't think there is a patent on | 10:26:51 |
| 19 | USB switches? | 10:26:54 |
| 20 | A.  Oh, I wouldn't be surprised. | 10:26:55 |
| 21 | Q.  Okay. | 10:26:56 |
| 22 | So you could have searched for and | 10:26:57 |
| 23 | found those and submitted them to the patent | 10:27:01 |
| 24 | office during an IPR proceeding; correct? | 10:27:03 |

TRIAL - VOLUME 5

Page 110

| | | |
|---|---|---|
| 1 | A.   I could. | 10:27:05 |
| 2 | Q.   And we are going to get to that | 10:27:06 |
| 3 | because there is a lot of switches listed on | 10:27:07 |
| 4 | the face of the patent -- the '243 Patent and | 10:27:09 |
| 5 | you know how they got there? | 10:27:12 |
| 6 | A.   No. | 10:27:14 |
| 7 | Q.   You just described it a minute ago. | 10:27:14 |
| 8 | Duty of candor; right? | 10:27:18 |
| 9 | A.   Yes. | 10:27:19 |
| 10 | Q.   And who discloses those patents to | 10:27:20 |
| 11 | the patent office in the printed publications | 10:27:22 |
| 12 | about switches when they are getting their | 10:27:24 |
| 13 | patent; who does that? | 10:27:27 |
| 14 | A.   The inventor or their legal firm, I | 10:27:28 |
| 15 | would assume. | 10:27:31 |
| 16 | Q.   And that's Mr. Bohm here in this | 10:27:31 |
| 17 | case? | 10:27:33 |
| 18 | A.   Or his lawyers, yes. | 10:27:33 |
| 19 | Q.   Okay. | 10:27:35 |
| 20 | MR. SLAYDEN:  Let's go to 1242, | 10:27:35 |
| 21 | Mr. Ferrer. | 10:27:38 |
| 22 | BY MR. SLAYDEN: | 10:27:46 |
| 23 | Q.   And that's your signature; right, | 10:27:46 |
| 24 | just to confirm? | 10:27:48 |

TRIAL - VOLUME 5

Page 111

1     A.    That's correct.                              10:27:48

2     Q.    And that's the -- on the 89th page of        10:27:49

3 your report?                                           10:27:53

4     A.    Okay.                                         10:27:53

5     Q.    And then when you signed this, you           10:27:54

6 were attesting to the fact that you believe            10:27:58

7 what you put in there was true; right?                 10:28:01

8     A.    That's correct.                              10:28:04

9     Q.    Now, going back to Figure 3 of the           10:28:04

10 '243 Patent, you don't have to pull it up, but        10:28:08

11 you'd agree that the block diagrams like              10:28:11

12 Figure 3 of the '243 Patent are not intended          10:28:14

13 to specify a particular configuration of              10:28:19

14 separate devices, but merely to indicate the          10:28:22

15 functions performed and the functional                10:28:26

16 relationships of those functions; correct?            10:28:28

17     A.    Sometimes they can be used for -- to        10:28:32

18 either suggest or describe embodiments and            10:28:35

19 sometimes they can be used for in helping to          10:28:38

20 understand what the claims are with respect to        10:28:40

21 the written description that also exists in           10:28:43

22 the patent.                                           10:28:46

23     Q.    Okay.                                        10:28:47

24          I don't think you really answered            10:28:48

TRIAL - VOLUME 5

Page 112

| | | |
|---|---|---|
| 1 | my question.  So maybe it's a little long | 10:28:49 |
| 2 | because it's -- because you'll see why in a | 10:28:53 |
| 3 | minute. | 10:28:56 |
| 4 | You'd agree that the block | 10:28:56 |
| 5 | diagrams in Figure 3 of the '243 Patent are | 10:28:58 |
| 6 | not intended to specify a particular | 10:29:02 |
| 7 | configuration of separate devices, but merely | 10:29:05 |
| 8 | indicate the functions performed and the | 10:29:10 |
| 9 | functional relationships of the functions; | 10:29:13 |
| 10 | correct? | 10:29:16 |
| 11 | A.  Well, the description of the | 10:29:24 |
| 12 | invention in a patent uses that figure to | 10:29:29 |
| 13 | elaborate some of what you just described, | 10:29:32 |
| 14 | yes. | 10:29:34 |
| 15 | Q.  Okay. | 10:29:36 |
| 16 | I'm not sure we are on the same | 10:29:37 |
| 17 | page, but let's just look at... | 10:29:39 |
| 18 | MR. SLAYDEN:  Let's go to 1183, | 10:29:44 |
| 19 | Mr. Ferrer.  And the last bottom sentence | 10:29:46 |
| 20 | starting with, "Functional block | 10:29:52 |
| 21 | descriptions."  About five lines up from where | 10:29:54 |
| 22 | you are. | 10:29:58 |
| 23 | Keep going.  You're there.  Right | 10:30:03 |
| 24 | there. | 10:30:04 |

Page 113

```
 1    BY MR. SLAYDEN:                                 10:30:05

 2        Q.   So this is what you said in your       10:30:11

 3    declaration to the patent office:               10:30:13

 4             "Functional block depiction of         10:30:14

 5    devices as in Bohm was not intended to specify  10:30:17

 6    a particular configuration of separate          10:30:22

 7    devices.  The block diagram merely indicates    10:30:24

 8    the functions performed and the functional      10:30:28

 9    relationships of the functions."                10:30:31

10             And here's a really interesting        10:30:34

11    part.  "A particular function," which is        10:30:36

12    important in this case, "may be distributed      10:30:40

13    amongst various real world components."          10:30:43

14             Do you agree with that?                10:30:48

15        A.   I see that.  The claims define          10:30:50

16    exactly what is being claimed.                   10:30:52

17        Q.   I'm not talking about a claim there,    10:30:56

18    though.  I want to talk about the diagram that   10:30:59

19    you have been backing things to.                 10:31:01

20        A.   Sure.                                   10:31:04

21        Q.   That's -- that's true, I agree with     10:31:06

22    you.                                             10:31:09

23             And just to be clear, you would         10:31:10

24    agree with me that a particular function may     10:31:11
```

| | | |
|---|---|---|
| 1 | be distributed amongst various real world | 10:31:14 |
| 2 | components? | 10:31:17 |
| 3 | A.   Well, as a broad part of a | 10:31:18 |
| 4 | practitioner's art, of course.  But again, | 10:31:24 |
| 5 | some of this language, I mean, function and | 10:31:27 |
| 6 | devices, devices for specific uses of this | 10:31:31 |
| 7 | within the patent that we have to use when it | 10:31:35 |
| 8 | comes to talking about the patent in | 10:31:39 |
| 9 | particular. | 10:31:40 |
| 10 | Q.   Okay. | 10:31:41 |
| 11 | Well, let's go up four lines, "as | 10:31:42 |
| 12 | in Bohm." | 10:31:45 |
| 13 | A.   Sure. | 10:31:48 |
| 14 | Q.   Correct?  That's what I'm talking | 10:31:48 |
| 15 | about. | 10:31:49 |
| 16 | MR. SLAYDEN:  Okay.  Let's go | 10:31:52 |
| 17 | to -- hang on a minute. | 10:31:56 |
| 18 | BY MR. SLAYDEN: | 10:31:58 |
| 19 | Q.   Now, you would agree that the word | 10:31:58 |
| 20 | "simultaneous," as used in the '243 Patent | 10:32:01 |
| 21 | claim, does not require immediacy; correct? | 10:32:04 |
| 22 | A.   I'm not sure of the context of how | 10:32:14 |
| 23 | you're using immediacy, so I'm not sure how to | 10:32:16 |
| 24 | answer that question. | 10:32:19 |

Page 115

```
 1       Q.   I'll repeat it one more time.          10:32:21

 2       A.   I'm not sure repeating is going to     10:32:22

 3  help, but go ahead.                              10:32:24

 4       Q.   All right.  Well, maybe think about    10:32:25

 5  it.                                              10:32:27

 6            You agree that the word                10:32:27

 7  "simultaneous," as used in the '243 Patent       10:32:29

 8  claims, does not require immediacy; correct?     10:32:32

 9       A.   Yeah, I'm still not sure how to        10:32:36

10  answer that question.                            10:32:38

11            MR. SLAYDEN:  Okay.  Well, let's       10:32:39

12  look at -- pull up page 1187.  This is what      10:32:41

13  you said, told the patent office.                10:32:47

14            THE WITNESS:  Five years ago,          10:32:49

15  sure.                                            10:32:50

16            MR. SLAYDEN:  Let's go to the          10:32:50

17  last -- 71, the last sentence of 71,             10:32:52

18  simultaneous, of 71.                             10:32:57

19            Paragraph 71, Mr. Ferrer.  I'm         10:33:00

20  sorry.  The last sentence.  The last sentence.   10:33:02

21  BY MR. SLAYDEN:                                  10:33:12

22       Q.   And this is the -- this is your        10:33:12

23  declaration you submitted to the patent office   10:33:14

24  challenging validity of the '243 Patent.         10:33:17
```

Page 116

```
 1      A.    Sure.                                    10:33:20

 2      Q.    So there is a reason we are talking      10:33:20

 3   about simultaneous.                               10:33:23

 4      A.    Absolutely, simultaneous.  I just        10:33:24

 5   remember this from my report five years ago,      10:33:26

 6   but yes.                                          10:33:28

 7      Q.    And what you told the patent office      10:33:28

 8   was -- because I think you kind of intimated      10:33:30

 9   earlier that it was different than this,          10:33:34

10   "Simultaneous in its usages does not require      10:33:36

11   immediacy and equivalency in action."            10:33:40

12            Do you remember that?                    10:33:43

13      A.    Sure.                                    10:33:44

14      Q.    Okay.                                    10:33:45

15            And you signed the declaration           10:33:45

16   because you believed that to be true?             10:33:48

17      A.    Yes.                                     10:33:49

18      Q.    Okay.                                    10:33:50

19            MR. SLAYDEN:  Okay.  Let's go to         10:34:05

20   the IPR slide, 370.                               10:34:07

21   BY MR. SLAYDEN:                                   10:34:18

22      Q.    Okay.                                    10:34:18

23            We're back to the petition for           10:34:19

24   Inter Partes Review, and I think you've           10:34:23
```

TRIAL - VOLUME 5

Page 117

|    |                                                      |          |
|----|------------------------------------------------------|----------|
| 1  | already told me that you are familiar with           | 10:34:25 |
| 2  | this, and the goal was to cancel the '243             | 10:34:26 |
| 3  | Patent.                                               | 10:34:30 |
| 4  | You submitted a declaration, so                       | 10:34:31 |
| 5  | let's -- and it was filed on behalf of the            | 10:34:33 |
| 6  | petitioner, and the petitioner here is Delphi;        | 10:34:38 |
| 7  | correct?                                              | 10:34:40 |
| 8  | A.   Yes.                                             | 10:34:40 |
| 9  | Q.   And now Aptiv, of course; right?                 | 10:34:41 |
| 10 | A.   Yes.                                             | 10:34:43 |
| 11 | Q.   And that's the defendant in this                 | 10:34:43 |
| 12 | case?                                                 | 10:34:45 |
| 13 | A.   Yes.                                             | 10:34:45 |
| 14 | Q.   All right.                                       | 10:34:45 |
| 15 | MR. SLAYDEN:  And let's go to...                      | 10:34:55 |
| 16 | BY MR. SLAYDEN:                                       | 10:35:03 |
| 17 | Q.   Now, we talked about your                        | 10:35:04 |
| 18 | declaration.                                          | 10:35:06 |
| 19 | Now, before you prepared your                         | 10:35:06 |
| 20 | declaration, you reviewed a lot of prior art          | 10:35:07 |
| 21 | patents, I assume?                                    | 10:35:10 |
| 22 | A.   Yeah, I don't remember exactly, but              | 10:35:12 |
| 23 | it seems...                                           | 10:35:14 |
| 24 | Q.   How many do you think you reviewed?              | 10:35:15 |

TRIAL - VOLUME 5

Page 118

| | | |
|---|---|---|
| 1 | A.    Actually, I don't remember. | 10:35:17 |
| 2 | Q.    Okay. | 10:35:18 |
| 3 | Were they just provided -- did you | 10:35:19 |
| 4 | search for them or were they provided to you | 10:35:21 |
| 5 | by Aptiv's counsel? | 10:35:24 |
| 6 | A.    I don't remember that either.  If | 10:35:25 |
| 7 | it's important, it's probably in my report. | 10:35:26 |
| 8 | Q.    What's that? | 10:35:27 |
| 9 | A.    I don't remember, but my report most | 10:35:28 |
| 10 | likely says something about it. | 10:35:29 |
| 11 | Q.    Okay. | 10:35:31 |
| 12 | Now, before you prepared your | 10:35:33 |
| 13 | declaration, you certainly did a pretty big | 10:35:36 |
| 14 | review of the patent landscape? | 10:35:39 |
| 15 | A.    I mean, there are a number of patents | 10:35:43 |
| 16 | that are cited in my report.  I certainly | 10:35:45 |
| 17 | looked at those and some others, yes. | 10:35:48 |
| 18 | MR. SLAYDEN:  So let's go to | 10:35:51 |
| 19 | page 1188, Mr. Ferrer, of 370.  And highlight | 10:35:53 |
| 20 | the first part of 73, paragraph 73. | 10:36:11 |
| 21 | BY MR. SLAYDEN: | 10:36:16 |
| 22 | Q.    And one of those references that you | 10:36:20 |
| 23 | cited to the patent office was a Japanese | 10:36:22 |
| 24 | patent publication published in 2003. | 10:36:24 |

TRIAL - VOLUME 5

Page 119

| | | |
|---|---|---|
| 1 | Do you see that? | 10:36:28 |
| 2 | A.   I see that. | 10:36:29 |
| 3 | Q.   And that was the first argument that | 10:36:31 |
| 4 | you presented in this -- in the IPR. | 10:36:33 |
| 5 | Now, and I guess my point is, | 10:36:36 |
| 6 | besides looking for U.S. patents, you looked, | 10:36:39 |
| 7 | or Aptiv's counsel looked, worldwide for | 10:36:44 |
| 8 | patents. | 10:36:46 |
| 9 | Is that fair to say? | 10:36:47 |
| 10 | A.   Yeah, I think Aptiv's counsel did. | 10:36:48 |
| 11 | Q.   Right. | 10:36:51 |
| 12 | MR. SLAYDEN:  Now, can we go to | 10:36:55 |
| 13 | 1203?  And highlight the Dickens prior art | 10:36:58 |
| 14 | patent heading. | 10:37:09 |
| 15 | BY MR. SLAYDEN: | 10:37:14 |
| 16 | Q.   And there, that's the same Dickens | 10:37:15 |
| 17 | patent that you cited in the IPR that you are | 10:37:20 |
| 18 | asserting here invalidates Mr. Bohm's patent | 10:37:23 |
| 19 | claims; right? | 10:37:27 |
| 20 | A.   Yes. | 10:37:28 |
| 21 | Q.   And here you are asserting that | 10:37:28 |
| 22 | Dickens invalidates claims 23 through 25; | 10:37:29 |
| 23 | right? | 10:37:33 |
| 24 | A.   Yes, in the absence of Belkin or | 10:37:33 |

TRIAL - VOLUME 5

Page 120

1    US-98.                                                10:37:35

2        Q.   We are going to get to that.  We are         10:37:36

3    going to get to switch art.  Be patient.              10:37:38

4            And that tells us in that title               10:37:41

5    that the last claims, 22 through 25, were             10:37:45

6    challenged by you with Dickens previously;            10:37:51

7    correct?                                              10:37:53

8        A.   Yes.                                          10:37:54

9        Q.   Okay.                                         10:37:54

10           And the patent office considered              10:37:57

11   all your arguments of 89 pages and your               10:38:00

12   counsel's arguments and they rejected your            10:38:03

13   Dickens-based arguments for 23 through 25,            10:38:05

14   didn't they?                                          10:38:09

15       A.   Not totally.                                  10:38:09

16       Q.   Not totally.  23 through 25.  Okay.           10:38:10

17   We'll walk through it then.                           10:38:14

18           MR. SLAYDEN:  Let's look at the               10:38:16

19   trial decision, Slide 11.  Now go to the slide        10:38:20

20   deck.  Okay.                                          10:38:24

21   BY MR. SLAYDEN:                                       10:38:34

22       Q.   Now, this is the front page of the           10:38:37

23   final written decision; you've probably seen          10:38:39

24   that, I suppose?                                      10:38:42

TRIAL - VOLUME 5

Page 121

| | | |
|---|---|---|
| 1 | A.   I probably didn't look at that part, | 10:38:43 |
| 2 | but keep going. | 10:38:45 |
| 3 | Q.   You didn't what? | 10:38:45 |
| 4 | A.   I probably didn't look at that part | 10:38:46 |
| 5 | because I'm not a legal guy. | 10:38:48 |
| 6 | Q.   Okay. | 10:38:49 |
| 7 | Now, on the front of it, which is | 10:38:53 |
| 8 | highlighted there and made in a big box, there | 10:38:55 |
| 9 | are three independent patent judges that | 10:38:59 |
| 10 | reviewed your 89 pages of arguments; correct? | 10:39:03 |
| 11 | A.   Yes. | 10:39:07 |
| 12 | Q.   Okay. | 10:39:08 |
| 13 | And it was unanimous, all three of | 10:39:09 |
| 14 | the patent judges disagreed with you as to | 10:39:15 |
| 15 | claims 23 through 25? | 10:39:18 |
| 16 | A.   I don't remember that. | 10:39:19 |
| 17 | Q.   You don't remember that? | 10:39:20 |
| 18 | A.   No.  I mean, it could be here, but I | 10:39:21 |
| 19 | don't remember that. | 10:39:23 |
| 20 | Q.   Okay. | 10:39:23 |
| 21 | Now, patent judges are -- what do | 10:39:24 |
| 22 | you know about patent judges?  What do you | 10:39:31 |
| 23 | know about their qualifications? | 10:39:33 |
| 24 | A.   I don't know anything about them | 10:39:34 |

TRIAL - VOLUME 5

Page 122

1    except they're lawyers that are, you know,          10:39:36

2    supposed to be reviewing this kind of               10:39:39

3    material.                                           10:39:40

4        Q.   Well, first of all, they're lawyers,       10:39:40

5    so you knew that.  Okay.                            10:39:42

6             So do they have technical                  10:39:44

7    backgrounds?                                        10:39:46

8        A.   I truthfully don't know.                   10:39:46

9        Q.   Okay.                                      10:39:48

10       A.   I would hope so, but...                    10:39:48

11       Q.   Okay.                                      10:39:50

12            MR. SLAYDEN:  Well, let's look at          10:39:51

13   Slide 12, Mr. Ferrer.                               10:39:52

14   BY MR. SLAYDEN:                                     10:39:56

15       Q.   That's the first named --                 10:39:56

16            MR. SAULSBURY:  Objection, Your            10:39:58

17   Honor, this is hearsay.                             10:39:59

18            THE COURT:  Sustained.                     10:40:02

19            MR. SAULSBURY:  Can you take down          10:40:05

20   the slide, please.                                  10:40:07

21   BY MR. SLAYDEN:                                     10:40:12

22       Q.   Mr. McNamara, would it surprise you       10:40:16

23   that he has a master's degree in EE?                10:40:17

24       A.   No, it wouldn't surprise me.              10:40:21

TRIAL - VOLUME 5

Page 123

```
 1      Q.    Okay.                                    10:40:22

 2            And as you stated, you already           10:40:23

 3   knew he was a lawyer; right?                      10:40:25

 4      A.    Yes.                                     10:40:26

 5      Q.    So he does have a master's degree in     10:40:27

 6   EE from Johns Hopkins.                            10:40:30

 7            Do you recognize Johns Hopkins?          10:40:32

 8      A.    I've heard of it, yeah.                  10:40:33

 9            MR. SAULSBURY:  Objection, Your          10:40:36

10   Honor.  Sidebar, please.                         10:40:37

11            (Whereupon, a discussion was held        10:40:37

12   at sidebar as follows:                           10:42:03

13            MR. SAULSBURY:  He is just reading       10:42:03

14   hearsay into the record.  This is not relevant   10:42:03

15   to anything.                                     10:42:03

16            THE COURT:  What is it relevant          10:42:03

17   to?                                              10:42:03

18            MR. SLAYDEN:  It has a relevance         10:42:03

19   to show that the panel judges at the patent      10:42:03

20   office, the jury clearly doesn't know who they   10:42:03

21   are, are not only lawyers, but they have EE      10:42:03

22   degrees and master's degrees and are highly      10:42:03

23   competent to review these type of technical      10:42:03

24   matters.                                         10:42:03
```

Page 124

1    THE COURT:  I am not going to get                    10:42:03

2    into -- I am not going to have the jury pass          10:42:03

3    judgment on whether or not the judges of PTAB         10:42:03

4    are qualified or what their qualifications            10:42:03

5    are.  I don't think that's an appropriate area        10:42:03

6    of inquiry, so I'll sustain that objection.           10:42:03

7    MR. SLAYDEN:  I am done.  I am                         10:42:03

8    about to move on anyway.                              10:42:03

9    THE COURT:  Well, if you are about                     10:42:03

10   to move on, are you pivoting subjects, because        10:42:03

11   I just want to know when we should take a             10:42:03

12   break.  We have gone over an hour-and-a-half.         10:42:03

13   MR. SLAYDEN:  Can I check my notes                     10:42:03

14   real quick to see where I am?                         10:42:03

15   THE COURT:  Yes.                                       10:42:07

16   (Whereupon, the discussion at                          10:42:07

17   sidebar concluded.)                                   10:42:09

18   MR. SLAYDEN:  We can finish up and                     10:42:17

19   then it will be a good time to take a break in        10:42:19

20   a minute.  I've got a few more questions.             10:42:22

21   THE COURT:  Okay.  Do that.  Just                      10:42:24

22   let me know so we can take a break.                   10:42:26

23   MR. SLAYDEN:  All right.  So let's                     10:42:29

24   go back to Slide 15.                                  10:42:30

TRIAL - VOLUME 5

Page 125

```
 1    BY MR. SLAYDEN:                                  10:42:40

 2        Q.    And just to refresh, Judge McNamara    10:42:42

 3    and these other two judges all reviewed the      10:42:45

 4    state of the prior art you submitted, which      10:42:48

 5    included the Dickens patent you assert here,     10:42:50

 6    and disagreed with you and did not cancel        10:42:52

 7    claims 23 through 25?                            10:42:56

 8        A.    That's correct.                        10:42:57

 9        Q.    Now, let's look at a few things that   10:43:04

10    the three judges said about your declaration.    10:43:06

11            MR. SLAYDEN:  Can we go to Slide         10:43:09

12    17, and I will read it.                          10:43:11

13    BY MR. SLAYDEN:                                  10:43:21

14        Q.    "Mr. Garney's reliance on paragraphs   10:43:22

15    4 and 17 of Exhibit 1052 provide no support      10:43:24

16    for his assertion that enumeration is among      10:43:27

17    the conventional operations that must be         10:43:31

18    performed for each switch between connected      10:43:33

19    hosts.  The word 'enumeration' never appears     10:43:36

20    in Exhibit 1052."                                10:43:41

21            Do you remember that?                    10:43:45

22        A.    I don't remember that, but I'd like    10:43:46

23    to see what Exhibit 1052 is to understand the    10:43:48

24    context.                                         10:43:51
```

TRIAL - VOLUME 5

Page 126

| | | |
|---|---|---|
| 1 | Q.   That's the three judges that wrote | 10:43:52 |
| 2 | that; right? | 10:43:53 |
| 3 | A.   I don't know if they all wrote it.  I | 10:43:54 |
| 4 | would assume at least one of them wrote it. | 10:43:56 |
| 5 | MR. SLAYDEN:  All right.  Let's go | 10:43:59 |
| 6 | to Slide 18. | 10:44:00 |
| 7 | BY MR. SLAYDEN: | 10:44:03 |
| 8 | Q.   Slide 18, the judges are again | 10:44:08 |
| 9 | commenting on your 89-page document.  "We | 10:44:11 |
| 10 | remain unpersuaded by this argument. | 10:44:16 |
| 11 | Initially, we note Mr. Garney's testimony in | 10:44:19 |
| 12 | this regard is unsupported by any facts or | 10:44:21 |
| 13 | data and, thus, is deserving of little | 10:44:24 |
| 14 | weight." | 10:44:28 |
| 15 | A.   Sure.  This is with regard to some | 10:44:28 |
| 16 | particular claim that was before the '243. | 10:44:30 |
| 17 | Q.   It basically says you made arguments | 10:44:36 |
| 18 | and testimony that had no factual basis? | 10:44:38 |
| 19 | A.   That they could find in the documents | 10:44:40 |
| 20 | they had at hand. | 10:44:42 |
| 21 | MR. SLAYDEN:  So let's go to Slide | 10:44:52 |
| 22 | 19. | 10:44:54 |
| 23 | BY MR. SLAYDEN: | 10:44:55 |
| 24 | Q.   Now, you stated earlier, but I think | 10:44:58 |

TRIAL - VOLUME 5

Page 127

| | | |
|---|---|---|
| 1 | you might have refreshed your recollection, | 10:45:01 |
| 2 | the judges didn't agree with you on claims 23 | 10:45:03 |
| 3 | through 25 that we are asserting here; | 10:45:06 |
| 4 | correct? | 10:45:09 |
| 5 | A.   They didn't invalidate those claims, | 10:45:09 |
| 6 | yes. | 10:45:11 |
| 7 | Q.   And you asserted Dickens as your base | 10:45:11 |
| 8 | reference in that proceeding? | 10:45:14 |
| 9 | A.   That was one of the things I | 10:45:14 |
| 10 | asserted, yes. | 10:45:16 |
| 11 | Q.   There's actually more, wasn't there? | 10:45:16 |
| 12 | A.   Sure. | 10:45:18 |
| 13 | Q.   Like Japanese art and art from around | 10:45:19 |
| 14 | the world.  And right there it says it, it | 10:45:23 |
| 15 | says, "23 through -- 22 through 25 have not | 10:45:28 |
| 16 | been shown by Aptiv and Mr. Garney to be | 10:45:34 |
| 17 | unpatentable"; correct? | 10:45:37 |
| 18 | A.   With regard to the material they had, | 10:45:39 |
| 19 | yes. | 10:45:40 |
| 20 | Q.   Yeah. | 10:45:40 |
| 21 | MR. SLAYDEN:  Now, let's go to | 10:45:46 |
| 22 | Slide 20. | 10:45:47 |
| 23 | BY MR. SLAYDEN: | 10:45:49 |
| 24 | Q.   So you are not -- you weren't | 10:45:50 |

Page 128

| | | |
|---|---|---|
| 1 | deterred by the three judges disagreeing with | 10:45:51 |
| 2 | you? | 10:45:56 |
| 3 | A.   Well, it is a standard process. | 10:45:56 |
| 4 | Q.   You appealed it? | 10:46:00 |
| 5 | A.   Sure.  Well, Aptiv's lawyers appealed | 10:46:01 |
| 6 | it.  I didn't do the legal stuff. | 10:46:04 |
| 7 | Q.   You didn't help them?  You didn't | 10:46:07 |
| 8 | advise them? | 10:46:09 |
| 9 | A.   Well, I gave them my opinion with | 10:46:09 |
| 10 | regard to it, but I don't know all the legal | 10:46:12 |
| 11 | ins and outs. | 10:46:14 |
| 12 | Q.   But I guess if they appealed it, you | 10:46:15 |
| 13 | would agree with me that Aptiv must have been | 10:46:17 |
| 14 | asserting that the three judges at the patent | 10:46:19 |
| 15 | office got it wrong about claims 23 through | 10:46:22 |
| 16 | 25? | 10:46:27 |
| 17 | A.   I think -- I mean, the typical part | 10:46:27 |
| 18 | of the IPR is to go back and forth and the | 10:46:29 |
| 19 | judges have opinions and make observations and | 10:46:32 |
| 20 | then the petitioner is allowed to contest | 10:46:34 |
| 21 | those as a part of that whole process.  So | 10:46:37 |
| 22 | yeah, they thought they had some more material | 10:46:40 |
| 23 | that the patent board had not understood. | 10:46:41 |
| 24 | Q.   Okay.  I don't understand that. | 10:46:44 |

Page 129

| | | |
|---|---|---|
| 1 | My question was simply -- | 10:46:46 |
| 2 | A.   Well, you are a lawyer, I'm not. | 10:46:48 |
| 3 | Q.   My question was simply that Aptiv | 10:46:50 |
| 4 | appealed the decisions of the three patent | 10:46:56 |
| 5 | judges; correct? | 10:47:00 |
| 6 | A.   Sure.   That's a part of the normal | 10:47:00 |
| 7 | process. | 10:47:03 |
| 8 | Q.   And it must have disagreed with what | 10:47:03 |
| 9 | the judges did; correct? | 10:47:05 |
| 10 | A.   Well, they were calling attention to | 10:47:06 |
| 11 | things that they may not have considered. | 10:47:07 |
| 12 | Q.   And so they were saying the patent | 10:47:09 |
| 13 | judges got it wrong, they just missed it; | 10:47:11 |
| 14 | right? | 10:47:13 |
| 15 | A.   They were respectfully pointing out | 10:47:13 |
| 16 | things that they weren't sure the patent board | 10:47:15 |
| 17 | had understood. | 10:47:16 |
| 18 | Q.   Right. | 10:47:17 |
| 19 | But they were basically saying the | 10:47:18 |
| 20 | judges got it wrong? | 10:47:20 |
| 21 | A.   I wouldn't characterize it that way. | 10:47:21 |
| 22 | That implies that we know better than that | 10:47:22 |
| 23 | what we were presenting. | 10:47:25 |
| 24 | Q.   Why would you appeal the decision if | 10:47:26 |

TRIAL - VOLUME 5

Page 130

| | | |
|---|---|---|
| 1 | you agreed with it? | 10:47:27 |
| 2 | A. We wanted to make sure they had | 10:47:28 |
| 3 | understood what we were trying to say. | 10:47:30 |
| 4 | Q. Okay. | 10:47:34 |
| 5 | MR. SLAYDEN: Let's go to Slide 23 | 10:47:35 |
| 6 | or 24, I think. Sorry. It should be the | 10:47:38 |
| 7 | affirmance. | 10:47:44 |
| 8 | BY MR. SLAYDEN: | 10:47:44 |
| 9 | Q. Now, that appeal resulted in this | 10:47:45 |
| 10 | ruling. Have you ever seen that before? | 10:47:47 |
| 11 | A. I am not sure that I have. I don't | 10:47:49 |
| 12 | remember. | 10:47:51 |
| 13 | Q. Okay. | 10:47:51 |
| 14 | Well, that's the -- do you know | 10:47:52 |
| 15 | who the Court of Appeals for the Federal | 10:47:54 |
| 16 | Circuit is? | 10:47:56 |
| 17 | A. I've heard of it. | 10:47:57 |
| 18 | Q. That's the highest Patent Appeals | 10:47:58 |
| 19 | Court in America? | 10:48:00 |
| 20 | A. Yes. | 10:48:00 |
| 21 | Q. Okay. | 10:48:01 |
| 22 | And they, like the PTAB judges -- | 10:48:01 |
| 23 | I'm sorry, PTAB, patent office judges, we call | 10:48:04 |
| 24 | it PTAB, there's three of them; right, on this | 10:48:07 |

TRIAL - VOLUME 5

Page 131

```
 1   one you see?                                    10:48:11

 2       A.   It seems to be, yes.                   10:48:12

 3       Q.   Okay.                                  10:48:13

 4            And that's the entire opinion          10:48:14

 5   stamped "Affirmed."  There's no reason to       10:48:20

 6   write anything.  Do you have an understanding   10:48:23

 7   of what that means?                             10:48:25

 8       A.   Not legally, no.                       10:48:27

 9       Q.   That means they agree with everything  10:48:29

10   the three patent judges did.                    10:48:31

11       A.   Okay.                                  10:48:33

12            MR. SAULSBURY:  Objection, Your        10:48:34

13   Honor.                                          10:48:35

14            THE COURT:  Sustained.                 10:48:35

15            Go ahead.                              10:48:37

16            MR. SLAYDEN:  Now, let's go --         10:48:41

17   BY MR. SLAYDEN:                                 10:48:45

18       Q.   And these three judges, you know how   10:48:46

19   they got that position?                         10:48:47

20       A.   No.                                    10:48:48

21       Q.   They are appointed by the president.   10:48:49

22            MR. SAULSBURY:  Objection, Your        10:48:52

23   Honor.                                          10:48:53

24            THE COURT:  Sustained.                 10:48:53
```

TRIAL - VOLUME 5

Page 132

```
 1    BY MR. SLAYDEN:                                 10:48:57

 2       Q.   And these three judges studied          10:48:58

 3    everything that the patent office judges        10:48:59

 4    did --                                           10:49:01

 5            MR. SAULSBURY:  Same objection.          10:49:02

 6    BY MR. SLAYDEN:                                  10:49:04

 7       Q.   -- and they agreed.                      10:49:04

 8            THE COURT:  Sustained.                   10:49:05

 9    BY MR. SLAYDEN:                                  10:49:09

10       Q.   But the end result was that you and      10:49:10

11    Aptiv failed to invalidate claims 23 through     10:49:12

12    25 in the IPR proceeding; correct?               10:49:15

13       A.   I think that's correct.                  10:49:18

14       Q.   And so at this point, we've had three    10:49:24

15    of the Highest Court Judges on patents in        10:49:27

16    America affirm the decision by the original      10:49:32

17    two patent examiners that issued claims 23       10:49:37

18    through 25 back in 2009; correct?                10:49:40

19       A.   Looking at the physical -- I mean,       10:49:43

20    looking at the documents that they were          10:49:44

21    allowed to look at, yes.                         10:49:46

22       Q.   I understand.                            10:49:47

23            And basically all of them disagree       10:49:53

24    with your 89-page declaration; right?            10:49:56
```

TRIAL - VOLUME 5

Page 133

| | | |
|---|---|---|
| 1 | MR. SAULSBURY:  Objection, Your | 10:49:58 |
| 2 | Honor. | 10:49:59 |
| 3 | THE COURT:  Sustained. | 10:49:59 |
| 4 | MR. SLAYDEN:  They didn't agree | 10:50:03 |
| 5 | with him. | 10:50:04 |
| 6 | Let's go to Slide 25. | 10:50:05 |
| 7 | MR. SAULSBURY:  Your Honor, | 10:50:07 |
| 8 | sidebar, please. | 10:50:07 |
| 9 | THE COURT:  All right. | 10:50:08 |
| 10 | (Whereupon, a discussion was held | 10:50:08 |
| 11 | at sidebar as follows: | 10:50:08 |
| 12 | MR. SAULSBURY:  Your Honor, this | 10:51:50 |
| 13 | doesn't have any relevance to the issues. | 10:51:50 |
| 14 | Additionally, after Your Honor sustained the | 10:51:50 |
| 15 | last objection, counsel stated they didn't | 10:51:50 |
| 16 | agree with it, right?  He supplied the hearsay | 10:51:50 |
| 17 | that was -- the -- that was objected to and it | 10:51:50 |
| 18 | was sustained. | 10:51:50 |
| 19 | THE COURT:  Well, okay.  When you | 10:51:50 |
| 20 | say this doesn't have any relevance, do you | 10:51:50 |
| 21 | mean the last set of questions?  It sounds | 10:51:50 |
| 22 | like we are about to do something different. | 10:51:50 |
| 23 | MR. SAULSBURY:  The last line of | 10:51:50 |
| 24 | questions about -- | 10:51:50 |

TRIAL - VOLUME 5

Page 134

| | | |
|---|---|---|
| 1 | THE COURT:  I agree, and that's | 10:51:50 |
| 2 | why I sustained the objections. | 10:51:50 |
| 3 | MR. SAULSBURY:  I mean, we also | 10:51:50 |
| 4 | can't have counsel answering his own question | 10:51:50 |
| 5 | in responses to the same, Judge. | 10:51:50 |
| 6 | (Brief pause.) | 10:51:50 |
| 7 | THE COURT:  Okay.  Yeah, I mean, | 10:51:50 |
| 8 | the transcript does say it, so I'll -- I | 10:51:50 |
| 9 | wasn't entirely sure what was said, but the | 10:51:50 |
| 10 | transcript does say it, so I'll strike it and | 10:51:50 |
| 11 | give an instruction to the jury. | 10:51:50 |
| 12 | MR. SLAYDEN:  I have two more | 10:51:50 |
| 13 | questions. | 10:51:50 |
| 14 | THE COURT:  I'm sorry? | 10:51:50 |
| 15 | MR. SLAYDEN:  I have, like, two | 10:51:50 |
| 16 | more questions. | 10:51:50 |
| 17 | THE COURT:  Okay.  All right. | 10:51:50 |
| 18 | (Whereupon, the discussion at | 10:51:50 |
| 19 | sidebar concluded.) | 10:51:50 |
| 20 | THE COURT:  So before we resume -- | 10:51:53 |
| 21 | I'm sorry, are you ready, Rose? | 10:51:56 |
| 22 | Ladies and gentlemen, before we | 10:51:59 |
| 23 | resume, there was, I think, some short | 10:51:59 |
| 24 | commentary by counsel at the sort of end of | 10:52:02 |

TRIAL - VOLUME 5

Page 135

| | | |
|---|---|---|
| 1 | that last line of questions and you should | 10:52:06 |
| 2 | disregard that.  I am going to order it | 10:52:07 |
| 3 | stricken from the record.  Disregard it, do | 10:52:09 |
| 4 | not consider it. | 10:52:12 |
| 5 | MR. SLAYDEN:  Can we go to Slide | 10:52:13 |
| 6 | 25, Mr. Ferrer. | 10:52:14 |
| 7 | BY MR. SLAYDEN: | 10:52:20 |
| 8 | Q.   And this is from the IPR position | 10:52:21 |
| 9 | that your 89-page document supported. | 10:52:23 |
| 10 | A.   Say again what this is?  Sorry. | 10:52:25 |
| 11 | Q.   This is from the IPR position that | 10:52:28 |
| 12 | challenged the '243 Patent that you were | 10:52:30 |
| 13 | involved in that you submitted a declaration | 10:52:32 |
| 14 | in. | 10:52:34 |
| 15 | A.   Yeah, I don't remember this page, but | 10:52:34 |
| 16 | it could be. | 10:52:35 |
| 17 | Q.   It is. | 10:52:38 |
| 18 | And it shows what was challenged, | 10:52:38 |
| 19 | and you had six grounds and five of them were | 10:52:41 |
| 20 | based on Dickens, the same grounds you are | 10:52:48 |
| 21 | submitting today; correct? | 10:52:51 |
| 22 | A.   Okay. | 10:52:55 |
| 23 | Q.   And not only were they one of two | 10:52:57 |
| 24 | grounds, but there are obviousness grounds in | 10:53:00 |

TRIAL - VOLUME 5

Page 136

| | | |
|---|---|---|
| 1 | combination with various references from | 10:53:03 |
| 2 | around the world, Japanese patent application, | 10:53:06 |
| 3 | application in ground 6 and the claims | 10:53:11 |
| 4 | challenge, if you'll notice, and I guess one, | 10:53:14 |
| 5 | two, three, four of those grounds include the | 10:53:17 |
| 6 | claims that were -- that are asserted here; | 10:53:21 |
| 7 | correct? | 10:53:24 |
| 8 | A.   Okay. | 10:53:24 |
| 9 | MR. SLAYDEN:  Go to Slide 26. | 10:53:33 |
| 10 | BY MR. SLAYDEN: | 10:53:39 |
| 11 | Q.   Do you recognize that? | 10:53:40 |
| 12 | A.   I think so. | 10:53:41 |
| 13 | Q.   And what is it? | 10:53:42 |
| 14 | A.   I think it's the judgment of the | 10:53:43 |
| 15 | patent board declaring which claims were | 10:53:46 |
| 16 | invalidated and which claims are still | 10:53:48 |
| 17 | patentable. | 10:53:50 |
| 18 | Q.   And where does that reside now? | 10:53:51 |
| 19 | A.   To be honest, I don't know. | 10:53:53 |
| 20 | Q.   It resides at the last page of the | 10:53:55 |
| 21 | '243 Patent. | 10:53:58 |
| 22 | A.   Okay. | 10:53:59 |
| 23 | Q.   That's what happens once it's | 10:53:59 |
| 24 | affirmed, it's in the last page of the patent. | 10:54:01 |

Page 137

1       A.   Okay.                                         10:54:05

2              MR. SLAYDEN:  Your Honor, it would          10:54:08

3       be a good time to take a break.                    10:54:08

4              THE COURT:  All right.                       10:54:10

5              Take a mid-morning break.  Let's            10:54:11

6       keep it to -- be back here at 11, so seven or      10:54:13

7       eight minutes.  I want to try to get through       10:54:17

8       the evidence today.  Okay.                         10:54:19

9              (Whereupon, the jury was excused            10:54:21

10      from the courtroom.                                10:54:23

11             THE COURT:  Okay.  Plan to be back          10:54:40

12      at 11.  Okay.                                      10:54:43

13             (Whereupon, a five-minute recess            10:54:45

14      was taken at 10:55 a.m.)                           10:54:47

15             THE COURT CLERK:  All rise.                 11:01:28

16             THE COURT:  All right.  You can             11:03:31

17      get the jury, please.                              11:03:33

18             (Whereupon, the jury entered the            11:03:56

19      courtroom.                                         11:03:59

20             THE COURT:  All right.  Please be           11:04:02

21      seated.                                            11:04:03

22             Mr. Slayden, you can resume.                11:04:03

23             MR. SLAYDEN:  Thank you, Your               11:04:06

24      Honor.                                             11:04:08

Page 138

```
 1   BY MR. SLAYDEN:                                11:04:08

 2      Q.   Mr. Garney, do you have something to    11:04:12

 3   drink?                                          11:04:15

 4      A.   I do.  I hope it will be enough.        11:04:15

 5      Q.   Okay.                                   11:04:20

 6           Switching gears, no pun intended,       11:04:21

 7   going to switch, switch prior art.              11:04:26

 8           So in your opening report, you          11:04:28

 9   state that, and you mentioned earlier today,    11:04:31

10   that you are looking at a US-98 and Belkin      11:04:34

11   switches.                                       11:04:38

12           Do you remember that?                   11:04:39

13      A.   Yes.                                    11:04:40

14      Q.   Okay.                                   11:04:40

15           And in your report, you say,            11:04:41

16   "Throughout this discussion, I applied the      11:04:43

17   same analysis to the US-98 and the Belkin       11:04:45

18   systems"; correct?                              11:04:49

19      A.   Yes.  I would have to see it, but it    11:04:50

20   sounds right.                                   11:04:53

21      Q.   It says, "Throughout this discussion,   11:04:55

22   I applied the same analysis to the US-98 and    11:04:57

23   Belkin systems."  I have it up there.  It's at  11:05:00

24   footnote 401 at page 90, if you want to look    11:05:03
```

TRIAL - VOLUME 5

Page 139

| | | |
|---|---|---|
| 1 | at it, to hold you to my representation; | 11:05:08 |
| 2 | page 90, footnote 401. | 11:05:14 |
| 3 | A.   Page 90.  Footnote 401? | 11:05:16 |
| 4 | Q.   Yes, sir.  And what's it say there? | 11:05:25 |
| 5 | A.   Just a minute.  Let me get oriented. | 11:05:28 |
| 6 | Okay.  What was your question? | 11:05:46 |
| 7 | Q.   I was just confirming that throughout | 11:05:48 |
| 8 | your report and testing of these two devices, | 11:05:51 |
| 9 | and then your analysis of the two devices, you | 11:05:53 |
| 10 | say, "I applied the same analysis to the US-98 | 11:05:56 |
| 11 | and the Belkin systems"; correct? | 11:05:59 |
| 12 | A.   That's what it says, yes. | 11:06:03 |
| 13 | Q.   Okay. | 11:06:04 |
| 14 | And the reason why you applied the | 11:06:05 |
| 15 | same analysis is because you concluded, this | 11:06:07 |
| 16 | is also at footnote 401, that they are "nearly | 11:06:10 |
| 17 | identical in operation." | 11:06:15 |
| 18 | Do you see that in 401? | 11:06:17 |
| 19 | A.   It goes on to say other things. | 11:06:19 |
| 20 | Q.   It talks about why they are similar? | 11:06:23 |
| 21 | A.   Yeah. | 11:06:26 |
| 22 | Q.   All right.  Okay. | 11:06:26 |
| 23 | And in this case, you assert that | 11:06:27 |
| 24 | either a US-98 or a Belkin switch, in | 11:06:33 |

TRIAL - VOLUME 5

Page 140

| | | |
|---|---|---|
| 1 | combination with Dickens, invalidates Mr. | 11:06:37 |
| 2 | Bohm's 23 through 25 claims? | 11:06:40 |
| 3 | A.   Yes. | 11:06:42 |
| 4 | Q.   Okay. | 11:06:43 |
| 5 | And that Dickens, as we discussed | 11:06:45 |
| 6 | earlier today, is the same one you asserted in | 11:06:48 |
| 7 | the IPR; correct? | 11:06:50 |
| 8 | A.   Yes. | 11:06:51 |
| 9 | Q.   And that's the same one we went over | 11:06:56 |
| 10 | where the appeals happened and the Federal | 11:06:58 |
| 11 | Circuit ruled, and in the end, it was held | 11:07:02 |
| 12 | that Dickens did not invalidate claims 23 | 11:07:04 |
| 13 | through 25; right? | 11:07:07 |
| 14 | A.   Yes. | 11:07:08 |
| 15 | Q.   Okay. | 11:07:10 |
| 16 | MR. SLAYDEN:  Now, Mr. Ferrer, can | 11:07:12 |
| 17 | you pull up Exhibit 1, please. | 11:07:16 |
| 18 | BY MR. SLAYDEN: | 11:07:18 |
| 19 | Q.   Do you recognize that? | 11:07:19 |
| 20 | A.   Unfortunately, yes. | 11:07:21 |
| 21 | Q.   After five years -- five years of | 11:07:22 |
| 22 | studying it. | 11:07:24 |
| 23 | Now, and I know you have the | 11:07:25 |
| 24 | patent, and do you see the cited references | 11:07:32 |

TRIAL - VOLUME 5

Page 141

| | | |
|---|---|---|
| 1 | down there that Mr. Ferrer is highlighting? | 11:07:36 |
| 2 | A.   Yep. | 11:07:41 |
| 3 | Q.   Okay. | 11:07:41 |
| 4 | And what are those -- what is that | 11:07:42 |
| 5 | about? | 11:07:46 |
| 6 | A.   I believe that it's the U.S. print | 11:07:47 |
| 7 | documents that may be relevant to the | 11:07:52 |
| 8 | examiners in their determination if this is | 11:07:54 |
| 9 | patentable material or not. | 11:07:56 |
| 10 | Q.   Correct. | 11:07:57 |
| 11 | And how do they get there? | 11:07:58 |
| 12 | A.   How does what get there? | 11:08:01 |
| 13 | Q.   How do they get to this development | 11:08:02 |
| 14 | in the patent? | 11:08:05 |
| 15 | A.   I believe it is a combination of the | 11:08:05 |
| 16 | inventor may provide some and the patent | 11:08:07 |
| 17 | examiners may collect them during their | 11:08:07 |
| 18 | examination. | 11:08:11 |
| 19 | Q.   And you are an inventor, and as an | 11:08:11 |
| 20 | inventor, when you file the patent application | 11:08:13 |
| 21 | at the patent office, you have a duty of | 11:08:16 |
| 22 | candor; right? | 11:08:18 |
| 23 | A.   Correct. | 11:08:19 |
| 24 | Q.   And that duty of candor includes | 11:08:19 |

TRIAL - VOLUME 5

Page 142

1    disclosing everything that you know about            11:08:21

2    prior art or publications so the patent office       11:08:23

3    would be aware of it so they could consider it        11:08:26

4    and determine whether you should get a patent;        11:08:29

5    correct?                                              11:08:31

6        A.   Yes.                                         11:08:31

7        Q.   Now --                                       11:08:34

8             MR. SLAYDEN:  Mr. Ferrer, just               11:08:35

9    move down to Mr. Garney's cite there.  It is          11:08:36

10   the third one in the list.                            11:08:39

11   BY MR. SLAYDEN:                                       11:08:48

12       Q.   That's you; right?                           11:08:49

13       A.   Yeah.  Obviously, et al.                     11:08:49

14       Q.   Yeah, of course.                             11:08:52

15            And you are not asserting that               11:08:53

16   that patent invalidates claims 23 through 25          11:08:55

17   in this case; right?                                  11:08:59

18       A.   That's correct.                              11:09:01

19       Q.   And you are right, by the way, on --         11:09:02

20   I wanted to tell you --                               11:09:05

21            MR. SLAYDEN:  Mr. Ferrer, if you             11:09:07

22   will zoom out and go...                               11:09:08

23   BY MR. SLAYDEN:                                       11:09:12

24       Q.   As you see in the right-hand column,         11:09:13

TRIAL - VOLUME 5

Page 143

| | | |
|---|---|---|
| 1 | it says continued up there. | 11:09:15 |
| 2 | Do you see that? | 11:09:16 |
| 3 | A.   I do, yes. | 11:09:18 |
| 4 | MR. SLAYDEN:  And you don't need | 11:09:20 |
| 5 | to highlight it, Mr. Ferrer.  So we are going | 11:09:21 |
| 6 | to turn the page.  Oh, that's a lot of prior | 11:09:23 |
| 7 | art. | 11:09:28 |
| 8 | THE WITNESS:  For some patents, | 11:09:29 |
| 9 | I've seen a lot more. | 11:09:30 |
| 10 | BY MR. SLAYDEN: | 11:09:32 |
| 11 | Q.   Oh, really?  Okay. | 11:09:32 |
| 12 | Now, as you mentioned, some of the | 11:09:37 |
| 13 | art is identified and listed there because Mr. | 11:09:40 |
| 14 | Bohm and inventors disclosed it and some of it | 11:09:44 |
| 15 | is identified by the patent office after they | 11:09:49 |
| 16 | look at what's disclosed and see if they can | 11:09:52 |
| 17 | find anything else? | 11:09:54 |
| 18 | A.   That's my understanding of it. | 11:09:54 |
| 19 | Q.   And those references, since I know | 11:09:56 |
| 20 | you are an inventor and have some patents, are | 11:09:58 |
| 21 | designated with an asterisk. | 11:10:01 |
| 22 | Do you see that; the first one is | 11:10:03 |
| 23 | US/Canada? | 11:10:07 |
| 24 | A.   I think as the star at the bottom | 11:10:07 |

TRIAL - VOLUME 5

Page 144

1   shows, in the second column, are actually          11:10:09

2   patents that the examiners cited during this       11:10:11

3   examination.                                        11:10:15

4       Q.   Oh, cited.  You're right.  They            11:10:16

5   applied.  You're right.  Those are the ones         11:10:16

6   that actually applied to the claims; correct?       11:10:20

7       A.   That's my understanding, yeah.             11:10:22

8       Q.   But that means they identified those       11:10:26

9   as relevant to Mr. Bohm's claims; correct?          11:10:28

10      A.   That's my understanding in general.        11:10:31

11           MR. SLAYDEN:  Now, Mr. Ferrer, can         11:10:54

12  you go to the other -- well, let me ask Mr.         11:10:55

13  Garney first.                                        11:10:58

14  BY MR. SLAYDEN:                                      11:10:59

15      Q.   Now, there is another column after         11:10:59

16  you finish with all the U.S. patents, and then     11:11:02

17  what are these down here at the bottom after       11:11:04

18  the U.S. patents --                                 11:11:06

19           MR. SLAYDEN:  Up, Mr. Ferrer.              11:11:08

20  BY MR. SLAYDEN:                                      11:11:11

21      Q.   -- that have a different number next      11:11:11

22  to them, Kanai, Kim, Lu.                            11:11:12

23           What are those, Mr. Garney?                11:11:16

24      A.   I'm not positive, but I believe it        11:11:17

Page 145

| | | |
|---|---|---|
| 1 | means those patents are still in progress, but | 11:11:19 |
| 2 | again, it's been awhile since I have looked at | 11:11:22 |
| 3 | the -- | 11:11:25 |
| 4 | Q.   Right.   They are published | 11:11:25 |
| 5 | applications. | 11:11:27 |
| 6 | So it includes not only issued | 11:11:27 |
| 7 | applications, but the published applications | 11:11:30 |
| 8 | that may be sitting and waiting to issue? | 11:11:31 |
| 9 | A.   That's correct. | 11:11:33 |
| 10 | Q.   Or it could be abandoned.   They | 11:11:34 |
| 11 | search for those; too; right? | 11:11:36 |
| 12 | A.   That's correct. | 11:11:38 |
| 13 | Q.   And then the next section, Mr. | 11:11:38 |
| 14 | Ferrer, is foreign patent documents. | 11:11:41 |
| 15 | MR. SLAYDEN:  And just highlight | 11:11:45 |
| 16 | the box down there and let's look at | 11:11:46 |
| 17 | underneath it.  Yeah. | 11:11:49 |
| 18 | BY MR. SLAYDEN: | 11:11:51 |
| 19 | Q.   So this is showing that not only did | 11:11:53 |
| 20 | the search include U.S. patents, U.S. patent | 11:11:56 |
| 21 | publications, including one of your patents, | 11:11:58 |
| 22 | but there are, let's see, a European patent up | 11:12:02 |
| 23 | top, that's what EP stands for, GB would be | 11:12:05 |
| 24 | Great Britain, it seemed like Japan was very | 11:12:10 |

Page 146

| | | |
|---|---|---|
| 1 | heavy into this art, and then Korea also; | 11:12:13 |
| 2 | right? | 11:12:16 |
| 3 | A.   That's correct. | 11:12:16 |
| 4 | Q.   Okay. | 11:12:16 |
| 5 | A.   I understand. | 11:12:17 |
| 6 | MR. SLAYDEN:  Mr. Ferrer, if you | 11:12:19 |
| 7 | can go back out and go to the next column of | 11:12:21 |
| 8 | other publications at the top. | 11:12:23 |
| 9 | BY MR. SLAYDEN: | 11:12:27 |
| 10 | Q.   Mr. Garney, what's that? | 11:12:28 |
| 11 | A.   That's non-patent material, but other | 11:12:28 |
| 12 | documents that would have been provided to the | 11:12:31 |
| 13 | patent office by the inventor, or I expect | 11:12:34 |
| 14 | they could have been discovered by the | 11:12:37 |
| 15 | examiner, too.  I'm not positive on that part. | 11:12:40 |
| 16 | Q.   It would be things like application | 11:12:42 |
| 17 | notes for certain products in the industry? | 11:12:44 |
| 18 | A.   Yeah, it could be news articles, | 11:12:46 |
| 19 | almost anything that's printed. | 11:12:48 |
| 20 | Q.   Anything that's printed.  Okay. | 11:12:49 |
| 21 | Well, this -- | 11:12:51 |
| 22 | A.   I don't know what the legal | 11:12:52 |
| 23 | restrictions are because a person doesn't get | 11:12:53 |
| 24 | -- I don't believe they get what's printed. | 11:12:56 |

TRIAL - VOLUME 5

Page 147

| | | |
|---|---|---|
| 1 | Q.   I guess on the side where it says, | 11:12:58 |
| 2 | "publications," if it's published and it's not | 11:13:03 |
| 3 | a patent or patent application or foreign | 11:13:05 |
| 4 | patent, it probably falls into that bucket? | 11:13:07 |
| 5 | A.   I would agree with that. | 11:13:09 |
| 6 | Q.   Okay. | 11:13:10 |
| 7 | MR. SLAYDEN:  So, Mr. Ferrer, if | 11:13:12 |
| 8 | we go down about a third, it starts with | 11:13:14 |
| 9 | "Fred."  I guess he is the author. | 11:13:18 |
| 10 | BY MR. SLAYDEN: | 11:13:22 |
| 11 | Q.   And the title of that -- now, first | 11:13:22 |
| 12 | of all, it is a semiconductor company, so it's | 11:13:24 |
| 13 | not your basic run-of-the-mill retail product | 11:13:28 |
| 14 | probably. | 11:13:32 |
| 15 | Do you agree with that? | 11:13:33 |
| 16 | A.   I'm not intimately familiar with the | 11:13:34 |
| 17 | semiconductor, but it has semiconductor in the | 11:13:37 |
| 18 | name, so I would suspect that. | 11:13:39 |
| 19 | Q.   Well, let's read the title of it. | 11:13:41 |
| 20 | And I won't read the first digits of it, but | 11:13:43 |
| 21 | it says, "An analog switch permits USB 1.1 | 11:13:45 |
| 22 | switching." | 11:13:50 |
| 23 | Do you see that? | 11:13:50 |
| 24 | A.   I do. | 11:13:51 |

TRIAL - VOLUME 5

Page 148

```
 1      Q.    Okay.                                  11:13:51

 2            And probably can't go down to          11:13:53

 3   Target and buy one of those, can you?           11:13:57

 4      A.    I don't know.  It seems unlikely       11:14:00

 5   but...                                          11:14:04

 6      Q.    Probably a little bit more             11:14:04

 7   complicated than a retail product.              11:14:06

 8            Let's go to the next one right         11:14:07

 9   under it.  And that one is to a low power high  11:14:11

10   bandwidth USB switch dual SPDT                  11:14:21

11   multiplexer/demultiplexer, again Fairchild      11:14:26

12   Semiconductor, seven pages; and that wouldn't   11:14:30

13   be your common everyday stand-alone USB         11:14:32

14   switch, would it?                               11:14:35

15      A.    Probably not.                          11:14:36

16      Q.    Probably not.                          11:14:37

17            Okay.  And I guess if I haven't        11:14:38

18   made it clear, there is a theme here.           11:14:50

19   Paragraph 1, I am going to pull up, relates to  11:14:54

20   prior art switches.                             11:14:56

21      A.    My suspicion is many of them are just  11:14:57

22   electronic versions of a mechanical switch.     11:14:59

23      Q.    Oh, really.  Fairchild Semiconductor   11:15:02

24   is making mechanical switches?                  11:15:04
```

TRIAL - VOLUME 5

Page 149

1     A.   No, no, that is not what I said.         11:15:05

2  You're misrepresenting my testimony.              11:15:08

3     Q.   I'm just making sure that you are not    11:15:09

4  representing that you think Fairchild             11:15:11

5  Semiconductor is making a mechanical switch?      11:15:14

6     A.   That isn't what I said.                   11:15:16

7     Q.   Okay.  I -- I agree with you.             11:15:17

8           MR. SLAYDEN:  All right.  Let's          11:15:19

9  move -- let's see which one is that.  The next    11:15:20

10  one right underneath it, FS -- yeah, that's      11:15:30

11  the one we just had up, I believe.  The next     11:15:34

12  one, by the same...                              11:15:38

13  BY MR. SLAYDEN:                                   11:15:40

14     Q.   Okay.                                    11:15:41

15           This one is a low power full speed      11:15:41

16  USB switch, Fairchild Semiconductor.  It's       11:15:43

17  another prior art switch; correct?              11:15:50

18     A.   Could be.  Seems to be.                  11:15:54

19     Q.   Okay.                                    11:15:56

20           MR. SLAYDEN:  Zoom back out, Mr.         11:16:02

21  Ferrer.  Go down to USB 2524.  It starts with    11:16:03

22  USB 2524.                                         11:16:08

23  BY MR. SLAYDEN:                                   11:16:13

24     Q.   And that one sounds really              11:16:14

TRIAL - VOLUME 5

Page 150

```
 1    interesting.  It says, "USB Multiswitch Hub,"        11:16:16

 2    and I think USB 2524 sounds like a chip.             11:16:25

 3              Do you recognize that?                     11:16:30

 4        A.   I don't.                                    11:16:31

 5        Q.   You don't know that chip number?            11:16:31

 6        A.   No.                                         11:16:33

 7        Q.   Okay.                                       11:16:33

 8        A.   Not that I can recall.                      11:16:34

 9        Q.   Do you see on the side, it says,            11:16:36

10    "SMSC"?                                              11:16:39

11        A.   I do.                                       11:16:40

12        Q.   Okay.                                       11:16:41

13              And that USB 2524 is a                     11:16:44

14    semiconductor produced by SMSC for USB               11:16:47

15    multi-switch hubs; right?                            11:16:52

16        A.   It could be.                                11:16:55

17        Q.   Yep.  Okay.                                 11:16:56

18              MR. SLAYDEN:  Move down to the             11:16:59

19    very bottom, Mr. Ferrer.  Very bottom.  Starts       11:17:00

20    with, "Belkin."  There it is.                        11:17:04

21    BY MR. SLAYDEN:                                      11:17:09

22        Q.   So that's the Belkin device that you        11:17:10

23    tested and are going to combine with Dickens         11:17:15

24    that was rejected by the patent office;              11:17:19
```

Page 151

```
 1    correct?                                    11:17:21

 2        A.   This is a review of the Belkin     11:17:21

 3    device, like a Yelp review.                 11:17:23

 4        Q.   Did you consider that?             11:17:25

 5        A.   Did I consider what, sir?          11:17:25

 6        Q.   The Belkin review.                 11:17:27

 7        A.   I did consider the Belkin review.  11:17:29

 8        Q.   Okay.                              11:17:31

 9             And how did that inform you?       11:17:31

10        A.   It gave me some indications of     11:17:34

11    potential devices that could be reused by the 11:17:36

12    patent examiner in his determination of the  11:17:42

13    patent allowance.                           11:17:45

14        Q.   So when the patent office does a   11:17:47

15    search in the patent records for a reference, 11:17:49

16    what does it use -- what does it find?  What  11:17:54

17    is the U.S. Patent Office going to find?      11:17:57

18        A.   I don't know.                      11:18:00

19        Q.   Are they going to find USB patents 11:18:01

20    and USB patent applications and publications; 11:18:03

21    correct?  That's what's in their database?    11:18:06

22        A.   I would suspect so, but I don't know. 11:18:08

23        Q.   Right.                             11:18:10

24             So this Belkin 4X4, which I have   11:18:10
```

Page 152

| | | |
|---|---|---|
| 1 | read in the prosecution history of the Bohm | 11:18:14 |
| 2 | patent, was submitted by Mr. Bohm? | 11:18:17 |
| 3 | A.   I believe that's my understanding. | 11:18:20 |
| 4 | Q.   Right. | 11:18:22 |
| 5 | And the reason why it did that, | 11:18:22 |
| 6 | everything they could find, they wanted to | 11:18:26 |
| 7 | make sure the patent office had all the | 11:18:29 |
| 8 | information and was fully informed before they | 11:18:31 |
| 9 | made the determination to grant his patent; | 11:18:33 |
| 10 | right? | 11:18:35 |
| 11 | A.   Well, they were only fully informed, | 11:18:35 |
| 12 | with regard to the information contained in | 11:18:37 |
| 13 | that review. | 11:18:39 |
| 14 | Q.   Correct.  I understand. | 11:18:39 |
| 15 | MR. SLAYDEN:  So let's back up a | 11:18:52 |
| 16 | little, Mr. Ferrer.  Can you go back to the | 11:18:54 |
| 17 | patent list, 6,141,719, and Mr. Rafferty. | 11:18:56 |
| 18 | May I approach? | 11:19:28 |
| 19 | THE COURT:  Yes. | 11:19:30 |
| 20 | THE WITNESS:  Thank you. | 11:19:35 |
| 21 | MR. SLAYDEN:  Yes, sir. | 11:19:38 |
| 22 | (Whereupon, Trial Exhibit 381 was | 11:19:38 |
| 23 | marked for identification.) | 11:19:43 |
| 24 | BY MR. SLAYDEN: | 11:19:43 |

TRIAL - VOLUME 5

Page 153

```
 1        Q.   Let me show you what's been marked,          11:19:44

 2   for identification purposes only, as                   11:19:46

 3   Exhibit 381.                                           11:19:49

 4            MR. SAULSBURY:  Thank you.  Quite              11:19:51

 5   all right.                                             11:19:53

 6   BY MR. SLAYDEN:                                        11:19:57

 7        Q.   And do you see the title of this             11:20:00

 8   patent?                                                11:20:01

 9        A.   I do.                                        11:20:02

10        Q.   What is it?                                  11:20:02

11        A.   USB Selector Switch.                         11:20:03

12        Q.   So again, another switch, but this           11:20:08

13   time a patent?                                         11:20:10

14        A.   Seems to be, yeah.                           11:20:11

15            (Whereupon, Trial Exhibit 388 was             11:20:11

16   marked for identification.)                            11:20:11

17   BY MR. SLAYDEN:                                        11:20:37

18        Q.   So I have handed you what's been             11:20:37

19   marked, as Exhibit 388, for identification             11:20:39

20   purposes.  And can you tell me what the title          11:20:41

21   of that patent is -- patent application               11:20:43

22   publication, sorry?                                    11:20:48

23        A.   KVM, which means keyboard video             11:20:49

24   mouse, and USB Peripheral Switch.                      11:20:52
```

TRIAL - VOLUME 5

Page 154

| | | |
|---|---|---|
| 1 | Q.   Okay. | 11:20:54 |
| 2 | So you remember what you said in | 11:21:21 |
| 3 | your report, and confirmed a few minutes ago, | 11:21:23 |
| 4 | that throughout this discussion, I applied the | 11:21:27 |
| 5 | same analysis to the US-98 and the Belkin | 11:21:30 |
| 6 | systems? | 11:21:34 |
| 7 | A.   Yes. | 11:21:34 |
| 8 | Q.   Okay. | 11:21:34 |
| 9 | And the reason you did that was | 11:21:35 |
| 10 | because the US-98 you relied upon here is | 11:21:37 |
| 11 | nearly identical in operation to footnote 401? | 11:21:40 |
| 12 | A.   Yes, I think so. | 11:21:45 |
| 13 | Q.   And in this case, you assert claims | 11:21:48 |
| 14 | 23 through 25 of Mr. Bohm's patent are invalid | 11:21:50 |
| 15 | over either this physical US-98 switch or the | 11:21:53 |
| 16 | physical Belkin switch; is that correct? | 11:21:58 |
| 17 | A.   No, it's only obvious in combination | 11:22:00 |
| 18 | with Dickens. | 11:22:02 |
| 19 | Q.   I understand.  I didn't mean to | 11:22:03 |
| 20 | misstate your position, but yes, obviously in | 11:22:05 |
| 21 | combination with Dickens. | 11:22:08 |
| 22 | And you would agree with me that, | 11:22:09 |
| 23 | as we just went through, the patent office | 11:22:11 |
| 24 | considered multiple switch patents and switch | 11:22:14 |

Page 155

| | | |
|---|---|---|
| 1 | publications before they granted Mr. Bohm's | 11:22:17 |
| 2 | patents? | 11:22:19 |
| 3 | A.   They did look at those -- I mean, it | 11:22:20 |
| 4 | seemed that they looked at those documents, | 11:22:22 |
| 5 | yes. | 11:22:24 |
| 6 | Q.   And as you agree, all those patents | 11:22:25 |
| 7 | and those publications got there because Mr. | 11:22:27 |
| 8 | Bohm told the patent office about them, except | 11:22:30 |
| 9 | for the ones the examiner found himself or | 11:22:32 |
| 10 | herself? | 11:22:35 |
| 11 | A.   Say that again. | 11:22:35 |
| 12 | Q.   And you agree with me that Mr. Bohm | 11:22:36 |
| 13 | submitted a lot of that prior art to the | 11:22:38 |
| 14 | patent office, except for the ones that the | 11:22:41 |
| 15 | examiner found him or herself? | 11:22:44 |
| 16 | A.   I don't know that all of the ones | 11:22:46 |
| 17 | that were not cited were provided by Mr. Bohm. | 11:22:47 |
| 18 | Q.   Right.  Fair enough. | 11:22:49 |
| 19 | But after considering all the | 11:22:52 |
| 20 | switch art, the two examiners granted Mr. Bohm | 11:22:57 |
| 21 | a patent and issued claims 23 through 25; | 11:23:02 |
| 22 | correct? | 11:23:05 |
| 23 | A.   Most of the switch art I've seen is | 11:23:05 |
| 24 | for electronic versions of mechanical | 11:23:08 |

TRIAL - VOLUME 5

Page 156

1    switches.                                          11:23:10

2        Q.    Electronic versions.  Right.             11:23:10

3              Now, as you just stated, it's your       11:23:12

4    assertion that -- let's take US-98 first --        11:23:24

5        A.    All right.                               11:23:29

6        Q.    -- in combination with Dickens           11:23:30

7    invalidates claims 23 through 25 of Mr. Bohm's     11:23:33

8    patent?                                            11:23:37

9        A.    Yes.                                     11:23:37

10       Q.    Okay.                                    11:23:37

11             And do you still have physical           11:23:38

12   Exhibit 368?                                       11:23:43

13       A.    Maybe.  Yes.                             11:23:45

14       Q.    Okay.                                    11:23:47

15             And is that the switch you               11:23:49

16   identify as US-98 that you bought off of           11:23:51

17   Amazon in 2019 and tested?                         11:23:54

18       A.    I mean, this is the one I tested.  I     11:23:57

19   would have to rely on my report for those          11:23:59

20   specific details because I don't remember          11:24:01

21   exactly what I said, but yes.                      11:24:02

22       Q.    Okay.                                    11:24:04

23             But that's the switch that you           11:24:05

24   identified in your report and in your              11:24:06

TRIAL - VOLUME 5

Page 157

```
 1    deposition that you tested, that particular        11:24:08

 2    switch, Exhibit 368?                               11:24:11

 3        A.   Yes.                                      11:24:13

 4        Q.   Okay.                                     11:24:20

 5             You've examined that thoroughly, I        11:24:20

 6    suppose, by this time?                             11:24:24

 7        A.   Say again.                                11:24:25

 8        Q.   You've examined Exhibit 368 a few         11:24:25

 9    times?                                             11:24:28

10        A.   Yeah.  I even almost destroyed it         11:24:28

11    trying to open it up, but yeah.                    11:24:30

12        Q.   And you agree with me, there are no       11:24:31

13    markings on Exhibit 368 switch, itself, that       11:24:33

14    indicate it's a US-98 switch; correct?             11:24:37

15        A.   That's correct.                           11:24:40

16        Q.   What's that?                              11:24:41

17        A.   That's correct.                           11:24:41

18        Q.   Okay.                                     11:24:42

19             And you agree, there are no               11:24:42

20    markings on the package that you looked at         11:24:46

21    that indicates it's a US-98 switch; is that        11:24:49

22    correct?                                           11:24:52

23        A.   There were other indications, but         11:24:52

24    yes.                                               11:24:53
```

TRIAL - VOLUME 5

Page 158

| | | |
|---|---|---|
| 1 | Q.   Right.  Just US-98.  Go with me. | 11:24:53 |
| 2 | A.   My account was about US-98, yes. | 11:24:57 |
| 3 | Q.   Okay. | 11:25:01 |
| 4 | MR. SLAYDEN:  Can you pull up | 11:25:02 |
| 5 | Slide 40.  This is the box. | 11:25:03 |
| 6 | BY MR. SLAYDEN: | 11:25:08 |
| 7 | Q.   Do you recognize that, Mr. Garney? | 11:25:08 |
| 8 | A.   I do. | 11:25:09 |
| 9 | Q.   Now, up in the right-hand corner, | 11:25:10 |
| 10 | there is a sticker. | 11:25:14 |
| 11 | Do you recognize that? | 11:25:15 |
| 12 | A.   I do. | 11:25:16 |
| 13 | Q.   And this is the box that you bought | 11:25:17 |
| 14 | off Amazon in 2019 and tested; correct? | 11:25:19 |
| 15 | A.   Yes. | 11:25:22 |
| 16 | Q.   Okay. | 11:25:23 |
| 17 | And it identifies a company named | 11:25:24 |
| 18 | Black Box up in the right-hand corner; | 11:25:27 |
| 19 | correct? | 11:25:30 |
| 20 | A.   Yes. | 11:25:31 |
| 21 | Q.   Okay. | 11:25:31 |
| 22 | And you don't have any independent | 11:25:32 |
| 23 | knowledge of Black Box sales, do you? | 11:25:35 |
| 24 | A.   Only what Mr. Rozycki testified to -- | 11:25:37 |

TRIAL - VOLUME 5

Page 159

| | | |
|---|---|---|
| 1 | actually, I don't know if he testified to | 11:25:40 |
| 2 | Black Box, but he testified to something about | 11:25:42 |
| 3 | Black Box. | 11:25:44 |
| 4 | Q.   We'll get to Black Box. | 11:25:45 |
| 5 | A.   Sure. | 11:25:47 |
| 6 | Q.   In fact, he testified he didn't know | 11:25:47 |
| 7 | anything about Black Box, but we'll get to it. | 11:25:50 |
| 8 | I was asking about you.  You don't | 11:25:53 |
| 9 | have the independent knowledge of Black Box | 11:25:55 |
| 10 | sales, do you? | 11:25:57 |
| 11 | A.   No. | 11:25:58 |
| 12 | Q.   And up in the right-hand corner, it's | 11:26:01 |
| 13 | kind of hard to see, you can see it on Slide | 11:26:04 |
| 14 | 40, there it is, and this is a switch you | 11:26:08 |
| 15 | bought off of Amazon in 2019 and tested.  It | 11:26:11 |
| 16 | lists the part number, SW211A; correct? | 11:26:14 |
| 17 | A.   Yeah, that's one of the part numbers. | 11:26:17 |
| 18 | Q.   I'm sorry, part -- it says, "part | 11:26:20 |
| 19 | SW211A"; correct? | 11:26:25 |
| 20 | A.   Sure.  And I understand the different | 11:26:27 |
| 21 | manufacturers use -- or, excuse me, different | 11:26:29 |
| 22 | companies use different part numbers, yes. | 11:26:31 |
| 23 | Q.   Okay. | 11:26:32 |
| 24 | But it doesn't say US-98, does it? | 11:26:33 |

TRIAL - VOLUME 5

Page 160

```
 1      A.   That's correct.                      11:26:36

 2      Q.   You don't know when Black Box part    11:26:39

 3   SW211A switches were sold, do you?            11:26:43

 4      A.   No, I just know about this switch.    11:26:46

 5      Q.   Okay.                                 11:26:48

 6           That is the Black Box switch.         11:26:48

 7      A.   Well, it's what I ordered of the      11:26:49

 8   US-98 and what Mr. Rozycki identified as yet  11:26:52

 9   another part number.                          11:26:55

10      Q.   Mr. Rozycki?                          11:26:56

11      A.   Yes.                                  11:26:57

12      Q.   Okay.                                 11:26:58

13           Now, you were deposed in this         11:26:59

14   case, weren't you?                            11:27:06

15      A.   I was, two different occasions for    11:27:07

16   like 24 hours of deposition, with Mr. Banner. 11:27:09

17      Q.   It sounds like it wasn't pleasant.    11:27:20

18      A.   I kind of thought that.               11:27:22

19      Q.   I agree with you.  I wouldn't have    11:27:24

20   enjoyed that either.  No offense, just        11:27:27

21   24 hours.                                     11:27:29

22      A.   Not all at once, though.              11:27:29

23      Q.   Yeah, right, he gave you a break, not 11:27:31

24   24 hours straight.                            11:27:33
```

TRIAL - VOLUME 5

Page 161

```
 1      A.    Sure.                                    11:27:34

 2      Q.    Now, when you were deposed, we asked     11:27:34

 3   you, you didn't know when a Black Box part        11:27:38

 4   SW211A switch was sold, and you agreed you        11:27:40

 5   didn't know; is that correct?                     11:27:45

 6      A.    I don't remember, but probably.          11:27:45

 7      Q.    And you don't even know if the           11:27:49

 8   Exhibit 368 switch you bought off of Amazon in    11:27:54

 9   2019 and tested was even sold by Black Box, do    11:27:56

10   you?                                              11:28:00

11      A.    I don't know anything about Black Box    11:28:00

12   sales.                                            11:28:04

13      Q.    Okay.                                    11:28:04

14            And then it would follow that you        11:28:05

15   certainly don't know if any Black Box part        11:28:07

16   SW211A was offered for sale before the            11:28:09

17   priority date of the patent?                      11:28:15

18      A.    Not Black Box, no.                       11:28:19

19      Q.    Correct.                                 11:28:21

20            And you also don't know for a fact       11:28:22

21   whether the Black Box switch SW211A,             11:28:26

22   Exhibit 368 that you bought off of Amazon in      11:28:30

23   2019 and tested, is a US-98 switch?               11:28:32

24      A.    Well, I had several indications that     11:28:37
```

Page 162

1    it is.                                              11:28:38

2        Q.   Okay.                                      11:28:39

3            MR. SLAYDEN:  Mr. Ferrer, can you           11:28:40

4    bring up deposition page 156 of Mr. Garney and     11:28:42

5    lines 23 -- 22 bridging over to 1.  Okay.          11:28:54

6    BY MR. SLAYDEN:                                     11:29:03

7        Q.   So the question was, "Okay.  Let           11:29:03

8    me -- are you saying that Exhibit 62," which        11:29:05

9    is prior a deposition exhibit of this box,         11:29:09

10   which is 368, "is both a US-98 and a Black Box     11:29:11

11   SW211A?"                                            11:29:15

12           And your response was, "I'm saying          11:29:18

13   that it well could be."                             11:29:20

14           "But you don't know for sure?"              11:29:21

15           And the last sentence says, "I              11:29:23

16   don't know it for a fact, no."                      11:29:26

17       A.   I couldn't go back in time and             11:29:27

18   examine it at that time, so no.                     11:29:29

19       Q.   Okay.                                      11:29:30

20           MR. SLAYDEN:  You can take it               11:29:34

21   down, Mr. Ferrer.                                   11:29:35

22   BY MR. SLAYDEN:                                     11:29:36

23       Q.   Now, if I was doing an investigation       11:29:37

24   of a prior art device and I was trying to          11:29:39

TRIAL - VOLUME 5

Page 163

| | | |
|---|---|---|
| 1 | invalidate somebody's patent, I don't know | 11:29:41 |
| 2 | that I would rely upon just buying something | 11:29:46 |
| 3 | off Amazon and when I received it, it wasn't | 11:29:49 |
| 4 | what I ordered.  There was no indication that | 11:29:53 |
| 5 | it was what I ordered. | 11:29:55 |
| 6 | But my question, though, is -- | 11:29:57 |
| 7 | MR. SAULSBURY:  Objection, Your | 11:30:00 |
| 8 | Honor. | 11:30:01 |
| 9 | THE COURT:  Sustained.  And I am | 11:30:01 |
| 10 | going to strike that. | 11:30:02 |
| 11 | The jury should disregard the | 11:30:03 |
| 12 | comments of Mr. Slayden. | 11:30:05 |
| 13 | Just the question, please. | 11:30:07 |
| 14 | BY MR. SLAYDEN: | 11:30:08 |
| 15 | Q.   You didn't talk to any manufacturers | 11:30:08 |
| 16 | at all about the Black Box SW211A switch, did | 11:30:10 |
| 17 | you? | 11:30:14 |
| 18 | A.   I did not. | 11:30:14 |
| 19 | Q.   Why not? | 11:30:15 |
| 20 | A.   Sorry? | 11:30:16 |
| 21 | Q.   Why not? | 11:30:16 |
| 22 | A.   I am not sure they're still around. | 11:30:17 |
| 23 | Q.   Oh, okay. | 11:30:19 |
| 24 | You didn't talk to any | 11:30:22 |

TRIAL - VOLUME 5

Page 164

| | | |
|---|---|---|
| 1 | manufacturers at all about it, whether it | 11:30:23 |
| 2 | related to the US-98 or the SW211A; right, the | 11:30:25 |
| 3 | Black Box? | 11:30:31 |
| 4 | A.    Correct. | 11:30:31 |
| 5 | Q.    And you didn't reach out and talk to | 11:30:33 |
| 6 | any resellers about the Black Box SW211A | 11:30:36 |
| 7 | device, did you? | 11:30:41 |
| 8 | A.    No.  Counsel did, as I understand, | 11:30:41 |
| 9 | but I did not personally. | 11:30:43 |
| 10 | Q.    You didn't.  Why not? | 11:30:44 |
| 11 | A.    They said they would provide that | 11:30:46 |
| 12 | information. | 11:30:48 |
| 13 | Q.    So they reached out to Black Box? | 11:30:49 |
| 14 | A.    No, they reached out to USBGear, Mr. | 11:30:51 |
| 15 | Rozycki. | 11:30:54 |
| 16 | Q.    Okay. | 11:30:54 |
| 17 | But this is a Black Box, it's not | 11:30:55 |
| 18 | USBGear? | 11:30:59 |
| 19 | A.    But you said the resellers, not just | 11:30:59 |
| 20 | specifically Black Box. | 11:31:02 |
| 21 | Q.    Resellers of the Black Box. | 11:31:03 |
| 22 | Does Mr. Rozycki sell Black Box? | 11:31:05 |
| 23 | He testified he didn't, I believe. | 11:31:07 |
| 24 | A.    This product is sold by different | 11:31:08 |

TRIAL - VOLUME 5

Page 165

```
 1    companies, from what I can tell.                11:31:10

 2        Q.    Okay.                                 11:31:12

 3              But you didn't directly talk to       11:31:13

 4    any resellers of the Black Box SW211A that you  11:31:15

 5    received off Amazon in 2019, did you?           11:31:21

 6        A.    No.                                   11:31:23

 7              No, I said, sir.                      11:31:29

 8        Q.    I'm sorry, I missed it.               11:31:32

 9              And you don't have any knowledge      11:31:33

10    about whether changes were made to the Black    11:31:35

11    Box SW211WA hardware or firmware at any time    11:31:37

12    after 2005?                                     11:31:42

13        A.    After '05?                            11:31:47

14        Q.    Black Box SW211WA.                    11:31:49

15        A.    Well, I have several indications; my  11:31:54

16    knowledge of Intel and their manufacturing and  11:31:57

17    the fact that this device needs software in     11:32:00

18    order for it to work, I doubt that there were   11:32:03

19    any changes made after 2005.                    11:32:06

20        Q.    But you don't know?                   11:32:08

21        A.    I don't know for sure.                11:32:09

22        Q.    Correct.                              11:32:11

23        A.    Or at least my indication.            11:32:11

24        Q.    We are talking about invalidating a   11:32:14
```

TRIAL - VOLUME 5

Page 166

```
 1    patent, so -- okay.                            11:32:16

 2            MR. SLAYDEN:  Can you pull up Mr.       11:32:18

 3    Rozycki's testimony at page 32.  I think it    11:32:19

 4    starts on line 25.  I am not sure from my      11:32:27

 5    notes whether it's page 31 or -- yeah, it      11:32:30

 6    starts at 25 at the bottom and bridges over to 11:32:36

 7    the next page.                                 11:32:39

 8            Yeah, right there, down to             11:32:51

 9    line 19.                                       11:32:55

10    BY MR. SLAYDEN:                                11:33:02

11       Q.   So we asked -- and I believe there is  11:33:02

12    a typo in the question.                        11:33:03

13            So the question which Mr. Rozycki      11:33:05

14    was asked was, "As you referenced it," and     11:33:08

15    this is the typo.  It says "edition" here but  11:33:08

16    it should be indicia.  It is "indicia is what  11:33:19

17    is meant on that box that indicates Cool Gear  11:33:20

18    sold that product?"                            11:33:22

19            And his response was, "No.             11:33:24

20    Actually, it shows a Black Box sticker is      11:33:26

21    actually what it shows on it."                 11:33:29

22            Do you remember that testimony?        11:33:30

23       A.   I see it.                              11:33:31

24       Q.   Okay.                                  11:33:33
```

TRIAL - VOLUME 5

Page 167

| | | |
|---|---|---|
| 1 | Does that refresh your | 11:33:33 |
| 2 | recollection of what he said? | 11:33:34 |
| 3 | A.   Some, yes. | 11:33:35 |
| 4 | Q.   And the next question was, "So is | 11:33:36 |
| 5 | there any" -- it says, "edition," but it's | 11:33:39 |
| 6 | "indicia on that box as to when it was sold?" | 11:33:42 |
| 7 | And his answer was, "It does not. | 11:33:46 |
| 8 | No." | 11:33:49 |
| 9 | A.   I see that. | 11:33:50 |
| 10 | Q.   Does that refresh your recollection | 11:33:50 |
| 11 | of his testimony? | 11:33:52 |
| 12 | A.   Yes. | 11:33:52 |
| 13 | Q.   Okay. | 11:33:53 |
| 14 | And, "same thing for the product | 11:33:55 |
| 15 | on the inside.  Is there" -- and it was | 11:33:58 |
| 16 | Exhibit 3 in this case.  "Is there any indicia | 11:34:01 |
| 17 | on that that is a US-98?" | 11:34:04 |
| 18 | And the answer was, "No.  There is | 11:34:09 |
| 19 | nothing labeled on the product that would say | 11:34:11 |
| 20 | that this is US-98, no." | 11:34:13 |
| 21 | A.   But there was other testimony he | 11:34:16 |
| 22 | believed it was. | 11:34:17 |
| 23 | Q.   I believe this is the last question | 11:34:19 |
| 24 | at the end. | 11:34:21 |

TRIAL - VOLUME 5

Page 168

| | | |
|---|---|---|
| 1 | MR. SAULSBURY:  Objection, Your | 11:34:22 |
| 2 | Honor. | 11:34:23 |
| 3 | THE COURT:  Sustained. | 11:34:23 |
| 4 | Wait, Mr. Slayden, let me finish. | 11:34:25 |
| 5 | The jury will disregard the | 11:34:27 |
| 6 | commentary about where the testimony falls. | 11:34:29 |
| 7 | MR. SLAYDEN:  Yes, Your Honor. | 11:34:34 |
| 8 | THE COURT:  Go ahead. | 11:34:35 |
| 9 | BY MR. SLAYDEN: | 11:34:35 |
| 10 | Q.   "So how are you certain that it is a | 11:34:36 |
| 11 | US-98?" | 11:34:37 |
| 12 | And his answer is, "It looks | 11:34:38 |
| 13 | exactly like the product.  I'm not saying this | 11:34:41 |
| 14 | is a US-98, but it was a product that was like | 11:34:44 |
| 15 | the US-98 that was being resold." | 11:34:47 |
| 16 | Do you see that? | 11:34:49 |
| 17 | A.   I do. | 11:34:50 |
| 18 | Q.   Now, when you purchased the Belkin | 11:35:05 |
| 19 | switch, and I guess it wasn't hard to find | 11:35:09 |
| 20 | because it is on the face of the patent, when | 11:35:12 |
| 21 | you purchased it, were you looking for prior | 11:35:15 |
| 22 | art? | 11:35:18 |
| 23 | A.   Yeah. | 11:35:18 |
| 24 | Q.   And what I mean by prior art is prior | 11:35:19 |

Page 169

```
 1    to the priority date of the '243 Patent?          11:35:22

 2         A.   Well, I was looking for products that    11:35:25

 3    were solving similar problems as Dickens.          11:35:28

 4         Q.   Right.                                    11:35:31

 5              But dated earlier than the patent,        11:35:32

 6    of course?                                          11:35:34

 7         A.   Yes, of course.                           11:35:34

 8         Q.   That was my question.                     11:35:36

 9              And you agree, I know you have            11:35:37

10    patents, that prior art is something that          11:35:38

11    existed before the priority date of the '243       11:35:41

12    Patent?                                             11:35:46

13         A.   Yes.                                      11:35:46

14         Q.   Okay.                                     11:35:47

15              And as you were preparing to sit         11:35:47

16    on this witness stand, you wanted to carefully     11:35:52

17    examine these products to determine whether        11:35:54

18    it's prior art; correct?                           11:35:56

19         A.   Well, I was also preparing my report.    11:36:00

20    I wasn't doing it specifically for sitting         11:36:02

21    here at the time, but yes.                          11:36:04

22         Q.   Okay.                                     11:36:05

23         A.   I wanted to examine the products to      11:36:06

24    make sure they were prior art.                     11:36:08
```

TRIAL - VOLUME 5

Page 170

| 1 | Q.   Yeah, fair enough. | 11:36:09 |
| 2 | Now, the Belkin product, and I | 11:36:11 |
| 3 | think you still have it.  It's hard to keep | 11:36:14 |
| 4 | them straight. | 11:36:18 |
| 5 | A.   367. | 11:36:19 |
| 6 | Q.   Okay. | 11:36:20 |
| 7 | It doesn't have a date of | 11:36:21 |
| 8 | manufacture on its product label; right? | 11:36:24 |
| 9 | A.   It does not. | 11:36:26 |
| 10 | Q.   Okay. | 11:36:27 |
| 11 | Now, as an expert like yourself, | 11:36:27 |
| 12 | if you're trying to determine the date of | 11:36:33 |
| 13 | manufacture, would you also look at the | 11:36:37 |
| 14 | internal components? | 11:36:40 |
| 15 | A.   Well, I was trying to determine this | 11:36:42 |
| 16 | sale, was the particular assignment here. | 11:36:45 |
| 17 | Q.   But wouldn't you look at the internal | 11:36:47 |
| 18 | components? | 11:36:50 |
| 19 | A.   I would. | 11:36:50 |
| 20 | Q.   Okay. | 11:36:51 |
| 21 | Because you can tell from internal | 11:36:53 |
| 22 | components when some of them were made, can't | 11:36:56 |
| 23 | you? | 11:36:59 |
| 24 | A.   Sometimes. | 11:37:00 |

TRIAL - VOLUME 5

Page 171

| | | |
|---|---|---|
| 1 | Q.   Yes. | 11:37:00 |
| 2 | And you would agree that if a | 11:37:02 |
| 3 | component is dated after the priority date of | 11:37:04 |
| 4 | the patent, that we know that product was made | 11:37:06 |
| 5 | sometime after the patent's filing date; | 11:37:09 |
| 6 | correct? | 11:37:11 |
| 7 | A.   Correct. | 11:37:11 |
| 8 | Q.   Okay. | 11:37:12 |
| 9 | And we talked about this at your | 11:37:13 |
| 10 | deposition, and we can pull it up if we need | 11:37:15 |
| 11 | to, but -- because you were at Intel; correct? | 11:37:18 |
| 12 | A.   Correct. | 11:37:21 |
| 13 | Q.   Right. | 11:37:21 |
| 14 | And you understand that | 11:37:22 |
| 15 | manufacturers stamp their chips with a date | 11:37:25 |
| 16 | code showing when a chip was made; right? | 11:37:28 |
| 17 | A.   Sometimes, yes. | 11:37:30 |
| 18 | MR. SLAYDEN:  Can we go to | 11:37:33 |
| 19 | Exhibit 19, please.  And zoom in on the top | 11:37:35 |
| 20 | portion, the lid.  That's not that exciting. | 11:37:44 |
| 21 | No, the other one.  I think I confused you, | 11:37:50 |
| 22 | I'm sorry.  And can we flip it around? | 11:37:54 |
| 23 | BY MR. SLAYDEN: | 11:38:07 |
| 24 | Q.   Now, at the bottom of this picture in | 11:38:08 |

| | | |
|---|---|---|
| 1 | the middle is a square microcontroller chip. | 11:38:14 |
| 2 | Do you see that? | 11:38:18 |
| 3 | A.   I do. | 11:38:18 |
| 4 | Q.   And it looks like for all these | 11:38:19 |
| 5 | chips, all the dates have been rubbed off? | 11:38:26 |
| 6 | A.   Well, all the parts would, sort of, | 11:38:28 |
| 7 | kind of were scratched off or ground off or | 11:38:33 |
| 8 | something. | 11:38:36 |
| 9 | Q.   You didn't do that? | 11:38:36 |
| 10 | A.   I did not.  I was clarifying. | 11:38:37 |
| 11 | Q.   And why would a manufacturer of this | 11:38:39 |
| 12 | product do that? | 11:38:42 |
| 13 | A.   Well, in my experience, sometimes | 11:38:42 |
| 14 | they would want to prevent their competitors | 11:38:44 |
| 15 | from knowing what chips were being used in | 11:38:46 |
| 16 | their product. | 11:38:48 |
| 17 | Q.   Correct. | 11:38:49 |
| 18 | Now, with these scraped-off | 11:38:51 |
| 19 | markings, were you concerned that the product | 11:38:54 |
| 20 | may have been altered in some way? | 11:38:56 |
| 21 | A.   No, because of my experience I just | 11:38:58 |
| 22 | described. | 11:39:00 |
| 23 | Q.   Okay. | 11:39:00 |
| 24 | MR. SLAYDEN:  Can we go to Slide | 11:39:03 |

Page 173

| | | |
|---|---|---|
| 1 | 13. | 11:39:04 |
| 2 | BY MR. SLAYDEN: | 11:39:08 |
| 3 | Q.   Now, all of the chips that weren't | 11:39:09 |
| 4 | scraped off, and you see that arrow pointing | 11:39:11 |
| 5 | to the Maxim chip.  It still has its date code | 11:39:14 |
| 6 | on it? | 11:39:20 |
| 7 | A.   I do see that. | 11:39:20 |
| 8 | Q.   And that date code is 8/49 which | 11:39:21 |
| 9 | means it was made in the year 2008? | 11:39:23 |
| 10 | A.   Well, actually, I don't know that's a | 11:39:26 |
| 11 | date code, but it could be. | 11:39:27 |
| 12 | Q.   What's that? | 11:39:28 |
| 13 | A.   I don't know that this is a date | 11:39:29 |
| 14 | code, but it could be. | 11:39:30 |
| 15 | Q.   Okay. | 11:39:31 |
| 16 | MR. SLAYDEN:  Let me show you | 11:39:37 |
| 17 | what's been marked for identification as 379. | 11:39:38 |
| 18 | You may have it.  See if you've got 379 up | 11:39:43 |
| 19 | there. | 11:39:46 |
| 20 | Yeah, you've got it.  Would you | 11:39:47 |
| 21 | look in your notebook for 379, please. | 11:39:48 |
| 22 | THE WITNESS:  Oh, not the one you | 11:39:54 |
| 23 | just gave me. | 11:39:58 |
| 24 | MR. SLAYDEN:  Wrong one.  I am | 11:39:59 |

Page 174

```
 1    longwinded, but my notebook is thin.  379.        11:40:01

 2              THE WITNESS:  Okay.                     11:40:08

 3              MR. SLAYDEN:  Page 5.                   11:40:10

 4              THE WITNESS:  Page 5.                   11:40:15

 5    BY MR. SLAYDEN:                                   11:40:20

 6       Q.   And if you look at the bottom of the     11:40:20

 7    page, you follow me, you see the final line,     11:40:22

 8    it says, "Max PP No. 1" -- not the bottom,       11:40:25

 9    excuse me, right -- do you see where it says,    11:40:29

10    "four lines alternate"?                          11:40:31

11       A.   Okay.                                    11:40:33

12       Q.   And to the right of that, it says,       11:40:34

13    "YWW"?                                           11:40:41

14       A.   I see that.                              11:40:41

15       Q.   And it says, "date code"?               11:40:42

16       A.   I see that.                              11:40:46

17       Q.   And the Y stands for year; that's       11:40:47

18    what Maxim teaches us in their application       11:40:50

19    note?                                            11:40:53

20       A.   Well, I see it's in context with four   11:40:53

21    lines of information, and I only see three       11:40:55

22    here.                                            11:40:58

23       Q.   That's YWW.  Do you see the YWW?        11:40:58

24       A.   I see it says, "date code," yes.        11:41:04
```

TRIAL - VOLUME 5

Page 175

```
 1      Q.    Okay.                                    11:41:07

 2            And the Y stands for year?               11:41:08

 3      A.    Yes, I see that.                          11:41:17

 4      Q.    And the W stands for week in the          11:41:18

 5  year.  That's the way they do it?                   11:41:22

 6      A.    I see that.                                11:41:23

 7      Q.    So that particular chip was made in       11:41:25

 8  year 2008, which is past the priority date?         11:41:27

 9      A.    It does appear so.                         11:41:31

10      Q.    Yes.                                       11:41:32

11            MR. SLAYDEN:  Now, let's go to             11:41:36

12  Slide 14.                                            11:41:37

13  BY MR. SLAYDEN:                                       11:41:45

14      Q.    It's also important, when you're           11:41:45

15  doing an investigation for prior art, to look        11:41:47

16  at products you purchase off of Amazon to            11:41:50

17  determine when the board was made, not just          11:41:53

18  the chips?                                            11:41:56

19      A.    True.                                       11:41:56

20      Q.    And the green circuit board on the          11:41:58

21  Belkin was made sometime in the 45th week of         11:42:06

22  2008, which is November of 2008.                     11:42:10

23      A.    I don't know.                               11:42:13

24      Q.    Hold on.                                    11:42:13
```

TRIAL - VOLUME 5

Page 176

```
1        A.   I don't know that at this point, but      11:42:14

2   could be.                                           11:42:16

3        Q.   Do you dispute that that's the date?      11:42:17

4        A.   I don't know.                             11:42:19

5        Q.   You don't know?                           11:42:20

6        A.   Just four numbers, as far as I know       11:42:20

7   now.                                                11:42:22

8        Q.   Okay.                                      11:42:22

9             If it was made in the 45th week of        11:42:26

10  2008, it wouldn't be prior art; correct?            11:42:29

11       A.   Correct.                                   11:42:33

12            MR. SLAYDEN:  Let's go to Slide            11:42:51

13  11, please.  And I believe I have switched          11:42:53

14  gears.  I believe that's the US-98.                 11:43:02

15  BY MR. SLAYDEN:                                      11:43:06

16       Q.   Do you recognize that?                     11:43:06

17       A.   I do.                                       11:43:07

18       Q.   And that's Exhibit 368, I believe.        11:43:08

19  Which is the one you call US-98 but was             11:43:11

20  labeled Black Box --                                 11:43:15

21       A.   Yes.                                        11:43:16

22       Q.   -- to make sure we are on the same        11:43:16

23  page, because it's a little confusing.              11:43:18

24            So there is a Winbond control over        11:43:22
```

Page 177

| | | |
|---|---|---|
| 1 | there and it has a date code on it unscratched | 11:43:26 |
| 2 | off. | 11:43:35 |
| 3 | MR. SAULSBURY:  Your Honor, can we | 11:43:41 |
| 4 | have a sidebar? | 11:43:44 |
| 5 | THE COURT:  Yes. | 11:43:44 |
| 6 | (Whereupon, a discussion was held | 11:43:44 |
| 7 | at sidebar as follows: | 11:45:43 |
| 8 | MR. SAULSBURY:  We haven't had an | 11:45:43 |
| 9 | opportunity to see these slides before, but | 11:45:43 |
| 10 | the slide -- the numbers of the chip really | 11:45:43 |
| 11 | start with a 6 and then the demonstrative says | 11:45:43 |
| 12 | it's 08, so it's highly misleading. | 11:45:43 |
| 13 | THE COURT:  Hold on. | 11:45:43 |
| 14 | When you say you haven't seen the | 11:45:43 |
| 15 | slides before, did you exchange them? | 11:45:43 |
| 16 | MR. SAULSBURY:  No, because we | 11:45:43 |
| 17 | haven't been exchanging cross documents. | 11:45:43 |
| 18 | THE COURT:  Okay.  All right.  So | 11:45:43 |
| 19 | then are you going to lay -- | 11:45:43 |
| 20 | MR. SAULSBURY:  They just changed | 11:45:43 |
| 21 | it. | 11:45:43 |
| 22 | THE COURT:  It was 2008.  Was that | 11:45:43 |
| 23 | a typo?  What happened? | 11:45:43 |
| 24 | MR. SLAYDEN:  No, it is coming up. | 11:45:43 |

Page 178

1    There is another one 2008.                          11:45:43

2           THE COURT:  But the one that was              11:45:43

3    up did absolutely say 2008 there.                   11:45:43

4           MR. SAULSBURY:  I think we need a             11:45:43

5    curative instruction.                               11:45:43

6           THE COURT:  100 percent.  It just            11:45:43

7    changed 2008 to 2006 while you walked up here.      11:45:43

8           MS. DURIE:  I'll represent to the            11:45:43

9    Court it said 2008.  They took it down and          11:45:43

10   changed it.                                         11:45:43

11          THE COURT:  I saw it.  It's fine.            11:45:43

12   I know it said 2008, I saw it.  I actually          11:45:43

13   expected that you were going to lay some            11:45:43

14   foundation.  They had some odd coding starting      11:45:43

15   in '02 or something.                                11:45:43

16          MR. SLAYDEN:  No, I didn't see it,           11:45:43

17   Your Honor.  The slide that was the 2008, that      11:45:43

18   was up.                                             11:45:43

19          MR. SAULSBURY:  I think we need a            11:45:43

20   curative instruction, Your Honor.                   11:45:43

21          THE COURT:  That's fine.  And I'll           11:45:43

22   just assume it was a typo and we'll move on.        11:45:43

23          (Whereupon, the discussion at                11:45:46

24   sidebar concluded.)                                 11:45:51

TRIAL - VOLUME 5

Page 179

| | | |
|---|---|---|
| 1 | THE COURT:  Put that slide back | 11:45:51 |
| 2 | up.  Don't go on to Slide 12. | 11:45:53 |
| 3 | MR. SLAYDEN:  I'm sorry? | 11:45:56 |
| 4 | THE COURT:  No, the one you just | 11:45:57 |
| 5 | had up a moment ago.  Thank you. | 11:45:58 |
| 6 | So, ladies and gentlemen, just for | 11:46:04 |
| 7 | clarification, when that slide first went up, | 11:46:06 |
| 8 | it said under the 6, it was called out in red, | 11:46:09 |
| 9 | 2008.  That was a typo.  It should have read | 11:46:12 |
| 10 | 2006 all along.  It's now been corrected and | 11:46:16 |
| 11 | so you should disregard the fact that you saw | 11:46:19 |
| 12 | the 2008 there.  Okay?  All right. | 11:46:21 |
| 13 | MR. SLAYDEN:  Yes, Your Honor.  To | 11:46:25 |
| 14 | be honest, I think he toggled between 11 and | 11:46:27 |
| 15 | 12.  I'm not sure with 12. | 11:46:30 |
| 16 | Can you put 12 up?  That's what we | 11:46:34 |
| 17 | were showing. | 11:46:36 |
| 18 | THE COURT:  No, the last version | 11:46:37 |
| 19 | of the slide, there was a point where it | 11:46:38 |
| 20 | definitely said 2008. | 11:46:41 |
| 21 | MR. SLAYDEN:  Okay. | 11:46:42 |
| 22 | THE COURT:  We have cured that. | 11:46:42 |
| 23 | The jury is going to disregard that.  We are | 11:46:44 |
| 24 | going to freeze it as 2006 because that's what | 11:46:46 |

Page 180

| | | |
|---|---|---|
| 1 | it should have said. | 11:46:49 |
| 2 | Go ahead. | 11:46:50 |
| 3 | BY MR. SLAYDEN: | 11:46:51 |
| 4 | Q.   This is the date code on the circuit | 11:46:51 |
| 5 | board for the US-98, and you see on the | 11:46:53 |
| 6 | left-hand side -- | 11:46:57 |
| 7 | A.   I don't know that it is the date | 11:46:58 |
| 8 | code. | 11:47:00 |
| 9 | Q.   I'm sorry? | 11:47:00 |
| 10 | A.   I do not know that it is a date code. | 11:47:01 |
| 11 | Q.   Okay. | 11:47:03 |
| 12 | So if it is a date code, it would | 11:47:03 |
| 13 | be indicating that it was made in 2008? | 11:47:08 |
| 14 | A.   It depends on how the date code is | 11:47:10 |
| 15 | encoded. | 11:47:12 |
| 16 | Q.   Okay. | 11:47:12 |
| 17 | And if it was made in 2008, it | 11:47:13 |
| 18 | wouldn't be prior art; correct? | 11:47:15 |
| 19 | A.   It would not be prior art. | 11:47:17 |
| 20 | Q.   Do you have any reason to believe | 11:47:21 |
| 21 | that the physical exhibit, Exhibit 368 with | 11:47:23 |
| 22 | the Black Box sticker on it, was made prior to | 11:47:27 |
| 23 | April 2006? | 11:47:31 |
| 24 | A.   Just the indication that I reported | 11:47:31 |

Page 181

| | | |
|---|---|---|
| 1 | on in my report, and Mr. Rozycki's testimony. | 11:47:35 |
| 2 | Q.   Now, as an expert, we talked about | 11:47:51 |
| 3 | this this morning, as an expert, you want to | 11:47:54 |
| 4 | have the most complete version of any document | 11:47:56 |
| 5 | you are being asked to consider; is that | 11:47:58 |
| 6 | right? | 11:47:59 |
| 7 | A.   Yes. | 11:47:59 |
| 8 | Q.   Okay. | 11:48:01 |
| 9 | And again, if you are provided | 11:48:02 |
| 10 | with an incomplete or, for example, an early | 11:48:04 |
| 11 | draft of a document and not the final draft, | 11:48:08 |
| 12 | you might be missing something important that | 11:48:11 |
| 13 | was contained in the updated version; correct? | 11:48:15 |
| 14 | A.   It's possible. | 11:48:16 |
| 15 | Q.   And you relied primarily on Aptiv's | 11:48:18 |
| 16 | counsel in this case to provide you with | 11:48:23 |
| 17 | documents to study.  Is that fair? | 11:48:25 |
| 18 | A.   I don't recall.  I think there | 11:48:30 |
| 19 | were -- some -- some they provided to me, some | 11:48:32 |
| 20 | I believe I discovered myself.  I don't | 11:48:35 |
| 21 | remember exactly which, subject to whatever my | 11:48:37 |
| 22 | report says. | 11:48:40 |
| 23 | Q.   But documents from Aptiv, itself, its | 11:48:41 |
| 24 | own company records, or Delphi's records, | 11:48:45 |

Page 182

1    would have to come from counsel?                      11:48:47

2        A.   Oh.   That's correct.                        11:48:49

3        Q.   All right.   You couldn't search for         11:48:50

4    those.   Yeah, okay.                                  11:48:54

5             Now, can you turn to Exhibit 103             11:49:15

6    in your binder?                                       11:49:18

7             (Whereupon, Trial Exhibit 103 was            11:49:18

8    introduced.)                                          11:49:29

9             MR. SAULSBURY:   I don't have a              11:49:29

10   copy.                                                 11:49:30

11            (Brief pause.)                               11:49:31

12   BY MR. SLAYDEN:                                       11:49:46

13       Q.   Are you there?                               11:49:47

14       A.   Exhibit 103, yes.                            11:49:49

15       Q.   And can you tell me what it is?              11:49:51

16       A.   It appears to be a functional -- an         11:49:53

17   engineering design document from Unwired for          11:49:55

18   their ASIC, it says, "Boston Project."               11:49:59

19            MR. SLAYDEN:   I move to admit.             11:50:02

20            MR. SAULSBURY:   No objection.              11:50:07

21            THE COURT:   Okay.   It's admitted.         11:50:08

22            MR. SLAYDEN:   And if we can turn           11:50:12

23   to 201 in your notebook.                              11:50:14

24            (Whereupon, Trial Exhibit 201 was            11:50:14

TRIAL - VOLUME 5

Page 183

1    introduced.)                                    11:50:21

2              THE WITNESS:  Okay.                    11:50:21

3    BY MR. SLAYDEN:                                  11:50:22

4       Q.   And the same question:  Do you          11:50:23

5    recognize that document?                         11:50:24

6       A.   It looks like the same.  I'd have to     11:50:25

7    explore it and see what the differences are,     11:50:28

8    but yes.                                          11:50:30

9              MR. SLAYDEN:  Okay.  Move to admit     11:50:30

10   it.                                               11:50:32

11             MR. SAULSBURY:  No objection.          11:50:32

12             THE COURT:  Okay.  It's in.            11:50:33

13   BY MR. SLAYDEN:                                  11:50:35

14      Q.   Now, let's go back to 103 and let's      11:50:35

15   turn to page 4 on 103.  And you see the          11:50:45

16   Revision History there?                          11:50:53

17      A.   Yeah, I do.                              11:50:54

18      Q.   And it says, "First draft," and you      11:50:58

19   notice the date is not complete; right?          11:51:03

20      A.   It looks like part of the date is        11:51:06

21   missing, but yeah.                               11:51:08

22      Q.   Okay.                                     11:51:10

23      A.   Actually, I don't --                     11:51:10

24      Q.   Now --                                    11:51:12

TRIAL - VOLUME 5

Page 184

```
 1        A.    -- I don't know when that last --        11:51:12

 2   when the year is last date, but yeah.               11:51:14

 3        Q.    Okay.                                     11:51:17

 4              MR. SLAYDEN:  Let's go back to 201        11:51:18

 5   Mr. Ferrer.  Thank you.  Page 4.                     11:51:24

 6   BY MR. SLAYDEN:                                      11:51:27

 7        Q.    Do you have that in front of you, Mr.     11:51:27

 8   Garney?                                              11:51:29

 9        A.    I do.                                     11:51:29

10        Q.    Now, that Revision History says it's      11:51:30

11   Revision 0.2?                                        11:51:37

12        A.    I see that.                               11:51:38

13        Q.    And based on your comparison of the       11:51:40

14   two documents, would you agree that it looks         11:51:42

15   like 201 is the updated version of 103?             11:51:45

16        A.    It seems reasonable, but I'd have to     11:51:52

17   explore them.                                        11:51:54

18        Q.    What's that?                              11:51:54

19        A.    I said it seems reasonable.  I'd have    11:51:55

20   to explore them to confirm in detail, but it        11:51:57

21   seems reasonable from documents.                     11:52:00

22        Q.    And do you know, in the approval box,    11:52:02

23   who approved this?                                   11:52:05

24        A.    I don't know for a fact.  I am           11:52:06
```

TRIAL - VOLUME 5

Page 185

```
 1    guessing it's Mr. Petku.                        11:52:07

 2        Q.   Yeah, it's Craig S. Petku.             11:52:08

 3             And based on that Revision             11:52:15

 4    History, both these documents were created in   11:52:19

 5    2013?                                           11:52:21

 6        A.   Seems to be, yes.                       11:52:22

 7        Q.   Okay.                                   11:52:23

 8             So both of these documents were        11:52:24

 9    created before this litigation started;         11:52:27

10    correct?                                        11:52:29

11        A.   Yes.                                    11:52:29

12        Q.   Because you have been in it the whole  11:52:30

13    time, that was five years ago, so that's 2017?  11:52:32

14        A.   Yes.                                    11:52:36

15        Q.   Okay.                                   11:52:36

16             And actually, if you look at the       11:52:41

17    dates there, the 201 was updated, it looks      11:52:43

18    like, just six days after the previous          11:52:47

19    version?                                        11:52:49

20        A.   Seems to be what it says, yes.          11:52:49

21        Q.   And it lists there on 201, "Updated    11:52:54

22    per comments from AyDeeKay."                    11:52:59

23        A.   I see that.                             11:53:02

24        Q.   Do you know who that is?                11:53:03
```

Page 186

| | | |
|---|---|---|
| 1 | A.   I believe that's the silicon die | 11:53:04 |
| 2 | house that was involved in the fabrication of | 11:53:08 |
| 3 | the Boston chip. | 11:53:12 |
| 4 | Q.   Correct. | 11:53:13 |
| 5 |        MR. SLAYDEN:  Well, actually, Mr. | 11:53:15 |
| 6 | Ferrer, if you'll go to page 3 of the same | 11:53:17 |
| 7 | document, second paragraph, second sentence. | 11:53:19 |
| 8 | BY MR. SLAYDEN: | 11:53:25 |
| 9 | Q.   Right there it starts with | 11:53:26 |
| 10 | "AyDeeKay," and it says, "AyDeeKay is | 11:53:27 |
| 11 | considered the expert on how to implement ASIC | 11:53:32 |
| 12 | logic, USB IP, interfaces to existing IP and | 11:53:34 |
| 13 | ARM processor interface." | 11:53:40 |
| 14 |        Do you see that? | 11:53:42 |
| 15 | A.   I see that. | 11:53:43 |
| 16 | Q.   And so this is who Unwired hired to | 11:53:44 |
| 17 | help them build a Boston chip? | 11:53:46 |
| 18 | A.   That's my understanding, yes. | 11:53:48 |
| 19 | Q.   And I reviewed your -- your reports | 11:53:50 |
| 20 | and the exhibits, and one of the exhibits that | 11:53:57 |
| 21 | you have is the materials you considered. | 11:54:01 |
| 22 | A.   Okay. | 11:54:03 |
| 23 | Q.   Okay? | 11:54:03 |
| 24 |        And I could find Exhibit 103 on | 11:54:05 |

TRIAL - VOLUME 5

Page 187

| | | |
|---|---|---|
| 1 | your report, the incomplete version, but I | 11:54:09 |
| 2 | couldn't find Exhibit 201, that's the updated | 11:54:11 |
| 3 | version. | 11:54:17 |
| 4 | A.   I have -- you looked and I haven't. | 11:54:24 |
| 5 | Q.   I understand. | 11:54:30 |
| 6 | A.   I don't know what the material | 11:54:31 |
| 7 | differences are between the two -- | 11:54:32 |
| 8 | Q.   Okay. | 11:54:33 |
| 9 | A.   -- sitting here now. | 11:54:34 |
| 10 | Q.   And based on that language we just | 11:54:46 |
| 11 | talked about, you'd agree with me that Unwired | 11:54:48 |
| 12 | was relying upon the expertise of AyDeeKay at | 11:54:50 |
| 13 | this time? | 11:54:53 |
| 14 | A.   I don't know for a fact, but it seems | 11:54:53 |
| 15 | reasonable. | 11:54:56 |
| 16 | Q.   Unwired wrote this document that says | 11:54:56 |
| 17 | AyDeeKay is considered the expert? | 11:54:58 |
| 18 | A.   Actually, I don't know what you meant | 11:55:01 |
| 19 | by "rely on," but they are certainly | 11:55:03 |
| 20 | identified as an expert here, yes. | 11:55:05 |
| 21 | Q.   Were you here for Mr. Voto's | 11:55:06 |
| 22 | testimony? | 11:55:09 |
| 23 | A.   I was. | 11:55:09 |
| 24 | Q.   And did Mr. Voto testify how much he | 11:55:10 |

TRIAL - VOLUME 5

Page 188

| | | |
|---|---|---|
| 1 | paid AyDeeKay -- | 11:55:12 |
| 2 | A.   He did. | 11:55:14 |
| 3 | Q.   -- for the chip? | 11:55:15 |
| 4 | A.   I did hear. | 11:55:16 |
| 5 | Q.   What was that? | 11:55:17 |
| 6 | A.   I heard different numbers.  I think | 11:55:18 |
| 7 | he had said five million, I think he related | 11:55:21 |
| 8 | to, and during the testimony, there was a | 11:55:24 |
| 9 | question somewhat less than that. | 11:55:26 |
| 10 | Q.   Right. | 11:55:27 |
| 11 | It was more maybe two million.  It | 11:55:28 |
| 12 | was millions; we'll agree to that? | 11:55:30 |
| 13 | A.   Yes. | 11:55:32 |
| 14 | Q.   So I don't usually -- I mean, it | 11:55:32 |
| 15 | seems to me that -- strike that.  I'm sorry. | 11:55:35 |
| 16 | MR. SLAYDEN:  Now, let's go to | 11:55:41 |
| 17 | Exhibit 7, Mr. Ferrer.  I understand this is | 11:55:44 |
| 18 | on the admitted list already.  Okay. | 11:55:53 |
| 19 | BY MR. SLAYDEN: | 11:55:56 |
| 20 | Q.   Have you seen this technical | 11:55:57 |
| 21 | schematic of the Boston 2 chip before? | 11:55:58 |
| 22 | A.   Several times, yes. | 11:56:00 |
| 23 | Q.   It's a little busy; huh? | 11:56:02 |
| 24 | A.   It is. | 11:56:05 |

TRIAL - VOLUME 5

Page 189

```
 1      Q.   Now, do you see the components in red        11:56:06

 2   text?                                                11:56:08

 3      A.   I see the red text, yes.                     11:56:10

 4      Q.   Okay.                                        11:56:16

 5           And can you list the components              11:56:18

 6   appearing in the red text?                           11:56:20

 7      A.   Starting on the left, it says, "MCU,"        11:56:23

 8   which is the shorthand for microcontroller.          11:56:25

 9   Excuse me just a minute.                             11:56:28

10           Proceeding on top center, it says,           11:56:35

11   "UDC_US," which we talked about before, which        11:56:39

12   was the part of the device -- well, the device       11:56:42

13   controller for the upstream host.                    11:56:44

14           Keep reading down, it says, "EP              11:56:48

15   Bridge," which is the endpoint bridge.  Going        11:56:50

16   down there is, "UDC_DS," which is the USB            11:56:52

17   device controller downstream.                        11:56:55

18           A little hard to read -- actually,           11:56:59

19   let's see if I can read here.  "Routing Logic        11:57:01

20   DS4RL" and "Routing Logic HBRL."  I think            11:57:04

21   that's it.                                           11:57:09

22      Q.   So if I have counted correctly,              11:57:10

23   there's six of them?                                 11:57:14

24      A.   Seems to be, yes.                            11:57:16
```

Page 190

| | | |
|---|---|---|
| 1 | MR. SLAYDEN:  Your Honor, this | 11:57:17 |
| 2 | would be a good time to take a lunch break. | 11:57:18 |
| 3 | Is that convenient for you, or keep going? | 11:57:20 |
| 4 | THE COURT:  I mean, unless you've | 11:57:23 |
| 5 | got -- well, my inclination would be to keep | 11:57:25 |
| 6 | going.  We haven't been going that long since | 11:57:29 |
| 7 | our break. | 11:57:31 |
| 8 | MR. SLAYDEN:  Okay. | 11:57:31 |
| 9 | THE COURT:  My plan would be to go | 11:57:32 |
| 10 | for another half hour, 45 minutes. | 11:57:33 |
| 11 | MR. SLAYDEN:  Okay.  I didn't know | 11:57:35 |
| 12 | we had that much time, so that's great. | 11:57:36 |
| 13 | BY MR. SLAYDEN: | 11:57:40 |
| 14 | Q.   Do you know why they are labeled in | 11:57:41 |
| 15 | red? | 11:57:43 |
| 16 | A.   I don't know at this point, no. | 11:57:44 |
| 17 | Q.   You don't know. | 11:57:45 |
| 18 | MR. SLAYDEN:  Mr. Ferrer, can we | 11:57:47 |
| 19 | go back to Exhibit 201.  And go to page 5 and | 11:57:48 |
| 20 | can you put Exhibit 7 next to it.  Is that | 11:58:09 |
| 21 | possible? | 11:58:18 |
| 22 | BY MR. SLAYDEN: | 11:58:28 |
| 23 | Q.   And, Mr. Garney, you have both of | 11:58:29 |
| 24 | those exhibits in your binder if that helps. | 11:58:31 |

Page 191

1    Even blowing it up, it is a busy document.        11:58:35

2        A.   Yes.                                      11:58:37

3        Q.   Okay.                                     11:58:38

4             Now, do you see, in terms of             11:58:39

5    the -- we see on both documents a routing          11:58:50

6    logic.  All the red text in Exhibit 7 are also     11:58:54

7    labeled not in red, but in black and white in      11:59:03

8    Figure 1, Exhibit 201; correct?                    11:59:07

9        A.   Seems to be, yes.                         11:59:10

10       Q.   So the same six components in the         11:59:11

11   same spot?                                         11:59:13

12       A.   Yes.                                      11:59:14

13            MR. SLAYDEN:  So, Mr. Ferrer, can         11:59:23

14   we highlight the 201 -- excuse me.  Can we go      11:59:24

15   to the slide?  This is Exhibit 7.  We have         11:59:30

16   those boxed out.  We have those boxed out.         11:59:47

17   BY MR. SLAYDEN:                                    11:59:55

18       Q.   So are those the same?  Could you         11:59:55

19   compare them maybe?  Okay.                         11:59:57

20            Now, let's see what Exhibit 201,          12:00:03

21   the document Aptiv's lawyers didn't give you       12:00:07

22   to review, says about the red text.                12:00:10

23       A.   I don't know that they didn't give it    12:00:12

24   to me.                                             12:00:13

TRIAL - VOLUME 5

Page 192

```
 1       Q.   Well, it's not on your list.              12:00:14

 2       A.   Okay.                                      12:00:18

 3       Q.   It didn't make it on your list.  Fair     12:00:18

 4   enough?                                             12:00:21

 5       A.   Fair enough.                               12:00:21

 6            MR. SLAYDEN:  Mr. Ferrer, can you          12:00:22

 7   give me the sentence?                               12:00:23

 8   BY MR. SLAYDEN:                                     12:00:26

 9       Q.   So it says, "The bridge device            12:00:26

10   consists of six blocks (RED TEXT) integrated        12:00:31

11   within a USB connectivity module as described       12:00:36

12   below."                                             12:00:38

13       A.   Okay.                                      12:00:40

14       Q.   So the bridge device includes all         12:00:41

15   those six blocks; correct?                          12:00:44

16       A.   Could be.  I have to see more about        12:00:45

17   what they described, you know, what the             12:00:47

18   details of this thing labeled a module is, but      12:00:49

19   could be.                                           12:00:53

20       Q.   And Exhibit 7, you testified              12:00:53

21   Exhibit 7 was the schematic to the Boston 2         12:00:55

22   chip?                                               12:00:57

23       A.   I did.                                     12:00:57

24       Q.   And it's identical to the diagram in      12:00:59
```

Page 193

1  Exhibit 201 as to the six components; correct?      12:01:02

2      A.   Yes.                                        12:01:05

3      Q.   Okay.                                       12:01:06

4           So AyDeeKay in this document, 201,          12:01:07

5  as we talked about --                               12:01:10

6           MR. SLAYDEN:  Can you give me the           12:01:11

7  revision history again?  On 201.  I'm sorry.         12:01:12

8           Revision history of 201.  Page 4,           12:01:28

9  I believe.                                           12:01:32

10  BY MR. SLAYDEN:                                      12:01:37

11      Q.   So 201 was updated by the expert,          12:01:38

12  AyDeeKay; right?                                     12:01:42

13      A.   Yep.                                        12:01:43

14      Q.   Okay.                                       12:01:44

15           MR. SLAYDEN:  Can you go back to            12:01:45

16  the old slide with the sentence at the top?         12:01:46

17  BY MR. SLAYDEN:                                      12:02:00

18      Q.   And you were here for Mr. Zatkovich's      12:02:01

19  testimony, weren't you?                              12:02:02

20      A.   I believe I was.                           12:02:04

21      Q.   And Mr. Zatkovich's testimony was          12:02:05

22  completely consistent with the bridge device       12:02:08

23  as defined by Exhibit 201; correct?                 12:02:10

24      A.   Well, no, I mean, just because it's        12:02:13

TRIAL - VOLUME 5

Page 194

```
 1    integrated, the module doesn't change the          12:02:15

 2    presence of two separate USB devices within        12:02:17

 3    that module.                                        12:02:19

 4        Q.   Okay.                                      12:02:20

 5             Is USB Device A or USB Device B            12:02:21

 6    listed there?                                       12:02:24

 7        A.   No, but it correlates with the other      12:02:25

 8    information I reviewed.                              12:02:28

 9        Q.   Okay.                                      12:02:29

10             MR. SLAYDEN:  Can we go back to            12:02:37

11    page 4, Mr. Ferrer.                                 12:02:38

12    BY MR. SLAYDEN:                                     12:02:43

13        Q.   And just remember, this has been          12:02:44

14    updated per the comments of AyDeeKay, which is      12:02:45

15    identified in this document as an expert;           12:02:49

16    correct?                                            12:02:52

17        A.   Yep.                                       12:02:53

18             MR. SLAYDEN:  Now, actually, I'm           12:02:55

19    sorry, but can we go to 103, page 4.  Thank         12:02:57

20    you for your patience.                              12:03:01

21    BY MR. SLAYDEN:                                     12:03:07

22        Q.   Now, the box above it, if you go to       12:03:08

23    the acronyms and definitions up there, there       12:03:13

24    is not an EP Bridge listed there, is there?        12:03:19
```

TRIAL - VOLUME 5

Page 195

| | | |
|---|---|---|
| 1 | A.   Not explicitly.  It's in the | 12:03:27 |
| 2 | connectivity device, most likely. | 12:03:31 |
| 3 | Q.   Can we go back to the same page on | 12:03:33 |
| 4 | 201? | 12:03:36 |
| 5 | A.   It's actually incorrect.  It says, | 12:03:36 |
| 6 | "Complete USB peripheral."  In fact, what I | 12:03:39 |
| 7 | believe it is, sitting here now, it is | 12:03:41 |
| 8 | actually two USB peripherals. | 12:03:43 |
| 9 | Q.   I agree with you.  That's the | 12:03:45 |
| 10 | document that you had on your list that you | 12:03:47 |
| 11 | considered.  201 is the document that's not on | 12:03:48 |
| 12 | your list.  Let's go back to 201. | 12:03:51 |
| 13 | A.   I don't recall if I looked at both | 12:03:53 |
| 14 | documents, sitting here now. | 12:03:55 |
| 15 | Q.   I understand.  It's not a memory | 12:03:56 |
| 16 | test. | 12:03:58 |
| 17 | So if you look down on the | 12:04:00 |
| 18 | acronyms and definitions for EP Bridge, it | 12:04:02 |
| 19 | defines bridge logic containing both UDCs and | 12:04:06 |
| 20 | the FIFO logic, doesn't it? | 12:04:10 |
| 21 | A.   It does.  It does. | 12:04:12 |
| 22 | Q.   Okay. | 12:04:15 |
| 23 | And you were here for Mr. | 12:04:23 |
| 24 | Zatkovich's testimony; correct? | 12:04:25 |

TRIAL - VOLUME 5

Page 196

```
 1      A.   I was.                                    12:04:26

 2      Q.   And that's completely consistent with    12:04:26

 3  what Mr. Zatkovich testified?                      12:04:29

 4      A.   It is, but I disagree with his           12:04:30

 5  testimony.                                         12:04:33

 6      Q.   And do you disagree with this            12:04:33

 7  definition?                                        12:04:34

 8      A.   Where it appears here, that seems        12:04:36

 9  consistent.                                        12:04:38

10      Q.   Okay.  Let's see.                         12:04:39

11           MR. SLAYDEN:  Can we go to               12:04:42

12  Exhibit 116.                                       12:04:44

13  BY MR. SLAYDEN:                                    12:05:07

14      Q.   Can you turn to Exhibit 116?  My         12:05:08

15  apologies.                                         12:05:10

16      A.   I heard that even if you didn't say      12:05:11

17  that.                                              12:05:12

18      Q.   You're correct.                          12:05:13

19           (Whereupon, Trial Exhibit 116 was        12:05:13

20  introduced.)                                       12:05:13

21  BY MR. SLAYDEN:                                    12:05:13

22      Q.   Do you recognize that document?          12:05:23

23      A.   I don't remember it right now, but it    12:05:24

24  looks -- I guess that's all I can say at this     12:05:26
```

Page 197

```
 1   point.                                          12:05:30

 2            MR. SLAYDEN:  Can you blow up the       12:05:39

 3   first page, the first block, Mr. Ferrer, at     12:05:40

 4   the top?                                         12:05:43

 5   BY MR. SLAYDEN:                                  12:05:48

 6      Q.   It says, "DR Hub Test, Developing the    12:05:50

 7   single Host solution, October 29, 2013,          12:05:54

 8   Unwired."                                        12:05:56

 9            Do you see that?                         12:05:57

10      A.   I see that.                               12:05:58

11            THE COURT:  Is that in evidence,         12:05:59

12   Mr. Slayden?                                      12:06:00

13            MR. SLAYDEN:  I'm sorry, don't           12:06:01

14   publish that.  My apologies.                      12:06:02

15            Can you go to page 2?                     12:06:06

16            THE WITNESS:  I'm sorry?                  12:06:16

17            MR. SLAYDEN:  Your Honor, I will         12:06:17

18   move to admit Exhibit 116.                        12:06:18

19            MR. SAULSBURY:  No objection, Your       12:06:22

20   Honor.                                            12:06:24

21            THE COURT:  Okay.  It is received.       12:06:24

22            MR. SLAYDEN:  Okay.  My apologies.       12:06:25

23            Can we go to page 2, Mr. Ferrer?         12:06:28

24   And the top block, highlight that.               12:06:32
```

| | | |
|---|---|---|
| 1 | BY MR. SLAYDEN: | 12:06:35 |
| 2 | Q.   It says the "Bridge Device." | 12:06:35 |
| 3 | Do you see that? | 12:06:37 |
| 4 | A.   I see that. | 12:06:38 |
| 5 | Q.   It is kind of a bad copy, but that's | 12:06:39 |
| 6 | what we got. | 12:06:43 |
| 7 | A.   I understand. | 12:06:44 |
| 8 | Q.   I would give you a better copy if I | 12:06:46 |
| 9 | had it. | 12:06:48 |
| 10 | So at the top it says, | 12:06:49 |
| 11 | "Conceptually:  Two USB Device Controllers | 12:06:51 |
| 12 | glued together with FIFO's and specialized | 12:06:56 |
| 13 | control logic." | 12:06:59 |
| 14 | Do you agree with that? | 12:07:01 |
| 15 | A.   Not completely. | 12:07:03 |
| 16 | Q.   You don't.  Okay. | 12:07:05 |
| 17 | A.   I said "not completely." | 12:07:06 |
| 18 | Q.   Not completely? | 12:07:07 |
| 19 | A.   Not completely. | 12:07:08 |
| 20 | Q.   Oh.  So Unwired has got it wrong? | 12:07:09 |
| 21 | A.   Well, this is not the technical | 12:07:13 |
| 22 | documents that define what the -- that they | 12:07:15 |
| 23 | implemented.  This is a summary. | 12:07:20 |
| 24 | Q.   Can you go to your book and | 12:07:26 |

TRIAL - VOLUME 5

Page 199

1    Exhibit 139.                                        12:07:29

2            (Whereupon, Trial Exhibit 139 was          12:07:29

3    introduced.)                                       12:07:29

4            THE WITNESS:  Okay.  I'm there.            12:07:35

5    BY MR. SLAYDEN:                                    12:07:37

6        Q.  Do you recognize that?                     12:07:37

7        A.  It seems like something we have seen       12:07:40

8    before.  I don't know for a fact that it is        12:07:43

9    but...                                             12:07:46

10           MR. SLAYDEN:  Okay.  Move to admit         12:07:47

11   Exhibit 139.                                       12:07:49

12           MR. SAULSBURY:  No objection, Your         12:07:53

13   Honor.                                             12:07:54

14           THE COURT:  All right.  It can             12:07:54

15   come in.                                           12:07:56

16   BY MR. SLAYDEN:                                    12:08:05

17       Q.  Can we turn to page 4 of 139.              12:08:05

18       A.  Okay.                                      12:08:10

19       Q.  And at the top of page 4, that's a        12:08:11

20   similar type of diagram that you testified to      12:08:16

21   on direct; correct?                                12:08:19

22       A.  Correct.                                   12:08:20

23       Q.  And that lists here two USB, Device A      12:08:24

24   and Device B; correct?                             12:08:28

TRIAL - VOLUME 5

Page 200

| | | |
|---|---|---|
| 1 | A.   I'm sorry? | 12:08:29 |
| 2 | Q.   That lists your USB Device A -- | 12:08:30 |
| 3 | A.   Device A and Device B, yes. | 12:08:34 |
| 4 | Q.   In your USB Device A and B, is that | 12:08:36 |
| 5 | where the UDCs would reside? | 12:08:38 |
| 6 | A.   That's part of what -- FIFOs would be | 12:08:40 |
| 7 | also there. | 12:08:43 |
| 8 | Q.   Okay. | 12:08:44 |
| 9 | A.   Or the endpoint buffers may be a | 12:08:49 |
| 10 | better way of saying it. | 12:08:52 |
| 11 | MR. SLAYDEN:  And the first | 12:08:54 |
| 12 | sentence under, "Operational Description," Mr. | 12:08:55 |
| 13 | Ferrer, can you blow that up? | 12:08:57 |
| 14 | BY MR. SLAYDEN: | 12:08:57 |
| 15 | Q.   Do you see that? | 12:09:02 |
| 16 | A.   I do. | 12:09:02 |
| 17 | Q.   Do you agree with that? | 12:09:03 |
| 18 | A.   Not totally. | 12:09:04 |
| 19 | Q.   Why is that? | 12:09:05 |
| 20 | A.   Well, it describes the custom bridge | 12:09:06 |
| 21 | device as actually the only thing the head | 12:09:09 |
| 22 | unit can see of USB Device A and the hub. | 12:09:12 |
| 23 | Q.   So you disagree with it? | 12:09:14 |
| 24 | A.   I disagree with the last part of | 12:09:16 |

TRIAL - VOLUME 5

Page 201

```
 1    custom bridge device.                          12:09:18

 2        Q.    Okay.                                12:09:19

 3              And do you see the next sentence?    12:09:23

 4              MR. SLAYDEN:  Mr. Ferrer.            12:09:27

 5    BY MR. SLAYDEN:                                12:09:30

 6        Q.   "Head Unit loads a custom driver for  12:09:30

 7    the Bridge device supplied by Unwired/Delphi." 12:09:32

 8              Do you see that?                      12:09:36

 9        A.   Yes, certainly.  That's my            12:09:37

10    understanding, loads the custom driver for      12:09:38

11    Device A, yes.                                  12:09:41

12        Q.   And it says, "the Bridge device."     12:09:42

13              Do you see that?                      12:09:43

14        A.   I see that, yes.                       12:09:44

15              MR. SLAYDEN:  Can you go to           12:09:52

16    Exhibit 143, Mr. Ferrer -- oh, excuse me.  Let  12:09:53

17    me make sure...                                 12:09:58

18    BY MR. SLAYDEN:                                 12:10:02

19        Q.   Turn in your notebook to 143.          12:10:02

20              (Whereupon, Trial Exhibit 143 was     12:10:02

21    introduced.)                                     12:10:02

22              THE WITNESS:  I'm there.               12:10:05

23    BY MR. SLAYDEN:                                  12:10:09

24        Q.   And what is that?                       12:10:09
```

TRIAL - VOLUME 5

Page 202

| | | |
|---|---|---|
| 1 | A.   Appears to be some sort of | 12:10:11 |
| 2 | presentation by Delphi to Renault. | 12:10:13 |
| 3 | MR. SLAYDEN:  Move to admit | 12:10:16 |
| 4 | Exhibit 143. | 12:10:19 |
| 5 | THE COURT:  Mr. Saulsbury? | 12:10:21 |
| 6 | MR. SAULSBURY:  No objection, Your | 12:10:23 |
| 7 | Honor. | 12:10:24 |
| 8 | THE COURT:  Okay. | 12:10:24 |
| 9 | MR. SLAYDEN:  Can you publish -- | 12:10:27 |
| 10 | yep, publish the first page. | 12:10:28 |
| 11 | BY MR. SLAYDEN: | 12:10:37 |
| 12 | Q.   So as you mentioned, it looks like a | 12:10:38 |
| 13 | Delphi presentation to Renault.  I do believe | 12:10:41 |
| 14 | this was on your list. | 12:10:44 |
| 15 | A.   I'll take your word for it. | 12:10:46 |
| 16 | Q.   Okay. | 12:10:48 |
| 17 | And if you -- | 12:10:48 |
| 18 | MR. SLAYDEN:  Mr. Ferrer, you will | 12:10:51 |
| 19 | have to use the Bates number on the bottom | 12:10:52 |
| 20 | right, go to 95180. | 12:10:54 |
| 21 | BY MR. SLAYDEN: | 12:11:08 |
| 22 | Q.   And Option 3, first sentence, | 12:11:00 |
| 23 | "Includes a Bridge Device embedded in the USB | 12:11:09 |
| 24 | Hub." | 12:11:11 |

TRIAL - VOLUME 5

Page 203

| | | |
|---|---|---|
| 1 | Do you see that? | 12:11:12 |
| 2 | A.   I see that.  Two USB devices. | 12:11:12 |
| 3 | Q.   "Includes a Bridge Device embedded in | 12:11:16 |
| 4 | USB Hub"; do you agree with that? | 12:11:18 |
| 5 | A.   Two USB devices, yeah. | 12:11:20 |
| 6 | Q.   Is it no then? | 12:11:23 |
| 7 | A.   Well, this is a market presentation, | 12:11:24 |
| 8 | so we're at up level things and people don't | 12:11:26 |
| 9 | usually care about the details. | 12:11:31 |
| 10 | Q.   Okay.  I see. | 12:11:32 |
| 11 | MR. SLAYDEN:  Let's go to -- can | 12:11:35 |
| 12 | we go to exhibit -- make sure it's in.  I | 12:11:38 |
| 13 | think that's in. | 12:11:41 |
| 14 | BY MR. SLAYDEN: | 12:11:46 |
| 15 | Q.   Can you turn to Exhibit 12, please. | 12:11:46 |
| 16 | A.   I'm there. | 12:11:52 |
| 17 | MR. SLAYDEN:  And that's admitted. | 12:11:55 |
| 18 | BY MR. SLAYDEN: | 12:11:57 |
| 19 | Q.   Now, this is dated 2014 before this | 12:12:01 |
| 20 | lawsuit; correct? | 12:12:03 |
| 21 | A.   Appears to be, yes. | 12:12:05 |
| 22 | Q.   And it's a presentation to Apple; | 12:12:06 |
| 23 | correct? | 12:12:09 |
| 24 | A.   I think I heard testimony about that, | 12:12:12 |

TRIAL - VOLUME 5

Page 204

1    but I don't know for a fact.                          12:12:14

2         Q.   In fact, you did.                           12:12:15

3         A.   Okay.                                       12:12:17

4         Q.   And it is marked, "Delphi/Unwired           12:12:18

5    Confidential," at the bottom?                         12:12:23

6         A.   Yes.                                        12:12:24

7              MR. SLAYDEN:  Now, if you go to             12:12:28

8    page 4 of 8, Mr. Ferrer.                              12:12:29

9    BY MR. SLAYDEN:                                       12:12:36

10        Q.   The first sentence, that's the same         12:12:36

11   sentence we just saw in the last one.                 12:12:38

12        A.   Yes, it is.                                 12:12:43

13        Q.   Okay.                                       12:12:43

14             And the next sentence was the same          12:12:45

15   sentence we saw in the last one?                      12:12:46

16        A.   Yes, it is.                                 12:12:48

17        Q.   Now, before we move on, this diagram        12:12:48

18   doesn't show everything; right?                       12:12:54

19        A.   That's correct.                             12:12:56

20        Q.   This conceptual diagram.                    12:12:58

21             In fact, there is a controller              12:13:00

22   somewhere; correct?                                   12:13:02

23        A.   Controller is used in many ways in          12:13:04

24   this case, so I don't know what you're asking.        12:13:07

Page 205

1        Q.   Well, you can tell me; is there some        12:13:10

2   type of controller that is part of this               12:13:13

3   system?                                               12:13:16

4        A.   There's two device controllers and          12:13:17

5   there's also a device controller in the hub           12:13:19

6   and that's probably...                                12:13:22

7        Q.   And we talked about the MCU on               12:13:24

8   Exhibit 7?                                             12:13:29

9        A.   I believe so, yes.                           12:13:29

10       Q.   And that's something necessary?             12:13:30

11       A.   To do things, yes.  It's another type      12:13:34

12   of controller, I suppose.                            12:13:37

13       Q.   And you need a controller for the          12:13:38

14   bridge, don't you?                                    12:13:42

15       A.   I guess, yes or no, depending upon         12:13:47

16   what you mean by that.                                12:13:50

17       Q.   Were you here for Mr. Voto's              12:13:51

18   testimony?                                            12:13:53

19       A.   I was.                                       12:13:53

20       Q.   I'll read you what he said.                12:13:54

21            "So specifically we see this box           12:13:59

22   down here that says, 'H2H controller.'  That's        12:14:01

23   what we had to add, now, largely on top of            12:14:05

24   everything else that the hub already did to           12:14:08

Page 206

| | | |
|---|---|---|
| 1 | make the bridge function work." | 12:14:10 |
| 2 | Do you remember that testimony? | 12:14:13 |
| 3 | A.   No, but I don't have any reason to | 12:14:14 |
| 4 | doubt it. | 12:14:16 |
| 5 | Q.   Okay. | 12:14:16 |
| 6 | MR. SLAYDEN:  Go to page 6, Mr. | 12:14:26 |
| 7 | Ferrer, 6 of 8. | 12:14:28 |
| 8 | BY MR. SLAYDEN: | 12:14:43 |
| 9 | Q.   Have you seen that diagram before? | 12:14:44 |
| 10 | A.   I don't remember, but possibly. | 12:14:46 |
| 11 | Q.   And your USB Device A and B are | 12:14:48 |
| 12 | shown; right? | 12:14:51 |
| 13 | MR. SLAYDEN:  Mr. Ferrer, can you | 12:14:55 |
| 14 | highlight them? | 12:14:56 |
| 15 | THE WITNESS:  Yes. | 12:14:56 |
| 16 | BY MR. SLAYDEN: | 12:14:57 |
| 17 | Q.   And the FIFOs are shown; correct? | 12:15:03 |
| 18 | A.   Endpoint buffers, yeah, we were | 12:15:06 |
| 19 | talking about. | 12:15:08 |
| 20 | Q.   Those are the FIFOs; right? | 12:15:09 |
| 21 | A.   Correct. | 12:15:11 |
| 22 | Q.   And the thing that Mr. Voto said we | 12:15:12 |
| 23 | had to add on top, which is on top, is the | 12:15:15 |
| 24 | bridge controller; correct? | 12:15:19 |

| | | |
|---|---|---|
| 1 | A.   To control traffic, yes. | 12:15:20 |
| 2 | Q.   Yeah. | 12:15:22 |
| 3 |       And it's controlling -- it's | 12:15:23 |
| 4 | connected to Device A and B; correct? | 12:15:27 |
| 5 | A.   For some version of connected, yes, I | 12:15:32 |
| 6 | suppose. | 12:15:35 |
| 7 | Q.   And it's also involved, as you said, | 12:15:36 |
| 8 | in the cross traffic between the FIFOs? | 12:15:39 |
| 9 | A.   No, not -- not for the both FIFOs as | 12:15:42 |
| 10 | shown here.  It's got no involvement.  It's | 12:15:45 |
| 11 | only involved, as we talked about, for | 12:15:48 |
| 12 | carrying a control from the iPhone operating | 12:15:51 |
| 13 | in host mode through this system having to be | 12:15:54 |
| 14 | copied and going up to the head unit, yes. | 12:15:57 |
| 15 | Q.   And to the left, it shows | 12:16:01 |
| 16 | conceptually that it's hooked up to the head | 12:16:02 |
| 17 | unit? | 12:16:05 |
| 18 | A.   Correct. | 12:16:05 |
| 19 | Q.   And to the right, it shows | 12:16:05 |
| 20 | conceptually it's hooked up to the iPhone? | 12:16:06 |
| 21 | A.   When it -- yes, only when it's in | 12:16:09 |
| 22 | host mode, yes. | 12:16:11 |
| 23 | Q.   And all these components are | 12:16:13 |
| 24 | identified at the top as the "Bridge Device"; | 12:16:14 |

TRIAL - VOLUME 5

Page 208

```
 1    correct?                                       12:16:18

 2         A.   In Aptiv's summary label, yes.  It   12:16:18

 3    doesn't change the presence of two USB         12:16:23

 4    devices, yes.                                  12:16:25

 5         Q.   That's the presentation to Aptiv -- I 12:16:26

 6    mean to, excuse me, Apple; right?              12:16:28

 7         A.   Yes.                                 12:16:31

 8         Q.   Okay.                                12:16:32

 9              MR. SLAYDEN:  Now, can you blow       12:16:39

10    back out, Mr. Ferrer, back down on the page.   12:16:43

11              THE WITNESS:  It's also a USB         12:16:45

12    device.                                        12:16:47

13              MR. SLAYDEN:  Okay.                   12:16:47

14    BY MR. SLAYDEN:                                12:16:47

15         Q.   Look at the first sentence.  That    12:16:49

16    says, "The Device controllers in the Bridge   12:16:56

17    Device are configured to contain" -- excuse    12:16:58

18    me, "Device controllers in the Bridge Device   12:17:01

19    are configured to contain all endpoints        12:17:04

20    required by CarPlay."                          12:17:06

21              Do you see that?                     12:17:08

22         A.   I do.                                12:17:09

23         Q.   So the USB device controllers are in 12:17:09

24    your USB Device A and B; is that correct?      12:17:11
```

TRIAL - VOLUME 5

Page 209

```
 1        A.    That's correct.                          12:17:14

 2        Q.    So you were here for Mr. Zatkovich's      12:17:21

 3   testimony?                                           12:17:24

 4        A.    I was.                                    12:17:25

 5        Q.    That's consistent with what Mr.           12:17:26

 6   Zatkovich testified; correct?                        12:17:30

 7        A.    Well, yes and no.  I mean, it says        12:17:32

 8   that, but it's not technically correct.              12:17:36

 9        Q.    So this is Delphi and Unwired             12:17:41

10   together making a presentation to Apple.  It's       12:17:44

11   probably pretty important, wouldn't you think?       12:17:47

12        A.    It's important, but I don't know what     12:17:49

13   the voiceover was for these.  These are              12:17:50

14   particularly reference slides that you talk          12:17:53

15   over.  If it was an engineering discussion,          12:17:55

16   they would disclose the additional detail as         12:17:57

17   we've been talking about.                            12:17:59

18              Sorry, I'm going too fast.                12:18:01

19              MR. SLAYDEN:  Can you go back to          12:18:03

20   page 4, Mr. Ferrer.                                  12:18:05

21   BY MR. SLAYDEN:                                      12:18:07

22        Q.    That's the diagram you used --            12:18:07

23        A.    Correct.                                  12:18:11

24        Q.    -- to support your non-infringement       12:18:11
```

TRIAL - VOLUME 5

Page 210

| | | |
|---|---|---|
| 1 | theory; correct? | 12:18:13 |
| 2 | A.   Among -- among others. | 12:18:14 |
| 3 | Q.   And that's less technical than what I | 12:18:16 |
| 4 | just showed you; wouldn't you agree? | 12:18:19 |
| 5 | A.   It is, but I also showed you more | 12:18:20 |
| 6 | technical ones. | 12:18:22 |
| 7 | Q.   And that was Exhibit 7? | 12:18:23 |
| 8 | A.   I don't -- no, there was another one | 12:18:25 |
| 9 | that showed the physical information about | 12:18:27 |
| 10 | this thing called C USB 2 which is the IP | 12:18:32 |
| 11 | block that AyDeeKay used in the actual | 12:18:36 |
| 12 | implementation. | 12:18:39 |
| 13 | Q.   And Exhibit 7 included the -- well, | 12:18:40 |
| 14 | you didn't have it because you had black and | 12:18:42 |
| 15 | white, but Exhibit 7 included the seven | 12:18:44 |
| 16 | components in red; right? | 12:18:46 |
| 17 | A.   It included seven components in red, | 12:18:47 |
| 18 | yes. | 12:18:49 |
| 19 | Q.   And they were the same components | 12:18:49 |
| 20 | listed here. | 12:18:51 |
| 21 | MR. SLAYDEN:  Go back to the | 12:18:54 |
| 22 | diagram at the end, Mr. Ferrer. | 12:18:55 |
| 23 | BY MR. SLAYDEN: | 12:19:01 |
| 24 | Q.   Those are the same components we | 12:19:02 |

Page 211

```
 1    identified; there's the UDCs are in there, the      12:19:03

 2    FIFOs are in there, the controller's in there?      12:19:09

 3        A.   Sure.  And this is also a different        12:19:11

 4    slice through the information presented to           12:19:13

 5    Apple, but the more detailed figures, I have        12:19:16

 6    presented some slightly different information,       12:19:19

 7    yes.                                                 12:19:21

 8        Q.   Okay.                                       12:19:21

 9             MR. SLAYDEN:  Let's go to Slide 15          12:19:25

10    in the last deck.                                    12:19:27

11    BY MR. SLAYDEN:                                      12:19:37

12        Q.   Now, you're familiar with these two        12:19:37

13    figures; right?                                      12:19:39

14        A.   I am.                                       12:19:39

15        Q.   Are you too familiar?                       12:19:41

16        A.   Way too familiar.                           12:19:42

17        Q.   Retirement is coming soon.                  12:19:44

18        A.   I am certainly hoping.                      12:19:45

19        Q.   Me, too.                                    12:19:47

20             Now, I'd like to make sure that             12:19:48

21    the jury understands how these two figures           12:19:53

22    relate, and they do relate; right?                   12:19:56

23        A.   They do, but there is a better figure       12:19:58

24    for the one on the left, but keep going.             12:20:01
```

1      Q.   Which one is a better figure?                12:20:03

2      A.   One of the ones I used that showed           12:20:05

3   the USB devices with the endpoints included in       12:20:07

4   them.                                                 12:20:10

5      Q.   Okay.                                         12:20:11

6           Well, you testified yesterday that           12:20:15

7   UDC_US, that's the upstream UDC in Exhibit 7,         12:20:17

8   corresponds to USB Device A in the Figure 12          12:20:23

9   of Exhibit 17; correct?                               12:20:29

10     A.   I would have to go back and look, but        12:20:31

11  it also includes the endpoint buffers as we          12:20:33

12  talked about.                                         12:20:36

13          MR. SLAYDEN:  Can you go to the               12:20:46

14  next slide, Mr. Ferrer.                               12:20:47

15  BY MR. SLAYDEN:                                       12:20:53

16     Q.   Is that correct?                              12:20:53

17     A.   It also includes the endpoint buffers        12:20:54

18  for -- the USB Device A includes the device          12:20:57

19  controller plus the endpoint buffers, because        12:21:00

20  that's what the device controller actually is,       12:21:03

21  according to the information that Aptiv              12:21:04

22  published.                                            12:21:06

23          There's also, I mean, source code           12:21:12

24  that we talked about, so there's some other         12:21:14

TRIAL - VOLUME 5

Page 213

```
 1    pieces.                                        12:21:16

 2             MR. SLAYDEN:   Okay.   Can we go to    12:21:20

 3    the deposition, Volume 4.                       12:21:22

 4             We will go with the testimony from     12:21:46

 5    yesterday.   It's at 1516, line 11.   I'm sorry.  12:21:48

 6             (Brief pause.)                          12:22:36

 7             MR. SLAYDEN:   My apologies.            12:22:41

 8    Sorry, it takes... 1516, you might have gone     12:22:43

 9    past it, line 11.   Yeah, pull that up.          12:22:51

10    Line 11 through, I'm sorry, 14.                  12:23:07

11    BY MR. SLAYDEN:                                  12:23:13

12        Q.   So this is your testimony.             12:23:14

13        A.   Yep.   I mean, as I mentioned           12:23:17

14    extensively, there is Device A is UDC_US plus    12:23:20

15    FIFOs and plus other source code we've talked    12:23:24

16    about.                                           12:23:27

17        Q.   Okay.                                   12:23:28

18             And likewise, didn't you testify       12:23:37

19    yesterday that USB --                            12:23:39

20        A.   I'm sorry, can you start over?   I      12:23:40

21    didn't hear the first part of that.              12:23:42

22        Q.   I said, likewise yesterday, you         12:23:44

23    testified that UDC_DS, the downstream, that's    12:23:46

24    the iPhone side; correct?                        12:23:50
```

TRIAL - VOLUME 5

Page 214

| | | |
|---|---|---|
| 1 | A.    Correct. | 12:23:52 |
| 2 | Q.    And you testified that that was USB | 12:23:53 |
| 3 | Device B on page 12 in Exhibit 17. | 12:23:59 |
| 4 | MR. SLAYDEN:  And that's at | 12:24:06 |
| 5 | 15:16:26, if you go back out.  19 through 22. | 12:24:14 |
| 6 | BY MR. SLAYDEN: | 12:24:29 |
| 7 | Q.    So yesterday, you testified that | 12:24:30 |
| 8 | Device B is the downstream port, UDC_DS, or | 12:24:33 |
| 9 | again, USB device controller downstream, and | 12:24:38 |
| 10 | that's the iPhone's device; correct? | 12:24:40 |
| 11 | A.    I guess we talked about extensively | 12:24:41 |
| 12 | that Device B is the controller plus endpoint | 12:24:45 |
| 13 | plus source code. | 12:24:49 |
| 14 | Q.    You didn't say that yesterday. | 12:24:50 |
| 15 | A.    It's hard to provide all the detail | 12:24:51 |
| 16 | in a simple yes. | 12:24:53 |
| 17 | Q.    Okay. | 12:24:54 |
| 18 | THE COURT:  Is there an objection? | 12:24:56 |
| 19 | MR. SAULSBURY:  It's okay. | 12:24:57 |
| 20 | THE COURT:  I wasn't sure.  I | 12:24:59 |
| 21 | couldn't hear it. | 12:25:01 |
| 22 | MR. SLAYDEN:  Can we move back to | 12:25:02 |
| 23 | Slide 15?  That's fine. | 12:25:03 |
| 24 | BY MR. SLAYDEN: | 12:25:14 |

TRIAL - VOLUME 5

Page 215

| | | |
|---|---|---|
| 1 | Q.   Now, Mr. Garney, you'd agree with me | 12:25:14 |
| 2 | that there is something you previously called | 12:25:18 |
| 3 | bridge transfer logic in the Boston chip; | 12:25:21 |
| 4 | correct? | 12:25:23 |
| 5 | A.   I would have to see, but possibly, | 12:25:25 |
| 6 | yes. | 12:25:27 |
| 7 | MR. SLAYDEN:  Can we go to the | 12:25:29 |
| 8 | deposition transcript, please.  Page 494. | 12:25:29 |
| 9 | MR. SAULSBURY:  Objection, Your | 12:25:36 |
| 10 | Honor.  This is improper impeachment. | 12:25:51 |
| 11 | THE COURT:  All right.  I agree. | 12:25:54 |
| 12 | It's not -- so if you have | 12:25:55 |
| 13 | something to impeach him with, Mr. Slayden, I | 12:26:00 |
| 14 | guess you can, but we are not going to | 12:26:03 |
| 15 | reiterate what we did yesterday. | 12:26:04 |
| 16 | MR. SLAYDEN:  Okay. | 12:26:06 |
| 17 | BY MR. SLAYDEN: | 12:26:06 |
| 18 | Q.   Do you recall previously testifying | 12:26:07 |
| 19 | that the Boston 2 chip included bridge | 12:26:08 |
| 20 | transfer logic? | 12:26:12 |
| 21 | A.   I don't recall sitting here now, but | 12:26:13 |
| 22 | could be. | 12:26:15 |
| 23 | Q.   Yes or no? | 12:26:21 |
| 24 | A.   I don't have a photographic memory, | 12:26:21 |

Page 216

| | | |
|---|---|---|
| 1 | so I don't know.  I'm not sure of that | 12:26:23 |
| 2 | particular phrase.  It sounds familiar, but... | 12:26:26 |
| 3 | Q.   And did you -- do you remember | 12:26:30 |
| 4 | testifying that the bridge transfer logic is | 12:26:32 |
| 5 | part of the device as manufactured? | 12:26:36 |
| 6 | A.   Part of the hub-to-hub -- part of the | 12:26:40 |
| 7 | Boston 2 chip? | 12:26:44 |
| 8 | Q.   Yes. | 12:26:45 |
| 9 | A.   Ask the question again.  Sorry. | 12:26:46 |
| 10 | Q.   Do you remember testifying that the | 12:26:48 |
| 11 | bridge transfer logic is part of the device, | 12:26:51 |
| 12 | the Boston 2 chip, as manufactured? | 12:26:54 |
| 13 | A.   I mean, there is a lot of pieces in | 12:26:58 |
| 14 | there to unpack, so I'm not sure how to answer | 12:26:59 |
| 15 | that question.  I don't have a photographic | 12:27:02 |
| 16 | memory if I said those exact words. | 12:27:05 |
| 17 | Q.   Do you think, if we look at your | 12:27:07 |
| 18 | deposition testimony, that would refresh your | 12:27:09 |
| 19 | recollection? | 12:27:11 |
| 20 | A.   I suppose that's one way to do it. | 12:27:11 |
| 21 | MR. SLAYDEN:  Okay.  Can we pull | 12:27:13 |
| 22 | up page 494. | 12:27:14 |
| 23 | MR. SAULSBURY:  Your Honor -- | 12:27:17 |
| 24 | THE COURT:  I'm sorry, is that an | 12:27:18 |

TRIAL - VOLUME 5

Page 217

```
 1    objection?                                  12:27:20

 2             MR. SAULSBURY:  Objection, Your     12:27:20

 3    Honor.                                      12:27:22

 4             THE COURT:  Yeah.  If you want to   12:27:22

 5    show him something to refresh his           12:27:23

 6    recollection, you can.  We are not going to 12:27:25

 7    put it in front of the jury to refresh      12:27:27

 8    recollection.                               12:27:29

 9             MR. SLAYDEN:  Yes, Your Honor.      12:27:29

10    May I approach?                             12:27:30

11             THE COURT:  Yes.  Go back.  He can  12:27:32

12    say it either does or doesn't refresh his   12:27:32

13    recollection.                               12:27:54

14             THE WITNESS:  I don't recall        12:27:54

15    saying that, but it appears to be in my     12:27:55

16    deposition transcript.                      12:27:57

17             MR. SLAYDEN:  Okay.  Excuse me.     12:28:00

18             (Brief pause.)                      12:28:25

19    BY MR. SLAYDEN:                             12:28:36

20       Q.   And do you remember testifying that 12:28:37

21    the transfer logic was developed specifically 12:28:40

22    for Aptiv?                                  12:28:43

23       A.   I don't remember that sitting here  12:28:44

24    now.                                        12:28:46
```

TRIAL - VOLUME 5

Page 218

| | | |
|---|---|---|
| 1 | Q.   If I showed you something, might it | 12:28:48 |
| 2 | refresh your recollection? | 12:28:49 |
| 3 | A.   You could try.  It's been a long | 12:28:51 |
| 4 | case. | 12:28:53 |
| 5 | It doesn't refresh my memory.  I'm | 12:29:09 |
| 6 | sorry. | 12:29:11 |
| 7 | Q.   "Do you remember testifying that" -- | 12:29:34 |
| 8 | I'm fearful you don't; I'm not having much | 12:29:38 |
| 9 | luck -- "that bridge transfer logic is | 12:29:43 |
| 10 | permanently wired to each of the UDC blocks | 12:29:45 |
| 11 | shown in Exhibit 7, the figure on the | 12:29:49 |
| 12 | left-hand side?" | 12:29:51 |
| 13 | MR. SLAYDEN:  Do we have Figure 7? | 12:29:54 |
| 14 | MR. SAULSBURY:  Mr. Slayden, where | 12:29:59 |
| 15 | are you reading from? | 12:30:01 |
| 16 | MR. SLAYDEN:  The deposition. | 12:30:02 |
| 17 | MR. SAULSBURY:  Okay.  Page and | 12:30:03 |
| 18 | line number? | 12:30:05 |
| 19 | MR. SLAYDEN:  494, lines 14 to 19. | 12:30:06 |
| 20 | BY MR. SLAYDEN: | 12:30:11 |
| 21 | Q.   And the question is, "Do you remember | 12:30:11 |
| 22 | testifying that that bridge transfer logic is | 12:30:14 |
| 23 | permanently wired to each of the UDC blocks | 12:30:17 |
| 24 | shown in Exhibit 7, the figure on the left," | 12:30:20 |

TRIAL - VOLUME 5

Page 219

```
 1   here at Slide 15?                                    12:30:24

 2       A.   I don't remember that specific             12:30:25

 3   testimony.  I know there are connections,           12:30:26

 4   but...                                              12:30:30

 5       Q.   So you think -- you don't remember         12:30:30

 6   testifying about the permanent wiring from the      12:30:33

 7   transfer logic?                                     12:30:35

 8            MR. SAULSBURY:  Objection, Your            12:30:36

 9   Honor.                                              12:30:37

10            THE COURT:  Sustained.                     12:30:37

11            MR. SLAYDEN:  Let me show you that         12:30:43

12   excerpt from your deposition and see if that        12:30:44

13   refreshes your recollection.                        12:30:46

14            MR. SAULSBURY:  Your Honor, can we         12:31:04

15   have a sidebar, please?                             12:31:05

16            THE COURT:  Yeah.                          12:31:06

17            (Whereupon, a discussion was held          12:31:06

18   at sidebar as follows:                              12:31:06

19            MR. SAULSBURY:  When he is                 12:33:24

20   refreshing, he needs to let us know the             12:33:24

21   excerpt.  He can't just -- he is showing him        12:33:24

22   the two-line excerpt and that doesn't provide       12:33:24

23   the necessary context to refresh his                12:33:24

24   testimony.                                          12:33:24
```

Page 220

| | | |
|---|---|---|
| 1 | THE COURT:  Well, I mean, if the | 12:33:24 |
| 2 | witness can -- look, I think the witness can | 12:33:24 |
| 3 | look and see and if he needs more context and | 12:33:24 |
| 4 | then he can ask for it. | 12:33:24 |
| 5 | I will say that I am concerned, | 12:33:24 |
| 6 | Mr. Slayden.  You can't start out by repeating | 12:33:24 |
| 7 | language from the deposition -- | 12:33:24 |
| 8 | MR. SLAYDEN:  Yes, Your Honor. | 12:33:24 |
| 9 | THE COURT:  -- and then ask him to | 12:33:24 |
| 10 | either adopt it or not adopt it and then hand | 12:33:24 |
| 11 | him the transcript, because you've already let | 12:33:24 |
| 12 | the cat out of the bag; right? | 12:33:24 |
| 13 | You can ask him the question that | 12:33:24 |
| 14 | captures the phraseology that was asked at the | 12:33:24 |
| 15 | deposition.  If he says "I don't know" or "I | 12:33:24 |
| 16 | don't remember," show him the stuff and see if | 12:33:24 |
| 17 | it refreshes his recollection.  You shouldn't | 12:33:24 |
| 18 | represent to the jury what it is. | 12:33:24 |
| 19 | MR. SLAYDEN:  Okay.  Yes, Your | 12:33:24 |
| 20 | Honor. | 12:33:24 |
| 21 | THE COURT:  Just hand it to him | 12:33:24 |
| 22 | and say, does this refresh your recollection, | 12:33:24 |
| 23 | and he can say yes or no.  And if he says no, | 12:33:24 |
| 24 | I'm not sure what this is, that's fine. | 12:33:25 |

TRIAL - VOLUME 5

Page 221

1        You know, the problem with giving          12:33:25

2   him the transcript, frankly, is it obviates     12:33:25

3   that because then you have to point him to      12:33:25

4   something.                                       12:33:25

5        MR. SAULSBURY:  Well, the problem          12:33:25

6   we are having is there's implicit               12:33:25

7   representations.                                 12:33:25

8        THE COURT:  I agree.  That's what          12:33:25

9   I am trying to stop.                             12:33:25

10       And so it should be, you know, you         12:33:25

11  can ask him the question that is paraphrased    12:33:25

12  or even the direct quote from the deposition.   12:33:25

13       MR. SLAYDEN:  Okay.                        12:33:25

14       THE COURT:  You can't attribute it        12:33:25

15  to the deposition.                               12:33:25

16       MR. SLAYDEN:  Yes, Your Honor.             12:33:25

17       THE COURT:  Are we close to a             12:33:25

18  lunch break?  I can do it now, but if you've    12:33:25

19  got a few more questions...                      12:33:25

20       MR. SLAYDEN:  I've got a few more          12:33:25

21  questions.                                       12:33:25

22       THE COURT:  All right.  Let's try         12:33:25

23  to be done within 10 minutes.  When you get to  12:33:25

24  a break, let me know.                            12:33:25

TRIAL - VOLUME 5

Page 222

| | | |
|---|---|---|
| 1 | MR. SLAYDEN:  Okay.  All right. | 12:33:29 |
| 2 | (Whereupon, the discussion at | 12:33:29 |
| 3 | sidebar concluded.) | 12:33:29 |
| 4 | BY MR. SLAYDEN: | 12:33:29 |
| 5 | Q.   Switching gears a little bit, | 12:33:44 |
| 6 | yesterday you testified about arbitration. | 12:33:47 |
| 7 | Do you remember that? | 12:33:53 |
| 8 | A.   I believe I do. | 12:33:54 |
| 9 | Q.   And when you testified about | 12:33:56 |
| 10 | arbitration, you said -- | 12:33:57 |
| 11 | A.   I'm having a little hard time hearing | 12:33:59 |
| 12 | you. | 12:34:01 |
| 13 | Q.   I'm sorry.  I'm getting hoarse. | 12:34:01 |
| 14 | A.   I understand. | 12:34:06 |
| 15 | Q.   When you testified about arbitration, | 12:34:06 |
| 16 | you said "because words matter," didn't you? | 12:34:08 |
| 17 | A.   I did most likely.  I don't remember | 12:34:12 |
| 18 | perfectly, but I believe I said that | 12:34:14 |
| 19 | somewhere, yes. | 12:34:16 |
| 20 | Q.   Okay. | 12:34:17 |
| 21 | And my question is, in a patent | 12:34:20 |
| 22 | case, with patent claims, words really matter, | 12:34:22 |
| 23 | don't they? | 12:34:27 |
| 24 | A.   They do. | 12:34:28 |

Page 223

|    |                                                          |          |
|----|----------------------------------------------------------|----------|
| 1  | Q.   And in claims 23 through 25, you                    | 12:34:29 |
| 2  | would agree with me that the word -- the                 | 12:34:36 |
| 3  | little word "arbitrate" does not exist?                  | 12:34:38 |
| 4  | A.   That's correct.                                     | 12:34:41 |
| 5  | Q.   And you would agree with me that the                | 12:34:42 |
| 6  | little word "arbitrate" doesn't exist in a               | 12:34:44 |
| 7  | claim construction this Court has issued;                | 12:34:46 |
| 8  | correct?                                                 | 12:34:49 |
| 9  | A.   I believe that's correct.                           | 12:34:49 |
| 10 | MR. SLAYDEN:  Okay.  No further                          | 12:34:51 |
| 11 | questions, Your Honor.                                   | 12:34:52 |
| 12 | THE COURT:  Okay.  Why don't we                          | 12:34:53 |
| 13 | use that as a point for a lunch break then.              | 12:34:56 |
| 14 | So plan on -- is 30 minutes enough for all of            | 12:34:58 |
| 15 | you?  I want to make sure I'm not                        | 12:35:08 |
| 16 | shortchanging you for lunch.  Yeah?  Okay.  So           | 12:35:10 |
| 17 | let's plan to be back at five after 1.  Okay.            | 12:35:13 |
| 18 | (Whereupon, the jury was excused                         | 12:35:17 |
| 19 | from the courtroom.)                                     | 12:35:20 |
| 20 | THE COURT:  You can step down, Mr.                       | 12:35:38 |
| 21 | Garney.                                                  | 12:35:40 |
| 22 | I assume there is redirect?                              | 12:35:40 |
| 23 | MS. DURIE:  There will be, but                           | 12:35:42 |
| 24 | there is an issue that we want to take up with           | 12:35:43 |

```
 1    the Court.                                  12:35:45

 2            THE COURT:  That's fine.  I just    12:35:46

 3    wanted to know whether he should take the   12:35:47

 4    binders or leave the binders.               12:35:48

 5            MS. DURIE:  Leave the binders, but  12:35:50

 6    if you could, Mr. Garney, grab the physical 12:35:51

 7    Belkin board and chips and bring those.     12:35:54

 8            THE WITNESS:  You want both or       12:35:57

 9    just Belkin?                                12:35:58

10            MS. DURIE:  Belkin, not that --     12:35:59

11    yeah, that, bring those.  Thank you.        12:36:02

12            Your Honor, the issue is this.      12:36:04

13    During the examination, there was displayed a 12:36:07

14    photograph that purported to show certain   12:36:11

15    numbers.  We have taken a look at the -- what 12:36:15

16    we have as the highest resolution copy of the 12:36:18

17    photograph that was produced.  We can't see 12:36:22

18    those numbers.                              12:36:24

19            We have asked counsel for a copy    12:36:25

20    of the demonstrative that they used that    12:36:27

21    purported to have those numbers on it.  They 12:36:31

22    have refused to provide it to us.  We would 12:36:33

23    like to see it because we have not seen those 12:36:35

24    numbers, we cannot verify that they are there. 12:36:38
```

Page 225

| | | |
|---|---|---|
| 1 | We would like to see it and understand where | 12:36:41 |
| 2 | that came from.  I am not making an | 12:36:43 |
| 3 | accusation, but we'd like to see it. | 12:36:46 |
| 4 | THE COURT:  Okay. | 12:36:47 |
| 5 | Mr. Banner? | 12:36:48 |
| 6 | MR. BANNER:  Your Honor, we are | 12:36:49 |
| 7 | happy to provide you with them now.  I wasn't | 12:36:50 |
| 8 | going to provide them with our | 12:36:53 |
| 9 | cross-examination slides during the | 12:36:54 |
| 10 | cross-examination, but now that it's over, | 12:36:56 |
| 11 | we're happy to -- | 12:36:57 |
| 12 | THE COURT:  Give them the slides. | 12:36:59 |
| 13 | MS. DURIE:  Can we understand | 12:37:00 |
| 14 | where they came from? | 12:37:01 |
| 15 | MR. SLAYDEN:  On the first device. | 12:37:02 |
| 16 | THE COURT:  Look, give them the | 12:37:05 |
| 17 | slides and you all talk about it over lunch, | 12:37:06 |
| 18 | and when I come back, if there is an issue, I | 12:37:08 |
| 19 | don't know what you are going to find when you | 12:37:11 |
| 20 | look at the slides. | 12:37:12 |
| 21 | MS. DURIE:  Understood. | 12:37:13 |
| 22 | THE COURT:  So look at them, have | 12:37:14 |
| 23 | a conversation.  If there is an issue I need | 12:37:15 |
| 24 | to take up, I will.  I just don't know.  Okay. | 12:37:17 |

TRIAL - VOLUME 5

Page 226

1           MS. DURIE:  Understood, Your          12:37:19

2    Honor.                                        12:37:20

3           MR. SLAYDEN:  And they are             12:37:20

4    actually photographs that Mr. Garney took.    12:37:21

5           THE COURT:  And again, I don't         12:37:23

6    know.  I am not going to resolve that now.  So 12:37:24

7    let's take lunch and then we'll come back.    12:37:27

8    All right?                                    12:37:30

9           (Whereupon, a luncheon recess was      12:37:31

10   taken at 12:37 p.m.)                          12:37:33

11          (Whereupon, the Court resumed          13:07:51

12   proceedings at 1:08 p.m.)                     13:07:54

13          THE COURT CLERK:  All rise.            13:08:17

14          THE COURT:  I gather there are a       13:08:23

15   couple issues to tackle?                      13:08:25

16          MS. DURIE:  There are.                 13:08:26

17          THE COURT:  All right.                 13:08:28

18          MS. DURIE:  What I understand, and     13:08:31

19   counsel can correct me if I am wrong, is that 13:08:32

20   the photograph that was shown to the witness  13:08:34

21   is not a photograph that was ever produced in 13:08:36

22   discovery.  It is, they claim, a photograph   13:08:39

23   that they took of the insides of the device   13:08:44

24   that their expert took at some point in the   13:08:48

TRIAL - VOLUME 5

Page 227

| | | |
|---|---|---|
| 1 | course of an inspection.  It was not produced. | 13:08:50 |
| 2 | We can't verify what it is. | 13:08:54 |
| 3 | We have disassembled the two | 13:09:00 |
| 4 | devices that you can actually see, taken the | 13:09:03 |
| 5 | cover off.  You can actually see the ports. | 13:09:05 |
| 6 | And it is possible to take high resolution of | 13:09:09 |
| 7 | these photographs of these things and try to | 13:09:14 |
| 8 | figure out what's there, but that was not | 13:09:16 |
| 9 | something that had ever been produced. | 13:09:18 |
| 10 | There was a photograph produced | 13:09:21 |
| 11 | and we have been squinting at it.  It's low | 13:09:23 |
| 12 | resolution and there's no way to see those | 13:09:26 |
| 13 | numbers. | 13:09:29 |
| 14 | MR. RUSSELL:  Your Honor, can I | 13:09:29 |
| 15 | respond? | 13:09:30 |
| 16 | THE COURT:  Yes.  I thought before | 13:09:31 |
| 17 | the break, maybe there was some confusion, | 13:09:32 |
| 18 | that Mr. Banner had taken the photo? | 13:09:35 |
| 19 | MR. RUSSELL:  Right.  There was | 13:09:36 |
| 20 | some confusion.  So there are a number of | 13:09:37 |
| 21 | photographs on our slides.  Most of them are | 13:09:38 |
| 22 | the ones they produced.  This one slide on | 13:09:40 |
| 23 | Slide 15 was actually a photograph we took | 13:09:42 |
| 24 | during the inspection that I believe replaces | 13:09:44 |

TRIAL - VOLUME 5

Page 228

| | | |
|---|---|---|
| 1 | their office's -- oh, so it's being used for | 13:09:50 |
| 2 | demonstrative purposes.  There is no dispute | 13:09:55 |
| 3 | that it accurately represents -- | 13:09:57 |
| 4 | MS. DURIE:  Well -- | 13:09:58 |
| 5 | THE COURT:  Wait, wait, wait, | 13:09:58 |
| 6 | wait, wait.  Let's start with a few things. | 13:10:00 |
| 7 | Was the photograph ever produced in discovery? | 13:10:05 |
| 8 | MR. RUSSELL:  It was not produced | 13:10:09 |
| 9 | in discovery. | 13:10:10 |
| 10 | THE COURT:  Why not?  Was there | 13:10:11 |
| 11 | just an oversight, some objection to producing | 13:10:12 |
| 12 | it? | 13:10:15 |
| 13 | MR. RUSSELL:  So we were treating | 13:10:15 |
| 14 | it as a record of the physical exhibit. | 13:10:17 |
| 15 | THE COURT:  Okay.  All right. | 13:10:19 |
| 16 | So I guess my problem is, it's | 13:10:21 |
| 17 | not -- it wasn't just for demonstrative | 13:10:30 |
| 18 | purposes.  You put it up on the screen, put it | 13:10:32 |
| 19 | in front of the jury, you represented its | 13:10:36 |
| 20 | contents to the jury.  Nobody has gotten up | 13:10:38 |
| 21 | and authenticated it and said it is a true and | 13:10:42 |
| 22 | correct copy of a photograph that was taken or | 13:10:44 |
| 23 | something else that you would have to do to | 13:10:46 |
| 24 | put a photo into evidence.  You can't just put | 13:10:48 |

TRIAL - VOLUME 5

Page 229

| | | |
|---|---|---|
| 1 | things in front of the jury that aren't | 13:10:50 |
| 2 | evidence; right? | 13:10:52 |
| 3 | MR. RUSSELL:  That's true, Your | 13:10:55 |
| 4 | Honor. | 13:10:56 |
| 5 | THE COURT:  Okay.  So who took the | 13:10:56 |
| 6 | picture? | 13:11:03 |
| 7 | MR. RUSSELL:  Mr. Banner took the | 13:11:04 |
| 8 | picture during the inspection. | 13:11:06 |
| 9 | THE COURT:  Right.  But I assume | 13:11:09 |
| 10 | it has been enhanced electronically. | 13:11:12 |
| 11 | MR. RUSSELL:  Repeat that, Your | 13:11:14 |
| 12 | Honor. | 13:11:16 |
| 13 | THE COURT:  Is that the actual | 13:11:16 |
| 14 | picture?  Was it enhanced? | 13:11:17 |
| 15 | MR. RUSSELL:  My understanding is | 13:11:19 |
| 16 | it's the actual picture, and the only | 13:11:21 |
| 17 | enhancement, so to speak, is that they took | 13:11:23 |
| 18 | the thermal resolution photo and did some | 13:11:25 |
| 19 | graphics so that you could see the focus of | 13:11:29 |
| 20 | the background, which is the circuitry of the | 13:11:34 |
| 21 | device, with the normal resolution version of | 13:11:36 |
| 22 | the numbers called out. | 13:11:39 |
| 23 | THE COURT:  Okay. | 13:11:41 |
| 24 | So that's not the actual picture. | 13:11:41 |

TRIAL - VOLUME 5

Page 230

| | | |
|---|---|---|
| 1 | I mean, you described it minimally, but it's | 13:11:43 |
| 2 | somehow altered electronically.  Okay. | 13:11:48 |
| 3 | Let me see the devices, if I | 13:11:54 |
| 4 | could. | 13:11:58 |
| 5 | MS. DURIE:  I'll -- | 13:11:58 |
| 6 | MR. RUSSELL:  I got it.  So the | 13:11:59 |
| 7 | only relevant device is the Belkin because the | 13:12:01 |
| 8 | photo of this device were photos that were | 13:12:04 |
| 9 | exchanged during discovery. | 13:12:07 |
| 10 | THE COURT:  Okay. | 13:12:09 |
| 11 | Is that right, Ms. Durie? | 13:12:10 |
| 12 | MS. DURIE:  I am -- as far as I | 13:12:12 |
| 13 | know, that's right.  I am having to accept | 13:12:14 |
| 14 | their word for that, but I don't have a reason | 13:12:22 |
| 15 | to disagree. | 13:12:25 |
| 16 | THE COURT:  And the callout that | 13:12:31 |
| 17 | you had was from the silver chip that, if I | 13:12:33 |
| 18 | had the USB port at the bottom, it was looking | 13:12:37 |
| 19 | at the disassembled version of Exhibit 367. | 13:12:41 |
| 20 | The callout that you had was of | 13:12:44 |
| 21 | the silver chip that is sort of the top left; | 13:12:47 |
| 22 | is that correct?  I mean, you had one of the | 13:12:52 |
| 23 | mother board, of the board itself, of the | 13:13:00 |
| 24 | wafer board and you had one of the chip; | 13:13:03 |

TRIAL - VOLUME 5

Page 231

1    right?                                          13:13:05

2           MR. RUSSELL:  I'm sorry, Your            13:13:06

3    Honor, we just wanted to get the slide up so    13:13:07

4    we can --                                       13:13:10

5           THE COURT:  Make sure we are             13:13:10

6    looking at the same thing.  Okay.               13:13:11

7           MR. RUSSELL:  Can you repeat your        13:13:14

8    question, Your Honor?                           13:13:16

9           THE COURT:  I just want to make          13:13:16

10   sure that is the chip I am looking at when you  13:13:17

11   are calling out --                              13:13:20

12          MR. BANNER:  It's being called up        13:13:21

13   there on the left below the silver ones.        13:13:23

14          THE COURT:  I see.                        13:13:25

15          So this is this little black one         13:13:26

16   and it is the fourth one up of the four         13:13:28

17   staggered black ones.  Okay.                    13:13:32

18          So what you have there is                13:13:36

19   certainly not visible to the naked eye.  Yeah,  13:13:41

20   I mean, I am concerned about the fact -- I      13:13:54

21   mean, I assume you could authenticate this;     13:13:59

22   right?                                          13:14:02

23          MR. RUSSELL:  Absolutely, Your           13:14:02

24   Honor.                                          13:14:04

TRIAL - VOLUME 5

Page 232

| | | |
|---|---|---|
| 1 | THE COURT:  But I'm concerned | 13:14:04 |
| 2 | about the fact that this wasn't produced. | 13:14:05 |
| 3 | MR. RUSSELL:  I'll be completely | 13:14:06 |
| 4 | honest.  When we put the photos up, we thought | 13:14:08 |
| 5 | they were the ones that Dr. Levy had produced. | 13:14:11 |
| 6 | And we investigated over the lunch break and | 13:14:13 |
| 7 | we realized there was a mixup, and this was | 13:14:15 |
| 8 | the one from the inspection rather than | 13:14:18 |
| 9 | production. | 13:14:19 |
| 10 | THE COURT:  So when you went | 13:14:19 |
| 11 | through your evidence for trial, you knew you | 13:14:20 |
| 12 | had this picture.  I mean, you can't tell me | 13:14:22 |
| 13 | that this isn't -- you are not using this as | 13:14:27 |
| 14 | substantive evidence to rebut the invalidity | 13:14:29 |
| 15 | claim; right? | 13:14:32 |
| 16 | MR. RUSSELL:  Well, I am not | 13:14:34 |
| 17 | arguing with Your Honor.  What we are doing is | 13:14:36 |
| 18 | trying to show the jury what's on that | 13:14:38 |
| 19 | physical device, and we attempted this for | 13:14:40 |
| 20 | demonstrative purposes, to illustrate what's | 13:14:43 |
| 21 | on the physical device. | 13:14:44 |
| 22 | THE COURT:  But -- okay.  If you | 13:14:46 |
| 23 | had taken a picture, I think, of something | 13:14:49 |
| 24 | that is visible to the naked eye and you said | 13:14:52 |

Page 233

| | | |
|---|---|---|
| 1 | to the jury, look, we have taken a picture, we | 13:14:56 |
| 2 | have honed in on it.  When you take it to the | 13:15:00 |
| 3 | back, if you want to look at it and verify for | 13:15:02 |
| 4 | yourself that that's what it says, you can, | 13:15:05 |
| 5 | that's fine.  Okay. | 13:15:07 |
| 6 | That's not what this is.  You | 13:15:08 |
| 7 | cannot look at this with the naked eye.  I | 13:15:11 |
| 8 | mean, I don't know if you could -- I don't | 13:15:18 |
| 9 | have one -- with a magnifying glass.  I think | 13:15:20 |
| 10 | you would probably need a pretty powerful | 13:15:23 |
| 11 | magnifying glass, given what I am seeing. | 13:15:27 |
| 12 | But, so it's not just to show the | 13:15:30 |
| 13 | jury what's visible on the exhibit submitted | 13:15:35 |
| 14 | into evidence in that sense.  It is, in that | 13:15:38 |
| 15 | sense, something different. | 13:15:40 |
| 16 | And so, you know, I am concerned | 13:15:46 |
| 17 | in that sense -- I mean, look, there's two | 13:15:50 |
| 18 | pieces to this, okay?  And I didn't get an | 13:15:52 |
| 19 | objection right off; right?  I am not -- I'm | 13:15:58 |
| 20 | just saying you were trying to look into this. | 13:16:00 |
| 21 | And so I'm saying that's why I didn't say | 13:16:02 |
| 22 | anything about the fact that it was up, | 13:16:04 |
| 23 | despite not being in evidence. | 13:16:05 |
| 24 | MS. DURIE:  I understand. | 13:16:08 |

TRIAL - VOLUME 5

Page 234

| | | |
|---|---|---|
| 1 | THE COURT:  At any rate and to | 13:16:10 |
| 2 | their point, if it was, in fact, visible to | 13:16:11 |
| 3 | the naked eye, then that's something | 13:16:14 |
| 4 | different. | 13:16:16 |
| 5 | MS. DURIE:  That would be | 13:16:16 |
| 6 | different. | 13:16:17 |
| 7 | THE COURT:  Yes. | 13:16:17 |
| 8 | MS. DURIE:  And I will say, I | 13:16:17 |
| 9 | assumed that it was something that had been | 13:16:19 |
| 10 | produced in discovery. | 13:16:22 |
| 11 | THE COURT:  Understood.  And I | 13:16:23 |
| 12 | understand why.  Okay. | 13:16:25 |
| 13 | All right. | 13:16:32 |
| 14 | MR. RUSSELL:  Your Honor, it may | 13:16:34 |
| 15 | be that it's a lighting issue and that if we | 13:16:36 |
| 16 | had more light such as on the Elmo or with a | 13:16:39 |
| 17 | phone flashlight even, the number would be | 13:16:43 |
| 18 | visible. | 13:16:45 |
| 19 | THE COURT:  I doubt it. | 13:16:46 |
| 20 | MR. RUSSELL:  We didn't use a | 13:16:48 |
| 21 | special camera or anything, to my knowledge, | 13:16:49 |
| 22 | to draw this out.  It was really just meant to | 13:16:51 |
| 23 | represent the physical device that the jury | 13:16:54 |
| 24 | would have possession of, as you mentioned. | 13:16:57 |

TRIAL - VOLUME 5

Page 235

| | | |
|---|---|---|
| 1 | THE COURT:  Well, I don't have | 13:16:59 |
| 2 | my -- I don't have my phone to have an | 13:17:01 |
| 3 | external flashlight. | 13:17:04 |
| 4 | MR. BANNER:  Your Honor -- | 13:17:06 |
| 5 | THE COURT:  It's okay.  I have | 13:17:08 |
| 6 | one. | 13:17:09 |
| 7 | MR. BANNER:  You got it.  Okay. | 13:17:09 |
| 8 | THE COURT:  All right. | 13:17:23 |
| 9 | (Brief pause.) | 13:18:00 |
| 10 | THE COURT:  All right.  I mean, so | 13:18:30 |
| 11 | if I take my iPad and zoom all the way in with | 13:18:35 |
| 12 | the zoom feature on the camera and I know what | 13:18:41 |
| 13 | I am looking for, I can find it, okay?  It's | 13:18:46 |
| 14 | not obvious, but it is discoverable. | 13:18:52 |
| 15 | Okay. | 13:19:00 |
| 16 | MR. RUSSELL:  And, Your Honor, I | 13:19:02 |
| 17 | think we'd be comfortable with -- it is | 13:19:04 |
| 18 | important to the jury that they should rely on | 13:19:06 |
| 19 | the physical exhibit rather than what was on | 13:19:08 |
| 20 | the demonstrative. | 13:19:10 |
| 21 | THE COURT:  Well, I mean, you have | 13:19:13 |
| 22 | shown them what's on the exhibit -- you've | 13:19:14 |
| 23 | shown this to them, right? | 13:19:17 |
| 24 | MR. RUSSELL:  But -- | 13:19:19 |

Page 236

| | | |
|---|---|---|
| 1 | THE COURT:  You can't -- | 13:19:20 |
| 2 | MR. RUSSELL:  -- the point I am | 13:19:22 |
| 3 | trying to make is that it's just like there | 13:19:23 |
| 4 | are various demonstratives they have put up | 13:19:27 |
| 5 | that are not in evidence.  This is not in | 13:19:28 |
| 6 | evidence, and all we are asking the jury to do | 13:19:29 |
| 7 | is rely on what's physically on the device | 13:19:31 |
| 8 | that they have as an exhibit. | 13:19:34 |
| 9 | THE COURT:  Ms. Durie, what's your | 13:19:38 |
| 10 | thought? | 13:19:39 |
| 11 | MS. DURIE:  I don't see how that | 13:19:39 |
| 12 | is a solution because of the testimony that | 13:19:41 |
| 13 | was elicited and reliant on, I presume, and | 13:19:43 |
| 14 | something that was produced during discovery. | 13:19:47 |
| 15 | THE COURT:  I'm sorry.  I missed | 13:19:51 |
| 16 | that. | 13:19:52 |
| 17 | MS. DURIE:  In reliance on the | 13:19:52 |
| 18 | assumption that this was something that had | 13:19:54 |
| 19 | been produced.  It says Exhibit 19, and | 13:19:55 |
| 20 | therefore it was, you know, admitted into | 13:19:59 |
| 21 | evidence. | 13:20:02 |
| 22 | THE COURT:  Wait.  What is it, | 13:20:02 |
| 23 | Exhibit 19?  Is that from the deposition? | 13:20:05 |
| 24 | MR. BANNER:  That's the photo on | 13:20:07 |

TRIAL - VOLUME 5

Page 237

1    the left.                                          13:20:08

2              THE COURT:  The photo on the left        13:20:09

3    is Exhibit 19?                                     13:20:10

4              MR. BANNER:  The photo on the left       13:20:13

5    is the Exhibit 19.                                 13:20:14

6              MR. RUSSELL:  The photo on the           13:20:17

7    right --                                           13:20:19

8              THE COURT:  Wait, wait, wait,            13:20:19

9    wait.  I can't have everybody arguing at once.     13:20:21

10             MR. RUSSELL:  Your Honor, can I          13:20:22

11   clarify?                                           13:20:24

12             THE COURT:  Just wait.                   13:20:24

13             Okay.  So when you say that this         13:20:33

14   is -- let me just ask the question.  When you      13:20:39

15   say this is Exhibit 19, is this the photograph     13:20:41

16   that was on the exhibit list and provided as       13:20:46

17   Exhibit 19?                                        13:20:51

18             MR. RUSSELL:  No -- sorry.  Go           13:20:51

19   ahead.                                             13:20:53

20             THE COURT:  Or is it another             13:20:53

21   version of that same photo?                        13:20:54

22             MR. RUSSELL:  No, what my                13:20:56

23   co-counsel just clarified is that the photo on     13:20:57

24   the left is Exhibit 19, the photo on the right     13:21:00

TRIAL - VOLUME 5

Page 238

| | | |
|---|---|---|
| 1 | is a callout from a different photo.  It is | 13:21:02 |
| 2 | not a callout -- the photo on the right is not | 13:21:05 |
| 3 | a callout from the photo on the left. | 13:21:07 |
| 4 | THE COURT:  And my other question | 13:21:09 |
| 5 | for you with respect to the photo on the right | 13:21:10 |
| 6 | is, at least when I look at this, and maybe | 13:21:14 |
| 7 | it's just a function of how much you've zoomed | 13:21:17 |
| 8 | in, but when I at least try to zoom in and | 13:21:21 |
| 9 | look at this chip, I don't see the text in | 13:21:24 |
| 10 | that sort of grayish font.  Is that something | 13:21:31 |
| 11 | that's been enhanced, or what's the story | 13:21:34 |
| 12 | there? | 13:21:37 |
| 13 | MR. BANNER:  I think that was just | 13:21:39 |
| 14 | the lighting. | 13:21:40 |
| 15 | MR. RUSSELL:  Your Honor, our | 13:21:41 |
| 16 | understanding is that that was just the | 13:21:42 |
| 17 | lighting.  I don't believe we did any | 13:21:43 |
| 18 | enhancement. | 13:21:45 |
| 19 | MS. DURIE:  May I make a comment? | 13:21:49 |
| 20 | THE COURT:  Yes. | 13:21:51 |
| 21 | MS. DURIE:  So on the left, we | 13:21:52 |
| 22 | have Exhibit 19, the exhibit that was produced | 13:21:53 |
| 23 | in discovery.  That was my understanding from | 13:21:56 |
| 24 | Mr. Garney.  That was a photo produced what we | 13:21:58 |

TRIAL - VOLUME 5

Page 239

| | | |
|---|---|---|
| 1 | have on the right.  Although it shows it as | 13:22:03 |
| 2 | having been blown up from that photograph, it | 13:22:08 |
| 3 | wasn't. | 13:22:11 |
| 4 | THE COURT:  Right. | 13:22:11 |
| 5 | MS. DURIE:  Right?  This is | 13:22:11 |
| 6 | something different.  And that yellow arrow | 13:22:13 |
| 7 | that appears there, see it under there? | 13:22:15 |
| 8 | THE COURT:  I do. | 13:22:36 |
| 9 | MS. DURIE:  Which was not in what | 13:22:37 |
| 10 | was shown to the witness disappears. | 13:22:38 |
| 11 | THE COURT:  Okay. | 13:22:49 |
| 12 | MR. RUSSELL:  If I may, the lines | 13:22:50 |
| 13 | towards the image on the left are just, I | 13:22:53 |
| 14 | believe, accurately show that this is a | 13:22:56 |
| 15 | zoomed-in picture of the physical exhibit. | 13:22:57 |
| 16 | THE COURT:  Well, wait, wait, | 13:22:59 |
| 17 | wait, wait, wait.  You're blurring the lines, | 13:23:00 |
| 18 | though.  It is not a zoomed-in picture of | 13:23:04 |
| 19 | Exhibit 19. | 13:23:08 |
| 20 | MR. RUSSELL:  That's true. | 13:23:09 |
| 21 | THE COURT:  Okay. | 13:23:10 |
| 22 | And so the slide sort of | 13:23:10 |
| 23 | suggests -- the slide has been shown to the | 13:23:14 |
| 24 | jury.  But the slide certainly suggests that | 13:23:16 |

Page 240

| | | |
|---|---|---|
| 1 | what you have done is called out, zoomed in on | 13:23:18 |
| 2 | and maybe rotated that little portion of | 13:23:21 |
| 3 | Exhibit 19. | 13:23:24 |
| 4 | Do you agree with that? | 13:23:25 |
| 5 | MR. RUSSELL:  Yes. | 13:23:26 |
| 6 | THE COURT:  Okay.  All right. | 13:23:27 |
| 7 | Ms. Durie, I mean, what's your -- | 13:23:38 |
| 8 | we are where we are, right? | 13:23:41 |
| 9 | MS. DURIE:  I understand. | 13:23:43 |
| 10 | THE COURT:  The exhibit came in | 13:23:44 |
| 11 | and the jury has seen the -- they've seen this | 13:23:46 |
| 12 | slide.  So what -- I guess my question is, | 13:23:49 |
| 13 | what's your ask? | 13:23:52 |
| 14 | MS. DURIE:  My ask is that the | 13:23:54 |
| 15 | jury be instructed to disregard testimony that | 13:23:55 |
| 16 | was given in response to this exhibit, this | 13:23:59 |
| 17 | demonstrative, this set of slides. | 13:24:02 |
| 18 | MR. RUSSELL:  Can I respond to | 13:24:08 |
| 19 | that? | 13:24:09 |
| 20 | THE COURT:  Hold on. | 13:24:09 |
| 21 | When you say, "this set of | 13:24:10 |
| 22 | slides," just this specific slide? | 13:24:12 |
| 23 | MS. DURIE:  I mean, 1, 2, 3 -- I | 13:24:14 |
| 24 | think 1, 2, 3, 4.  I'm actually not sure what | 13:24:19 |

Page 241

```
 1    the representation is with respect to the              13:24:23

 2    origin of some other blowups.                          13:24:27

 3              THE COURT:  Well, wait.  Why do I            13:24:31

 4    need to -- are any of these -- so of the               13:24:33

 5    slides here, there is Slide 11 which has the           13:24:37

 6    6/27 manufacture date on it, the Winbond chip.         13:24:48

 7    We have heard testimony about that.                    13:24:53

 8              MS. DURIE:  Right.                           13:24:54

 9              THE COURT:  There is Slide 12                13:24:54

10    which has the manufacture date.  We heard              13:24:56

11    testimony about that.  And there is Slide 14           13:25:04

12    which has the testimony about -- which has a           13:25:06

13    date for the manufacture of -- that was the            13:25:10

14    board?                                                 13:25:13

15              MR. RUSSELL:  And all of these,             13:25:14

16    just to be clear for the record, Your Honor,           13:25:15

17    are not in dispute that those were our actual          13:25:17

18    blowups of Exhibit 19 where the exhibit is             13:25:20

19    listed.  It's only that Slide 13.                      13:25:23

20              THE COURT:  Right.  And that's              13:25:27

21    what I was saying.  The other three, I want to         13:25:28

22    make sure, is that right, the other three were         13:25:31

23    all exhibits that were produced in discovery           13:25:33

24    and they have just been called up?                     13:25:35
```

TRIAL - VOLUME 5

Page 242

| | | |
|---|---|---|
| 1 | MR. RUSSELL:  That's our | 13:25:37 |
| 2 | understanding, yes. | 13:25:38 |
| 3 | MS. DURIE:  I mean, I have to | 13:25:39 |
| 4 | accept that representation.  Right? | 13:25:40 |
| 5 | THE COURT:  I mean, there is no | 13:25:41 |
| 6 | one -- I don't see anyone scrambling behind | 13:25:43 |
| 7 | you to say otherwise that they weren't.  Okay. | 13:25:46 |
| 8 | (Brief pause.) | 13:26:07 |
| 9 | MS. DURIE:  Could Ms. Li explain | 13:26:19 |
| 10 | something? | 13:26:21 |
| 11 | THE COURT:  Sure. | 13:26:21 |
| 12 | MS. LI:  It appears that the large | 13:26:21 |
| 13 | photo is not the same as the blow-out because | 13:26:23 |
| 14 | if you zoom in on the little box there, you | 13:26:26 |
| 15 | can see that the yellow part of that white, or | 13:26:31 |
| 16 | whatever that is, is almost touching the 8. | 13:26:35 |
| 17 | And then if you go over here, it's quite a | 13:26:38 |
| 18 | ways away from the 8, which indicates that it | 13:26:41 |
| 19 | was taken from a different angle. | 13:26:43 |
| 20 | MR. RUSSELL:  Your Honor, on this | 13:26:45 |
| 21 | one, I don't -- it may have been | 13:26:46 |
| 22 | unintentionally a different photo, but the | 13:26:49 |
| 23 | information that we are talking about is | 13:26:52 |
| 24 | obviously the same.  And I'm not saying that | 13:26:54 |

TRIAL - VOLUME 5

Page 243

| | | |
|---|---|---|
| 1 | we are going to use one of the different | 13:26:58 |
| 2 | photos. | 13:27:01 |
| 3 | THE COURT:  Well, okay.  But zoom | 13:27:02 |
| 4 | back in on the box real quick.  Okay.  All | 13:27:10 |
| 5 | right. | 13:27:24 |
| 6 | Now let me see the slide as a | 13:27:24 |
| 7 | whole. | 13:27:29 |
| 8 | So, I mean, it does look like it's | 13:27:30 |
| 9 | a different photo.  It is not just the | 13:27:32 |
| 10 | function and scale as you zoom in. | 13:27:35 |
| 11 | Having said that, the information | 13:27:37 |
| 12 | you've called out is visible on the original | 13:27:39 |
| 13 | photo.  So I'm not -- and it doesn't look to | 13:27:44 |
| 14 | me, given where this yellow arrow is | 13:27:49 |
| 15 | positioned, like this is one where anything is | 13:27:51 |
| 16 | covered.  So, you know, I think that this was, | 13:27:55 |
| 17 | you know, probably not proper, probably a | 13:28:01 |
| 18 | little bit loose, but I think any error from | 13:28:07 |
| 19 | it is harmless. | 13:28:11 |
| 20 | MS. DURIE:  For 4508, I don't. | 13:28:12 |
| 21 | THE COURT:  Okay.  Just to go | 13:28:14 |
| 22 | back, Ms. Durie, to your request, with your | 13:28:18 |
| 23 | request, I'm not sure why I would exclude | 13:28:22 |
| 24 | testimony or strike testimony about the | 13:28:26 |

TRIAL - VOLUME 5

Page 244

| | | |
|---|---|---|
| 1 | callouts on slides 11, 12, 14. | 13:28:28 |
| 2 | MS. DURIE:  So 14 -- | 13:28:30 |
| 3 | THE COURT:  Yes. | 13:28:33 |
| 4 | MS. DURIE:  -- if we go up to | 13:28:33 |
| 5 | 11 -- | 13:28:35 |
| 6 | THE COURT:  Yeah. | 13:28:35 |
| 7 | MS. DURIE:  -- that seems fine. | 13:28:37 |
| 8 | THE COURT:  Okay. | 13:28:41 |
| 9 | MS. DURIE:  That's fine; right? | 13:28:42 |
| 10 | If we go to 12, is that fine, 12?  Can you go | 13:28:44 |
| 11 | to the exhibit, Exhibit 211.  Can we just see | 13:29:09 |
| 12 | 15?  Go back to Exhibit 11 and then -- | 13:29:14 |
| 13 | THE COURT:  This is Exhibit 211. | 13:29:26 |
| 14 | MS. DURIE:  The Winbond chip I | 13:29:35 |
| 15 | get. | 13:29:36 |
| 16 | MR. RUSSELL:  I believe there is | 13:29:37 |
| 17 | an 8 number. | 13:29:38 |
| 18 | MS. DURIE:  I am wondering, can | 13:29:40 |
| 19 | you put up, Mr. Glass, side-by-side, 211 and | 13:29:42 |
| 20 | what we were just looking at, the | 13:29:45 |
| 21 | demonstrative.  Is that possible? | 13:29:48 |
| 22 | Oh there, okay.  Fine.  Fine. | 13:29:52 |
| 23 | Then I agree. | 13:29:58 |
| 24 | THE COURT:  So we are really | 13:30:07 |

TRIAL - VOLUME 5

Page 245

| | | |
|---|---|---|
| 1 | talking about Slide 13 and what I should do | 13:30:09 |
| 2 | with that.  And so the request is that I ask | 13:30:13 |
| 3 | the jury to disregard it and the testimony | 13:30:16 |
| 4 | concerning the Max chip that has the 8/49 | 13:30:19 |
| 5 | callout. | 13:30:25 |
| 6 | MS. DURIE:  Yes, yes. | 13:30:26 |
| 7 | MR. RUSSELL:  And, Your Honor, I | 13:30:27 |
| 8 | would just say that the majority of the | 13:30:28 |
| 9 | testimony, as I recall it, as it came in, was | 13:30:29 |
| 10 | more about how the dates worked than what | 13:30:32 |
| 11 | was -- than him agreeing with what was | 13:30:35 |
| 12 | necessarily physically on the chip, and I | 13:30:36 |
| 13 | think the best solution -- | 13:30:39 |
| 14 | THE COURT:  But your whole -- the | 13:30:40 |
| 15 | only reason you did that was to establish that | 13:30:42 |
| 16 | this is another piece of evidence you can use | 13:30:47 |
| 17 | to demonstrate that the chip was manufactured | 13:30:51 |
| 18 | after the priority date; right? | 13:30:58 |
| 19 | MR. RUSSELL:  Right.  And I think | 13:31:00 |
| 20 | to the extent there is an instruction to the | 13:31:05 |
| 21 | jury, it could be to disregard the photograph | 13:31:06 |
| 22 | that we presented and to rely only on the | 13:31:08 |
| 23 | physical exhibit, which they'll have. | 13:31:12 |
| 24 | MS. DURIE:  But the problem | 13:31:14 |

TRIAL - VOLUME 5

Page 246

```
 1    with --                                       13:31:14

 2              THE COURT:  I mean, here's the       13:31:15

 3    thing.  They can look at the physical exhibit, 13:31:17

 4    okay, that's fine.  Frankly, I don't think     13:31:19

 5    they will see it, but they can decide what     13:31:24

 6    they can see for themselves.                   13:31:27

 7              I'm going to -- but I don't          13:31:30

 8    think -- I mean, just for an example of trial  13:31:32

 9    by surprise as well, I don't think that this   13:31:35

10    is fair.  It wasn't given to anyone in         13:31:38

11    advance, the callout picture wasn't there.  I  13:31:42

12    don't think it's obvious in the way that the   13:31:45

13    others are.                                    13:31:47

14              And so what I'll do is I will        13:31:49

15    instruct the jury to disregard the testimony   13:31:50

16    about the chip.  Let me just make sure...      13:31:57

17              Okay.  Okay.  So I will tell the     13:32:30

18    jury to disregard the testimony concerning the 13:32:37

19    Max chip that had the 8/49 logo on it.  I will 13:32:42

20    tell them to disregard both the pictures they  13:32:50

21    saw and the testimony about it, and then I     13:32:52

22    will tell them that if they are -- that they   13:32:54

23    are free to inspect Exhibit 367 for themselves 13:33:00

24    when -- when the evidence is sent back with    13:33:06
```

| | | |
|---|---|---|
| 1 | them. | 13:33:11 |
| 2 | MR. RUSSELL:  Can I just | 13:33:11 |
| 3 | request -- I think that is great, and just one | 13:33:12 |
| 4 | request on that is can you please say it in | 13:33:14 |
| 5 | the context that there were four photos shown | 13:33:18 |
| 6 | and it's just one of the four chips that were | 13:33:20 |
| 7 | discussed, one of the four date codes that was | 13:33:22 |
| 8 | discussed?  Because we don't want to | 13:33:25 |
| 9 | accidentally imply that anything else we said | 13:33:26 |
| 10 | was subject to this. | 13:33:29 |
| 11 | THE COURT:  I don't think I need | 13:33:31 |
| 12 | to do that.  I think if I just say there was | 13:33:32 |
| 13 | testimony specifically about -- I'll say there | 13:33:34 |
| 14 | was testimony specifically about a Max chip | 13:33:37 |
| 15 | that had a date of, you know, a date of 8/49 | 13:33:39 |
| 16 | and that, you know, for various legal reasons, | 13:33:43 |
| 17 | they should disregard that testimony and the | 13:33:45 |
| 18 | photograph of that particular chip.  And I'll | 13:33:48 |
| 19 | just say it that way rather than highlighting | 13:33:50 |
| 20 | the others as well.  Okay? | 13:33:53 |
| 21 | MR. RUSSELL:  Thank you, Your | 13:33:54 |
| 22 | Honor. | 13:33:58 |
| 23 | MR. SLAYDEN:  And the date | 13:33:58 |
| 24 | investigated. | 13:33:59 |

TRIAL - VOLUME 5

Page 248

| | | |
|---|---|---|
| 1 | THE COURT:  And the date | 13:33:59 |
| 2 | investigated, yes. | 13:34:01 |
| 3 | Let's hand these back. | 13:34:05 |
| 4 | MS. DURIE:  And can I give both to | 13:34:10 |
| 5 | Mr. Garney? | 13:34:12 |
| 6 | THE COURT:  Oh, okay. | 13:34:17 |
| 7 | MR. RUSSELL:  Your Honor, we have | 13:34:36 |
| 8 | one more request related to this, which is | 13:34:38 |
| 9 | that we don't think counsel should be able to | 13:34:40 |
| 10 | raise the non production issue in front of the | 13:34:43 |
| 11 | jury of the photograph. | 13:34:46 |
| 12 | THE COURT:  Well, I am going to | 13:34:49 |
| 13 | exclude the photograph.  No, we are not going | 13:34:51 |
| 14 | to get into discovery issues. | 13:34:54 |
| 15 | MS. DURIE:  Right. | 13:34:56 |
| 16 | THE COURT:  I agree. | 13:34:58 |
| 17 | MR. RUSSELL:  Thank you, Your | 13:34:59 |
| 18 | Honor. | 13:35:00 |
| 19 | THE COURT:  All right.  We can get | 13:35:12 |
| 20 | the jury. | 13:35:13 |
| 21 | (Whereupon, the jury entered the | 13:35:15 |
| 22 | courtroom.) | 13:35:17 |
| 23 | THE COURT:  You can all be seated. | 13:35:55 |
| 24 | All right. | 13:35:57 |

TRIAL - VOLUME 5

Page 249

| | | |
|---|---|---|
| 1 | Members of the jury, first of all, | 13:35:59 |
| 2 | thank you for your patience.  That was a | 13:36:00 |
| 3 | little longer than I had intended.  I | 13:36:02 |
| 4 | always -- when I have issues to work out with | 13:36:04 |
| 5 | the lawyers, to the extent I can do it without | 13:36:06 |
| 6 | subjecting you to the white noise, I prefer to | 13:36:08 |
| 7 | do that, so that was the reason for the delay. | 13:36:11 |
| 8 | And then the other thing that I | 13:36:13 |
| 9 | just wanted to tell you or instruct you, | 13:36:14 |
| 10 | during Mr. Garney's testimony this morning, | 13:36:17 |
| 11 | you saw a photograph of a Max chip with a date | 13:36:20 |
| 12 | code of 8/49 on it, and you should disregard | 13:36:27 |
| 13 | the testimony you heard about that particular | 13:36:33 |
| 14 | chip and the photograph you saw of that | 13:36:35 |
| 15 | particular chip. | 13:36:38 |
| 16 | You will ultimately get the | 13:36:40 |
| 17 | device, itself, that Mr. Garney tested and you | 13:36:44 |
| 18 | are free, when we send the evidence back to | 13:36:50 |
| 19 | you for deliberations, to inspect it for | 13:36:52 |
| 20 | yourself to see what you can find if you look | 13:36:54 |
| 21 | inside of it.  But you should disregard that | 13:36:58 |
| 22 | testimony and those pictures.  Okay?  All | 13:37:00 |
| 23 | right. | 13:37:02 |
| 24 | Redirect? | 13:37:05 |

TRIAL - VOLUME 5

Page 250

| | | |
|---|---|---|
| 1 | MR. SAULSBURY:  Yes. | 13:37:06 |
| 2 | - - - | 13:37:06 |
| 3 | REDIRECT EXAMINATION | 13:37:07 |
| 4 | - - - | 13:37:08 |
| 5 | BY MR. SAULSBURY: | 13:37:08 |
| 6 | Q.   Welcome back, Mr. Garney. | 13:37:09 |
| 7 | Mr. Jones is going to take a high | 13:37:11 |
| 8 | resolution photo of the Belkin device so that | 13:37:13 |
| 9 | we can see it a little more clearly. | 13:37:16 |
| 10 | Could you please direct him to | 13:37:18 |
| 11 | where the Philips chip is on that device, and | 13:37:19 |
| 12 | is that the circuit board from the Belkin | 13:37:23 |
| 13 | device you analyzed? | 13:37:26 |
| 14 | A.   This is the circuit board from the | 13:37:27 |
| 15 | Belkin device. | 13:37:29 |
| 16 | Q.   And, Mr. Garney, while Mr. Jones is | 13:37:35 |
| 17 | taking that picture, Mr. Glass, can we see | 13:37:37 |
| 18 | Trial Exhibit 379. | 13:37:40 |
| 19 | A.   Go ahead. | 13:37:48 |
| 20 | Q.   Are you sure? | 13:37:49 |
| 21 | A.   I am just holding the board for him. | 13:37:49 |
| 22 | Q.   Microchip showed you this data sheet | 13:37:51 |
| 23 | during cross. | 13:37:54 |
| 24 | THE COURT:  I don't think this is | 13:37:56 |

TRIAL - VOLUME 5

Page 251

```
 1   in evidence.                                  13:37:57

 2            MR. SAULSBURY:  I move to admit      13:37:59

 3   379.                                          13:38:01

 4            MR. SLAYDEN:  No objection, Your     13:38:02

 5   Honor.                                        13:38:04

 6            THE COURT:  Okay.  379 will come     13:38:04

 7   in.                                           13:38:05

 8   BY MR. SAULSBURY:                             13:38:06

 9       Q.   You were shown this exhibit by      13:38:09

10   Microchip's attorney during cross?            13:38:11

11       A.   I was.                               13:38:12

12       Q.   Okay.                                13:38:13

13            And on the first page here, under    13:38:14

14   Application Note, what do we see?             13:38:18

15       A.   It says, "Understanding flip-chip and  13:38:20

16   chip-scale package technologies."             13:38:22

17       Q.   What does that have to do with the   13:38:24

18   Maxim chip that we were shown earlier?        13:38:26

19       A.   Actually, nothing.                   13:38:27

20       Q.   And why is that?                     13:38:29

21       A.   Because flip-chip and chip-scale     13:38:30

22   parts are different packages from the packages  13:38:33

23   on the Belkin device.                         13:38:35

24       Q.   And what do you see about the Maxim  13:38:37
```

TRIAL - VOLUME 5

Page 252

| | | |
|---|---|---|
| 1 | chip on the Belkin device that tells you it's | 13:38:40 |
| 2 | not a flip-chip? | 13:38:42 |
| 3 | A.   If you look carefully, you'll see | 13:38:43 |
| 4 | this has a bunch of little silver wires around | 13:38:45 |
| 5 | the Black Box.  That's sometimes called a T | 13:38:48 |
| 6 | cell.  I'm not sure what the name is.  This is | 13:38:50 |
| 7 | a lead package, it has leads.  That's what | 13:38:52 |
| 8 | these little silver wires are. | 13:38:54 |
| 9 | Chip-scale and flip-chip, these | 13:38:57 |
| 10 | are chips with bumps on them, and that's a | 13:38:58 |
| 11 | different way of bonding, soldering the chip | 13:39:01 |
| 12 | to the board. | 13:39:03 |
| 13 | Q.   Do you understand or -- | 13:39:04 |
| 14 | MR. SAULSBURY:  Can we actually | 13:39:05 |
| 15 | look at page 5, Mr. Glass. | 13:39:06 |
| 16 | BY MR. SAULSBURY: | 13:39:09 |
| 17 | Q.   Do you see here that there is a | 13:39:10 |
| 18 | legend showing the different types of | 13:39:12 |
| 19 | conventions that you can have, and then if we | 13:39:14 |
| 20 | take a look at it, there is a couple different | 13:39:16 |
| 21 | three-character conventions? | 13:39:20 |
| 22 | Do you see that? | 13:39:21 |
| 23 | A.   I do see that, yes. | 13:39:22 |
| 24 | Q.   Okay. | 13:39:23 |

TRIAL - VOLUME 5

Page 253

| | | |
|---|---|---|
| 1 | MR. SAULSBURY:  And, Mr. Glass, if | 13:39:24 |
| 2 | you can actually just show the whole Table 2. | 13:39:26 |
| 3 | BY MR. SAULSBURY: | 13:39:28 |
| 4 | Q.   Now, you were told by Microchip's | 13:39:29 |
| 5 | counsel that one of those conventions is -- | 13:39:30 |
| 6 | it's a date code; is that right? | 13:39:33 |
| 7 | A.   Yes. | 13:39:35 |
| 8 | Q.   Okay. | 13:39:35 |
| 9 | MR. SAULSBURY:  And, Mr. Glass, | 13:39:36 |
| 10 | will you have Table 2 blown up, please. | 13:39:39 |
| 11 | BY MR. SAULSBURY: | 13:39:39 |
| 12 | Q.   Do you see how there are other | 13:39:45 |
| 13 | three-digit conventions as well to be on the | 13:39:46 |
| 14 | date code? | 13:39:49 |
| 15 | A.   I do. | 13:39:49 |
| 16 | Q.   And was there any indication on the | 13:39:50 |
| 17 | Maxim chip that you were asked to look at what | 13:39:51 |
| 18 | three-digit convention was being represented | 13:39:54 |
| 19 | by those numbers? | 13:39:56 |
| 20 | A.   No. | 13:39:57 |
| 21 | Q.   Okay. | 13:39:58 |
| 22 | MR. SAULSBURY:  Now, Mr. Glass, | 13:40:01 |
| 23 | can we please take a look at Slide 11 from | 13:40:02 |
| 24 | Microchip's demonstratives. | 13:40:06 |

TRIAL - VOLUME 5

Page 254

```
 1   BY MR. SAULSBURY:                                    13:40:09

 2       Q.   Do you see how -- you were shown this      13:40:10

 3   Winbond chip.  Do you know whether that             13:40:11

 4   three-digit code, what that represents?             13:40:14

 5       A.   No idea.                                    13:40:16

 6       Q.   Okay.                                       13:40:16

 7            So you don't know, for example,             13:40:18

 8   whether it is a top mark code?                       13:40:20

 9       A.   Say again.                                  13:40:22

10       Q.   You don't know, for example, whether       13:40:23

11   it is a top mark code?                               13:40:25

12       A.   No.                                         13:40:26

13       Q.   Okay.                                       13:40:27

14            You don't know whether it is a             13:40:27

15   part number suffix?                                  13:40:29

16       A.   No.                                         13:40:30

17       Q.   Okay.                                       13:40:30

18            And does Winbond use the same             13:40:31

19   conventions as Maxim?  Do you know one way or        13:40:33

20   another?                                             13:40:36

21       A.   I don't know.                               13:40:36

22       Q.   Okay.                                       13:40:37

23       A.   I doubt it.  They are different             13:40:38

24   manufacturers.                                       13:40:40
```

TRIAL - VOLUME 5

                                                    Page 255

1        Q.    Do you know one way or another          13:40:40

2    whether this is actually a date code?             13:40:42

3        A.    No.                                     13:40:44

4              MR. SAULSBURY:  Can we take a look       13:40:45

5    at Slide 12, please, also from Microchip's        13:40:46

6    demonstratives.                                   13:40:49

7    BY MR. SAULSBURY:                                 13:40:50

8        Q.    We -- you were pointed to a blow-out    13:40:53

9    of Trial Exhibit 11 and shown this                13:41:00

10   demonstrative saying that it is year and week.    13:41:03

11             Do you know what these numbers          13:41:06

12   represent?                                        13:41:09

13       A.    No.  I think I even said that during    13:41:09

14   the testimony.                                    13:41:11

15       Q.    Okay.                                   13:41:11

16             MR. SAULSBURY:  Let's take a look       13:41:12

17   at Slide 14, please.                              13:41:14

18   BY MR. SAULSBURY:                                 13:41:18

19       Q.    Same deal; you were shown another set   13:41:18

20   of numbers and it was represented on the          13:41:21

21   demonstrative that it was week and year.          13:41:23

22             Do you know what these numbers          13:41:25

23   represent?                                        13:41:26

24       A.    Same answer; no, I don't.               13:41:26

TRIAL - VOLUME 5

Page 256

```
 1      Q.   Okay.                                13:41:31

 2           So taking into account sort of all   13:41:32

 3   the evidence that you've analyzed and        13:41:34

 4   including evidence that you have seen today, 13:41:36

 5   does that change your opinion as to whether  13:41:38

 6   the pertinent functionality of the Belkin    13:41:41

 7   device you analyzed was available prior to   13:41:43

 8   2006?                                        13:41:46

 9      A.   It doesn't change my opinion, no.    13:41:46

10      Q.   Okay.                                13:41:49

11           MR. SAULSBURY:  Now, Mr. Jones,      13:41:49

12   can we have the Philips chip -- can we make --13:41:52

13   we represent that this is the photo that Mr. 13:41:56

14   Jones just took of the Belkin board.         13:41:59

15           Mr. Glass, could you please zoom     13:42:03

16   in on that chip in the middle?  There we go. 13:42:05

17   BY MR. SAULSBURY:                            13:42:09

18      Q.   And, Mr. Garney, do you recognize    13:42:10

19   that as the Philips chip you looked at?      13:42:12

20      A.   I do.                                13:42:14

21      Q.   Okay.                                13:42:14

22           And do you see the code there on     13:42:15

23   the bottom?                                  13:42:16

24      A.   0319.                                13:42:17
```

TRIAL - VOLUME 5

Page 257

```
 1      Q.   Okay.                                    13:42:18

 2           Is this the Philips chip you saw         13:42:19

 3   earlier?                                         13:42:22

 4      A.   It is.                                   13:42:22

 5      Q.   Okay.                                    13:42:23

 6           And taking a step -- what do you         13:42:24

 7   conclude from this?                              13:42:30

 8      A.   I know the Philips chips were            13:42:31

 9   available many years before the priority date   13:42:34

10   of the patent.                                   13:42:38

11      Q.   Okay.                                    13:42:39

12           0319, is that the part number for       13:42:41

13   that?                                            13:42:43

14      A.   No.  It's the data sheet disclosure     13:42:43

15   that identifies the specific part number.        13:42:47

16      Q.   Okay.                                    13:42:48

17           Now, why are the chips important         13:42:49

18   to your opinion regarding Belkin?                13:42:56

19      A.   Simply because they contain this        13:42:58

20   endpoint buffer and interface that I talked      13:42:59

21   about.                                           13:43:02

22      Q.   And did you rely on any other           13:43:03

23   materials to inform your opinion of when the     13:43:04

24   Philips chip was first available?                13:43:06
```

TRIAL - VOLUME 5

Page 258

| | | |
|---|---|---|
| 1 | A.   The other materials I talked about | 13:43:10 |
| 2 | with respect to Belkin and the dates. | 13:43:12 |
| 3 | Q.   And how about the data sheet for the | 13:43:14 |
| 4 | Philips? | 13:43:16 |
| 5 | A.   Yeah, the data sheet for Philips | 13:43:17 |
| 6 | also. | 13:43:19 |
| 7 | Q.   Okay. | 13:43:19 |
| 8 | MR. SAULSBURY:  Now, let's take a | 13:43:20 |
| 9 | look at Trial Exhibit 12, Mr. Glass. | 13:43:23 |
| 10 | BY MR. SAULSBURY: | 13:43:28 |
| 11 | Q.   This was the presentation to Apple | 13:43:29 |
| 12 | that you were shown during cross; is that | 13:43:31 |
| 13 | right? | 13:43:32 |
| 14 | A.   I believe so, yes. | 13:43:32 |
| 15 | Q.   Okay. | 13:43:34 |
| 16 | MR. SAULSBURY:  If we can turn to | 13:43:34 |
| 17 | page 4, please.  Does -- Mr. Glass, could you | 13:43:35 |
| 18 | highlight the first line -- I mean the first | 13:43:40 |
| 19 | bullet that starts with "At power up Head Unit | 13:43:43 |
| 20 | detects a standard USB hub and custom Bridge | 13:43:45 |
| 21 | device," singular. | 13:43:49 |
| 22 | BY MR. SAULSBURY: | 13:43:49 |
| 23 | Q.   Do you see that, Mr. Garney? | 13:43:50 |
| 24 | A.   I see that. | 13:43:51 |

Page 259

```
 1      Q.   Does the fact that sometimes people      13:43:51

 2   refer to this as a bridge device in any way      13:43:53

 3   change your opinion that there are two USB       13:43:55

 4   devices?                                         13:43:57

 5      A.   No, because it clearly shows there       13:43:57

 6   are two USB devices, Device A and Device B.      13:43:59

 7      Q.   Those red boxes?                          13:44:02

 8      A.   Correct.                                  13:44:03

 9           MR. SAULSBURY:  Could we take a          13:44:04

10   look at page 6, I believe it is.                 13:44:06

11   BY MR. SAULSBURY:                                13:44:10

12      Q.   And Mr. Slayden pointed you to the       13:44:12

13   first bullet under Operational Description.      13:44:14

14           MR. SAULSBURY:  Let's just              13:44:17

15   highlight, if we could, Mr. Glass, "The USB     13:44:17

16   Device Controllers in the Bridge Device,"       13:44:20

17   singular, "are configured to contain all        13:44:21

18   endpoints required by CarPlay."                  13:44:24

19   BY MR. SAULSBURY:                                13:44:24

20      Q.   Does this statement referring to a       13:44:27

21   bridge device, singular, change your opinion    13:44:29

22   there are two devices?                           13:44:32

23      A.   For the same reason that it's obvious    13:44:32

24   there are, in fact, two USB devices there, as   13:44:34
```

Page 260

```
1    the figure shows.                                13:44:36

2         Q.    What are those devices labeled?        13:44:36

3         A.    USB Device A and USB Device B.         13:44:39

4         Q.    Okay.                                  13:44:42

5              MR. SAULSBURY:  Pass the witness.       13:44:46

6                   -  -  -                            13:44:54

7                RECROSS-EXAMINATION                   13:44:54

8                   -  -  -                            13:44:55

9    BY MR. SLAYDEN:                                   13:44:55

10        Q.    Mr. Garney, I only have one question.  13:44:56

11             During the break, did you talk to       13:44:58

12   your counsel about your testimony?               13:44:59

13        A.    I talked to him about some of the      13:45:01

14   information, yes.                                 13:45:04

15             MR. SLAYDEN:  Thank you.                13:45:06

16             THE COURT:  All right.                  13:45:12

17             Mr. Garney, you can step down.          13:45:12

18             THE WITNESS:  Thank you.                13:45:14

19             THE COURT:  Take the binders or         13:45:14

20   have someone come get them.                      13:45:16

21             THE WITNESS:  Okay.  I don't know       13:45:17

22   if I can carry all of them.                      13:45:18

23             THE COURT:  I was going to say,         13:45:20

24   you don't have to carry them all, but that's     13:45:21
```

Page 261

| | | |
|---|---|---|
| 1 | something someone can help you with. | 13:45:23 |
| 2 | (Whereupon, the witness was | 13:45:26 |
| 3 | excused.) | 13:45:32 |
| 4 | MR. SLAYDEN:  Sidebar, Your Honor? | 13:45:37 |
| 5 | THE COURT:  Okay. | 13:45:39 |
| 6 | MR. SAULSBURY:  We will take care | 13:45:49 |
| 7 | of that during the sidebar. | 13:45:49 |
| 8 | (Whereupon, a discussion was held | 13:45:49 |
| 9 | at sidebar as follows: | 13:45:49 |
| 10 | MR. SLAYDEN:  Clearly that was | 13:51:20 |
| 11 | testimony that was discussed during the break, | 13:51:20 |
| 12 | a violation of Rule 41.  I move to strike any | 13:51:20 |
| 13 | redirect testimony. | 13:51:20 |
| 14 | MS. DURIE:  He was off cross. | 13:51:20 |
| 15 | THE COURT:  I'm sorry? | 13:51:20 |
| 16 | MS. DURIE:  He was off cross.  We | 13:51:20 |
| 17 | are not allowed to speak with him while he was | 13:51:20 |
| 18 | on cross.  He was off cross.  I conferred with | 13:51:20 |
| 19 | him -- that is my understanding of the | 13:51:20 |
| 20 | Delaware practice. | 13:51:20 |
| 21 | I conferred with local counsel | 13:51:20 |
| 22 | with regard to Delaware practice.  We | 13:51:20 |
| 23 | explicitly confirmed that, we talked about | 13:51:20 |
| 24 | that issue. | 13:51:20 |

TRIAL - VOLUME 5

Page 262

```
 1            THE COURT:  You definitely said no      13:51:20

 2    further questions.  All right.                   13:51:20

 3            What rule did you say, you said          13:51:20

 4    41?                                              13:51:20

 5            MR. SLAYDEN:  41.  Speaking to a         13:51:20

 6    witness during testimony.                        13:51:20

 7            THE COURT:  Are you talking --           13:51:20

 8    wait, I'm sorry --                               13:51:20

 9            MR. SLAYDEN:  I'll get it.               13:51:20

10            THE COURT:  Wait.  Don't go              13:51:20

11    anywhere.                                        13:51:20

12            MS. DURIE:  My understanding of          13:51:20

13    the rule is that you can speak to the witness    13:51:20

14    while they are on direct, that the bar           13:51:20

15    commences when they go on cross.  You can        13:51:20

16    speak with them while they are on direct.        13:51:20

17            THE COURT:  Let me just make             13:51:20

18    sure -- I want to make sure I understand.        13:51:20

19    Rule 41 is what?                                 13:51:20

20            MR. SLAYDEN:  Local counsel is the       13:51:20

21    one who cited it.  It must be a Delaware rule.   13:51:20

22    Let me get it from him.  I'm sorry.              13:51:20

23            THE COURT:  Yeah, go ahead.              13:51:20

24            MR. SLAYDEN:  It is local                13:51:20
```

Page 263

| | | |
|---|---|---|
| 1 | Rule 41.1.  And there was definitely going to | 13:51:20 |
| 2 | be recross in a contested witness like this. | 13:51:20 |
| 3 | THE COURT:  Hold on.  I have your | 13:51:20 |
| 4 | rule and let me just look at the rule. | 13:51:20 |
| 5 | MS. DURIE:  Sure. | 13:51:20 |
| 6 | (Brief pause.) | 13:51:20 |
| 7 | THE COURT:  I mean, I think what | 13:51:20 |
| 8 | you mean is Rule 43.1. | 13:51:20 |
| 9 | MR. SLAYDEN:  Oh. | 13:51:20 |
| 10 | MR. RUSSELL:  43.1, I'm sorry. | 13:51:21 |
| 11 | THE COURT:  Which is witnesses | 13:51:21 |
| 12 | conferring with counsel during testimony.  I | 13:51:21 |
| 13 | mean, on its face it says, "Once direct | 13:51:21 |
| 14 | examination of a witness is concluded," which | 13:51:21 |
| 15 | it had, "and until cross-examination of that | 13:51:21 |
| 16 | witness is concluded," which it had, "counsel | 13:51:21 |
| 17 | offering the witness on direct shall not..." | 13:51:21 |
| 18 | So the prohibitions don't apply | 13:51:21 |
| 19 | once you end the cross. | 13:51:21 |
| 20 | MR. ROVNER:  Your Honor, Phil | 13:51:21 |
| 21 | Rovner from Potter, Anderson, Aptiv's Delaware | 13:51:21 |
| 22 | counsel.  That's how I have always interpreted | 13:51:21 |
| 23 | it, and when he was on cross and we had a | 13:51:21 |
| 24 | break, no contact. | 13:51:21 |

Page 264

```
 1              THE COURT:  Understood.              13:51:21

 2         I mean, I just -- I was going to         13:51:21

 3    cite the rule, that's why I wanted to delve   13:51:21

 4    in, there might be a textural basis.  Is there 13:51:21

 5    something else, Mr. Wiener, you think is      13:51:21

 6    different?                                    13:51:21

 7              MR. RUSSELL:  Sorry.                13:51:21

 8              MS. DURIE:  They look alike.        13:51:21

 9              THE COURT:  They do.  I am          13:51:21

10    confused every time I look at them.           13:51:21

11              MR. RUSSELL:  The purpose of the    13:51:21

12    rule is to prevent counsel from discussing the 13:51:21

13    testimony with the witness.  In Delaware, we  13:51:21

14    had the same rule that you cannot speak with  13:51:21

15    the deponent during the deposition and we     13:51:21

16    still could have had more questions for him on 13:51:21

17    recross.  Actually, we did, we had one        13:51:21

18    question.                                     13:51:21

19         So I think what they did was -- I        13:51:21

20    agree that the rule is poorly worded, but it's 13:51:21

21    clearly intended to encompass talking to the  13:51:21

22    witness while they are on the stand.          13:51:21

23              THE COURT:  I mean, my bias on      13:51:21

24    this is, poorly worded or not, it says what it 13:51:21
```

| | | |
|---|---|---|
| 1 | says, and I think that to the extent it is | 13:51:21 |
| 2 | intended to prohibit coaching during a | 13:51:21 |
| 3 | deposition, or comparable rule is intended to | 13:51:21 |
| 4 | prohibit coaching during a deposition, I think | 13:51:21 |
| 5 | that's different as well. | 13:51:21 |
| 6 | So I am going to -- I'm not going | 13:51:21 |
| 7 | to strike the testimony. | 13:51:21 |
| 8 | MR. SLAYDEN:  Thank you, Your | 13:51:23 |
| 9 | Honor. | 13:51:23 |
| 10 | (Whereupon, the discussion at | 13:51:23 |
| 11 | sidebar concluded.) | 13:51:23 |
| 12 | THE COURT:  Mr. Saulsbury. | 13:51:23 |
| 13 | MR. SAULSBURY:  Yes, Your Honor. | 13:51:27 |
| 14 | I will now be reading into the | 13:51:27 |
| 15 | record requests for admission that were made | 13:51:29 |
| 16 | to Microchip and Microchip's responses. | 13:51:30 |
| 17 | THE COURT:  Okay. | 13:51:33 |
| 18 | MR. SAULSBURY:  Request for | 13:51:35 |
| 19 | Admission 42 was "Admit that US-98 was sold in | 13:51:37 |
| 20 | the U.S. prior to 2005." | 13:51:39 |
| 21 | The answer is, "Microchip admits a | 13:51:43 |
| 22 | product identified as US-98 was sold in the | 13:51:45 |
| 23 | U.S. prior to April 2005.  Microchip denies | 13:51:48 |
| 24 | the remainder of this request." | 13:51:51 |

TRIAL - VOLUME 5

Page 266

| | | |
|---|---|---|
| 1 | And then Request for Admission 45 | 13:51:56 |
| 2 | was "Admit that Belkin was sold in the U.S. | 13:51:58 |
| 3 | prior to April 2005." | 13:52:01 |
| 4 | Answer, "Microchip admits a | 13:52:04 |
| 5 | product identified as F1U400 was sold in the | 13:52:06 |
| 6 | U.S. prior to April 2005.  Microchip denies | 13:52:11 |
| 7 | the remainder of this request." | 13:52:15 |
| 8 | MS. DURIE:  And, Your Honor, | 13:52:18 |
| 9 | subject to an oral motion that we will make at | 13:52:19 |
| 10 | a later time, we rest. | 13:52:24 |
| 11 | THE COURT:  Okay.  All right. | 13:52:26 |
| 12 | So then, Mr. Adams, you are in the | 13:52:27 |
| 13 | hot seat.  I assume you're up for Microchip? | 13:52:30 |
| 14 | MR. ADAMS:  I just want to make | 13:52:35 |
| 15 | sure our oral motions were preserved, Your | 13:52:37 |
| 16 | Honor. | 13:52:40 |
| 17 | THE COURT:  Yes. | 13:52:40 |
| 18 | MR. ADAMS:  Okay.  Your Honor, | 13:52:43 |
| 19 | Microchip calls Dr. John Levy to the stand. | 13:52:44 |
| 20 | THE COURT:  Okay. | 13:52:51 |
| 21 | THE COURT CLERK:  Please state and | 13:53:00 |
| 22 | spell your name for the record. | 13:53:08 |
| 23 | THE WITNESS:  John Levy, J-O-H-N, | 13:53:11 |
| 24 | V for Victor, L-E-V-Y. | 13:53:14 |

TRIAL - VOLUME 5

Page 267

```
 1                   -  -  -                    13:53:14

 2            ...JOHN V. LEVY, after having      13:53:14

 3      first been duly sworn and/or affirmed, was  13:53:14

 4      examined and testified as follows...     13:53:14

 5                   -  -  -                    13:53:31

 6               DIRECT EXAMINATION              13:53:31

 7                   -  -  -                    13:53:31

 8      BY MR. ADAMS:                            13:53:34

 9         Q.   I'll let you get settled.  Are you  13:53:35

10      settled there?                           13:53:37

11         A.   I think so.                      13:53:38

12         Q.   Good afternoon, Dr. Levy.  We're  13:53:39

13      almost there.  It's been a long day amongst a  13:53:42

14      long week, but I think we can keep this fairly  13:53:46

15      short, so let's get started.             13:53:48

16         A.   Okay.                            13:53:50

17         Q.   Would you please introduce yourself  13:53:51

18      to the jury.                             13:53:52

19         A.   Yes.  I am John Levy and I grew up in  13:53:53

20      Ohio, went to college in upstate New York, and  13:53:56

21      then California for graduate school.     13:54:02

22         Q.   What is your role in this proceeding?  13:54:03

23         A.   I have been engaged by Microchip to  13:54:04

24      rebut the invalidity arguments of Aptiv.  13:54:08
```

Page 268

```
 1      Q.   Have you prepared some slides to help        13:54:14

 2   explain your work and your opinions?                 13:54:16

 3      A.   Yes.                                          13:54:18

 4      Q.   Can you please tell us a little about         13:54:19

 5   your qualifications?                                 13:54:24

 6      A.   Okay.  As I mentioned, I earned a            13:54:25

 7   bachelor of engineering physics degree at           13:54:28

 8   Cornell, master's in electrical engineering at      13:54:31

 9   Cal Tech, and a Ph.D. in computer science at        13:54:35

10   Stanford University.                                13:54:38

11           I then was employed in various             13:54:39

12   computer and -- or car described manufacturers      13:54:43

13   over a period of several years, including as a      13:54:49

14   consultant, and there are the names of the          13:54:51

15   companies I worked for in the various times.        13:54:54

16      Q.   Can you tell us a little about your          13:54:57

17   experience as it relates to computer bus            13:54:59

18   systems?                                            13:55:02

19      A.   Yes.  In my initial employment in the       13:55:03

20   industry, I worked at Digital, and in that          13:55:07

21   role, I designed a high speed bus for               13:55:10

22   connecting disk and tape drive to a computer.       13:55:13

23           I also later designed a very novel          13:55:16

24   bus that had some patents for interconnecting       13:55:20
```

Page 269

```
 1    multiple processors and memory.                    13:55:23
 2            And then my last work at Digital            13:55:25
 3    was in their R & D group, and I left them with      13:55:27
 4    a long term roadmap for moving from parallel        13:55:31
 5    bus to serial buses for all the ins and             13:55:34
 6    output.                                             13:55:39
 7            I went to Tandem Computers, and             13:55:39
 8    there I worked on a conceptual design and I         13:55:42
 9    wrote bus system for hundreds of processors.        13:55:45
10    I went then to Apple and there I supervised         13:55:49
11    the implementation of a local area network,         13:55:52
12    which is like Ethernet type of thing for PCs.       13:55:55
13            And sometime later when I was               13:55:58
14    employed at Quantum, I led the implementation       13:56:00
15    of -- between Quantum and Intel of a new speed      13:56:05
16    doubling for the ATA bus, which is what             13:56:09
17    connects our disk drives to the PC internally.      13:56:13
18            And then I also represented                 13:56:17
19    Quantum on a standard working group with a          13:56:19
20    fire wire standard to make it into audio/video      13:56:24
21    moving around in the living room.                   13:56:28
22            I'm also the author of a book               13:56:30
23    chapter on computer bus design.  Related to         13:56:32
24    that, I was a national lecturer for our             13:56:36
```

TRIAL - VOLUME 5

Page 270

```
1     professional society on bus design.              13:56:38

2               And looking over my engagements as     13:56:41

3     an expert, at least 20 of the 60 or so cases I   13:56:44

4     have been involved in related to bus design.     13:56:47

5        Q.   Have you testified before at trial as    13:56:50

6     a technical expert?                              13:56:54

7        A.   Yes, I have.                             13:56:55

8        Q.   Have you testified on behalf of          13:56:56

9     patentholders and defendants?                    13:56:59

10       A.   Yes.                                      13:57:01

11       Q.   Are you being compensated for your       13:57:02

12    work today?                                       13:57:04

13       A.   Yes.                                      13:57:05

14       Q.   Does your compensation depend in any     13:57:06

15    way on the outcome of this case?                 13:57:10

16       A.   Not at all.                               13:57:11

17               MR. ADAMS:  Your Honor, we tender     13:57:13

18    Dr. Levy as an expert on computer bus            13:57:15

19    technology.                                       13:57:17

20               MS. DURIE:  No objection.             13:57:18

21               THE COURT:  All right.  He will be    13:57:19

22    received.                                         13:57:20

23    BY MR. ADAMS:                                     13:57:22

24       Q.   Dr. Levy, have you prepared some         13:57:23
```

Page 271

| | | |
|---|---|---|
| 1 | slides today to help explain your testimony in | 13:57:25 |
| 2 | this case? | 13:57:29 |
| 3 | A.   Yes. | 13:57:30 |
| 4 | MR. ADAMS:  Would you jump to | 13:57:35 |
| 5 | Slide 7, please. | 13:57:36 |
| 6 | BY MR. ADAMS: | 13:57:40 |
| 7 | Q.   So let's just jump right to the | 13:57:42 |
| 8 | matter, the '243 Patent and the claims of the | 13:57:43 |
| 9 | '243 Patent. | 13:57:48 |
| 10 | This is claims 23 through 25; is | 13:57:50 |
| 11 | that correct? | 13:57:53 |
| 12 | A.   That's right. | 13:57:53 |
| 13 | Q.   And can you explain your analysis as | 13:57:54 |
| 14 | it relates to these claims? | 13:57:58 |
| 15 | A.   Well, my analysis is going to show | 13:58:00 |
| 16 | that the asserted prior art does not meet all | 13:58:03 |
| 17 | of the elements of claim 23. | 13:58:06 |
| 18 | Q.   And can you -- we've heard it from a | 13:58:10 |
| 19 | video, we have heard it from Mr. Garney.  Can | 13:58:14 |
| 20 | you briefly explain what prior art means? | 13:58:17 |
| 21 | A.   Prior art refers to either documents | 13:58:18 |
| 22 | or real devices that were available and known | 13:58:21 |
| 23 | before the effective filing date of the | 13:58:25 |
| 24 | patent, which in this case, I believe, is | 13:58:28 |

TRIAL - VOLUME 5

Page 272

| | | |
|---|---|---|
| 1 | April of 2006. | 13:58:30 |
| 2 | Q.   And did you focus on a particular | 13:58:36 |
| 3 | claim element in your analysis? | 13:58:38 |
| 4 | A.   Yes, I have.  I focused on the first | 13:58:40 |
| 5 | element of claim 23. | 13:58:43 |
| 6 | MR. ADAMS:  Mr. Ferrer, do I have | 13:58:49 |
| 7 | control or would you just flip -- would you | 13:58:51 |
| 8 | just go to the next -- there, I did it.  Now I | 13:58:53 |
| 9 | have to go back.  All right. | 13:58:58 |
| 10 | BY MR. ADAMS: | 13:59:00 |
| 11 | Q.   Claim 23.  And do you have an opinion | 13:59:01 |
| 12 | as to whether the first element of claim 23 is | 13:59:03 |
| 13 | taught by the combination of references that | 13:59:08 |
| 14 | Aptiv and Mr. Garney has put forward? | 13:59:10 |
| 15 | A.   Yes, I do, and my opinion is that the | 13:59:12 |
| 16 | combination does not meet this first element | 13:59:16 |
| 17 | of claim 23. | 13:59:19 |
| 18 | Q.   And if that element -- the first | 13:59:20 |
| 19 | element is not taught in claim 23, what's the | 13:59:23 |
| 20 | implication of that with respect to the entire | 13:59:26 |
| 21 | claim? | 13:59:29 |
| 22 | A.   Well, since -- to show that prior art | 13:59:29 |
| 23 | or a combination of prior art invalidates a | 13:59:34 |
| 24 | patent, you must show that the prior art meets | 13:59:37 |

TRIAL - VOLUME 5

Page 273

```
 1    each and every element of the claim.  So if it      13:59:40

 2    doesn't meet the first element, then that does      13:59:43

 3    not show invalidity and that claim is valid.        13:59:46

 4        Q.   It's valid at least with respect to        13:59:50

 5    the combination put forward by Aptiv and Mr.        13:59:53

 6    Garney; correct?                                    13:59:55

 7        A.   That's right.                              13:59:56

 8        Q.   Does that have any implications to         13:59:57

 9    claim 24 and 25?                                    14:00:00

10        A.   Yes.  Since claim 24 is a dependent        14:00:03

11    claim, it includes not only what's in the box       14:00:07

12    marked there for 24, but all of the elements        14:00:10

13    of claim 23.  And so if an element is missing       14:00:13

14    from claim 23 in the combination, then claim        14:00:16

15    24 is also valid.                                   14:00:20

16             And the same thing applies to             14:00:22

17    claim 25 because it includes all the elements       14:00:24

18    of claim 23.                                        14:00:27

19        Q.   Thank you, Dr. Levy.                       14:00:31

20             Now, we've heard about this, but           14:00:32

21    let's just refresh.  What is the combination        14:00:35

22    that Aptiv and Mr. Garney are putting forward       14:00:38

23    today to invalidate this -- attempt to              14:00:41

24    invalidate?                                         14:00:46
```

TRIAL - VOLUME 5

Page 274

```
 1      A.   They are putting forward the Dickens       14:00:47

 2   patent and the Belkin and/or the US-98 device,     14:00:49

 3   which we are showing a sample of here.             14:00:54

 4      Q.   Okay.                                       14:00:56

 5           Now, the patent office did not             14:00:56

 6   have the physical Belkin US-98 device;             14:01:00

 7   correct?                                           14:01:04

 8      A.   Correct.                                    14:01:04

 9      Q.   But did they have an article related        14:01:04

10   to the Belkin device?                              14:01:06

11      A.   Yes.                                        14:01:08

12      Q.   Okay.                                       14:01:09

13           And so both of these documents            14:01:09

14   were before the patent office; is that             14:01:13

15   correct?                                           14:01:17

16      A.   Yes.                                        14:01:17

17           MS. DURIE:  I apologize, Your              14:01:29

18   Honor.  Can we go back one slide?  Yeah, if we      14:01:30

19   could go to sidebar.                               14:01:40

20           (Whereupon, a discussion was held         14:01:40

21   at sidebar as follows:                             14:03:47

22           MS. DURIE:  So the slide and the          14:03:47

23   patent, there is a reference.  It's -- the          14:03:47

24   Belkin patent, it is not a reference to the         14:03:47
```

Page 275

| | | |
|---|---|---|
| 1 | Belkin switch unit.  We heard testimony -- | 14:03:48 |
| 2 | THE COURT:  I thought you said -- | 14:03:48 |
| 3 | MS. DURIE:  Right.  The one on the | 14:03:48 |
| 4 | right was not.  The Belkin patent -- | 14:03:48 |
| 5 | THE COURT:  I don't think it is | 14:03:48 |
| 6 | the Belkin patent.  The labeling is not -- | 14:03:48 |
| 7 | because it's really -- | 14:03:48 |
| 8 | MS. DURIE:  Can you put the slide | 14:03:48 |
| 9 | back up? | 14:03:48 |
| 10 | MR. FENTON:  Here are the slides | 14:03:48 |
| 11 | right here. | 14:03:48 |
| 12 | MR. ADAMS:  That's not the right | 14:03:48 |
| 13 | one. | 14:03:48 |
| 14 | Would you go ask him?  If I might, | 14:03:48 |
| 15 | that's the '243 Patent. | 14:03:48 |
| 16 | THE COURT:  Right, I understand | 14:03:48 |
| 17 | the '243 Patent with the reference to the | 14:03:48 |
| 18 | Belkin called out and I understand when you're | 14:03:48 |
| 19 | saying -- | 14:03:48 |
| 20 | MS. DURIE:  I think it actually -- | 14:03:48 |
| 21 | the reason I flagged it is this -- it says, | 14:03:48 |
| 22 | "Belkin." | 14:03:48 |
| 23 | THE COURT:  It says "Belkin" at | 14:03:48 |
| 24 | the top.  On the top right it says, "Belkin." | 14:03:48 |

Page 276

| | | |
|---|---|---|
| 1 | It doesn't say the patent, it says, "Belkin." | 14:03:48 |
| 2 | MR. FENTON:  This is what we | 14:03:48 |
| 3 | shared with counsel before lunch. | 14:03:48 |
| 4 | MS. DURIE:  I can't actually -- | 14:03:48 |
| 5 | the reason I didn't have an issue is because | 14:03:48 |
| 6 | you can't actually read it, but that says, | 14:03:48 |
| 7 | "Belkin."  From what I can tell -- actually, | 14:03:48 |
| 8 | this one doesn't.  From what I saw -- | 14:03:48 |
| 9 | MR. ADAMS:  That's the '243 | 14:03:48 |
| 10 | Patent. | 14:03:48 |
| 11 | MS. DURIE:  Okay.  And that was | 14:03:48 |
| 12 | what's up on the slide. | 14:03:48 |
| 13 | MR. ADAMS:  Yes. | 14:03:48 |
| 14 | THE COURT:  Okay.  All right. | 14:03:48 |
| 15 | (Whereupon, the discussion at | 14:03:56 |
| 16 | sidebar concluded.) | 14:03:57 |
| 17 | MR. ADAMS:  I'm again having | 14:03:57 |
| 18 | problems with the clicker.  Would you go to -- | 14:03:59 |
| 19 | now I can.  All right.  There we go.  I am in | 14:04:01 |
| 20 | charge now.  Thank you. | 14:04:03 |
| 21 | BY MR. ADAMS: | 14:04:05 |
| 22 | Q.   And, Dr. Levy, in particular, as we | 14:04:07 |
| 23 | have said, we are focusing on this first | 14:04:10 |
| 24 | element of claim 23; correct? | 14:04:12 |

Page 277

```
 1        A.   That's right.                          14:04:14

 2        Q.   And could you explain a little, we've  14:04:14

 3   heard about it many times, but would you          14:04:17

 4   explain one more time how that element and its    14:04:19

 5   limitations relate to your analysis?              14:04:22

 6        A.   Yes.  We'll be looking for where the    14:04:24

 7   shared USB device block is, and then whether      14:04:27

 8   it's simultaneously configured by two or more     14:04:30

 9   hosts.  That's the key element.                   14:04:34

10        Q.   And Mr. Garney, as I understand and     14:04:38

11   you understand his testimony, that he is not      14:04:43

12   alleging that element is in the Dickens           14:04:45

13   device, correct, the Dickens reference;          14:04:48

14   correct?                                          14:04:52

15        A.   That's correct.                         14:04:52

16        Q.   So Mr. Garney turns to the physical     14:04:59

17   devices, the US-98 and the Belkin device, for     14:05:05

18   that; correct?                                    14:05:09

19        A.   Yes.                                    14:05:10

20        Q.   Do you have some opinion as it          14:05:11

21   relates to whether these devices disclose the     14:05:14

22   first element of claim 23?                        14:05:17

23        A.   Yes, I do.  And, of course, my          14:05:19

24   opinion is that it does not meet that first       14:05:23
```

TRIAL - VOLUME 5

Page 278

| | | |
|---|---|---|
| 1 | element.  And I will show why. | 14:05:26 |
| 2 | Q.   Please explain why. | 14:05:28 |
| 3 | A.   Well, we are talking about how the | 14:05:31 |
| 4 | device was obtained.  Apparently Mr. Garney | 14:05:37 |
| 5 | wanted to fill that gap and so he went and | 14:05:40 |
| 6 | purchased the used device on the Internet | 14:05:44 |
| 7 | believing it to be a US-98, which turned out | 14:05:46 |
| 8 | to be an SW211A. | 14:05:50 |
| 9 | He also purchased a used Belkin | 14:05:52 |
| 10 | device on the Internet.  And we have seen that | 14:05:56 |
| 11 | he doesn't know when either of these devices, | 14:05:59 |
| 12 | these physical devices, was actually made or | 14:06:03 |
| 13 | sold. | 14:06:06 |
| 14 | Q.   Can I pause you right there, Dr. | 14:06:07 |
| 15 | Levy.  And this is a very important point, | 14:06:10 |
| 16 | because there's not a dispute in this case | 14:06:12 |
| 17 | that some Belkin device and some US-98 device | 14:06:14 |
| 18 | were sold, but the issue, as I understand it, | 14:06:22 |
| 19 | is whether the devices tested were sold or how | 14:06:26 |
| 20 | else could he establish that? | 14:06:32 |
| 21 | A.   Well, the other -- even if they were | 14:06:35 |
| 22 | sold or made early enough to be "prior art," | 14:06:41 |
| 23 | we'd have to know that the devices he tested | 14:06:47 |
| 24 | were not -- were the same as the ones that | 14:06:50 |

Page 279

| | | |
|---|---|---|
| 1 | were sold earlier.  So that question is out. | 14:06:54 |
| 2 | And so in order to find out | 14:06:58 |
| 3 | whether it's the same, we would need a certain | 14:07:00 |
| 4 | amount of information about the history of the | 14:07:03 |
| 5 | circuit board of the chips and of the firmware | 14:07:05 |
| 6 | that's running the software in the | 14:07:08 |
| 7 | microcontroller of those devices. | 14:07:10 |
| 8 | Q.   Is there any -- is there any | 14:07:14 |
| 9 | indication on the devices as to whether | 14:07:19 |
| 10 | devices sold before 2005 and after were the | 14:07:23 |
| 11 | same? | 14:07:29 |
| 12 | A.   Well, there is one indication on one | 14:07:30 |
| 13 | of the circuit boards, it has a version 1.2. | 14:07:33 |
| 14 | And it is conventional in the industry to have | 14:07:37 |
| 15 | version numbers on your hardware, on the chips | 14:07:42 |
| 16 | and on the boards, because they do change over | 14:07:46 |
| 17 | time in order to do things like make them more | 14:07:48 |
| 18 | cost effective or to substitute different | 14:07:51 |
| 19 | parts. | 14:07:55 |
| 20 | So the version 1.2 that's on one | 14:07:55 |
| 21 | of the boards indicates to me that there was a | 14:07:59 |
| 22 | version 1.0 and a version 1.1 which are not | 14:08:02 |
| 23 | available to us and that could have been | 14:08:07 |
| 24 | different in how they functioned. | 14:08:08 |

                                                      Page 280

```
 1            MR. ADAMS:  May I approach, Your        14:08:14

 2    Honor?                                          14:08:16

 3            THE COURT:  Yes.                         14:08:16

 4    BY MR. ADAMS:                                   14:08:45

 5      Q.   Dr. Levy, can I ask you to turn to       14:08:46

 6    Exhibit 20 in your binder.                      14:08:48

 7            (Whereupon, Trial Exhibit 20 was        14:08:48

 8    introduced.)                                    14:08:48

 9            THE WITNESS:  Okay.                      14:08:53

10    BY MR. ADAMS:                                   14:09:01

11      Q.   Do you recognize this?                   14:09:01

12      A.   I do.                                    14:09:02

13            MR. ADAMS:  Your Honor, we move         14:09:04

14    into evidence Exhibit 20.                       14:09:06

15            MS. DURIE:  No objection.               14:09:10

16            THE COURT:  All right.  It's            14:09:11

17    admitted.                                       14:09:12

18            MR. ADAMS:  Mr. Ferrer, would you       14:09:13

19    display Exhibit 20.  And if you'd focus on the  14:09:16

20    bottom left-hand corner there.                  14:09:19

21    BY MR. ADAMS:                                   14:09:24

22      Q.   Dr. Levy, you were talking about a       14:09:26

23    version 1.2.  Is this what you're referring     14:09:28

24    to?                                             14:09:30
```

Page 281

```
 1      A.   Yes.                                    14:09:30

 2      Q.   Do you know which device this is?       14:09:31

 3      A.   I'm sorry, I can't remember which one   14:09:33

 4    it is.  I think it's the Belkin; is that       14:09:36

 5    right?                                         14:09:40

 6      Q.   If I said it was a USB-98, would that   14:09:40

 7    refresh your recollection?                     14:09:43

 8      A.   US-98?                                  14:09:43

 9      Q.   US-98.                                  14:09:45

10      A.   Well, yes, that would mean it's in      14:09:46

11    the SW211A device.                             14:09:49

12      Q.   Would you explain to the jury the       14:09:51

13    significance of version 1.2 on the device      14:09:53

14    tested by Mr. Garney?                          14:09:56

15      A.   Well, it suggests to me that there      14:09:59

16    were at least two prior versions of this       14:10:02

17    circuit board, and so therefore, the hardware  14:10:05

18    may have changed over time from earlier        14:10:08

19    versions of the device, the products.          14:10:11

20      Q.   Is there any other information that     14:10:15

21    you'd want to look into to determine whether   14:10:18

22    the devices -- the device that Mr. Garney      14:10:22

23    tested were the same as devices before 2005?   14:10:25

24      A.   Well, yes.  I would want to look at     14:10:28
```

TRIAL - VOLUME 5

Page 282

| | | |
|---|---|---|
| 1 | the firmware version numbers. The firmware is | 14:10:30 |
| 2 | the software that runs inside the | 14:10:33 |
| 3 | microcontroller chip. | 14:10:35 |
| 4 | Q. Was that information available to | 14:10:37 |
| 5 | you? | 14:10:39 |
| 6 | A. No, it was not. We did not have any | 14:10:39 |
| 7 | source code or listings for the firmware of | 14:10:42 |
| 8 | either of these devices. | 14:10:46 |
| 9 | Q. Now, Dr. Levy, was it your -- is it | 14:10:47 |
| 10 | Microchip's burden to show these devices are | 14:10:53 |
| 11 | patentable? | 14:10:57 |
| 12 | A. Are what? | 14:10:58 |
| 13 | Q. Is it Microchip's burden to show the | 14:10:58 |
| 14 | devices are patentable or that -- I'm sorry, | 14:11:02 |
| 15 | valid. Is it Microchip's burden or is it | 14:11:07 |
| 16 | Aptiv's burden? | 14:11:09 |
| 17 | A. Well, it's Aptiv's burden to show | 14:11:10 |
| 18 | that this prior art invalidates. | 14:11:12 |
| 19 | Q. So is it your job to go out and find | 14:11:17 |
| 20 | the firmware to show how these devices | 14:11:20 |
| 21 | operated? | 14:11:22 |
| 22 | A. No, not at all. I inspected what Mr. | 14:11:23 |
| 23 | Garney provided and there was no firmware | 14:11:27 |
| 24 | source code among that. | 14:11:31 |

TRIAL - VOLUME 5

Page 283

```
 1        Q.   All right.                           14:11:33

 2             Now, we're looking here at US-98     14:11:34

 3    or SW211A, whatever it is.  Is there similar  14:11:39

 4    indications of version numbers on the Belkin  14:11:43

 5    devices?                                       14:11:46

 6        A.   I don't think so.                    14:11:47

 7        Q.   Okay.                                 14:11:48

 8        A.   On the hardware.                      14:11:49

 9        Q.   Does that indicate to you that there 14:11:50

10    was only one version?                          14:11:53

11        A.   No, it's quite customary, especially 14:11:54

12    over a span of years, to have the hardware    14:11:56

13    change over time.                              14:11:59

14        Q.   And does your point about the         14:12:02

15    firmware changing apply equally to the Belkin  14:12:06

16    device?                                        14:12:09

17        A.   Probably even more so.  Firmware is   14:12:09

18    often changed to correct certain problems and  14:12:13

19    to make the performance better.                14:12:15

20             MR. ADAMS:  Can we go back to        14:12:22

21    the... okay.  Actually, go back.  There we go. 14:12:31

22    BY MR. ADAMS:                                  14:12:42

23        Q.   We were talking about Mr. Garney      14:12:43

24    doesn't know when the devices were made or     14:12:44
```

Page 284

1    sold.  Is there more that you want to discuss          14:12:46

2    about Mr. Garney?                                      14:12:48

3        A.   Well, we talked about the necessary           14:12:49

4    information and of course its operation, but           14:12:52

5    you'll see when I explain the rest of my               14:12:57

6    opinions, it actually doesn't matter                   14:13:00

7    whether -- my opinion does not matter on when          14:13:03

8    the device was made, even if it is prior art,          14:13:05

9    which I don't think it's shown, they do not            14:13:09

10   function in a way that meet the first element          14:13:13

11   of claim 23.                                           14:13:15

12       Q.   I understand that.                            14:13:17

13            Let's go back a little to the                 14:13:18

14   actual devices.                                        14:13:20

15            Have you -- did you hear Mr.                   14:13:21

16   Garney say well, he knows the devices before          14:13:24

17   and after are the same because they have the           14:13:27

18   same hub chips?                                        14:13:29

19       A.   Oh, yes, I did hear that here today.          14:13:30

20       Q.   In your opinion, is that a valid way          14:13:33

21   to compare devices, before and after certain          14:13:36

22   dates?                                                 14:13:39

23       A.   Well, it's only one aspect.  The              14:13:39

24   critical one is the firmware in the                    14:13:43

Page 285

```
 1   microcontroller chip plus the rest of the          14:13:46

 2   hardware.                                           14:13:48

 3       Q.   Now, I believe Mr. Garney also says       14:13:49

 4   because the software that he believes is from      14:13:51

 5   2002 works with the device he tested, that         14:13:54

 6   means the devices operate the same?                14:13:58

 7       A.   Well, that's also not conclusive          14:14:01

 8   because he's talking about the software that       14:14:04

 9   runs in the PC that's coming down at the host,     14:14:06

10   and that software is the one that displays         14:14:09

11   something that lets the user select something      14:14:13

12   with the switches.                                 14:14:15

13           That software actually, as he             14:14:17

14   testified today, works the same on the two        14:14:22

15   different devices, which are clearly not the       14:14:24

16   same physical device.  And that doesn't give       14:14:26

17   any conclusion about how the internal workings     14:14:30

18   of the switch, the Belkin or the US-98             14:14:35

19   devices, work.                                     14:14:40

20       Q.   So, Dr. Levy, pushing aside all this      14:14:41

21   whether it's prior art or not prior art, when      14:14:46

22   these devices were sold, do you have an            14:14:48

23   opinion that -- as to whether the devices          14:14:50

24   disclose the first element of claim 23?            14:14:55
```

TRIAL - VOLUME 5

Page 286

| | | |
|---|---|---|
| 1 | A.   Yes, I do.  And it's my opinion that | 14:15:00 |
| 2 | these devices, in combination with Dickens, do | 14:15:03 |
| 3 | not disclose -- well, do not disclose the | 14:15:06 |
| 4 | first element of claim 23. | 14:15:09 |
| 5 | Q.   And could you explain that? | 14:15:11 |
| 6 | A.   Well, yeah.  US-98/Belkin is trying | 14:15:17 |
| 7 | to be used as -- to fill in the gap where we | 14:15:22 |
| 8 | have admitted that Dickens does not cover that | 14:15:26 |
| 9 | fulfillment, and so I want to just point to | 14:15:28 |
| 10 | evidence that the US-98 and Belkin behave in a | 14:15:35 |
| 11 | way which don't meet that first element of the | 14:15:39 |
| 12 | claim, 23. | 14:15:42 |
| 13 | Q.   Okay. | 14:15:43 |
| 14 | Do you have an understanding in | 14:15:43 |
| 15 | the Belkin and USB devices about what Mr. | 14:15:46 |
| 16 | Garney points to as the shared USB device | 14:15:50 |
| 17 | block? | 14:15:54 |
| 18 | A.   Yes. | 14:15:54 |
| 19 | Q.   Let's put the claim language up here. | 14:15:58 |
| 20 | A.   Okay. | 14:16:00 |
| 21 | Q.   And what is -- what is your | 14:16:00 |
| 22 | understanding about what Mr. Garney points to | 14:16:02 |
| 23 | as the shared USB device block? | 14:16:05 |
| 24 | A.   Well, remember, the shared USB device | 14:16:07 |

Page 287

| | | |
|---|---|---|
| 1 | block is the peripheral device that you are | 14:16:09 |
| 2 | talking to, and so he pointed to the printer | 14:16:15 |
| 3 | as the shared USB device block. | 14:16:19 |
| 4 | Q.   Is it enough for claim 23A to have a | 14:16:22 |
| 5 | USB shared device block? | 14:16:28 |
| 6 | A.   Well, no.  So even if it were a | 14:16:31 |
| 7 | shared USB device block in the US-98 and | 14:16:34 |
| 8 | Belkin, it does not -- it is not operable to | 14:16:39 |
| 9 | be simultaneously configured by two or more | 14:16:43 |
| 10 | USB hosts. | 14:16:45 |
| 11 | Q.   So it's your opinion that if the | 14:16:47 |
| 12 | shared USB device block is a printer, it's not | 14:16:51 |
| 13 | operable to be simultaneously configured by | 14:16:55 |
| 14 | two or more USB hosts; is that correct? | 14:16:57 |
| 15 | A.   That's correct. | 14:16:59 |
| 16 | Q.   Okay. | 14:17:00 |
| 17 | Do you have any information to | 14:17:01 |
| 18 | support your opinion that the printer is not | 14:17:04 |
| 19 | simultaneously configured by two or more -- | 14:17:08 |
| 20 | I'm sorry, operable to be simultaneously | 14:17:11 |
| 21 | configured by two or more hosts? | 14:17:14 |
| 22 | A.   Yes, I do. | 14:17:15 |
| 23 | Q.   Would you turn to Demonstrative | 14:17:17 |
| 24 | Exhibit 389, which is at the back of your | 14:17:28 |

TRIAL - VOLUME 5

Page 288

| | | |
|---|---|---|
| 1 | folder. | 14:17:30 |
| 2 | A.   Okay. | 14:17:37 |
| 3 | Q.   What do you understand Demonstrative | 14:17:38 |
| 4 | Exhibit 389 to be? | 14:17:41 |
| 5 | A.   Demonstrative 389 is Exhibit E4 to | 14:17:44 |
| 6 | Mr. Garney's original expert report on | 14:17:48 |
| 7 | invalidity. | 14:17:52 |
| 8 | Q.   So this is from Mr. Garney's report; | 14:17:53 |
| 9 | is that correct? | 14:17:55 |
| 10 | A.   That's right. | 14:17:56 |
| 11 | Q.   Okay. | 14:17:57 |
| 12 | Is there something in here that | 14:17:57 |
| 13 | indicates to you that Mr. Garney's testimony | 14:18:02 |
| 14 | today was not sufficient?  And I'll point you | 14:18:04 |
| 15 | to page 27 possibly. | 14:18:09 |
| 16 | A.   Okay.  So on page 27, Mr. Garney is | 14:18:20 |
| 17 | analyzing element 1B, and the reason we're | 14:18:29 |
| 18 | there analyzing element 1B is because under | 14:18:34 |
| 19 | claim 23, first element he says, "See 1B," so | 14:18:37 |
| 20 | he's referring to this for his justification | 14:18:42 |
| 21 | for claim 23. | 14:18:45 |
| 22 | Second of all, prior to this, he | 14:18:48 |
| 23 | was talking about something called an HID | 14:18:52 |
| 24 | device which is not at issue anymore because | 14:18:56 |

```
 1    it's not pointing to that anymore, but he        14:18:58

 2    gives an alternative case where he is pointing   14:19:02

 3    to the printer, which is what he presented       14:19:06

 4    today.                                           14:19:08

 5              And so here he says, "The only         14:19:09

 6    pertinent difference between the HID device,     14:19:12

 7    the old one, and the printer is that the         14:19:16

 8    printer is re-enumerated each time it is         14:19:18

 9    accessed by a different host computer."          14:19:21

10        Q.   And could you explain the              14:19:29

11    significance of the printer being               14:19:30

12    re-enumerated as it relates to the              14:19:32

13    simultaneously configured by two or more hosts  14:19:36

14    language?                                        14:19:39

15        A.   Yes.  Since that is evidence that      14:19:39

16    it's not simultaneously configured by two or    14:19:43

17    more USB hosts because if it had to be          14:19:47

18    re-enumerated each time a different host        14:19:52

19    attaches to it or it sends data to it, that    14:19:55

20    means it was not simultaneously configured by  14:19:57

21    two or more hosts.                              14:20:00

22        Q.   Is there anything else about the       14:20:02

23    Belkin device that indicates to you that Mr.    14:20:05

24    Garney is wrong about the printer being         14:20:08
```

Page 290

| | | |
|---|---|---|
| 1 | operably simultaneously configured by two or | 14:20:11 |
| 2 | more hosts? | 14:20:14 |
| 3 |     A.   Yes.  I think we have some other | 14:20:14 |
| 4 | evidence that the same effect happens on the | 14:20:20 |
| 5 | Belkin device. | 14:20:23 |
| 6 |            MR. ADAMS:  Mr. Ferrer, could you | 14:20:25 |
| 7 | bring up Exhibit 3, which is already in | 14:20:27 |
| 8 | evidence, and particularly, page 1293.  Before | 14:20:29 |
| 9 | you go off page 1... | 14:20:40 |
| 10 | BY MR. ADAMS: | 14:20:44 |
| 11 |     Q.   Dr. Levy, do you understand this to | 14:20:45 |
| 12 | be the prosecution history of the '243 Patent? | 14:20:47 |
| 13 |     A.   Yes. | 14:20:54 |
| 14 |            MR. ADAMS:  Would you go to | 14:20:56 |
| 15 | page 1293, Mr. Ferrer? | 14:20:57 |
| 16 | BY MR. ADAMS: | 14:21:03 |
| 17 |     Q.   Now, I think we looked at this | 14:21:04 |
| 18 | document earlier today.  Is there something in | 14:21:05 |
| 19 | here that you want to point out? | 14:21:08 |
| 20 |     A.   Yes.  It wasn't highlighted on what | 14:21:09 |
| 21 | was shown earlier, but if you look under the | 14:21:13 |
| 22 | pros and cons under the figure, it says, | 14:21:15 |
| 23 | "Cons."  It is giving the pluses and minuses | 14:21:23 |
| 24 | in this review.  And one of the cons is not | 14:21:25 |

TRIAL - VOLUME 5

Page 291

```
 1    only is it not high speed support, but "device      14:21:28

 2    ejection error during switching."                    14:21:31

 3              Now, that correlates with the fact         14:21:35

 4    that when one host sends data, it's                  14:21:36

 5    disconnecting from the other host, and that          14:21:42

 6    causes an error in the other host unless the         14:21:45

 7    user actually goes and tells it to disconnect.       14:21:48

 8              MR. ADAMS:  Can we go back to the          14:21:55

 9    presentation, Mr. Ferrer?                            14:21:57

10    BY MR. ADAMS:                                        14:22:06

11        Q.   And so, Dr. Levy, do you have an            14:22:07

12    opinion as to whether the US-98 and Belkin           14:22:09

13    devices disclose a shared USB block operable         14:22:15

14    to be simultaneously configured by two or more       14:22:19

15    hosts?                                               14:22:21

16        A.   Yes, I have an opinion, and my              14:22:22

17    opinion is that they do not disclose this            14:22:25

18    first element of the shared USB device block         14:22:27

19    operable to be simultaneously configured by          14:22:30

20    two or more hosts.                                   14:22:33

21        Q.   And again, that's not dependent on          14:22:36

22    whether US-98 or Belkin is actually prior art;       14:22:39

23    correct?                                             14:22:43

24        A.   That's right.                               14:22:43
```

TRIAL - VOLUME 5

Page 292

```
 1      Q.    Even if they are prior art, you have        14:22:43
 2   the same opinion?                                    14:22:45
 3      A.    Even if they are prior art and --           14:22:46
 4   yeah.                                                14:22:50
 5      Q.    And again, what's the significance to       14:22:50
 6   claim 23 if neither Dickens, which hasn't been       14:22:52
 7   argued to have it, and US-98 don't have the          14:22:58
 8   first element of claim 23?                           14:23:01
 9      A.    Well, that means that the combination       14:23:03
10   still doesn't have that element, and                 14:23:05
11   therefore, they have not shown it to be              14:23:07
12   invalid.                                             14:23:09
13      Q.    They have not shown it to be invalid,       14:23:10
14   so for the purposes of this trial, it is             14:23:12
15   considered valid; is that right?                     14:23:14
16      A.    That's right.                               14:23:17
17      Q.    Okay.                                       14:23:17
18            And again, what's the significance          14:23:18
19   of claim 23 being valid as it relates to 24          14:23:20
20   and 25?                                              14:23:23
21      A.    Well, 24 being dependent, it includes       14:23:24
22   all the elements of claim 23 and therefore,          14:23:28
23   the missing element is missing from claim 24         14:23:30
24   and its element.                                     14:23:34
```

Page 293

1     Q.    And what about -- go ahead.                    14:23:36

2     A.    Same thing is true of claim 25.  All           14:23:38

3  the elements of claim 23 must be there and the          14:23:40

4  missing element is also missing in claim 25.            14:23:44

5     Q.    Now, Dr. Levy, we actually omitted             14:23:48

6  one piece and it is a pretty important piece.           14:23:51

7          Just identifying a shared USB                   14:23:54

8  device that can be simultaneously configured            14:23:59

9  in one reference isn't enough to create a               14:24:06

10 combination; you need something more to create          14:24:09

11 a combination to invalidate a patent?                   14:24:11

12    A.    Yes, well, you need motivation for             14:24:14

13 the person of skill in the art, that's just             14:24:17

14 the name for an expert, to look for and use             14:24:19

15 these two parts together.  And then you also            14:24:25

16 need to show exactly how you would substitute           14:24:28

17 something from one of them into the other.              14:24:31

18    Q.    And did you see Mr. Garney go up to a          14:24:35

19 board today and draw on it to try to show               14:24:39

20 motivation combined?                                    14:24:42

21    A.    I did.                                         14:24:44

22         MR. ADAMS:  May I put that board               14:24:46

23 up?                                                      14:24:47

24         (Brief pause.)                                 14:25:15

TRIAL - VOLUME 5

Page 294

```
 1    BY MR. ADAMS:                                  14:25:21

 2        Q.   Had you seen this drawing in any of   14:25:22

 3    Mr. Garney's previous work?                    14:25:24

 4        A.   Oh, yes.                              14:25:26

 5        Q.   Okay.                                 14:25:27

 6             Do you agree that this establishes    14:25:28

 7    a motivation to combine the references?        14:25:32

 8        A.   No, I have to admit that it's hard to 14:25:37

 9    understand what exactly here motivates the     14:25:40

10    combination from what he said here.            14:25:44

11        Q.   Okay.                                 14:25:46

12             Do you have an opinion of your own    14:25:46

13    whether there's sufficient motivation to       14:25:49

14    combine these references?                      14:25:53

15        A.   Yes.  I haven't seen sufficient       14:25:54

16    motivation to combine these physical devices   14:25:56

17    and their functioning with the Dickens patent  14:26:00

18    as is shown here -- as is represented here.    14:26:06

19             MR. ADAMS:  Thank you, Dr. Levy.      14:26:11

20             I don't know if I met my promise      14:26:12

21    of keeping it short or not, let others be the  14:26:13

22    judge, but I pass the witness.                 14:26:17

23                        -  -  -                    14:26:17

24                                                   14:26:36
```

Page 295

| | | |
|---|---|---|
| 1 | CROSS-EXAMINATION | 14:26:37 |
| 2 | - - - | 14:26:37 |
| 3 | BY MS. DURIE: | 14:26:37 |
| 4 | Q.   Dr. Levy, good afternoon. | 14:26:39 |
| 5 | A.   Good afternoon. | 14:26:41 |
| 6 | Q.   We have not met other than | 14:26:42 |
| 7 | pleasantries, but as I am sure you have | 14:26:44 |
| 8 | figured out by now, I am Daralyn Durie, one of | 14:26:46 |
| 9 | the lawyers representing Aptiv. | 14:26:49 |
| 10 | Now, you've served as an expert | 14:26:50 |
| 11 | witness in over 60 cases; right? | 14:26:52 |
| 12 | A.   That's right. | 14:26:54 |
| 13 | Q.   And you've testified at trial several | 14:26:54 |
| 14 | times before; right? | 14:26:56 |
| 15 | A.   Correct. | 14:26:57 |
| 16 | Q.   In fact, for the last decade or two, | 14:26:58 |
| 17 | other than teaching one class a year, you have | 14:27:00 |
| 18 | worked as an expert witness in cases like this | 14:27:02 |
| 19 | one; right? | 14:27:04 |
| 20 | A.   In cases -- I'm sorry? | 14:27:05 |
| 21 | Q.   In cases like this one. | 14:27:07 |
| 22 | A.   Yeah. | 14:27:08 |
| 23 | Q.   And you charge $625 an hour for your | 14:27:09 |
| 24 | time; right? | 14:27:11 |

Page 296

1     A.   Yes.                                      14:27:12

2          MS. DURIE:  Now, if we could take         14:27:15

3     a look at TX-102 marked for identification.    14:27:16

4     BY MS. DURIE:                                  14:27:33

5     Q.   TX-102 is a copy of the resume that       14:27:33

6     you submitted in connection with your expert   14:27:37

7     report in this case; correct?                  14:27:39

8     A.   Yes.                                       14:27:46

9          MS. DURIE:  We offer it.                   14:27:48

10         MR. ADAMS:  No objection, Your             14:27:52

11    Honor.                                          14:27:52

12         THE COURT:  All right.  It can             14:27:53

13    come in.                                        14:27:54

14         MS. DURIE:  And if we could                14:27:55

15    publish the first page of Exhibit 102.          14:27:56

16    BY MS. DURIE:                                   14:27:59

17    Q.   It's your standard practice to             14:27:59

18    provide a resume like this as part of your      14:28:01

19    expert report; right?                           14:28:03

20    A.   Yes.                                       14:28:05

21    Q.   And that's, in part, so the parties        14:28:05

22    and the Court can inspect your expertise as it  14:28:09

23    relates to the particular subject matter of     14:28:12

24    the case; right?                                14:28:13

TRIAL - VOLUME 5

Page 297

| | | |
|---|---|---|
| 1 | A.    Yes. | 14:28:14 |
| 2 | Q.    And you see here, under "Bus | 14:28:14 |
| 3 | standards," that you identify USB as being one | 14:28:17 |
| 4 | of your areas of expertise; right? | 14:28:20 |
| 5 | A.    Correct. | 14:28:21 |
| 6 | Q.    Now, you have a website that you use | 14:28:22 |
| 7 | to market your expert witness services; right? | 14:28:24 |
| 8 | A.    Yes. | 14:28:27 |
| 9 | Q.    It is johnlevyexpert.com? | 14:28:28 |
| 10 | A.    Yes. | 14:28:30 |
| 11 | MS. DURIE:  And I am going to mark | 14:28:42 |
| 12 | for identification Exhibit 379. | 14:28:44 |
| 13 | MR. SAULSBURY:  I'm sorry, 380 | 14:28:59 |
| 14 | actually. | 14:29:01 |
| 15 | MS. DURIE:  I apologize. | 14:29:02 |
| 16 | (Whereupon, Exhibit 380 was marked | 14:29:05 |
| 17 | for identification.) | 14:29:09 |
| 18 | BY MS. DURIE: | 14:29:11 |
| 19 | Q.    Exhibit 380 is a copy of your | 14:29:12 |
| 20 | website; right? | 14:29:14 |
| 21 | A.    The first page is a copy of the first | 14:29:35 |
| 22 | page of my website.  The others are from other | 14:29:37 |
| 23 | pages. | 14:29:41 |
| 24 | Q.    From your website? | 14:29:42 |

TRIAL - VOLUME 5

Page 298

```
 1      A.   Yes.                                      14:29:43

 2      Q.   Great.                                    14:29:44

 3           MS. DURIE:  We offer Exhibit 380.         14:29:45

 4           MR. ADAMS:  Objection, Your Honor.        14:29:49

 5  It's not on the exhibit list.                      14:29:50

 6           THE COURT:  I don't see it on the         14:29:54

 7  exhibit list.                                      14:29:56

 8           MS. DURIE:  It's cross.                   14:29:57

 9           THE COURT:  I mean, are you               14:30:00

10  particularly offering it --                        14:30:02

11           MS. DURIE:  Well, let me ask this.        14:30:04

12  BY MS. DURIE:                                      14:30:05

13      Q.   On your website, when you list your       14:30:05

14  areas of expertise, you don't list USB; right?     14:30:08

15      A.   I'm sorry?                                14:30:11

16      Q.   On your website, when you list your       14:30:12

17  areas of expertise, you don't list USB; right?     14:30:14

18      A.   Those words are not there on this,        14:30:17

19  yep.                                               14:30:21

20      Q.   Now, during your actual employment in     14:30:21

21  industry, you did not do work directly on          14:30:24

22  anything that related to USB; right?               14:30:27

23      A.   I'm sorry, I didn't hear the key word     14:30:28

24  there.                                             14:30:31
```

TRIAL - VOLUME 5

Page 299

1    Q.   Yeah, during your actual employment        14:30:31

2  in industry, you didn't do work directly on       14:30:33

3  anything that related to USB?                      14:30:36

4    A.   That's correct.                             14:30:43

5    Q.   Okay.                                        14:30:44

6         You retired from industry to focus          14:30:45

7  on your consulting in 1998; right?                 14:30:49

8    A.   That's right.                               14:30:52

9    Q.   That was two years after the USB            14:30:53

10 standard was published; right?                     14:30:55

11   A.   I accept your representation of that.       14:30:56

12   Q.   Okay.                                        14:30:57

13        And the patent in this case is              14:30:59

14 from 2006; right?                                  14:31:01

15   A.   This case?                                   14:31:02

16   Q.   Right.                                       14:31:03

17   A.   Yes.                                         14:31:03

18   Q.   The patent here.                             14:31:04

19   A.   Right.                                       14:31:05

20   Q.   And so by that point, you had been          14:31:06

21 out of the industry for about eight years;         14:31:08

22 right?                                              14:31:10

23   A.   I wouldn't put it that way.  I had          14:31:10

24 been not employed in the industry --               14:31:13

TRIAL - VOLUME 5

Page 300

| | | |
|---|---|---|
| 1 | Q.   Okay. | 14:31:15 |
| 2 | A.   -- for seven or eight years. | 14:31:17 |
| 3 | Q.   Fair enough. | 14:31:18 |
| 4 | You're not the author of any books | 14:31:19 |
| 5 | or articles that are specifically about USB; | 14:31:20 |
| 6 | right? | 14:31:22 |
| 7 | A.   That's correct. | 14:31:22 |
| 8 | Q.   You haven't ever served as a | 14:31:23 |
| 9 | technical reviewer for any books or articles | 14:31:25 |
| 10 | about USB; right? | 14:31:27 |
| 11 | A.   You said technical review or books or | 14:31:29 |
| 12 | articles about USB? | 14:31:32 |
| 13 | Q.   Correct. | 14:31:33 |
| 14 | A.   I have not. | 14:31:34 |
| 15 | Q.   You did not participate in authoring | 14:31:34 |
| 16 | any of the USB standards; right? | 14:31:37 |
| 17 | A.   Correct. | 14:31:39 |
| 18 | Q.   You don't have any patents that | 14:31:40 |
| 19 | relate to USB; right? | 14:31:42 |
| 20 | A.   That's right. | 14:31:43 |
| 21 | Q.   Your patents predate USB; right? | 14:31:45 |
| 22 | A.   Yes. | 14:31:48 |
| 23 | Q.   I think your last patent issued in | 14:31:48 |
| 24 | 1981; is that right? | 14:31:51 |

```
1       A.    Sounds right.                              14:31:52

2       Q.    You have never spoken at any USB           14:31:53

3   developers conference; correct?                      14:31:55

4       A.    Right.                                     14:31:56

5       Q.    And, in fact, the way that you have        14:31:57

6   become familiar with the circuit level design       14:31:58

7   details of standard USB devices is from              14:32:01

8   studying the USB documents in this case;             14:32:04

9   right?                                               14:32:07

10      A.    No.                                        14:32:07

11            MS. DURIE:  If I could please --           14:32:11

12  all right.  We'll come back to that.                 14:32:19

13  BY MS. DURIE:                                        14:32:25

14      Q.    Now, you have testified as an expert       14:32:25

15  in other cases; right?                               14:32:27

16      A.    Correct.                                   14:32:29

17      Q.    And you submitted your resume in           14:32:29

18  connection with other engagements; right?            14:32:32

19      A.    Right.                                     14:32:34

20      Q.    And when you submitted your resume in      14:32:35

21  connection with other engagements, before you        14:32:37

22  were hired in this case, you did not list USB        14:32:40

23  as one of your areas of expertise; correct?          14:32:44

24      A.    I don't recall.                            14:32:49
```

Page 302

| | | |
|---|---|---|
| 1 | MS. DURIE:  Let me mark for | 14:32:58 |
| 2 | identification, as Exhibit 381, a copy of a | 14:32:59 |
| 3 | resume of John Levy. | 14:33:04 |
| 4 | (Whereupon, Exhibit 381 was marked | 14:33:07 |
| 5 | for identification.) | 14:33:11 |
| 6 | BY MS. DURIE: | 14:33:25 |
| 7 | Q.   Now, you recognize what has been | 14:33:25 |
| 8 | marked for identification as Exhibit 381 as a | 14:33:27 |
| 9 | copy of your resume that you submitted in the | 14:33:30 |
| 10 | Huawei vs. FISI, FISI, I'm not sure, Inter | 14:33:37 |
| 11 | Partes Review proceeding; right? | 14:33:41 |
| 12 | A.   I'm sorry, I didn't hear the last | 14:33:42 |
| 13 | words. | 14:33:44 |
| 14 | Q.   In the Huawei Inter Partes Review | 14:33:44 |
| 15 | proceedings? | 14:33:48 |
| 16 | A.   I accept that representation.  It | 14:33:48 |
| 17 | does have a date at the bottom. | 14:33:50 |
| 18 | Q.   Right. | 14:33:51 |
| 19 | There is a date at the bottom of | 14:33:52 |
| 20 | September 2017; right? | 14:33:54 |
| 21 | A.   That's right. | 14:33:56 |
| 22 | Q.   You actually submitted this to the | 14:33:56 |
| 23 | patent office in 2018; right? | 14:33:59 |
| 24 | A.   That could be. | 14:34:02 |

TRIAL - VOLUME 5

Page 303

| | | |
|---|---|---|
| 1 | Q.   Okay. | 14:34:03 |
| 2 | And if we look at your resume, it | 14:34:04 |
| 3 | appears to be virtually identical to the | 14:34:09 |
| 4 | resume that you submitted in this case; right? | 14:34:11 |
| 5 | Let me see if I can help you out. | 14:34:24 |
| 6 | A.   Well, I can point out a number of | 14:34:25 |
| 7 | differences. | 14:34:28 |
| 8 | Q.   Okay. | 14:34:28 |
| 9 | MS. DURIE:  We offer 381. | 14:34:31 |
| 10 | MR. ADAMS:  Same objection, Your | 14:34:34 |
| 11 | Honor. | 14:34:36 |
| 12 | THE COURT:  All right.  It's | 14:34:36 |
| 13 | overruled. | 14:34:37 |
| 14 | MS. DURIE:  If we could please put | 14:34:38 |
| 15 | up, Mr. Glass, Slide 3. | 14:34:40 |
| 16 | BY MS. DURIE: | 14:34:56 |
| 17 | Q.   On the left is the resume that you | 14:34:56 |
| 18 | submitted in 2018, on the right is the resume | 14:34:58 |
| 19 | that you submitted in this case in August of | 14:35:03 |
| 20 | 2019. | 14:35:05 |
| 21 | And you see, when you look at your | 14:35:07 |
| 22 | areas of expertise, that one of the things you | 14:35:09 |
| 23 | have done is add a reference to USB; right? | 14:35:12 |
| 24 | A.   That, among other things. | 14:35:16 |

TRIAL - VOLUME 5

Page 304

```
 1      Q.    Okay.                                    14:35:18

 2            Now, you have a marketing video on       14:35:18

 3    your website; right?                             14:35:22

 4      A.    I'm not sure what you mean by that.      14:35:24

 5      Q.    Well, you have a video that you          14:35:26

 6    recorded of yourself that attorneys can watch    14:35:28

 7    to see if they might be interested in hiring     14:35:31

 8    you?                                             14:35:33

 9      A.    I had kind of forgotten about that,      14:35:33

10    but I guess I do.                                14:35:36

11      Q.    And you say that you enjoy working on    14:35:37

12    patent cases because you get to interact with    14:35:40

13    very intelligent attorneys; right?  Right?       14:35:42

14      A.    That -- I accept that I say that.        14:35:47

15      Q.    And that one of the themes to a          14:35:49

16    successful expert witness engagement is          14:35:51

17    maintaining frequent communication with the      14:35:53

18    lawyers who hired you; right?                    14:35:55

19      A.    Yes.                                     14:35:57

20      Q.    And you say you like to write the        14:35:58

21    initial draft of the technical content of your   14:36:00

22    report, but then you add lots of time to edit    14:36:02

23    and confine your report in cooperation with      14:36:05

24    the lawyers who hired you; right?                14:36:07
```

TRIAL - VOLUME 5

Page 305

```
 1      A.    That sounds generally correct.           14:36:09

 2      Q.    And the lawyers who hire you, were        14:36:11

 3  going to hire you, will sometimes want             14:36:15

 4  references; right?                                 14:36:17

 5      A.    I don't recall.                           14:36:20

 6      Q.    Well, isn't it the case that you         14:36:22

 7  provide, on your website, a list of litigation    14:36:25

 8  experience?                                        14:36:29

 9      A.    A list of?                               14:36:30

10      Q.    Your litigation experience.             14:36:31

11      A.    I do.                                     14:36:33

12      Q.    And you list some of the lawyers who    14:36:33

13  hired you and their phone numbers; right?          14:36:35

14      A.    I'm sorry?                               14:36:38

15      Q.    You list some of the lawyers who        14:36:39

16  hired you and their phone numbers; right?          14:36:41

17      A.    I suppose I do.                          14:36:43

18      Q.    Including Microchip's lawyers in this   14:36:45

19  case; right?                                       14:36:48

20      A.    I don't recall.                          14:36:49

21      Q.    Now, you have served as an expert in    14:36:52

22  infringement on other cases; right?               14:36:57

23      A.    I think so, yes.                         14:37:00

24      Q.    Okay.                                    14:37:01
```

TRIAL - VOLUME 5

Page 306

```
 1            In this case, you were not asked        14:37:01
 2   to look at the infringement question; right?     14:37:03
 3      A.    Correct.                                 14:37:06
 4      Q.    So you don't have any opinion in this    14:37:07
 5   case about whether Aptiv infringes; right?        14:37:10
 6      A.    That's right.                            14:37:12
 7      Q.    And you didn't do anything to make       14:37:13
 8   sure that the opinions that you're going to       14:37:15
 9   offer today are consistent with Dr.               14:37:17
10   Zatkovich's opinions.  When you were preparing    14:37:20
11   your opinions, that's not something you did;      14:37:22
12   right?                                            14:37:24
13            MR. ADAMS:  Objection, Your Honor.       14:37:26
14            THE COURT:  Overruled.                   14:37:28
15            THE WITNESS:  So I guess I should        14:37:33
16   hear the question again.                          14:37:34
17            MS. DURIE:  Sure.                        14:37:35
18   BY MS. DURIE:                                     14:37:36
19      Q.    When you were preparing your             14:37:36
20   opinions, you didn't do anything to make sure     14:37:38
21   that what you were saying was consistent with     14:37:40
22   what Dr. Zatkovich was saying; right?             14:37:42
23      A.    Well, I didn't have access to            14:37:44
24   anything that Dr. -- Mr. Zatkovich was saying,    14:37:46
```

Page 307

| | | |
|---|---|---|
| 1 | so I guess that follows from that. | 14:37:49 |
| 2 | Q.   Right. | 14:37:50 |
| 3 | Well, you were provided with the | 14:37:51 |
| 4 | first 10 pages of his expert report; right? | 14:37:52 |
| 5 | A.   I don't recall. | 14:37:57 |
| 6 | Q.   Okay. | 14:37:58 |
| 7 | Let's take a look -- I am going to | 14:38:01 |
| 8 | hand you a copy of your deposition. | 14:38:03 |
| 9 | Now first, let's turn to page 11 | 14:38:16 |
| 10 | of your deposition, line 4.  Sorry, I | 14:38:19 |
| 11 | apologize.  Page 11 of your deposition -- | 14:38:26 |
| 12 | actually, let's start at line 12 -- line 4. | 14:38:34 |
| 13 | Do you see that you were asked | 14:38:37 |
| 14 | about Mr. Zatkovich's infringement report? | 14:38:40 |
| 15 | A.   We are talking about on page 11? | 14:38:45 |
| 16 | Q.   Page 11, starting at line 4. | 14:38:47 |
| 17 | A.   Yes. | 14:38:49 |
| 18 | Q.   Why don't you read down to line 16. | 14:38:49 |
| 19 | A.   Okay. | 14:38:54 |
| 20 | Q.   Does that refresh your recollection | 14:38:55 |
| 21 | that you had reviewed the first 10 pages of | 14:38:57 |
| 22 | Dr. Zatkovich's report? | 14:39:00 |
| 23 | A.   Yes. | 14:39:08 |
| 24 | Q.   Do you know why it is that you were | 14:39:10 |

Page 308

1    only provided with the first 10 pages and not          14:39:11

2    with any of his substantive opinions?                  14:39:14

3        A.    Presumably so that I would not have          14:39:17

4    any influence from seeing his opinions on              14:39:21

5    infringement.                                          14:39:24

6        Q.    Okay.                                        14:39:25

7              Now, I asked you a little while              14:39:25

8    ago whether the way that you had become                14:39:28

9    familiar with the circuit level design details        14:39:30

10   of standard USB devices was from studying             14:39:32

11   documents in this case.                                14:39:36

12             I am going to read from your                 14:39:38

13   deposition at page 34, beginning at line 24.           14:39:39

14             "QUESTION:  Are you familiar with            14:39:44

15   the circuit level design details of any                14:39:47

16   standard USB devices?                                  14:39:50

17             "ANSWER:  Well, I have become                14:39:51

18   familiar with quite a bit of it in studying            14:39:54

19   the USB documents in this case."                       14:39:56

20             Do you recall that testimony?                14:39:59

21       A.    No.                                          14:40:00

22       Q.    Okay.                                        14:40:01

23             Now, when you were putting your              14:40:08

24   infringement opinions -- I'm sorry, your               14:40:11

| 1 | invalidity opinions together, you didn't know | 14:40:14 |
|---|---|---|
| 2 | what products Microchip had accused of | 14:40:18 |
| 3 | infringement; right? | 14:40:20 |
| 4 | A.   Correct. | 14:40:21 |
| 5 | Q.   You didn't look at the dual role hub; | 14:40:21 |
| 6 | right? | 14:40:24 |
| 7 | A.   The what? | 14:40:24 |
| 8 | Q.   Do you even know what the dual role | 14:40:25 |
| 9 | hub is? | 14:40:28 |
| 10 | A.   Well, I've seen it in the courtroom, | 14:40:28 |
| 11 | but before this, no. | 14:40:30 |
| 12 | Q.   Okay. | 14:40:33 |
| 13 | Now, when you were preparing your | 14:40:34 |
| 14 | expert reports, you were aware that there had | 14:40:36 |
| 15 | been prior patent office proceedings involving | 14:40:39 |
| 16 | the Microchip patent; right? | 14:40:42 |
| 17 | A.   Correct. | 14:40:44 |
| 18 | Q.   And you reviewed the record of | 14:40:45 |
| 19 | proceedings in the patent office that related | 14:40:47 |
| 20 | to two other Microchip patents; right? | 14:40:50 |
| 21 | A.   In addition to the '243?  Yeah. | 14:40:52 |
| 22 | Q.   I was going to ask you that. | 14:40:56 |
| 23 | You didn't list the IPR | 14:40:57 |
| 24 | proceedings relating to the '243 Patent in | 14:40:58 |

TRIAL - VOLUME 5

Page 310

| | | |
|---|---|---|
| 1 | your materials considered.  I take it that was | 14:41:01 |
| 2 | just an oversight; you did look at them? | 14:41:02 |
| 3 | A.   Yes. | 14:41:04 |
| 4 | Q.   Okay. | 14:41:05 |
| 5 | And you're aware that in that | 14:41:06 |
| 6 | proceeding, the patent office had looked at | 14:41:08 |
| 7 | patents and the written prior art; right? | 14:41:10 |
| 8 | A.   I'm sorry, patents and... | 14:41:13 |
| 9 | Q.   Written prior art. | 14:41:15 |
| 10 | A.   Yes. | 14:41:17 |
| 11 | Q.   Now, you were not Microchip's expert | 14:41:17 |
| 12 | during those patent office proceedings; right? | 14:41:20 |
| 13 | A.   During the PTAB proceedings, no. | 14:41:22 |
| 14 | Q.   Microchip had a different expert; | 14:41:25 |
| 15 | right? | 14:41:26 |
| 16 | A.   Apparently so. | 14:41:27 |
| 17 | Q.   That was Mr. Knapen? | 14:41:28 |
| 18 | A.   Yes. | 14:41:30 |
| 19 | Q.   Okay. | 14:41:30 |
| 20 | And Microchip argued in reliance | 14:41:31 |
| 21 | on Mr. Knapen's testimony that all of the | 14:41:36 |
| 22 | claims of the patent were valid; right? | 14:41:39 |
| 23 | A.   I don't recall, but I believe that's | 14:41:42 |
| 24 | right. | 14:41:44 |

TRIAL - VOLUME 5

Page 311

| | | |
|---|---|---|
| 1 | Q.   Okay. | 14:41:44 |
| 2 | And then the patent office | 14:41:45 |
| 3 | invalidated a number of the claims, including | 14:41:47 |
| 4 | claim 1; right? | 14:41:50 |
| 5 | A.   Including... | 14:41:51 |
| 6 | Q.   Claim 1. | 14:41:52 |
| 7 | A.   Yes. | 14:41:53 |
| 8 | Q.   And Microchip appealed that decision; | 14:41:54 |
| 9 | right?  Aptiv appealed and Microchip appealed. | 14:41:56 |
| 10 | Nobody was completely happy with what had | 14:42:00 |
| 11 | happened in the patent office; right? | 14:42:02 |
| 12 | A.   I am not clear on who appealed. | 14:42:04 |
| 13 | MS. DURIE:  Let's see Exhibit 370, | 14:42:06 |
| 14 | please, Mr. Glass, at 3438. | 14:42:09 |
| 15 | BY MS. DURIE: | 14:42:18 |
| 16 | Q.   Do you see at the top there, it says, | 14:42:18 |
| 17 | "Notice is hereby given that patent owner | 14:42:22 |
| 18 | Microchip Technology cross appeals to the | 14:42:25 |
| 19 | United States Court of Appeals for the Federal | 14:42:28 |
| 20 | Circuit," and then there's lots of lawyer | 14:42:31 |
| 21 | language. | 14:42:32 |
| 22 | Do you see that? | 14:42:32 |
| 23 | A.   I see it. | 14:42:33 |
| 24 | Q.   So you understand both sides | 14:42:34 |

TRIAL - VOLUME 5

Page 312

| | | |
|---|---|---|
| 1 | appealed? | 14:42:35 |
| 2 | A.   I do now. | 14:42:36 |
| 3 | Q.   Okay. | 14:42:37 |
| 4 | And then after the patent office | 14:42:37 |
| 5 | found that a number of the claims, including | 14:42:42 |
| 6 | claim 1, were invalid, Microchip stopped using | 14:42:44 |
| 7 | Mr. Knapen as an expert and hired you; right? | 14:42:46 |
| 8 | A.   Apparently. | 14:42:50 |
| 9 | Q.   Okay. | 14:42:51 |
| 10 | And when you prepared your report, | 14:42:52 |
| 11 | you didn't make any effort to make sure that | 14:42:54 |
| 12 | the opinions you were presenting were | 14:42:58 |
| 13 | consistent with the opinions that Mr. Knapen | 14:42:59 |
| 14 | had presented to the patent office; right? | 14:43:02 |
| 15 | A.   I don't recall. | 14:43:04 |
| 16 | MS. DURIE:  I am going to read | 14:43:07 |
| 17 | from the witness's deposition at page 12, | 14:43:08 |
| 18 | line 13 through 16. | 14:43:11 |
| 19 | "QUESTION:  Have you made any | 14:43:12 |
| 20 | effort to be consistent with the opinions Mr. | 14:43:15 |
| 21 | Knapen presented to the Patent Trial and | 14:43:17 |
| 22 | Appeal Board? | 14:43:22 |
| 23 | "ANSWER:  No." | 14:43:22 |
| 24 | BY MS. DURIE: | 14:43:22 |

TRIAL - VOLUME 5

Page 313

| | | |
|---|---|---|
| 1 | Q.   Now, in your expert report, you | 14:43:24 |
| 2 | address claims 2, 3, 6, 7, 8, 10, 12, 16, 17, | 14:43:26 |
| 3 | 22, 23, 24 and 25. | 14:43:31 |
| 4 | Does that sound right? | 14:43:33 |
| 5 | A.   That sounds plausible. | 14:43:34 |
| 6 | Q.   Okay. | 14:43:35 |
| 7 | And in your expert report, you | 14:43:36 |
| 8 | said that you believe all of those claims are | 14:43:38 |
| 9 | valid; right? | 14:43:41 |
| 10 | A.   I suppose so. | 14:43:42 |
| 11 | MS. DURIE:   Now, if we could take | 14:43:44 |
| 12 | a look at Slide 4, please, Mr. Glass. | 14:43:46 |
| 13 | BY MS. DURIE: | 14:43:51 |
| 14 | Q.   Claim 6 was one of the claims you | 14:43:51 |
| 15 | addressed, and it is what we call a dependent | 14:43:53 |
| 16 | claim; right? | 14:43:56 |
| 17 | A.   Yes. | 14:43:56 |
| 18 | Q.   And if we go to slide -- actually, I | 14:43:58 |
| 19 | should be able to do it myself.   No -- can we | 14:44:00 |
| 20 | go to Slide 5. | 14:44:05 |
| 21 | Claim 6 rears back to claim 5, and | 14:44:08 |
| 22 | then if we go to the next slide, claim 5 | 14:44:11 |
| 23 | refers back to claim 3; right? | 14:44:14 |
| 24 | A.   Okay. | 14:44:16 |

TRIAL - VOLUME 5

Page 314

| | | |
|---|---|---|
| 1 | MR. ADAMS:  Your Honor, sidebar? | 14:44:17 |
| 2 | (Whereupon, a discussion was held | 14:44:17 |
| 3 | at sidebar as follows: | 14:51:27 |
| 4 | MR. ADAMS:  Your Honor, this is | 14:51:27 |
| 5 | far outside of the scope of the direct.  Dr. | 14:51:27 |
| 6 | Levy has only testified about claims 23 | 14:51:27 |
| 7 | through 25 which are the subject -- | 14:51:27 |
| 8 | MS. DURIE:  It goes directly to | 14:51:27 |
| 9 | his credibility, his failure to have | 14:51:27 |
| 10 | considered the release by the PTAB, which he | 14:51:27 |
| 11 | did not do at all with respect to any of the | 14:51:27 |
| 12 | claims that he analyzed, claim 23 or any of | 14:51:27 |
| 13 | the claims. | 14:51:27 |
| 14 | I don't plan to dwell on it, but I | 14:51:27 |
| 15 | want to make the point that he said that claim | 14:51:27 |
| 16 | 6 was invalid, he didn't even consider whether | 14:51:27 |
| 17 | PTAB had invalidated. | 14:51:27 |
| 18 | THE COURT:  He said it was valid. | 14:51:27 |
| 19 | MS. DURIE:  He said it was valid | 14:51:27 |
| 20 | and he didn't even consider that the PTAB had | 14:51:27 |
| 21 | invalidated claim 3 and claim 5, which were | 14:51:27 |
| 22 | the vast majority of those elements. | 14:51:27 |
| 23 | MR. ADAMS:  Your Honor, we | 14:51:27 |
| 24 | offered -- | 14:51:27 |

Page 315

1        THE COURT:  No, go ahead.                    14:51:27

2        MR. ADAMS:  He offered his                   14:51:27

3    independent opinions about the different         14:51:27

4    limits -- about the different issues.  He        14:51:27

5    didn't dispute the PTAB.  It has nothing to do   14:51:27

6    with this case.  It is not related to            14:51:27

7    anything.  It is not related to the direct       14:51:27

8    testimony.                                        14:51:27

9        MS. DURIE:  It is.  I am going to            14:51:27

10   show you that the claim elements --              14:51:27

11       THE COURT:  Yeah, but that doesn't           14:51:27

12   matter.  I mean, we are not going to -- what     14:51:27

13   happened with the claims that are not asserted   14:51:27

14   in the PTAB does not matter to the validity of   14:51:27

15   the claims that are survived and that are at     14:51:27

16   issue in this case.                              14:51:27

17       MS. DURIE:  It does if the PTAB             14:51:27

18   held the same limitations weren't present,      14:51:27

19   then that is dispositive with respect to those  14:51:27

20   claim elements.  They can't relitigate that.    14:51:27

21       THE COURT:  Wait, that was the             14:51:28

22   subject of the pretrial in limine motion that  14:51:28

23   was withdrawn.                                   14:51:28

24       MS. DURIE:  No, no.                         14:51:28

TRIAL - VOLUME 5

Page 316

| | | |
|---|---|---|
| 1 | THE COURT:  The collateral | 14:51:28 |
| 2 | estoppel article. | 14:51:28 |
| 3 | MS. DURIE:  And we agreed on the | 14:51:28 |
| 4 | record yesterday that both sides were bound by | 14:51:28 |
| 5 | collateral estoppel. | 14:51:28 |
| 6 | THE COURT:  Right, but the | 14:51:28 |
| 7 | question is what does collateral estoppel go | 14:51:28 |
| 8 | to?  I mean, I never ruled on this question | 14:51:28 |
| 9 | pretrial.  I don't think collateral estoppel | 14:51:28 |
| 10 | goes as far as to limit individual claim | 14:51:28 |
| 11 | elements.  I think it limits a claim. | 14:51:28 |
| 12 | MS. DURIE:  Both sides agreed that | 14:51:28 |
| 13 | the experts would not dispute any of the | 14:51:28 |
| 14 | determinations that were made by the PTAB. | 14:51:28 |
| 15 | THE COURT:  No one is disputing | 14:51:28 |
| 16 | them, but now you're going beyond disputing | 14:51:28 |
| 17 | them.  It is not a shield or the sword now. | 14:51:28 |
| 18 | I am going to sustain the | 14:51:28 |
| 19 | objection.  I don't think that there is a | 14:51:28 |
| 20 | basis to be inquiring about what happened with | 14:51:28 |
| 21 | respect to claims 3, 5 and 6 in a case about | 14:51:28 |
| 22 | claims 23, 24 and 25. | 14:51:28 |
| 23 | MS. DURIE:  Well, what I want to | 14:51:28 |
| 24 | do, and I want to preview what I want to do | 14:51:28 |

Page 317

| | | |
|---|---|---|
| 1 | next because I want to put up claim 1 and | 14:51:28 |
| 2 | claim 23 side-by-side and talk difference. | 14:51:28 |
| 3 | That is the subject of the proceeding before | 14:51:28 |
| 4 | PTAB.  Everything else is claim 1 that I | 14:51:28 |
| 5 | understand, in view of the PTAB ruling, is now | 14:51:28 |
| 6 | undisputed. | 14:51:28 |
| 7 | The question is whether the claim | 14:51:28 |
| 8 | element is found in Belkin, but that was -- | 14:51:28 |
| 9 | that was the agreement that I thought we had | 14:51:28 |
| 10 | reached yesterday with respect to collateral | 14:51:28 |
| 11 | estoppel, which is that either side disputes | 14:51:28 |
| 12 | those determinations that PTAB made with | 14:51:28 |
| 13 | respect to particular claim elements. | 14:51:28 |
| 14 | MR. ADAMS:  And we haven't.  We | 14:51:28 |
| 15 | addressed one claim element which was claim | 14:51:28 |
| 16 | element -- the first claim element, 23, which | 14:51:28 |
| 17 | the patent office found, not claim 1 to 23. | 14:51:28 |
| 18 | Dr. Levy has offered no opinions on claim 1 at | 14:51:28 |
| 19 | all.  So to put claim 1 and 23 before Dr. | 14:51:28 |
| 20 | Levy -- | 14:51:28 |
| 21 | MS. DURIE:  Well, he did offer | 14:51:28 |
| 22 | opinions in his report, but the point -- but I | 14:51:28 |
| 23 | want to cross-examine Dr. Levy with respect to | 14:51:28 |
| 24 | the basis for his opinion on 23, and I want to | 14:51:28 |

Page 318

| | | |
|---|---|---|
| 1 | explain to the jury what is correct invalidity | 14:51:28 |
| 2 | and correct invalidity analysis is to take a | 14:51:28 |
| 3 | look at what the PTAB decided, which claim | 14:51:28 |
| 4 | elements it determined with any prior art and | 14:51:28 |
| 5 | then to take a look at the one and only claim | 14:51:28 |
| 6 | element that the PTAB determined was not in | 14:51:28 |
| 7 | the prior art and whether that claim element | 14:51:28 |
| 8 | is present in Belkin. | 14:51:28 |
| 9 | I do think it is relevant to the | 14:51:28 |
| 10 | witness's credibility that when he was putting | 14:51:28 |
| 11 | his expert opinion together, he knew about the | 14:51:28 |
| 12 | PTAB proceedings.  He didn't try to grapple | 14:51:28 |
| 13 | with the reasoning of them, whether he thought | 14:51:29 |
| 14 | they were right or wrong or what impact they | 14:51:29 |
| 15 | may have in his opinions.  And I think that is | 14:51:29 |
| 16 | directly relevant to his credibility and | 14:51:29 |
| 17 | whether he was undertaking this analysis | 14:51:29 |
| 18 | objectively. | 14:51:29 |
| 19 | THE COURT:  All right.  I'll let | 14:51:29 |
| 20 | you get into claim 1. | 14:51:29 |
| 21 | MS. DURIE:  Okay. | 14:51:29 |
| 22 | THE COURT:  We have been down that | 14:51:29 |
| 23 | path quite a bit in this trial already, most | 14:51:29 |
| 24 | of it without objection, and so I'll let you | 14:51:29 |

|  |  |  |
|---|---|---|
| 1 | go into claim 1 to establish that, you know, | 14:51:29 |
| 2 | what the bounds are and aren't.  The PTAB | 14:51:29 |
| 3 | record is in front of the jury as well and you | 14:51:29 |
| 4 | can make arguments at closing. | 14:51:29 |
| 5 | MR. ADAMS:  One clarification.  If | 14:51:29 |
| 6 | Dr. Levy says I haven't offered an opinion on | 14:51:29 |
| 7 | claim 1 or analyzed claim 1 -- | 14:51:29 |
| 8 | THE COURT:  Well, wait, wait, | 14:51:29 |
| 9 | wait.  He hasn't. | 14:51:29 |
| 10 | MS. DURIE:  He did. | 14:51:29 |
| 11 | THE COURT:  We are going to be | 14:51:29 |
| 12 | careful about this.  It depends what the | 14:51:29 |
| 13 | question and answer is a little bit.  He has | 14:51:29 |
| 14 | not offered an opinion here, he is not | 14:51:29 |
| 15 | offering an opinion here. | 14:51:29 |
| 16 | MS. DURIE:  Correct.  He does in | 14:51:29 |
| 17 | his report. | 14:51:29 |
| 18 | THE COURT:  I know he does in his | 14:51:29 |
| 19 | report, but the scope of the case has changed | 14:51:29 |
| 20 | since his report and we need to be mindful of | 14:51:29 |
| 21 | that.  So the fact that people, you know, | 14:51:29 |
| 22 | opined about things that were in the case at | 14:51:29 |
| 23 | the time, if it's impeachment of something he | 14:51:29 |
| 24 | is saying here, that's one thing.  I don't | 14:51:29 |

Page 320

|    |                                                          |          |
|----|----------------------------------------------------------|----------|
| 1  | want to set up a straw man by importing what             | 14:51:29 |
| 2  | he said in his report and then knocking it               | 14:51:29 |
| 3  | down.  That's a little different.                        | 14:51:29 |
| 4  | MS. DURIE:  Well, I think, in                            | 14:51:29 |
| 5  | fairness, we should settle that with Mr.                 | 14:51:29 |
| 6  | Garney.  They cross-examined him about that.             | 14:51:29 |
| 7  | THE COURT:  Well, they                                   | 14:51:29 |
| 8  | cross-examined him with statements that he               | 14:51:29 |
| 9  | made in the PTAB.  I don't know if they were             | 14:51:29 |
| 10 | all prior inconsistent statements.                       | 14:51:29 |
| 11 | MS. DURIE:  I understand.  I                             | 14:51:29 |
| 12 | understand.  I want to put up claim 1 and I              | 14:51:29 |
| 13 | think I understand.                                      | 14:51:29 |
| 14 | MR. ADAMS:  One other thing.  I                          | 14:51:29 |
| 15 | don't believe it's accurate he offered an                | 14:51:29 |
| 16 | opinion on claim 1.  I think he offered an               | 14:51:29 |
| 17 | opinion on claims pending from claim 1, which            | 14:51:29 |
| 18 | involved claim 1.  That's a big difference.              | 14:51:29 |
| 19 | THE COURT:  It doesn't matter                            | 14:51:29 |
| 20 | because we are not going to get into what he             | 14:51:29 |
| 21 | did and didn't say in his report if he's not             | 14:51:29 |
| 22 | opining about it here.                                    | 14:51:29 |
| 23 | (Whereupon, the discussion at                            | 14:51:33 |
| 24 | sidebar concluded.)                                      | 14:51:35 |

TRIAL - VOLUME 5

Page 321

| | | |
|---|---|---|
| 1 | BY MS. DURIE: | 14:51:35 |
| 2 | Q.   Now, in your expert report, Dr. Levy, | 14:51:35 |
| 3 | you don't address the patent office | 14:51:37 |
| 4 | proceedings; right? | 14:51:40 |
| 5 | A.   I don't recall. | 14:51:41 |
| 6 | Q.   Let me hand you a copy of your report | 14:51:43 |
| 7 | which we will mark for identification as | 14:51:53 |
| 8 | TX-382. | 14:51:59 |
| 9 | (Whereupon, Trial Exhibit 382 was | 14:51:59 |
| 10 | marked for identification.) | 14:51:59 |
| 11 | BY MS. DURIE: | 14:51:59 |
| 12 | Q.   Now, I don't want to take a lot of | 14:52:14 |
| 13 | time, Dr. Levy, because we are on the clock, | 14:52:16 |
| 14 | but as you sit here today, did you reread your | 14:52:18 |
| 15 | expert report to prepare for your testimony | 14:52:20 |
| 16 | today? | 14:52:23 |
| 17 | A.   Yes. | 14:52:24 |
| 18 | Q.   Okay. | 14:52:24 |
| 19 | When you did that, did you see any | 14:52:25 |
| 20 | reference to the PTAB proceedings? | 14:52:27 |
| 21 | A.   I don't recall. | 14:52:30 |
| 22 | Q.   Okay. | 14:52:31 |
| 23 | Did you see any reference to any | 14:52:32 |
| 24 | of the claims that were invalidated during the | 14:52:34 |

| | | |
|---|---|---|
| 1 | course of the PTAB proceeding? | 14:52:37 |
| 2 | A.   You said reference to the claims that | 14:52:40 |
| 3 | were invalidated? | 14:52:42 |
| 4 | Q.   Any claims that were invalidated | 14:52:43 |
| 5 | during the course of the PTAB proceedings? | 14:52:45 |
| 6 | A.   I don't recall that either. | 14:52:48 |
| 7 | Q.   Okay. | 14:52:49 |
| 8 | Now, during opening statements -- | 14:52:50 |
| 9 | were you here for the opening statements? | 14:52:52 |
| 10 | A.   Yes. | 14:52:54 |
| 11 | Q.   And you heard Microchip's counsel | 14:52:54 |
| 12 | talk about how the examiners of the patent | 14:52:56 |
| 13 | office had looked at the claims of the patent | 14:52:59 |
| 14 | for three years and concluded that the claims | 14:53:01 |
| 15 | were valid. | 14:53:04 |
| 16 | Was that part of the analysis that | 14:53:06 |
| 17 | you did in arriving at your opinions? | 14:53:09 |
| 18 | A.   I'm sorry, was what part of my | 14:53:11 |
| 19 | analysis? | 14:53:14 |
| 20 | Q.   Taking into consideration that the | 14:53:14 |
| 21 | patent office, as counsel said, had looked at | 14:53:16 |
| 22 | the claims of the patent for three years and | 14:53:18 |
| 23 | concluded that they were valid? | 14:53:20 |
| 24 | A.   So we are talking here about 23 | 14:53:21 |

| | | |
|---|---|---|
| 1 | through 25? | 14:53:23 |
| 2 | Q.   Actually I think the statement was | 14:53:24 |
| 3 | more generally.  It just said the patent | 14:53:26 |
| 4 | office examined Mr. Bohm's patent application | 14:53:29 |
| 5 | and all of the prior art for three years | 14:53:31 |
| 6 | before determining the '243 Patent was a new | 14:53:34 |
| 7 | and useful invention. | 14:53:37 |
| 8 | Is that something that is | 14:53:39 |
| 9 | consistent with your analysis? | 14:53:41 |
| 10 | A.   I have no idea. | 14:53:46 |
| 11 | Q.   Okay. | 14:53:47 |
| 12 | I mean, in fact, we know that the | 14:53:48 |
| 13 | patent office did make a mistake in issuing | 14:53:50 |
| 14 | some of the claims of the '243 Patent; right? | 14:53:53 |
| 15 | A.   By -- by making a mistake, you mean | 14:53:57 |
| 16 | that they subsequently got invalidated? | 14:53:59 |
| 17 | Q.   Correct. | 14:54:02 |
| 18 | A.   Ah, in that sense, yes. | 14:54:03 |
| 19 | Q.   Now, we have been talking about the | 14:54:06 |
| 20 | patent that was issued to Nigel Dickens.  That | 14:54:07 |
| 21 | patent, the Dickens patent, was not something | 14:54:10 |
| 22 | that the examiners had in front of them when | 14:54:14 |
| 23 | they originally issued the '243 Patent; | 14:54:16 |
| 24 | correct? | 14:54:21 |

Page 324

| | | |
|---|---|---|
| 1 | A.    That is my understanding. | 14:54:22 |
| 2 | Q.    Okay. | 14:54:23 |
| 3 | And so they were not able to | 14:54:24 |
| 4 | evaluate whether the Dickens patent taught | 14:54:26 |
| 5 | each and every limitation of some of the | 14:54:29 |
| 6 | claims in the '243 Patent; right? | 14:54:32 |
| 7 | A.    During the prosecution of the '243 | 14:54:35 |
| 8 | Patent, those examiners were not able to | 14:54:38 |
| 9 | examine the Dickens patent. | 14:54:40 |
| 10 | Q.    Right. | 14:54:42 |
| 11 | A.    Or did not. | 14:54:42 |
| 12 | Q.    Now, in your expert report, and this | 14:54:43 |
| 13 | is at paragraph 43, you reference the fact | 14:54:46 |
| 14 | that Mr. Bohm successfully overcame the | 14:54:50 |
| 15 | shortcomings from the prior art.  Feel free to | 14:54:53 |
| 16 | turn to paragraph 43 of your report.  You | 14:54:56 |
| 17 | should be able to see it. | 14:54:59 |
| 18 | Do you have that in front of you? | 14:55:01 |
| 19 | It's on page 20. | 14:55:06 |
| 20 | A.    I've got it. | 14:55:08 |
| 21 | Q.    And you said that "Bohm successfully | 14:55:09 |
| 22 | overcame the shortcomings of the prior art by | 14:55:11 |
| 23 | providing a multi-host USB device with | 14:55:14 |
| 24 | concurrent USB connections between the | 14:55:18 |

Page 325

| | | |
|---|---|---|
| 1 | multi-host USB device's device block | 14:55:21 |
| 2 | corresponding to at least one function in two | 14:55:25 |
| 3 | or more hosts." | 14:55:29 |
| 4 | Do you see that? | 14:55:30 |
| 5 | A.   I see that. | 14:55:31 |
| 6 | Q.   Now, that is something that, in fact, | 14:55:32 |
| 7 | Mr. Dickens had already accomplished; right? | 14:55:36 |
| 8 | (Whereupon, the witness reviews | 14:56:21 |
| 9 | the exhibit.) | 14:56:24 |
| 10 | THE WITNESS:  I am now reading | 14:56:43 |
| 11 | paragraph 42 as well because it gives | 14:56:45 |
| 12 | background. | 14:56:47 |
| 13 | MS. DURIE:  Sure. | 14:56:48 |
| 14 | THE WITNESS:  Sharing of | 14:56:49 |
| 15 | peripheral devices, and that's the context in | 14:56:50 |
| 16 | which I made these statements about what Mr. | 14:56:52 |
| 17 | Bohm overcame in the three patents that were | 14:56:55 |
| 18 | being considered at that time. | 14:56:59 |
| 19 | MS. DURIE:  Okay. | 14:57:01 |
| 20 | BY MS. DURIE: | 14:57:01 |
| 21 | Q.   But you agree that Mr. Dickens had | 14:57:02 |
| 22 | already provided a way for there to be a | 14:57:05 |
| 23 | multi-host USB device with concurrent USB | 14:57:10 |
| 24 | devices between the multi-host USB device's | 14:57:14 |

Page 326

1    device block corresponding to at least one              14:57:18

2    function in two or more hosts; right?                   14:57:20

3              (Whereupon, the witness reviews              14:57:41

4    the exhibit.)                                          14:57:43

5              THE WITNESS:  Well, I disagree               14:58:11

6    because of what I have shown in my analysis of         14:58:14

7    Dickens, which was not presented yet in this           14:58:17

8    court, Dickens did not allow a shared USB              14:58:20

9    device be simultaneously configured by two or          14:58:23

10   more USB hosts.                                        14:58:26

11   BY MS. DURIE:                                          14:58:28

12       Q.   The patent office found that it did;          14:58:28

13   right?  The patent office found --                     14:58:31

14       A.   Not in the context of claim 23.              14:58:35

15       Q.   So let's take a look at Exhibit 370,         14:58:37

16   page 3311.                                             14:58:42

17            Do you recognize this as a figure           14:58:45

18   from the patent office decision?                       14:58:48

19       A.   Yes.                                          14:58:51

20       Q.   And actually, can you just go back.          14:58:51

21            And it says at the top, "We are             14:58:54

22   persuaded by petitioner's argument."                   14:58:57

23            Petitioner in this context is              14:58:59

24   Aptiv; right?                                          14:59:03

TRIAL - VOLUME 5

Page 327

```
 1        A.    Yeah.                                      14:59:04

 2        Q.    You can go back.  And now if we take       14:59:04

 3    a look, there are two side-by-side annotated         14:59:07

 4    figures.                                             14:59:09

 5              Do you see that?                           14:59:10

 6        A.    Yes.                                       14:59:11

 7        Q.    And the text in red on both, Figure 3      14:59:11

 8    is on the left and Dickens is on the right;          14:59:15

 9    right?                                               14:59:17

10        A.    Yes.                                       14:59:17

11        Q.    And the patent office is showing here      14:59:18

12    the redline in both Figure 3 and Dickens,            14:59:22

13    which is a first dedicated USB connection;           14:59:25

14    right?                                               14:59:28

15        A.    Yes.                                       14:59:31

16        Q.    And the patent office is showing in        14:59:31

17    purple, in both Figure 3 and in Dickens, a           14:59:34

18    second dedicated USB connection; right?              14:59:38

19        A.    Yes.                                       14:59:42

20        Q.    And if we take a look at the next          14:59:43

21    page, 3312, and it says the -- second                14:59:48

22    paragraph, "The annotations highlight that           14:59:53

23    both the '243 Patent and Dickens provide two         14:59:56

24    dedicated USB connections from corresponding         14:59:59
```

Page 328

| | | |
|---|---|---|
| 1 | two hosts to a function block, both ending in | 15:00:03 |
| 2 | a single shared communication path to the | 15:00:06 |
| 3 | function block." | 15:00:08 |
| 4 | You are not disagreeing with that, | 15:00:10 |
| 5 | are you? | 15:00:12 |
| 6 | A.   I am not. | 15:00:12 |
| 7 | Q.   Okay. | 15:00:13 |
| 8 | MS. DURIE:   Let's now take a look | 15:00:15 |
| 9 | at slide 8, which is claim 1 and claim 23. | 15:00:16 |
| 10 | Now, I think the jury is very familiar with | 15:00:21 |
| 11 | this by now. | 15:00:23 |
| 12 | BY MS. DURIE: | 15:00:24 |
| 13 | Q.   Claim 1 is the claim that was | 15:00:25 |
| 14 | invalidated, one of the claims that was | 15:00:26 |
| 15 | invalidated in the patent office proceeding, | 15:00:28 |
| 16 | claim 23 is the claim that we are here talking | 15:00:31 |
| 17 | about; right? | 15:00:33 |
| 18 | A.   Yes. | 15:00:33 |
| 19 | Q.   And there was a -- we can go to the | 15:00:34 |
| 20 | next slide. | 15:00:38 |
| 21 | There was a certificate of | 15:00:39 |
| 22 | correction that corrected some of the wording | 15:00:42 |
| 23 | in the claim; right? | 15:00:43 |
| 24 | A.   Yes. | 15:00:45 |

TRIAL - VOLUME 5

Page 329

```
 1       Q.   And go to the next slide, we just      15:00:46

 2    fixed that, so this is the corrected version    15:00:48

 3    of claim 1 and claim 23.  Okay?                 15:00:51

 4             And if we go to the next slide, we     15:00:54

 5    see here that both of them start out, "A USB    15:00:59

 6    multi-host device comprising"; right?           15:01:04

 7             And then both of them talk about       15:01:09

 8    USB device blocks; right?  Yes?                 15:01:11

 9       A.   I see it.                               15:01:16

10       Q.   And if we go to the next slide, both    15:01:17

11    of them talk about first and second hosts;      15:01:19

12    right?                                          15:01:23

13       A.   I see those words.                      15:01:24

14       Q.   And if we go to the next slide, both    15:01:25

15    of them talk about a controller -- claim 1      15:01:27

16    says, "a multi-host device controller."         15:01:32

17             Did you hear Mr. Zatkovich say         15:01:33

18    that the controller in claim 23 is also a       15:01:35

19    multi-host device controller?                   15:01:38

20       A.   I don't recall.                         15:01:40

21       Q.   Okay.                                   15:01:41

22             And if we go to the next slide,        15:01:42

23    both of them require that there be concurrent   15:01:46

24    respective dedicated USB connections; right?    15:01:49
```

Page 330

| | | |
|---|---|---|
| 1 | A.    Yes. | 15:01:53 |
| 2 | Q.    And if we go to the next slide -- | 15:01:54 |
| 3 | now, this is where we get a little bit of a | 15:01:57 |
| 4 | difference, right?  Claim 1 says that the two | 15:01:59 |
| 5 | hosts have to be able to simultaneously | 15:02:03 |
| 6 | request access; right?  It's the ping-ish | 15:02:05 |
| 7 | thing? | 15:02:14 |
| 8 | A.    Yes. | 15:02:14 |
| 9 | Q.    And claim 23 says that the controller | 15:02:14 |
| 10 | has to be able to receive those access | 15:02:17 |
| 11 | requests from the host and respond to them; | 15:02:20 |
| 12 | right? | 15:02:22 |
| 13 | A.    Right. | 15:02:23 |
| 14 | Q.    That's what Mr. Zatkovich testified | 15:02:23 |
| 15 | in court was the secret sauce, I think he | 15:02:26 |
| 16 | said, in claim 23. | 15:02:29 |
| 17 | Do you recall that testimony? | 15:02:30 |
| 18 | A.    I don't. | 15:02:31 |
| 19 | Q.    Now, in coming up with your opinions | 15:02:32 |
| 20 | about validity, that difference between claim | 15:02:34 |
| 21 | 1 and claim 23 is not something that you | 15:02:38 |
| 22 | identified as being a significant difference | 15:02:40 |
| 23 | between the claims; right? | 15:02:41 |
| 24 | A.    I have offered no analysis of a | 15:02:43 |

| | | |
|---|---|---|
| 1 | comparison of claim 1 to claim 23. | 15:02:46 |
| 2 | Q.   Okay. | 15:02:48 |
| 3 | Now, claim 23 also requires, up at | 15:02:50 |
| 4 | the top, that the system be operable for both | 15:02:54 |
| 5 | hosts to simultaneously configure the device | 15:02:57 |
| 6 | block; right? | 15:03:01 |
| 7 | A.   It states it a little bit | 15:03:04 |
| 8 | differently, but the simultaneously configured | 15:03:06 |
| 9 | is correct. | 15:03:08 |
| 10 | Q.   Okay. | 15:03:08 |
| 11 | And the USB specification defines | 15:03:09 |
| 12 | what configuration is; right? | 15:03:12 |
| 13 | A.   Amongst -- yes, although it doesn't | 15:03:17 |
| 14 | define it for this patent.  I do understand | 15:03:19 |
| 15 | configured to be enumerated and configured as | 15:03:23 |
| 16 | we use the terms in the USB. | 15:03:26 |
| 17 | Q.   Okay. | 15:03:28 |
| 18 | Do you think the definition of | 15:03:29 |
| 19 | configuration in the '243 Patent is different | 15:03:31 |
| 20 | from the definition of configuration in the | 15:03:33 |
| 21 | USB specification? | 15:03:36 |
| 22 | MR. ADAMS:  Objection, Your Honor. | 15:03:38 |
| 23 | THE COURT:  Overruled. | 15:03:41 |
| 24 | Go ahead. | 15:03:44 |

TRIAL - VOLUME 5

Page 332

| | | |
|---|---|---|
| 1 | THE WITNESS:  I think a person of | 15:03:44 |
| 2 | skill in the art reading the '243 Patent would | 15:03:46 |
| 3 | understand that Dickens -- I'm sorry, that the | 15:03:50 |
| 4 | '243 Patent subsumes enumeration with | 15:03:54 |
| 5 | configuring.  And I believe that Mr. Garney | 15:04:00 |
| 6 | has also referred to it that way. | 15:04:05 |
| 7 | BY MS. DURIE: | 15:04:08 |
| 8 | Q.   Let's take a look at the USB | 15:04:09 |
| 9 | specification definition of configuration. | 15:04:10 |
| 10 | It's Slide 21.  And it says, "A USB device | 15:04:12 |
| 11 | must be configured before its functions may be | 15:04:20 |
| 12 | used." | 15:04:22 |
| 13 | You don't disagree with that? | 15:04:23 |
| 14 | A.   No. | 15:04:25 |
| 15 | Q.   And it says, "The host is responsible | 15:04:25 |
| 16 | for configuring a USB device." | 15:04:28 |
| 17 | You don't disagree with that; | 15:04:29 |
| 18 | right? | 15:04:31 |
| 19 | A.   Correct. | 15:04:32 |
| 20 | Q.   And it says, if we skip down, "As | 15:04:32 |
| 21 | part of the configuration process, the host | 15:04:35 |
| 22 | sets the device configuration and, where | 15:04:37 |
| 23 | necessary, selects the appropriate alternate | 15:04:40 |
| 24 | settings for the interfaces." | 15:04:42 |

Page 333

| | | |
|---|---|---|
| 1 | You don't disagree with that, do | 15:04:44 |
| 2 | you? | 15:04:47 |
| 3 | A.   Right. | 15:04:47 |
| 4 | Q.   And in the patent, there is no need | 15:04:47 |
| 5 | to hold off one host's attempt to configure | 15:04:49 |
| 6 | the device while the other host is configuring | 15:04:53 |
| 7 | it; right? | 15:04:55 |
| 8 | A.   I didn't -- I didn't get that.  Can I | 15:04:56 |
| 9 | hear again? | 15:05:00 |
| 10 | Q.   Sure. | 15:05:00 |
| 11 | In the patent, there's no need to | 15:05:02 |
| 12 | hold on one host's attempt to configure the | 15:05:03 |
| 13 | device if the other host is in the process of | 15:05:06 |
| 14 | configuring it? | 15:05:10 |
| 15 | A.   Correct.  Yes. | 15:05:11 |
| 16 | Q.   Now, the -- did you look to see what | 15:05:12 |
| 17 | it was that the patent office identified as | 15:05:18 |
| 18 | being the thing in claim 23 that was not | 15:05:23 |
| 19 | present in Dickens? | 15:05:28 |
| 20 | A.   Yes. | 15:05:29 |
| 21 | Q.   Okay. | 15:05:30 |
| 22 | And you understand that that thing | 15:05:31 |
| 23 | the patent office identified as being missing | 15:05:34 |
| 24 | from Dickens is the requirement that both | 15:05:36 |

Page 334

| | | |
|---|---|---|
| 1 | hosts be able to configure the device block | 15:05:38 |
| 2 | simultaneously; right? | 15:05:41 |
| 3 | A. Right. | 15:05:43 |
| 4 | Q. Now, you haven't looked to see | 15:05:44 |
| 5 | whether both hosts in the Aptiv system can | 15:05:46 |
| 6 | configure the device simultaneously; right? | 15:05:49 |
| 7 | That's not something you have an opinion | 15:05:52 |
| 8 | about? | 15:05:54 |
| 9 | A. Correct. | 15:05:54 |
| 10 | Q. Okay. | 15:05:54 |
| 11 | Now, the purpose of the '243 | 15:05:55 |
| 12 | Patent is to allow multiple hosts to control a | 15:05:59 |
| 13 | shared USB device; right? | 15:06:03 |
| 14 | A. That sounds right. | 15:06:06 |
| 15 | Q. And that was difficult to do in USB | 15:06:07 |
| 16 | because USB is what we call a serial protocol; | 15:06:09 |
| 17 | right? It's Universal Serial Bus; right? | 15:06:14 |
| 18 | A. Yes, but that's not the reason it's | 15:06:18 |
| 19 | difficult to do. | 15:06:21 |
| 20 | Q. Okay. | 15:06:21 |
| 21 | Well, the fact that USB is a | 15:06:22 |
| 22 | serial protocol means there's only one lane | 15:06:23 |
| 23 | for data; right? | 15:06:27 |
| 24 | A. Well, we will have to agree on what | 15:06:29 |

TRIAL - VOLUME 5

Page 335

```
 1    we mean by a lane for data, but when data is          15:06:33

 2    transmitted, it's transmitted over the serial         15:06:36

 3    port.  Is there something about that that you          15:06:38

 4    are pointing out?                                      15:06:41

 5        Q.   And goes one packet at a time; right?         15:06:42

 6        A.   Yes.                                          15:06:44

 7        Q.   You can't send two packets at the             15:06:44

 8    same precise moment in time?                           15:06:46

 9        A.   Correct.                                      15:06:48

10        Q.   Okay.                                         15:06:48

11             And, in fact, in -- you saw                   15:06:49

12    evidence here in court that Mr. Bohm, in               15:06:52

13    thinking about this invention, was discussing          15:06:55

14    the fact that USB doesn't comprehend the idea          15:06:57

15    of peripheral sharing.                                 15:07:00

16             You would agree with that; right?             15:07:03

17        A.   That the USB certification, is that           15:07:04

18    what you said?                                         15:07:07

19        Q.   Right.                                        15:07:08

20        A.   Yes.                                          15:07:09

21        Q.   Okay.                                         15:07:10

22             And one -- and Mr. Bohm said that             15:07:10

23    there would be technical challenges to                 15:07:13

24    overcome in using USB to allow for this                15:07:16
```

TRIAL - VOLUME 5

Page 336

1    peripheral sharing; right?                        15:07:21

2        A.   That there would be technical           15:07:25

3    challenges, sure.                                 15:07:27

4        Q.   Technical challenges; right?            15:07:27

5        A.   I said sure.                             15:07:31

6        Q.   Sure.                                    15:07:32

7             And that would be outside of the        15:07:33

8    USB specification; right?                         15:07:35

9        A.   The technical challenges?               15:07:38

10        Q.   Having a two-host, one-device system   15:07:40

11    would be outside of the USB specification.       15:07:44

12    That's what Mr. Bohm was thinking?               15:07:48

13        A.   I agree with that.                     15:07:49

14        Q.   Okay.                                   15:07:51

15             MS. DURIE:   Now, just so that we       15:07:52

16    understand what we are talking about, Mr.        15:07:57

17    Glass, can we go to Slide 24, please.            15:08:00

18    BY MS. DURIE:                                    15:08:00

19        Q.   So the issue that Mr. Bohm was          15:08:03

20    confronting was that you've got two hosts,       15:08:05

21    both of which want to send information over      15:08:08

22    USB; right?                                       15:08:11

23        A.   Not exactly, no.                        15:08:17

24        Q.   Well, they both want to communicate    15:08:18

TRIAL - VOLUME 5

Page 337

| | | |
|---|---|---|
| 1 | with one USB device; right? | 15:08:20 |
| 2 | A.   With one device. | 15:08:24 |
| 3 | Q.   Right. | 15:08:24 |
| 4 | And at least to the extent that | 15:08:25 |
| 5 | you are using an off-the-shelf USB device, | 15:08:27 |
| 6 | it's going to have one input port for | 15:08:30 |
| 7 | connecting with a host; right? | 15:08:32 |
| 8 | A.   Well, I think the off-the-shelf USB | 15:08:34 |
| 9 | device is something that was discussed in this | 15:08:36 |
| 10 | court, and that it's not simply something you | 15:08:39 |
| 11 | pick up that has a USB plug on it and stick | 15:08:42 |
| 12 | inside this invention of Mr. Bohm's. | 15:08:46 |
| 13 | Q.   Do you agree that Mr. Bohm was at | 15:08:49 |
| 14 | least considering the possibility that it | 15:08:52 |
| 15 | would be possible to use his invention with | 15:08:55 |
| 16 | off-the-shelf USB devices? | 15:08:57 |
| 17 | A.   He did say that. | 15:09:01 |
| 18 | Q.   Okay. | 15:09:02 |
| 19 | In any event, if two hosts are | 15:09:03 |
| 20 | going to control one USB device, they have to | 15:09:05 |
| 21 | have some way to avoid data collisions; right? | 15:09:08 |
| 22 | A.   Okay. | 15:09:13 |
| 23 | MS. DURIE:  Go to the next slide. | 15:09:14 |
| 24 | BY MS. DURIE: | 15:09:15 |

TRIAL - VOLUME 5

Page 338

| | | |
|---|---|---|
| 1 | Q.   Sort of like if cars are merging onto | 15:09:16 |
| 2 | the freeway; right?  You need some way for | 15:09:19 |
| 3 | them not to crash into each other; fair? | 15:09:21 |
| 4 | A.   Okay.  Okay. | 15:09:23 |
| 5 | MS. DURIE:  And if we can go to | 15:09:25 |
| 6 | the next slide -- no, sorry.  Skip -- if we | 15:09:26 |
| 7 | can go to slide -- hang on.  Well, that's | 15:09:33 |
| 8 | fine.  We can actually go back.  That's fine. | 15:09:40 |
| 9 | BY MS. DURIE: | 15:09:43 |
| 10 | Q.   You need some way to stop that from | 15:09:43 |
| 11 | happening; right, crashes? | 15:09:45 |
| 12 | A.   Okay. | 15:09:49 |
| 13 | Q.   So one way that you could stop | 15:09:50 |
| 14 | crashes from happening is that you could put | 15:09:52 |
| 15 | up a stop sign; right? | 15:09:54 |
| 16 | MS. DURIE:  Can we go to slide 30? | 15:09:58 |
| 17 | Perfect. | 15:09:59 |
| 18 | THE WITNESS:  Sure. | 15:10:02 |
| 19 | BY MS. DURIE: | 15:10:03 |
| 20 | Q.   And putting up stop signs would be | 15:10:03 |
| 21 | one way of arbitrating access between the cars | 15:10:05 |
| 22 | so that they could share one lane; right? | 15:10:09 |
| 23 | A.   Okay. | 15:10:12 |
| 24 | Q.   And Mr. Bohm talks in his patent | 15:10:13 |

Page 339

| | | |
|---|---|---|
| 1 | about this idea of arbitrating; right, | 15:10:16 |
| 2 | interleaving the host request? | 15:10:22 |
| 3 | A.   Did he use the word "arbitrating"? | 15:10:23 |
| 4 | Q.   Well, he talks about interleaving the | 15:10:25 |
| 5 | host request.  You would agree that's a form | 15:10:27 |
| 6 | of arbitration; right? | 15:10:29 |
| 7 | A.   Not as a person of skill in the art | 15:10:35 |
| 8 | would understand arbitration, but it's | 15:10:38 |
| 9 | actually a result of doing the right thing by | 15:10:41 |
| 10 | arbitrating. | 15:10:46 |
| 11 | Q.   Fair enough. | 15:10:46 |
| 12 | A result of having arbitration | 15:10:48 |
| 13 | mechanisms that you can alternate access by | 15:10:50 |
| 14 | interleaving. | 15:10:53 |
| 15 | A.   Okay. | 15:10:53 |
| 16 | Q.   Okay. | 15:10:54 |
| 17 | Now, another thing that you could | 15:10:55 |
| 18 | do, if we go to the next slide, is you could | 15:10:57 |
| 19 | put up the equivalent of stop lights; right? | 15:10:59 |
| 20 | A.   Okay. | 15:11:03 |
| 21 | Q.   And you could have some arbitration | 15:11:03 |
| 22 | mechanism which would determine which car or | 15:11:07 |
| 23 | data packets get service immediately and which | 15:11:09 |
| 24 | get hold off with a not ready request; right, | 15:11:13 |

TRIAL - VOLUME 5

Page 340

```
 1    kind of like a red light?                          15:11:16

 2        A.   So the not ready, I'm sorry, are you      15:11:22

 3    referring to something in USB or not?              15:11:26

 4        Q.   You say the patent talked about this      15:11:28

 5    idea of having a not ready packet, can send        15:11:30

 6    not ready packets in a USB-specific manner.        15:11:34

 7             Do you see that?                           15:11:36

 8        A.   Yes.                                       15:11:37

 9        Q.   Do you understand what that refers         15:11:38

10    to?                                                15:11:39

11        A.   Yes.                                       15:11:39

12        Q.   That refers to something like a NAK        15:11:40

13    we've talked about?                                15:11:42

14        A.   Correct.                                   15:11:43

15        Q.   Right.                                     15:11:43

16             Which means a not ready, like             15:11:44

17    stop; right?                                        15:11:47

18        A.   Right.                                     15:11:47

19        Q.   And so to think of that as a little        15:11:47

20    bit about being a stop light, you guys stop,        15:11:50

21    you guys come on, you guys stop; right?             15:11:53

22        A.   Okay.                                      15:11:55

23        Q.   Now, we were talking a minute ago          15:11:56

24    about off-the-shelf devices.                        15:11:58
```

TRIAL - VOLUME 5

Page 341

|  |  |  |
|---|---|---|
| 1 | MS. DURIE:  Let's take a look at | 15:12:00 |
| 2 | TX-1, page 6, top of column 4, which, if you | 15:12:02 |
| 3 | can blow up the first paragraph above. | 15:12:07 |
| 4 | BY MS. DURIE: | 15:12:07 |
| 5 | Q.   This is where in the patent, itself, | 15:12:11 |
| 6 | Mr. Bohm and Mr. Ghosh say, "The peripheral | 15:12:13 |
| 7 | device function may comprise," blah-blah-blah, | 15:12:23 |
| 8 | "may not be aware of the multi-host capability | 15:12:24 |
| 9 | of the USB component and may be a standard | 15:12:28 |
| 10 | off-the-shelf item." | 15:12:30 |
| 11 | That is, in fact, what the patent | 15:12:32 |
| 12 | owner said in the specification itself; right? | 15:12:35 |
| 13 | A.   I'm sorry, that is where? | 15:12:37 |
| 14 | Q.   Right there, a standard off-the-shelf | 15:12:39 |
| 15 | item. | 15:12:41 |
| 16 | A.   Yeah, I see, "which may comprise the | 15:12:41 |
| 17 | main consumer component such as."  Yeah. | 15:12:46 |
| 18 | Okay. | 15:12:50 |
| 19 | Q.   Right? | 15:12:50 |
| 20 | A.   That's where he uses that term. | 15:12:51 |
| 21 | Q.   Right. | 15:12:53 |
| 22 | In the patent, itself, it talks | 15:12:53 |
| 23 | about the fact that the device can be a | 15:12:55 |
| 24 | standard off-the-shelf item; right? | 15:12:57 |

| | | |
|---|---|---|
| 1 | A.   That is what it says. | 15:12:59 |
| 2 | Q.   Okay. | 15:13:00 |
| 3 |      And you're going to need some | 15:13:01 |
| 4 | arbitration mechanism to decide which of the | 15:13:03 |
| 5 | two hosts is going to be able to use that | 15:13:07 |
| 6 | device; right? | 15:13:09 |
| 7 | A.   Well, "use" is a little bit too | 15:13:11 |
| 8 | broad.  To send data to is the operable item. | 15:13:15 |
| 9 | Q.   Send data to is perfectly fine. | 15:13:20 |
| 10 |      Let's take a look at TX-24 in | 15:13:23 |
| 11 | evidence.  Start at page 1. | 15:13:27 |
| 12 |      This is the Invention Disclosure | 15:13:28 |
| 13 | Statement.  We've seen this before; right? | 15:13:30 |
| 14 | A.   I don't recall. | 15:13:32 |
| 15 | Q.   Okay.  Well, let's take a look at | 15:13:32 |
| 16 | page 6. | 15:13:35 |
| 17 |      You see here, second paragraph | 15:13:36 |
| 18 | from the bottom, let's blow that up.  It | 15:13:39 |
| 19 | says -- you'll recall that Mr. Bohm testified | 15:13:44 |
| 20 | about his Invention Disclosure Statement that | 15:13:46 |
| 21 | he submitted to the company where he described | 15:13:48 |
| 22 | his invention? | 15:13:50 |
| 23 | A.   I do remember some -- that he did | 15:13:51 |
| 24 | testify about that. | 15:13:53 |

Page 343

```
 1    Q.   Right.                                  15:13:54

 2         And it says, "A fourth block will       15:13:54

 3   need to be added which is the arbitration     15:13:57

 4   block.  The internal arbitration mechanism    15:14:00

 5   will permit each host to access the shared    15:14:03

 6   peripheral function by either interleaving    15:14:06

 7   host accesses, or using a common request/grant 15:14:09

 8   structure which will hold off one host while  15:14:13

 9   another host completes a data transfer."      15:14:16

10         So that's a description of two          15:14:20

11   different arbitration mechanisms, one of them, 15:14:22

12   right, a little bit like one at a time, a stop 15:14:25

13   light, the other one -- a stop sign, the other 15:14:28

14   one a little bit like you hold on one, you let 15:14:30

15   the other one come; right?                    15:14:33

16    A.   Well, I haven't studied this, but I     15:14:34

17   accept that it's something like that.         15:14:38

18    Q.   Okay.                                    15:14:40

19         You did not study the document in       15:14:40

20   which Mr. Bohm laid out what he understood to 15:14:42

21   be his invention; right?                      15:14:48

22    A.   If by that you mean this patent         15:14:49

23   disclosure document --                        15:14:52

24    Q.   Right.                                   15:14:53
```

TRIAL - VOLUME 5

Page 344

| | | |
|---|---|---|
| 1 | A.   -- I did not study that. | 15:14:54 |
| 2 | Q.   Okay. | 15:14:55 |
| 3 | Now, to satisfy the written | 15:14:56 |
| 4 | description requirement, a specification is | 15:15:00 |
| 5 | required to provide a written description that | 15:15:04 |
| 6 | reasonably conveys to those of skill in the | 15:15:07 |
| 7 | art that the inventor had possession of the | 15:15:10 |
| 8 | claim subject matter as of the filing date of | 15:15:13 |
| 9 | the application or of the patent; right? | 15:15:16 |
| 10 | MR. ADAMS:   Objection, Your Honor. | 15:15:19 |
| 11 | Scope. | 15:15:20 |
| 12 | THE COURT:   Overruled. | 15:15:21 |
| 13 | BY MS. DURIE: | 15:15:23 |
| 14 | Q.   Right?   That is one of the | 15:15:24 |
| 15 | requirements for the validity of a patent; | 15:15:25 |
| 16 | right? | 15:15:29 |
| 17 | A.   Yes. | 15:15:29 |
| 18 | Q.   And you are not offering an | 15:15:30 |
| 19 | affirmative opinion with respect to written | 15:15:33 |
| 20 | description; right? | 15:15:36 |
| 21 | A.   I have offered only what's in my | 15:15:39 |
| 22 | expert report. | 15:15:42 |
| 23 | Q.   Sorry? | 15:15:42 |
| 24 | A.   I have offered only what's in my | 15:15:43 |

```
 1   expert report.                                 15:15:45

 2       Q.   Right.                                15:15:45

 3            Now, you understand the law also      15:15:46

 4   requires that a patent specification enable    15:15:49

 5   the invention; right?                          15:15:52

 6       A.   Yes.                                  15:15:56

 7       Q.   Okay.                                 15:15:56

 8            And written description and           15:15:57

 9   enablement are two separate requirements;      15:15:58

10   right?                                         15:16:02

11       A.   Okay.                                 15:16:02

12       Q.   Right?                                15:16:02

13            Written description basically asks    15:16:03

14   whether the inventor actually invented what    15:16:05

15   they claim to have invented and enablement     15:16:09

16   asks whether a person of skill in the art      15:16:12

17   would know how to make and use the full scope  15:16:13

18   of the invention; right?                       15:16:16

19       A.   Scope of the invention as represented 15:16:17

20   by the claims.                                 15:16:20

21       Q.   Right.  The full scope of that        15:16:21

22   invention as represented by the claims.        15:16:23

23            Now, you were here for opening        15:16:25

24   statements, so you heard the very first words  15:16:28
```

TRIAL - VOLUME 5

Page 346

| | | |
|---|---|---|
| 1 | that I think we heard in connection with this | 15:16:30 |
| 2 | case after His Honor.  We heard Mr. Slayden | 15:16:32 |
| 3 | say that the '243 Patent is about a device for | 15:16:35 |
| 4 | connecting between two computers. | 15:16:39 |
| 5 | Do you recall that? | 15:16:41 |
| 6 | A.   I don't. | 15:16:42 |
| 7 | Q.   Now, in your expert report, you don't | 15:16:44 |
| 8 | say that the inventors showed a way for two | 15:16:48 |
| 9 | computers to be able to talk to each other; | 15:16:53 |
| 10 | right? | 15:16:56 |
| 11 | A.   In my report? | 15:16:56 |
| 12 | Q.   Right. | 15:16:58 |
| 13 | A.   I did not address that. | 15:16:58 |
| 14 | Q.   Okay. | 15:17:00 |
| 15 | And we were discussing earlier in | 15:17:00 |
| 16 | the proceedings a paper that Mr. Bohm had | 15:17:05 |
| 17 | written in the fall of 2005 and presented at a | 15:17:08 |
| 18 | conference where he first disclosed the | 15:17:13 |
| 19 | invention. | 15:17:16 |
| 20 | Do you generally remember that, | 15:17:16 |
| 21 | Mr. Bohm's testimony? | 15:17:17 |
| 22 | A.   I don't. | 15:17:18 |
| 23 | Q.   Okay. | 15:17:19 |
| 24 | Well, do you remember the phrase | 15:17:20 |

Page 347

```
 1    "technical challenges," that Mr. Bohm had said        15:17:22

 2    there would be these technical challenges to          15:17:25

 3    overcome?  Does that ring a bell?                     15:17:27

 4         A.   His testimony, I don't recall.              15:17:29

 5         Q.   Okay.                                       15:17:32

 6              Now, we've talked about some                15:17:32

 7    arbitration mechanisms that the patent                15:17:36

 8    describes; right, interleaving, one at a time,        15:17:40

 9    holding off one in favor of the other.                15:17:43

10              You don't, in your opinion, say             15:17:45

11    that there is some other arbitration mechanism        15:17:48

12    to figure out which host is going to be able          15:17:52

13    to access a device that is described in the           15:17:55

14    patent; right?                                        15:17:58

15         A.   I do not offer an opinion on that.          15:17:59

16         Q.   Okay.                                       15:18:01

17              And you don't know whether, in the          15:18:01

18    Aptiv product that is accused of infringement,        15:18:05

19    both hosts are able to access their respective        15:18:08

20    devices whenever they want?                           15:18:12

21         A.   Did you say whenever they want?             15:18:15

22         Q.   Whenever they want.                         15:18:17

23         A.   I have no opinions on the accused           15:18:19

24    devices.                                              15:18:21
```

Page 348

| | | |
|---|---|---|
| 1 | Q.    Okay. | 15:18:22 |
| 2 | So you don't know whether the | 15:18:23 |
| 3 | accused devices have any arbitration mechanism | 15:18:25 |
| 4 | at all? | 15:18:29 |
| 5 | A.    Well, other than my experience as a | 15:18:33 |
| 6 | computer designer and what I've seen presented | 15:18:37 |
| 7 | in the court, I have not made any opinions on | 15:18:40 |
| 8 | that. | 15:18:42 |
| 9 | Q.    Okay.  Fair enough. | 15:18:42 |
| 10 | Now, we were talking a little bit | 15:18:44 |
| 11 | about difference.  I think we can agree, at a | 15:18:47 |
| 12 | high level, but tell me if I'm wrong, that | 15:18:51 |
| 13 | Dickens was a system that was designed to | 15:18:55 |
| 14 | allow multiple hosts to share multiple | 15:18:57 |
| 15 | devices? | 15:19:00 |
| 16 | A.    Yes. | 15:19:05 |
| 17 | Q.    Okay. | 15:19:06 |
| 18 | And Dickens came up with that | 15:19:07 |
| 19 | solution back in the very, very early days of | 15:19:10 |
| 20 | USB; right? | 15:19:15 |
| 21 | A.    I don't recall. | 15:19:16 |
| 22 | Q.    Okay. | 15:19:17 |
| 23 | Did you look to see what the date | 15:19:17 |
| 24 | of Dickens was in comparison to the date of | 15:19:20 |

TRIAL - VOLUME 5

Page 349

```
 1    the USB specification?                         15:19:24

 2        A.   No.                                   15:19:25

 3        Q.   Now, Dickens, himself, used something 15:19:27

 4    we've heard of that's called PCI; right?       15:19:31

 5        A.   Correct.                              15:19:35

 6        Q.   That's a different bus; right?        15:19:35

 7        A.   Yes.                                  15:19:37

 8        Q.   And PCI has arbitration capabilities. 15:19:38

 9             You agree with that?                  15:19:42

10        A.   Of course, because it connects to     15:19:43

11    multiple points, it has to arbitrate among     15:19:46

12    them.                                          15:19:49

13        Q.   Right.                                15:19:49

14             And PCI, back when Mr. Dickens        15:19:49

15    came up with his invention, was pretty         15:19:52

16    ubiquitous; is that fair?                      15:19:54

17        A.   Ubiquitous?                           15:19:58

18        Q.   I said pretty ubiquitous.  It was     15:19:58

19    well-known, it was widely used?               15:20:01

20        A.   Yeah.                                 15:20:03

21        Q.   Now, I want you to imagine that       15:20:03

22    someone in 2006 wanted to solve the same       15:20:05

23    problem that Mr. Dickens had identified, which 15:20:08

24    is how to allow multi-hosts to share a USB     15:20:10
```

Page 350

| | | |
|---|---|---|
| 1 | device without having data collision; okay? | 15:20:15 |
| 2 | A.   Okay. | 15:20:21 |
| 3 | Q.   Okay. | 15:20:22 |
| 4 | Now, when you are thinking about | 15:20:22 |
| 5 | the solution to a problem, do you ever look to | 15:20:24 |
| 6 | see whether other people have solved similar | 15:20:27 |
| 7 | problems? | 15:20:30 |
| 8 | A.   Of course. | 15:20:30 |
| 9 | Q.   Right. | 15:20:31 |
| 10 | That's a reasonable thing for | 15:20:31 |
| 11 | someone to do; right? | 15:20:34 |
| 12 | Now, the Belkin switch and US-98 | 15:20:36 |
| 13 | switch that we have been talking about, those | 15:20:43 |
| 14 | are devices that allow multi-hosts to share | 15:20:45 |
| 15 | multi-devices; right? | 15:20:53 |
| 16 | A.   As a switch that allows switching of | 15:20:56 |
| 17 | a device between multi-hosts. | 15:20:59 |
| 18 | Q.   And you say, "switch," but it is not | 15:21:02 |
| 19 | like a manual switch; right?  It has an | 15:21:04 |
| 20 | arbitration mechanism? | 15:21:07 |
| 21 | A.   I wouldn't describe it that way. | 15:21:09 |
| 22 | Q.   Okay. | 15:21:11 |
| 23 | Do you have to go to Belkin and | 15:21:13 |
| 24 | flip a switch in order to be able to switch | 15:21:15 |

Page 351

```
 1    the devices?                                      15:21:17

 2        A.   No, it does not have a mechanical        15:21:22

 3    switch.                                           15:21:25

 4        Q.   Okay.                                    15:21:26

 5             And you would agree, at a high           15:21:26

 6    level, it's not unusual for designers to swap     15:21:28

 7    out more complex interfaces for simpler ones;     15:21:32

 8    right?  Just again, at a general level, if you    15:21:37

 9    were designing a solution to a problem, that's    15:21:40

10    something you might be motivated to do; is        15:21:42

11    that fair?                                        15:21:44

12        A.   In general.                              15:21:45

13        Q.   Okay.                                    15:21:45

14             And in general, in doing that,           15:21:46

15    you're going to be interested in trying to        15:21:49

16    make the device simpler; is that fair?            15:21:51

17        A.   It depends on what -- whether simple     15:21:56

18    will accomplish what needs to happen.             15:22:00

19        Q.   Okay.  Fair enough.                      15:22:01

20             But all things being equal, if you       15:22:03

21    can find an easier way to do something, as the    15:22:08

22    developer of a device, that's going to be         15:22:11

23    attractive; is that fair?                         15:22:12

24        A.   Usually.                                 15:22:15
```

TRIAL - VOLUME 5

Page 352

| | | |
|---|---|---|
| 1 | Q.   Okay. | 15:22:15 |
| 2 | Now, we were talking a little bit | 15:22:16 |
| 3 | about the Belkin and US-98 devices.  You don't | 15:22:20 |
| 4 | dispute -- let's start with Belkin. | 15:22:24 |
| 5 | You don't dispute that the Belkin | 15:22:26 |
| 6 | device has Philips hub chips in it; right? | 15:22:28 |
| 7 | A.   I do not dispute that. | 15:22:31 |
| 8 | Q.   Okay. | 15:22:32 |
| 9 | In fact, it has one for each host; | 15:22:33 |
| 10 | right? | 15:22:36 |
| 11 | A.   Correct. | 15:22:36 |
| 12 | Q.   And you don't dispute that each of | 15:22:37 |
| 13 | those chips has a set of endpoint buffers; | 15:22:39 |
| 14 | right? | 15:22:42 |
| 15 | A.   A set of what? | 15:22:42 |
| 16 | Q.   Endpoint buffers. | 15:22:43 |
| 17 | A.   Well, I did hear that from Mr. Garney | 15:22:45 |
| 18 | today. | 15:22:49 |
| 19 | Q.   And you don't disagree with that, do | 15:22:49 |
| 20 | you? | 15:22:52 |
| 21 | A.   No, but I would like to point out | 15:22:52 |
| 22 | that my understanding is that those endpoint | 15:22:54 |
| 23 | buffers are for endpoints that is the hub, not | 15:22:57 |
| 24 | for the device that's on the USB bus. | 15:23:01 |

Page 353

```
 1        Q.   Sure.  But take a look at your report        15:23:04

 2   at page 66.  Do you have that in front of you?        15:23:06

 3             In your report, it's                        15:23:19

 4   paragraph 281, you actually talk about your           15:23:21

 5   analysis of the Philips hub data sheet; right?        15:23:24

 6        A.   Yes.                                         15:23:28

 7        Q.   And you say, "Each chip has an              15:23:29

 8   embedded function"; right?                            15:23:31

 9        A.   Right.                                       15:23:34

10        Q.   And you see there is a reference            15:23:34

11   there to the endpoints; right?                        15:23:36

12        A.   An endpoint index for each of the           15:23:41

13   functions, yes.                                       15:23:43

14        Q.   Right.                                       15:23:44

15             And those endpoints, they can hold          15:23:45

16   data until the MCU is ready to process that           15:23:48

17   data; right?                                          15:23:52

18        A.   I'm sorry, you are referring to what        15:23:53

19   endpoints?                                            15:23:56

20        Q.   The endpoints here in the Philips           15:23:56

21   chip.                                                 15:23:58

22        A.   Well, the only endpoint in the              15:23:59

23   Philips chip is the hub.                              15:24:01

24        Q.   So, understood.                             15:24:05
```

TRIAL - VOLUME 5

Page 354

| 1 | But those endpoints, they hold | 15:24:07 |
| 2 | data until the MCU is ready to process that | 15:24:09 |
| 3 | data; right? | 15:24:12 |
| 4 | A.   Well, leaving aside the embedded | 15:24:18 |
| 5 | function, if you're trying to say that the hub | 15:24:22 |
| 6 | and its endpoint buffer data heading to a | 15:24:26 |
| 7 | device, I'm not sure I agree with that. | 15:24:31 |
| 8 | Q.   You don't agree that it would be | 15:24:34 |
| 9 | possible for those buffers to pull data for | 15:24:36 |
| 10 | some period of time? | 15:24:40 |
| 11 | A.   The end -- I think there is a | 15:24:46 |
| 12 | confusion between the endpoint as represented | 15:24:53 |
| 13 | by a device and an endpoint in this chip, this | 15:24:57 |
| 14 | hub chip, and so I'd like to distinguish | 15:25:02 |
| 15 | between those carefully. | 15:25:06 |
| 16 | MS. DURIE:  Okay.  Let's take a | 15:25:08 |
| 17 | look at Exhibit 209. | 15:25:09 |
| 18 | (Whereupon, Trial Exhibit 209 was | 15:25:09 |
| 19 | introduced.) | 15:25:09 |
| 20 | BY MS. DURIE: | 15:25:09 |
| 21 | Q.   This is the Philips data sheet that | 15:25:28 |
| 22 | you referenced in your expert report that we | 15:25:30 |
| 23 | were just taking a look at; right? | 15:25:32 |
| 24 | A.   Right. | 15:25:32 |

TRIAL - VOLUME 5

Page 355

| | | |
|---|---|---|
| 1 | Q.   And let's take a look at page 14 of | 15:25:36 |
| 2 | the Philips data sheet. | 15:25:41 |
| 3 | And you see here, there is | 15:25:47 |
| 4 | information, "Read Buffer, Write Buffer, Clear | 15:25:51 |
| 5 | Buffer, Validate Buffer." | 15:25:55 |
| 6 | Do you see that? | 15:26:01 |
| 7 | A.   Yes. | 15:26:04 |
| 8 | Q.   And so if we take a look at -- | 15:26:05 |
| 9 | MS. DURIE:  Well, first of all, I | 15:26:07 |
| 10 | offer 209. | 15:26:09 |
| 11 | THE COURT:  Any objection? | 15:26:10 |
| 12 | MR. ADAMS:  No objection, Your | 15:26:11 |
| 13 | Honor. | 15:26:11 |
| 14 | THE COURT:  All right.  It's | 15:26:13 |
| 15 | admitted. | 15:26:14 |
| 16 | MS. DURIE:  Perfect. | 15:26:14 |
| 17 | And, Mr. Glass, let's put up 209, | 15:26:15 |
| 18 | page 14, please.  And on the right-hand side, | 15:26:18 |
| 19 | about two-thirds of the way down, | 15:26:21 |
| 20 | three-quarters of the way down on the right, | 15:26:23 |
| 21 | "Clear Buffer."  Let's pull that up. | 15:26:25 |
| 22 | BY MS. DURIE: | 15:26:27 |
| 23 | Q.   So it says -- this is, again, about | 15:26:28 |
| 24 | the Philips chip that is in the Belkin device; | 15:26:30 |

TRIAL - VOLUME 5

Page 356

```
 1    right?                                              15:26:33

 2         A.   Yeah.                                     15:26:35

 3         Q.   Yep.  And it says, "When a packet is      15:26:36

 4    received completely, an internal endpoint          15:26:38

 5    buffer full flag is set.  All subsequent           15:26:41

 6    packets will be refused by returning a NAK."       15:26:45

 7              Now, we keep hearing about this           15:26:49

 8    NAK thing, but that's a very standard USB          15:26:54

 9    function; right?                                    15:26:56

10         A.   Yes.                                      15:26:57

11         Q.   It's been around for a long time?         15:26:57

12         A.   Right.                                    15:26:59

13         Q.   And so it's basically saying don't        15:26:59

14    send any more data; right?                          15:27:02

15         A.   Right.                                    15:27:04

16         Q.   Don't send any more data; right, I'm      15:27:04

17    full?                                               15:27:07

18         A.   Right.                                    15:27:08

19         Q.   And so the NAKs here are basically        15:27:08

20    saying stop, I am full; right?                      15:27:11

21         A.   Right.                                    15:27:13

22         Q.   And then once that sort of waiting        15:27:14

23    room is cleared, then it will be able to start     15:27:18

24    receiving data again; right?                        15:27:20
```

TRIAL - VOLUME 5

Page 357

| | | |
|---|---|---|
| 1 | A.   Yes, but I'd like to point out that | 15:27:22 |
| 2 | this packet and the buffer is for the | 15:27:25 |
| 3 | microcontroller to read the data from. | 15:27:30 |
| 4 | Q.   Sure. | 15:27:32 |
| 5 | But a person of skill in the art, | 15:27:33 |
| 6 | in 2006, taking a look at Belkin, | 15:27:35 |
| 7 | understanding how Philips chips work, would | 15:27:38 |
| 8 | certainly understand this concept that you can | 15:27:42 |
| 9 | have a chip with a buffer that can have USB | 15:27:45 |
| 10 | functionality that allows you to hold off, | 15:27:49 |
| 11 | right, if it's full, send a NAK, and then | 15:27:53 |
| 12 | wait, and once you're ready to receive data, | 15:27:57 |
| 13 | start receiving data again; right? | 15:28:00 |
| 14 | A.   That general concept is certainly | 15:28:03 |
| 15 | understandable. | 15:28:08 |
| 16 | Q.   Sorry? | 15:28:08 |
| 17 | A.   That concept is understandable. | 15:28:08 |
| 18 | Q.   Okay. | 15:28:10 |
| 19 | That concept is understandable, | 15:28:11 |
| 20 | and it would have been understood by a person | 15:28:12 |
| 21 | of skill in the art in 2006; right? | 15:28:14 |
| 22 | A.   Well, you are speaking very | 15:28:16 |
| 23 | generally.  So here the question is where is | 15:28:19 |
| 24 | the data going, who is going to read it and so | 15:28:23 |

TRIAL - VOLUME 5

Page 358

| | | |
|---|---|---|
| 1 | when does the buffer get cleared?  All of | 15:28:26 |
| 2 | those are microprocessor functions, not | 15:28:29 |
| 3 | microcontroller functions. | 15:28:32 |
| 4 | Q.   Sure. | 15:28:32 |
| 5 | But again, just at a high level, a | 15:28:33 |
| 6 | person of skill in the art in 2006, thinking | 15:28:35 |
| 7 | about how do I arbitrate if two hosts want to | 15:28:38 |
| 8 | share one device, would know that a device | 15:28:43 |
| 9 | like Belkin with Philips chips in them, that | 15:28:48 |
| 10 | they provide functionality that if your | 15:28:52 |
| 11 | buffers are full, because you've gotten data | 15:28:55 |
| 12 | from one host, you can send a NAK to another | 15:28:58 |
| 13 | host that says, hey stop, I'm full. | 15:29:01 |
| 14 | That's something they know; right? | 15:29:04 |
| 15 | A.   Well, in the context of the Philips | 15:29:05 |
| 16 | specification -- | 15:29:07 |
| 17 | Q.   Sure. | 15:29:07 |
| 18 | A.   -- there's nothing like that.  There | 15:29:08 |
| 19 | are not two hosts connected. | 15:29:09 |
| 20 | Q.   I understand that we disagree about | 15:29:11 |
| 21 | some things, but I want to see if we can just | 15:29:13 |
| 22 | agree about that fundamental proposition that | 15:29:16 |
| 23 | that idea embodied in the Philips chip of | 15:29:18 |
| 24 | using a NAK to hold off one, while something | 15:29:22 |

Page 359

| | | |
|---|---|---|
| 1 | else, we don't need to get into what it is, | 15:29:26 |
| 2 | accesses, that concept would be known? | 15:29:29 |
| 3 | A.   That is not what it says here. | 15:29:31 |
| 4 | Q.   So when it says, "All subsequent | 15:29:37 |
| 5 | packets will be refused by returning a NAK," | 15:29:39 |
| 6 | that's not a way of saying hold off? | 15:29:41 |
| 7 | A.   That's a way of saying to one thing | 15:29:45 |
| 8 | that's sending to one thing -- | 15:29:47 |
| 9 | Q.   Sure. | 15:29:48 |
| 10 | A.   -- to a buffer that my buffer is | 15:29:49 |
| 11 | full, hold off. | 15:29:51 |
| 12 | Q.   Right. | 15:29:52 |
| 13 | A.   It's not a way of arbitrating between | 15:29:52 |
| 14 | that thing and some other thing that's trying | 15:29:54 |
| 15 | to access the same thing. | 15:29:57 |
| 16 | Q.   Okay. | 15:29:58 |
| 17 | But again, if we can agree -- | 15:29:59 |
| 18 | A.   It is an older concept, actually. | 15:30:01 |
| 19 | Q.   It is an older concept.  Indeed it | 15:30:03 |
| 20 | is. | 15:30:07 |
| 21 | Now, you didn't offer any opinion | 15:30:07 |
| 22 | in your report disputing that the Belkin US-98 | 15:30:10 |
| 23 | devices satisfy the requirement of maintaining | 15:30:17 |
| 24 | address configuration and response | 15:30:20 |

Page 360

1    information; right?                                   15:30:23

2         A.   I don't think I did.                        15:30:30

3         Q.   Okay.                                        15:30:32

4              You also didn't offer any opinion           15:30:32

5    disputing that the Belkin US-98 devices have          15:30:35

6    respective interface circuits for each USB            15:30:40

7    host; right?                                          15:30:44

8         A.   Say that one more time, please.             15:30:56

9         Q.   Sure.                                        15:30:58

10             You didn't offer an opinion in              15:30:58

11   your report disputing that the Belkin US-98           15:31:01

12   devices have respective interface circuits for        15:31:07

13   each USB host?                                         15:31:13

14        A.   Respective interface circuits.  Okay,       15:31:16

15   that would be the multiple Philips chips, so I        15:31:19

16   did not dispute that.                                  15:31:23

17        Q.   Okay.                                        15:31:24

18             Now, in this case, the innovation           15:31:32

19   that is described in the patent is about a way        15:31:34

20   of arbitrating access between two hosts that          15:31:41

21   are sharing a USB device; right?                      15:31:47

22        A.   I don't believe that -- is it               15:31:56

23   described as arbitrating?  I don't think that         15:32:00

24   word occurs in this patent.                           15:32:02

TRIAL - VOLUME 5

Page 361

| | | |
|---|---|---|
| 1 | Q.   Okay. | 15:32:04 |
| 2 | How about alternating; that word | 15:32:05 |
| 3 | appears; right? | 15:32:07 |
| 4 | A.   Well, the alternating is shown as one | 15:32:08 |
| 5 | possible way of allowing two hosts to send | 15:32:11 |
| 6 | data. | 15:32:13 |
| 7 | Q.   Okay. | 15:32:14 |
| 8 | So referring to the patent, the | 15:32:14 |
| 9 | patent talks about alternating, it talks about | 15:32:18 |
| 10 | what we have talked about as the stop signs, | 15:32:21 |
| 11 | it talks about what we have talked about as | 15:32:23 |
| 12 | the stop lights. | 15:32:26 |
| 13 | Does the patent describe any other | 15:32:27 |
| 14 | way for two hosts to be able to use that one | 15:32:30 |
| 15 | USB lane of data? | 15:32:36 |
| 16 | A.   Well, first of all, the patent | 15:32:38 |
| 17 | doesn't necessarily describe using one USB | 15:32:42 |
| 18 | lane of data. | 15:32:46 |
| 19 | Q.   Where in the patent, in your | 15:32:49 |
| 20 | opinion -- well, actually, let me ask the | 15:32:52 |
| 21 | question this way. | 15:32:54 |
| 22 | Let's take a look at Exhibit 1, | 15:32:55 |
| 23 | and let's take a look at the abstract.  The | 15:32:59 |
| 24 | abstract says, "A shared USB device may be | 15:33:06 |

TRIAL - VOLUME 5

Page 362

```
 1    simultaneously configured by using a              15:33:10

 2    multi-host capable device controller"; right?     15:33:14

 3        A.    Yes.                                     15:33:18

 4        Q.    And then at the end, it says, "Each      15:33:20

 5    host may establish a dedicated USB connection      15:33:23

 6    with the sharing device without the sharing        15:33:26

 7    device having to be re-configured or               15:33:30

 8    re-enumerated each and every time the upstream     15:33:32

 9    hosts alternate accessing the USB device";         15:33:37

10    right?                                             15:33:42

11        A.    That is what it says.                    15:33:42

12        Q.    Okay.                                    15:33:44

13              You have not undertaken to assess        15:33:45

14    whether the Aptiv product that is accused of       15:33:55

15    infringement is one in which two hosts share       15:33:59

16    one USB device; right?  That's not something       15:34:07

17    that you have looked at?                           15:34:10

18        A.    I have made no analysis or opinions      15:34:12

19    on the infringement.                               15:34:17

20        Q.    Okay.                                    15:34:19

21              And therefore, when you were             15:34:19

22    thinking about the enablement requirement and      15:34:21

23    whether that enablement requirement was            15:34:26

24    satisfied, you did not specifically consider       15:34:29
```

TRIAL - VOLUME 5

Page 363

| | | |
|---|---|---|
| 1 | whether the specification would teach someone | 15:34:34 |
| 2 | how to have a host-to-host communication | 15:34:38 |
| 3 | system connecting two hosts as opposed to a | 15:34:43 |
| 4 | system in which two hosts could communicate | 15:34:49 |
| 5 | with a single device; fair? | 15:34:52 |
| 6 | A.   I'm sorry, I just -- I'm not sure | 15:34:57 |
| 7 | exactly what you asked at the beginning. | 15:35:00 |
| 8 | Q.   Sure. | 15:35:02 |
| 9 | When you set forth your opinions | 15:35:02 |
| 10 | on the enablement requirement in this case, | 15:35:07 |
| 11 | you did not consider whether the specification | 15:35:11 |
| 12 | taught someone of skill in the art how to | 15:35:17 |
| 13 | engage in host-to-host communication as | 15:35:21 |
| 14 | opposed to teaching someone how to have two | 15:35:25 |
| 15 | hosts be able to share a single USB device? | 15:35:30 |
| 16 | A.   Well, since the host-to-host | 15:35:39 |
| 17 | communication you just said is not mentioned | 15:35:40 |
| 18 | in the body of this patent or in the claims, I | 15:35:44 |
| 19 | did not consider that aspect. | 15:35:48 |
| 20 | MS. DURIE:  Thank you. | 15:35:51 |
| 21 | I have no further questions. | 15:35:52 |
| 22 | Thank you. | 15:35:54 |
| 23 | THE COURT:  If you have more than | 15:36:00 |
| 24 | a couple minutes, I want to take a break. | 15:36:02 |

TRIAL - VOLUME 5

Page 364

| | | |
|---|---|---|
| 1 | MR. ADAMS:  Your Honor, it might | 15:36:04 |
| 2 | be a good time to take a break now. | 15:36:05 |
| 3 | THE COURT:  Well, how long do you | 15:36:07 |
| 4 | think you have? | 15:36:08 |
| 5 | MR. ADAMS:  Five minutes, Your | 15:36:09 |
| 6 | Honor. | 15:36:10 |
| 7 | THE COURT:  Let's do that so then | 15:36:10 |
| 8 | we can come back and do the charge. | 15:36:13 |
| 9 | MR. ADAMS:  That's fine. | 15:36:14 |
| 10 | Mr. Ferrer, would you put up -- | 15:36:19 |
| 11 | first would you correct my screen so you can | 15:36:21 |
| 12 | put something up and then would you put up | 15:36:23 |
| 13 | claim 23? | 15:36:25 |
| 14 | -  -  - | 15:36:26 |
| 15 | REDIRECT EXAMINATION | 15:36:26 |
| 16 | -  -  - | 15:36:53 |
| 17 | BY MR. ADAMS: | 15:36:53 |
| 18 | Q.   Dr. Levy, this is claim 23 of the | 15:36:54 |
| 19 | '243 Patent; right? | 15:36:56 |
| 20 | A.   Yes. | 15:36:57 |
| 21 | Q.   You were asked a lot of questions | 15:36:58 |
| 22 | about claims 1 and other claims, but this is | 15:36:59 |
| 23 | the claim you are offering your opinion on | 15:37:02 |
| 24 | today; correct? | 15:37:04 |

TRIAL - VOLUME 5

Page 365

```
 1      A.   That's right.                       15:37:05

 2      Q.   Okay.                               15:37:06

 3           Now, Ms. Durie asked you if you     15:37:06

 4  considered enablement of host-to-host        15:37:11

 5  communication.                               15:37:13

 6           Does host-to-host communication     15:37:15

 7  appear in that claim?                        15:37:17

 8      A.   No.                                 15:37:18

 9      Q.   Okay.                               15:37:18

10           Do you have an opinion as to        15:37:19

11  whether claim 23 enables a USB multi-host    15:37:21

12  device -- I'm sorry, whether the '243 Patent 15:37:25

13  enables a USB multi-host device?             15:37:28

14      A.   Yes.                                15:37:30

15      Q.   Do you have an opinion about whether 15:37:31

16  it enables a shared device block along with  15:37:33

17  the other limitations of the first element?  15:37:36

18      A.   Yes.                                15:37:39

19      Q.   And what is it?                     15:37:39

20      A.   It does teach the claim.            15:37:41

21      Q.   Thank you.                          15:37:45

22           And I may have been a little        15:37:46

23  premature on the first one.  You do have an  15:37:47

24  opinion about whether USB multi-host device is 15:37:50
```

| | | |
|---|---|---|
| 1 | enabled by the '243 Patent.  What is it? | 15:37:52 |
| 2 | A.   What is it? | 15:37:56 |
| 3 | Q.   Yeah. | 15:37:57 |
| 4 | A.   In this claim, it is a shared USB | 15:37:58 |
| 5 | device block operable to be simultaneously | 15:38:01 |
| 6 | configured and it has a controller with | 15:38:03 |
| 7 | certain elements. | 15:38:09 |
| 8 | Q.   It's getting late in the day. | 15:38:09 |
| 9 | My question is, what is your | 15:38:11 |
| 10 | opinion about whether that USB multi-host | 15:38:12 |
| 11 | device is enabled? | 15:38:15 |
| 12 | A.   Oh, it is enabled. | 15:38:16 |
| 13 | Q.   And is the controller of claim 23 | 15:38:19 |
| 14 | also enabled? | 15:38:21 |
| 15 | A.   Yes. | 15:38:22 |
| 16 | Q.   Okay. | 15:38:22 |
| 17 | Now, do you understand the | 15:38:23 |
| 18 | requirements of enablement to require enabling | 15:38:25 |
| 19 | something beyond what's in the claim? | 15:38:29 |
| 20 | MS. DURIE:  Legal conclusion. | 15:38:32 |
| 21 | THE COURT:  Sustained. | 15:38:34 |
| 22 | MR. ADAMS:  Your Honor, I'm sorry. | 15:38:35 |
| 23 | BY MR. ADAMS: | 15:38:39 |
| 24 | Q.   Dr. Levy, you had indicated that it's | 15:38:39 |

TRIAL - VOLUME 5

Page 367

```
 1    your opinion that each of these elements is        15:38:42

 2    enabled; correct?                                  15:38:44

 3        A.   Yes.                                       15:38:45

 4        Q.   Do you have the same opinion about         15:38:46

 5    written description?                               15:38:48

 6        A.   Yes.                                       15:38:49

 7        Q.   Now, earlier I think Ms. Durie             15:38:50

 8    implied that you weren't knowledgeable about       15:38:54

 9    USB.                                               15:38:56

10        A.   Yes.                                       15:38:59

11        Q.   Are you -- do you have experience in       15:39:00

12    many computer buses?                               15:39:03

13        A.   Yes.                                       15:39:04

14        Q.   Do you have a doctorate degree from        15:39:04

15    Stanford University?                               15:39:07

16        A.   Yes.                                       15:39:08

17        Q.   Are you able to read documents             15:39:09

18    related to buses and understand them?              15:39:12

19        A.   Yes.  And I would just like to point       15:39:16

20    out that I did my first engagement as an           15:39:18

21    expert on a case involving USB testing devices     15:39:21

22    back in 2008.                                      15:39:25

23        Q.   Now, Ms. Durie also asked a lot of         15:39:28

24    questions about arbitration, stop signs.  Is       15:39:32
```

TRIAL - VOLUME 5

Page 368

| | | |
|---|---|---|
| 1 | there anything about stop signs in the '243 | 15:39:38 |
| 2 | Patent? | 15:39:41 |
| 3 | A.   No. | 15:39:41 |
| 4 | Q.   Anything about stop lights? | 15:39:42 |
| 5 | A.   No. | 15:39:43 |
| 6 | Q.   Is there anything in claim 23 about | 15:39:44 |
| 7 | arbitration? | 15:39:48 |
| 8 | A.   No. | 15:39:51 |
| 9 | Q.   So all of those questions had nothing | 15:39:54 |
| 10 | to do with the elements of claim 23; correct? | 15:39:56 |
| 11 | A.   Correct. | 15:39:59 |
| 12 | Q.   Now, they also -- Ms. Durie talked | 15:40:00 |
| 13 | about combining or making things simpler. | 15:40:03 |
| 14 | A.   Yes. | 15:40:06 |
| 15 | Q.   Would combining Dickens with the | 15:40:06 |
| 16 | Belkin or US-98 devices make anything simpler? | 15:40:10 |
| 17 | A.   No. | 15:40:14 |
| 18 | Q.   Would it make it more complex? | 15:40:14 |
| 19 | A.   Probably. | 15:40:16 |
| 20 | Q.   Now, Ms. Durie also asked you about | 15:40:22 |
| 21 | the different -- tried to compare claim 1 and | 15:40:24 |
| 22 | claim 23, okay? | 15:40:28 |
| 23 | Do you have an opinion as to | 15:40:31 |
| 24 | whether claim -- claim 23 is different than | 15:40:32 |

TRIAL - VOLUME 5

Page 369

| | | |
|---|---|---|
| 1 | claim 1? | 15:40:34 |
| 2 | A.   Oh, yes. | 15:40:36 |
| 3 | Q.   Okay. | 15:40:37 |
| 4 | Did the patent office make a | 15:40:38 |
| 5 | decision about whether the scope of claim 23 | 15:40:40 |
| 6 | was different than the scope of claim 1? | 15:40:43 |
| 7 | A.   Yes. | 15:40:45 |
| 8 | Q.   Okay. | 15:40:46 |
| 9 | So if Ms. Durie wants to imply | 15:40:46 |
| 10 | they are the same, then she has to argue with | 15:40:49 |
| 11 | the patent office; right? | 15:40:51 |
| 12 | A.   That would be the effective -- | 15:40:52 |
| 13 | MS. DURIE:  Objection. | 15:40:53 |
| 14 | THE COURT:  Sustained. | 15:40:54 |
| 15 | MR. ADAMS:  No further questions, | 15:40:54 |
| 16 | Your Honor. | 15:40:56 |
| 17 | MS. DURIE:  Nothing further. | 15:40:57 |
| 18 | THE COURT:  All right.  You can | 15:40:58 |
| 19 | step down.  Take your time. | 15:40:59 |
| 20 | (Whereupon, the witness was | 15:40:59 |
| 21 | excused.) | 15:40:59 |
| 22 | THE COURT:  Then this would be a | 15:41:03 |
| 23 | good time for a break.  We'll take about 10 | 15:41:04 |
| 24 | minutes for you to clear your heads.  Then | 15:41:07 |

| | | |
|---|---|---|
| 1 | we'll come back with me, I will tell you -- I | 15:41:08 |
| 2 | will give you, as I said, the instructions on | 15:41:12 |
| 3 | the law and you'll have those then, and then | 15:41:14 |
| 4 | tomorrow morning when we start with closing | 15:41:19 |
| 5 | arguments, you'll have a context for the | 15:41:23 |
| 6 | arguments.  So let's take 10 minutes now and | 15:41:25 |
| 7 | stretch your legs. | 15:41:28 |
| 8 | (Whereupon, the jury was excused | 15:41:30 |
| 9 | from the courtroom at 3:40 p.m.) | 15:41:32 |
| 10 | THE COURT:  You can be seated. | 15:41:49 |
| 11 | Anything I need to take up before | 15:41:50 |
| 12 | I charge the jury? | 15:41:52 |
| 13 | MR. RUSSELL:  Your Honor, we would | 15:41:54 |
| 14 | like to make our Rule 50 motion at some point, | 15:41:55 |
| 15 | whether it's now or later. | 15:41:57 |
| 16 | THE COURT:  Why don't we do this. | 15:41:59 |
| 17 | Let me get the jury instructed.  Okay?  You | 15:42:00 |
| 18 | guys made your motions and they are on the | 15:42:03 |
| 19 | record, and as I said, the case won't actually | 15:42:05 |
| 20 | be submitted to the jury until after closings | 15:42:08 |
| 21 | and until after I've given them their final | 15:42:11 |
| 22 | instructions tomorrow. | 15:42:13 |
| 23 | So let's take 10 minutes now, I'll | 15:42:14 |
| 24 | instruct the jury, and then I'll hear argument | 15:42:18 |

TRIAL - VOLUME 5

Page 371

```
 1    on the motions.  Okay?  All right.              15:42:20

 2              MS. DURIE:  Can I just ask a           15:42:22

 3    clarifying question?  I was actually going to    15:42:24

 4    leave and not sit through reading the jury       15:42:26

 5    instructions.  I can hand off to someone else.   15:42:29

 6    We could also do it tomorrow after closings.     15:42:32

 7    I guess actually we need to do it before the     15:42:37

 8    case goes to the jury.                           15:42:39

 9              THE COURT:  You have to do it          15:42:40

10    before the case is submitted to the jury.  You   15:42:41

11    could close and in theory, could wait and give   15:42:43

12    them -- I have one last instruction to give      15:42:46

13    them on how to deliberate, the case won't be     15:42:48

14    submitted until then.  But I hate to have the    15:42:51

15    closings and have them sitting there and not     15:42:53

16    be able to deliberate.                           15:42:56

17              MS. DURIE:  I don't think it would     15:42:57

18    be very long.  Could we do it first thing in     15:42:58

19    the morning?                                     15:43:01

20              THE COURT:  That's fine.  Let's        15:43:01

21    plan to do it then at 8:30.  We can get in,      15:43:04

22    we'll do it and then we'll get the closings      15:43:07

23    going on.                                        15:43:10

24              MS. DURIE:  Thank you.                 15:43:10
```

TRIAL - VOLUME 5

Page 372

| | | |
|---|---|---|
| 1 | THE COURT:  All right.  We'll take | 15:43:10 |
| 2 | 10 minutes now. | 15:43:12 |
| 3 | (Whereupon, a recess was taken at | 15:43:13 |
| 4 | 3:45 p.m.) | 15:43:17 |
| 5 | THE COURT CLERK:  All rise. | 15:52:10 |
| 6 | THE COURT:  All right.  One quick | 16:01:59 |
| 7 | housekeeping matter before I bring the jury | 16:02:02 |
| 8 | in.  Ms. Durie marked Exhibit 381 and admitted | 16:02:04 |
| 9 | it into evidence, but Mr. Slayden marked up | 16:02:11 |
| 10 | 381 for identification.  So just to clean up | 16:02:16 |
| 11 | the record, let's have the exhibit that was | 16:02:21 |
| 12 | marked as 381 and admitted during Dr. Levy's | 16:02:24 |
| 13 | testimony, we'll just make it 381A. | 16:02:30 |
| 14 | (Whereupon, Trial Exhibit 381A was | 16:02:30 |
| 15 | admitted.) | 16:02:33 |
| 16 | MR. SAULSBURY:  Okay.  Thank you, | 16:02:33 |
| 17 | Your Honor. | 16:02:35 |
| 18 | THE COURT:  So it's clear on the | 16:02:35 |
| 19 | record.  All right. | 16:02:37 |
| 20 | And with that, Mr. Koehler, would | 16:02:37 |
| 21 | you bring the jury in. | 16:02:40 |
| 22 | (Whereupon, the jury entered the | 16:02:41 |
| 23 | courtroom.) | 16:02:43 |
| 24 | THE COURT:  All right.  Please be | 16:03:41 |

Page 373

| | | |
|---|---|---|
| 1 | seated.  Okay. | 16:03:43 |
| 2 | A couple things by way of sort of | 16:03:44 |
| 3 | preface.  Really two things.  One, as I read | 16:03:47 |
| 4 | you these instructions, you are all certainly | 16:03:53 |
| 5 | welcome to take notes, as I said at the | 16:03:56 |
| 6 | beginning.  That said, and as I said this | 16:03:59 |
| 7 | morning, tomorrow when you go back to | 16:04:01 |
| 8 | deliberate, we are going to send you a couple | 16:04:05 |
| 9 | copies of this written charge so you will have | 16:04:07 |
| 10 | it for yourselves. | 16:04:10 |
| 11 | So for what it's worth, my | 16:04:11 |
| 12 | suggestion is just listen.  Remember, what I | 16:04:13 |
| 13 | have to say is to give you some context for | 16:04:17 |
| 14 | the closing arguments that you will hear | 16:04:20 |
| 15 | tomorrow, and then if you have questions about | 16:04:21 |
| 16 | what I said, you'll have it.  Okay? | 16:04:23 |
| 17 | Second, and this sort of follows | 16:04:25 |
| 18 | logically from number one, and as it was the | 16:04:28 |
| 19 | case with the opening instructions, I am going | 16:04:32 |
| 20 | to be reading them to you.  There is a reason | 16:04:34 |
| 21 | for that.  As I said at the start of jury | 16:04:36 |
| 22 | selection, you are judges of the fact.  I am | 16:04:40 |
| 23 | the judge of the law.  So just like the | 16:04:41 |
| 24 | parties get to advocate their positions to | 16:04:45 |

| | | |
|---|---|---|
| 1 | you, they get to advocate their positions on | 16:04:47 |
| 2 | the law to me.  And what I am going to read to | 16:04:50 |
| 3 | you is a product of that process. | 16:04:52 |
| 4 | So I am going to stick to it | 16:04:54 |
| 5 | because the parties have an expectation about | 16:04:55 |
| 6 | what I am going to say.  That means it's a | 16:04:58 |
| 7 | little more mechanical.  I apologize for that | 16:05:00 |
| 8 | in advance, but I think it's important that I | 16:05:02 |
| 9 | get it right when I give it to you.  Okay? | 16:05:04 |
| 10 | So bear with me as I go.  All | 16:05:07 |
| 11 | right. | 16:05:09 |
| 12 | As I have previously told you, the | 16:05:09 |
| 13 | plaintiff in this case is Microchip Technology | 16:05:12 |
| 14 | Incorporated.  The defendant in this case is | 16:05:15 |
| 15 | Aptiv Services, US, LLC, and was formerly | 16:05:18 |
| 16 | known as Delphi Automotive Systems, LLC.  In | 16:05:22 |
| 17 | 2014, Delphi purchased Unwired Technology, LLC | 16:05:25 |
| 18 | which initially developed USB hub product | 16:05:29 |
| 19 | accused of infringement in this case. | 16:05:32 |
| 20 | There is one patent at issue in | 16:05:34 |
| 21 | this case:  United States Patent No. | 16:05:36 |
| 22 | 7,523,243.  You have heard the lawyers and | 16:05:41 |
| 23 | witnesses in this case refer to that patent as | 16:05:43 |
| 24 | the '243 Patent.  You have a copy of the '243 | 16:05:47 |

Page 375

```
 1   Patent in your juror notebook.                  16:05:50

 2        Microchip contends that Aptiv             16:05:52

 3   directly infringes the '243 Patent and that it  16:05:54

 4   is entitled to damages related to the '243      16:05:58

 5   Patent as a result.  Aptiv denies that it       16:06:01

 6   infringes the '243 Patent and contends that     16:06:04

 7   the Patent is invalid.  Aptiv also denies that  16:06:07

 8   Microchip is entitled to recover any damages.   16:06:10

 9        I will now summarize the patent           16:06:13

10   issues that you must decide and for which I     16:06:15

11   will provide instructions to guide your         16:06:18

12   deliberations.                                  16:06:19

13        1.  Whether Microchip has proven          16:06:21

14   by a preponderance of the evidence that Aptiv   16:06:22

15   infringed one or more asserted claims of the    16:06:25

16   '243 Patent;                                    16:06:28

17        2.  If you decide that Microchip          16:06:29

18   has proven that Aptiv infringed one or more     16:06:32

19   claims of the '243 Patent, whether Microchip    16:06:35

20   has proven by a preponderance of the evidence   16:06:38

21   that infringement was willful;                  16:06:40

22        3.  Whether Aptiv has proven by           16:06:42

23   clear and convincing evidence that one or more  16:06:44

24   of the asserted claims of the '243 Patent is    16:06:47
```

| | | |
|---|---|---|
| 1 | invalid; | 16:06:49 |
| 2 | 4.  If you decide that Microchip | 16:06:50 |
| 3 | has proven that Aptiv infringed a valid claim, | 16:06:53 |
| 4 | you will decide the money damages to be | 16:06:56 |
| 5 | awarded to compensate Microchip for that | 16:06:59 |
| 6 | infringement.  Microchip has the burden to | 16:07:01 |
| 7 | establish the amount of its damages by a | 16:07:03 |
| 8 | preponderance of the evidence. | 16:07:05 |
| 9 | I will provide more detailed | 16:07:08 |
| 10 | instructions on these issues shortly. | 16:07:09 |
| 11 | In any legal action, facts must be | 16:07:12 |
| 12 | proven by a required standard of evidence | 16:07:14 |
| 13 | known as the burden of proof.  In a patent | 16:07:16 |
| 14 | case such as this, there are two different | 16:07:19 |
| 15 | burdens of proof that are used.  The first is | 16:07:22 |
| 16 | called preponderance of the evidence.  The | 16:07:24 |
| 17 | second is called clear and convincing | 16:07:26 |
| 18 | evidence. | 16:07:28 |
| 19 | As you have heard, Microchip | 16:07:28 |
| 20 | contends that Aptiv infringes the '243 Patent. | 16:07:30 |
| 21 | Microchip also contends that it is entitled to | 16:07:34 |
| 22 | damages as a result of that infringement.  The | 16:07:37 |
| 23 | party asserting patent infringement has the | 16:07:39 |
| 24 | burden of proving infringement by a | 16:07:42 |

Page 377

1    preponderance of the evidence.  A              16:07:43

2    preponderance of the evidence is evidence      16:07:45

3    that, when considered in light of all the      16:07:46

4    facts, leads you to believe that what that     16:07:49

5    party claims is more likely true than not.  To 16:07:51

6    put it differently, if you were to put the     16:07:54

7    parties' evidence on opposite sides of a       16:07:57

8    scale, the evidence supporting Microchip's     16:07:59

9    infringement claims must make the scales tip   16:08:00

10   somewhat toward its side.  If the scale should 16:08:03

11   remain equal or tip in favor of Aptiv, you     16:08:05

12   must find for Aptiv.                           16:08:08

13          If you decide Aptiv infringed, you      16:08:10

14   will then address the additional issue of      16:08:13

15   whether or not Aptiv's infringement was        16:08:16

16   willful.  Microchip has the burden of proving  16:08:17

17   that Aptiv's infringement was willful by a     16:08:20

18   preponderance of the evidence, meaning it is   16:08:23

19   more likely true than not.                     16:08:24

20          Microchip also has the burden to        16:08:26

21   establish the kind of money damages - lost     16:08:29

22   profits or reasonable royalties - and the      16:08:31

23   amount of its money damages by a preponderance 16:08:33

24   of the evidence.  If Microchip persuades you   16:08:35

Page 378

| | | |
|---|---|---|
| 1 | that Aptiv has infringed a valid patent, | 16:08:39 |
| 2 | Microchip is entitled to damages in an amount | 16:08:42 |
| 3 | to compensate Microchip for that infringement. | 16:08:44 |
| 4 | In addition to denying that it has | 16:08:47 |
| 5 | infringed, Aptiv contends that the '243 Patent | 16:08:48 |
| 6 | is invalid.  A party challenging the validity | 16:08:52 |
| 7 | of a patent has the burden of proving that the | 16:08:56 |
| 8 | patent is invalid by clear and convincing | 16:08:59 |
| 9 | evidence.  Clear and convincing evidence is | 16:09:03 |
| 10 | evidence that produces an abiding conviction | 16:09:05 |
| 11 | that the truth of a factual contention is | 16:09:07 |
| 12 | highly probable.  Proof by clear and | 16:09:09 |
| 13 | convincing evidence is, thus, a higher burden | 16:09:11 |
| 14 | than proof by a preponderance of the evidence. | 16:09:13 |
| 15 | Some of you may have heard the | 16:09:15 |
| 16 | phrase "proof beyond a reasonable doubt." | 16:09:16 |
| 17 | That burden of proof applies only in criminal | 16:09:19 |
| 18 | cases and has nothing to do with a civil case | 16:09:22 |
| 19 | like this one.  You should, therefore, not | 16:09:24 |
| 20 | consider it in this case. | 16:09:26 |
| 21 | The evidence from which you are to | 16:09:27 |
| 22 | find the facts consists of the following: | 16:09:29 |
| 23 | 1.  The testimony of the | 16:09:32 |
| 24 | witnesses; | 16:09:33 |

| | | |
|---|---|---|
| 1 | 2.   Documents, charts, graphics, | 16:09:34 |
| 2 | and other things received as exhibits; and. | 16:09:37 |
| 3 | 3.   Any facts that are stipulated; | 16:09:40 |
| 4 | that is, formally agreed to by the parties. | 16:09:42 |
| 5 | The following things are not | 16:09:46 |
| 6 | evidence: | 16:09:48 |
| 7 | Statements, arguments, and | 16:09:48 |
| 8 | questions of the lawyers for the parties in | 16:09:50 |
| 9 | this case; | 16:09:52 |
| 10 | Charts and graphics not received | 16:09:52 |
| 11 | as exhibits; | 16:09:55 |
| 12 | Objections by lawyers. | 16:09:56 |
| 13 | Any testimony I tell you to | 16:09:58 |
| 14 | disregard; and anything you may see or hear | 16:10:00 |
| 15 | about this case outside the courtroom. | 16:10:03 |
| 16 | You must make your decision based | 16:10:06 |
| 17 | only on the evidence that you see and hear in | 16:10:08 |
| 18 | court.  Do not let rumors, suspicions, or | 16:10:11 |
| 19 | anything else that you may see or hear outside | 16:10:13 |
| 20 | of court influence your decision in any way. | 16:10:15 |
| 21 | You should use your common sense | 16:10:18 |
| 22 | in weighing the evidence.  Consider it in | 16:10:20 |
| 23 | light of your everyday experiences with people | 16:10:22 |
| 24 | and events, and give it whatever weight you | 16:10:25 |

TRIAL - VOLUME 5

Page 380

| | | |
|---|---|---|
| 1 | believe it deserves.  If your experience tells | 16:10:27 |
| 2 | you that certain evidence reasonably leads to | 16:10:29 |
| 3 | a conclusion, you are free to reach that | 16:10:32 |
| 4 | conclusion. | 16:10:33 |
| 5 | There are rules that control what | 16:10:34 |
| 6 | can be received into evidence.  When a lawyer | 16:10:35 |
| 7 | asks a question or offers an exhibit into | 16:10:37 |
| 8 | evidence, and a lawyer on the other side | 16:10:39 |
| 9 | thinks that it is not permitted by the rules | 16:10:42 |
| 10 | of evidence, that lawyer may object.  This | 16:10:44 |
| 11 | simply means that the lawyer requested that I | 16:10:46 |
| 12 | make a decision on a particular rule of | 16:10:48 |
| 13 | evidence.  You should not be influenced by the | 16:10:50 |
| 14 | fact that an objection was made.  Objections | 16:10:52 |
| 15 | to questions are not evidence.  Lawyers have | 16:10:54 |
| 16 | an obligation to their clients to make | 16:10:57 |
| 17 | objections when they believe that the evidence | 16:10:59 |
| 18 | being offered is improper under the rules of | 16:11:00 |
| 19 | evidence.  You should not be influenced by the | 16:11:03 |
| 20 | objection or by my ruling on it.  If I | 16:11:05 |
| 21 | sustained an objection, ignore the question. | 16:11:08 |
| 22 | If I overruled it, treat the answer like any | 16:11:11 |
| 23 | other.  If you are instructed that some item | 16:11:14 |
| 24 | of evidence is received for a limited purpose | 16:11:16 |

Page 381

1    only, you must follow that instruction.                16:11:18

2               Also, I may have excluded some

3    evidence or ordered certain testimony or other

4    evidence stricken from the record.  Do not

5    consider any testimony or other evidence that

6    I struck or excluded.  Do not speculate about

7    what a witness might have said or what an

8    exhibit might have shown.

9               There are two types of evidence         16:11:39

10   that you may use in reaching your verdict.          16:11:40

11   One type of evidence is called direct              16:11:42

12   evidence.  An example of direct evidence is        16:11:45

13   when a witness testifies about something a         16:11:47

14   witness knows through his own senses,              16:11:49

15   something the witness has seen, felt, touched,     16:11:51

16   heard or did.                                      16:11:54

17               The other type of evidence is          16:11:55

18   circumstantial evidence.  Circumstantial           16:11:56

19   evidence is proof of one or more facts from        16:11:59

20   which you could find another fact.                 16:12:01

21               I will give you an example of the      16:12:03

22   difference between direct and circumstantial       16:12:05

23   evidence.                                          16:12:07

24               If a witness testified that he saw     16:12:07

| | | |
|---|---|---|
| 1 | it raining outside, and you believed him, that | 16:12:08 |
| 2 | would be direct evidence that it was raining. | 16:12:11 |
| 3 | However, if someone walked into the courtroom | 16:12:13 |
| 4 | wearing a raincoat covered with drops of water | 16:12:16 |
| 5 | and carrying a wet umbrella, that would be | 16:12:18 |
| 6 | circumstantial evidence from which you could | 16:12:20 |
| 7 | conclude that it was raining, even though you | 16:12:22 |
| 8 | didn't see it for yourself. | 16:12:24 |
| 9 | You should consider both kinds of | 16:12:26 |
| 10 | evidence that are presented to you.  The law | 16:12:27 |
| 11 | makes no distinction in the weight to be given | 16:12:29 |
| 12 | to either direct or circumstantial evidence. | 16:12:31 |
| 13 | You are to decide how much weight to give any | 16:12:33 |
| 14 | evidence. | 16:12:35 |
| 15 | In determining what the facts are, | 16:12:36 |
| 16 | you may have to decide what testimony you | 16:12:38 |
| 17 | believe and what testimony you do not believe. | 16:12:41 |
| 18 | You are the sole judges of the credibility of | 16:12:44 |
| 19 | the witnesses.  Credibility means whether a | 16:12:46 |
| 20 | witness is worthy of belief.  You may believe | 16:12:48 |
| 21 | everything a witness says or only part of it | 16:12:51 |
| 22 | or none of it.  In deciding what to believe, | 16:12:53 |
| 23 | you may consider a number of factors, | 16:12:56 |
| 24 | including the following: | 16:12:58 |

Page 383

| | | |
|---|---|---|
| 1 | 1.  The opportunity and ability of | 16:12:59 |
| 2 | the witness to see or hear or know the things | 16:13:02 |
| 3 | the witness testifies to; | 16:13:04 |
| 4 | 2.  The quality of the witness's | 16:13:06 |
| 5 | understanding and memory; | 16:13:08 |
| 6 | 3.  The witness's manner while | 16:13:09 |
| 7 | testifying; | 16:13:12 |
| 8 | 4.  Whether the witness has an | 16:13:12 |
| 9 | interest in the outcome of the case or any | 16:13:14 |
| 10 | motive, bias or prejudice; | 16:13:16 |
| 11 | 5.  Whether the witness is | 16:13:19 |
| 12 | contradicted by anything the witness said or | 16:13:21 |
| 13 | wrote before trial or by other evidence; | 16:13:23 |
| 14 | 6.  How reasonable the witness's | 16:13:26 |
| 15 | testimony is when considered in light -- in | 16:13:28 |
| 16 | the light of the other evidence that you | 16:13:31 |
| 17 | believe; and | 16:13:33 |
| 18 | 7.  Any other factors that bear on | 16:13:34 |
| 19 | believability. | 16:13:36 |
| 20 | Sometimes jurors wonder if the | 16:13:37 |
| 21 | number of witnesses who testified makes any | 16:13:39 |
| 22 | difference.  Do not make any decisions based | 16:13:42 |
| 23 | only on the number of witnesses who testified. | 16:13:44 |
| 24 | What is more important is how believable the | 16:13:47 |

Page 384

| | | |
|---|---|---|
| 1 | witnesses were, and how much weight you think | 16:13:49 |
| 2 | their testimony deserves.  Concentrate on | 16:13:50 |
| 3 | that, not the numbers. | 16:13:53 |
| 4 | You have heard testimony | 16:13:54 |
| 5 | containing opinions from Mr. Ivan Zatkovich, | 16:13:57 |
| 6 | Dr. John Levy, Dr. Stephen Becker and Mr. John | 16:14:02 |
| 7 | Garney.  In weighing this opinion testimony, | 16:14:04 |
| 8 | you may consider the witnesses' | 16:14:07 |
| 9 | qualifications, the reasons for their | 16:14:09 |
| 10 | opinions, and the reliability of the | 16:14:10 |
| 11 | information supporting those opinions, as well | 16:14:12 |
| 12 | as the factors I have previously mentioned for | 16:14:15 |
| 13 | weighing the testimony of other witnesses. | 16:14:17 |
| 14 | The opinions of these individuals should | 16:14:20 |
| 15 | receive whatever weight and credit, if any, | 16:14:22 |
| 16 | you think appropriate, given all the other | 16:14:24 |
| 17 | evidence in the case. | 16:14:26 |
| 18 | In deciding whether to accept or | 16:14:27 |
| 19 | rely upon the opinions of Mr. Zatkovich, Dr. | 16:14:29 |
| 20 | Levy, Dr. Becker and Mr. Garney, you may | 16:14:32 |
| 21 | consider any bias that any witness may have, | 16:14:35 |
| 22 | including any bias that may arise from | 16:14:38 |
| 23 | evidence that they have been or will be paid | 16:14:40 |
| 24 | for reviewing the case and testifying. | 16:14:42 |

TRIAL - VOLUME 5

Page 385

1          Before this trial began, the                16:14:44

2    lawyers for the parties questioned witnesses      16:14:47

3    under oath, and a court reporter and              16:14:49

4    videographer recorded everything the witnesses    16:14:52

5    and the lawyers said.  This is called a           16:14:54

6    deposition.                                        16:14:55

7          For some witnesses, you have heard          16:14:57

8    that sworn testimony.  Each witness's             16:14:58

9    testimony is entitled to the same                  16:15:01

10   consideration as if he testified in court.        16:15:03

11   You should use the same factors to evaluate       16:15:05

12   the believability of this testimony as if he      16:15:08

13   testified in person in the courtroom.             16:15:11

14          The parties may have edited or cut         16:15:12

15   the video to exclude irrelevant testimony.        16:15:15

16   You should not attribute any significance to      16:15:17

17   the fact that the deposition videos may appear    16:15:20

18   to have been edited.                              16:15:22

19          During the course of the trial,           16:15:25

20   you have seen many exhibits.  Many of these       16:15:28

21   exhibits were admitted into evidence.  You        16:15:30

22   will have these admitted exhibits in the jury     16:15:32

23   room for your deliberation.                       16:15:34

24          The remainder of the exhibits,             16:15:35

TRIAL - VOLUME 5

Page 386

| | | |
|---|---|---|
| 1 | including charts, PowerPoint presentations and | 16:15:38 |
| 2 | animations, were offered to help illustrate | 16:15:40 |
| 3 | the testimony of the various witnesses.  These | 16:15:42 |
| 4 | illustrative exhibits, called demonstrative | 16:15:45 |
| 5 | exhibits, have not been admitted, are not | 16:15:48 |
| 6 | evidence, and should not be considered as | 16:15:50 |
| 7 | evidence.  Rather, it is the underlying | 16:15:51 |
| 8 | testimony of the witness that you heard when | 16:15:54 |
| 9 | you saw the demonstrative exhibit that is the | 16:15:55 |
| 10 | evidence in this case. | 16:15:58 |
| 11 | In some instances, certain charts | 16:15:59 |
| 12 | and summaries may have been received into | 16:16:01 |
| 13 | evidence to illustrate information brought out | 16:16:03 |
| 14 | in the trial.  You may use these charts and | 16:16:05 |
| 15 | summaries as evidence, even though the | 16:16:08 |
| 16 | underlying documents and records are not here. | 16:16:10 |
| 17 | You should give them such weight as you think | 16:16:12 |
| 18 | they deserve. | 16:16:14 |
| 19 | You may use notes taken during | 16:16:15 |
| 20 | trial to assist your memory.  However, as I | 16:16:17 |
| 21 | instructed you at the beginning of the case, | 16:16:20 |
| 22 | you should use caution in consulting your | 16:16:21 |
| 23 | notes.  Jurors often have a tendency to attach | 16:16:24 |
| 24 | undue importance to matters which one has | 16:16:26 |

Page 387

```
 1    written down.  But some testimony that you        16:16:29

 2    thought was unimportant at the time presented,    16:16:31

 3    and thus not written down, takes on greater       16:16:33

 4    importance later in the trial in light of all     16:16:36

 5    the evidence presented.  Therefore, your notes    16:16:38

 6    are only a tool to aid your own individual        16:16:41

 7    memory, and you should not compare notes with     16:16:43

 8    other jurors in determining the content of any    16:16:46

 9    testimony or in evaluating the importance of      16:16:48

10    any evidence.  Your notes are not evidence,       16:16:50

11    and are by no means a complete outline of the     16:16:53

12    proceedings or a list of the highlights of the    16:16:55

13    trial.  Above all, your memory should be the      16:16:57

14    greatest asset when it comes time to              16:17:00

15    deliberate and render a decision in this case.    16:17:02

16          Before you can decide many of the           16:17:04

17    issues in the case, you will need to              16:17:08

18    understand the role of patent claims.  The        16:17:09

19    patent claims are the numbered paragraphs at      16:17:11

20    the end of each patent.  The claims are           16:17:14

21    important because it is the words of the          16:17:16

22    claims that define what a patent covers.  The     16:17:17

23    claims are intended to define, in words, the      16:17:20

24    bounds of the invention.  The figures and text    16:17:23
```

Page 388

1    in the rest of the patent provide a                    16:17:26

2    description and/or examples of the invention           16:17:28

3    and provide a context for the claims, but it           16:17:30

4    is the claims that define the breadth of the           16:17:34

5    patent's coverage.  You must consider each of          16:17:36

6    the asserted claims individually.                      16:17:38

7           Each claim of a patent effectively              16:17:40

8    acts as if it were a separate patent, and each         16:17:42

9    claim may cover either more or less than               16:17:45

10   another claim.  Therefore, what a patent               16:17:47

11   covers depends, in turn, on what each of its           16:17:50

12   claims covers.  You will first need to                 16:17:52

13   understand what each claim covers in order to          16:17:54

14   decide whether or not there is infringement of         16:17:56

15   the claim and to decide whether or not the             16:17:59

16   claim is invalid.                                      16:18:01

17          It is the Court's duty under the                16:18:02

18   law to define what the patent claims mean.  I          16:18:05

19   have made my determinations, and I will now            16:18:09

20   instruct you on the meaning of the claim               16:18:11

21   terms.  You must apply the meaning that I give         16:18:13

22   in each patent claim to decide if a claim is           16:18:15

23   infringed or invalid.  You must accept my              16:18:18

24   definitions of these words in the claims as            16:18:20

TRIAL - VOLUME 5

Page 389

| | | |
|---|---|---|
| 1 | being correct, and you must ignore any | 16:18:23 |
| 2 | different definitions used by the witnesses or | 16:18:24 |
| 3 | the attorneys.  The definitions for asserted | 16:18:27 |
| 4 | claim 23 through 25 are as follows: | 16:18:29 |
| 5 | The first claim term is USB | 16:18:31 |
| 6 | multi-host device, and the Court's | 16:18:36 |
| 7 | Construction is that preamble is not limiting. | 16:18:39 |
| 8 | The second claim term is | 16:18:42 |
| 9 | respective dedicated USB connection or | 16:18:44 |
| 10 | dedicated USB connection, and the Court's | 16:18:46 |
| 11 | Construction is a USB connection that is not | 16:18:49 |
| 12 | shared, except that multiple USB connections | 16:18:53 |
| 13 | may alternate, in some manner, communicating | 16:18:56 |
| 14 | across the same shared physical connection. | 16:18:59 |
| 15 | And the third claim term is USB | 16:19:02 |
| 16 | device block, and the Court's Construction is | 16:19:05 |
| 17 | a USB device or segment of a USB device that | 16:19:07 |
| 18 | performs a function to provide a capability to | 16:19:12 |
| 19 | a host over USB. | 16:19:14 |
| 20 | For any words in the claim for | 16:19:15 |
| 21 | which I have not provided you with a | 16:19:18 |
| 22 | definition, you should apply the plain and | 16:19:19 |
| 23 | ordinary meaning to a person of ordinary skill | 16:19:22 |
| 24 | in the art.  Shortly, I will explain the | 16:19:24 |

Page 390

|   |   |   |
|---|---|---|
| 1 | concept of a person of ordinary skill in the | 16:19:26 |
| 2 | art. | 16:19:29 |
| 3 | There are two different types of | 16:19:29 |
| 4 | claims at issue in this case.  The first type | 16:19:32 |
| 5 | is called an independent claim.  An | 16:19:34 |
| 6 | independent claim does not refer to any other | 16:19:37 |
| 7 | claim of the patent.  An independent claim is | 16:19:39 |
| 8 | read separately to determine its scope.  In | 16:19:42 |
| 9 | this case, the only independent claim for | 16:19:44 |
| 10 | which Microchip asserts infringement is claim | 16:19:46 |
| 11 | 23 of the '243 Patent.  You know that claim is | 16:19:50 |
| 12 | independent because it does not mention any | 16:19:54 |
| 13 | other claims in the patent.  Accordingly, you | 16:19:56 |
| 14 | should read the words of that independent | 16:19:59 |
| 15 | claim by themselves, in light of the | 16:20:00 |
| 16 | construction that I have given them, to | 16:20:02 |
| 17 | determine what that claim covers. | 16:20:04 |
| 18 | Claims 24 and 25 of the '243 | 16:20:06 |
| 19 | Patent are dependent claims.  A dependent | 16:20:10 |
| 20 | claim refers to and depends upon at least one | 16:20:13 |
| 21 | other claim in the patent and thus | 16:20:15 |
| 22 | incorporates all of the requirements of the | 16:20:16 |
| 23 | claims to which it refers.  Accordingly, to | 16:20:19 |
| 24 | determine what a dependent claim covers, you | 16:20:22 |

Page 391

1    must read both the dependent claim and the                16:20:25

2    claim to which it refers.  Claim 24 and 25 are             16:20:28

3    dependent because they refer to claim 23, so               16:20:30

4    you must read the words of claim 23 with the               16:20:34

5    words of claim 24 and then read the words of               16:20:36

6    claim 23 with the words of claim 25 to                     16:20:39

7    determine what each claim covers.                          16:20:42

8            I will now instruct you how to                     16:20:44

9    decide whether Microchip has proven by a                   16:20:48

10   preponderance of the evidence that Aptiv                   16:20:50

11   infringed the asserted claims of the '243                  16:20:52

12   Patent.  You will recall that Microchip must               16:20:55

13   prove infringement by a preponderance of the               16:20:57

14   evidence, meaning it is more likely than not               16:20:59

15   that infringement has occurred.                            16:21:01

16           Whether Aptiv knew or believed the                 16:21:02

17   accused chip infringes '243 Patent is                      16:21:04

18   irrelevant to the question of infringement.                16:21:07

19   Aptiv's knowledge and belief regarding                     16:21:10

20   infringement is only relevant to the separate              16:21:13

21   question of willful infringement, which I will             16:21:15

22   explain shortly.                                           16:21:16

23           Whether Aptiv's accused chip                       16:21:18

24   includes features or improvements in addition

Page 392

1    to the elements of claims 23 through 25 of the

2    '243 patent is not relevant to whether Aptiv

3    infringes those claims.  As long as Aptiv's

4    accused chip includes all of the elements of

5    an asserted patent claim, then that patent

6    claim is infringed even if the accused chip

7    also has additional elements, features, or

8    improvements.                                    16:21:18

9             You have also heard evidence from       16:21:18

10   both sides on other patents relating to the      16:21:46

11   USB technology.  As I stated earlier, there is   16:21:48

12   only one patent at issue in this case: The       16:21:51

13   '243 Patent.  Ownership of a patent is not a     16:21:53

14   defense to patent infringement, nor is           16:21:56

15   ownership of other patents evidence of           16:21:58

16   infringement.  As a result, the fact that        16:22:00

17   Aptiv had patents has no bearing on whether it   16:22:03

18   has infringed Microchip's patent.  Instead,      16:22:06

19   for purposes of infringement, you must only      16:22:08

20   consider the claims of the '243 Patent.          16:22:10

21             Microchip alleges that Aptiv           16:22:12

22   directly infringes the '243 Patent.  In order    16:22:15

23   to prove direct infringement, Microchip must     16:22:18

24   prove by a preponderance of the evidence,        16:22:21

TRIAL - VOLUME 5

Page 393

| | | |
|---|---|---|
| 1 | meaning that it is more likely than not that | 16:22:23 |
| 2 | Aptiv made, used, sold, offered to sell, or | 16:22:25 |
| 3 | imported products covered by at least one | 16:22:29 |
| 4 | asserted claim. | 16:22:32 |
| 5 | Deciding whether a claim has been | 16:22:33 |
| 6 | directly infringed is a two-step process.  The | 16:22:35 |
| 7 | first step is to decide the meaning of the | 16:22:38 |
| 8 | patent language.  I've already made this | 16:22:40 |
| 9 | decision, and I have already instructed you as | 16:22:42 |
| 10 | to the meaning of some terms of the asserted | 16:22:44 |
| 11 | patent claim. | 16:22:46 |
| 12 | The second step is to decide | 16:22:47 |
| 13 | whether an asserted claim covers the Boston | 16:22:49 |
| 14 | chip in Aptiv's dual role hub.  To decide | 16:22:52 |
| 15 | whether the Boston chip directly infringes an | 16:22:55 |
| 16 | asserted claim, you must compare that product | 16:22:57 |
| 17 | with an asserted patent claim and determine | 16:23:00 |
| 18 | whether every requirement of the claim is met. | 16:23:03 |
| 19 | If so, Aptiv's chip directly infringes that | 16:23:05 |
| 20 | claim.  If not, then the product does not | 16:23:08 |
| 21 | directly infringe that claim. | 16:23:11 |
| 22 | In general, you must determine | 16:23:12 |
| 23 | separately for each asserted claim whether or | 16:23:15 |
| 24 | not there is infringement.  There is one | 16:23:17 |

| | | |
|---|---|---|
| 1 | exception to this rule.  If you find that an | 16:23:19 |
| 2 | independent claim on which other claims depend | 16:23:22 |
| 3 | is not infringed, then there cannot be | 16:23:25 |
| 4 | infringement of any dependent claim that | 16:23:28 |
| 5 | refers to that independent claim.  So, if you | 16:23:30 |
| 6 | find that Aptiv has not infringed claim 23 of | 16:23:34 |
| 7 | the '243 Patent, then Aptiv cannot have | 16:23:37 |
| 8 | infringed claim 24 or claim 25. | 16:23:40 |
| 9 | On the other hand, if you find | 16:23:43 |
| 10 | that Aptiv has infringed claim 23, you must | 16:23:45 |
| 11 | still decide, separately, whether the accused | 16:23:48 |
| 12 | product meets additional requirements of each | 16:23:51 |
| 13 | of the dependent claims, claim 24 and claim | 16:23:54 |
| 14 | 25, and thus, whether those dependent claims | 16:23:57 |
| 15 | have also been infringed.  A dependent claim | 16:24:00 |
| 16 | includes all the requirements of any of the | 16:24:03 |
| 17 | claims to which it refers plus any additional | 16:24:05 |
| 18 | requirements of its own. | 16:24:08 |
| 19 | If you decide that Aptiv directly | 16:24:09 |
| 20 | infringed any asserted claim of the '243 | 16:24:15 |
| 21 | Patent, you must then address the additional | 16:24:19 |
| 22 | issue of whether Aptiv's infringement was | 16:24:20 |
| 23 | willful.  To prove willful infringement, | 16:24:23 |
| 24 | Microchip must prove by a preponderance of the | 16:24:26 |

Page 395

| | | |
|---|---|---|
| 1 | evidence that Aptiv had knowledge of the | 16:24:28 |
| 2 | infringed patent, that is, the '243 Patent, | 16:24:30 |
| 3 | before Microchip filed this lawsuit, and that | 16:24:32 |
| 4 | Aptiv's conduct was reckless, willful, wanton, | 16:24:35 |
| 5 | malicious, committed in bad faith, deliberate, | 16:24:39 |
| 6 | consciously, wrongful, or flagrant.  To | 16:24:42 |
| 7 | determine whether Aptiv acted willfully, | 16:24:45 |
| 8 | consider all of the facts.  These may include, | 16:24:49 |
| 9 | but are not limited to: | 16:24:51 |
| 10 | 1.  Whether Aptiv intentionally | 16:24:52 |
| 11 | copied the claimed inventions of the '243 | 16:24:55 |
| 12 | Patent; | 16:24:55 |
| 13 | 2.  Whether Aptiv reasonably | 16:24:58 |
| 14 | believed it did not infringe or that the | 16:25:00 |
| 15 | patent was invalid at or around the time it | 16:25:03 |
| 16 | first learned of the '243 Patent; | 16:25:06 |
| 17 | 3.  Whether Aptiv made a | 16:25:08 |
| 18 | good-faith effort to avoid infringing the '243 | 16:25:10 |
| 19 | Patent, for example, whether Aptiv attempted | 16:25:13 |
| 20 | to design around the patent; and | 16:25:16 |
| 21 | 4.  Whether Aptiv tried to cover | 16:25:19 |
| 22 | up its infringement. | 16:25:21 |
| 23 | If you do decide that there was | 16:25:23 |
| 24 | willful infringement, that decision should not | 16:25:25 |

| | | |
|---|---|---|
| 1 | affect any damage award you give in this case. | 16:25:27 |
| 2 | Patent invalidity is a defense to | 16:25:32 |
| 3 | patent infringement.  The granting of a patent | 16:25:36 |
| 4 | by the United States Patent and Trademark | 16:25:38 |
| 5 | Office carries with it the presumption that | 16:25:40 |
| 6 | the patent is valid.  The law presumes that | 16:25:42 |
| 7 | the Patent and Trademark Office acted | 16:25:45 |
| 8 | correctly in issuing the patent.  Each of the | 16:25:47 |
| 9 | asserted claims is presumed valid | |
| 10 | independently of the validity of each other | |
| 11 | claim.  This presumption puts the burden on | |
| 12 | Aptiv of proving invalidity by clear and | |
| 13 | convincing evidence on a claim-by-claim basis; | |
| 14 | that is, you must be left with an abiding | |
| 15 | conviction that each asserted claim of the | |
| 16 | '243 Patent is invalid.  This burden may be | |
| 17 | more difficult to meet when the accused | |
| 18 | infringer attempts to rely on prior art that | |
| 19 | has been before the patent office during | |
| 20 | examination of the '243 Patent. | |
| 21 | The '243 Patent was subject to | 16:26:20 |
| 22 | proceedings before the Patent Trial and Appeal | 16:26:21 |
| 23 | Board.  You've heard these proceedings | 16:26:24 |
| 24 | referred to as IPR proceedings.  During these | 16:26:26 |

Page 397

1   proceedings, the Patent Trial and Appeal Board                16:26:29

2   could only consider written references such as                16:26:31

3   patents and publications, and could not                       16:26:34

4   consider products or systems such as US-98 or                 16:26:36

5   Belkin.                                                       16:26:40

6          Even though the patent office                         16:26:40

7   allowed the claims of a patent, you have the                  16:26:41

8   ultimate responsibility for deciding whether                  16:26:45

9   the claims of a patent are proven to be                       16:26:46

10  invalid.  For a patent to be valid, the                       16:26:48

11  specification of the patent must contain a                    16:26:51

12  sufficient written description of the claimed                 16:26:53

13  invention and enable a person of ordinary                     16:26:55

14  skill in the art to make and use the claimed                  16:26:57

15  invention.  A patent cannot take away from the                16:27:01

16  right of anyone who wants to use what was                     16:27:03

17  already known or used by others, or what would                16:27:05

18  have been obvious to those of skill in the art                16:27:08

19  at the time the invention was made.  But the                  16:27:10

20  specification does not have to describe or                    16:27:13

21  enable the accused product, nor must it                       16:27:15

22  describe every conceivable or possible future                 16:27:18

23  embodiment.                                                   16:27:21

24          Aptiv alleges that claim 23                           16:27:22

| | | |
|---|---|---|
| 1 | through 25 of the '243 Patent are invalid | 16:27:25 |
| 2 | because: | 16:27:27 |
| 3 | 1.   U.S. Patent No. 6,549,966, | 16:27:27 |
| 4 | which we referred to as Dickens, combined with | 16:27:32 |
| 5 | the US-98 USB Auto Share Switch 4X4 system, | 16:27:35 |
| 6 | which was referred to as US-98, renders the | 16:27:40 |
| 7 | claim obvious; | 16:27:42 |
| 8 | 2.   Dickens combined with the | 16:27:43 |
| 9 | Belkin 4X4 USB Peripheral Switch system, which | 16:27:47 |
| 10 | we referred to as Belkin, renders the claims | 16:27:50 |
| 11 | obvious; | 16:27:53 |
| 12 | 3.   The specification of the '243 | 16:27:54 |
| 13 | Patent does not contain an adequate written | 16:27:56 |
| 14 | description of the full scope of the asserted | 16:27:59 |
| 15 | claims; | 16:28:01 |
| 16 | 4.   The specification of the '243 | 16:28:03 |
| 17 | Patent does not enable a person of ordinary | 16:28:06 |
| 18 | skill in the art to make and use the full | 16:28:07 |
| 19 | scope of the invention, which is called | 16:28:11 |
| 20 | enablement. | 16:28:13 |
| 21 | I will now instruct you in more | 16:28:13 |
| 22 | detail regarding Aptiv's invalidity defense. | 16:28:15 |
| 23 | Patent invalidity defenses are | 16:28:23 |
| 24 | evaluated from the perspective of a | 16:28:24 |

|  |  |  |
|---|---|---|
| 1 | hypothetical person of ordinary skill in the | 16:28:26 |
| 2 | art.  A hypothetical person of ordinary skill | 16:28:27 |
| 3 | in the art is presumed to be aware of all the | 16:28:30 |
| 4 | prior art at the time of the invention, which | 16:28:32 |
| 5 | is April 2006 in this case.  You are to | 16:28:33 |
| 6 | determine the level of ordinary skill in the | 16:28:37 |
| 7 | art to which the claimed invention pertains at | 16:28:39 |
| 8 | the time the claimed invention was made. | 16:28:43 |
| 9 | In deciding what the level of | 16:28:44 |
| 10 | ordinary skill in the relevant field is, you | 16:28:46 |
| 11 | should consider all the evidence introduced at | 16:28:47 |
| 12 | trial, including but not limited to: the | 16:28:50 |
| 13 | levels of education and experience of other | 16:28:52 |
| 14 | persons actively working in the field as of | 16:28:54 |
| 15 | April 14th, 2006. | 16:28:57 |
| 16 | Even though an invention may not | 16:28:58 |
| 17 | have been identically disclosed or described | 16:29:03 |
| 18 | before it was made by an inventor, in order to | 16:29:06 |
| 19 | be patentable, an invention must not have been | 16:29:08 |
| 20 | obvious to a person of ordinary skill in the | 16:29:10 |
| 21 | art at the time the invention was made. | 16:29:12 |
| 22 | Aptiv contends that the asserted | 16:29:15 |
| 23 | claims of the '243 Patent is invalid for | 16:29:17 |
| 24 | obviousness.  Aptiv bears the burden of | 16:29:22 |

TRIAL - VOLUME 5

Page 400

| | | |
|---|---|---|
| 1 | proving obviousness by clear and convincing | 16:29:24 |
| 2 | evidence.  To establish that a patent claim is | 16:29:27 |
| 3 | invalid for obviousness, Aptiv must show, by | 16:29:29 |
| 4 | clear and convincing evidence, that the | 16:29:32 |
| 5 | claimed invention would have been obvious to a | 16:29:34 |
| 6 | person having ordinary skill in the art at the | 16:29:36 |
| 7 | time the invention was made.  In determining | 16:29:38 |
| 8 | whether the claimed invention was obvious, you | 16:29:40 |
| 9 | must consider each claim separately.  You | 16:29:42 |
| 10 | should not use hindsight, such as by using the | 16:29:44 |
| 11 | '243 Patent as a roadmap to select from the | 16:29:48 |
| 12 | prior art and retrace the path of the | 16:29:50 |
| 13 | inventors.  In other words, you should only | 16:29:52 |
| 14 | consider what was known prior to April 14th, | 16:29:54 |
| 15 | 2006, without the benefit of the later '243 | 16:29:57 |
| 16 | Patent and what that patent teaches. | 16:30:01 |
| 17 | In order to be patentable, an | 16:30:02 |
| 18 | invention must not have been obvious to a | 16:30:07 |
| 19 | person of ordinary skill in the art at the | 16:30:08 |
| 20 | time the invention was made.  The issue is not | 16:30:10 |
| 21 | whether the claimed invention would be obvious | 16:30:13 |
| 22 | today to you, as a layperson, to me as a | 16:30:15 |
| 23 | judge, or to a genius in the art, but whether | 16:30:18 |
| 24 | it would have been obvious to one of ordinary | 16:30:21 |

Page 401

| | | |
|---|---|---|
| 1 | skill in the art at the time it was made.  The | 16:30:23 |
| 2 | existence of each and every element of the | 16:30:25 |
| 3 | claimed invention in the prior art does not | 16:30:28 |
| 4 | necessarily prove obviousness.  Most, if not | 16:30:30 |
| 5 | all, inventions rely on building blocks of | 16:30:34 |
| 6 | prior art. | 16:30:36 |
| 7 | You must put yourself in the place | 16:30:36 |
| 8 | of a person of ordinary skill in the art at | 16:30:38 |
| 9 | the time of the invention.  In addition, you | 16:30:40 |
| 10 | may consider whether there was a reason to | 16:30:43 |
| 11 | combine or modify the prior art references in | 16:30:45 |
| 12 | the fashion claimed by the patent at issue. | 16:30:48 |
| 13 | To find that the prior art rendered a claim | 16:30:51 |
| 14 | obvious, you must find that a person having | 16:30:54 |
| 15 | ordinary skill in the art would have had a | 16:30:56 |
| 16 | reasonable expectation of successfully | 16:30:58 |
| 17 | combining or modifying a prior art product | 16:31:01 |
| 18 | with one or more patents or publications.  You | 16:31:03 |
| 19 | must base your decision on a specified | 16:31:06 |
| 20 | combination of prior art that includes a | 16:31:09 |
| 21 | physical device.  Aptiv asserts that US-98 and | 16:31:10 |
| 22 | Belkin are physical device prior art.  In the | 16:31:13 |
| 23 | context of obviousness, only a reasonable | 16:31:16 |
| 24 | expectation of success is required, not | 16:31:18 |

TRIAL - VOLUME 5

Page 402

| | | |
|---|---|---|
| 1 | conclusive proof or absolute predictability. | 16:31:21 |
| 2 | In determining obviousness or | 16:31:24 |
| 3 | non-obviousness of a subject matter of each of | 16:31:27 |
| 4 | the asserted claims, you should take the | 16:31:29 |
| 5 | following steps: | 16:31:32 |
| 6 | 1. Determine the scope and | 16:31:33 |
| 7 | content of the prior art; | 16:31:35 |
| 8 | 2. Identify the differences, if | 16:31:36 |
| 9 | any, between each asserted claim and the prior | 16:31:39 |
| 10 | art; | 16:31:41 |
| 11 | 3. Determine the level of | 16:31:41 |
| 12 | ordinary skill in the pertinent art at the | 16:31:44 |
| 13 | time the invention of the patent was made; and | 16:31:46 |
| 14 | 4. Consider objective factors of | 16:31:49 |
| 15 | non-obviousness. | 16:31:51 |
| 16 | Against this background, you will | 16:31:52 |
| 17 | then decide whether the subject matter of each | 16:31:55 |
| 18 | asserted claim would have been obvious or | 16:31:56 |
| 19 | nonobvious to a person of ordinary skill in | 16:31:59 |
| 20 | the pertinent art. | 16:32:01 |
| 21 | As I have just instructed you, in | 16:32:03 |
| 22 | deciding whether or not the claimed invention | 16:32:05 |
| 23 | is obvious to one of ordinary skill in the | 16:32:07 |
| 24 | art, you must first determine the scope -- | 16:32:09 |

TRIAL - VOLUME 5

Page 403

| | | |
|---|---|---|
| 1 | sorry.  Give me a second -- you must first | 16:32:15 |
| 2 | determine the scope and content of the prior | 16:32:20 |
| 3 | art.  This means that you must determine what | 16:32:22 |
| 4 | prior art is reasonably pertinent to a | 16:32:23 |
| 5 | particular problem with which the inventor was | 16:32:26 |
| 6 | facing.  Prior art is reasonably pertinent if | 16:32:28 |
| 7 | it is in the same field as the claimed | 16:32:31 |
| 8 | invention or is from another field that a | 16:32:33 |
| 9 | person of ordinary skill would look to in | 16:32:35 |
| 10 | trying to solve the problem the named inventor | 16:32:38 |
| 11 | was trying to solve. | 16:32:41 |
| 12 | You should analyze whether there | 16:32:42 |
| 13 | are any relevant differences between the prior | 16:32:44 |
| 14 | art taken as a whole and the asserted claims | 16:32:47 |
| 15 | of the '243 Patent in the view of a person of | 16:32:49 |
| 16 | ordinary skill in the art as of April 14th, | 16:32:52 |
| 17 | 2006.  Your analysis must determine the | 16:32:56 |
| 18 | impact, if any, of such differences on the | 16:32:59 |
| 19 | obviousness or nonobviousness of the invention | 16:33:00 |
| 20 | as a whole, and not merely some portion of it. | 16:33:04 |
| 21 | You should consider the prior art as a whole | 16:33:07 |
| 22 | and determine whether a reason existed at the | 16:33:09 |
| 23 | time of the invention that would have prompted | 16:33:11 |
| 24 | a person of ordinary skill in the art in the | 16:33:13 |

Page 404

| | | |
|---|---|---|
| 1 | relevant field to combine the known elements | 16:33:16 |
| 2 | in the way the claimed invention does. | 16:33:18 |
| 3 | The reason could come from the | 16:33:21 |
| 4 | prior art, the background knowledge of one of | 16:33:22 |
| 5 | ordinary skill in the art, the nature of the | 16:33:24 |
| 6 | problem to be solved, market demand, or common | 16:33:26 |
| 7 | sense.  You may also consider whether the | 16:33:30 |
| 8 | problem or need was known, the possible | 16:33:32 |
| 9 | approaches to solving the problem or | 16:33:35 |
| 10 | addressing the need were known and finite, and | 16:33:36 |
| 11 | whether the solution was predictable for the | 16:33:39 |
| 12 | use of a known option.  Accordingly, you may | 16:33:41 |
| 13 | evaluate whether there was some teaching, | 16:33:44 |
| 14 | suggestion or motivation to arrive at the | 16:33:45 |
| 15 | claimed invention before the time of the | 16:33:48 |
| 16 | claimed invention, although proof of this is | 16:33:50 |
| 17 | not a requirement to prove obviousness. | 16:33:52 |
| 18 | Teachings, suggestions, and motivations may be | 16:33:55 |
| 19 | found in written references including the | 16:33:57 |
| 20 | prior art itself.  However, teachings, | 16:33:59 |
| 21 | suggestions, and motivations may also be found | 16:34:02 |
| 22 | within the knowledge of a person with ordinary | 16:34:05 |
| 23 | skill in the art, including inferences and | 16:34:06 |
| 24 | creative steps that a person of ordinary skill | 16:34:09 |

| | | |
|---|---|---|
| 1 | in the art would enjoy.  Additionally, | 16:34:12 |
| 2 | teachings, suggestions, and motivations may be | 16:34:14 |
| 3 | found in the nature of the problem solved by | 16:34:16 |
| 4 | the claimed invention, or any need or problem | 16:34:18 |
| 5 | known in the field of the invention at the | 16:34:21 |
| 6 | time of and addressed by the invention. | 16:34:23 |
| 7 | In analyzing the relevance of the | 16:34:25 |
| 8 | differences between a claimed invention and | 16:34:28 |
| 9 | the prior art, you do not need to look for | 16:34:30 |
| 10 | precise teaching in the prior art directed to | 16:34:32 |
| 11 | the subject matter of the claimed invention. | 16:34:36 |
| 12 | On the other hand, if the combination of known | 16:34:37 |
| 13 | elements yielded unexpected or unpredictable | 16:34:39 |
| 14 | results, or if the prior art teaches away from | 16:34:43 |
| 15 | combining the known elements, then this | 16:34:46 |
| 16 | evidence would make it more likely that the | 16:34:47 |
| 17 | claim that successfully combined those | 16:34:50 |
| 18 | elements was not obvious. | 16:34:52 |
| 19 | I have already given you | 16:34:54 |
| 20 | instructions about how to determine the level | 16:34:55 |
| 21 | of ordinary skill at Instruction V.B., so | 16:34:59 |
| 22 | you'll find that in the document. | 16:35:01 |
| 23 | You must also take into account | 16:35:04 |
| 24 | any objective evidence, sometimes called | 16:35:06 |

```
 1    objective indicia or secondary considerations,        16:35:08
 2    that may shed light on whether the claims were        16:35:11
 3    obvious.  Objective indicia or secondary              16:35:13
 4    considerations must be considered before a            16:35:16
 5    conclusion on obviousness is reached.                 16:35:18
 6    Objective indicia or secondary considerations         16:35:20
 7    can include:                                          16:35:22
 8              (A)  Whether the invention was              16:35:24
 9    commercially successful at least in part as a         16:35:25
10    result of the merits of the claimed invention,        16:35:28
11    rather than the result of design needs or             16:35:31
12    market pressure, advertising, or similar              16:35:33
13    activities;                                           16:35:35
14              (B)  Whether the invention                  16:35:36
15    satisfied a long-felt need;                           16:35:38
16              (C)  Whether others copied the              16:35:40
17    invention;                                            16:35:43
18              (D)  Whether the invention                  16:35:43
19    achieved unexpected results compared to the           16:35:45
20    closest prior art; evidence of unexpected             16:35:48
21    results -- evidence of unexpected results may         16:35:51
22    be used to rebut a case of obviousness even if        16:35:53
23    that evidence was obtained after the patent's         16:35:56
24    filing or issue date; there is no requirement         16:35:59
```

| | | |
|---|---|---|
| 1 | that an invention's properties and advantages | 16:36:01 |
| 2 | were fully known before the patent application | 16:36:03 |
| 3 | was filed or that the patent application | 16:36:05 |
| 4 | contains all of the work done in studying the | 16:36:08 |
| 5 | invention. | 16:36:10 |
| 6 | (E)  Whether others tried and | 16:36:11 |
| 7 | failed to make the invention; | 16:36:13 |
| 8 | (F)  Whether others in the field | 16:36:15 |
| 9 | praised the invention; | 16:36:17 |
| 10 | (G)  Whether persons having | 16:36:18 |
| 11 | ordinary skill in the art of the invention | 16:36:21 |
| 12 | expressed surprise or disbelief regarding the | 16:36:22 |
| 13 | invention; | 16:36:25 |
| 14 | (H)  Whether the inventor | 16:36:26 |
| 15 | proceeded contrary to accepted wisdom in the | 16:36:28 |
| 16 | field; and | 16:36:31 |
| 17 | (I)  Whether others invented the | 16:36:31 |
| 18 | invention at roughly the same time. | 16:36:33 |
| 19 | Microchip has the burden to show | 16:36:35 |
| 20 | evidence of objective indicia or secondary | 16:36:38 |
| 21 | considerations and to show that there is a | 16:36:41 |
| 22 | connection, sometimes called a nexus, between | 16:36:43 |
| 23 | the evidence showing any of these factors and | 16:36:45 |
| 24 | the claimed invention, if you are to give | 16:36:47 |

Page 408

1    weight to this evidence in arriving at your          16:36:47

2    conclusion on the obviousness issue.  However,       16:36:53

3    Aptiv always maintains the ultimate burden to        16:36:54

4    show obviousness by clear and convincing             16:36:57

5    evidence, taking into account any objective          16:36:59

6    indicia that you may find.                           16:37:02

7              Aptiv contends that the asserted           16:37:04

8    claims of the '243 Patent are invalid for            16:37:07

9    failure to satisfy the written description           16:37:09

10   requirement.  Aptiv bears the burden of              16:37:11

11   establishing lack of written description by          16:37:13

12   clear and convincing evidence.                       16:37:15

13             A patent must contain a written            16:37:17

14   description of the product and method claimed        16:37:19

15   in the patent.  This requirement helps ensure        16:37:21

16   that the patent applicant actually invented          16:37:23

17   the claimed subject matter.  To satisfy the          16:37:26

18   written description requirement, the patent          16:37:29

19   specification must describe each and every           16:37:31

20   limitation of a patent claim, in sufficient          16:37:33

21   detail, although the exact words found in the        16:37:36

22   claim need not be used.  When determining            16:37:38

23   whether the specification discloses the              16:37:40

24   invention, the claim must be viewed as a             16:37:42

Page 409

| | | |
|---|---|---|
| 1 | whole.  If a patent claim lacks adequate | 16:37:44 |
| 2 | written description, it is invalid. | 16:37:46 |
| 3 | The written description | 16:37:48 |
| 4 | requirement is satisfied if persons of | 16:37:50 |
| 5 | ordinary skill in the field of the invention | 16:37:52 |
| 6 | would recognize, from reading the patent | 16:37:54 |
| 7 | specification, that the inventor possessed the | 16:37:57 |
| 8 | subject matter finally claimed in the patent. | 16:37:59 |
| 9 | The written description requirement is | 16:38:03 |
| 10 | satisfied if the specification shows that the | 16:38:06 |
| 11 | inventor or inventors possessed the invention | 16:38:08 |
| 12 | as of the effective filing date of the claimed | 16:38:11 |
| 13 | invention, even though the claims themselves | 16:38:12 |
| 14 | may have been changed or new claims added | 16:38:14 |
| 15 | since that time. | 16:38:16 |
| 16 | It is unnecessary to spell out | 16:38:16 |
| 17 | every detail of the invention in the | 16:38:19 |
| 18 | specification, and specific examples are not | 16:38:21 |
| 19 | required; only enough must be included in the | 16:38:24 |
| 20 | specification to convince persons of ordinary | 16:38:26 |
| 21 | skill in the art that the inventor possessed | 16:38:28 |
| 22 | the full scope of the invention.  The | 16:38:31 |
| 23 | specification does not have to describe the | 16:38:34 |
| 24 | accused product, nor must it describe every | 16:38:35 |

TRIAL - VOLUME 5

Page 410

| | | |
|---|---|---|
| 1 | conceivable or possible future embodiment. | 16:38:38 |
| 2 | However, a mere wish or plan for obtaining the | 16:38:41 |
| 3 | claimed invention is not adequate written | 16:38:44 |
| 4 | description.  In evaluating whether the | 16:38:46 |
| 5 | specification has provided an adequate written | 16:38:48 |
| 6 | description, you must determine whether a | 16:38:50 |
| 7 | person of ordinary skill in the art would have | 16:38:52 |
| 8 | understood that Mr. Bohm and Mr. Ghosh, the | 16:38:54 |
| 9 | inventors of the '243 Patent, possessed the | 16:38:57 |
| 10 | full scope of the invention as of April 14th, | 16:39:00 |
| 11 | 2006, which is the date that they filed the | 16:39:03 |
| 12 | application that resulted in the '243 Patent. | 16:39:05 |
| 13 | To make that determination, you | 16:39:08 |
| 14 | may consider such factors as: | 16:39:10 |
| 15 | 1.  The nature and scope of the | 16:39:12 |
| 16 | patent claim; | 16:39:13 |
| 17 | 2.  The complexity, | 16:39:14 |
| 18 | predictability, and maturity of the technology | 16:39:16 |
| 19 | at issue; | 16:39:19 |
| 20 | 3.  The existing knowledge in the | 16:39:20 |
| 21 | relevant field; and | 16:39:22 |
| 22 | 4.  The scope and content of the | 16:39:23 |
| 23 | prior art. | 16:39:25 |
| 24 | The issue of written description | 16:39:26 |

|    |                                                    |          |
|----|----------------------------------------------------|----------|
| 1  | is decided on a claim-by-claim basis, not as       | 16:39:28 |
| 2  | to the entire patent or groups of claim.           | 16:39:31 |
| 3  | Aptiv contends that the asserted                   | 16:39:35 |
| 4  | claims of the '243 Patent are invalid for lack     | 16:39:38 |
| 5  | of enablement.  Aptiv bears the burden of          | 16:39:41 |
| 6  | establishing by clear and convincing evidence      | 16:39:43 |
| 7  | that the specification fails to satisfy the        | 16:39:45 |
| 8  | enablement requirement.                            | 16:39:48 |
| 9  | A patent must disclose sufficient                  | 16:39:49 |
| 10 | information to enable or teach persons of          | 16:39:52 |
| 11 | ordinary skill in the field of the invention       | 16:39:54 |
| 12 | as of the effective filing date of the claimed     | 16:39:56 |
| 13 | invention to make and use the full scope of        | 16:39:59 |
| 14 | the claimed invention without undue                | 16:40:01 |
| 15 | experimentation.  This requirement is known as     | 16:40:02 |
| 16 | the enablement requirement.  If a patent claim     | 16:40:06 |
| 17 | is not enabled, it is invalid.                     | 16:40:08 |
| 18 | In considering whether a patent                    | 16:40:11 |
| 19 | complies with the enablement requirement, you      | 16:40:12 |
| 20 | must keep in mind that patents are written for     | 16:40:14 |
| 21 | persons of ordinary skill in the field of the      | 16:40:17 |
| 22 | invention.  Thus, a patent need not expressly      | 16:40:19 |
| 23 | state information that persons of ordinary         | 16:40:22 |
| 24 | skill would be likely to know or could obtain.     | 16:40:24 |

Page 412

| | | |
|---|---|---|
| 1 | The fact that some experimentation | 16:40:27 |
| 2 | may be required for a person of ordinary skill | 16:40:29 |
| 3 | in the field of the invention to practice the | 16:40:30 |
| 4 | claimed invention does not mean that a patent | 16:40:33 |
| 5 | does not meet the enablement requirement.  The | 16:40:34 |
| 6 | specification does not have to describe or | 16:40:37 |
| 7 | enable the accused product. | 16:40:39 |
| 8 | Factors that you may consider in | 16:40:40 |
| 9 | determining whether persons of ordinary skill | 16:40:43 |
| 10 | in the field of the invention would require | 16:40:45 |
| 11 | undue experimentation to make and use the full | 16:40:47 |
| 12 | scope of the claimed invention include: | 16:40:51 |
| 13 | 1.  The quantity of | 16:40:53 |
| 14 | experimentation necessary and whether that | 16:40:54 |
| 15 | experimentation involves only known or | 16:40:56 |
| 16 | commonly used techniques; | 16:40:58 |
| 17 | 2.  The amount of direction or | 16:41:00 |
| 18 | guidance disclosed in the patent; | 16:41:03 |
| 19 | 3.  The presence or absence of | 16:41:05 |
| 20 | working examples in the patent; | 16:41:07 |
| 21 | 4.  The nature of the invention; | 16:41:08 |
| 22 | 5.  The state of the prior art; | 16:41:11 |
| 23 | 6.  The relative skill of those in | 16:41:14 |
| 24 | the art; | 16:41:16 |

Page 413

```
 1              7.  The predictability of the art;      16:41:16

 2    and.                                             16:41:16

 3              8.  The breadth of the claims.          16:41:20

 4          I am now going to instruct you on          16:41:22

 5    damages.  By instructing you on damages, I am     16:41:26

 6    not suggesting which party should win this        16:41:28

 7    case on any issue, and you should not read        16:41:30

 8    into my instruction the suggestion that           16:41:32

 9    damages are appropriate or inappropriate in       16:41:34

10    the case.  If you find that each of the           16:41:37

11    asserted claims is either invalid or not          16:41:39

12    infringed, then you need not address damages      16:41:41

13    in your deliberations.  But if you find that      16:41:43

14    Aptiv infringed any valid claim of the '243       16:41:45

15    Patent, you must then consider what amount of     16:41:48

16    damages to award Microchip.                       16:41:50

17          The damages you award must be               16:41:52

18    adequate to compensate Microchip for the          16:41:54

19    infringement.  Damages are not meant to punish    16:41:56

20    an infringer.  Your damages award, if you         16:41:59

21    reach this issue, should put Microchip in         16:42:01

22    approximately the same financial position that    16:42:04

23    it would have been in had the infringement not    16:42:06

24    occurred.                                         16:42:08
```

TRIAL - VOLUME 5

Page 414

| | | |
|---|---|---|
| 1 | Microchip has the burden to | 16:42:09 |
| 2 | establish the amount of its damages by a | 16:42:11 |
| 3 | preponderance of the evidence.  In other | 16:42:12 |
| 4 | words, you should award only those damages | 16:42:14 |
| 5 | that Microchip establishes that it more likely | 16:42:16 |
| 6 | than not suffered.  Microchip need not prove | 16:42:19 |
| 7 | the amount of damages with mathematical | 16:42:22 |
| 8 | precision.  You may not award damages that are | 16:42:25 |
| 9 | speculative, damages that are possible but not | 16:42:27 |
| 10 | probable, or damages that are based on | 16:42:30 |
| 11 | guesswork. | 16:42:32 |
| 12 | There are two different types of | 16:42:33 |
| 13 | damages that Microchip may be entitled to | 16:42:35 |
| 14 | recover.  The first is lost profits.  The | 16:42:37 |
| 15 | second is a reasonable royalty. | 16:42:39 |
| 16 | Lost profits consist of any actual | 16:42:42 |
| 17 | reduction in business profits Microchip | 16:42:45 |
| 18 | suffered as a result of Aptiv's infringement, | 16:42:48 |
| 19 | while a reasonable royalty is defined as the | 16:42:50 |
| 20 | money amount Microchip and Aptiv would have | 16:42:53 |
| 21 | hypothetically agreed upon as a fee for | 16:42:55 |
| 22 | Aptiv's use of the invention in March 2014. | 16:42:57 |
| 23 | You may only award one type of damages for | 16:43:01 |
| 24 | each infringing unit that Aptiv sold, but you | 16:43:03 |

Page 415

1    may award different types of damages for                16:43:06

2    different units.                                         16:43:08

3            In this case, Microchip seeks lost              16:43:09

4    profits for Aptiv's sales in the third quarter           16:43:12

5    of 2017 to the present.  Microchip seeks a              16:43:15

6    reasonable royalty for all infringing units              16:43:18

7    that you find do not qualify for lost profit             16:43:20

8    damages, including Aptiv's sales prior to the            16:43:23

9    third quarter of 2017.  Aptiv contends it does          16:43:25

10   not infringe any valid claim of the '243                16:43:29

11   Patent and therefore does not owe any damages.          16:43:32

12   However, if you find that Aptiv has infringed            16:43:36

13   any valid asserted claim of the '243 Patent,            16:43:39

14   it contends a reasonable royalty is the proper           16:43:42

15   measure of damages.                                      16:43:44

16           I will now give you more detailed               16:43:46

17   instructions regarding damages, including lost           16:43:47

18   profits and reasonable royalties.                        16:43:50

19           Microchip may recover damages                   16:43:51

20   starting in the second quarter of 2015, when            16:43:54

21   Aptiv began selling the dual role hub with the           16:43:57

22   Boston chip that Microchip claims infringes on           16:43:59

23   the '243 Patent.                                         16:44:01

24           To prove lost profits, Microchip               16:44:02

| | | |
|---|---|---|
| 1 | must show a causal relationship between | 16:44:06 |
| 2 | Aptiv's infringement and Microchip's loss of | 16:44:08 |
| 3 | profits.  Microchip must show that, but for | 16:44:11 |
| 4 | Aptiv's infringement, Microchip would have | 16:44:13 |
| 5 | made additional profits through the sale of | 16:44:16 |
| 6 | all or a portion of the microchips included in | 16:44:18 |
| 7 | the dual role hub that Aptiv sold.  Microchip | 16:44:21 |
| 8 | is only seeking lost profits for sales | 16:44:23 |
| 9 | beginning in July 2017, shortly after | 16:44:25 |
| 10 | Microchip began selling the Sandia chip. | 16:44:28 |
| 11 | Microchip must prove its | 16:44:31 |
| 12 | entitlement to and the amount of lost profits | 16:44:32 |
| 13 | by a preponderance of the evidence.  Part of | 16:44:36 |
| 14 | your job is to determine which chip the | 16:44:37 |
| 15 | customers that purchased dual role hubs from | 16:44:41 |
| 16 | Aptiv would have selected if the alleged | 16:44:44 |
| 17 | infringement had not occurred.  It is | 16:44:45 |
| 18 | important to remember that the profits I am | 16:44:47 |
| 19 | referencing are the profits that Microchip | 16:44:48 |
| 20 | allegedly lost, not the profits, if any, that | 16:44:50 |
| 21 | Aptiv made on the allegedly infringing sale. | 16:44:53 |
| 22 | Microchip has proven its | 16:44:56 |
| 23 | entitlement to, and the amount of, lost | 16:44:57 |
| 24 | profits if you find that, with respect to | 16:45:00 |

Page 417

| | | |
|---|---|---|
| 1 | sales of Aptiv's dual role hub, Microchip has | 16:45:02 |
| 2 | proven each of the following factors by the | 16:45:04 |
| 3 | more likely than not standard; that is, by the | 16:45:06 |
| 4 | preponderance of the evidence: | 16:45:10 |
| 5 | 1.  There was a demand for the | 16:45:10 |
| 6 | patented invention; | 16:45:14 |
| 7 | 2.  The absence of acceptable | 16:45:15 |
| 8 | non-infringing substitutes; | 16:45:17 |
| 9 | 3.  That Microchip had the | 16:45:18 |
| 10 | manufacturing and marketing ability to make | 16:45:21 |
| 11 | the sales for which Microchip seeks an award | 16:45:23 |
| 12 | of lost profits, in other words, that | 16:45:25 |
| 13 | Microchip was capable of satisfying the | 16:45:27 |
| 14 | demand; and | 16:45:29 |
| 15 | 4.  The amount of profit that | 16:45:30 |
| 16 | Microchip itself would have made if Aptiv had | 16:45:32 |
| 17 | not infringed its '243 Patent. | 16:45:34 |
| 18 | If Microchip proves these four | 16:45:36 |
| 19 | factors by a preponderance of the evidence, | 16:45:39 |
| 20 | then the burden shifts to Aptiv to show that | 16:45:41 |
| 21 | Microchip would not have made some or all of | 16:45:43 |
| 22 | the diverted sales but for the infringement. | 16:45:46 |
| 23 | Microchip contends that there were | 16:45:48 |
| 24 | only two suppliers in the relevant market, | 16:45:49 |

|    |                                                          |          |
|----|----------------------------------------------------------|----------|
| 1  | Microchip and Aptiv.  Aptiv disagrees.  If               | 16:45:51 |
| 2  | Microchip proves by a preponderance of the               | 16:45:55 |
| 3  | evidence that there were only two suppliers in           | 16:45:57 |
| 4  | the market, then Microchip has proven the                | 16:45:59 |
| 5  | first two factors.                                       | 16:46:01 |
| 6  | I will now explain each of these                         | 16:46:03 |
| 7  | factors.                                                 | 16:46:04 |
| 8  | The first factor asks whether                            | 16:46:05 |
| 9  | there was demand for the patented product in             | 16:46:07 |
| 10 | the relevant market.  Microchip can prove                | 16:46:10 |
| 11 | demand for the patented invention by showing             | 16:46:12 |
| 12 | significant sales of Microchip's Sandia                  | 16:46:15 |
| 13 | product or significant sales of Aptiv's                  | 16:46:17 |
| 14 | infringing products.                                     | 16:46:21 |
| 15 | The second factor asks whether                           | 16:46:22 |
| 16 | there were non-infringing, acceptable                    | 16:46:24 |
| 17 | substitutes for the patented products in the             | 16:46:26 |
| 18 | marketplace and the impact of such substitute            | 16:46:29 |
| 19 | products on the marketplace absent the                   | 16:46:32 |
| 20 | presence of Aptiv's Boston chip.  If the                 | 16:46:34 |
| 21 | realities of the marketplace are that                    | 16:46:36 |
| 22 | competitors other than Microchip would likely            | 16:46:38 |
| 23 | have captured some or all of the volume of               | 16:46:41 |
| 24 | chips that Aptiv included in its dual role               | 16:46:43 |

Page 419

```
 1   hub, even despite a difference in the            16:46:46

 2   products, then Microchip is only entitled to     16:46:49

 3   lost profits on those sales that it would have   16:46:51

 4   captured, not those sales that would have been   16:46:53

 5   captured by others.                              16:46:54

 6            To be an acceptable substitute,         16:46:56

 7   the products must have had the advantages of     16:46:57

 8   the patented invention that important to the     16:47:00

 9   actual buyers of the infringing products, not    16:47:03

10   the public in general.  If purchasers of an      16:47:05

11   alleged infringer's product were motivated to    16:47:05

12   buy the infringing product because of features   16:47:05

13   from the patented invention, however, then       16:47:14

14   some other -- then some other, alternative       16:47:16

15   product is not an acceptable substitute.  The    16:47:19

16   use of the acceptable substitute also must not   16:47:22

17   infringe the patent.  The acceptable             16:47:25

18   substitutes, in addition, must have been         16:47:28

19   available for Aptiv to purchase during the       16:47:30

20   damages period.                                  16:47:33

21            The acceptable substitute need not      16:47:33

22   have actually been sold at that time.  But, if   16:47:35

23   the acceptable substitute was not sold during    16:47:37

24   the damages period, then Aptiv must show by a    16:47:39
```

TRIAL - VOLUME 5

Page 420

1    preponderance of the evidence that, during the          16:47:42

2    damages period, a competitor or Aptiv had all           16:47:44

3    the necessary equipment, materials, know-how,           16:47:46

4    and experience to design and manufacture the            16:47:49

5    acceptable, non-infringing substitute.  If you          16:47:52

6    determine that some of Aptiv's customers would          16:47:55

7    just as likely have purchased a non-infringing          16:47:58

8    acceptable product, then Microchip has not              16:48:01

9    shown that it lost those sales but for Aptiv's          16:48:05

10   infringement.                                           16:48:08

11         The third factor asks whether                     16:48:08

12   Microchip, by itself, or through entities with

13   which it partners, had the manufacturing and

14   marketing ability to actually make the sales

15   it allegedly lost due to Aptiv's infringement.

16   Microchip must prove that it could have

17   supplied the chips needed to make the sales

18   Microchip said it lost.  Microchip must also

19   prove that it is more likely than not it had

20   the ability to market and sell the additional

21   chips.

22         Microchip may calculate the amount

23   of its lost profits by calculating its lost

24   sales starting in July 2017 and subtracting

1      from that amount any additional costs or

2      expenses that Microchip would have had to pay

3      to make the lost sales.  The amount of lost

4      profits cannot be speculative, but it need not

5      be proven with unerring certainty.

6              If Microchip satisfies the four

7      lost profits elements, the burden shifts to

8      Aptiv to show that Microchip reasonably would

9      not have made some or all of the sales but for

10     the infringement.  For example, Aptiv may

11     rebut the presumption by showing that it sold

12     another available, acceptable, non-infringing

13     substitute in the relevant market.  The

14     ultimate burden of persuasion remains with

15     Microchip.

16              A reasonable royalty is the                16:49:19

17     royalty that would have resulted from a          16:49:20

18     hypothetical negotiation between the patent      16:49:22

19     owner and the alleged infringer just before      16:49:25

20     the infringement began.  The parties in this    16:49:27

21     case agree the hypothetical negotiation date

22     is March 2014.  In considering this

23     hypothetical negotiation, you should focus on

24     what the expectations of the patent holder and

1    the infringer would have been if they had

2    entered into an agreement at that time, and if

3    they had acted reasonably in the negotiations.

4    You should assume that both parties to the

5    hypothetical negotiation believed the patent

6    to be valid and infringed and that both

7    parties are willing to enter into a license.

8    You should also assume that the patent holder

9    and the infringer would have acted reasonably

10   and would have entered into a license

11   agreement.

12              Having that in mind, you may                16:50:08

13   consider any relevant fact in determining the        16:50:10

14   reasonable royalty for the use of a patented         16:50:12

15   invention, including the opinion testimony of        16:50:15

16   experts.  The reasonable royalty you determine       16:50:16

17   must be a royalty that would have resulted           16:50:19

18   from the hypothetical negotiation, and not           16:50:21

19   simply a royalty either party would have             16:50:23

20   preferred.                                           16:50:26

21              A reasonable royalty is typically         16:50:26

22   made up of (1) a base and (2) a rate that is         16:50:28

23   applied to that base.  The ultimate                  16:50:32

24   combination of royalty base and royalty rate         16:50:34

TRIAL - VOLUME 5

Page 423

1    must reflect the value attributable to the          16:50:37

2    infringing features of the product, and no          16:50:40

3    more.                                                16:50:41

4              In determining the reasonable

5    royalty, you should consider all the facts

6    known or available to the parties at the time

7    the infringement began.  Some of the kinds of

8    factors that you may consider in making your

9    determination are:

10             1.  The royalties received by             16:50:54

11   Microchip for the licensing of the '243             16:50:56

12   Patent, proving or tending to prove an              16:51:00

13   established royalty;                                16:51:03

14             2.  The rates that Aptiv paid for         16:51:03

15   the use of other patents comparable to the          16:51:05

16   '243 Patent;                                        16:51:10

17             3.  The nature and scope of the           16:51:10

18   license, as exclusive or non-exclusive; or as       16:51:12

19   restricted or non-restricted in terms of            16:51:15

20   territory or with respect to whom the               16:51:18

21   manufactured product may be sold;                   16:51:20

22             4.  Microchip's established policy        16:51:21

23   and marketing program to maintain its right to      16:51:24

24   exclude others from using the patented              16:51:26

Page 424

1    invention by not licensing others to use the          16:51:29

2    invention or by granting licenses under               16:51:31

3    special conditions designed to preserve that          16:51:33

4    exclusivity;                                           16:51:36

5         5.   The commercial relationship                 16:51:37

6    between Microchip and Aptiv at the time of the        16:51:39

7    hypothetical negotiation, such as whether they        16:51:41

8    are competitors in the same territory in the          16:51:44

9    same line of business, or whether they are            16:51:46

10   inventor and promoter;                                16:51:49

11        6.   The effect of selling the                   16:51:50

12   patented product in promoting sales of other          16:51:53

13   products of Aptiv, the existing value of the          16:51:56

14   invention to Microchip as a generator of sales        16:51:59

15   of its non-patented items, and the extent of          16:52:02

16   such derivative or convoyed sales;                    16:52:05

17        7.   The remaining life of the '243              16:52:07

18   Patent and terms of the license;                      16:52:10

19        8.   The commercial success,                     16:52:11

20   current popularity, and established

21   profitability of the product made under the

22   '243 Patent;

23        9.   The utility and advantages of

24   the patented property over the old modes or

Page 425

```
 1   devices, if any, that had been used for
 2   working out similar results;
 3            10.   The nature of the patented
 4   invention and the benefits to those who have
 5   used the invention;
 6            11.   The extent to which Aptiv has
 7   made use of the invention; and any evidence
 8   probative of the value of that use;
 9            12.   The portion of the profit or
10   of the selling price that may be customary in
11   the particular business or in comparable
12   businesses to allow for the use of the
13   invention or analogous inventions;
14            13.   The portion of the realizable
15   profit that should be credited to the
16   invention as distinguished from non-patented
17   elements, the manufacturing process, business
18   risks or significant features or improvements
19   that Aptiv added;
20            14.   The opinion testimony of
21   qualified experts;
22            And 15.   The amount that a
23   licensor, such as Microchip, and a licensee,
24   such as Aptiv, would have agreed upon at the
```

1   time the infringement began if both had been

2   reasonably and voluntarily trying to reach an

3   agreement; that is, the amount which a prudent

4   licensee who desired as a business proposition

5   to obtain a license to manufacture and sell a

6   particular product embodying the patented

7   invention would have been willing pay as a

8   royalty and which amount would have been

9   acceptable by a prudent patentee who was

10  willing to grant a license.

11          No one factor is dispositive, and          16:53:44

12  you can and should consider the evidence that       16:53:46

13  has been presented to you in this case on each      16:53:49

14  of these factors.  You may also consider any        16:53:50

15  other factors which in your mind would have         16:53:52

16  increased or decreased the royalty Aptiv would      16:53:54

17  have been willing to pay and Microchip would        16:53:57

18  have been willing to accept, acting as              16:54:00

19  normally prudent business people.                   16:54:01

20          The relevant date for the                   16:54:03

21  hypothetical reasonable royalty negotiation is      16:54:06

22  at the time the infringement began.                 16:54:08

23          The amount you find as damages              16:54:10

24  must be based on the value attributable to the      16:54:12

|     |                                                    |          |
|-----|----------------------------------------------------|----------|
| 1   | patented invention, as distinct from               | 16:54:16 |
| 2   | unpatented features of the accused product or      | 16:54:17 |
| 3   | other factors such as marketing or                 | 16:54:21 |
| 4   | advertising, or Aptiv's size or market             | 16:54:22 |
| 5   | position.  A royalty compensating the              | 16:54:24 |
| 6   | patentholder for damages must reflect the          | 16:54:26 |
| 7   | value attributable to the infringing features      | 16:54:29 |
| 8   | of the product, and no more.  The process of       | 16:54:32 |
| 9   | separating the value of the patented invention     | 16:54:34 |
| 10  | from the value of all other features is called     | 16:54:36 |
| 11  | apportionment.  When the accused infringing        | 16:54:38 |
| 12  | products have both patented and unpatented         | 16:54:41 |
| 13  | features, your award must be apportioned so it     | 16:54:44 |
| 14  | is based only on the value the patented            | 16:54:47 |
| 15  | invention contributed to the accused product       | 16:54:51 |
| 16  | and no more.                                       | 16:54:53 |
| 17  | All right.  So those are my                        | 16:54:54 |
| 18  | instructions on the law.  I will, after            | 16:54:56 |
| 19  | closing arguments tomorrow, give you a few         | 16:54:58 |
| 20  | additional instructions on the process that        | 16:55:01 |
| 21  | you should use when you go back to the jury        | 16:55:03 |
| 22  | room to deliberate.  Okay?  But that's it for      | 16:55:05 |
| 23  | tonight.  I know that's a lot to process.          | 16:55:07 |
| 24  | I am just going to conclude                        | 16:55:10 |

Page 428

1    tonight with my customary caution, but with a          16:55:14

2    little bit sort of an extra emphasis.  We are          16:55:17

3    finished with the evidence in the case.  We            16:55:23

4    are not finished with the case, okay?                  16:55:25

5          You are going to hear closing                    16:55:28

6    arguments tomorrow from the lawyers.  Those            16:55:29

7    closing arguments are going to contextualize           16:55:31

8    the evidence that you have heard in light of           16:55:35

9    the instructions that I have given you, but            16:55:38

10   also just in light of the way that the parties         16:55:40

11   want to present the case to you.  Okay?                16:55:42

12         And so they may make you think                   16:55:44

13   about the evidence in a way that's different           16:55:46

14   than the way that you are thinking about it            16:55:48

15   now, and in particular, some of what has               16:55:51

16   happened here is just the lawyers making sure          16:55:54

17   they get the evidence into the record that             16:55:57

18   they need in order to tell you what they think         16:55:58

19   it shows.                                              16:56:00

20         So the reason I am telling you all               16:56:02

21   that is because even though the evidence is            16:56:04

22   done, it is not yet time for you to start              16:56:06

23   deliberating, it is not yet time for you to            16:56:08

24   start talking to each other about the evidence         16:56:10

| | | |
|---|---|---|
| 1 | or what you think it shows.  Okay? | 16:56:12 |
| 2 | We are getting really close to | 16:56:14 |
| 3 | that point.  I think it will be by lunchtime | 16:56:17 |
| 4 | tomorrow that you will be able to go back and | 16:56:19 |
| 5 | start doing that, but for now, my same | 16:56:21 |
| 6 | cautions apply, which is do not start talking | 16:56:24 |
| 7 | about the evidence with each other, do not go | 16:56:26 |
| 8 | home and talk about the evidence with anyone | 16:56:29 |
| 9 | else; not just the evidence, the case as a | 16:56:32 |
| 10 | whole.  Don't talk about the case.  Even the | 16:56:34 |
| 11 | slightest comment can provoke a response and | 16:56:36 |
| 12 | that's something we don't want to do, right? | 16:56:41 |
| 13 | You want to just focus on the evidence | 16:56:42 |
| 14 | presented in the courtroom. | 16:56:46 |
| 15 | And last, again, I will tell you | 16:56:47 |
| 16 | again, Google is not your friend.  Do not go | 16:56:48 |
| 17 | looking things up about this case, whether on | 16:56:51 |
| 18 | Google or social media or anything else. | 16:56:53 |
| 19 | Stick to what you have heard in the courtroom | 16:56:55 |
| 20 | for now and save your curiosity for later. | 16:56:57 |
| 21 | Okay? | 16:57:01 |
| 22 | So with all of that, we will pick | 16:57:01 |
| 23 | up at 9 o'clock tomorrow with closing | 16:57:04 |
| 24 | arguments, and hopefully you'll have the case | 16:57:07 |

TRIAL - VOLUME 5

Page 430

```
 1    by lunchtime tomorrow.                         16:57:09

 2              Thanks, everybody, for your          16:57:11

 3    attention.  I appreciate it.                   16:57:13

 4              (Whereupon, the jury was excused     16:57:14

 5    from the courtroom.)                           16:57:16

 6              THE COURT:  All right.  Anything      16:57:32

 7    else we need to do tonight?                    16:57:34

 8              MR. SAULSBURY:  I don't believe,     16:57:35

 9    Your Honor.                                    16:57:36

10              MR. GRAY:  Nothing from us.          16:57:37

11              THE COURT:  All right.               16:57:38

12              So I know there were a couple of     16:57:38

13    typos as I read through that.  We'll clean     16:57:40

14    those up in the written charge and then we'll  16:57:42

15    get written copies for the jury, get correct   16:57:45

16    copies for all of you as well.  Okay?          16:57:48

17              All right.  I'll see everyone at     16:57:50

18    8:30 tomorrow.                                 16:57:52

19              MR. SAULSBURY:  Mr. Rovner is        16:57:54

20    actually reminding me, is there a copy of the  16:57:56

21    final verdict form?                            16:57:59

22              THE COURT:  Yeah, it hasn't          16:58:00

23    changed because nobody had any objections to   16:58:01

24    it.                                            16:58:03
```

TRIAL - VOLUME 5

Page 431

1          MR. SAULSBURY:  Thank you, Your          16:58:03

2     Honor.                                        16:58:03

3          THE COURT:  So I don't think it's        16:58:05

4     changed.  We'll give it one last look.        16:58:06

5          MR. ROVNER:  That verdict form           16:58:09

6     will go to the jury tomorrow?                 16:58:11

7          THE COURT:  That's going to go to        16:58:12

8     the jury, and I am going to look at it once   16:58:13

9     more tonight.  If I have any changes, I'll    16:58:15

10    give it to you in the morning and flag any    16:58:17

11    changes there might be, but I don't think     16:58:20

12    there will be any.  I just -- you know, I want 16:58:21

13    to double-check because I don't have a perfect 16:58:23

14    memory.                                       16:58:27

15         MR. SAULSBURY:  Thank you, Your          16:58:27

16    Honor.                                        16:58:29

17         THE COURT:  All right.  Everybody        16:58:29

18    have a good night.  See you tomorrow.         16:58:30

19         (Whereupon, the Court adjourned          16:58:32

20    proceedings at 5 o'clock p.m.)                16:58:36

21

22

23

24

Page 432

```
 1              C E R T I F I C A T E

 2

 3         I do hereby certify that I am a
    Notary Public in good standing, that the
 4  aforesaid testimony was taken before me,
    pursuant to notice, at the time and place
 5  indicated; that said witnesses were duly sworn
    to tell the truth, the whole truth, and
 6  nothing but the truth; that the testimony of
    said witnesses was correctly recorded in
 7  machine shorthand by me and thereafter
    transcribed under my supervision with
 8  computer-aided transcription; that the
    transcript is a true and correct record of the
 9  testimony given by the witnesses; and that I
    am neither of counsel nor kin to any party in
10  said action, nor interested in the outcome
    thereof.

11
                 WITNESS by hand and official seal
12  this 12th day of April, 2022.

13                                      Notary Public

14

15

16

17

18  Job No. 5162171

19

20

21

22

23

24
```

| & |
|---|
| **&**   2:9 3:3 269:3 |

| **0** |
|---|
| **0.2**   184:11 |
| **02**   178:15 |
| **0319**   256:24 |
| 257:12 |
| **05**   165:13 |
| **08**   177:12 |

| **1** |
|---|
| **1**   39:16 48:18 |
| 51:23 106:2 |
| 140:17 148:19 |
| 162:5 174:8 191:8 |
| 223:17 240:23,24 |
| 290:9 311:4,6 |
| 312:6 317:1,4,17 |
| 317:18,19 318:20 |
| 319:1,7,7 320:12 |
| 320:16,17,18 |
| 328:9,13 329:3,15 |
| 330:4,21 331:1 |
| 341:2 342:11 |
| 361:22 364:22 |
| 368:21 369:1,6 |
| 375:13 378:23 |
| 383:1 395:10 |
| 398:3 402:6 |
| 410:15 412:13 |
| 417:5 422:22 |
| 423:10 |
| **1.0**   279:22 |
| **1.1**   147:21 279:22 |
| **1.2**   279:20 281:13 |
| **1.2.**   279:13 280:23 |
| **10**   221:23 307:4,21 |
| 308:1 313:2 |
| 369:23 370:6,23 |
| 372:2 425:3 |

**100**   30:13 178:6
**102**   5:21 296:3,5
296:15
**103**   5:15 182:5,7
182:14 183:14,15
184:15 186:24
194:19
**1052**   125:15,20,23
**108**   103:21,24
**10:55**   137:14
**11**   120:19 137:6,12
176:13 179:14
213:5,9,10 241:5
244:1,5,12 253:23
255:9 307:9,11,15
307:16 425:6
**1105**   2:5
**1149**   106:18,20
107:3
**116**   5:17 196:12,14
196:19 197:18
**1183**   112:18
**1187**   115:12
**1188**   118:19
**12**   1:15 35:2
122:13 179:2,15
179:15,16 203:15
212:8 214:3 241:9
244:1,10,10 255:5
258:9 307:12
312:17 313:2
425:9
**1203**   119:13
**124**   101:19
**1242**   110:20
**125**   104:10,16
**1293**   51:23 290:8
290:15
**12:37**   226:10
**12th**   2:5 432:12

**13**   8:14 10:13 12:1
173:1 241:19
245:1 312:18
425:14
**1313**   3:4
**139**   5:18 199:1,2
199:11,17
**14**   8:14,15 9:13,18
10:3,16 11:1 12:2
175:12 213:10
218:19 241:11
244:1,2 255:17
355:1,18 425:20
**143**   5:19 201:16,19
201:20 202:4
**14th**   399:15
400:14 403:16
410:10
**15**   8:14 10:16 12:2
124:24 211:9
214:23 219:1
227:23 244:12
425:22
**150**   45:4,6
**1516**   213:5,8
**152**   5:12
**153**   5:13
**156**   162:4
**15:16:26**   214:5
**16**   307:18 312:18
313:2
**1650**   2:13
**17**   125:12,15 212:9
214:3 313:2
**17-1194**   1:4
**18**   126:6,8
**180**   69:11
**1800**   1:24
**1801**   1:24
**182**   5:15,15,16

**183**   5:16
**184**   5:5 42:4,5,7,16
**19**   5:9 14:16 68:17
68:18,22 69:6
126:22 166:9
171:19 214:5
218:19 236:19,23
237:3,5,15,17,24
238:22 239:19
240:3 241:18
**19103**   1:24
**196**   5:17
**197**   5:17
**19801**   1:18 2:6
**1981**   300:24
**19899**   3:5
**199**   5:18,18
**1998**   299:7
**1:08**   226:12
**1b**   288:17,18,19
**1st**   17:9

| **2** |
|---|
| **2**   44:21 188:21 |
| 192:21 197:15,23 |
| 210:10 215:19 |
| 216:7,12 240:23 |
| 240:24 253:2,10 |
| 313:2 375:17 |
| 379:1 383:4 |
| 395:13 398:8 |
| 402:8 410:17 |
| 412:17 417:7 |
| 422:22 423:14 |
| **2.23**   18:12 |
| **20**   5:20 14:19 |
| 127:22 270:3 |
| 280:6,7,14,19 |
| 324:19 |
| **200,000**   96:6 |
| **2002**   59:9 285:5 |

**2003**  51:4 118:24
**2004**  52:5,6,13
61:15
**2005**  61:15 165:12
165:19 265:20,23
266:3,6 279:10
281:23 346:17
**2006**  38:7,10 52:12
52:14 55:9 56:11
57:13 59:5 61:5
61:14 63:6,20
66:10,16 67:4,11
68:3 70:3,13,20
93:14,23 178:7
179:10,24 180:23
256:8 272:1
299:14 349:22
357:6,21 358:6
399:5,15 400:15
403:17 410:11
**2008**  173:9 175:8
175:22,22 176:10
177:22 178:1,3,7,9
178:12,17 179:9
179:12,20 180:13
180:17 367:22
**2009**  132:18
**201**  5:16,19 182:23
182:24 184:4,15
185:17,21 187:2
190:19 191:8,14
191:20 193:1,4,7,8
193:11,23 195:4
195:11,12
**2012**  27:11
**2013**  185:5 197:7
**2014**  203:19
374:17 414:22
421:22
**2015**  415:20

**2017**  17:9 96:22,24
185:13 302:20
415:5,9 416:9
420:24
**2018**  302:23
303:18
**2019**  156:17
158:14 159:15
161:9,23 165:5
303:20
**202**  5:19
**2021**  17:9
**2022**  1:15 432:12
**2036**  32:5 33:14,19
59:12 60:1
**209**  5:10 6:4 74:5
74:7 354:17,18
355:10,17
**21**  332:10
**211**  244:11,13,19
**217**  3:11 5:7 58:10
58:13,22
**22**  17:5 120:5
127:15 162:5
214:5 313:3
**23**  10:18 37:4,11
38:19 39:20 41:22
44:18,24 82:16
83:20 86:14 89:15
107:13,18 119:22
120:13,16 121:15
125:7 127:2,15
128:15 130:5
132:11,17 140:2
140:12 142:16
154:14 155:21
156:7 162:5 223:1
271:10,17 272:5
272:11,12,17,19
273:13,14,18
276:24 277:22

284:11 285:24
286:4,12 288:19
288:21 292:6,8,19
292:22 293:3
313:3 314:6,12
316:22 317:2,16
317:17,19,24
322:24 326:14
328:9,16 329:3,18
330:9,16,21 331:1
331:3 333:18
364:13,18 365:11
366:13 368:6,10
368:22,24 369:5
389:4 390:11
391:3,4,6 392:1
394:6,10 397:24
**23a**  287:4
**24**  83:12 86:8,14
130:6 160:16,21
160:24 273:9,10
273:12,15 292:19
292:21,23 308:13
313:3 316:22
336:17 342:10
390:18 391:2,5
394:8,13
**243**  11:3,6 14:19
39:2 51:18 89:5
90:19 92:12 94:3
95:14,23 97:2
100:2 101:4,5,7
102:4 104:20
107:10,14 110:4
111:10,12 112:5
114:20 115:7,24
117:2 126:16
135:12 136:21
169:1,11 271:8,9
275:15,17 276:9
290:12 309:21,24

323:6,14,23 324:6
324:7 327:23
331:19 332:2,4
334:11 346:3
364:19 365:12
366:1 368:1
374:24,24 375:3,4
375:6,16,19,24
376:20 378:5
390:11,18 391:11
391:17 392:2,13
392:20,22 394:7
394:20 395:2,11
395:16,18 396:16
396:20,21 398:1
398:12,16 399:23
400:11,15 403:15
408:8 410:9,12
411:4 413:14
415:10,13,23
417:17 423:11,16
424:17,22
**25**  10:18 37:5,11
38:20 41:22 83:12
83:16,20 85:16
89:15 107:14,18
119:22 120:5,13
120:16 121:15
125:7 127:3,15
128:16 132:12,18
133:6 135:6 140:2
140:13 142:16
154:14 155:21
156:7 166:4,6
223:1 271:10
273:9,17 292:20
293:2,4 313:3
314:7 316:22
323:1 389:4
390:18 391:2,6
392:1 394:8,14

**[25 - 6th]**                                                                 Page 3

398:1
**251**  5:14
**2524**  149:21,22
  150:2,13
**25th**  52:6
**26**  136:9
**267**  4:10
**27**  288:15,16
**280**  5:20,20
**281**  353:4
**29**  197:7
**295**  4:12
**296**  5:21,21
**297**  5:22
**298-0700**  2:6
**2d**  27:10

**3**

**3**  10:9 44:13 51:23
  106:2,3 111:9,12
  112:5 167:16
  186:6 202:22
  240:23,24 290:7
  303:15 313:2,23
  314:21 316:21
  327:7,12,17
  375:22 379:3
  383:6 395:17
  398:12 402:11
  410:20 412:19
  417:9 423:17
**30**  22:20 223:14
  338:16
**302**  2:6 3:6 5:23
  6:5
**303**  5:23
**30th**  17:9
**31**  166:5
**32**  104:13 166:3
**321**  6:3
**327**  13:12

**3311**  326:16
**3312**  327:21
**34**  4:6 308:13
**3438**  311:14
**354**  6:4
**355**  6:4
**357**  105:10
**362-6666**  3:12
**364**  4:13
**367**  5:6 53:5 88:14
  170:5 230:19
  246:23
**368**  5:11 88:5,6,14
  156:12 157:2,8,13
  161:8,22 162:10
  176:18 180:21
**370**  106:18 116:20
  118:19 311:13
  326:15
**372**  6:5
**373**  4:15
**378**  5:8 60:10,11
  60:14
**379**  5:14 173:17,18
  173:21 174:1
  250:18 251:3,6
  297:12
**380**  5:22 297:13,16
  297:19 298:3
**381**  5:12,23 152:22
  153:3 302:2,4,8
  303:9 372:8,10,12
**381a**  6:5 372:13,14
**382**  6:3 321:8,9
**388**  5:13 153:15,19
**389**  287:24 288:4,5
**3:40**  370:9
**3:45**  372:4

**4**

**4**  35:3 52:19,19
  106:2 125:15
  183:15 184:5
  193:8 194:11,19
  199:17,19 204:8
  209:20 213:3
  240:24 258:17
  307:10,12,16
  313:12 341:2
  376:2 383:8
  395:21 398:16
  402:14 410:22
  412:21 417:15
  423:22
**40**  158:5 159:14
**400**  96:2,3
**401**  2:13 138:24
  139:2,3,16,18
  154:11
**402-3550**  2:14
**41**  261:12 262:4,5
  262:19
**41.1.**  263:1
**415**  3:12
**42**  5:5,5 265:19
  325:11
**43**  324:13,16
**43.1**  263:10
**43.1.**  263:8
**45**  190:10 266:1
**4508**  243:20
**45th**  175:21 176:9
**494**  215:8 216:22
  218:19
**4x4**  9:19 10:7 52:3
  52:17 72:19,22
  151:24 398:5,9

**5**

**5**  1:13 24:20 174:3
  174:4 190:19
  252:15 313:20,21
  313:22 314:21
  316:21 383:11
  412:22 424:5
  431:20
**50**  19:11,20 20:7
  20:15 21:5,22
  22:3,14 75:5
  370:14
**512**  2:14
**5162171**  432:18
**525**  95:19
**53**  5:6
**570**  27:10
**58**  5:7,7

**6**

**6**  136:3 177:11
  179:8 206:6,7
  259:10 313:2,14
  313:21 314:16
  316:21 341:2
  342:16 383:14
  412:23 424:11
**6,141,719**  152:17
**6,549,966**  398:3
**6/27**  241:6
**60**  5:8 270:3
  295:11
**605**  27:11
**62**  162:8
**625**  295:23
**66**  353:2
**68**  5:9
**69**  5:9
**6b**  1:18
**6th**  3:4

**7**

**7** 188:17 190:20
  191:6,15 192:20
  192:21 205:8
  210:7,13,15 212:7
  218:11,13,24
  271:5 313:2
  383:18 413:1
  424:17
**7,523,243** 374:22
**703** 27:23 75:9
**71** 115:17,17,18,19
**73** 118:20,20
**74** 5:10,10
**75** 12:18
**76** 13:1
**78701** 2:14

**8**

**8** 204:8 206:7
  242:16,18 244:17
  313:2 328:9 413:3
  424:19
**8/49** 173:8 245:4
  246:19 247:15
  249:12
**8008** 432:13
**844** 1:17
**88** 5:6,11,11
**89** 102:18,22 103:6
  103:6,21,23
  120:11 121:10
  126:9 132:24
  135:9
**89th** 111:2
**8:30** 371:21
  430:18
**8:50** 1:16 7:2

**9**

**9** 424:23 429:23
**90** 138:24 139:2,3
**907** 27:10
**94** 4:7
**94111** 3:11
**951** 3:5
**95180** 202:20
**98** 8:16,19 29:16
  29:24 30:6 38:18
  38:24 41:4,18
  49:5,18 50:9
  87:20 88:9 93:18
  94:1 120:1 138:10
  138:17,22 139:10
  139:24 154:5,10
  154:15 156:4,16
  157:14,21 158:1,2
  159:24 160:8
  161:23 162:10
  164:2 167:17,20
  168:11,14,15
  176:14,19 180:5
  265:19,22 274:2,6
  277:17 278:7,17
  281:6,8,9 283:2
  285:18 286:6,10
  287:7 291:12,22
  292:7 350:12
  352:3 359:22
  360:5,11 368:16
  397:4 398:5,6
  401:21
**984-6114** 3:6
**99** 105:12

**a**

**a.m.** 1:16 7:2
  137:14
**abandoned** 145:10

**abiding** 378:10
  396:14
**ability** 80:13 383:1
  417:10 420:14,20
**able** 13:17 14:20
  43:16 49:9 55:14
  62:15 248:9
  313:19 324:3,8,17
  330:5,10 334:1
  342:5 346:9
  347:12,19 350:24
  356:23 361:14
  363:15 367:17
  371:16 429:4
**absence** 119:24
  412:19 417:7
**absent** 27:15
  418:19
**absolute** 402:1
**absolutely** 28:2
  69:3 72:2 78:15
  99:13 116:4 178:3
  231:23
**abstract** 361:23,24
**accept** 101:4
  230:13 242:4
  299:11 302:16
  304:14 343:17
  384:18 388:23
  426:18
**acceptable** 417:7
  418:16 419:6,15
  419:16,17,21,23
  420:5,8 421:12
  426:9
**accepted** 18:6
  407:15
**access** 35:8,15,16
  35:18,20,21 36:4,7
  36:11 43:3,3,12,14
  43:17 46:17 47:5

**47:23 48:14 50:7**
  74:2 80:1,22
  306:23 330:6,10
  338:21 339:13
  343:5 347:13,19
  359:15 360:20
**accessed** 102:7
  289:9
**accesses** 343:7
  359:2
**accessing** 36:16,19
  36:23,24 100:7
  362:9
**accidentally** 247:9
**accomplish** 43:5
  51:7 81:21 351:18
**accomplished**
  325:7
**accomplishes** 45:7
  46:21 48:12 49:4
**account** 158:2
  256:2 405:23
  408:5
**accurate** 56:6 98:6
  98:9,20 99:1,5
  320:15
**accurately** 228:3
  239:14
**accusation** 225:3
**accused** 309:2
  347:18,23 348:3
  362:14 374:19
  391:17,23 392:4,6
  394:11 396:17
  397:21 409:24
  412:7 427:2,11,15
**achieved** 406:19
**acronym** 97:4
**acronyms** 194:23
  195:18

**act** 43:20,22
**acted** 395:7 396:7
  422:3,9
**acting** 426:18
**action** 116:11
  376:11 432:10
**actions** 37:23
**actively** 399:14
**activities** 406:13
**acts** 388:8
**actual** 9:9 12:3
  31:7,8,22 38:1
  40:23 55:19
  210:11 229:13,16
  229:24 241:17
  284:14 298:20
  299:1 414:16
  419:9
**adams** 2:12 4:10
  4:13 266:12,14,18
  267:8 270:17,23
  271:4,6 272:6,10
  275:12 276:9,13
  276:17,21 280:1,4
  280:10,13,18,21
  283:20,22 290:6
  290:10,14,16
  291:8,10 293:22
  294:1,19 296:10
  298:4 303:10
  306:13 314:1,4,23
  315:2 317:14
  319:5 320:14
  331:22 344:10
  355:12 364:1,5,9
  364:17 366:22,23
  369:15
**add** 205:23 206:23
  303:23 304:22
**added** 343:3
  409:14 425:19

**addition** 309:21
  378:4 391:24
  401:9 419:18
**additional** 84:1
  209:16 377:14
  392:7 394:12,17
  394:21 416:5
  420:20 421:1
  427:20
**additionally**
  133:14 405:1
**address** 82:21
  85:18 86:3,20
  105:2 313:2 321:3
  346:13 359:24
  377:14 394:21
  413:12
**addressed** 313:15
  317:15 405:6
**addressing** 404:10
**adds** 86:14 96:6
**adequate** 15:10
  398:13 409:1
  410:3,5 413:18
**adjourned** 431:19
**adjusted** 9:6
**admission** 265:15
  265:19 266:1
**admit** 182:19
  183:9 197:18
  199:10 202:3
  251:2 265:19
  266:2 294:8
**admits** 265:21
  266:4
**admitted** 5:4 25:9
  182:21 188:18
  203:17 236:20
  280:17 286:8
  355:15 372:8,12
  372:15 385:21,22

**386:5
adopt** 220:10,10
**advance** 46:3 94:3
  246:11 374:8
**advantage** 51:3
**advantages** 407:1
  419:7 424:23
**advertising** 406:12
  427:4
**advise** 128:8
**advocate** 373:24
  374:1
**affect** 98:10,21
  396:1
**affirm** 132:16
**affirmance** 130:7
**affirmative** 344:19
**affirmed** 131:5
  136:24 267:3
**aforesaid** 432:4
**afternoon** 21:14
  24:6,8 267:12
  295:4,5
**ago** 110:7 115:14
  116:5 154:3 179:5
  185:13 308:8
  340:23
**agree** 11:15 13:23
  16:4 99:22 100:2
  100:13 101:7
  106:12 109:6
  111:11 112:4
  113:14,21,24
  114:19 115:6
  127:2 128:13
  131:9 133:4,16
  134:1 147:5,15
  149:7 154:22
  155:6,12 157:12
  157:19 160:19
  169:9 171:2

**184:14 187:11
  188:12 195:9
  198:14 200:17
  203:4 210:4 215:1
  215:11 221:8
  223:2,5 240:4
  244:23 248:16
  264:20 294:6
  325:21 334:24
  335:16 336:13
  337:13 339:5
  348:11 349:9
  351:5 354:7,8
  358:22 359:17
  421:21
**agreed** 61:16
  130:1 132:7 161:4
  316:3,12 379:4
  414:21 425:24
**agreeing** 245:11
**agreement** 317:9
  422:2,11 426:3
**ah** 323:18
**ahead** 77:16 79:15
  79:16 94:13 96:17
  102:2 109:17
  115:3 131:15
  168:8 180:2
  237:19 250:19
  262:23 293:1
  315:1 331:24
**aid** 387:6
**aided** 432:8
**al** 142:13
**alike** 264:8
**alleged** 416:16
  419:11 421:19
**allegedly** 416:20
  416:21 420:15
**alleges** 392:21
  397:24

**alleging** 277:12
**allocated** 75:3
**allow** 43:12 45:17
  46:19 49:9,24
  50:10 51:8 91:14
  100:3 326:8
  334:12 335:24
  348:14 349:24
  350:14 425:12
**allowance** 151:13
**allowed** 41:16
  51:13 128:20
  132:21 261:17
  397:7
**allowing** 83:4
  361:5
**allows** 73:7 81:3
  350:16 357:10
**altered** 172:20
  230:2
**alternate** 174:10
  332:23 339:13
  362:9 389:13
**alternated** 100:7
**alternating** 361:2
  361:4,9
**alternative** 289:2
  419:14
**amazon** 156:17
  158:14 159:15
  161:8,22 163:3
  165:5 175:16
**america** 130:19
  132:16
**amount** 24:12
  62:10 66:14 279:4
  376:7 377:23
  378:2 412:17
  413:15 414:2,7,20
  416:12,23 417:15
  420:22 421:1,3

**425:22 426:3,8,23**
**analog** 147:21
**analogous** 425:13
**analysis** 13:1,2,19
  31:13,16 45:23
  87:20 93:17
  138:17,22 139:9
  139:10,15 154:5
  271:13,15 272:3
  277:5 318:2,17
  322:16,19 323:9
  326:6 330:24
  353:5 362:18
  403:17
**analyze** 403:12
**analyzed** 51:11
  53:1,6 59:3 88:10
  250:13 256:3,7
  314:12 319:7
**analyzing** 288:17
  288:18 405:7
**anderson** 3:3
  263:21
**andrew** 2:4
**angle** 242:19
**animations** 386:2
**annotated** 87:5
  327:3
**annotations**
  327:22
**answer** 41:19
  63:14 65:5 114:24
  115:10 167:7,18
  168:12 216:14
  255:24 265:21
  266:4 308:17
  312:23 319:13
  380:22
**answered** 111:24
**answering** 134:4

**answers** 15:16
**anticipatory** 32:22
**anybody** 21:4
**anymore** 288:24
  289:1
**anyway** 124:8
**apologies** 196:15
  197:14,22 213:7
**apologize** 25:23
  274:17 297:15
  307:11 374:7
**app.sup.** 27:10
**apparently** 278:4
  310:16 312:8
**appeal** 129:24
  130:9 312:22
  396:22 397:1
**appealed** 128:4,5
  128:12 129:4
  311:8,9,9,12 312:1
**appeals** 130:15,18
  140:10 311:18,19
**appear** 10:16
  175:9 365:7
  385:17
**appearing** 189:6
**appears** 12:18,19
  12:22 23:10
  125:19 182:16
  196:8 202:1
  203:21 217:15
  239:7 242:12
  303:3 361:3
**apple** 27:4,10
  203:22 208:6
  209:10 211:5
  258:11 269:10
**applicant** 408:16
**applicants** 108:20
**application** 57:9
  58:3,4 82:24 83:1

**136:2,3 141:20**
  146:16 147:3
  153:21 174:18
  251:14 323:4
  344:9 407:2,3
  410:12
**applications** 145:5
  145:7,7 151:20
**applied** 77:3 94:1
  138:16,22 139:10
  139:14 144:5,6
  154:4 422:23
**applies** 273:16
  378:17
**apply** 24:14 78:3
  263:18 283:15
  388:21 389:22
  429:6
**appointed** 131:21
**apportioned**
  427:13
**apportionment**
  427:11
**appreciate** 430:3
**approach** 19:22
  23:16 94:7 152:18
  217:10 280:1
**approaches** 404:9
**appropriate** 28:17
  124:5 332:23
  384:16 413:9
**approval** 184:22
**approved** 184:23
**approximate**
  27:14
**approximately**
  413:22
**april** 1:15 38:7,10
  180:23 265:23
  266:3,6 272:1
  399:5,15 400:14

403:16 410:10
432:12
**aptiv** 1:8 95:19
96:5,10 98:13,21
99:2,8 117:9
127:16 128:13
129:3 132:11
181:23 208:5
212:21 217:22
267:24 272:14
273:5,22 295:9
306:5 311:9
326:24 334:5
347:18 362:14
374:15 375:2,5,7
375:14,18,22
376:3,20 377:11
377:12,13 378:1,5
391:10,16 392:2
392:17,21 393:2
394:6,7,10,19
395:1,7,10,13,17
395:19,21 396:12
397:24 399:22,24
400:3 401:21
408:3,7,10 411:3,5
413:14 414:20,24
415:9,12,21 416:7
416:16,21 417:16
417:20 418:1,1,24
419:19,24 420:2
421:8,10 423:14
424:6,13 425:6,19
425:24 426:16
**aptiv's** 94:23,24
118:5 119:7,10
128:5 181:15
191:21 208:2
263:21 282:16,17
377:15,17 391:19
391:23 392:3

393:14,19 394:22
395:4 398:22
414:18,22 415:4,8
416:2,4 417:1
418:13,20 420:6,9
420:15 427:4
**arbiter** 46:18
47:24 80:21 81:11
**arbitrate** 36:6
223:3,6 349:11
358:7
**arbitrating** 338:21
339:1,3,10 359:13
360:20,23
**arbitration** 36:9
43:16 45:16 46:14
46:15 80:9,24
81:6,7 82:2,11
222:6,10,15 339:6
339:8,12,21 342:4
343:3,4,11 347:7
347:11 348:3
349:8 350:20
367:24 368:7
**arbitrator** 80:17
**area** 24:13 124:5
269:11
**areas** 297:4
298:14,17 301:23
303:22
**argue** 369:10
**argued** 292:7
310:20
**arguing** 232:17
237:9
**argument** 8:22
119:3 126:10
326:22 370:24
**arguments** 21:12
21:18 24:22
120:11,12,13

121:10 126:17
267:24 319:4
370:5,6 373:14
379:7 427:19
428:6,7 429:24
**arm** 186:13
**arrive** 404:14
**arriving** 322:17
408:1
**arrow** 173:4 239:6
243:14
**art** 14:12 27:16
37:13,21,22 38:6
49:17 50:18 76:9
76:15 77:11 79:20
81:15 90:13 114:4
117:20 119:13
120:3 125:4
127:13,13 138:7
142:2 143:7,13
146:1 148:20
149:17 155:13,20
155:23 162:24
168:22,24 169:10
169:18,24 175:15
176:10 180:18,19
271:16,20,21
272:22,23,24
278:22 282:18
284:8 285:21,21
291:22 292:1,3
293:13 310:7,9
318:4,7 323:5
324:15,22 332:2
339:7 344:7
345:16 357:5,21
358:6 363:12
389:24 390:2
396:18 397:14,18
398:18 399:2,3,4,7
399:21 400:6,12

400:19,23 401:1,3
401:6,8,11,13,15
401:17,20,22
402:7,10,12,20,24
403:3,4,6,14,16,21
403:24 404:4,5,20
404:23 405:1,9,10
405:14 406:20
407:11 409:21
410:7,23 412:22
412:24 413:1
**article** 9:20 274:9
316:2
**articles** 146:18
300:5,9,12
**arussell** 2:7
**asic** 182:18 186:11
**aside** 285:20 354:4
**asked** 54:13 62:3
99:8 161:2 166:11
166:14 181:5
220:14 224:19
253:17 306:1
307:13 308:7
363:7 364:21
365:3 367:23
368:20
**asking** 63:13 64:1
75:6 91:17 108:8
108:12 159:8
204:24 236:6
**asks** 345:13,16
380:7 418:8,15
420:11
**aspect** 284:23
363:19
**aspects** 81:21
**assert** 125:5
139:23 154:13
**asserted** 37:5
107:20 108:17

127:7,10 136:6
140:6 271:16
315:13 375:15,24
388:6 389:3
391:11 392:5
393:4,10,13,16,17
393:23 394:20
396:9,15 398:14
399:22 402:4,9,18
403:14 408:7
411:3 413:11
415:13
**asserting** 119:18
119:21 127:3
128:14 142:15
376:23
**assertion** 125:16
156:4
**asserts** 390:10
401:21
**assess** 362:13
**asset** 387:14
**assignment** 170:16
**assist** 386:20
**assume** 35:12
89:20 110:15
117:21 126:4
178:22 223:22
229:9 231:21
266:13 422:4,8
**assumed** 234:9
**assuming** 29:13
**assumption**
236:18
**asterisk** 143:21
**ata** 269:16
**athens** 17:14,19
18:3,12,14
**atlantic** 1:23
**attach** 73:7 386:23

**attaches** 73:6
289:19
**attacked** 107:13
107:16
**attacking** 98:14
**attempt** 273:23
333:5,12
**attempted** 81:13
232:19 395:19
**attempts** 396:18
**attention** 129:10
430:3
**attesting** 111:6
**attorney** 251:10
**attorneys** 304:6,13
389:3
**attractive** 351:23
**attributable** 423:1
426:24 427:7
**attribute** 221:14
385:16
**audio** 269:20
**august** 303:19
**austin** 2:14
**authenticate**
231:21
**authenticated**
228:21
**author** 147:9
269:22 300:4
**authoring** 300:15
**auto** 50:15,17
72:20 398:5
**automatically**
50:6,10
**automotive** 374:16
**availability** 27:15
56:14 57:21
**available** 38:2
44:2 52:10 54:19
55:9 57:13 65:11

65:12 66:9,18
67:5,10 68:3,6
70:3,9,13,19 93:14
93:22 256:7 257:9
257:24 271:22
279:23 282:4
419:19 421:12
423:6
**avenue** 2:13
**avoid** 337:21
395:18
**award** 396:1
413:16,17,20
414:4,8,23 415:1
417:11 427:13
**awarded** 18:6
376:5
**aware** 90:14,23
108:21 142:3
309:14 310:5
341:8 399:3
**awhile** 145:2
**aydeekay** 185:22
186:10,10 187:12
187:17 188:1
193:4,12 194:14
210:11

**b**

**b** 5:2 6:1 35:19,21
36:20,23 73:5
194:5 199:24
200:3,4 206:11
207:4 208:24
214:3,8,12 259:6
260:3 406:14
**bachelor** 268:7
**back** 17:4 24:21
24:24 25:10,12,20
33:1,6 48:1,8 51:4
60:21 62:21 72:18
79:6 81:8 99:7

111:9 116:23
124:24 128:18
132:18 137:6,11
146:7 149:20
152:15,16 162:17
179:1 183:14
184:4 190:19
193:15 194:10
195:3,12 208:10
208:10 209:19
210:21 212:10
214:5,22 217:11
223:17 225:18
226:7 233:3 243:4
243:22 244:12
246:24 248:3
249:18 250:6
272:9 274:18
275:9 283:20,21
284:13 287:24
291:8 301:12
313:21,23 326:20
327:2 338:8
348:19 349:14
364:8 367:22
370:1 373:7
427:21 429:4
**background** 14:23
15:1 229:20
325:12 402:16
404:4
**backgrounds**
122:7
**backing** 113:19
**bad** 198:5 395:5
**bag** 220:12
**bandwidth** 148:10
**bank** 2:12
**banner** 2:10 9:7,8
9:17 10:4 12:6,12
13:9 14:7,8 16:4

16:12 160:16
225:5,6 227:18
229:7 231:12
235:4,7 236:24
237:4 238:13
**bar** 262:14
**barred** 41:15
**base** 10:5 127:7
401:19 422:22,23
422:24
**based** 17:18 19:1
23:14 24:2 39:20
46:14 49:16 54:6
54:18 59:7 61:20
62:1 78:23 91:21
120:13 135:20
184:13 185:3
187:10 379:16
383:22 414:10
426:24 427:14
**bases** 20:9 21:9
**basic** 147:13
**basically** 24:11
46:19 57:5 72:14
87:23 126:17
129:19 132:23
345:13 356:13,19
**basis** 15:9 41:3
70:1 126:18 264:4
316:20 317:24
396:13 411:1
**bates** 202:19
**bbanner** 2:15
**bear** 374:10
383:18
**beard** 2:9
**bearing** 392:17
**bears** 399:24
408:10 411:5
**becker** 7:24 384:6
384:20

**becker's** 17:18,20
18:11
**began** 385:1
415:21 416:10
421:20 423:7
426:1,22
**beginning** 308:13
363:7 373:6
386:21 416:9
**behalf** 117:5 270:8
**behave** 286:10
**belief** 382:20
391:19
**believability**
383:19 385:12
**believable** 383:24
**believe** 18:22 23:3
42:1 44:10 56:18
77:1 100:9,15
111:6 141:6,15
144:24 146:24
149:11 152:3
164:23 166:11
167:23 176:13,14
176:18 180:20
181:20 186:1
193:9,20 195:7
202:13 205:9
222:8,18 223:9
227:24 238:17
239:14 244:16
258:14 259:10
271:24 285:3
310:23 313:8
320:15 332:5
360:22 377:4
380:1,17 382:17
382:17,20,22
383:17 430:8
**believed** 116:16
167:22 382:1

391:16 395:14
422:5
**believes** 285:4
**believing** 278:7
**belkin** 8:16,19,23
9:1,19 10:7,23
11:4,9 38:18,23
41:4,11,23 49:1,3
49:5,18 50:8
51:10,17,20 52:3,9
52:17,23,24 53:6
55:6,9 56:24
57:12 59:5 60:7
60:16 66:9,17
67:5,9,13,16 68:2
68:24 70:12,19
71:1 72:19 75:22
76:2,11,17,22
77:11 78:4 79:23
80:2,4,8,16 82:15
83:1 84:11 85:6
87:2,11,24 93:13
94:1 105:6 109:2
119:24 138:10,17
138:23 139:11,24
150:20,22 151:2,6
151:7,24 154:5,16
168:18 170:2
175:21 224:7,9,10
230:7 250:8,12,15
251:23 252:1
256:6,14 257:18
258:2 266:2 274:2
274:6,10,24 275:1
275:4,6,18,22,23
275:24 276:1,7
277:17 278:9,17
281:4 283:4,15
285:18 286:6,10
286:15 287:8
289:23 290:5

291:12,22 317:8
318:8 350:12,23
352:3,4,5 355:24
357:6 358:9
359:22 360:5,11
368:16 397:5
398:9,10 401:22
**bell** 347:3
**benefit** 400:15
**benefits** 425:4
**best** 70:21 245:13
**bet** 94:15
**better** 129:22
198:8 200:10
211:23 212:1
283:19
**beyond** 50:4 64:18
77:20,22 316:16
366:19 378:16
**bias** 264:23 383:10
384:21,22
**big** 118:13 121:8
320:18
**bigger** 85:1 103:5
**bill** 95:19
**binder** 37:9 42:5
58:10 68:17 74:5
182:6 190:24
280:6
**binders** 224:4,4,5
260:19
**bit** 17:12 34:23
85:1 99:20 148:6
222:5 243:18
308:18 318:23
319:13 330:3
331:7 340:20
342:7 343:12,14
348:10 352:2
428:2

**black** 48:21
158:18,23 159:2,3
159:4,7,9 160:2,6
161:3,9,11,15,18
161:21 162:10
163:16 164:3,6,13
164:17,20,21,22
165:4,10,14
166:20 176:20
180:22 191:7
210:14 231:15,17
252:5
**blah** 341:7,7,7
**block** 45:4,6,13
46:1 80:11 86:18
87:13 106:14,15
111:11 112:4,20
113:4,7 197:3,24
210:11 277:7
286:17,23 287:1,3
287:5,7,12 291:13
291:18 325:1
326:1 328:1,3
331:6 334:1 343:2
343:4 365:16
366:5 389:16
**blocks** 47:16
106:16 192:10,15
218:10,23 329:8
401:5
**blow** 69:15 71:8
197:2 200:13
208:9 242:13
255:8 341:3
342:18
**blowing** 74:24
191:1
**blown** 239:2
253:10
**blowups** 241:2,18

**blue** 45:3
**blurring** 239:17
**board** 39:6 40:18
48:18 69:14,16,20
69:22 71:9 81:2
107:17 108:22
128:23 129:16
136:15 175:17,20
180:5 224:7
230:23,23,24
241:14 250:12,14
250:21 252:12
256:14 279:5
281:17 293:19,22
312:22 396:23
397:1
**boards** 279:13,16
279:21
**bodies** 10:21
**body** 363:18
**boggs** 1:17
**bohm** 49:17,20
109:1 110:16
113:5 114:12
143:14 152:1,2
155:8,12,17,20
324:14,21 325:17
335:12,22 336:12
336:19 337:13
338:24 341:6
342:19 343:20
346:16 347:1
410:8
**bohm's** 119:18
140:2 144:9
154:14 155:1
156:7 323:4
337:12 346:21
**bonding** 252:11
**book** 198:24
269:22

**books** 300:4,9,11
**boston** 182:18
186:3,17 188:21
192:21 215:3,19
216:7,12 393:13
393:15 415:22
418:20
**bottom** 52:17
69:14 112:19
143:24 144:17
150:19,19 166:6
171:24 174:6,8
202:19 204:5
230:18 256:23
280:20 302:17,19
342:18
**bought** 156:16
158:13 159:15
161:8,22
**bound** 316:4
**bounds** 319:2
387:24
**box** 3:5 23:15
28:20 30:4,5 31:2
31:3,9,11 68:5
121:8 145:16
158:5,13,18,23
159:2,3,4,7,9
160:2,6 161:3,9,11
161:15,18,21
162:9,10 163:16
164:3,6,13,17,20
164:21,22 165:4
165:11,14 166:17
166:20 167:6
176:20 180:22
184:22 194:22
205:21 242:14
243:4 252:5
273:11

**boxed** 191:16,16
**boxes** 23:11,13
26:13,17,21,23
27:1 28:6,7,7 29:1
29:7,8 30:9,16
259:7
**breadth** 388:4
413:3
**break** 19:21 20:3
20:16 25:21 88:11
124:12,19,22
137:3,5 160:23
190:2,7 221:18,24
223:13 227:17
232:6 260:11
261:11 263:24
363:24 364:2
369:23
**brian** 2:10
**bridge** 189:15,15
192:9,14 193:22
194:24 195:18,19
198:2 200:20
201:1,7,12 202:23
203:3 205:14
206:1,24 207:24
208:16,18 215:3
215:19 216:4,11
218:9,22 258:20
259:2,16,21
**bridges** 166:6
**bridging** 162:5
**brief** 42:22 63:1
83:13 134:6
182:11 213:6
217:18 235:9
242:8 263:6
293:24
**briefly** 271:20
**bring** 7:14 22:19
26:2 73:1 162:4

224:7,11 290:7
372:7,21
**bringing** 25:24
**britain** 145:24
**broad** 89:21 108:9
114:3 342:8
**broader** 85:7
**brought** 386:13
**bruce** 2:10
**bslayden** 2:15
**bucket** 147:4
**buffer** 73:23 74:3
79:22 81:9 82:7
85:17,23,24
257:20 354:6
355:4,4,5,5,21
356:5 357:2,9
358:1 359:10,10
**buffers** 47:19 72:5
74:1 76:4,21,24
79:23 80:16 82:3
82:4,23 84:23
85:5 104:24 200:9
206:18 212:11,17
212:19 352:13,16
352:23 354:9
358:11
**build** 186:17
**building** 1:17 2:4
401:5
**bullet** 258:19
259:13
**bumps** 252:10
**bunch** 106:16
252:4
**burden** 282:10,13
282:15,16,17
376:6,13,24
377:16,20 378:7
378:13,17 396:11
396:16 399:24

407:19 408:3,10
411:5 414:1
417:20 421:7,14
**burdens** 376:15
**bus** 84:6 268:17,21
268:24 269:5,9,16
269:23 270:1,4,18
297:2 334:17
349:6 352:24
**buses** 269:5
367:12,18
**business** 414:17
424:9 425:11,17
426:4,19
**businesses** 425:12
**busy** 81:10,12
188:23 191:1
**buy** 56:2 148:3
419:12
**buyers** 419:9
**buying** 163:2

**c**

**c** 2:1 3:1,9,10
210:10 406:16
432:1,1
**c.a.** 1:4
**cable** 73:6
**cal** 268:9
**calculate** 420:22
**calculating** 420:23
**calculation** 17:18
18:2,12
**caleb** 1:17
**california** 3:11
267:21
**call** 12:7 130:23
176:19 313:15
334:16
**called** 8:1 10:2
38:16,18,18 39:7
43:9,10,15 47:11

72:19 73:4 74:13
179:8 210:10
215:2 229:22
231:12 240:1
241:24 243:12
252:5 275:18
288:23 349:4
376:16,17 381:11
385:5 386:4 390:5
398:19 405:24
407:22 427:10
**calling** 23:5 32:9
129:10 231:11
**callout** 11:1
230:16,20 238:1,2
238:3 245:5
246:11
**callouts** 244:1
**calls** 266:19
**camera** 234:21
235:12
**canada** 143:23
**cancel** 117:2 125:6
**candor** 110:8
141:22,24
**capabilities** 349:8
**capability** 341:8
389:18
**capable** 101:8
102:8 104:22
362:2 417:13
**capacity** 18:23
**caption** 58:17
**captured** 418:23
419:4,5
**captures** 220:14
**car** 268:12 339:22
**care** 21:24 203:9
261:6
**careful** 319:12

**carefully** 30:21
48:5 169:16 252:3
354:15
**carplay** 17:17
35:13 208:20
259:18
**carries** 396:5
**carry** 260:22,24
**carrying** 207:12
382:5
**cars** 338:1,21
**case** 20:23 22:7,8
23:14 25:2 27:2,2
27:3,4,11 35:14
56:9 84:16,19,24
85:3 90:23 99:2
99:15 110:17
113:12 117:12
139:23 142:17
154:13 160:14
167:16 181:16
204:24 218:4
222:22 270:15
271:2,24 278:16
289:2 296:7,24
299:13,15 301:8
301:22 303:4,19
305:6,19 306:1,5
308:11,19 315:6
315:16 316:21
319:19,22 346:2
360:18 363:10
367:21 370:19
371:8,10,13
373:19 374:13,14
374:19,21,23
376:14 378:18,20
379:9,15 383:9
384:17,24 386:10
386:21 387:15,17
390:4,9 392:12

396:1 399:5
406:22 413:7,10
415:3 421:21
426:13 428:3,4,11
429:9,10,17,24
**cases** 36:15 270:3
295:11,18,20,21
301:15 304:12
305:22 378:18
**cat** 220:12
**causal** 416:1
**caused** 33:13
**causes** 291:6
**caution** 386:22
428:1
**cautions** 429:6
**cd** 31:15,17,19,23
32:7,12,16 33:2,22
34:1 57:8 58:1,7
58:19
**cell** 252:6
**center** 189:10
**certain** 26:14
146:17 168:10
224:14 279:3
283:18 284:21
366:7 380:2 381:3
386:11
**certainly** 15:16
76:13 94:11 95:7
95:8 118:13,16
161:15 187:19
201:9 211:18
231:19 239:24
357:8,14 373:4
**certainty** 421:5
**certificate** 328:21
**certification**
335:17
**certify** 432:3

**chair** 79:15
**challenge** 136:4
**challenged** 120:6
135:12,18
**challenges** 335:23
336:3,4,9 347:1,2
**challenging** 97:1
97:13,18 115:24
378:6
**chance** 65:20
**change** 17:21
194:1 208:3 256:5
256:9 259:3,21
279:16 283:13
**changed** 78:12
177:20 178:7,10
281:18 283:18
319:19 409:14
430:23 431:4
**changes** 55:24
93:9 165:10,19
431:9,11
**changing** 283:15
**chapter** 269:23
**character** 252:21
**characterize**
129:21
**charge** 1:12 4:15
20:22 25:13 95:16
276:20 295:23
364:8 370:12
373:9 430:14
**charging** 20:21
**charts** 379:1,10
386:1,11,14
**check** 104:10
124:13 431:13
**chip** 17:14,16 18:7
18:13,14,15,24
71:18,19 73:20
74:2,14 150:2,5

171:16 172:1
173:5 175:7
177:10 186:3,17
188:3,21 192:22
215:3,19 216:7,12
230:17,21,24
231:10 238:9
241:6 244:14
245:4,12,17
246:16,19 247:14
247:18 249:11,14
249:15 250:11
251:15,16,18,21
251:21 252:1,2,9,9
252:11 253:17
254:3 256:12,16
256:19 257:2,24
282:3 285:1 353:7
353:21,23 354:13
354:14 355:24
357:9 358:23
391:17,23 392:4,6
393:14,15,19
415:22 416:10,14
418:20
**chips** 19:4 71:12
71:21,22,24 72:1,4
72:8 73:24 84:12
171:15 172:5,15
173:3 175:18
224:7 247:6
252:10 257:8,17
279:5,15 284:18
352:6,13 357:7
358:9 360:15
418:24 420:17,21
**circuit** 69:22 71:9
73:10 79:22 84:2
84:4,15,22 130:16
140:11 175:20
180:4 250:12,14

279:5,13 281:17
301:6 308:9,15
311:20
**circuitry** 73:15
229:20
**circuits** 73:17 76:3
76:3 360:6,12,14
**circumstantial**
381:18,18,22
382:6,12
**cite** 27:10 142:9
264:3
**cited** 51:19 118:16
118:23 119:17
140:24 144:2,4
155:17 262:21
**civil** 378:18
**claim** 37:4,11
39:16,20 44:18,24
44:24 45:11 46:8
46:23 47:2 48:17
49:4 82:16 83:8
83:16,20,20 85:16
86:8,13,14 101:15
113:17 114:21
126:16 223:7
226:22 232:15
271:17 272:3,5,11
272:12,17,19,21
273:1,3,9,10,11,13
273:14,14,17,18
276:24 277:22
284:11 285:24
286:4,12,19 287:4
288:19,21 292:6,8
292:19,22,23
293:2,3,4 311:4,6
312:6 313:14,16
313:21,21,22,23
314:12,15,21,21
315:10,20 316:10

316:11 317:1,2,4,7
317:13,15,15,16
317:17,18,19
318:3,5,7,20 319:1
319:7,7 320:12,16
320:17,18 326:14
328:9,9,13,13,16
328:16,23 329:3,3
329:15,18 330:4,9
330:16,20,21
331:1,1,3 333:18
344:8 345:15
364:13,18,23
365:7,11,20 366:4
366:13,19 368:6
368:10,21,22,24
368:24 369:1,5,6
376:3 388:7,9,10
388:13,15,16,20
388:22,22 389:4,5
389:8,15,20 390:5
390:6,7,7,9,10,11
390:15,17,20,21
390:24 391:1,2,2,3
391:4,5,6,6,7
392:5,6 393:4,5,11
393:13,16,17,18
393:20,21,23
394:2,4,5,6,8,8,10
394:13,13,15,20
396:11,13,13,15
397:24 398:7
400:2,9 401:13
402:9,18 405:17
408:20,22,24
409:1 410:16
411:1,1,2,16
413:14 415:10,13
**claimed**   102:23
103:3 113:16
395:11 397:12,14

399:7,8 400:5,8,21
401:3,12 402:22
403:7 404:2,15,16
405:4,8,11 406:10
407:24 408:14,17
409:8,12 410:3
411:12,14 412:4
412:12
**claims**   10:18 37:17
38:19 40:15 41:10
41:22 44:23 83:12
89:15,20 107:13
107:19 111:20
113:15 115:8
119:19,22 120:5
121:15 125:7
127:2,5 128:15
132:11,17 136:3,6
136:15,16 140:2
140:12 142:16
144:6,9 154:13
155:21 156:7
222:22 223:1
271:8,10,14
310:22 311:3
312:5 313:2,8,14
314:6,12,13
315:13,15 316:21
316:22 320:17
321:24 322:2,4,13
322:14,22 323:14
324:6 328:14
330:23 345:20,22
363:18 364:22,22
375:15,19,24
377:5,9 387:18,19
387:20,22,23
388:3,4,6,12,18,24
390:4,13,18,19,23
391:11 392:1,3,20
394:2,13,14,17

396:9 397:7,9
398:10,15 399:23
402:4 403:14
406:2 408:8
409:13,14 411:4
413:3,11 415:22
**clarification**   21:21
179:7 319:5
**clarified**   237:23
**clarify**   19:8 64:7
65:20 237:11
**clarifying**   172:10
371:3
**class**   295:17
**classes**   92:19
**clean**   372:10
430:13
**clear**   9:11,15
10:20 11:1 20:5
32:7 43:19 70:11
82:1 97:11,16
113:23 148:18
241:16 311:12
355:4,21 369:24
372:18 375:23
376:17 378:8,9,12
396:12 400:1,4
408:4,12 411:6
**cleared**   356:23
358:1
**clearly**   27:3 75:6
123:20 250:9
259:5 261:10
264:21 285:15
**clerk**   7:4 137:15
226:13 266:21
372:5
**clicker**   44:17
276:18
**clients**   380:16

**clock**   321:13
**close**   19:12 22:9
55:18 105:14
221:17 371:11
429:2
**closed**   21:4 25:18
**closest**   406:20
**closing**   24:22
319:4 370:4
373:14 427:19
428:5,7 429:23
**closings**   370:20
371:6,15,22
**cm**   1:21
**coaching**   265:2,4
**code**   171:16 173:5
173:8,11,14
174:15,24 177:1
180:4,8,10,12,14
212:23 213:15
214:13 249:12
253:6,14 254:4,8
254:11 255:2
256:22 282:7,24
**codes**   247:7
**coding**   178:14
**coincidentally**
36:13
**collateral**   316:1,5
316:7,9 317:10
**collect**   141:17
**college**   267:20
**collision**   350:1
**collisions**   337:21
**column**   142:24
144:1,15 146:7
341:2
**combination**
11:19 38:22 41:1
49:1 82:15 84:11
85:21 87:1 105:6

136:1 140:1
141:15 154:17,21
156:6 272:13,16
272:23 273:5,14
273:21 286:2
292:9 293:10,11
294:10 401:20
405:12 422:24
**combinations** 78:6
79:1 81:22
**combine** 41:2 49:3
76:16 78:8 150:23
294:7,14,16
401:11 404:1
**combined** 293:20
398:4,8 405:17
**combining** 78:10
368:13,15 401:17
405:15
**come** 24:21 25:20
26:19 28:7 30:9
37:10 39:23 58:24
93:21 182:1
199:15 225:18
226:7 251:6
260:20 296:13
301:12 340:21
343:15 364:8
370:1 404:3
**comes** 33:12 81:12
114:8 387:14
**comfortable**
235:17
**coming** 15:1 23:15
26:13 177:24
211:17 285:9
330:19
**commenced** 7:1
**commences**
262:15

**comment** 238:19
429:11
**commentary**
134:24 168:6
**commenting** 126:9
**comments** 163:12
185:22 194:14
**commercial** 424:5
424:19
**commercially**
406:9
**committed** 395:5
**common** 148:13
343:7 379:21
404:6
**commonly** 412:16
**communicate**
90:24 336:24
363:4
**communicating**
91:3 92:2,7
389:13
**communication**
89:22 90:1,4,11,18
92:10 93:3 304:17
328:2 363:2,13,17
365:5,6
**companies** 159:22
165:1 268:15
**company** 49:22
95:17,18 98:21
147:12 158:17
181:24 342:21
**comparable** 265:3
423:15 425:11
**compare** 63:20
191:19 284:21
368:21 387:7
393:16
**compared** 90:18
406:19

**comparing** 14:11
**comparison**
184:13 331:1
348:24
**compatibility**
67:21
**compensate** 376:5
378:3 413:18
**compensated**
270:11
**compensating**
427:5
**compensation**
270:14
**competent** 123:23
**competitor** 420:2
**competitors**
172:14 418:22
424:8
**complete** 98:6,10
98:20 99:1,5
181:4 183:19
195:6 387:11
**completely** 193:22
196:2 198:15,17
198:18,19 232:3
311:10 356:4
**completes** 343:9
**complex** 47:9
351:7 368:18
**complexity** 410:17
**complicated** 33:23
79:18 80:23 148:7
**complies** 411:19
**component** 171:3
341:9,17
**components**
113:13 114:2
170:14,18,22
189:1,5 191:10
193:1 207:23

210:16,17,19,24
**comprehend**
335:14
**comprise** 341:7,16
**comprises** 84:2,22
**comprising** 329:6
**computer** 33:10
45:3,5 46:16 50:1
50:2 79:18 80:2,5
80:22 81:2 91:4
91:11 268:9,12,17
268:22 269:23
270:18 289:9
348:6 367:12
432:8
**computers** 43:9
49:24 50:6 51:9
79:21 89:7,16
269:7 346:4,9
**conceivable**
397:22 410:1
**concentrate** 384:2
**concept** 43:14
92:23 357:8,14,17
357:19 359:2,18
359:19 390:1
**conceptual** 204:20
269:8
**conceptually**
198:11 207:16,20
**concern** 63:8
64:15
**concerned** 64:23
172:19 220:5
231:20 232:1
233:16
**concerning** 245:4
246:18
**conclude** 59:7
257:7 382:7
427:24

**concluded** 34:8
38:19 54:18 55:2
56:14 66:3 75:15
79:13 124:17
134:19 139:15
178:24 222:3
263:14,16 265:11
276:16 320:24
322:14,23
**concluding** 93:13
**conclusion** 37:10
37:16,17 40:7,8
54:7 55:8 57:12
61:20 64:24 66:7
67:9 68:2 70:22
76:2 77:2 93:21
94:2 285:17
366:20 380:3,4
406:5 408:2
**conclusions** 62:1
66:15 67:4 76:8
76:14 87:22,23
98:11,22
**conclusive** 62:17
285:7 402:1
**concurrent** 46:9
46:22 86:16
324:24 325:23
329:23
**condition** 80:20
**conditions** 424:3
**conduct** 93:17
395:4
**conference** 26:12
26:20 301:3
346:18
**conferred** 261:18
261:21
**conferring** 263:12
**confidential** 204:5

**configuration** 40:3
40:11 82:18 83:5
85:19 86:4,20
105:2 111:13
112:7 113:6
331:12,19,20
332:9,21,22
359:24
**configure** 331:5
333:5,12 334:1,6
**configured** 46:9
46:21 48:19,22
82:22 102:7
208:17,19 259:17
277:8 287:9,13,19
287:21 289:13,16
289:20 290:1
291:14,19 293:8
326:9 331:8,15,15
332:11 362:1,7
366:6
**configuring** 332:5
332:16 333:6,14
**confine** 304:23
**confirm** 50:9
110:24 184:20
**confirmed** 154:3
261:23
**confirming** 139:7
**confronting**
336:20
**confused** 171:21
264:10
**confusing** 176:23
**confusion** 227:17
227:20 354:12
**congress** 2:13
**connect** 49:10
**connected** 45:3,6
45:10 73:19
125:18 207:4,5

358:19
**connecting** 89:6
89:16 268:22
337:7 346:4 363:3
**connection** 47:10
80:10,14 87:13
91:8 296:6 301:18
301:21 327:13,18
346:1 362:5 389:9
389:10,11,14
407:22
**connections** 46:5
46:10,23 73:14
86:17 105:1 219:3
324:24 327:24
329:24 389:12
**connectivity**
192:11 195:2
**connectors** 73:2
**connects** 269:17
349:10
**cons** 290:22,23,24
**consciously** 395:6
**consider** 12:5 37:4
135:4 142:3 151:4
151:5,7 181:5
314:16,20 362:24
363:11,19 378:20
379:22 381:5
382:9,23 384:8,21
388:5 392:20
395:8 397:2,4
399:11 400:9,14
401:10 402:14
403:21 404:7
410:14 412:8
413:15 422:13
423:5,8 426:12,14
**consideration**
322:20 385:10

**considerations**
406:1,4,6 407:21
**considered** 8:16
8:19 9:5 10:14,21
11:22 39:10 41:9
41:24 45:13 51:12
120:10 129:11
154:24 186:11,21
187:17 195:11
292:15 310:1
314:10 325:18
365:4 377:3
383:15 386:6
406:4
**considering**
155:19 337:14
411:18 421:22
**consist** 414:16
**consistent** 14:24
19:16 57:18 60:3
70:4 100:24
193:22 196:2,9
209:5 306:9,21
312:13,20 323:9
**consists** 192:10
378:22
**constraints** 36:5
**construction**
82:12 223:7 389:7
389:11,16 390:16
**consultant** 268:14
**consulting** 299:7
386:22
**consumer** 56:7
341:17
**consumers** 56:2
**cont'd** 3:1 6:1
**contact** 99:9
263:24
**contain** 40:14
208:17,19 257:19

259:17 397:11
398:13 408:13
**contained** 152:12
181:13
**containing** 195:19
384:5
**contains** 407:4
**contending** 15:10
**contends** 375:2,6
376:20,21 378:5
399:22 408:7
411:3 415:9,14
417:23
**content** 304:21
387:8 402:7 403:2
410:22
**contention** 17:21
18:9 33:13 378:11
**contentions** 19:1
**contents** 31:3,9
32:17,17 228:20
**contest** 128:20
**contested** 263:2
**context** 18:20 41:9
72:23 82:3 92:11
102:15,20,21
114:22 125:24
174:20 219:23
220:3 247:5
325:15 326:14,23
358:15 370:5
373:13 388:3
401:23
**contextualize**
428:7
**continue** 25:20
102:12
**continued** 34:18
143:1
**continues** 25:16

**contradicted**
383:12
**contrary** 27:16
62:11 407:15
**contributed**
427:15
**control** 47:24
57:10 58:8 82:7
93:6 176:24
198:13 207:1,12
272:7 334:12
337:20 380:5
**controller** 45:14
45:15 46:13,15
47:8,19 48:2
71:24 80:11 84:1
84:18,20,22 85:1,3
85:7,10,10 86:19
87:10 101:9,17
102:9 104:23
189:13,17 204:21
204:23 205:2,5,12
205:13,22 206:24
212:19,20 214:9
214:12 329:15,16
329:18,19 330:9
362:2 366:6,13
**controller's** 211:2
**controllers** 48:6
81:17 87:11 93:2
102:5 198:11
205:4 208:16,18
208:23 259:16
**controlling** 80:4
207:3
**convection** 87:8
**convenient** 190:3
**convention** 253:18
**conventional**
125:17 279:14

**conventions**
252:19,21 253:5
253:13 254:19
**conversation**
225:23
**convey** 27:24
**conveying** 54:10
61:21
**conveys** 344:6
**conviction** 378:10
396:15
**convince** 40:20
409:20
**convincing** 375:23
376:17 378:8,9,13
396:13 400:1,4
408:4,12 411:6
**convoyed** 424:16
**cool** 166:17
**cooperation**
304:23
**copied** 207:14
395:11 406:16
**copies** 373:9
430:15,16
**copy** 25:13 182:10
198:5,8 224:16,19
228:22 296:5
297:19,21 302:2,9
307:8 321:6
374:24 430:20
**copyright** 27:13
27:20 28:15 31:16
32:12 53:12,19
54:4,6,9,23 55:7
56:10,13 57:1,11
57:14,15,17 60:22
60:24 61:2,4,24
63:3,5,16 65:9,11
66:6 67:3

**copyrights** 55:11
**cornell** 268:8
**corner** 69:15
158:9,18 159:12
280:20
**correct** 9:17 20:4
36:17 39:12,17
40:4 49:12 60:8
89:17 94:23 95:11
96:21 97:2,14,15
97:19,20,22 98:11
98:12,22 99:18,19
100:8,9 101:9
103:19 107:21
108:15 109:24
111:1,8,16 112:10
114:14,21 115:8
117:7 120:7
121:10 125:8
127:4,17 129:5,9
132:12,13,18
135:21 136:7
138:18 139:11
140:7 141:10,23
142:5,18 144:6,9
145:9,12 146:3
149:17 151:1,21
152:14 154:16
155:22 157:14,15
157:17,22 158:14
158:19 159:16,19
160:1 161:5,19
164:4 165:22
169:18 171:6,7,11
171:12 172:17
176:10,11 180:18
181:13 182:2
185:10 186:4
191:8 192:15
193:1,23 194:16
195:24 196:18

199:21,22,24
203:20,23 204:19
204:22 206:17,21
206:24 207:4,18
208:1,24 209:1,6,8
209:23 210:1
212:9,16 213:24
214:1,10 215:4
223:4,8,9 226:19
228:22 230:22
259:8 271:11
273:6 274:7,8,15
276:24 277:13,14
277:15,18 283:18
287:14,15 288:9
291:23 295:15
296:7 297:5 299:4
300:7,13,17 301:3
301:16,23 305:1
306:3 309:4,17
318:1,2 319:16
323:17,24 331:9
332:19 333:15
334:9 335:9
340:14 349:5
352:11 364:11,24
367:2 368:10,11
389:1 430:15
432:8
**corrected**   179:10
328:22 329:2
**correction**   328:22
**correctly**   189:22
396:8 432:6
**correlates**   194:7
291:3
**corresponding**
83:3 325:2 326:1
327:24
**corresponds**   212:8

**corroon**   3:3
**cost**   279:18
**costs**   421:1
**counsel**   9:23 98:18
98:18,19 118:5
119:7,10 133:15
134:4,24 164:8
181:16 182:1
224:19 226:19
237:23 248:9
253:5 260:12
261:21 262:20
263:12,16,22
264:12 276:3
322:11,21 432:9
**counsel's**   120:12
**counted**   189:22
**couple**   7:16 18:15
29:3 226:15
252:20 363:24
373:2,8 430:12
**course**   14:18
114:4 117:9
142:14 169:6,7
227:1 277:23
284:4 322:1,5
349:10 350:8
385:19
**court**   1:1 7:1,4,6
7:12 8:2,6,9 9:7
9:14 10:1,24 11:6
11:12,15 12:7,17
13:7,20 14:1
15:13 16:8,13,20
16:23 18:1,19
19:2,7,13,23 20:10
20:17 21:24 22:18
23:4,8,16,20 25:17
26:7,22 27:7,16,21
28:3,13,24 29:11
29:18,21 30:1,5,11

31:5,10,20 32:11
32:19 33:17 34:5
34:9,15 42:18
54:3,15,21 58:24
61:18 62:6 63:2
63:19,24 64:10,13
65:19 66:20 69:9
75:2,12 77:16,24
78:11,19 79:7
83:9,14 88:17
94:6,9,13 96:14
101:23 122:18
123:16 124:1,9,15
124:21 130:15,19
131:14,24 132:8
132:15 133:3,9,19
134:1,7,14,17,20
137:4,11,15,16,20
152:19 163:9
168:3,8 177:5,13
177:18,22 178:2,6
178:9,11,21 179:1
179:4,18,22
182:21 183:12
190:4,9 197:11,21
199:14 202:5,8
214:18,20 215:11
216:24 217:4,11
219:10,16 220:1,9
220:21 221:8,14
221:17,22 223:7
223:12,20 224:1,2
225:4,12,16,22
226:5,11,13,14,17
227:16 228:5,10
228:15 229:5,9,13
229:23 230:10,16
231:5,9,14 232:1
232:10,22 234:1,7
234:11,19 235:1,5
235:8,10,21 236:1

236:9,15,22 237:2
237:8,12,20 238:4
238:20 239:4,8,11
239:16,21 240:6
240:10,20 241:3,9
241:20 242:5,11
243:3,21 244:3,6,8
244:13,24 245:14
246:2 247:11
248:1,6,12,16,19
248:23 250:24
251:6 260:16,19
260:23 261:5,15
262:1,7,10,17,23
263:3,7,11 264:1,9
264:23 265:12,17
266:11,17,20,21
270:21 275:2,5,16
275:23 276:14
280:3,16 296:12
296:22 298:6,9
303:12 306:14
311:19 314:18
315:1,11,21 316:1
316:6,15 318:19
318:22 319:8,11
319:18 320:7,19
326:8 330:15
331:23 335:12
337:10 344:12
348:7 355:11,14
363:23 364:3,7
366:21 369:14,18
369:22 370:10,16
371:9,20 372:1,5,6
372:18,24 379:18
379:20 385:3,10
430:6,11,22 431:3
431:7,17,19
**court's**   19:17
388:17 389:6,10

[court's - decision]                                                    Page 18

389:16
**courtroom** 1:18
23:19 137:10,19
223:19 248:22
309:10 370:9
372:23 379:15
382:3 385:13
429:14,19 430:5
**cover** 16:10 89:15
101:11 227:5
286:8 388:9
395:21
**coverage** 388:5
**covered** 81:24
243:16 382:4
393:3
**covers** 387:22
388:11,12,13
390:17,24 391:7
393:13
**craig** 185:2
**crash** 338:3
**crashes** 338:11,14
**create** 36:1 293:9
293:10
**created** 185:4,9
**creative** 404:24
**credibility** 314:9
318:10,16 382:18
382:19
**credit** 384:15
**credited** 425:15
**criminal** 378:17
**critical** 284:24
**cross** 4:7,11 9:24
30:18 33:13 94:17
177:17 207:8
225:9,10 250:23
251:10 258:12
261:14,16,18,18
262:15 263:15,19

263:23 295:1
298:8 311:18
317:23 320:6,8
**crr** 1:21
**curative** 178:5,20
**cured** 179:22
**curiosity** 429:20
**current** 51:3
424:20
**custom** 200:20
201:1,6,10 258:20
**customary** 283:11
425:10 428:1
**customers** 416:15
420:6
**cut** 385:14

**d**

**d** 1:20 2:11 4:1 7:5
269:3 406:18
**dadams** 2:17
**damage** 396:1
**damages** 17:6,17
18:24 375:4,8
376:4,7,22 377:21
377:23 378:2
413:5,5,9,12,16,17
413:19,20 414:2,4
414:7,8,9,10,13,23
415:1,8,11,15,17
415:19 419:20,24
420:2 426:23
427:6
**daralyn** 3:9 295:8
**darryl** 2:12
**data** 8:22,24 12:8
72:13 74:13,16
75:17 76:1 84:6
86:2 126:13
250:22 257:14
258:3,5 289:19
291:4 334:23

335:1,1 337:21
339:23 342:8,9
343:9 350:1 353:5
353:16,17 354:2,3
354:6,9,21 355:2
356:14,16,24
357:3,12,13,24
358:11 361:6,15
361:18
**database** 151:21
**date** 1:15 27:13,14
27:17,20 28:15
31:17,18 33:14
38:5 52:4 53:12
54:23 55:5,15
56:9,10 57:1,11,14
57:15,17 59:10,11
60:1,4,22 61:2,4,6
61:14,24 62:13,24
63:3,5,6,16,17,20
63:21 65:9,12,23
66:6,6,10,14,16,17
67:3,3,9,12 68:7
70:10,23 161:17
169:1,11 170:7,12
171:3,5,15 173:5,8
173:11,13 174:15
174:24 175:8
176:3 177:1 180:4
180:7,10,12,14
183:19,20 184:2
241:6,10,13
245:18 247:7,15
247:15,23 248:1
249:11 253:6,14
255:2 257:9
271:23 302:17,19
344:8 348:23,24
406:24 409:12
410:11 411:12
421:21 426:20

**dated** 169:5 171:3
203:19
**dates** 26:15 32:5,8
32:9 33:15 55:7
56:13 57:18 59:9
67:17 94:2 172:5
185:17 245:10
258:2 284:22
**day** 20:20 21:2,15
21:16 24:4 267:13
366:8 432:12
**days** 9:1 106:11
185:18 348:19
**ddurie** 3:12
**deadlines** 18:10
**deal** 33:15 255:19
**dealing** 43:2
**deals** 45:15
**decade** 295:16
**decide** 46:16 78:23
246:5 342:4
375:10,17 376:2,4
377:13 382:13,16
387:16 388:14,15
388:22 391:9
393:7,12,14
394:11,19 395:23
402:17
**decided** 31:6
318:3 411:1
**deciding** 382:22
384:18 393:5
397:8 399:9
402:22
**decision** 45:16
120:19,23 129:24
132:16 311:8
326:18 369:5
379:16,20 380:12
387:15 393:9
395:24 401:19

**decisions** 129:4
383:22
**deck** 120:20
211:10
**declaration** 104:4
107:9,13 113:3
115:23 116:15
117:4,18,20
118:13 125:10
132:24 135:13
**declaring** 136:15
**decreased** 426:16
**dedicated** 46:10
46:22 85:18 86:16
86:20 105:2
327:13,18,24
329:24 362:5
389:9,10
**defendant** 1:9
3:15 117:11
374:14
**defendants** 270:9
**defense** 392:14
396:2 398:22
**defenses** 398:23
**define** 113:15
198:22 331:14
387:22,23 388:4
388:18
**defined** 193:23
414:19
**defines** 195:19
331:11
**definitely** 179:20
262:1 263:1
**definition** 196:7
331:18,20 332:9
389:22
**definitions** 194:23
195:18 388:24
389:2,3

**degree** 122:23
123:5 268:7
367:14
**degrees** 69:11
123:22,22
**delaware** 1:2,18
1:22 2:6 3:5 27:3
27:11 261:20,22
262:21 263:21
264:13
**delay** 249:7
**deliberate** 22:11
25:1 371:13,16
373:8 387:15
395:5 427:22
**deliberating**
428:23
**deliberation**
385:23
**deliberations** 25:5
249:19 375:12
413:13
**delphi** 117:6 201:7
202:2,13 204:4
209:9 374:16,17
**delphi's** 181:24
**delve** 264:3
**demand** 404:6
417:5,14 418:9,11
**demonstrate** 32:3
245:17
**demonstrative**
77:7 78:21 83:10
177:11 224:20
228:2,17 232:20
235:20 240:17
244:21 255:10,21
287:23 288:3,5
386:4,9
**demonstratives**
78:13,14 236:4

253:24 255:6
**demultiplexer**
148:11
**denies** 265:23
266:6 375:5,7
**denying** 378:4
**depend** 270:14
394:2
**dependent** 273:10
291:21 292:21
313:15 390:19,19
390:24 391:1,3
394:4,13,14,15
**depending** 24:6
30:17,19 205:15
**depends** 83:20
180:14 319:12
351:17 388:11
390:20
**depiction** 113:4
**deponent** 264:15
**deposed** 160:13
161:2
**deposition** 157:1
160:16 162:4,9
171:10 213:3
215:8 216:18
217:16 218:16
219:12 220:7,15
221:12,15 236:23
264:15 265:3,4
307:8,10,11
308:13 312:17
385:6,17
**derivative** 424:16
**describe** 11:17
111:18 350:21
361:13,17 397:20
397:22 408:19
409:23,24 412:6

**described** 58:5
85:22 100:3 105:5
108:3 110:7
112:13 172:22
192:11,17 230:1
268:12 342:21
347:13 360:19,23
399:17
**describes** 13:15
100:14,16 105:17
200:20 347:8
**describing** 14:18
**description** 12:16
12:20,22 13:2,5,8
13:14,22 14:6
15:3,9,11,22 16:1
88:23 111:21
112:11 200:12
259:13 343:10
344:4,5,20 345:8
345:13 367:5
388:2 397:12
398:14 408:9,11
408:14,18 409:2,3
409:9 410:4,6,24
**descriptions** 26:18
112:21
**deserve** 386:18
**deserves** 380:1
384:2
**deserving** 126:13
**design** 182:17
269:8,23 270:1,4
301:6 308:9,15
395:20 406:11
420:4
**designated** 94:22
143:21
**designed** 268:21
268:23 348:13
424:3

| | | | |
|---|---|---|---|
| **designer** 348:6 | **determines** 46:15 | 100:8 101:8,17 | 332:10,16,22 |
| **designers** 351:6 | **determining** 323:6 | 102:6,8 104:22 | 333:6,13 334:1,6 |
| **designing** 351:9 | 382:15 387:8 | 105:18 150:22 | 334:13 336:10 |
| **desire** 56:5 | 400:7 402:2 | 151:3 162:24 | 337:1,2,5,9,20 |
| **desired** 426:4 | 408:22 412:9 | 164:7 165:17 | 341:7,23 342:6 |
| **despite** 233:23 | 422:13 423:4 | 189:12,12,17 | 346:3 347:13 |
| 419:1 | **deterred** 128:1 | 192:9,14 193:22 | 350:1,17 351:16 |
| **destroyed** 157:10 | **developed** 217:21 | 194:5,5 195:2 | 351:22 352:6,24 |
| **detail** 24:12 | 374:18 | 198:2,11 199:23 | 354:7,13 355:24 |
| 184:20 209:16 | **developer** 351:22 | 199:24 200:2,3,3,4 | 358:8,8 360:21 |
| 214:15 398:22 | **developers** 301:3 | 200:21,22 201:1,7 | 361:24 362:2,6,7,9 |
| 408:21 409:17 | **developing** 197:6 | 201:11,12 202:23 | 362:16 363:5,15 |
| **detailed** 211:5 | **development** | 203:3 205:4,5 | 365:12,13,16,24 |
| 376:9 415:16 | 141:13 | 206:11 207:4,24 | 366:5,11 389:6,16 |
| **details** 92:16 | **device** 9:10,16 | 208:12,16,17,18 | 389:17,17 401:21 |
| 156:20 192:18 | 11:16,20,21 12:3,5 | 208:18,23,24 | 401:22 |
| 203:9 301:7 308:9 | 12:11 29:6,16,23 | 212:8,18,18,20 | **device's** 325:1,24 |
| 308:15 | 31:13 35:7,8,15,16 | 213:14 214:3,8,9 | **devices** 29:10,17 |
| **detects** 258:20 | 35:19,19,21,21 | 214:10,12 216:5 | 31:7,8 35:24 36:3 |
| **determination** | 36:4,16,19,20,23 | 216:11 225:15 | 36:11 43:4,10 |
| 141:8 151:12 | 36:24 43:12,14,17 | 226:23 229:21 | 45:17,18,21 47:13 |
| 152:9 410:13 | 43:18,20 44:1 | 230:7,8 232:19,21 | 49:6,7,16,18 50:5 |
| 423:9 | 45:4,20 46:1,17,20 | 234:23 236:7 | 50:9,14,24 51:7 |
| **determinations** | 48:1,2,10,11 51:10 | 249:17 250:8,11 | 52:19 73:4,8 |
| 316:14 317:12 | 51:11,17,21 52:9 | 250:13,15 251:23 | 75:21 79:24 80:4 |
| 388:19 | 53:1,6 55:6,9 | 252:1 256:7 | 81:4 90:19 91:2,9 |
| **determine** 27:6,14 | 56:24 57:10,13 | 258:21 259:2,6,6 | 92:7 108:11,12 |
| 59:4 80:21 142:4 | 58:8 59:5 60:7 | 259:16,16,21 | 111:14 112:7 |
| 169:17 170:12,15 | 65:10 66:9,17 | 260:3,3 274:2,6,10 | 113:5,7 114:6,6 |
| 175:17 281:21 | 67:5,10 68:3 | 277:7,13,17 278:4 | 139:8,9 151:11 |
| 339:22 390:8,17 | 70:12,19 71:2,24 | 278:6,10,17,17 | 194:2 203:2,5 |
| 390:24 391:7 | 72:19,20 76:2 | 281:2,11,13,19,22 | 208:4 212:3 227:4 |
| 393:17,22 395:7 | 80:8,11,18,21 | 283:16 284:8 | 230:3 259:4,6,22 |
| 399:6 402:6,11,24 | 81:11,17 82:8,17 | 285:5,16 286:16 | 259:24 260:2 |
| 403:2,3,17,22 | 84:5 85:6,9 86:3,4 | 286:23,24 287:1,3 | 271:22 277:17,21 |
| 405:20 410:6 | 86:17 87:10 88:2 | 287:5,7,12 288:24 | 278:11,12,19,23 |
| 416:14 420:6 | 88:10 89:6,15 | 289:6,23 290:5 | 279:7,9,10 281:22 |
| 422:16 | 90:2,8,24 91:1,3,5 | 291:1,18 293:8 | 281:23 282:8,10 |
| **determined** 27:19 | 91:7,11,15 92:2,8 | 324:23 325:1,23 | 282:14,20 283:5 |
| 28:5 318:4,6 | 92:11,12,18,22 | 326:1,9 329:6,8,16 | 283:24 284:14,16 |
| | 93:2,6,8,13 100:4 | 329:19 331:5 | 284:21 285:6,15 |

285:19,22,23
286:2,15 291:13
294:16 301:7
308:10,16 325:15
325:24 337:16
340:24 347:20,24
348:3,15 350:14
350:15 351:1
352:3 359:23
360:5,12 367:21
368:16 425:1
**diagram** 35:3 87:5
106:5,14,15 113:7
113:18 192:24
199:20 204:17,20
206:9 209:22
210:22
**diagrams** 111:11
112:5
**dickens** 11:19,20
38:15,16,23,23
39:11,15,21 40:1
40:10,14 41:11,17
41:23 42:23 43:5
43:24 44:11,18,21
44:22 45:2,12,21
46:4,11 48:24
49:3 50:19,23
76:10,16,16,19
77:1,3,7,12 78:4
79:18 80:19 81:21
82:2,15,24 83:2
84:11 85:4 87:2,8
87:8,14 105:6
107:24 119:13,16
119:22 120:6,13
125:5 127:7
135:20 140:1,5,12
150:23 154:18,21
156:6 169:3 274:1
277:12,13 286:2,8

292:6 294:17
323:20,21 324:4,9
325:7,21 326:7,8
327:8,12,17,23
332:3 333:19,24
348:13,18,24
349:3,14,23
368:15 398:4,8
**die** 186:1
**difference** 27:22
28:4 55:20 56:12
92:6 289:6 317:2
320:18 330:4,20
330:22 348:11
381:22 383:22
419:1
**differences** 183:7
187:7 303:7 402:8
403:13,18 405:8
**different** 29:17
71:19 73:8 81:17
91:16 109:5 116:9
133:22 144:21
159:20,21,22
160:15 164:24
188:6 211:3,6
233:15 234:4,6
238:1 239:6
242:19,22 243:1,9
251:22 252:11,18
252:20 254:23
264:6 265:5
279:18,24 285:15
289:9,18 310:14
315:3,4 320:3
331:19 343:11
349:6 368:21,24
369:6 376:14
389:2 390:3
414:12 415:1,2
428:13

**differently** 331:8
377:6
**difficult** 334:15,19
396:17
**digit** 253:13,18
254:4
**digital** 268:20
269:2
**digits** 147:20
**direct** 4:5,10 33:19
34:18 199:21
221:12 250:10
262:14,16 263:13
263:17 267:6
314:5 315:7
381:11,12,22
382:2,12 392:23
**directed** 405:10
**direction** 412:17
**directly** 61:22,22
80:5 100:21 101:6
165:3 298:21
299:2 314:8
318:16 375:3
392:22 393:6,15
393:19,21 394:19
**disagree** 15:5 40:7
99:22 132:23
196:4,6 200:23,24
230:15 326:5
332:13,17 333:1
352:19 358:20
**disagreed** 121:14
125:6 129:8
**disagreeing** 128:1
328:4
**disagrees** 13:12,21
15:21 418:1
**disappears** 239:10
**disassembled**
227:3 230:19

**disbelief** 407:12
**disclose** 11:9 90:8
209:16 277:21
285:24 286:3,3
291:13,17 411:9
**disclosed** 9:2,13
9:20 11:9 13:6
14:2 15:17 78:5
90:19 109:1
143:14,16 346:18
399:17 412:18
**discloses** 11:3
110:10 408:23
**disclosing** 104:22
142:1
**disclosure** 257:14
342:12,20 343:23
**disclosures** 91:21
91:24
**disconnect** 291:7
**disconnecting**
291:5
**discounted** 95:20
**discoverable**
235:14
**discovered** 146:14
181:20
**discovery** 226:22
228:7,9 230:9
234:10 236:14
238:23 241:23
248:14
**discuss** 16:17
284:1
**discussed** 17:11
140:5 247:7,8
261:11 337:9
**discussing** 264:12
335:13 346:15
**discussion** 26:5
34:7 53:23 55:1

61:9 66:2 74:19
75:14 77:18 78:9
79:12 90:21
123:11 124:16
133:10 134:18
138:16,21 154:4
177:6 178:23
209:15 219:17
222:2 261:8
265:10 274:20
276:15 314:2
320:23

**disk** 32:13 33:6
268:22 269:17

**display** 280:19

**displayed** 224:13

**displays** 285:10

**dispositive** 315:19
426:11

**dispute** 23:10
176:3 228:2
241:17 278:16
315:5 316:13
352:4,5,7,12
360:16

**disputes** 317:11

**disputing** 316:15
316:16 359:22
360:5,11

**disregard** 135:2,3
163:11 168:5
179:11,23 240:15
245:3,21 246:15
246:18,20 247:17
249:12,21 379:14

**distinct** 427:1

**distinction** 28:9
108:5 382:11

**distinguish** 354:14

**distinguished**
425:16

**distributed** 113:12
114:1

**district** 1:1,2

**disturb** 87:12

**diverted** 417:22

**doctorate** 367:14

**document** 31:22
44:5,6 58:16 62:8
74:10 107:4 126:9
135:9 181:4,11
182:17 183:5
186:7 187:16
191:1,21 193:4
194:15 195:10,11
196:22 290:18
343:19,23 405:22

**documentation**
27:5,13 40:19
57:6

**documents** 37:23
37:24 41:1 108:2
126:19 132:20
141:7 145:14
146:12 155:4
177:17 181:17,23
184:14,21 185:4,8
191:5 195:14
198:22 271:21
274:13 301:8
308:11,19 367:17
379:1 386:16

**doing** 41:15 44:5
60:17 63:22 78:1
81:19 92:10
162:23 169:20
175:15 232:17
339:9 351:14
429:5

**door** 21:18 22:13
30:21

**double** 431:13

**doubling** 269:16

**doubt** 32:7 70:18
165:18 206:4
234:19 254:23
378:16

**downstream**
189:17 213:23
214:8,9

**dr** 4:9 7:24 8:5
12:15 17:17,20
18:11 197:6 232:5
266:19 267:12
270:18,24 273:19
276:22 278:14
280:5,22 282:9
285:20 290:11
291:11 293:5
294:19 295:4
306:9,22,24
307:22 314:5
317:18,19,23
319:6 321:2,13
364:18 366:24
372:12 384:6,6,19
384:20

**draft** 181:11,11
183:18 304:21

**draw** 62:1 78:18
234:22 293:19

**drawing** 294:2

**drawn** 87:6

**draws** 61:19 78:19

**dream** 106:8

**drew** 54:7

**drink** 138:3

**drive** 32:16 33:7
33:10 268:22

**driver** 201:6,10

**drivers** 57:9 58:7

**drives** 269:17

**drops** 382:4

**ds** 189:16 213:23
214:8

**ds4rl** 189:20

**dual** 35:3,12
148:10 309:5,8
393:14 415:21
416:7,15 417:1
418:24

**due** 420:15

**duly** 267:3 432:5

**durie** 3:8,9 4:12
7:10,23 8:3,7,10
10:12 11:5,8,13
12:13 13:24 14:22
16:11,19 19:10,14
20:4 22:24 178:8
223:23 224:5,10
225:13,21 226:1
226:16,18 228:4
230:5,11,12
233:24 234:5,8
236:9,11,17
238:19,21 239:5,9
240:7,9,14,23
241:8 242:3,9
243:20,22 244:2,4
244:7,9,14,18
245:6,24 248:4,15
261:14,16 262:12
263:5 264:8 266:8
270:20 274:17,22
275:3,8,20 276:4
276:11 280:15
295:3,8 296:2,4,9
296:14,16 297:11
297:15,18 298:3,8
298:11,12 301:11
301:13 302:1,6
303:9,14,16

306:17,18 311:13
311:15 312:16,24
313:11,13 314:8
314:19 315:9,17
315:24 316:3,12
316:23 317:21
318:21 319:10,16
320:4,11 321:1,11
325:13,19,20
326:11 328:8,12
332:7 336:15,18
337:23,24 338:5,9
338:16,19 341:1,4
344:13 354:16,20
355:9,16,22
363:20 365:3
366:20 367:7,23
368:12,20 369:9
369:13,17 371:2
371:17,24 372:8
**durietangri.com**
3:12,13,13,14
**duty** 110:8 141:21
141:24 388:17
**dwell** 314:14

**e**

**e** 2:1,1,4 3:1,1 4:1
5:2 6:1 266:24
407:6 432:1,1
**e4** 288:5
**earlier** 18:8 24:20
35:4 39:10 41:5
62:3,21 74:1
82:17 116:9
126:24 138:9
140:6 169:5
251:18 257:3
279:1 281:18
290:18,21 346:15
367:7 392:11

**early** 181:10
278:22 348:19
**earned** 268:6
**easier** 351:21
**easily** 51:6
**edit** 304:22
**edited** 385:14,18
**edition** 166:15
167:5
**education** 399:13
**ee** 122:23 123:6,21
**effect** 290:4
424:11
**effective** 271:23
279:18 369:12
409:12 411:12
**effectively** 388:7
**efficient** 21:16
**effort** 312:11,20
395:18
**egg** 29:22
**eight** 137:7 299:21
300:2
**either** 21:10 38:23
61:21,22 95:9
111:18 118:6
139:24 154:15
160:20 217:12
220:10 271:21
278:11 282:8
317:11 322:6
343:6 382:12
388:9 413:11
422:19
**ejection** 291:2
**elaborate** 112:13
**electrical** 268:8
**electronic** 148:22
155:24 156:2
**electronically**
229:10 230:2

**electronics** 73:16
**element** 39:24
40:2,15 46:23
49:4 85:16 272:3
272:5,12,16,18,19
273:1,2,13 276:24
277:4,9,12,22
278:1 284:10
285:24 286:4,11
288:17,18,19
291:18 292:8,10
292:23,24 293:4
317:8,15,16,16
318:6,7 365:17
401:2
**elements** 44:24
46:3 271:17
273:12,17 292:22
293:3 314:22
315:10,20 316:11
317:13 318:4
366:7 367:1
368:10 392:1,4,7
404:1 405:13,15
405:18 421:7
425:17
**elicit** 15:20 65:22
**elicited** 236:13
**eliciting** 63:14
**elicits** 65:23
**elmo** 234:16
**email** 7:15,22
**embedded** 71:23
202:23 203:3
353:8 354:4
**embodied** 358:23
**embodiment**
397:23 410:1
**embodiments**
111:18

**embodying** 426:6
**emphasis** 428:2
**employed** 268:11
269:14 299:24
**employment**
268:19 298:20
299:1
**emulated** 43:9,10
**emulation** 80:7
**emulators** 79:19
79:21 80:6
**enable** 91:24
345:4 397:13,21
398:17 411:10
412:7
**enabled** 17:17
366:1,11,12,14
367:2 411:17
**enablement** 12:20
13:3,14 88:23
345:9,15 362:22
362:23 363:10
365:4 366:18
398:20 411:5,8,16
411:19 412:5
**enables** 84:4
365:11,13,16
**enabling** 366:18
**encoded** 180:15
**encompass** 89:21
264:21
**encompasses**
43:11
**encourage** 74:24
**endpoint** 47:19
72:5,12 73:23
74:1,3 76:4,21,23
79:22,23 80:16
81:9 82:3,4,7,23
84:23 85:5,16,23
85:24 87:11

189:15 200:9
206:18 212:11,17
212:19 214:12
257:20 352:13,16
352:22 353:12,22
354:6,12,13 356:4
**endpoints** 82:20
83:4 87:5 208:19
212:3 259:18
352:23 353:11,15
353:19,20 354:1
**engage** 363:13
**engaged** 267:23
**engagement**
304:16 367:20
**engagements**
270:2 301:18,21
**engineering** 85:11
182:17 209:15
268:7,8
**enhanced** 229:10
229:14 238:11
**enhancement**
229:17 238:18
**enjoy** 304:11
405:1
**enjoyed** 160:20
**ensure** 408:15
**enter** 422:7
**entered** 23:18
137:18 248:21
372:22 422:2,10
**entertain** 20:15
**entire** 12:23 131:4
272:20 411:2
**entirely** 134:9
**entities** 420:12
**entitled** 375:4,8
376:21 378:2
385:9 414:13
419:2

**entitlement**
416:12,23
**enumerated** 100:6
289:8,12,18
331:15 362:8
**enumeration**
125:16,19 332:4
**ep** 145:23 189:14
194:24 195:18
**equal** 351:20
377:11
**equally** 283:15
**equipment** 420:3
**equivalency**
116:11
**equivalent** 339:19
**eric** 3:9
**error** 19:1 243:18
291:2,6
**especially** 55:22
283:11
**esquire** 2:3,4,10
2:10,11,11,12 3:3
3:9,9,10,10
**essentially** 48:3
76:22
**establish** 29:7 46:9
46:21 245:15
278:20 319:1
362:5 376:7
377:21 400:2
414:2
**established** 423:13
423:22 424:20
**establishes** 294:6
414:5
**establishing** 86:15
408:11 411:6
**estoppel** 316:2,5,7
316:9 317:11

**et** 142:13
**ethernet** 269:12
**european** 145:22
**evaluate** 324:4
385:11 404:13
**evaluated** 398:24
**evaluating** 387:9
410:4
**event** 337:19
**events** 379:24
**everybody** 23:21
237:9 430:2
431:17
**everyday** 148:13
379:23
**evidence** 10:9
17:14,15,23 19:12
20:18 21:4 24:4
25:7,10 26:14
27:15 33:3,5 35:2
70:21 88:14 93:12
137:8 197:11
228:24 229:2
232:11,14 233:14
233:23 236:5,6,21
245:16 246:24
249:18 251:1
256:3,4 280:14
286:10 289:15
290:4,8 335:12
342:11 372:9
375:14,20,23
376:8,12,16,18
377:1,2,2,7,8,18
377:24 378:9,9,10
378:13,14,21
379:6,17,22 380:2
380:6,8,10,13,15
380:17,19,24
381:3,4,5,9,11,12
381:12,17,18,19

381:23 382:2,6,10
382:12,14 383:13
383:16 384:17,23
385:21 386:6,7,10
386:13,15 387:5
387:10,10 391:10
391:14 392:9,15
392:24 395:1
396:13 399:11
400:2,4 405:16,24
406:20,21,23
407:20,23 408:1,5
408:12 411:6
414:3 416:13
417:4,19 418:3
420:1 425:7
426:12 428:3,8,13
428:17,21,24
429:7,8,9,13
**eweiner** 3:13
**exact** 216:16
408:21
**exactly** 10:2 15:5
24:7 54:1 61:16
103:2 108:8
113:16 117:22
156:21 168:13
181:21 293:16
294:9 336:23
363:7
**examination** 4:5,7
4:10,11,13 30:18
34:18 94:17
141:18 144:3
224:13 225:9,10
250:3 260:7
263:14,15 267:6
295:1 364:15
396:20
**examine** 107:18
162:18 169:17,23

317:23 324:9
**examined**  38:17
58:18 59:16 157:5
157:8 267:4 320:6
320:8 323:4
**examiner**  146:15
151:12 155:9,15
**examiners**  132:17
141:8,17 144:2
155:20 322:12
323:22 324:8
**example**  14:16
18:4 44:4 45:1
181:10 246:8
254:7,10 381:12
381:21 395:19
421:10
**examples**  388:2
409:18 412:20
**exception**  394:1
**excerpt**  219:12,21
219:22
**exchange**  177:15
**exchanged**  8:12
88:1 230:9
**exchanging**
177:17
**exciting**  171:20
**exclude**  243:23
248:13 385:15
423:24
**excluded**  23:11
381:2,6
**exclusive**  423:18
423:18
**exclusivity**  424:4
**excuse**  44:23 46:2
82:24 103:9
159:21 174:9
189:9 191:14
201:16 208:6,17

217:17
**excused**  137:9
223:18 261:3
369:21 370:8
430:4
**exhibit**  10:9 31:2
35:2 42:4,7 51:23
53:5 58:10,13,22
60:10,11,14 68:17
68:18,22 69:6
74:5,7 88:5,6
106:2,18 125:15
125:20,23 140:17
152:22 153:3,15
153:19 156:12
157:2,8,13 161:8
161:22 162:8,9
167:16 171:19
176:18 180:21,21
182:5,7,14,24
186:24 187:2
188:17 190:19,20
191:6,8,15,20
192:20,21 193:1
193:23 196:12,14
196:19 197:18
199:1,2,11 201:16
201:20 202:4
203:12,15 205:8
210:7,13,15 212:7
212:9 214:3
218:11,24 228:14
230:19 233:13
235:19,22 236:8
236:19,23 237:3,5
237:15,16,17,24
238:22,22 239:15
239:19 240:3,10
240:16 241:18,18
244:11,11,12,13
245:23 246:3,23

250:18 251:9
255:9 258:9 280:6
280:7,14,19
287:24 288:4,5
290:7 296:15
297:12,16,19
298:3,5,7 302:2,4
302:8 311:13
321:9 325:9 326:4
326:15 354:17,18
361:22 372:8,11
372:14 380:7
381:8 386:9
**exhibits**  25:8
88:14 103:17
186:20,20 190:24
241:23 379:2,11
385:20,21,22,24
386:4,5
**exist**  108:6 223:3,6
**existed**  169:11
403:22
**existence**  401:2
**existing**  18:10
186:12 410:20
424:13
**exists**  111:21
**expand**  91:13
**expect**  22:23 24:2
24:9 90:5,15,20
146:13
**expectation**  25:3
374:5 401:16,24
**expectations**
81:18 421:24
**expected**  178:13
**expenses**  421:2
**experience**  49:22
172:13,21 268:17
305:8,10 348:5
367:11 380:1

399:13 420:4
**experiences**
379:23
**experimentation**
92:3,5 93:4
411:15 412:1,11
412:14,15
**expert**  12:17 27:5
27:12 30:14 94:23
94:24 95:1,18
97:10,24 98:5
170:11 181:2,3
186:11 187:17,20
193:11 194:15
226:24 270:3,6,18
288:6 293:14
295:10,18 296:6
296:19 297:7
301:14 304:16
305:21 307:4
309:14 310:11,14
312:7 313:1,7
318:11 321:2,15
324:12 344:22
345:1 346:7
354:22 367:21
**expertise**  187:12
296:22 297:4
298:14,17 301:23
303:22
**experts**  53:13
75:10 316:13
422:16 425:21
**explain**  15:9 18:18
55:11 242:9 268:2
271:1,13,20 277:2
277:4 278:2
281:12 284:5
286:5 289:10
318:1 389:24
391:22 418:6

**explicit** 40:19 45:8
**explicitly** 195:1
261:23
**explore** 183:7
184:17,20
**expressed** 407:12
**expressly** 78:4
411:22
**extensively** 50:11
58:5 213:14
214:11
**extent** 15:19
245:20 249:5
265:1 337:4
424:15 425:6
**external** 235:3
**extra** 428:2
**eye** 231:19 232:24
233:7 234:3

**f**

**f** 407:8 432:1
**f1u400** 52:18,20
60:2,6 68:13
69:21,23 266:5
**fabrication** 186:2
**face** 51:16 110:4
168:20 263:13
**facilitates** 46:4
**facing** 403:6
**fact** 15:21 21:1
27:18 32:11,13
49:21 50:8 53:13
87:24 101:14
111:6 159:6
161:20 162:16
165:17 179:11
184:24 187:14
195:6 199:8 204:1
204:2,21 231:20
232:2 233:22
234:2 259:1,24

291:3 295:16
301:5 319:21
323:12 324:13
325:6 334:21
335:11,14 341:11
341:23 352:9
373:22 380:14
381:20 385:17
392:16 412:1
422:13
**factfinder** 10:17
**factor** 418:8,15
420:11 426:11
**factors** 382:23
383:18 384:12
385:11 402:14
407:23 410:14
412:8 417:2,19
418:5,7 423:8
426:14,15 427:3
**facts** 126:12
376:11 377:4
378:22 379:3
381:19 382:15
395:8 423:5
**factual** 126:18
378:11
**failed** 132:11
407:7
**fails** 411:7
**failure** 314:9
408:9
**fair** 11:11 24:12
33:24 65:21 119:9
155:18 170:1
181:17 192:3,5
246:10 300:3
338:3 339:11
348:9 349:16
351:11,16,19,23
363:5

**fairchild** 148:11
148:23 149:4,16
**fairly** 47:9 267:14
**fairness** 320:5
**faith** 395:5,18
**fall** 58:11 346:17
**falls** 147:4 168:6
**familiar** 73:15
81:16 102:11
117:1 147:16
211:12,15,16
216:2 301:6 308:9
308:14,18 328:10
**far** 62:21 99:4
176:6 230:12
314:5 316:10
**fashion** 401:12
**fast** 209:18
**favor** 347:9
377:11
**fearful** 218:8
**feature** 235:12
**features** 43:9,10
55:23,24 56:1,6
391:24 392:7
419:12 423:2
425:18 427:2,7,10
427:13
**february** 52:5,6
**federal** 1:17
130:15 140:10
311:19
**fee** 414:21
**feel** 324:15
**felt** 87:18 381:15
406:15
**fenton** 2:11 275:10
276:2
**ferrer** 106:2,17
110:21 112:19
115:19 118:19

122:13 135:6
140:16 141:1
142:8,21 143:5
144:11,19 145:14
146:6 147:7
149:21 150:19
152:16 162:3,21
184:5 186:6
188:17 190:18
191:13 192:6
194:11 197:3,23
200:13 201:4,16
202:18 204:8
206:7,13 208:10
209:20 210:22
212:14 272:6
280:18 290:6,15
291:9 364:10
**field** 30:15 53:14
74:17 91:20 92:1
399:10,14 403:7,8
404:1 405:5 407:8
407:16 409:5
410:21 411:11,21
412:3,10
**fifo** 195:20
**fifo's** 198:12
**fifos** 200:6 206:17
206:20 207:8,9
211:2 213:15
**figure** 44:20,21
92:5 106:2,13
111:9,12 112:5,12
191:8 211:23
212:1,8 218:11,13
218:24 227:8
260:1 290:22
326:17 327:7,12
327:17 347:12
**figured** 295:8

**figures** 77:8 211:5 211:13,21 327:4 387:24

**file** 106:24 107:1 141:20

**filed** 38:3,4 48:18 107:9 117:5 395:3 407:3 410:11

**files** 59:15

**filing** 171:5 271:23 344:8 406:24 409:12 411:12

**fill** 278:5 286:7

**final** 20:24 31:21 59:10 93:10 120:23 174:7 181:11 370:21 430:21

**finally** 409:8

**financial** 413:22

**find** 18:13 126:19 143:17 151:16,17 151:19 152:6 168:19 186:24 187:2 225:19 235:13 249:20 279:2 282:19 351:21 377:12 378:22 381:20 394:1,6,9 401:13 401:14 405:22 408:6 413:10,13 415:7,12 416:24 426:23

**fine** 8:13 9:3 12:9 16:19 20:11 22:15 25:19 31:11 33:20 34:5 65:24 66:1 178:11,21 214:23 220:24 224:2 233:5 244:7,9,10

244:22,22 246:4 338:8,8 342:9 364:9 371:20

**finish** 25:19 43:18 124:18 144:16 168:4

**finished** 44:5 428:3,4

**finite** 404:10

**fire** 269:20

**firm** 96:9 110:14

**firmware** 165:11 279:5 282:1,1,7,20 282:23 283:15,17 284:24

**first** 7:18 8:10 17:8 24:1 29:3 39:1 45:1,3 53:11 58:18 60:1 71:21 103:16 106:19,19 106:19 118:20 119:3 122:4,15 143:22 144:13 147:11,20 156:4 179:7 183:18 197:3,3 200:11 202:10,22 204:10 208:15 213:21 225:15 249:1 251:13 257:24 258:18,18 259:13 267:3 272:4,12,16 272:18 273:2 276:23 277:22,24 284:10 285:24 286:4,11 288:19 291:18 292:8 296:15 297:21,21 307:4,9,21 308:1 317:16 327:13 329:11 341:3

345:24 346:18 355:9 361:16 364:11 365:17,23 367:20 371:18 376:15 388:12 389:5 390:4 393:7 395:16 402:24 403:1 414:14 418:5,8

**fisi** 302:10,10

**fit** 25:15

**five** 71:15 95:15 96:8,20 106:7 112:21 115:14 116:5 135:19 137:13 140:21,21 185:13 188:7 223:17 364:5

**fixed** 329:2

**flag** 356:5 431:10

**flagged** 275:21

**flagrant** 395:6

**flashlight** 234:17 235:3

**flat** 54:22

**flip** 171:22 251:15 251:21 252:2,9 272:7 350:24

**floor** 2:5 3:4

**flow** 82:6

**focus** 45:23 229:19 272:2 280:19 299:6 421:23 429:13

**focused** 272:4

**focusing** 276:23

**folder** 60:1 288:1

**follow** 15:23 34:23 100:1 104:9 161:14 174:7 381:1

**following** 378:22 379:5 382:24 402:5 417:2

**follows** 26:6 53:24 61:10 74:20 77:19 123:12 133:11 177:7 219:18 261:9 267:4 274:21 307:1 314:3 373:17 389:4

**font** 238:10

**footnote** 138:24 139:2,3,16 154:11

**foreign** 145:14 147:3

**forever** 85:13

**forgotten** 304:9

**form** 27:2 43:15 72:15 76:14 339:5 430:21 431:5

**formally** 379:4

**formed** 40:8

**formerly** 374:15

**forming** 53:14

**forth** 128:18 363:9

**forward** 79:3 272:14 273:5,22 274:1

**found** 10:17 39:15 39:20 58:1 62:12 85:5 108:17 109:23 155:9,15 312:5 317:8,17 326:12,13 404:19 404:21 405:3 408:21

**foundation** 23:13 178:14

**foundational** 54:13 64:3

**four** 62:14 70:16
71:21 73:2,7,8,11
114:11 136:5
174:10,20 176:6
231:16 247:5,6,7
417:18 421:6
**fourth** 231:16
343:2
**francisco** 3:11
**frankly** 221:2
246:4
**fred** 147:9
**free** 10:12 13:3
246:23 249:18
324:15 380:3
**freeway** 338:2
**freeze** 179:24
**frequent** 304:17
**friday** 25:18,18,21
**friend** 429:16
**front** 9:10 19:19
21:22 22:1 44:17
120:22 121:7
184:7 217:7
228:19 229:1
248:10 319:3
323:22 324:18
353:2
**frost** 2:12
**fs** 149:10
**fulfillment** 286:9
**full** 81:2 149:15
345:17,21 356:5
356:17,20 357:11
358:11,13 359:11
398:14,18 409:22
410:10 411:13
412:11
**fully** 152:8,11
407:2

**function** 71:24
80:7,9 113:11,24
114:5 206:1 238:7
243:10 284:10
325:2 326:2 328:1
328:3 341:7 343:6
353:8 354:5 356:9
389:18
**functional** 111:15
112:9,20 113:4,8
182:16
**functionality** 72:9
256:6 357:10
358:10
**functioned** 279:24
**functioning** 91:5
294:17
**functions** 111:15
111:16 112:8,9
113:8,9 332:11
353:13 358:2,3
**fundamental**
358:22
**further** 12:8
223:10 262:2
363:21 369:15,17
**future** 397:22
410:1

**g**

**g** 407:10
**gap** 278:5 286:7
**garney** 4:4 13:22
15:22 23:3 26:24
28:17 29:5,17
31:4 34:12,21
35:4 42:6 44:16
59:2 60:14 62:4
66:5 69:19 71:11
74:4 75:17 77:6
83:19 86:13 87:16
87:19 94:20 106:4

127:16 138:2
144:13,23 146:10
158:7 162:4 184:8
190:23 215:1
223:21 224:6
226:4 238:24
248:5 249:17
250:6,16 256:18
258:23 260:10,17
271:19 272:14
273:6,22 277:10
277:16 278:4
281:14,22 282:23
283:23 284:2,16
285:3 286:16,22
288:16 289:24
293:18 320:6
332:5 352:17
384:7,20
**garney's** 13:13
15:6 34:10 79:10
125:14 126:11
142:9 249:10
288:6,8,13 294:3
**gather** 226:14
**gathered** 98:16
**gb** 145:23
**gear** 166:17
**gears** 138:6
176:14 222:5
**general** 81:5
144:10 351:8,12
351:14 357:14
393:22 419:10
**generally** 305:1
323:3 346:20
357:23
**generate** 46:12
**generator** 424:14
**genius** 400:23

**gentlemen** 34:9
134:22 179:6
**getting** 9:19 33:7,9
74:22 95:10
105:14 110:12
222:13 366:8
429:2
**ghosh** 341:6 410:8
**give** 20:24 22:9,20
23:17,22 24:9,23
25:22 42:22 47:22
65:1,20 101:21
106:18 134:11
191:21,23 192:7
193:6 198:8
225:12,16 248:4
285:16 370:2
371:11,12 373:13
374:9 379:24
381:21 382:13
386:7 388:21
396:1 403:1
407:24 415:16
427:19 431:4,10
**given** 20:15,19
233:11 240:16
243:14 246:10
311:17 370:21
382:11 384:16
390:16 405:19
428:9 432:9
**gives** 53:19 289:2
325:11
**giving** 20:16 221:1
290:23
**glass** 35:1 42:19
44:12 69:10,14
71:7 83:7,15 86:7
233:9,11 244:19
250:17 252:15
253:1,9,22 256:15

258:9,17 259:15
303:15 311:14
313:12 336:17
355:17
**glued** 198:12
**go** 7:21 19:5 22:11
24:24 25:16 47:18
52:15 62:20 77:14
77:16,21 79:2,15
79:16 80:15,16,17
83:17 94:13 96:17
102:2 104:10
105:10,24 106:18
107:3 109:8,17
110:20 112:18
114:11,16 115:3
115:16 116:19
117:15 118:18
119:12 120:19
124:24 125:11
126:5,21 127:21
128:18 130:5
131:15,16 133:6
135:5 136:9
142:22 144:12
146:7,7 147:8
148:2,8 149:21
152:16 158:1
162:17 168:8
171:18 172:24
175:11 176:12
179:2 180:2
183:14 184:4
186:6 188:16
190:9,19,19
191:14 193:15
194:10,19,22
195:3,12 196:11
197:15,23 198:24
201:15 202:20
203:11,12 204:7

206:6 209:19
210:21 211:9
212:10,13 213:2,4
214:5 215:7
217:11 237:18
242:17 243:21
244:4,10,10,12
250:19 256:16
262:10,15,23
272:8,9 274:18,19
275:14 276:18,19
282:19 283:20,21
283:21 284:13
290:9,14 291:8
293:1,18 313:18
313:20,22 315:1
316:7 319:1
326:20 327:2
328:19 329:1,4,10
329:14,22 330:2
331:24 336:17
337:23 338:5,7,8
338:16 339:18
350:23 373:7
374:10 427:21
429:4,7,16 431:6,7
**goal** 117:2
**goes** 8:4 14:18
46:13 47:24 48:1
48:7,8 96:15
139:19 291:7
314:8 316:10
335:5 371:8
**going** 9:22 11:17
13:7,10 14:3 17:7
20:13,20 21:7
22:4,5 23:2 24:9
25:6 26:2 28:14
28:17,19 31:7
32:15 33:2,6
34:10 37:9 40:9

47:22 48:3 56:20
59:18 61:15,16
62:9,12,21,22
75:11 79:8,10
91:12 92:22 97:1
97:4 108:24 110:2
111:9 112:23
115:2 120:2,3
121:2 124:1,2
135:2 138:7 143:5
148:19 150:23
151:17,19 163:10
177:19 178:13
179:23,24 189:15
190:3,6,6 207:14
209:18 211:24
215:14 217:6
225:8,19 226:6
243:1 246:7
248:12,13 250:7
260:23 263:1
264:2 265:6,6
271:15 297:11
305:3 306:8 307:7
308:12 309:22
312:16 315:9,12
316:16,18 319:11
320:20 337:6,20
342:3,5 347:12
351:15,22 357:24
357:24 371:3,23
373:8,19 374:2,4,6
413:4 427:24
428:5,7 431:7,8
**good** 7:6,8,10
23:20 25:18 34:6
34:21,22 56:3
94:20,21 124:19
137:3 190:2
267:12 295:4,5
364:2 369:23

395:18 431:18
432:3
**google** 429:16,18
**gotten** 99:4 228:20
358:11
**grab** 224:6
**graduate** 267:21
**grant** 152:9 343:7
426:10
**granted** 155:1,20
**granting** 396:3
424:2
**graphics** 229:19
379:1,10
**grapple** 318:12
**gray** 2:11 16:21
17:3 18:4,22 19:6
430:10
**grayish** 238:10
**great** 16:23 21:20
22:24 23:4 52:17
145:24 190:12
247:3 298:2
**greater** 387:3
**greatest** 387:14
**green** 45:5 175:20
**grew** 267:19
**ground** 136:3
172:7
**grounds** 135:19,20
135:24,24 136:5
**group** 269:3,19
**groups** 411:2
**grubert** 2:9
**guess** 7:18 14:2,5
16:14 31:2 33:3
53:11 57:16
103:23 104:1
119:5 128:12
136:4 147:1,9
148:17 168:19

196:24 205:15
214:11 215:14
228:16 240:12
304:10 306:15
307:1 371:7
**guessing**  70:11
106:22 185:1
**guesswork**  414:11
**guidance**  412:18
**guide**  57:3,4,7
375:11
**gun**  25:24
**guy**  121:5
**guys**  7:20 22:9
78:12 340:20,21
340:21 370:18

**h**

**h**  5:2 6:1 266:23
407:14
**h2h**  205:22
**half**  95:15 124:12
190:10
**halfway**  52:15
**hand**  8:3 31:4,7
37:9 69:15 126:20
142:24 158:9,18
159:12 180:6
218:12 220:10,21
248:3 280:20
307:8 321:6
355:18 371:5
394:9 405:12
432:11
**handed**  12:16
153:18
**handing**  53:4 88:4
**handled**  9:24
**hang**  26:4 114:17
338:7
**happen**  24:7,9
80:20 351:18

**happened**  140:10
177:23 311:11
315:13 316:20
428:16
**happening**  338:11
338:14
**happens**  81:14
136:23 290:4
**happy**  18:17 94:11
225:7,11 311:10
**hard**  159:13
168:19 170:3
189:18 214:15
222:11 294:8
**hardware**  70:1,7
165:11 279:15
281:17 283:8,12
285:2
**harmless**  243:19
**hate**  371:14
**hbrl**  189:20
**head**  35:7,8,15,16
35:23 36:10,18,23
200:21 201:6
207:14,16 258:19
**headed**  64:24
**heading**  119:14
354:6
**heads**  24:17
369:24
**hear**  20:2 21:9,10
21:11,18 22:2
26:8,10 27:8 33:5
64:20 65:4 96:14
188:4 213:21
214:21 284:15,19
298:23 302:12
306:16 329:17
333:9 352:17
370:24 373:14
379:14,17,19

383:2 428:5
**heard**  17:13,15
24:3 25:6,8 37:20
39:10 49:20 90:11
123:8 130:17
188:6 196:16
203:24 241:7,10
249:13 271:18,19
273:20 275:1
277:3 322:11
345:24 346:1,2
349:4 374:22
376:19 378:15
381:16 384:4
385:7 386:8 392:9
396:23 428:8
429:19
**hearing**  222:11
356:7
**hearsay**  26:16
28:1,8,16 30:16
32:18,20 54:5,11
63:14,17 75:8,11
122:17 123:14
133:16
**heavy**  146:1
**held**  26:5 48:3,9
53:23 61:9 74:19
77:18 123:11
133:10 140:11
177:6 219:17
261:8 274:20
314:2 315:18
**help**  115:3 128:7
186:17 261:1
268:1 271:1 303:5
386:2
**helping**  111:19
**helps**  190:24
408:15

**hercules**  3:4
**hey**  358:13
**hid**  288:23 289:6
**high**  42:23 43:6
148:9 227:6 250:7
268:21 291:1
348:12 351:5
358:5
**higher**  378:13
**highest**  130:18
132:15 224:16
**highlight**  118:19
119:13 143:5
145:15 191:14
197:24 206:14
258:18 259:15
327:22
**highlighted**  10:6
46:7 47:3 52:16
121:8 290:20
**highlighting**  141:1
247:19
**highlights**  387:12
**highly**  123:22
177:12 378:12
**hindsight**  400:10
**hint**  90:3
**hire**  305:2,3
**hired**  97:10
186:16 301:22
304:18,24 305:13
305:16 312:7
**hiring**  304:7
**history**  10:10
107:1 152:1
183:16 184:10
185:4 193:7,8
279:4 290:12
**hoarse**  222:13
**hold**  23:17 43:15
43:19 44:8 45:17

54:3 72:15 81:13
82:6,9,9 139:1
175:24 177:13
240:20 263:3
333:5,12 339:24
343:8,14 353:15
354:1 357:10
358:24 359:6,11
**holder** 421:24
422:8
**holding** 250:21
347:9
**home** 21:13 24:19
58:18 95:21 429:8
**honed** 233:2
**honest** 136:19
179:14 232:4
**honor** 7:9,11 8:11
9:8,17 10:5 12:13
13:9 16:4,11 17:3
20:14 22:14,17
23:2,9 26:12
33:11 34:1 53:22
61:8 66:19 69:8
74:18,21 75:9
77:15 78:7 79:4
88:16 94:8 96:13
101:21 122:17
123:10 131:13,23
133:2,7,12,14
137:2,24 163:8
168:2,7 177:3
178:17,20 179:13
190:1 197:17,20
199:13 202:7
215:10 216:23
217:3,9 219:9,14
220:8,20 221:16
223:11 224:12
225:6 226:2
227:14 229:4,12

231:3,8,24 232:17
234:14 235:4,16
237:10 238:15
241:16 242:20
245:7 247:22
248:7,18 251:5
261:4 263:20
265:9,13 266:8,16
266:18 270:17
274:18 280:2,13
296:11 298:4
303:11 306:13
314:1,4,23 331:22
344:10 346:2
355:13 364:1,6
366:22 369:16
370:13 372:17
430:9 431:2,16
**honor's** 23:12
**honorable** 1:20
7:5
**hooked** 207:16,20
**hope** 90:10 122:10
138:4
**hopefully** 50:5
429:24
**hoping** 211:18
**hopkins** 123:6,7
**host** 35:20 36:4,7
43:12,16,17,22
44:2,9 45:3,5
47:22 48:8 73:6,9
73:14,19,22 74:1,2
76:5 80:15 82:19
83:2 84:5 87:14
89:22,22 90:1,1,4
90:4,11,11,18,18
90:23 91:1 92:2,2
92:10,10,11,17
93:3,3,6 100:7
101:8,10,16 102:8

104:22 105:1,3
189:13 197:7
207:13,22 285:9
289:9,18 291:4,5,6
324:23 325:1,23
325:24 329:6,16
329:19 330:11
332:15,21 333:6
333:13 336:10
337:7 339:2,5
341:8 343:5,7,8,9
347:12 352:9
358:12,13 360:7
360:13 362:2,5
363:2,2,13,13,16
363:16 365:4,4,6,6
365:11,13,24
366:10 389:6,19
**host's** 333:5,12
**hosts** 43:2,8,13
45:7,8,9,10 46:12
47:6,13,15,20 49:9
50:24 73:7 76:23
81:3,9 84:3,14,15
85:17,20,23 86:18
86:22 91:9,14
100:5 102:8
105:18 125:19
277:9 287:10,14
287:21 289:13,17
289:21 290:2
291:15,20 325:3
326:2,10 328:1
329:11 330:5
331:5 334:1,5,12
336:20 337:19
342:5 347:19
348:14 349:24
350:14,17 358:7
358:19 360:20
361:5,14 362:9,15

363:3,4,15
**hot** 266:13
**hour** 95:16,20
124:12 190:10
295:23
**hours** 95:22 96:2,3
160:16,21,24
**house** 186:2
**housekeeping** 7:19
16:15 372:7
**huawei** 302:10,14
**hub** 35:4,13 71:23
75:22 100:6 150:1
197:6 200:22
202:24 203:4
205:5,24 216:6,6
258:20 284:18
309:5,9 352:6,23
353:5,23 354:5,14
374:18 393:14
415:21 416:7
417:1 419:1
**hubs** 150:15
416:15
**huh** 188:23
**hundreds** 102:17
269:9
**hypothetical**
399:1,2 421:18,21
421:23 422:5,18
424:7 426:21
**hypothetically**
414:21

**i**

**i.m.** 2:4
**ice** 96:16
**idea** 254:5 323:10
335:14 339:1
340:5 358:23
**ideas** 27:9

**identical**  139:17 154:11 192:24 303:3

**identically**  399:17

**identification**  56:21 60:10,12,17 152:23 153:2,16 153:19 173:17 296:3 297:12,17 302:2,5,8 321:7,10 372:10

**identified**  49:17 71:22 143:13,15 144:8 156:24 160:8 187:20 194:15 207:24 211:1 265:22 266:5 330:22 333:17,23 349:23

**identifies**  158:17 257:15

**identify**  85:3 156:16 297:3 402:8

**identifying**  293:7

**ignore**  380:21 389:1

**illustrate**  77:9 84:17 232:20 386:2,13

**illustration**  80:19

**illustrative**  44:22 386:4

**image**  239:13

**imagine**  349:21

**immediacy**  114:21 114:23 115:8 116:11

**immediately**  339:23

**impact**  318:14 403:18 418:18

**impeach**  215:13

**impeachment**  215:10 319:23

**implement**  82:2 92:1 186:11

**implementation**  210:12 269:11,14

**implemented**  198:23

**implication**  272:20

**implications**  273:8

**implicit**  14:5 221:6

**implicitly**  82:1

**implied**  367:8

**implies**  129:22

**imply**  247:9 369:9

**importance**  386:24 387:4,9

**important**  98:5 104:24 113:12 118:7 175:14 181:12 209:11,12 235:18 257:17 278:15 293:6 374:8 383:24 387:21 416:18 419:8

**imported**  393:3

**importing**  320:1

**imprinted**  69:20

**improper**  215:10 380:18

**improve**  50:19 76:10 77:12

**improvements**  391:24 392:8 425:18

**inappropriate**  413:9

**inclination**  190:5

**include**  136:5 145:20 395:8 406:7 412:12

**included**  55:6 87:3 125:5 210:13,15 210:17 212:3 215:19 409:19 416:6 418:24

**includes**  104:23 141:24 145:6 192:14 202:23 203:3 212:11,17 212:18 273:11,17 292:21 391:24 392:4 394:16 401:20

**including**  18:23 28:6 145:21 256:4 268:13 305:18 311:3,5 312:5 382:24 384:22 386:1 399:12 404:19,23 415:8 415:17 422:15

**incomplete**  181:10 187:1

**inconsistent**  320:10

**incorporated**  1:5 374:14

**incorporates**  390:22

**incorrect**  195:5

**increased**  426:16

**indefiniteness**  12:21

**independent**  47:7 47:7 80:1,13 83:2

121:9 158:22 159:9 315:3 390:5 390:6,7,9,12,14 394:2,5

**independently**  47:15 396:10

**index**  353:12

**indicate**  29:9,12 55:14 111:14 112:8 157:14 283:9

**indicated**  366:24 432:5

**indicates**  113:7 157:21 166:17 242:18 279:21 288:13 289:23

**indicating**  180:13

**indication**  53:20 81:10 163:4 165:23 180:24 253:16 279:9,12

**indications**  53:17 151:10 157:23 161:24 165:15 283:4

**indicator**  56:3 70:8

**indicators**  57:20 70:15 93:24

**indicia**  23:14 26:14 166:16,16 167:6,16 406:1,3,6 407:20 408:6

**individual**  316:10 387:6

**individually**  388:6

**individuals**  384:14

**industry**  146:17 268:20 279:14 298:21 299:2,6,21

299:24
**inferences** 404:23
**influence** 308:4
  379:20
**influenced** 380:13
  380:19
**inform** 52:8 57:12
  65:9 66:7,8,13,15
  67:3 68:2 75:18
  75:20 151:9
  257:23
**information** 11:10
  27:1 28:18 57:19
  85:19 86:21 98:1
  98:6,10,15,16,17
  98:20 99:1,3,11
  107:17 152:8,12
  164:12 174:21
  194:8 210:9 211:4
  211:6 212:21
  242:23 243:11
  260:14 279:4
  281:20 282:4
  284:4 287:17
  336:21 355:4
  360:1 384:11
  386:13 411:10,23
**informative** 27:20
**informed** 55:8
  65:23 152:8,11
**informs** 65:16
**infringe** 393:21
  395:14 415:10
  419:17
**infringed** 375:15
  375:18 376:3
  377:13 378:1,5
  388:23 391:11
  392:6,18 393:6
  394:3,6,8,10,15,20
  395:2 413:12,14

415:12 417:17
  422:6
**infringement**
  34:24 94:24 95:1
  97:17 209:24
  305:22 306:2
  307:14 308:5,24
  309:3 347:18
  362:15,19 374:19
  375:21 376:6,22
  376:23,24 377:9
  377:15,17 378:3
  388:14 390:10
  391:13,15,18,20
  391:21 392:14,16
  392:19,23 393:24
  394:4,22,23
  395:22,24 396:3
  413:19,23 414:18
  416:2,4,17 417:22
  420:10,15 421:10
  421:20 423:7
  426:1,22
**infringer** 396:18
  413:20 421:19
  422:1,9
**infringer's** 419:11
**infringes** 306:5
  375:3,6 376:20
  391:17 392:3,22
  393:15,19 415:22
**infringing** 395:18
  414:24 415:6
  416:21 417:8
  418:14,16 419:9
  419:12 420:5,7
  421:12 423:2
  427:7,11
**initial** 62:3 268:19
  304:21

**initially** 126:11
  374:18
**innovation** 360:18
**input** 103:15
  337:6
**inquiring** 316:20
**inquiry** 124:6
**ins** 128:11 269:5
**inside** 167:15
  249:21 282:2
  337:12
**insides** 68:23
  226:23
**inspect** 246:23
  249:19 296:22
**inspected** 71:1
  282:22
**inspection** 71:2
  227:1,24 229:8
  232:8
**installation** 57:3,3
  57:7
**instances** 386:11
**instruct** 21:12
  246:15 249:9
  370:24 388:20
  391:8 398:21
  413:4
**instructed** 22:5
  61:12 240:15
  370:17 380:23
  386:21 393:9
  402:21
**instructing** 413:5
**instruction** 18:21
  19:4 22:10 24:23
  28:16,21 134:11
  178:5,20 245:20
  371:12 381:1
  405:21 413:8

**instructions** 16:16
  17:2,22 20:24
  21:17 24:10 370:2
  370:22 371:5
  373:4,19 375:11
  376:10 405:20
  415:17 427:18,20
  428:9
**integrated** 192:10
  194:1
**intel** 165:16
  171:11 269:15
**intellectual** 85:11
**intelligent** 304:13
**intended** 90:15
  111:12 112:6
  113:5 138:6 249:3
  264:21 265:2,3
  387:23
**intentionally**
  395:10
**inter** 39:7 97:8
  116:24 302:10,14
**interact** 58:4
  304:12
**interconnect** 81:3
**interconnecting**
  268:24
**interconnection**
  81:1
**interest** 56:1 88:22
  383:9
**interested** 51:2
  91:19 304:7
  351:15 432:10
**interesting** 113:10
  150:1
**interface** 73:10
  76:3,3 79:22 84:2
  84:4,13,15,22
  186:13 257:20

360:6,12,14
**interfaces** 186:12
332:24 351:7
**interference** 36:2
**interleaving** 339:2
339:4,14 343:6
347:8
**internal** 170:14,17
170:21 285:17
343:4 356:4
**internally** 269:17
**internet** 278:6,10
**interpreted**
263:22
**interrupt** 28:12
**interruption** 66:24
**intimated** 116:8
**intimately** 147:16
**introduce** 33:2,4
33:22 34:1 64:19
267:17
**introduced** 42:8
58:14 74:8 88:7
182:8 183:1
196:20 199:3
201:21 280:8
354:19 399:11
**invalid** 37:18 39:3
39:20 40:16 41:10
41:23 107:21
154:14 292:12,13
312:6 314:16
375:7 376:1 378:6
378:8 388:16,23
395:15 396:16
397:10 398:1
399:23 400:3
408:9 409:2 411:4
411:17 413:11
**invalidate** 39:16
95:23 127:5

132:11 140:12
163:1 273:23,24
293:11
**invalidated** 136:16
311:3 314:17,21
321:24 322:3,4
323:16 328:14,15
**invalidates** 119:18
119:22 140:1
142:16 156:7
272:23 282:18
**invalidating** 95:14
165:24
**invalidity** 49:15
94:23 95:24
232:14 267:24
273:3 288:7 309:1
318:1,2 396:2,12
398:22,23
**invented** 345:14
345:15 407:17
408:16
**invention** 43:1,11
45:6 47:9,10
59:11 77:1 80:2
89:11 90:1 91:13
91:21 100:3,16,17
100:19 112:12
323:7 335:13
337:12,15 342:12
342:20,22 343:21
345:5,18,19,22
346:19 349:15
387:24 388:2
397:13,15,19
398:19 399:4,7,8
399:16,19,21
400:5,7,8,18,20,21
401:3,9 402:13,22
403:8,19,23 404:2
404:15,16 405:4,5

405:6,8,11 406:8
406:10,14,17,18
407:5,7,9,11,13,18
407:24 408:24
409:5,11,13,17,22
410:3,10 411:11
411:13,14,22
412:3,4,10,12,21
414:22 417:6
418:11 419:8,13
422:15 424:1,2,14
425:4,5,7,13,16
426:7 427:1,9,15
**invention's** 407:1
**inventions** 395:11
401:5 425:13
**inventor** 110:14
141:16,19,20
143:20 146:13
344:7 345:14
399:18 403:5,10
407:14 409:7,11
409:21 424:10
**inventors** 89:24
91:18 143:14
346:8 400:13
409:11 410:9
**investigated** 232:6
247:24 248:2
**investigation**
162:23 175:15
**involved** 92:17
135:13 186:2
207:7,11 270:4
320:18
**involvement**
207:10
**involves** 412:15
**involving** 76:22
309:15 367:21

**ip** 186:12,12
210:10
**ipad** 235:11
**iphone** 35:18,21
35:23 36:8,10,19
36:22 207:12,20
213:24
**iphone's** 214:10
**ipr** 41:9 97:5,6,8
104:2 107:10
108:18 109:24
116:20 119:4,17
128:18 132:12
135:8,11 140:7
309:23 396:24
**ironic** 103:20
**irrelevant** 385:15
391:18
**ish** 330:6
**issue** 7:24 8:10
12:14 17:1,11
18:5 20:13,18
26:1 27:18 33:19
97:17 98:2 145:8
223:24 224:12
225:18,23 234:15
248:10 261:24
276:5 278:18
288:24 315:16
336:19 374:20
377:14 390:4
392:12 394:22
400:20 401:12
406:24 408:2
410:19,24 413:7
413:21
**issued** 132:17
145:6 155:21
223:7 300:23
323:20,23

**issues** 7:16 8:4 133:13 226:15 248:14 249:4 315:4 375:10 376:10 387:17
**issuing** 323:13 396:8
**item** 341:10,15,24 342:8 380:23
**items** 424:15
**ivan** 384:5

## j

**j** 1:17 3:9 266:23
**japan** 145:24
**japanese** 118:23 127:13 136:2
**jgray** 2:16
**jli** 3:14
**job** 282:19 416:14 432:18
**john** 2:3 4:4,9 266:19,23 267:2 267:19 302:3 384:6,6
**johnlevyexpert.c...** 297:9
**johns** 123:6,7
**jones** 250:7,16 256:11,14
**joseph** 2:11
**joshua** 1:20 7:5
**joyce** 3:10
**jshaw** 2:7
**judge** 1:20 95:7,8 125:2 134:5 294:22 373:23 400:23
**judges** 121:9,14,21 121:22 123:19 124:3 125:3,10 126:1,8 127:2

128:1,14,19 129:5 129:9,13,20 130:22,23 131:10 131:18 132:2,3,15 373:22 382:18
**judgment** 124:3 136:14
**july** 17:9 416:9 420:24
**jump** 271:4,7
**jumped** 25:24
**juror** 95:9 375:1
**jurors** 383:20 386:23 387:8
**jury** 1:12 4:15 7:14 11:18 16:16 17:13,22 18:2,11 19:19 20:21,22 21:6,12,17,23 22:1 22:2,8,9 23:15,18 25:1,13 26:8 27:19 28:1,19 33:7 40:9 61:21 64:20 78:21 123:20 124:2 134:11 137:9,17 137:18 163:11 168:5 179:23 211:21 217:7 220:18 223:18 228:19,20 229:1 232:18 233:1,13 234:23 235:18 236:6 239:24 240:11,15 245:3 245:21 246:15,18 248:11,20,21 249:1 267:18 281:12 318:1 319:3 328:10 370:8,12,17,20,24

371:4,8,10 372:7 372:21,22 373:21 385:22 427:21 430:4,15 431:6,8
**justification** 288:20
**juxtaposed** 11:20

## k

**kanai** 144:22
**keep** 45:20 75:13 108:10 112:23 121:2 137:6 170:3 189:14 190:3,5 211:24 267:14 356:7 411:20
**keeping** 294:21
**keller** 2:3
**key** 277:9 298:23
**keyboard** 153:23
**kim** 144:22
**kin** 432:9
**kind** 18:2 23:23,24 40:23 48:16 51:8 53:13 63:10 80:19 82:6 104:18 116:8 122:2 159:13 160:18 172:7 198:5 304:9 340:1 377:21
**kinds** 85:11 382:9 423:7
**king** 1:17
**knapen** 310:17 312:7,13,21
**knapen's** 310:21
**knew** 70:6 122:5 123:3 232:11 318:11 391:16
**knocking** 320:2
**know** 12:4 14:12 15:14,24 16:3,17

16:24 20:14,20 21:11 22:1,22 24:7,12,19 25:15 26:7 29:18 31:10 32:22 33:19,20 39:19 41:14 51:5 54:4,21 55:13 59:16,19 61:22 62:24 64:17 76:21 77:24 79:20 81:11 85:2 90:16 91:1 92:24 99:11 100:20 101:3 102:20 107:15 109:10,11 110:5 121:22,23,24 122:1,8 123:20 124:11,22 126:3 128:10 129:22 130:14 131:18 136:19 140:23 142:1 143:19 146:22 148:4 150:5 151:18,22 155:16 159:1,6 160:2,4 161:3,5,7 161:11,15,20 162:14,16 163:1 165:20,21 169:9 171:4 173:10,13 175:23 176:1,4,5,6 178:12 180:7,10 184:1,22,24 185:24 187:6,14 187:18 190:11,14 190:16,17 191:23 192:17 199:8 204:1,24 209:12 216:1 219:3,20 220:15 221:1,10 221:24 224:3

225:19,24 226:6
230:13 233:8,16
235:12 236:20
243:16,17 247:15
247:16 254:3,7,10
254:14,19,21
255:1,11,22 257:8
260:21 278:11,23
281:2 283:24
294:20 307:24
309:1,8 319:1,18
319:21 320:9
323:12 345:17
347:17 348:2
358:8,14 383:2
390:11 411:24
420:3 427:23
430:12 431:12
**knowing** 172:15
**knowledge** 41:21
109:14 158:23
159:9 165:9,16
234:21 391:19
395:1 404:4,22
410:20
**knowledgeable**
367:8
**known** 59:12,14
90:12 271:22
349:19 359:2
374:16 376:13
397:17 400:14
404:1,8,10,12
405:5,12,15 407:2
411:15 412:15
423:6
**knows** 22:19 23:2
44:1 92:24 284:16
381:14
**koehler** 372:20

**korea** 146:1
**kvm** 153:23

**l**

**l** 266:24
**label** 29:13 170:8
208:2
**labeled** 71:16
167:19 176:20
190:14 191:7
192:18 260:2
**labeling** 275:6
**lack** 408:11 411:4
**lacks** 409:1
**ladies** 34:9 134:22
179:6
**laid** 16:3 343:20
**landscape** 118:14
**lane** 334:22 335:1
338:22 361:15,18
**language** 20:15
45:11,14 114:5
187:10 220:7
286:19 289:14
311:21 393:8
**large** 242:12
**largely** 205:23
**laser** 71:14 78:20
**late** 366:8
**law** 23:14 24:10
24:12,13 27:3
40:12 96:9 345:3
370:3 373:23
374:2 382:10
388:18 396:6
427:18
**lawsuit** 203:20
395:3
**lawyer** 95:5,6
123:3 129:2
311:20 380:6,8,10
380:11

**lawyers** 24:3 26:2
110:18 122:1,4
123:21 128:5
191:21 249:5
295:9 304:18,24
305:2,12,15,18
374:22 379:8,12
380:15 385:2,5
428:6,16
**lay** 23:13 177:19
178:13
**layperson** 400:22
**lays** 17:5
**lead** 252:7
**leads** 252:7 377:4
380:2
**learned** 395:16
**leave** 19:4 224:4,5
371:4
**leaving** 354:4
**lecturer** 269:24
**led** 269:14
**left** 35:7 69:15
180:6 189:7
207:15 211:24
218:12,24 230:21
231:13 237:1,2,4
237:24 238:3,21
239:13 269:3
280:20 303:17
327:8 396:14
**legal** 1:23 41:15
55:13 103:15
110:14 121:5
128:6,10 146:22
247:16 366:20
376:11
**legally** 108:19
131:8
**legend** 252:18

**legitimate** 15:15
**legs** 370:7
**leidesdorff** 3:11
**level** 42:23 43:6
203:8 301:6 308:9
308:15 348:12
351:6,8 358:5
399:6,9 402:11
405:20
**levels** 399:13
**levy** 4:9 8:5 9:9
10:11 12:15 23:3
232:5 266:19,23
267:2,12,19
270:18,24 273:19
276:22 278:15
280:5,22 282:9
285:20 290:11
291:11 293:5
294:19 295:4
302:3 314:6
317:18,20,23
319:6 321:2,13
364:18 366:24
384:6,20
**levy's** 372:12
**li** 3:10 242:9,12
**license** 422:7,10
423:18 424:18
426:5,10
**licensee** 425:23
426:4
**licenses** 424:2
**licensing** 423:11
424:1
**licensor** 425:23
**lid** 171:20
**life** 424:17
**light** 38:20 41:11
234:16 340:1,20
343:13 377:3

379:23 383:15,16
387:4 390:15
406:2 428:8,10
**lighting**  234:15
238:14,17
**lights**  339:19
361:12 368:4
**likewise**  213:18,22
**limine**  315:22
**limit**  13:10 18:23
316:10
**limitation**  324:5
408:20
**limitations**  277:5
315:18 365:17
**limited**  11:10
380:24 395:9
399:12
**limiting**  28:16,21
389:7
**limits**  315:4
316:11
**line**  30:21 65:24
65:24 74:22
133:23 135:1
166:4,9 174:7
213:5,9,10 218:18
219:22 258:18
307:10,12,12,16
307:18 308:13
312:18 424:9
**lines**  112:21
114:11 162:5
174:10,21 218:19
239:12,17
**linksys**  30:7 32:4,6
59:14
**list**  142:10 152:17
188:18 189:5
192:1,3 195:10,12
202:14 237:16

298:5,7,13,14,16
298:17 301:22
305:7,9,12,15
309:23 387:12
**listed**  51:16 110:3
143:13 194:6,24
210:20 241:19
**listen**  373:12
**listings**  282:7
**lists**  159:16 185:21
199:23 200:2
**litigation**  185:9
305:7,10
**little**  17:11 47:16
85:1 99:20 103:5
109:4 112:1
126:13 148:6
152:16 176:23
188:23 189:18
222:5,11 223:3,6
231:15 240:2
242:14 243:18
249:3 250:9 252:4
252:8 268:4,16
277:2 284:13
308:7 319:13
320:3 330:3 331:7
340:19 342:7
343:12,14 348:10
352:2 365:22
374:7 428:2
**living**  269:21
**llc**  1:8 374:15,16
374:17
**llp**  2:3
**loads**  201:6,10
**local**  261:21
262:20,24 269:11
**logic**  45:15 46:14
186:12 189:19,20
191:6 195:19,20

198:13 215:3,20
216:4,11 217:21
218:9,22 219:7
**logical**  20:3 21:6
64:24
**logically**  373:18
**logo**  246:19
**long**  24:16 65:10
66:16 67:4 90:12
95:13 112:1 190:6
218:3 267:13,14
269:4 356:11
364:3 371:18
392:3 406:15
**longer**  46:8 47:3
249:3
**longwinded**  174:1
**look**  16:2 35:6
40:18,23 41:13,19
42:3 44:13 50:18
51:22 56:23 58:9
59:4,19,20 60:20
60:21 67:15 68:17
69:13 76:11 83:8
85:15 86:8 101:11
108:11 112:17
115:12 120:18
121:1,4 122:12
125:9 132:21
138:24 143:16
145:16 155:3
170:13,17 173:21
174:6 175:15
185:16 195:17
208:15 212:10
216:17 220:2,3
224:15 225:16,20
225:22 233:1,3,7
233:17,20 238:6,9
243:8,13 246:3
249:20 252:3,15

252:20 253:17,23
255:4,16 258:9
259:10 263:4
264:8,10 281:21
281:24 290:21
293:14 296:3
303:2,21 306:2
307:7 309:5 310:2
313:12 318:3,5
326:15 327:3,20
328:8 332:8
333:16 341:1
342:10,15 348:23
350:5 353:1
354:17,23 355:1,8
357:6 361:22,23
403:9 405:9 431:4
431:8
**looked**  28:5,10
29:5,17 31:12
54:5 60:7 61:5
63:5 68:11 93:12
118:17 119:6,7
145:2 155:4
157:20 187:4
195:13 256:19
290:17 310:6
322:13,21 334:4
362:17
**looking**  14:11 35:4
50:22 55:5 70:14
76:10,15 82:16
119:6 132:19,20
138:10 168:21
169:2 230:18
231:6,10 235:13
244:20 270:2
277:6 283:2
429:17
**looks**  103:20
168:12 172:4

183:6,20 184:14
185:17 196:24
202:12
**loose** 243:18
**loser** 79:10
**loss** 416:2
**lost** 17:8 18:2,3,24
377:21 414:14,16
415:3,7,17,24
416:8,12,20,23
417:12 419:3
420:9,15,18,23,23
421:3,3,7
**lot** 25:6,7 48:14
75:12 79:9 93:7
102:15 110:3
117:20 143:6,9
155:13 216:13
321:12 364:21
367:23 427:23
**lots** 102:16 304:22
311:20
**low** 148:9 149:15
227:11
**lower** 47:2 69:15
**lu** 144:22
**luck** 218:9
**lunch** 21:7,9 190:2
221:18 223:13,16
225:17 226:7
232:6 276:3
**luncheon** 226:9
**lunchtime** 25:4
429:3 430:1
**luxury** 40:22

**m**

**machine** 26:4 32:4
32:6 59:13,21,24
432:7
**magnifying** 233:9
233:11

**main** 341:17
**maintain** 86:19
423:23
**maintaining**
304:17 359:23
**maintains** 105:1
408:3
**majority** 8:12
245:8 314:22
**making** 10:11
47:15 148:24
149:3,5 209:10
225:2 323:15
368:13 423:8
428:16
**malicious** 395:5
**man** 320:1
**manner** 340:6
383:6 389:13
**manual** 57:2,7,12
58:5 60:15 66:7
350:19
**manuals** 57:15,17
**manufacture**
170:8,13 241:6,10
241:13 420:4
426:5
**manufactured**
216:5,12 245:17
423:21
**manufacturer**
53:20 172:11
**manufacturers**
55:12 159:21
163:15 164:1
171:15 254:24
268:12
**manufacturing**
165:16 417:10
420:13 425:17

**maps** 29:9 44:18
**march** 414:22
421:22
**mark** 56:20 254:8
254:11 297:11
302:1 321:7
**marked** 5:4 53:5
60:12 88:4 152:23
153:1,16,19
173:17 204:4
273:12 296:3
297:16 302:4,8
321:10 372:8,9,12
**marker** 84:18,24
**market** 1:24 2:5
3:4 17:15,16
203:7 297:7 404:6
406:12 417:24
418:4,10 420:20
421:13 427:4
**marketing** 304:2
417:10 420:14
423:23 427:3
**marketplace**
418:18,19,21
**marking** 60:10
71:12
**markings** 30:3
157:13,20 172:19
**master's** 122:23
123:5,22 268:8
**material** 53:21
70:5 103:7,10
122:3 127:18
128:22 141:9
146:11 187:6
**materials** 31:1
54:4 55:6,8,12,18
55:22 56:5,24
61:5 63:5 186:21
257:23 258:1

310:1 420:3
**mathematical**
414:7
**matter** 15:1 19:15
20:22 28:23 62:5
64:7,8,11,14 67:10
67:11,13 98:2
222:16,22 271:8
284:6,7 296:23
315:12,14 320:19
344:8 372:7 402:3
402:17 405:11
408:17 409:8
**matters** 16:15
123:24 386:24
**maturity** 410:18
**max** 174:8 245:4
246:19 247:14
249:11
**maxim** 173:5
174:18 251:18,24
253:17 254:19
**mcnamara** 122:22
125:2
**mcu** 189:7 205:7
353:16 354:2
**mean** 11:17 14:19
15:14 19:13,23
20:21,22 22:4
28:7,12 29:19
40:17 45:22 49:21
52:13 59:13 61:20
63:8 74:23 76:18
90:22 96:15
101:24 107:16
114:5 118:15
121:18 128:17
132:19 133:21
134:3,7 154:19
155:3 156:18
168:24 188:14

190:4 193:24
205:16 208:6
209:7 212:23
213:13 216:13
220:1 230:1,22
231:20,21 232:12
233:8,17 235:10
235:21 240:7,23
242:3,5 243:8
246:2,8 258:18
263:7,8,13 264:2
264:23 281:10
298:9 304:4
315:12 316:8
323:12,15 335:1
343:22 388:18
412:4
**meaning** 377:18
388:20,21 389:23
391:14 393:1,7,10
**means** 15:18 47:6
131:7,9 144:8
145:1 153:23
173:9 271:20
285:6 289:20
292:9 334:22
340:16 374:6
380:11 382:19
387:11 403:3
**meant** 166:17
187:18 234:22
413:19
**measure** 415:15
**mechanical** 49:23
148:22,24 149:5
155:24 351:2
374:7
**mechanics** 47:10
**mechanism** 80:24
82:2,10,10 339:22
342:4 343:4

347:11 348:3
350:20
**mechanisms**
339:13 343:11
347:7
**media** 429:18
**meet** 271:16
272:16 273:2
277:24 284:10
286:11 396:17
412:5
**meets** 82:15
272:24 394:12
**members** 249:1
**memory** 47:20
62:9 195:15
215:24 216:16
218:5 269:1 383:5
386:20 387:7,13
431:14
**men** 38:15
**mention** 62:13
390:12
**mentioned** 41:4
95:19 102:17
138:9 143:12
202:12 213:13
234:24 268:6
363:17 384:12
**mere** 56:10 410:2
**merely** 62:16
65:14 111:14
112:7 113:7
403:20
**merging** 338:1
**merits** 406:10
**met** 84:10 85:21
294:20 295:6
393:18
**method** 408:14

**microchip** 1:4
17:6,14,24 18:13
89:5 97:14 99:17
250:22 265:16,21
265:23 266:4,6,13
266:19 267:23
309:2,16,20
310:14,20 311:8,9
311:18 312:6
374:13 375:2,8,13
375:17,19 376:2,5
376:6,19,21
377:16,20,24
378:2,3 390:10
391:9,12 392:21
392:23 394:24
395:3 407:19
413:16,18,21
414:1,5,6,13,17,20
415:3,5,19,22,24
416:3,4,7,10,11,19
416:22 417:1,9,11
417:13,16,18,21
417:23 418:1,2,4
418:10,22 419:2
420:8,12,16,18,18
420:22 421:2,6,8
421:15 423:11
424:6,14 425:23
426:17
**microchip's** 17:21
18:23 49:14 89:1
98:14 100:2
251:10 253:4,24
255:5 265:16
282:10,13,15
305:18 310:11
322:11 377:8
392:18 416:2
418:12 423:22

**microchips** 416:6
**microcontroller**
80:3 172:1 189:8
279:7 282:3 285:1
357:3 358:3
**microprocessor**
358:2
**mid** 1:23 137:5
**middle** 10:6 46:23
172:1 256:16
**mill** 147:13
**million** 188:7,11
**millions** 188:12
**mind** 56:7 411:20
422:12 426:15
**mindful** 319:20
**minimally** 230:1
**minus** 61:14
**minuses** 290:23
**minute** 22:21
24:18 26:4 104:12
110:7 112:3
114:17 124:20
137:13 139:5
189:9 340:23
**minutes** 26:1
137:7 154:3
190:10 221:23
223:14 363:24
364:5 369:24
370:6,23 372:2
**misleading** 9:6
11:23 64:16
177:12
**misrepresenting**
149:2
**missed** 129:13
165:8 236:15
**missing** 40:1 48:17
181:12 183:21
273:13 292:23,23

293:4,4 333:23
**misstate** 154:20
**mistake** 323:13,15
**misunderstood**
  62:4
**mixup** 232:7
**mobilemedia** 27:4
  27:9
**mode** 35:13
  207:13,22
**model** 52:22,24
  60:6 68:12 69:16
  69:20 70:6
**modes** 424:24
**modified** 31:18
  32:8
**modify** 401:11
**modifying** 401:17
**module** 192:11,18
  194:1,3
**moment** 23:17
  34:16 89:20 179:5
  335:8
**monday** 25:20
**money** 376:4
  377:21,23 414:20
**months** 18:8,15
  55:20 56:10,12,16
  62:5,16,23 64:8,12
  64:14 65:14,19
  67:11
**morning** 7:6,8,10
  7:14,17 23:21
  34:11,21,22 94:20
  94:21 137:5 181:3
  249:10 370:4
  371:19 373:7
  431:10
**mother** 230:23
**motion** 19:11,16
  19:20 20:2,6,9,18

21:5 22:3,7,14
  266:9 315:22
  370:14
**motions** 266:15
  370:18 371:1
**motivated** 76:16
  351:10 419:11
**motivates** 294:9
**motivation** 293:12
  293:20 294:7,13
  294:16 404:14
**motivations**
  404:18,21 405:2
**motive** 383:10
**mouse** 153:24
**move** 42:16 46:19
  47:17 74:23 75:11
  79:14 88:13,22
  124:8,10 142:9
  149:9 150:18
  178:22 182:19
  183:9 197:18
  199:10 202:3
  204:17 214:22
  251:2 261:12
  280:13
**moving** 75:13
  269:4,21
**multi** 84:5 101:8
  101:10,16 102:8
  104:22 105:1
  150:15 324:23
  325:1,23,24 329:6
  329:16,19 341:8
  349:24 350:14,15
  350:17 362:2
  365:11,13,24
  366:10 389:6
**multiple** 43:2,3,4
  47:12,13 49:9
  50:24 81:3,4

91:14 97:13 100:4
  105:17 154:24
  269:1 334:12
  348:14,14 349:11
  360:15 389:12
**multiplexer**
  148:11
**multiswitch** 150:1

## n

**n** 1:17 2:1,5 3:1,4
  4:1 266:23
**nak** 81:8,13 82:4,4
  82:10 340:12
  356:6,8 357:11
  358:12,24 359:5
**naked** 231:19
  232:24 233:7
  234:3
**naks** 72:9,11,12
  356:19
**name** 57:5 101:12
  147:18 252:6
  266:22 293:14
**named** 38:15
  122:15 158:17
  403:10
**names** 268:14
**narrow** 65:3
**national** 269:24
**native** 81:14
**natively** 47:12
**nature** 404:5
  405:3 410:15
  412:21 423:17
  425:3
**nearly** 139:16
  154:11
**necessarily** 33:21
  36:11,14 245:12
  361:17 401:4

**necessary** 32:23
  205:10 219:23
  284:3 332:23
  412:14 420:3
**need** 19:9 20:17
  21:22 26:10,22
  32:24 33:21 36:6
  59:19 66:20 78:22
  80:6 98:1 143:4
  171:10 178:4,19
  205:13 225:23
  233:10 241:4
  247:11 279:3
  293:10,12,16
  319:20 333:4,11
  338:2,10 342:3
  343:3 359:1
  370:11 371:7
  387:17 388:12
  404:8,10 405:4,9
  406:15 408:22
  411:22 413:12
  414:6 419:21
  421:4 428:18
  430:7
**needed** 98:15
  420:17
**needing** 100:5
**needs** 22:2 46:16
  165:17 219:20
  220:3 351:18
  406:11
**negotiation** 421:18
  421:21,23 422:5
  422:18 424:7
  426:21
**negotiations** 422:3
**neither** 292:6
  432:9
**network** 269:11

**neutral** 10:17
**never** 8:19 109:12
　125:19 301:2
　316:8
**new** 31:2 85:12
　267:20 269:15
　323:6 409:14
**news** 146:18
**nexus** 407:22
**nice** 87:18 100:11
**nigel** 323:20
**night** 7:15 16:6
　431:18
**nightmares**
　106:10
**noise** 26:3,9 249:6
**non** 34:24 146:11
　209:24 248:10
　402:3,15 417:8
　418:16 420:5,7
　421:12 423:18,19
　424:15 425:16
**nonobvious**
　402:19
**nonobviousness**
　403:19
**normal** 82:20 87:7
　87:12 92:18 93:3
　129:6 229:21
**normally** 426:19
**notary** 1:22 432:3
　432:13
**note** 126:11
　174:19 251:14
**notebook** 173:21
　174:1 182:23
　201:19 375:1
**notes** 124:13
　146:17 166:5
　373:5 386:19,23
　387:5,7,10

**notice** 32:12 46:7
　47:1 136:4 183:19
　311:17 432:4
**noticed** 19:24
**notify** 108:22
**novel** 268:23
**november** 17:9
　175:22
**number** 45:21
　52:22,24 60:7
　68:12 69:16,20
　70:6 118:15
　144:21 150:5
　159:16 160:9
　202:19 218:18
　227:20 234:17
　244:17 254:15
　257:12,15 303:6
　311:3 312:5
　373:18 382:23
　383:21,23
**numbered** 387:19
**numbers** 159:17
　159:22 176:6
　177:10 188:6
　224:15,18,21,24
　227:13 229:22
　253:19 255:11,20
　255:22 279:15
　282:1 283:4
　305:13,16 384:3

**o**

**o** 266:23
**o'clock** 24:20
　429:23 431:20
**oath** 34:13 104:5
　385:3
**object** 380:10
**objected** 78:16
　133:17

**objection** 26:13
　42:17 58:23 69:7
　88:15 96:12
　101:20 122:16
　123:9 124:6
　131:12,22 132:5
　133:1,15 163:7
　168:1 182:20
　183:11 197:19
　199:12 202:6
　214:18 215:9
　217:1,2 219:8
　228:11 233:19
　251:4 270:20
　280:15 296:20
　298:4 303:10
　306:13 316:19
　318:24 331:22
　344:10 355:11,12
　369:13 380:14,20
　380:21
**objections** 134:2
　379:12 380:14,17
　430:23
**objective** 402:14
　405:24 406:1,3,6
　407:20 408:5
**objectively** 318:18
**obligation** 108:20
　380:16
**obolsky** 23:6
**observations**
　128:19
**obtain** 411:24
　426:5
**obtained** 278:4
　406:23
**obtaining** 410:2
**obviate** 30:16
**obviates** 221:2

**obvious** 38:20,22
　41:2,11 49:2
　81:22 106:13
　154:17 235:14
　246:12 259:23
　397:18 398:7,11
　399:20 400:5,8,18
　400:21,24 401:14
　402:18,23 405:18
　406:3
**obviously** 14:3
　25:6 28:20 32:5
　83:9 142:13
　154:20 242:24
**obviousness**
　135:24 399:24
　400:1,3 401:4,23
　402:2,3,15 403:19
　404:17 406:5,22
　408:2,4
**occasions** 160:15
**occurred** 391:15
　413:24 416:17
**occurs** 360:24
**october** 197:7
**odd** 178:14
**oems** 18:10,14
**offense** 160:20
**offer** 9:22 13:4
　58:21 69:5 296:9
　298:3 303:9 306:9
　317:21 347:15
　355:10 359:21
　360:4,10
**offered** 13:10 16:5
　26:15 68:19 99:16
　161:16 314:24
　315:2 317:18
　319:6,14 320:15
　320:16 330:24
　344:21,24 380:18

386:2 393:2
**offering** 15:2 39:2
   97:24 263:17
   298:10 319:15
   344:18 364:23
**offers** 380:7
**office** 8:17,18 9:6
   9:11,13,21 10:8,14
   11:22 12:5 37:23
   39:9,20 41:8
   51:12 97:2,17
   103:24 108:10,18
   108:22 109:2,24
   110:11 113:3
   115:13,23 116:7
   118:23 120:10
   123:20 128:15
   130:23 132:3
   141:21 142:2
   143:15 146:13
   150:24 151:14,17
   152:7 154:23
   155:8,14 274:5,14
   302:23 309:15,19
   310:6,12 311:2,11
   312:4,14 317:17
   321:3 322:13,21
   323:4,13 326:12
   326:13,18 327:11
   327:16 328:15
   333:17,23 369:4
   369:11 396:5,7,19
   397:6
**office's** 40:7 228:1
**official** 432:11
**oh** 52:16 69:3
   102:24 106:6
   109:20 143:6,11
   144:4 148:23
   163:23 173:22
   182:2 198:20

201:16 228:1
   244:22 248:6
   263:9 284:19
   294:4 366:12
   369:2
**ohio** 267:20
**okay** 8:2,9 9:7
   11:12 12:6,11
   13:20 16:8,20,21
   18:21 19:2 23:8
   26:4 28:13 29:22
   30:19,23 32:23
   35:11 37:2,7,15,19
   38:12 39:13,18
   40:5,13 42:2,11,12
   49:13 51:14 52:7
   53:3,8 54:9,24
   56:19 58:12,16,20
   58:24 59:23 60:5
   60:9 61:1 64:10
   66:12 67:7,14,19
   67:24 68:8,14,20
   69:12,17 70:17,24
   71:5,20 72:3,7,16
   74:6 75:24 76:7
   77:5 79:8 82:13
   83:6,14,23 84:9
   85:14 86:6 87:16
   87:18 89:3,9,13,18
   93:16,20 94:6
   97:9 98:4 99:14
   99:23,24 100:10
   100:23 101:2
   103:22 104:17
   105:7,9,13,23
   106:16 107:5,23
   109:15,21 110:19
   111:4,23 112:15
   114:10,16 115:11
   116:14,18,19,22
   118:2,11 120:9,16

120:20 121:6,12
   121:20 122:5,9,11
   123:1 124:21
   128:24 130:4,13
   130:21 131:3,11
   133:19 134:7,17
   135:22 136:8,22
   137:1,8,11,12
   138:5,14 139:6,13
   139:22 140:4,15
   141:3 143:11
   146:4,20 147:6
   148:1,17 149:7,14
   149:19 150:7,12
   150:17 151:8
   154:1,8 156:10,14
   156:22 157:4,18
   158:3,16,21
   159:23 160:5,12
   161:13 162:2,5,7
   162:19 163:23
   164:16 165:2
   166:1,24 167:13
   169:14,22 170:6
   170:10,20 171:8
   172:23 173:15
   174:2,11 175:1
   176:8 177:18
   179:12,21 180:11
   180:16 181:8
   182:4,21 183:2,9
   183:12,22 184:3
   185:7,15 186:22
   186:23 187:8
   188:18 189:4
   190:8,11 191:3,19
   192:2,13 193:3,14
   194:4,9 195:22
   196:10 197:21,22
   198:16 199:4,10
   199:18 200:8

201:2 202:8,16
   203:10 204:3,13
   206:5 208:8,13
   211:8 212:5 213:2
   213:17 214:17,19
   215:16 216:21
   217:17 218:17
   220:19 221:13
   222:1,20 223:10
   223:12,16,17
   225:4,24 228:15
   229:5,23 230:2,10
   231:6,17 232:22
   233:5,18 234:12
   235:5,7,13,15
   237:13 239:11,21
   240:6 242:7 243:3
   243:4,21 244:8,22
   246:4,17,17
   247:20 248:6
   249:22 251:6,12
   252:24 253:8,21
   254:6,13,17,22
   255:15 256:1,10
   256:21 257:1,5,11
   257:16 258:7,15
   260:4,21 261:5
   265:17 266:11,18
   266:20 267:16
   268:6 274:4,12
   276:11,14 280:9
   283:7,21 286:13
   286:20 287:16
   288:2,11,16
   292:17 294:5,11
   299:5,12 300:1
   303:1,8 304:1
   305:24 307:6,19
   308:6,22 309:12
   310:4,19 311:1
   312:3,9 313:6,24

[okay - overruled]

318:21 321:18,22
322:7 323:11
324:2 325:19
328:7 329:3,21
331:2,10,17
333:21 334:10,20
335:10,21 336:14
337:18,22 338:4,4
338:12,23 339:15
339:16,20 340:22
341:18 342:2,15
343:18 344:2
345:7,11 346:14
346:23 347:5,16
348:1,9,17,22
350:1,2,3,22 351:4
351:13,19 352:1,8
354:16 357:18
359:16 360:3,14
360:17 361:1,7
362:12,20 365:2,9
366:16 368:22
369:3,8 370:17
371:1 372:16
373:1,16 374:9
427:22 428:4,11
429:1,21 430:16
**old** 193:16 289:7
424:24
**older** 359:18,19
**omitted** 293:5
**once** 136:23
160:22 237:9
263:13,19 356:22
357:12 431:8
**ones** 144:5 155:9
155:14,16 210:6
212:2 227:22
231:13,17 232:5
278:24 351:7

**open** 88:11 157:11
**opening** 30:20
49:14 89:1 103:13
138:8 322:8,9
345:23 373:19
**operable** 40:2,11
47:3 48:12,22
82:17 86:19 287:8
287:13,20 291:13
291:19 331:4
342:8 366:5
**operably** 290:1
**operate** 285:6
**operated** 282:21
**operates** 87:24
**operating** 35:13
67:22 68:4,5
207:12
**operation** 139:17
154:11 284:4
**operational**
200:12 259:13
**operations** 125:17
**opine** 13:7,17
**opined** 319:22
**opining** 320:22
**opinion** 12:15,23
13:5,13 14:6 15:2
15:6 17:20 27:2
29:7 34:24 38:9
41:3 49:15 53:14
65:9,17,23 75:18
75:20 78:3 82:14
89:23 128:9 131:4
256:5,9 257:18,23
259:3,21 272:11
272:15 277:20,24
284:7,20 285:23
286:1 287:11,18
291:12,16,17
292:2 294:12

306:4 317:24
318:11 319:6,14
319:15 320:16,17
334:7 344:19
347:10,15 359:21
360:4,10 361:20
364:23 365:10,15
365:24 366:10
367:1,4 368:23
384:7 422:15
425:20
**opinions** 14:9 39:2
52:8 66:8 70:2
77:10 88:21 97:24
98:11 99:16
128:19 268:2
284:6 306:8,10,11
306:20 308:2,4,24
309:1 312:12,13
312:20 315:3
317:18,22 318:15
322:17 330:19
347:23 348:7
362:18 363:9
384:5,10,11,14,19
**opportunity** 65:1
177:9 383:1
**opposed** 363:3,14
**opposing** 9:23
**opposite** 377:7
**optical** 32:16 33:7
33:10
**option** 202:22
404:12
**oral** 19:15 20:6
21:22 266:9,15
**order** 7:21 17:5
20:1 35:10 135:2
165:18 279:2,17
350:24 388:13
392:22 399:18

400:17 428:18
**ordered** 160:7
163:4,5 381:3
**ordinary** 76:20
79:20 81:19 85:2
86:1 389:23,23
390:1 397:13
398:17 399:1,2,6
399:10,20 400:6
400:19,24 401:8
401:15 402:12,19
402:23 403:9,16
403:24 404:5,22
404:24 405:21
407:11 409:5,20
410:7 411:11,21
411:23 412:2,9
**oriented** 139:5
**origin** 241:2
**original** 132:16
243:12 288:6
**originally** 323:23
**ought** 11:24 12:2
**outcome** 270:15
383:9 432:10
**outline** 387:11
**output** 269:6
**outs** 128:11
**outside** 314:5
336:7,11 379:15
379:19 382:1
**overall** 96:1
**overcame** 324:14
324:22 325:17
**overcome** 335:24
347:3
**overruled** 101:23
303:13 306:14
331:23 344:12
380:22

**oversight** 228:11
310:2
**overview** 22:20,21
23:22,23 25:23
42:22
**owe** 415:11
**owner** 311:17
341:12 421:19
**ownership** 392:13
392:15

**p**

**p** 2:1,1 3:1,1
**p.m.** 226:10,12
370:9 372:4
431:20
**p.o.** 3:5
**package** 55:22
157:20 251:16
252:7
**packages** 251:22
251:22
**packaging** 30:3
67:16,20 68:11
**packet** 335:5
340:5 356:3 357:2
**packets** 335:7
339:23 340:6
356:6 359:5
**page** 4:2 11:1
12:18,24 13:1
14:16,19 17:5
35:3 52:15 102:18
104:13 105:11,12
106:2,19,19 111:2
112:17 115:12
118:19 120:22
126:9 132:24
135:9,15 136:20
136:24 138:24
139:2,3 143:6
162:4 166:3,5,7

174:3,4,7 176:23
183:15 184:5
186:6 190:19
193:8 194:11,19
195:3 197:3,15,23
199:17,19 202:10
204:8 206:6
208:10 209:20
214:3 215:8
216:22 218:17
251:13 252:15
258:17 259:10
288:15,16 290:8,9
290:15 296:15
297:21,22 307:9
307:11,15,16
308:13 312:17
324:19 326:16
327:21 341:2
342:11,16 353:2
355:1,18
**pages** 102:22,24
103:3,6,6,21,23,24
120:11 121:10
148:12 297:23
307:4,21 308:1
**paid** 95:10 96:4
97:21 188:1
384:23 423:14
**panel** 123:19
**paper** 8:4 9:12
346:16
**paragraph** 8:7
101:19 104:10,16
105:10 115:19
118:20 148:19
186:7 324:13,16
325:11 327:22
341:3 342:17
353:4

**paragraphs**
125:14 387:19
**parallel** 269:4
**paraphrased**
221:11
**pardon** 46:2
**part** 10:9,10 31:13
31:15 33:23 46:7
47:2 73:16 82:6
82:20 85:4 89:24
93:1,2 103:16
113:11 114:3
118:20 121:1,4
128:17,21 129:6
146:15 159:16,17
159:18,18,22
160:2,9 161:3,15
183:20 189:12
200:6,24 205:2
213:21 216:5,6,6
216:11 242:15
254:15 257:12,15
296:18,21 322:16
322:18 332:21
382:21 406:9
416:13
**parte** 39:7
**partes** 97:8 116:24
302:11,14
**participate** 300:15
**particular** 67:17
67:22 68:12
111:13 112:6
113:6,11,24 114:9
126:16 157:1
170:16 175:7
216:2 247:18
249:13,15 272:2
276:22 296:23
317:13 380:12
403:5 425:11

426:6 428:15
**particularly** 64:22
209:14 290:8
298:10
**parties** 24:22
296:21 373:24
374:5 377:7 379:4
379:8 385:2,14
421:20 422:4,7
423:6 428:10
**partly** 76:18
**partners** 420:13
**parts** 73:12,13
76:23 172:6
251:22 279:19
293:15
**party** 376:23
377:5 378:6 413:6
422:19 432:9
**pass** 94:4 124:2
260:5 294:22
**patent** 8:17,18 9:5
9:10,21 10:5,8,14
10:22 11:2,3,7
12:4 13:16,18
14:10,11,14,18,19
14:21 15:11,18
37:5,21,22 38:3,4
38:14 39:2,6,9,19
40:7,18 41:8
42:14 44:21 45:14
48:18 51:12,16,18
68:7 76:19 89:6
90:3,9,12,19 91:10
91:22,24 92:12
95:14,23 97:2,2,17
100:3,21 101:1,8
101:12,13,16
102:5 103:24
104:20 106:13
107:10,14,17

[patent - perfectly]

108:7,10,16,18,20
108:22,22 109:2
109:12,18,23
110:4,4,11,13
111:10,12,22
112:5,12 113:3
114:7,8,20 115:7
115:13,23,24
116:7 117:3
118:14,23,24
119:14,17,18
120:10 121:9,14
121:21,22 123:19
125:5 128:14,23
129:4,12,16
130:18,23 131:10
132:3,17 135:12
136:2,15,21,24
140:24 141:14,16
141:20,21 142:2,4
142:16 143:15
145:14,20,22
146:11,13 147:3,3
147:4 150:24
151:12,13,14,15
151:17,20 152:2,7
152:9,17 153:8,13
153:21,21 154:14
154:23 155:8,14
155:21 156:8
161:17 163:1
166:1 168:20
169:1,5,12 171:4
222:21,22 257:10
271:8,9,24 272:24
274:2,5,14,23,24
275:4,6,15,17
276:1,10 290:12
293:11 294:17
299:13,18 300:23
302:23 304:12

309:15,16,19,24
310:6,12,22 311:2
311:11,17 312:4
312:14,21 317:17
321:3 322:12,13
322:21,22 323:3,4
323:6,13,14,20,21
323:21,23 324:4,6
324:8,9 326:12,13
326:18 327:11,16
327:23 328:15
331:14,19 332:2,4
333:4,11,17,23
334:12 338:24
340:4 341:5,11,22
343:22 344:9,15
345:4 346:3 347:7
347:14 360:19,24
361:8,9,13,16,19
363:18 364:19
365:12 366:1
368:2 369:4,11
374:20,21,23,24
375:1,3,5,6,7,9,16
375:19,24 376:13
376:20,23 378:1,5
378:7,8 387:18,19
387:20,22 388:1,7
388:8,10,18,22
390:7,11,13,19,21
391:12,17 392:2,5
392:5,12,13,13,14
392:18,20,22
393:8,11,17 394:7
394:21 395:2,2,12
395:15,16,19,20
396:2,3,3,4,6,7,8
396:16,19,20,21
396:22 397:1,6,7,9
397:10,11,15
398:1,3,13,17,23

399:23 400:2,11
400:16,16 401:12
402:13 403:15
407:2,3 408:8,13
408:15,16,18,20
409:1,6,8 410:9,12
410:16 411:2,4,9
411:16,18,22
412:4,18,20
413:15 415:11,13
415:23 417:17
419:17 421:18,24
422:5,8 423:12,16
424:18,22
**patent's** 171:5
388:5 406:23
**patentable** 136:17
141:9 282:11,14
399:19 400:17
**patented** 108:13
417:6 418:9,11,17
419:8,13 422:14
423:24 424:12,15
424:24 425:3,16
426:6 427:1,9,12
427:14
**patentee** 426:9
**patentholder**
427:6
**patentholders**
270:9
**patents** 38:16 97:3
97:14,19 98:14
107:19 108:6
109:7,8 110:10
117:21 118:15
119:6,8 132:15
143:8,20 144:2,16
144:18 145:1,20
145:21 151:19
154:24 155:2,6

169:10 268:24
300:18,21 309:20
310:7,8 325:17
392:10,15,17
397:3 401:18
411:20 423:15
**path** 61:12 62:20
63:10 83:2,3
318:23 328:2
400:12
**paths** 47:8
**patience** 194:20
249:2
**patient** 120:3
**pause** 63:1 134:6
182:11 213:6
217:18 235:9
242:8 263:6
278:14 293:24
**pay** 421:2 426:7
426:17
**pays** 79:10
**pc** 269:17 285:9
**pcbs** 73:16
**pci** 47:11,12 81:2
349:4,8,14
**pcs** 52:19 269:12
**pei** 2:4
**pending** 320:17
**pennsylvania** 1:24
**people** 74:16
203:8 259:1
319:21 350:6
379:23 426:19
**percent** 30:13 75:5
178:6
**perfect** 338:17
355:16 431:13
**perfectly** 9:3
11:11 222:18
342:9

perform 87:19
performance 283:19
performed 111:15 112:8 113:8 125:18
performs 389:18
period 17:11,17,24 268:13 354:10 419:20,24 420:2
peripheral 10:7 52:3,18 153:24 195:6 287:1 325:15 335:15 336:1 341:6 343:6 398:9
peripherals 195:8
permanent 219:6
permanently 218:10,23
permit 343:5
permits 147:21
permitted 13:4 15:7 380:9
person 50:18 55:13 76:9,15,20 77:10 79:19 81:18 85:2 86:1 146:23 293:13 332:1 339:7 345:16 357:5,20 358:6 385:13 389:23 390:1 397:13 398:17 399:1,2,20 400:6,19 401:8,14 402:19 403:9,15 403:24 404:22,24 410:7 412:2
personally 164:9
persons 399:14 407:10 409:4,20

411:10,21,23 412:9
perspective 398:24
persuaded 326:22
persuades 377:24
persuasion 421:14
pertained 8:23
pertains 399:7
pertinent 256:6 289:6 402:12,20 403:4,6
petition 116:23
petitioner 117:6,6 128:20 326:23
petitioner's 326:22
petku 99:10 185:1 185:2
ph.d. 268:9
phil 263:20
philadelphia 1:24
philip 3:3
philips 71:23 72:4 72:8,17 73:12,13 73:18,20,24 74:14 75:21 76:23 77:8 84:12 86:2 250:11 256:12,19 257:2,8 257:24 258:4,5 352:6 353:5,20,23 354:21 355:2,24 357:7 358:9,15,23 360:15
phone 234:17 235:2 305:13,16
photo 227:18 228:24 229:18 230:8 236:24 237:2,4,6,21,23,24 238:1,2,3,5,24

242:13,22 243:9 243:13 250:8 256:13
photograph 224:14,17 226:20 226:21,22 227:10 227:23 228:7,22 237:15 239:2 245:21 247:18 248:11,13 249:11 249:14
photographic 215:24 216:15
photographs 226:4 227:7,21
photos 230:8 232:4 243:2 247:5
phrase 47:3 216:2 346:24 378:16
phraseology 220:14
phrasing 65:21
physical 9:10 11:19,21 23:13 26:17,18 31:12 38:17 40:24 41:5 41:13 108:11,12 132:19 154:15,16 156:11 180:21 210:9 224:6 228:14 232:19,21 234:23 235:19 239:15 245:23 246:3 274:6 277:16 278:12 285:16 294:16 389:14 401:21,22
physically 29:10 236:7 245:12
physics 268:7

pick 24:17 337:11 429:22
picture 9:16 10:19 11:16,21 12:3 68:23 69:1,4 171:24 229:6,8,14 229:16,24 232:12 232:23 233:1 239:15,18 246:11 250:17
pictures 12:10 58:6 246:20 249:22
piece 48:17,20 245:16 293:6,6
pieces 44:22 57:6 77:2 213:1 216:13 233:18
ping 330:6
pivot 37:3
pivoting 124:10
place 1:17 12:21 32:21 73:3 86:3 401:7 432:4
placed 55:11
plain 389:22
plaintiff 1:6 2:18 374:13
plan 137:11 190:9 223:14,17 314:14 371:21 410:2
planned 20:19
planning 9:9 25:17
plausible 313:5
plaza 3:4
pleasant 160:17
pleasantries 295:7
please 7:12 35:2 42:4 44:13,17 58:10 68:16 69:11

69:15 71:8 74:4
77:9 83:8,16 86:8
122:20 123:10
133:8 137:17,20
140:17 163:13
171:19 173:21
176:13 203:15
215:8 219:15
247:4 250:10
253:10,23 255:5
255:17 256:15
258:17 266:21
267:17 268:4
271:5 278:2
301:11 303:14
311:14 313:12
336:17 355:18
360:8 372:24
**plug**  73:4,6 337:11
**plus**  38:23,23
212:19 213:14,15
214:12,13 285:1
394:17
**pluses**  290:23
**point**  9:22 10:11
10:13 11:11 20:8
21:6,21 24:6,8
27:3 28:20 42:24
44:3 49:23 51:23
59:20 71:13 119:5
132:14 176:1
179:19 190:16
197:1 221:3
223:13 226:24
234:2 236:2
278:15 283:14
286:9 288:14
290:19 299:20
303:6 314:15
317:22 352:21
357:1 367:19

370:14 429:3
**pointed**  255:8
259:12 287:2
**pointer**  71:14 73:1
78:20
**pointing**  129:15
173:4 289:1,2
335:4
**points**  286:16,22
349:11
**policy**  423:22
**poorly**  264:20,24
**popularity**  424:20
**port**  214:8 230:18
335:3 337:6
**portion**  171:20
240:2 403:20
416:6 425:9,14
**ports**  227:5
**position**  25:5
131:19 135:8,11
154:20 413:22
427:5
**positioned**  243:15
**positions**  373:24
374:1
**positive**  144:24
146:15
**possess**  89:24 90:5
**possessed**  91:18
409:7,11,21 410:9
**possession**  234:24
344:7
**possibility**  337:14
**possible**  98:23
181:14 190:21
227:6 244:21
337:15 354:9
361:5 397:22
404:8 410:1 414:9

**possibly**  206:10
215:5 288:15
**potential**  17:6
151:11
**potter**  3:3 263:21
**potteranderson.c...**
3:6
**power**  35:9 148:9
149:15 258:19
**powered**  35:9
**powerful**  233:10
**powerpoint**  386:1
**pp**  174:8
**practice**  261:20,22
296:17 412:3
**practitioner**  81:15
**practitioner's**
114:4
**practitioners**
90:13
**praised**  407:9
**preamble**  389:7
**precise**  335:8
405:10
**precisely**  57:5
**precision**  414:8
**precluded**  14:13
**predate**  300:21
**predated**  59:10
**predictability**
402:1 410:18
413:1
**predictable**
404:11
**preface**  373:3
**prefer**  33:12 249:6
**preference**  19:17
**preferred**  422:20
**prejudice**  383:10
**preliminary**  26:20

**premature**  365:23
**prepare**  321:15
**prepared**  44:10
117:19 118:12
268:1 270:24
312:10
**preparing**  169:15
169:19 306:10,19
309:13
**preponderance**
375:14,20 376:8
376:16 377:1,2,18
377:23 378:14
391:10,13 392:24
394:24 414:3
416:13 417:4,19
418:2 420:1
**presence**  194:2
208:3 412:19
418:20
**present**  13:3 36:9
315:18 318:8
333:19 415:5
428:11
**presentation**  24:4
202:2,13 203:7,22
208:5 209:10
258:11 291:9
**presentations**
386:1
**presented**  17:7,24
119:4 211:4,6
245:22 289:3
312:14,21 326:7
346:17 348:6
382:10 387:2,5
426:13 429:14
**presenting**  8:20
129:23 312:12
**presents**  45:13

**preserve** 22:3
424:3
**preserved** 266:15
**president** 131:21
**presiding** 7:5
**pressure** 406:12
**presumably** 308:3
**presume** 236:13
**presumed** 396:9
399:3
**presumes** 396:6
**presumption**
396:5,11 421:11
**pretrial** 17:5 20:1
26:11 31:6,21
315:22 316:9
**pretty** 96:15 108:9
118:13 209:11
233:10 293:6
349:15,18
**prevent** 172:14
264:12
**prevented** 36:18
36:22
**preview** 316:24
**previous** 85:4
185:18 294:3
**previously** 120:6
215:2,18 374:12
384:12
**price** 425:10
**primarily** 181:15
**print** 44:9 45:18
49:7 141:6
**printed** 110:11
146:19,20,24
**printer** 44:5,9
45:20,24 46:20
47:23 48:7 49:10
49:11 50:1,3,7,10
51:1,9 80:22

287:2,12,18 289:3
289:7,8,11,24
**printing** 44:6
**prior** 14:12 27:2
27:16 37:13,21,22
38:5 49:17 65:15
65:18 117:20
119:13 125:4
138:7 142:2 143:6
148:20 149:17
155:13 162:9,24
168:21,24,24
169:10,18,24
175:15 176:10
180:18,19,22
256:7 265:20,23
266:3,6 271:16,20
271:21 272:22,23
272:24 278:22
281:16 282:18
284:8 285:21,21
288:22 291:22
292:1,3 309:15
310:7,9 318:4,7
320:10 323:5
324:15,22 396:18
399:4 400:12,14
401:3,6,11,13,17
401:20,22 402:7,9
403:2,4,6,13,21
404:4,20 405:9,10
405:14 406:20
410:23 412:22
415:8
**priority** 61:5,14
63:6,16,21 66:16
68:7 70:9 161:17
169:1,11 171:3
175:8 245:18
257:9

**probable** 378:12
414:10
**probably** 22:20
24:17 63:11
108:14 109:7
118:7 120:23
121:1,4 147:4,14
148:2,6,15,16
161:6 205:6
209:11 233:10
243:17,17 283:17
368:19
**probative** 425:8
**problem** 14:23
20:11 27:22 30:16
36:1 47:14 50:23
54:16,17 59:12,14
63:12 76:19 81:6
82:11 83:4 87:15
94:10 104:21
221:1,5 228:16
245:24 349:23
350:5 351:9 403:5
403:10 404:6,8,9
405:3,4
**problems** 59:15
169:3 276:18
283:18 350:7
**procedural** 19:10
19:15
**procedurally**
22:22
**proceeded** 407:15
**proceeding** 39:7,9
39:15 40:23 41:24
109:24 127:8
132:12 189:10
267:22 302:11
310:6 317:3 322:1
328:15

**proceedings** 1:11
7:2 97:11 99:9
107:10 226:12
302:15 309:15,19
309:24 310:12,13
318:12 321:4,20
322:5 346:16
387:12 396:22,23
396:24 397:1
431:20
**process** 128:3,21
129:7 332:21
333:13 353:16
354:2 374:3 393:6
425:17 427:8,20
427:23
**processor** 186:13
**processors** 269:1,9
**produce** 55:17
**produced** 53:20
150:14 224:17
226:21 227:1,9,10
227:22 228:7,8
232:2,5 234:10
236:14,19 238:22
238:24 241:23
**produces** 378:10
**producing** 228:11
**product** 8:20
10:20 11:9 29:9
29:12,14 51:19
52:19,23 53:13,19
55:15,19,23 56:2,4
56:14 57:8,22
60:16 67:16,20
68:24 69:1,4,23
73:7 76:24 88:1
147:13 148:7
164:24 166:18
167:14,19 168:13
168:14 170:2,8

171:4 172:12,16
172:19 265:22
266:5 347:18
362:14 374:3,18
393:16,20 394:12
397:21 401:17
408:14 409:24
412:7 418:9,13
419:11,12,15
420:8 423:2,21
424:12,21 426:6
427:2,8,15
**production** 232:9
248:10
**products** 38:1,17
40:24 41:5,14
53:15 108:2
146:17 169:2,17
169:23 175:16
281:19 309:2
393:3 397:4
418:14,17,19
419:2,7,9 424:13
427:12
**professional** 270:1
**profit** 18:11 415:7
417:15 425:9,15
**profitability**
424:21
**profits** 17:8,19,19
18:2 377:22
414:14,16,17
415:4,18,24 416:3
416:5,8,12,18,19
416:20,24 417:12
419:3 420:23
421:4,7
**program** 423:23
**programs** 18:7
**progress** 145:1

**prohibit** 265:2,4
**prohibitions**
263:18
**project** 182:18
**promise** 37:8
294:20
**promoter** 424:10
**promoting** 424:12
**prompted** 403:23
**pronouncing** 9:5
**proof** 376:13,15
378:12,14,16,17
381:19 402:1
404:16
**proper** 243:17
415:14
**properties** 407:1
**property** 424:24
**proposition**
358:22 426:4
**pros** 290:22
**prosecution** 10:10
152:1 290:12
324:7
**protection** 55:16
**protocol** 334:16
334:22
**prove** 391:13
392:23,24 394:23
394:24 401:4
404:17 414:6
415:24 416:11
418:10 420:16,19
423:12
**proven** 375:13,18
375:20,22 376:3
376:12 391:9
397:9 416:22
417:2 418:4 421:5
**proves** 417:18
418:2

**provide** 76:2
97:21 98:19 99:10
125:15 141:16
164:11 181:16
214:15 219:22
224:22 225:7,8
296:18 305:7
327:23 344:5
358:10 375:11
376:9 388:1,3
389:18
**provided** 98:14,17
98:24 99:12,17
107:15,16 118:3,4
146:12 155:17
181:9,19 237:16
282:23 307:3
308:1 325:22
389:21 410:5
**provides** 43:8 80:1
101:8 102:5
**providing** 12:15
14:23 324:23
**proving** 376:24
377:16 378:7
396:12 400:1
423:12
**provner** 3:6
**provoke** 429:11
**proximity** 55:18
**prudent** 426:3,9
426:19
**ptab** 124:3 130:22
130:23,24 310:13
314:10,17,20
315:5,14,17
316:14 317:4,5,12
318:3,6,12 319:2
320:9 321:20
322:1,5

**public** 1:22 27:14
419:10 432:3,13
**publication**
118:24 153:22
**publications**
110:11 142:2
145:21 146:8
147:2 151:20
155:1,7 397:3
401:18
**publicly** 52:9
57:13 65:11,12
66:17 67:5,10
68:3 70:2,13,20
93:13,22
**publish** 197:14
202:9,10 296:15
**published** 118:24
145:4,7 147:2
212:22 299:10
**pull** 10:22 33:18
34:1 106:1 111:10
115:12 140:17
148:19 158:4
166:2 171:10
213:9 216:21
354:9 355:21
**pun** 138:6
**punish** 413:19
**purchase** 175:16
419:19
**purchased** 168:18
168:21 278:6,9
374:17 416:15
420:7
**purchasers** 419:10
**pure** 65:7
**purely** 19:15
**purple** 327:17
**purported** 91:13
224:14,21

**purpose** 264:11 334:11 380:24
**purposes** 17:21 25:17 55:16 153:2 153:20 228:2,18 232:20 292:14 392:19
**pursuant** 432:4
**pushing** 285:20
**put** 20:8 24:17 26:3 31:2 32:16 65:7 111:7 179:1 179:16 190:20 217:7 228:18,18 228:24,24 232:4 236:4 244:19 272:14 273:5 275:8 286:19 293:22 299:23 303:14 317:1,19 320:12 338:14 339:19 355:17 364:10,12,12 377:6,6 401:7 413:21
**puts** 396:11
**putting** 273:22 274:1 308:23 318:10 338:20

**q**

**qualifications** 121:23 124:4 268:5 384:9
**qualified** 124:4 425:21
**qualify** 415:7
**quality** 383:4
**quantity** 412:13
**quantum** 269:14 269:15,19

**quarter** 415:4,9,20
**quarters** 355:20
**question** 14:1 19:11,17 27:23 32:9 33:4 35:6 41:17,22 53:12 54:14 61:24 62:3 62:4 63:2,13,24 64:18 65:2 66:23 67:2 76:12 78:12 91:17,23 108:8 109:3,4,6 112:1 114:24 115:10 129:1,3 134:4 139:6 162:7 163:6 163:13 166:12,13 167:4,23 169:8 183:4 188:9 216:9 216:15 218:21 220:13 221:11 222:21 231:8 237:14 238:4 240:12 260:10 264:18 279:1 306:2,16 308:14 312:19 316:7,8 317:7 319:13 357:23 361:21 366:9 371:3 380:7 380:21 391:18,21
**questioned** 385:2
**questions** 15:15 35:14 89:19 93:10 124:20 133:21,24 134:13,16 135:1 221:19,21 223:11 262:2 264:16 363:21 364:21 367:24 368:9 369:15 373:15 379:8 380:15

**quick** 16:14 23:22 23:23 57:6 124:14 243:4 372:6
**quite** 153:4 242:17 283:11 308:18 318:23
**quote** 101:14 221:12
**quoted** 45:22 100:20

**r**

**r** 2:1 3:1 269:3 432:1
**rafferty** 152:17
**raincoat** 382:4
**raining** 382:1,2,7
**raise** 19:20 20:13 248:10
**raised** 7:16
**raises** 18:5
**range** 30:13
**rate** 95:21 234:1 422:22,24
**rates** 423:14
**reach** 76:8 164:5 380:3 413:21 426:2
**reached** 164:13,14 317:10 406:5
**reaching** 381:10
**read** 13:19 14:4 24:16 99:20 125:12 147:19,20 152:1 179:9 189:18,19 205:20 276:6 307:18 308:12 312:16 355:4 357:3,24 367:17 373:3 374:2 390:8,14 391:1,4,5 413:7

430:13
**readily** 47:22
**reading** 101:6 104:18 123:13 189:14 218:15 265:14 325:10 332:2 371:4 373:20 409:6
**ready** 18:5,8,15 72:14 134:21 339:24 340:2,5,6 340:16 353:16 354:2 357:12
**real** 65:3 113:13 114:1 124:14 243:4 271:22
**realities** 418:21
**realizable** 425:14
**realized** 232:7
**really** 8:23 19:18 68:6 111:24 113:10 143:11 148:23 149:24 177:10 222:22 234:22 244:24 275:7 373:3 429:2
**rears** 313:21
**reason** 78:10 116:2 131:5 139:14 152:5 154:9 180:20 206:3 230:14 245:15 249:7 259:23 275:21 276:5 288:17 334:18 373:20 401:10 403:22 404:3 428:20
**reasonable** 17:10 30:14 70:22 184:16,19,21

187:15 350:10
377:22 378:16
383:14 401:16,23
414:15,19 415:6
415:14,18 421:16
422:14,16,21
423:4 426:21
**reasonably** 27:5
27:12 344:6 380:2
395:13 403:4,6
421:8 422:3,9
426:2
**reasoning** 318:13
**reasons** 247:16
384:9
**rebut** 232:14
267:24 406:22
421:11
**recall** 89:4 93:11
150:8 181:18
195:13 215:18,21
217:14 245:9
301:24 305:5,20
307:5 308:20
310:23 312:15
321:5,21 322:6
329:20 330:17
342:14,19 346:5
347:4 348:21
391:12
**receive** 47:4 48:13
84:6 99:7 330:10
357:12 384:15
**received** 42:18
88:18 163:3 165:5
197:21 270:22
356:4 379:2,10
380:6,24 386:12
423:10
**receiving** 356:24
357:13

**receptacles** 73:3,5
**recess** 137:13
226:9 372:3
**reckless** 395:4
**recognize** 42:13
53:5 74:10 77:6
88:9 106:4,22
107:8 123:7
136:11 140:19
150:3 158:7,11
176:16 183:5
196:22 199:6
256:18 280:11
302:7 326:17
409:6
**recollection** 61:3
63:3 64:2 65:5
127:1 167:2,10
216:19 217:6,8,13
218:2 219:13
220:17,22 281:7
307:20
**reconfigured**
100:5
**record** 17:23 20:9
60:23 62:11,19
64:16 123:14
135:3 228:14
241:16 265:15
266:22 309:18
316:4 319:3
370:19 372:11,19
381:4 428:17
432:8
**recorded** 304:6
385:4 432:6
**records** 151:15
181:24,24 386:16
**recover** 375:8
414:14 415:19

**recreate** 33:8
**recross** 260:7
263:2 264:17
**rectangular** 71:12
**red** 84:18,24 179:8
189:1,3,6 190:15
191:6,7,22 192:10
210:16,17 259:7
327:7 340:1
**redirect** 4:13
30:19 32:23 33:16
34:2,4 223:22
249:24 250:3
261:13 364:15
**redline** 327:12
**reduction** 414:17
**refer** 259:2 374:23
390:6 391:3
**reference** 9:4 11:2
11:18,18 25:8
28:20 52:20 55:4
56:8 65:8 66:5
67:2,8,17,21 68:12
72:22 127:8
151:15 209:14
274:23,24 275:17
277:13 293:9
303:23 321:20,23
322:2 324:13
353:10
**referenced** 166:14
354:22
**references** 8:15
10:14,23 11:21
38:8,13,21 51:19
118:22 136:1
140:24 143:19
272:13 294:7,14
305:4 397:2
401:11 404:19

**referencing** 41:6
66:14 416:19
**referred** 50:15
68:5 332:6 396:24
398:4,6,10
**referring** 104:2
259:20 280:23
288:20 340:3
353:18 361:8
**refers** 103:17
271:21 313:23
340:9,12 390:20
390:23 391:2
394:5,17
**reflect** 423:1 427:6
**refresh** 61:3 62:8
63:3 65:4 125:2
167:1,10 216:18
217:5,7,12 218:2,5
219:23 220:22
273:21 281:7
307:20
**refreshed** 64:2
127:1
**refreshes** 62:9
219:13 220:17
**refreshing** 219:20
**refused** 224:22
356:6 359:5
**regard** 107:24
126:12,15 127:18
128:10 152:12
261:22
**regarding** 12:15
44:11 98:1 257:18
391:19 398:22
407:12 415:17
**region** 1:23
**reiterate** 215:15
**rejected** 8:17
10:15 11:23

[rejected - require]                                                                 Page 52

120:12 150:24
**relate**  211:22,22
  277:5 300:19
**related**  9:20 59:15
  91:17 164:2 188:7
  248:8 269:23
  270:4 274:9
  298:22 299:3
  309:19 315:6,7
  367:18 375:4
**relates**  9:1 102:5
  148:19 268:17
  271:14 277:21
  289:12 292:19
  296:23
**relating**  34:24
  309:24 392:10
**relation**  107:9
**relationship**  416:1
  424:5
**relationships**
  111:16 112:9
  113:9
**relative**  412:23
**release**  44:8
  314:10
**relevance**  123:18
  133:13,20 405:7
**relevant**  38:5
  123:14,16 141:7
  144:9 230:7 318:9
  318:16 391:20
  392:2 399:10
  403:13 404:1
  410:21 417:24
  418:10 421:13
  422:13 426:20
**reliability**  384:10
**reliable**  32:10
  33:15

**reliance**  125:14
  236:17 310:20
**reliant**  236:13
**relied**  27:1 30:12
  54:16 154:10
  181:15
**relitigate**  315:20
**rely**  27:5,13,16,23
  28:22 30:14 37:13
  53:14 54:3 74:17
  75:10,17 77:11
  156:19 163:2
  187:19 235:18
  236:7 245:22
  257:22 384:19
  396:18 401:5
**relying**  29:1 31:16
  31:17 38:9 187:12
**remain**  126:10
  377:11
**remainder**  265:24
  266:7 385:24
**remaining**  424:17
**remains**  421:14
**remarkable**  52:18
**remember**  57:4
  99:15 103:2 116:5
  116:12 117:22
  118:1,6,9 121:16
  121:17,19 125:21
  125:22 130:12
  135:15 138:12
  154:2 156:20
  161:6 166:22
  181:21 194:13
  196:23 206:2,10
  216:3,10 217:20
  217:23 218:7,21
  219:2,5 220:16
  222:7,17 281:3
  286:24 342:23

346:20,24 373:12
  416:18
**reminding**  430:20
**remove**  12:1,3
**removed**  12:2
**renault**  202:2,13
**render**  387:15
**rendered**  29:6
  401:13
**rendering**  78:2
**renders**  398:6,10
**repeat**  115:1
  229:11 231:7
**repeating**  115:2
  220:6
**replace**  79:21
**replaces**  227:24
**replay**  47:21
**replies**  103:12
**report**  8:8 12:17
  13:11,12,15 14:3,9
  14:17,24 15:17
  16:7 77:21,22,23
  78:5,23 99:16,21
  101:22 102:13,18
  102:22 103:14,16
  104:2 105:21
  111:3 116:5 118:7
  118:9,16 138:8,15
  139:8 154:3
  156:19,24 169:19
  181:1,22 187:1
  288:6,8 296:7,19
  304:22,23 307:4
  307:14,22 312:10
  313:1,7 317:22
  319:17,19,20
  320:2,21 321:2,6
  321:15 324:12,16
  344:22 345:1
  346:7,11 353:1,3

354:22 359:22
  360:11
**reported**  180:24
**reporter**  1:21 27:7
  385:3
**reports**  99:17
  102:16 103:11
  186:19 309:14
**represent**  178:8
  220:18 234:23
  255:12,23 256:13
**representation**
  56:6 139:1 241:1
  242:4 299:11
  302:16
**representations**
  221:7
**represented**  11:14
  228:19 253:18
  255:20 269:18
  294:18 345:19,22
  354:12
**representing**  2:18
  3:15 149:4 295:9
**represents**  228:3
  254:4
**request**  46:13
  47:15,23 81:12,13
  243:22,23 245:2
  247:3,4 248:8
  265:18,24 266:1,7
  330:6 339:2,5,24
  343:7
**requested**  380:11
**requests**  35:24
  36:7 47:5,18
  48:14 265:15
  330:11
**require**  92:4 93:4
  93:9 114:21 115:8
  116:10 329:23

366:18 412:10
**required**  208:20
  259:18 344:5
  376:12 401:24
  409:19 412:2
**requirement**  16:1
  40:10 82:16 84:1
  86:15 333:24
  344:4 359:23
  362:22,23 363:10
  393:18 404:17
  406:24 408:10,15
  408:18 409:4,9
  411:8,15,16,19
  412:5
**requirements**
  344:15 345:9
  366:18 390:22
  394:12,16,18
**requires**  331:3
  345:4
**reread**  321:14
**resellers**  164:6,19
  164:21 165:4
**reserve**  34:3
**reside**  136:18
  200:5
**resides**  136:20
**resold**  168:15
**resolution**  224:16
  227:6,12 229:18
  229:21 250:8
**resolve**  226:6
**resolved**  7:20,23
**respect**  8:5 13:13
  14:15 41:17 85:16
  87:20 111:20
  238:5 241:1 258:2
  272:20 273:4
  314:11 315:19
  316:21 317:10,13

317:23 344:19
  416:24 423:20
**respectfully**
  129:15
**respective**  46:9,22
  47:5 48:14 81:9
  84:2,4,14,23 85:18
  86:16,19 329:24
  347:19 360:6,12
  360:14 389:9
**respond**  47:4
  48:13 227:15
  240:18 330:11
**response**  48:1,8,11
  85:19 86:20
  162:12 166:19
  240:16 359:24
  429:11
**responses**  134:5
  265:16
**responsibility**
  397:8
**responsible**
  332:15
**rest**  14:2 31:9 60:4
  266:10 284:5
  285:1 388:1
**restate**  66:22
**restricted**  423:19
  423:19
**restrictions**
  146:23
**result**  132:10
  339:9,12 375:5
  376:22 392:16
  406:10,11 414:18
**resulted**  130:9
  410:12 421:17
  422:17
**results**  31:23
  405:14 406:19,21

406:21 425:2
**resume**  34:10
  95:19 134:20,23
  137:22 296:5,18
  301:17,20 302:3,9
  303:2,4,17,18
**resumed**  226:11
**retail**  147:13
  148:7
**retired**  299:6
**retirement**  211:17
**retrace**  400:12
**returning**  356:6
  359:5
**reused**  151:11
**review**  8:24 10:7
  11:10 12:8 39:8
  51:16,20,20,24
  52:3,4 57:19 97:8
  116:24 118:14
  123:23 151:2,3,6,7
  152:13 191:22
  290:24 300:11
  302:11,14
**reviewed**  117:20
  117:24 121:10
  125:3 186:19
  194:8 307:21
  309:18
**reviewer**  300:9
**reviewing**  122:2
  384:24
**reviews**  325:8
  326:3
**revised**  12:1,2
**revision**  183:16
  184:10,11 185:3
  193:7,8
**right**  13:22 16:8
  16:13 19:2,8
  22:18 23:7,20

28:8 29:18 30:1,8
  33:20 34:3,6
  39:16 42:18 48:23
  52:2 54:15,24
  60:19 61:20 62:2
  62:6 63:14,18
  64:15 72:20 82:19
  83:21 88:17 95:5
  96:23 102:10
  103:16 104:3
  105:21 107:14
  108:4 110:8,23
  111:7 112:23
  115:4 117:9,14
  119:11,19,23
  123:3 124:23
  126:2,5 127:14
  129:14,18 130:24
  132:24 133:9,16
  134:17 137:4,16
  137:20 138:20
  139:22 140:13
  141:22 142:12,17
  142:19,24 144:4,5
  145:4,11 146:2
  148:8 149:8,10
  150:15 151:23
  152:4,10 153:5
  155:18 156:2,5
  158:1,9,18 159:12
  160:23 164:2
  166:8 169:4 170:8
  171:13,16 174:9
  174:12 177:18
  179:12 181:6
  182:3 183:19
  186:9 188:10
  193:12 196:23
  199:14 202:20
  204:18 206:12,20
  207:19 208:6

210:16 211:13,22
215:11 220:12
221:22 222:1
226:8,17 227:19
228:15 229:2,9
230:11,13 231:1
231:22 232:15
233:19,19 234:13
235:8,10,23 237:7
237:24 238:2,5
239:1,4,5 240:6,8
241:8,20,22 242:4
243:5 244:9
245:18,19 248:15
248:19,24 249:23
253:6 258:13
260:16 262:2
266:11 270:21
271:7,12 272:9
273:7 275:3,4,11
275:12,16,24
276:14,19 277:1
278:14 280:16
281:5 283:1
288:10 291:24
292:15,16 295:11
295:12,14,19,24
296:12,19,24
297:4,7,20 298:14
298:17,22 299:7,8
299:10,14,16,19
299:22 300:6,10
300:16,19,20,21
300:24 301:1,4,9
301:12,15,18,19
302:11,18,20,21
302:23 303:4,12
303:18,23 304:3
304:13,13,18,24
305:4,13,16,19,22
306:2,5,6,12,22

307:2,4 309:3,6,16
309:20 310:7,12
310:15,22,24
311:4,9,11 312:7
312:14 313:4,9,16
313:23 316:6
318:14,19 321:4
323:14 324:6,10
325:7 326:2,13,24
327:8,9,14,18
328:17,23 329:6,8
329:12,24 330:4,6
330:12,13,23
331:6,12 332:18
333:3,7 334:2,3,6
334:13,14,17,17
334:23 335:5,16
335:19 336:1,4,8
336:22 337:1,3,7
337:21 338:2,11
338:15,22 339:1,6
339:9,19,24
340:15,17,18,21
341:12,14,19,21
341:24 342:6,13
343:1,12,15,21,24
344:9,14,16,20
345:2,5,10,12,18
345:21 346:10,12
347:8,14 348:20
349:4,6,13 350:9
350:11,15,19
351:8 352:6,10,14
353:5,8,9,11,14,17
354:3,23,24
355:14,18,20
356:1,9,12,14,15
356:16,18,20,21
356:24 357:11,13
357:21 358:14
359:12 360:1,7,21

361:3 362:2,10,16
364:19 365:1
369:11,18 371:1
372:1,6,19,24
374:9,11 397:16
423:23 427:17
429:12 430:6,11
430:17 431:17
**ring** 347:3
**rise** 7:4 137:15
226:13 372:5
**risks** 425:18
**roadmap** 269:4
400:11
**role** 35:3,13
267:22 268:21
309:5,8 387:18
393:14 415:21
416:7,15 417:1
418:24
**room** 30:19
104:12 269:21
356:23 385:23
427:22
**rose** 1:21 26:10
134:21
**rotate** 69:11
**rotated** 240:2
**roughly** 407:18
**roundabout** 61:23
**routing** 189:19,20
191:5
**rovner** 3:3 263:20
263:21 430:19
431:5
**royalties** 377:22
415:18 423:10
**royalty** 17:10
414:15,19 415:6
415:14 421:16,17
422:14,16,17,19

422:21,24,24
423:5,13 426:8,16
426:21 427:5
**rozycki** 158:24
160:8,10 164:15
164:22 166:13
**rozycki's** 166:3
181:1
**rpr** 1:21
**rubbed** 172:5
**rule** 19:11,20 20:7
20:15 21:5,22
22:3,6,14 27:23
261:12 262:3,13
262:19,21 263:1,4
263:4,8 264:3,12
264:14,20 265:3
370:14 380:12
394:1
**ruled** 140:11
316:8
**rules** 380:5,9,18
**ruling** 23:12
130:10 317:5
380:20
**rumors** 379:18
**run** 24:19 147:13
**running** 279:6
**runs** 12:24 282:2
285:9
**russell** 2:4 20:12
21:20 22:16 23:1
23:7 227:14,19
228:8,13 229:3,7
229:11,15 230:6
231:2,7,23 232:3
232:16 234:14,20
235:16,24 236:2
237:6,10,18,22
238:15 239:12,20
240:5,18 241:15

242:1,20 244:16
245:7,19 247:2,21
248:7,17 263:10
264:7,11 370:13

**s**

**s** 2:1 3:1 5:2 6:1
185:2
**sale** 28:5 56:15
59:5 70:9 161:16
170:16 416:5,21
**sales** 18:3 158:23
159:10 161:12
415:4,8 416:8
417:1,11,22
418:12,13 419:3,4
420:9,14,17,24
421:3,9 424:12,14
424:16
**sample** 274:3
**san** 3:11
**sandia** 17:1,18
18:5,7,15,24 19:3
416:10 418:12
**satisfied** 46:24
87:1 362:24
406:15 409:4,10
**satisfies** 15:24
40:10 421:6
**satisfy** 18:10 344:3
359:23 408:9,17
411:7
**satisfying** 417:13
**sauce** 330:15
**saulsbury** 3:10 4:6
23:9 26:24 27:9
28:2,11,14 29:2,14
29:19,23 30:2,10
30:24 31:8,14
32:1,15 33:9,24
34:15,20 35:1,5
42:9,16,19,21

44:12,15 54:12,20
54:24 55:3 56:20
56:22 58:15,21
59:1 60:9,13 62:2
62:7 63:18,22
64:1,6 65:6,14,16
66:4 67:1 68:21
69:5,10,18 71:7,10
74:9,21 75:4,10,16
78:2,15 79:4,14
81:23 83:7,11,15
83:18 86:7,10,12
88:8,13,19 94:4,10
94:15 96:12
101:20 122:16,19
123:9,13 131:12
131:22 132:5
133:1,7,12,23
134:3 153:4 163:7
168:1 177:3,8,16
177:20 178:4,19
182:9,20 183:11
197:19 199:12
202:5,6 214:19
215:9 216:23
217:2 218:14,17
219:8,14,19 221:5
250:1,5 251:2,8
252:14,16 253:1,3
253:9,11,22 254:1
255:4,7,16,18
256:11,17 258:8
258:10,16,22
259:9,11,14,19
260:5 261:6
265:12,13,18
297:13 372:16
430:8,19 431:1,15
**save** 32:22 429:20
**saw** 55:5 56:13
57:19 82:20 94:3

178:11,12 179:11
204:11,15 246:21
249:11,14 257:2
276:8 335:11
381:24 386:9
**saying** 9:9 14:5,7,8
14:13 21:21 26:17
28:4 30:7 32:19
54:16,17 63:9
89:5 90:7 108:10
129:12,19 162:8
162:12 168:13
200:10 217:15
233:20,21 241:21
242:24 255:10
275:19 306:21,22
306:24 319:24
356:13,20 359:6,7
**says** 8:14 10:6,17
14:24 15:5 17:8
20:1 22:6 27:4,12
28:21 30:6 46:8
48:21 52:17 78:8
83:21 84:21 102:4
104:20,21 105:16
118:10 126:17
127:14,15 138:21
139:12 143:1
147:1,21 150:1,9
159:18 162:15
166:15 167:5
174:8,9,12,15,24
177:11 181:22
182:18 183:18
184:10 185:20
186:10 187:16
189:7,10,14
191:22 192:9
195:5 197:6 198:2
198:10 201:12
205:22 208:16

209:7 220:15,23
233:4 236:19
251:15 263:13
264:24 265:1
275:21,23,24
276:1,6 285:3
288:19 289:5
290:22 311:16
319:6 326:21
327:21 329:16
330:4,9 332:10,15
332:20 342:1,19
343:2 355:23
356:3 358:13
359:3,4 361:24
362:4,11 382:21
**scale** 243:10
251:16,21 252:9
377:8,10
**scales** 377:9
**schedule** 20:19
21:2
**schematic** 188:21
192:21
**school** 267:21
**science** 268:9
**scope** 77:21,22
314:5 319:19
344:11 345:17,19
345:21 369:5,6
390:8 398:14,19
402:6,24 403:2
409:22 410:10,15
410:22 411:13
412:12 423:17
**scrambling** 242:6
**scraped** 172:18
173:4
**scratched** 172:7
**screen** 58:17 83:16
228:18 364:11

Case 1:17-cv-01194-JDW   Document 395-2   Filed 09/16/22   Page 488 of 503 PageID #: 18367

**screens** 25:9
**screenshot** 31:22
  32:2,4
**screenshots** 58:6
**seal** 432:11
**search** 118:4
  145:11,20 151:15
  182:3
**searched** 109:22
**seat** 7:12 266:13
**seated** 23:23
  137:21 248:23
  370:10 373:1
**second** 12:14
  22:20 23:17 33:5
  43:17,20,22 44:2,9
  45:5,12 80:20
  91:1 105:16 144:1
  186:7,7 288:22
  327:18,21 329:11
  342:17 373:17
  376:17 389:8
  393:12 403:1
  414:15 415:20
  418:15
**secondary** 406:1,3
  406:6 407:20
**secret** 330:15
**section** 12:19 15:8
  145:13
**see** 8:13 11:2 21:1
  25:14 30:22 33:12
  35:2 40:19 42:10
  42:20 47:21,23
  48:6 50:5 51:6
  52:2 60:24 69:19
  71:11 72:24 83:16
  83:24 84:7,21
  86:13,23 100:11
  100:21 102:14
  105:4,19 112:2

113:15 119:1,2
124:14 125:23
131:1 138:19
139:18 140:24
142:24 143:2,16
143:22 145:22
147:23 149:9
150:9 153:7
159:13,13 166:23
167:9 168:16
172:2 173:4,7,18
174:7,9,14,16,20
174:21,23,24
175:3,6 177:9
178:16 180:5
183:7,15 184:12
185:23 186:14,15
189:1,3,19 191:4,5
191:20 192:16
196:10 197:9,10
198:3,4 200:15,22
201:3,8,13,14
203:1,2,10 205:21
208:21 215:5
219:12 220:3,16
224:17,23 225:1,3
227:4,5,12 229:19
230:3 231:14
236:11 238:9
239:7 242:6,15
243:6 244:11
246:5,6 249:20
250:9,17 251:14
251:24 252:3,17
252:22,23 253:12
254:2 256:22
258:23,24 284:5
288:19 293:18
297:2 298:6 303:5
303:21 304:7
307:13 311:13,16

311:22,23 321:19
321:23 324:17
325:4,5 327:5
329:5,9,13 333:16
334:4 340:7
341:16 342:17
348:23 350:6
353:10 355:3,6
358:21 379:14,17
379:19 382:8
383:2 430:17
431:18
**seeing** 28:9 233:11
  308:4
**seeking** 50:19
  416:8
**seeks** 415:3,5
  417:11
**seen** 25:9 51:1
  85:8 109:12
  120:23 130:10
  143:9 155:23
  177:14 188:20
  199:7 206:9
  224:23 240:11,11
  256:4 278:10
  294:2,15 309:10
  342:13 348:6
  381:15 385:20
**sees** 46:15 48:10
**segment** 389:17
**select** 285:11
  400:11
**selected** 18:14
  416:16
**selection** 373:22
**selector** 153:11
**selects** 332:23
**sell** 55:19 164:22
  393:2 420:20
  426:5

**selling** 415:21
  416:10 424:11
  425:10
**semiconductor**
  147:12,17,17
  148:12,23 149:5
  149:16 150:14
**send** 21:6,8,12
  24:19 33:6 78:13
  249:18 335:7
  336:21 340:5
  342:8,9 356:14,16
  357:11 358:12
  361:5 373:8
**sending** 25:12
  35:24 359:8
**sends** 289:19
  291:4
**sense** 18:17 45:23
  65:22 91:10,12
  93:8 233:14,15,17
  323:18 379:21
  404:7
**senses** 381:14
**sent** 25:10 246:24
**sentence** 78:8
  104:19 105:16
  112:19 115:17,20
  115:20 162:15
  186:7 192:7
  193:16 200:12
  201:3 202:22
  204:10,11,14,15
  208:15
**separate** 43:8
  82:23 95:24
  104:24 111:18
  112:7 113:6 194:2
  345:9 388:8
  391:20

**separately**  390:8
  393:23 394:11
  400:9
**separating**  427:9
**september**  302:20
**serial**  269:5
  334:16,17,22
  335:2
**served**  295:10
  300:8 305:21
**serves**  47:20
**service**  339:23
**services**  1:8 297:7
  374:15
**set**  11:10 20:24
  82:21 93:10
  133:21 240:17,21
  255:19 320:1
  352:13,15 356:5
  363:9
**sets**  332:22
**settings**  37:24
  332:24
**settle**  320:5
**settled**  267:9,10
**seven**  137:6
  148:12 210:15,17
  300:2
**sgbfirm.com**  2:15
  2:15,16,16,17
**share**  50:6,10 51:9
  91:14 105:18
  338:22 348:14
  349:24 350:14
  358:8 362:15
  363:15 398:5
**shared**  43:3,14,20
  44:1 45:18,19
  46:1,17,20 48:11
  49:10,11 80:11,17
  82:8 86:17 87:13

90:2 91:8 92:2,12
  100:4 102:6 276:3
  277:7 286:16,23
  286:24 287:3,5,7
  287:12 291:13,18
  293:7 326:8 328:2
  334:13 343:5
  361:24 365:16
  366:4 389:12,14
**sharing**  49:7 50:24
  92:8,23 325:14
  335:15 336:1
  360:21 362:6,6
**shaw**  2:3,3
**shawkeller.com**
  2:7,7
**shed**  406:2
**sheet**  8:22,24 12:8
  16:17 74:14 75:18
  76:1 86:2 250:22
  257:14 258:3,5
  353:5 354:21
  355:2
**sheets**  74:16
**shelf**  337:5,8,16
  340:24 341:10,14
  341:24
**shells**  29:22
**shield**  316:17
**shifts**  417:20
  421:7
**shiny**  32:13
**short**  134:23
  267:15 294:21
**shortchanging**
  223:16
**shortcomings**
  324:15,22
**shorthand**  189:8
  432:7

**shortly**  376:10
  389:24 391:22
  416:9
**show**  32:17 56:1
  59:24 71:2 123:19
  153:1 173:16
  204:18 217:5
  219:11 220:16
  224:14 232:18
  233:12 239:14
  253:2 271:15
  272:22,24 273:3
  278:1 282:10,13
  282:17,20 293:16
  293:19 315:10
  400:3 407:19,21
  408:4 416:1,3
  417:20 419:24
  421:8
**showcase**  55:23
**showed**  60:3 80:18
  210:4,5,9 212:2
  218:1 250:22
  346:8
**showing**  77:7
  145:19 171:16
  179:17 219:21
  252:18 274:3
  327:11,16 407:23
  418:11 421:11
**shown**  47:16
  127:16 206:12,17
  207:10 218:11,24
  226:20 235:22,23
  239:10,23 247:5
  251:9,18 254:2
  255:9,19 258:12
  284:9 290:21
  292:11,13 294:18
  326:6 361:4 381:8
  420:9

**shows**  135:18
  144:1 166:20,21
  207:15,19 239:1
  259:5 260:1
  409:10 428:19
  429:1
**side**  147:1 150:9
  180:6 213:24
  218:12 244:19,19
  317:2,2,11 327:3,3
  355:18 377:10
  380:8
**sidebar**  26:6 34:8
  53:22,24 55:2
  61:8,10 66:3,19,21
  74:18,20 75:15
  77:17,19 79:13
  123:10,12 124:17
  133:8,11 134:19
  177:4,7 178:24
  219:15,18 222:3
  261:4,7,9 265:11
  274:19,21 276:16
  314:1,3 320:24
**sidebars**  74:22
  75:13 79:5,9,9
**sides**  311:24 316:4
  316:12 377:7
  392:10
**sign**  338:15 343:13
**signature**  110:23
  432:13
**signed**  111:5
  116:15
**significance**
  281:13 289:11
  292:5,18 385:16
**significant**  92:5
  330:22 418:12,13
  425:18

**signs**  338:20
361:10 367:24
368:1
**silicon**  186:1
**silver**  230:17,21
231:13 252:4,8
**similar**  80:5 87:19
88:2 93:17,24
97:15 139:20
169:3 199:20
283:3 350:6
406:12 425:2
**similarly**  87:24
**simple**  65:7
214:16 351:17
**simpler**  51:3 76:24
77:4 79:22 81:6
82:11 351:7,16
368:13,16
**simplicity**  45:24
**simplify**  81:20
**simply**  9:6 20:5
49:19 129:1,3
257:19 337:10
380:11 422:19
**simultaneous**  40:3
40:11 47:4 48:13
82:18 83:5 114:20
115:7,18 116:3,4
116:10
**simultaneously**
48:6,19,22 102:6
277:8 287:9,13,19
287:20 289:13,16
289:20 290:1
291:14,19 293:8
326:9 330:5 331:5
331:8 334:2,6
362:1 366:5
**single**  49:10 50:7
83:3 90:8 91:7,10

91:11 100:4
105:18 197:7
328:2 363:5,15
**singular**  258:21
259:17,21
**sir**  109:3 139:4
151:5 152:21
165:7
**sit**  86:9 87:17
169:15 321:14
371:4
**sitting**  145:8
169:20 187:9
195:7,14 215:21
217:23 371:15
**situated**  34:16
**six**  135:19 185:18
189:23 191:10
192:10,15 193:1
**size**  427:4
**skill**  76:9,20 79:20
81:19 85:2 86:1
293:13 332:2
339:7 344:6
345:16 357:5,21
358:6 363:12
389:23 390:1
397:14,18 398:18
399:1,2,6,10,20
400:6,19 401:1,8
401:15 402:12,19
402:23 403:9,16
403:24 404:5,23
404:24 405:21
407:11 409:5,21
410:7 411:11,21
411:24 412:2,9,23
**skilled**  50:18
76:15 77:10 91:20
92:1

**skip**  332:20 338:6
**slayden**  2:9,10 4:7
7:8 26:11 30:4,20
31:24 42:17 53:22
54:1 58:23 61:8
61:11 62:18 64:5
64:11 65:13,15,18
66:19 69:7 74:18
75:8 77:17,20
78:7,17 88:15
94:7,14,19 96:18
102:3 106:1,3,17
106:21 107:3,7
110:20,22 112:18
113:1 114:16,18
115:11,16,21
116:19,21 117:15
117:16 118:18,21
119:12,15 120:18
120:21 122:12,14
122:21 123:18
124:7,13,18,23
125:1,11,13 126:5
126:7,21,23
127:21,23 130:5,8
131:16,17 132:1,6
132:9 133:4
134:12,15 135:5,7
136:9,10 137:2,22
137:23 138:1
140:16,18 142:8
142:11,21,23
143:4,10 144:11
144:14,19,20
145:15,18 146:6,9
147:7,10 149:8,13
149:20,23 150:18
150:21 152:15,21
152:24 153:6,17
158:4,6 162:3,6,20
162:22 163:12,14

166:2,10 168:4,7,9
171:18,23 172:24
173:2,16,24 174:3
174:5 175:11,13
176:12,15 177:24
178:16 179:3,13
179:21 180:3
182:12,19,22
183:3,9,13 184:4,6
186:5,8 188:16,19
190:1,8,11,13,18
190:22 191:13,17
192:6,8 193:6,10
193:15,17 194:10
194:12,18,21
196:11,13,21
197:2,5,12,13,17
197:22 198:1
199:5,10,16
200:11,14 201:4,5
201:15,18,23
202:3,9,11,18,21
203:11,14,17,18
204:7,9 206:6,8,13
206:16 208:9,13
208:14 209:19,21
210:21,23 211:9
211:11 212:13,15
213:2,7,11 214:4,6
214:22,24 215:7
215:13,16,17
216:21 217:9,17
217:19 218:13,14
218:16,19,20
219:11 220:6,8,19
221:13,16,20
222:1,4 223:10
225:15 226:3
247:23 251:4
259:12 260:9,15
261:4,10 262:5,9

262:20,24 263:9
265:8 346:2 372:9
**slice**  211:4
**slide**  8:15 9:11,13
  9:18 10:2,13,16,16
  42:20 44:13
  116:20 120:19,19
  122:13,20 124:24
  125:11 126:6,8,21
  127:22 130:5
  133:6 135:5 136:9
  158:5 159:13
  172:24 175:12
  176:12 177:10
  178:17 179:1,2,7
  179:19 191:15
  193:16 211:9
  212:14 214:23
  219:1 227:22,23
  231:3 239:22,23
  239:24 240:12,22
  241:5,9,11,19
  243:6 245:1
  253:23 255:5,17
  271:5 274:18,22
  275:8 276:12
  303:15 313:12,18
  313:20,22 328:9
  328:20 329:1,4,10
  329:14,22 330:2
  332:10 336:17
  337:23 338:6,7,16
  339:18
**slides**  8:5,11,13,13
  9:15,15 11:24
  12:1 23:11 44:11
  177:9,15 209:14
  225:9,12,17,20
  227:21 240:17,22
  241:5 244:1 268:1
  271:1 275:10

**slightest**  429:11
**slightly**  91:16
  211:6
**slog**  24:16
**smsc**  49:19 150:10
  150:14
**social**  429:18
**society**  270:1
**software**  31:18
  57:9,24 58:1 59:2
  59:3,20 70:6 88:1
  88:3 92:10,16,22
  93:5 165:17 279:6
  282:2 285:4,8,10
  285:13
**sold**  53:15 160:3
  161:4,9 164:24
  166:18 167:6
  265:19,22 266:2,5
  278:13,18,19,22
  279:1,10 284:1
  285:22 393:2
  414:24 416:7
  419:22,23 421:11
  423:21
**soldering**  252:11
**sole**  382:18
**solution**  197:7
  236:12 245:13
  348:19 350:5
  351:9 404:11
**solutions**  1:23
**solve**  50:23 76:19
  82:11 349:22
  403:10,11
**solved**  350:6 404:6
  405:3
**solves**  104:21
**solving**  169:3
  404:9

**somebody**  108:13
**somebody's**  163:1
**somewhat**  188:9
  377:10
**soon**  211:17
**sorry**  23:22 27:7
  28:11 42:4 48:4
  77:17 104:15
  107:4 115:20
  130:6,23 134:14
  134:21 135:10
  153:22 159:18
  163:20 165:8
  171:22 179:3
  180:9 188:15
  193:7 194:19
  197:13,16 200:1
  209:18 213:5,8,10
  213:20 216:9,24
  218:6 222:13
  231:2 236:15
  237:18 261:15
  262:8,22 263:10
  264:7 281:3
  282:14 287:20
  295:20 297:13
  298:15,23 302:12
  305:14 307:10
  308:24 310:8
  322:18 332:3
  338:6 340:2
  341:13 344:23
  353:18 357:16
  363:6 365:12
  366:22 403:1
**sort**  15:23 20:3
  25:14 32:20,22
  34:2 36:2 45:22
  48:20 49:3,16
  57:20 61:22 92:18
  92:23 134:24

172:6 202:1
230:21 238:10
239:22 256:2
338:1 356:22
373:2,17 428:2
**sorts**  92:9
**sound**  102:10
  313:4
**sounds**  96:23
  100:24 102:11
  133:21 138:20
  149:24 150:2
  160:17 216:2
  301:1 305:1 313:5
  334:14
**source**  212:23
  213:15 214:13
  282:7,24
**space**  72:14
**span**  283:12
**spdt**  148:10
**speak**  229:17
  261:17 262:13,16
  264:14
**speaking**  60:22
  262:5 357:22
**special**  108:13
  234:21 424:3
**specialized**  198:12
**specific**  19:24 47:9
  55:4 56:9 66:6
  68:4 85:9 99:10
  114:6 156:20
  219:2 240:22
  257:15 340:6
  409:18
**specifically**  16:2
  51:21 91:23 96:1
  101:16 102:4
  108:1 164:20
  169:20 205:21

[specifically - submitted]                                      Page 60

217:21 247:13,14
300:5 362:24
**specification**
105:17 331:11,21
332:9 336:8,11
341:12 344:4
345:4 349:1
358:16 363:1,11
397:11,20 398:12
398:16 408:19,23
409:7,10,18,20,23
410:5 411:7 412:6
**specified** 401:19
**specify** 111:13
112:6 113:5
**speculate** 381:6
**speculating** 70:12
**speculative** 414:9
421:4
**speed** 149:15
268:21 269:15
291:1
**spell** 266:22
409:16
**spoken** 301:2
**spot** 191:11
**spreadsheets**
33:11
**square** 172:1
**squinting** 227:11
**staggered** 231:17
**stamp** 171:15
**stamped** 131:5
**stand** 15:4 20:6
22:21 23:24 48:16
49:16 87:18
148:13 169:16
264:22 266:19
**standard** 72:9
73:3,5 82:4,5,9
84:13 87:4 93:2

128:3 258:20
269:19,20 296:17
299:10 301:7
308:10,16 341:9
341:14,24 356:8
376:12 417:3
**standards** 297:3
300:16
**standing** 432:3
**stands** 145:23
174:17 175:2,4
**stanford** 268:10
367:15
**star** 143:24
**start** 8:15 34:16
76:12 177:11
213:20 220:6
228:6 307:12
329:5 342:11
352:4 356:23
357:13 370:4
373:21 428:22,24
429:5,6
**started** 96:24
185:9 267:15
**starting** 55:10
112:20 178:14
189:7 307:16
415:20 420:24
**starts** 147:8
149:21 150:19
166:4,6 186:9
258:19
**state** 125:4 138:9
266:21 411:23
412:22
**stated** 123:2
126:24 133:15
156:3 392:11
**statement** 64:16
89:1,5 259:20

323:2 342:13,20
**statements** 102:19
320:8,10 322:8,9
325:16 345:24
379:7
**states** 1:1 311:19
331:7 374:21
396:4
**stay** 80:12
**stays** 80:10
**step** 17:4 72:18
223:20 257:6
260:17 369:19
393:6,7,12
**stephen** 384:6
**steps** 402:5 404:24
**stick** 16:6 337:11
374:4 429:19
**sticker** 158:10
166:20 180:22
**stickers** 31:3
**stipulated** 379:3
**stop** 221:9 338:10
338:13,15,20
339:19 340:17,20
340:20,21 343:12
343:13 356:20
358:13 361:10,12
367:24 368:1,4
**stopped** 312:6
**stored** 86:3,5
**storing** 85:18
**story** 238:11
**straight** 44:20
160:24 170:4
**straightforward**
81:20
**strange** 59:11
**straw** 320:1
**street** 1:17,24 2:5
3:4,11

**stretch** 370:7
**stricken** 135:3
381:4
**strike** 53:9 68:15
73:20 88:21
134:10 163:10
188:15 243:24
261:12 265:7
**string** 100:7
**struck** 381:6
**structure** 343:8
**studied** 132:2
343:16
**study** 181:17
343:19 344:1
**studying** 140:22
301:8 308:10,18
407:4
**stuff** 87:8 128:6
220:16
**subject** 12:23 98:2
181:21 247:10
266:9 296:23
314:7 315:22
317:3 344:8
396:21 402:3,17
405:11 408:17
409:8
**subjecting** 249:6
**subjects** 124:10
**submitted** 10:8
20:23 22:7,8
103:6 109:23
115:23 117:4
125:4 135:13
152:2 155:13
233:13 296:6
301:17,20 302:9
302:22 303:4,18
303:19 342:21
370:20 371:10,14

**submitting** 135:21
**subsequent** 356:5
  359:4
**subsequently**
  323:16
**substance** 19:21
**substantial** 92:6
**substantive**
  232:14 308:2
**substitute** 279:18
  293:16 418:18
  419:6,15,16,21,23
  420:5 421:13
**substitutes** 417:8
  418:17 419:18
**substituting** 87:10
**substitution** 81:19
**subsumes** 332:4
**subtracting**
  420:24
**success** 401:24
  424:19
**successful** 304:16
  406:9
**successfully**
  324:14,21 401:16
  405:17
**suffered** 414:6,18
**sufficient** 14:4
  20:7 288:14
  294:13,15 397:12
  408:20 411:9
**suffix** 254:15
**suggest** 29:20
  62:15 111:18
**suggesting** 413:6
**suggestion** 10:20
  21:3 29:4,4,16
  32:2 33:14 34:2
  373:12 404:14
  413:8

**suggestions**
  404:18,21 405:2
**suggests** 33:14
  239:23,24 281:15
**suit** 51:18
**suite** 1:24
**sum** 88:20
**summaries** 386:12
  386:15
**summarize** 375:9
**summary** 100:17
  100:19 198:23
  208:2
**supervised** 269:10
**supervision** 432:7
**supplied** 12:19
  133:16 201:7
  420:17
**suppliers** 417:24
  418:3
**support** 17:23
  72:1,8 76:1 82:18
  125:15 209:24
  287:18 291:1
**supported** 135:9
**supporting** 47:14
  52:19 56:4 377:8
  384:11
**supports** 47:12
**suppose** 53:11
  120:24 157:6
  205:12 207:6
  216:20 305:17
  313:10
**supposed** 122:2
**sure** 13:24 14:13
  43:1 44:19 55:10
  57:4 58:11 60:24
  66:23 71:15 73:17
  76:18 77:13 82:5
  84:12 101:24

102:16 104:6,8
105:8 108:8
112:16 113:20
114:13,22,23
115:2,9,15 116:1
116:13 126:15
127:12 128:5
129:6,16 130:2,11
134:9 149:3 152:7
159:5,20 161:1
162:14 163:22
165:21 166:4
169:24 176:22
179:15 201:17
203:12 211:3,20
214:20 216:1,14
220:24 223:15
231:5,10 240:24
241:22 242:11
243:23 246:16
250:20 252:6
262:18,18 263:5
266:15 295:7
302:10 304:4
306:8,17,20
312:11 325:13
333:10 336:3,5,6
338:18 353:1
354:7 357:4 358:4
358:17 359:9
360:9 363:6,8
428:16
**surprise** 122:22,24
  246:9 407:12
**surprised** 109:20
**survived** 315:15
**suspect** 147:18
  151:22
**suspicion** 148:21
**suspicions** 379:18

**sustain** 124:6
  316:18
**sustained** 26:13
  122:18 131:14,24
  132:8 133:3,14,18
  134:2 163:9 168:3
  219:10 366:21
  369:14 380:21
**sw211a** 159:16,19
  160:3 161:4,16,21
  162:11 163:16
  164:2,6 165:4
  278:8 281:11
  283:3
**sw211wa** 165:11
  165:14
**swap** 351:6
**switch** 9:19 10:7
  49:19,23,24,24
  50:2,12,13 52:3,18
  109:2,13 120:3
  125:18 138:7,7
  139:24 147:21
  148:10,14,22
  149:5,16,17
  150:15 153:11,12
  153:24 154:15,16
  154:24,24 155:20
  155:23 156:15,23
  157:2,13,14,21
  159:14 160:4,6
  161:4,8,21,23
  163:16 168:19
  275:1 285:18
  350:12,13,16,18
  350:19,24,24
  351:3 398:5,9
**switched** 176:13
**switches** 26:20
  49:19 50:15,17
  108:6 109:9,19

110:3,12 138:11
148:20,24 156:1
160:3 285:12
**switching**  138:6
147:22 222:5
291:2 350:16
**sword**  316:17
**sworn**  267:3 385:8
432:5
**system**  44:1 58:18
72:13 76:10 205:3
207:13 269:9
331:4 334:5
336:10 348:13
363:3,4 398:5,9
**systems**  59:15
67:22 68:4,6
138:18,23 139:11
154:6 268:18
374:16 397:4

**t**

**t**  5:2 6:1 252:5
432:1,1
**table**  253:2,10
**tackle**  7:16 226:15
**take**  7:13,17 14:3
18:11 19:3 21:15
26:1 31:1 34:15
35:6 42:3 44:13
44:18 51:3,22
58:9 60:20,21
68:16 69:13 72:18
83:8 86:8 94:11
122:19 124:11,19
124:22 137:3,5
156:4 162:20
190:2 202:15
223:24 224:3
225:24 226:7
227:6 233:2
235:11 250:7

252:20 253:23
255:4,16 258:8
259:9 260:19
261:6 296:2 307:7
310:1 313:11
318:2,5 321:12
326:15 327:2,20
328:8 332:8 341:1
342:10,15 353:1
354:16 355:1,8
361:22,23 363:24
364:2 369:19,23
370:6,11,23 372:1
373:5 397:15
402:4 405:23
**taken**  32:4 137:14
224:15 226:10
227:4,18 228:22
232:23 233:1
242:19 372:3
386:19 403:14
432:4
**takes**  213:8 387:3
**talk**  14:20 15:18
30:12 46:5 48:20
49:5,20 57:16,24
64:17 80:24 88:23
91:1 92:17 113:18
163:15,24 164:5
165:3 209:14
225:17 260:11
317:2 322:12
329:7,11,15 346:9
353:4 429:8,10
**talked**  16:15 31:20
45:2 54:2 70:15
70:16 79:17 86:1
87:9 93:11 106:23
108:1 117:17
171:9 181:2
187:11 189:11

193:5 205:7
207:11 212:12,24
213:15 214:11
257:20 258:1
260:13 261:23
284:3 340:4,13
347:6 361:10,11
368:12
**talking**  8:16 9:12
13:18 42:14 45:20
51:24 56:9,16,17
61:6 63:6 74:15
85:8 113:17 114:8
114:14 116:2
165:24 206:19
209:17 242:23
245:1 262:7
264:21 278:3
280:22 283:23
285:8 287:2
288:23 307:15
322:24 323:19
328:16 336:16
340:23 348:10
350:13 352:2
428:24 429:6
**talks**  14:17 44:3
45:11 46:4,11
47:11 50:23 90:4
90:24 101:16
139:20 338:24
339:4 341:22
361:9,9,11
**tamburri**  1:21
**tandem**  269:7
**tangri**  3:8
**tape**  268:22
**target**  148:3
**taught**  40:1 85:6
272:13,19 324:4
363:12

**teach**  363:1
365:20 411:10
**teaches**  14:10,14
14:21 49:1 79:23
87:11,14 174:18
400:16 405:14
**teaching**  77:11
295:17 363:14
404:13 405:10
**teachings**  78:3
404:18,20 405:2
**tech**  268:9
**technical**  122:6
123:23 188:20
198:21 210:3,6
270:6 300:9,11
304:21 335:23
336:2,4,9 347:1,2
**technically**  209:8
**techniques**  412:16
**technologies**
251:16
**technology**  1:4
51:4 270:19
311:18 374:13,17
392:11 410:18
**teeth**  33:18
**tell**  10:1 24:11
26:9 32:14 40:9
55:7 69:24 99:4
99:21 102:24
142:20 153:20
165:1 170:21
182:15 205:1
232:12 246:17,20
246:22 249:9
268:4,16 276:7
348:12 370:1
379:13 428:18
429:15 432:5

| | | | |
|---|---|---|---|
| **telling**  23:10 | 342:24 | 425:20 432:4,6,9 | 206:22 210:10 |
| 428:20 | **testifying**  28:18 | **testing**  18:16 | 231:6 246:3 249:8 |
| **tells**  120:4 252:1 | 215:18 216:4,10 | 139:8 367:21 | 269:12 273:16 |
| 291:7 380:1 | 217:20 218:7,22 | **texas**  2:14 | 293:2 319:24 |
| **tendency**  64:17 | 219:6 383:7 | **text**  10:4,16 46:8 | 320:14 330:7 |
| 386:23 | 384:24 | 48:21 189:2,3,6 | 333:18,22 339:9 |
| **tender**  270:17 | **testimony**  1:12 | 191:6,22 192:10 | 339:17 350:10 |
| **tending**  423:12 | 9:18,21 13:11 | 238:9 327:7 | 356:8 359:7,8,14 |
| **term**  85:7 269:4 | 34:11 48:24 62:18 | 387:24 | 359:14,15 371:18 |
| 341:20 389:5,8,15 | 78:24 79:10 97:22 | **textural**  264:4 | **things**  7:13,19,21 |
| **terms**  65:7 85:9 | 98:1 126:11,18 | **tfenton**  2:16 | 28:6 29:3 30:6 |
| 191:4 331:16 | 149:2 166:3,22 | **thank**  12:13 16:11 | 31:14 38:2 40:20 |
| 388:21 393:10 | 167:11,21 168:6 | 16:12 17:3 19:6 | 51:2 81:14 85:11 |
| 423:19 424:18 | 181:1 187:22 | 22:16 42:20 43:23 | 99:8 102:16 |
| **territory**  423:20 | 188:8 193:19,21 | 57:23 87:16 94:11 | 113:19 125:9 |
| 424:8 | 195:24 196:5 | 94:14 105:15 | 127:9 129:11,16 |
| **test**  50:8 88:12 | 203:24 205:18 | 137:23 152:20 | 139:19 146:16 |
| 195:16 197:6 | 206:2 209:3 213:4 | 153:4 179:5 184:5 | 203:8 205:11 |
| **tested**  18:6 69:2 | 213:12 216:18 | 194:19 224:11 | 227:7 228:6 229:1 |
| 150:23 156:17,18 | 219:3,24 236:12 | 247:21 248:17 | 279:17 303:22,24 |
| 157:1 158:14 | 240:15 241:7,11 | 249:2 260:15,18 | 319:22 351:20 |
| 159:15 161:9,23 | 241:12 243:24,24 | 265:8 273:19 | 358:21 368:13 |
| 249:17 278:19,23 | 245:3,9 246:15,18 | 276:20 294:19 | 373:2,3 379:2,5 |
| 281:14,23 285:5 | 246:21 247:13,14 | 363:20,22 365:21 | 383:2 429:17 |
| **testified**  62:19 | 247:17 249:10,13 | 371:24 372:16 | **think**  8:21 11:16 |
| 158:24 159:1,2,6 | 249:22 255:14 | 431:1,15 | 11:23,24 12:10 |
| 164:23 192:20 | 260:12 261:11,13 | **thanks**  430:2 | 15:13,23,24 16:5,9 |
| 196:3 199:20 | 262:6 263:12 | **theme**  148:18 | 16:19 18:9 20:10 |
| 209:6 212:6 | 264:13 265:7 | **themes**  304:15 | 20:17 21:7,14,14 |
| 213:23 214:2,7 | 271:1 275:1 | **theories**  17:6 | 27:21 28:3,8 30:8 |
| 222:6,9,15 267:4 | 277:11 288:13 | **theory**  17:8,24 | 30:13,22 32:24 |
| 270:5,8 285:14 | 308:20 310:21 | 210:1 371:11 | 37:8,20 40:15 |
| 295:13 301:14 | 315:8 321:15 | **thereof**  432:10 | 46:6 49:2 54:10 |
| 314:6 330:14 | 330:17 346:21 | **thermal**  229:18 | 57:2 62:4 65:21 |
| 342:19 381:24 | 347:4 372:13 | **thin**  96:16 174:1 | 65:21 66:1 70:15 |
| 383:21,23 385:10 | 378:23 379:13 | **thing**  11:14 45:2 | 71:15 81:24 92:4 |
| 385:13 | 381:3,5 382:16,17 | 45:12,19 51:8 | 92:13 95:18 96:6 |
| **testifies**  381:13 | 383:15 384:2,4,7 | 54:8 80:20 82:7 | 98:24 101:12 |
| 383:3 | 384:13 385:8,9,12 | 85:12 86:11 | 102:17,22 106:8 |
| **testify**  15:16 | 385:15 386:3,8 | 108:21 167:14 | 106:22 108:19 |
| 187:24 213:18 | 387:1,9 422:15 | 192:18 200:21 | 109:18 111:24 |

[think - trademark]

115:4 116:8,24
117:24 119:10
124:5 126:24
128:17 130:6
132:13 134:23
136:12,14 143:24
149:4 150:2
154:12 166:3
170:3 171:21
178:4,19 179:14
181:18 188:6,7
189:20 203:13,24
209:11 216:17
219:5 220:2
232:23 233:9
235:17 238:13
240:24 243:16,18
245:13,19 246:4,8
246:9,12 247:3,11
247:12 248:9
250:24 255:13
263:7 264:5,19
265:1,4 267:11,14
275:5,20 281:4
283:6 284:9 290:3
290:17 300:23
305:23 316:9,11
316:19 318:9,15
320:4,13,16 323:2
328:10 330:15
331:18 332:1
337:8 340:19
346:1 348:11
354:11 360:2,23
364:4 367:7
371:17 374:8
384:1,16 386:17
428:12,18 429:1,3
431:3,11
**thinking**   18:20
335:13 336:12

350:4 358:6
362:22 428:14
**thinks**   15:17 380:9
**third**   142:10 147:8
389:15 415:4,9
420:11
**thirds**   355:19
**thoroughly**   157:5
**thought**   31:5
128:22 160:18
227:16 232:4
236:10 275:2
317:9 318:13
387:2
**three**   12:1 17:5
18:8 57:20 70:16
103:11 121:9,13
125:10 126:1
128:1,14 129:4
130:24 131:10,18
132:2,14 136:5
174:21 241:21,22
252:21 253:13,18
254:4 322:14,22
323:5 325:17
355:20
**time**   1:16 14:4
17:11,24 20:8
21:13 22:7 24:7
32:6 35:17,21
36:1,12,16 39:1
44:4 59:13 61:3,7
63:4 66:15 75:1,3
75:5 79:6,11
81:16 88:22 90:12
95:9 100:6 115:1
124:19 137:3
153:13 157:6
162:17,18 165:11
169:21 185:13
187:13 190:2,12

222:11 264:10
266:10 277:4
279:17 281:18
283:13 289:8,18
295:24 304:22
319:23 321:13
325:18 335:5,8
343:12 347:8
354:10 356:11
360:8 362:8 364:2
369:19,23 387:2
387:14 395:15
397:19 399:4,8,21
400:7,20 401:1,9
402:13 403:23
404:15 405:6
407:18 409:15
419:22 422:2
423:6 424:6 426:1
426:22 428:22,23
432:4
**timeframe**   57:21
**timeliness**   56:4
**timer**   44:7
**times**   44:7 157:9
188:22 268:15
277:3 295:14
**timothy**   3:10
**tip**   377:9,11
**title**   12:22 52:2
101:10 120:4
147:11,19 153:7
153:20
**today**   24:3,14
95:10 97:22
106:11 135:21
137:8 138:9 140:6
256:4 270:12
271:1 273:23
284:19 285:14
288:14 289:4

290:18 293:19
306:9 321:14,16
352:18 364:24
400:22
**toggle**   50:12
**toggled**   179:14
**told**   26:19 48:4
49:15 62:21
115:13 116:7
117:1 155:8 253:4
374:12
**tomorrow**   21:1
22:10 24:21 25:4
370:4,22 371:6
373:7,15 427:19
428:6 429:4,23
430:1,18 431:6,18
**tonight**   22:13
427:23 428:1
430:7 431:9
**tool**   387:6
**top**   12:24 79:19
145:23 146:8
171:19 189:10
193:16 197:4,24
198:10 199:19
205:23 206:23,23
207:24 230:21
254:8,11 275:24
275:24 311:16
326:21 331:4
341:2
**totally**   11:15
120:15,16 200:18
**touched**   381:15
**touching**   242:16
**tower**   2:12
**traced**   73:14,17
**trademark**   396:4
396:7

**traffic** 207:1,8
**transaction** 46:19
**transcribed** 432:7
**transcript** 1:11
  28:19 134:8,10
  215:8 217:16
  220:11 221:2
  432:8
**transcription**
  432:8
**transfer** 215:3,20
  216:4,11 217:21
  218:9,22 219:7
  343:9
**transmit** 84:5
**transmitted** 335:2
  335:2
**tread** 29:22
**treat** 380:22
**treating** 228:13
**trial** 17:7 35:2
  42:3,7 51:23 53:5
  58:9,13,21 60:11
  68:17,18,22 69:5
  74:5,7 88:6
  120:19 152:22
  153:15 182:7,24
  196:19 199:2
  201:20 232:11
  246:8 250:18
  255:9 258:9 270:5
  280:7 292:14
  295:13 312:21
  318:23 321:9
  354:18 372:14
  383:13 385:1,19
  386:14,20 387:4
  387:13 396:22
  397:1 399:12
**tried** 368:21
  395:21 407:6

**true** 109:17 111:7
  113:21 116:16
  175:19 228:21
  229:3 239:20
  293:2 377:5,19
  432:8
**truman** 2:11
**truth** 28:22 378:11
  432:5,5,6
**truthfully** 122:8
**try** 33:8 43:13
  92:22 137:7 218:3
  221:22 227:7
  238:8 293:19
  318:12
**trying** 43:18 62:7
  64:22 76:18 92:21
  95:23 130:3
  157:11 162:24
  170:12,15 221:9
  232:18 233:20
  236:3 286:6
  351:15 354:5
  359:14 403:10,11
  426:2
**tsaulsbury** 3:13
**tuesday** 1:15
**turn** 42:5 74:4
  143:6 182:5,22
  183:15 196:14
  199:17 201:19
  203:15 258:16
  280:5 287:23
  307:9 324:16
  388:11
**turned** 278:7
**turns** 277:16
**two** 16:14 26:1
  36:3 38:15,17
  41:2 43:13 45:7,7
  45:9,10 47:6,18

49:7,24 50:5,6
51:8 57:5 59:9
61:13,15 62:13,22
84:3,15 85:5,17,20
86:18,21 89:6,16
91:2,9,9 92:7
102:7 125:3
132:17 134:12,15
135:23 136:5
139:8,9 155:20
160:15 184:14
187:7 188:11
194:2 195:8
198:11 199:23
203:2,5 205:4
208:3 211:12,21
219:22 227:3
233:17 259:3,6,22
259:24 277:8
281:16 285:14
287:9,14,19,21
289:13,16,21
290:1 291:14,20
293:15 295:16
299:9 309:20
325:2 326:2,9
327:3,23 328:1
330:4 335:7
336:10,20 337:19
342:5 343:10
345:9 346:4,8
355:19 358:7,19
360:20 361:5,14
362:15 363:3,4,14
373:3 376:14
381:9 390:3 393:6
414:12 417:24
418:3,5
**tx** 296:3,5 321:8
  341:2 342:10

**type** 123:23
  199:20 205:2,11
  269:12 381:11,17
  390:4 414:23
**types** 90:19 93:12
  252:18 381:9
  390:3 414:12
  415:1
**typical** 128:17
**typically** 55:11,17
  55:21 422:21
**typo** 166:12,15
  177:23 178:22
  179:9
**typos** 430:13

**u**

**u.s.** 119:6 141:6
  144:16,18 145:20
  145:20 151:17
  265:20,23 266:2,6
  398:3
**u1** 71:16
**u2** 71:16
**u3** 71:16
**u4** 71:16
**ubiquitous** 349:16
  349:17,18
**udc** 189:11,16
  212:7,7 213:14,23
  214:8 218:10,23
**udcs** 195:19 200:5
  211:1
**ultimate** 8:21
  397:8 408:3
  421:14 422:23
**ultimately** 27:19
  249:16
**umbrella** 382:5
**unanimous** 121:13
**uncommon** 65:3

**underlying**  386:7
386:16
**underneath**
145:17 149:10
**understand**  7:24
12:12 19:16 26:12
29:8,21 30:15
34:12 51:15 55:16
63:9 64:14,21
73:18 74:17 75:4
79:2 83:19 89:10
89:14 97:6 108:19
111:20 125:23
128:24 132:22
146:5 152:14
154:19 159:20
164:8 171:14
187:5 188:17
195:15 198:7
222:14 225:1,13
226:18 233:24
234:12 240:9
252:13 262:18
275:16,18 277:10
277:11 278:18
284:12 288:3
290:11 294:9
311:24 317:5
320:11,12,13
331:14 332:3
333:22 336:16
339:8 340:9 345:3
357:8 358:20
366:17 367:18
387:18 388:13
**understandable**
357:15,17,19
**understanding**
101:1 131:6
143:18 144:7,10
152:3 186:18

201:10 229:15
238:16,23 242:2
251:15 261:19
262:12 286:14,22
324:1 352:22
357:7 383:5
**understands**  14:14
14:17 211:21
**understood**  23:12
30:10,24 54:13
78:24 85:24
128:23 129:17
130:3 225:21
226:1 234:11
264:1 343:20
353:24 357:20
410:8
**undertaken**
362:13
**undertaking**
318:17
**undisclosed**  15:2
**undisputed**  317:6
**undue**  92:3 386:24
411:14 412:11
**unduly**  33:22
**unerring**  421:5
**unexpected**
405:13 406:19,20
406:21
**unfortunately**
140:20
**unimportant**
387:2
**unintentionally**
242:22
**unique**  90:17
**unit**  35:7,8,15,16
35:23 36:10,18,23
200:22 201:6
207:14,17 258:19

275:1 414:24
**united**  1:1 311:19
374:21 396:4
**units**  415:2,6
**universal**  334:17
**university**  268:10
367:15
**unnecessary**
409:16
**unobjectionable**
75:6
**unpack**  216:14
**unpatentable**
127:17
**unpatented**  427:2
427:12
**unpersuaded**
126:10
**unpredictable**
405:13
**unscratched**  177:1
**unsupported**
126:12
**unusual**  351:6
**unwired**  182:17
186:16 187:11,16
197:8 198:20
201:7 204:4 209:9
374:17
**update**  55:21
**updated**  181:13
184:15 185:17,21
187:2 193:11
194:14
**upstate**  267:20
**upstream**  189:13
212:7 362:8
**usages**  116:10
**usb**  10:7 45:8,9,10
46:1,10,12,22 47:5
48:14 49:11,12,16

49:19 52:3,18
72:1,4,9,13 73:3,8
73:22 74:14 76:3
76:20,21,22 81:14
82:5,9 84:2,3,4,5,6
84:13,14,22 85:5
85:17,20 86:16,17
86:18,21 87:5,12
87:13 90:8 92:2
92:12,18,24 100:4
100:5,7 102:5,6,7
105:17,18 108:6
109:8,13,19
147:21 148:10,13
149:16,21,22
150:1,2,13,14
151:19,20 153:11
153:24 186:12
189:16 192:11
194:2,5,5 195:6,8
198:11 199:23
200:2,4,22 202:23
203:2,4,5 206:11
208:3,11,23,24
210:10 212:3,8,18
213:19 214:2,9
230:18 258:20
259:3,6,15,24
260:3,3 277:7
281:6 286:15,16
286:23,24 287:3,5
287:7,10,12,14
289:17 291:13,18
293:7 297:3
298:14,17,22
299:3,9 300:5,10
300:12,16,19,21
301:2,7,8,22
303:23 308:10,16
308:19 324:23,24
325:1,23,23,24

326:8,10 327:13
327:18,24 329:5,8
329:24 331:11,16
331:21 332:8,10
332:16 334:13,15
334:16,21 335:14
335:17,24 336:8
336:11,22 337:1,5
337:8,11,16,20
340:3,6 341:9
348:20 349:1,24
352:24 356:8
357:9 360:6,13,21
361:15,17,24
362:5,9,16 363:15
365:11,13,24
366:4,10 367:9,21
374:18 389:5,9,10
389:11,12,15,17
389:17,19 392:11
398:5,9
**usbgear** 164:14,18
**usbs** 45:9
**use** 21:16 32:7
41:2 48:10 49:10
50:3,14 80:23
82:8,19 87:7 90:9
91:11,13 92:9
93:8 97:4 101:4
107:16 114:7
151:16 159:21,22
202:19 223:13
234:20 243:1
245:16 254:18
293:14 297:6
331:16 337:15
339:3 342:5,7
345:17 361:14
379:21 381:10
385:11 386:14,19
386:22 397:14,16

398:18 400:10
404:12 411:13
412:11 414:22
419:16 422:14
423:15 424:1
425:7,8,12 427:21
**useful** 91:6 323:7
**user** 57:2,3,7 58:4
58:5 60:15 285:11
291:7
**uses** 78:20 80:3
81:1,11 82:9
112:12 114:6
341:20
**usually** 188:14
203:9 351:24
**utility** 424:23

## v

**v** 27:4 266:24,24
267:2
**v.b.** 405:21
**valid** 10:18 273:3
273:4,15 282:15
284:20 292:15,19
310:22 313:9
314:18,19 322:15
322:23 376:3
378:1 396:6,9
397:10 413:14
415:10,13 422:6
**validate** 355:5
**validity** 37:3,4,11
97:18 115:24
315:14 330:20
344:15 378:6
396:10
**value** 423:1
424:13 425:8
426:24 427:7,9,10
427:14

**various** 14:9 25:7
28:6 44:22 98:18
113:13 114:1
136:1 236:4
247:16 268:11,15
386:3
**vast** 8:12 314:22
**vehicle** 64:19
**verdict** 16:17
381:10 430:21
431:5
**verify** 224:24
227:2 233:3
**veritext** 1:23
**version** 179:18
181:4,13 184:15
185:19 187:1,3
207:5 229:21
230:19 237:21
279:13,15,20,22
279:22 280:23
281:13 282:1
283:4,10 329:2
**versions** 148:22
155:24 156:2
281:16,19
**victor** 266:24
**video** 37:21
153:23 269:20
271:19 304:2,5
385:15
**videographer**
385:4
**videos** 385:17
**view** 41:23 317:5
403:15
**viewed** 408:24
**views** 16:18
**violation** 261:12
**virtually** 303:3

**visible** 231:19
232:24 233:13
234:2,18 243:12
**voiceover** 209:13
**volume** 1:13 213:3
418:23
**voluminous** 99:3
**voluntarily** 426:2
**voto** 187:24
206:22
**voto's** 187:21
205:17
**vs** 1:7 27:10
302:10

## w

**w** 2:3 175:4
**wafer** 230:24
**wait** 22:12 30:5
32:24 43:18 78:11
168:4 228:5,5,5,6
228:6 236:22
237:8,8,8,9,12
239:16,16,17,17
239:17 241:3
262:8,10 315:21
319:8,8,9 357:12
371:11
**waiting** 145:8
356:22
**walk** 30:21 66:1
120:17
**walked** 178:7
382:3
**want** 9:2 10:24
12:7 14:12 15:1
15:20 19:19,21
22:12 24:15 26:7
32:6,8 33:17,18
55:12,14,21,24
62:15 64:7,9,18
65:2,20 66:23

74:23 79:5,15
88:20 89:19 99:20
99:21 104:9,13
113:18 124:11
137:7 138:24
172:14 181:3
217:4 223:15,24
224:8 231:9 233:3
241:21 247:8
262:18 266:14
281:21,24 284:1
286:9 290:19
305:3 314:15
316:23,24,24
317:1,23,24 320:1
320:12 321:12
336:21,24 347:20
347:21,22 349:21
358:7,21 363:24
428:11 429:12,13
431:12
**wanted**  20:5,14
23:21 25:22 99:11
107:2,6 130:2
142:20 152:6
169:16,23 224:3
278:5 349:22
**wanton**  395:4
**wants**  9:23 15:19
21:4 35:17,22
90:23 369:9
397:16
**warn**  24:15
**watch**  48:5 304:6
**water**  382:4
**way**  16:9 40:20
50:1,2,4 61:23
65:3 72:12 80:13
90:12 91:2 105:17
129:21 142:19

172:20 175:5
200:10 211:16
216:20 227:12
235:11 246:12
247:19 252:11
254:19 255:1
259:2 270:15
284:10,20 286:11
299:23 301:5
308:8 325:22
332:6 337:21
338:2,10,13,21
346:8 350:21
351:21 355:19,20
359:6,7,13 360:19
361:5,14,21 373:2
379:20 404:2
428:10,13,14
**ways**  73:8 204:23
242:18
**we've**  132:14
209:17 213:15
271:18 273:20
277:2 340:13
342:13 347:6
349:4
**wearing**  382:4
**website**  297:6,20
297:22,24 298:13
298:16 304:3
305:7
**weeds**  32:3
**week**  24:1 175:4
175:21 176:9
255:10,21 267:14
**weighing**  379:22
384:7,13
**weight**  126:14
379:24 382:11,13
384:1,15 386:17
408:1

**welcome**  250:6
373:5
**went**  61:11 63:10
109:1 140:9
154:23 179:7
232:10 267:20
269:7,10 278:5
**wet**  382:5
**white**  26:3,8 71:12
191:7 210:15
242:15 249:6
**widely**  349:19
**wiener**  3:9 264:5
**willful**  375:21
377:16,17 391:21
394:23,23 395:4
395:24
**willfully**  395:7
**willing**  422:7
426:7,10,17,18
**wilmington**  1:18
2:6 3:5
**win**  413:6
**winbond**  176:24
241:6 244:14
254:3,18
**wind**  20:20
**windows**  59:21,24
60:2
**wire**  269:20
**wired**  218:10,23
**wires**  252:4,8
**wiring**  73:15
219:6
**wisdom**  407:15
**wise**  24:7
**wish**  410:2
**withdrawn**  315:23
**witness**  4:2 23:2
34:14 44:14 64:23
66:22 68:20 77:14

79:17 86:9 94:5
101:21 115:14
143:8 152:20
169:16 173:22
174:2,4 183:2
197:16 199:4
201:22 206:15
208:11 217:14
220:2,2 224:8
226:20 239:10
260:5,18,21 261:2
262:6,13 263:2,14
263:16,17 264:13
264:22 266:23
280:9 294:22
295:11,18 297:7
304:16 306:15
325:8,10,14 326:3
326:5 332:1
338:18 369:20
381:7,13,14,15,24
382:20,21 383:2,3
383:8,11,12
384:21 386:8
432:11
**witness's**  312:17
318:10 383:4,6,14
385:8
**witnesses**  24:5
263:11 374:23
378:24 382:19
383:21,23 384:1,8
384:13 385:2,4,7
386:3 389:2 432:5
432:6,9
**wolson**  1:20 7:5
**wonder**  383:20
**wondering**  244:18
**word**  19:3 41:15
114:19 115:6
125:19 202:15

223:2,3,6 230:14
298:23 339:3
360:24 361:2
**worded**  264:20,24
**wording**  328:22
**words**  22:3 24:5
48:15 101:18
216:16 222:16,22
298:18 302:13
329:13 345:24
387:21,23 388:24
389:20 390:14
391:4,5,5,6 400:13
408:21 414:4
417:12
**work**  70:7 73:17
75:22 80:6 92:16
93:4 95:17,20,21
98:13 165:18
206:1 249:4 268:2
269:2 270:12
285:19 294:3
298:21 299:2
357:7 407:4
**worked**  49:22 71:3
95:22 96:1,9
245:10 268:15,20
269:8 295:18
**working**  95:13
96:19 269:19
304:11 399:14
412:20 425:2
**workings**  285:17
**works**  24:13 88:3
285:5,14
**world**  38:3 113:13
114:1 127:14
136:2
**worldwide**  119:7
**worth**  373:11

**worthy**  382:20
**wrap**  24:14
**wrapper**  107:1
**wrapping**  23:24
**write**  103:18 131:6
304:20 355:4
**written**  9:12 12:16
12:20,22 13:1,5,8
13:13,22 14:6
15:3,8,11 16:1
25:13 37:23,24
40:20 54:4 88:23
99:16 100:11
108:2 111:21
120:23 310:7,9
344:3,5,19 345:8
345:13 346:17
367:5 373:9 387:1
387:3 397:2,12
398:13 404:19
408:9,11,13,18
409:2,3,9 410:3,5
410:24 411:20
430:14,15
**wrong**  8:18 128:15
129:13,20 173:24
198:20 226:19
289:24 318:14
348:12
**wrongful**  395:6
**wrote**  103:8,11,16
126:1,3,4 187:16
269:9 383:13

**x**

**x**  4:1 5:2 6:1

**y**

**y**  32:5 174:17
175:2 266:24
**y2k**  59:15

**yeah**  15:13 18:19
19:23 20:10 28:4
31:5,20 49:2
51:18 52:2,6
54:12 56:12 59:18
60:18 63:8 69:3
69:22 73:11,24
77:16 79:15 84:21
87:7,21 88:11
90:22 93:24 94:10
104:1 106:6
109:17 115:9
117:22 119:10
123:8 127:20
128:22 134:7
135:15 139:21
142:13,14 144:7
145:17 146:18
149:10 153:14
157:10,11 159:17
160:23 166:5,8
168:23 170:1
173:20 182:4
183:17,21 184:2
185:2 203:5
206:18 207:2
213:9 217:4
219:16 223:16
224:11 231:19
244:6 258:5
262:23 274:18
286:6 292:4
295:22 299:1
309:21 315:11
327:1 341:16,17
349:20 356:2
366:3 430:22
**year**  56:18 61:14
62:23 65:8 173:9
174:17 175:2,5,8
184:2 255:10,21

295:17
**years**  56:17 61:13
62:10,13,14 64:8
64:11 65:12,13
67:11,13 68:10
95:15 96:8,20
106:7 115:14
116:5 140:21,21
185:13 257:9
268:13 283:12
299:9,21 300:2
322:14,22 323:5
**yellow**  239:6
242:15 243:14
**yelp**  8:24 9:1
51:20 151:3
**yep**  54:20 83:16
141:2 150:17
193:13 194:17
202:10 213:13
298:19 356:3
**yesterday**  16:16
17:12 212:6 213:5
213:19,22 214:7
214:14 215:15
222:6 316:4
317:10
**yielded**  405:13
**york**  267:20
**yww**  174:13,23,23

**z**

**zatkovich**  196:3
209:6 306:22,24
329:17 330:14
384:5,19
**zatkovich's**  193:18
193:21 195:24
209:2 306:10
307:14,22
**zoom**  71:8 142:22
149:20 171:19

**[zoom - zoomed]**                                              Page 70

235:11,12 238:8
242:14 243:3,10
256:15
**zoomed**  238:7
239:15,18 240:1